**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **ALAIN GOETZ** | ) |
|     Sienna Lake, Villa 6 | ) |
|     Jumeirah Golf Estates | ) |
|     Dubai, United Arab Emirates | ) |
|  | ) |
|     *Plaintiff,* | ) |
|  | ) Civil Action No. 1:22-cv-1204 (JEB) |
|     v. | ) |
|  | ) |
| **BRADLEY SMITH,[1] in his official capacity as** | ) |
|     **Director of the** | ) **AMENDED COMPLAINT FOR** |
|     **United States Department of the Treasury** | ) **DECLARATORY AND** |
|     **Office of Foreign Assets Control** | ) **INJUNCTIVE RELIEF** |
|     1500 Pennsylvania Avenue, NW | ) |
|     Washington, D.C. 20220 | ) |
|  | ) |
|     *Defendant,* | ) |
|  | ) |
| and | ) |
|  | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
|     1500 Pennsylvania Avenue, NW | ) |
|     Freedman's Bank Building | ) |
|     Washington, D.C. 20220 | ) |
|  | ) |
|     *Defendant.* | ) |

_____ )

Plaintiff Alain Goetz brings this Amended Complaint for Declaratory and Injunctive Relief

against Defendants the United States Department of the Treasury's Office of Foreign Assets

Control ("OFAC") and its Director, Bradley T. Smith, in his official capacity, and in support of

his complaint alleges the following:

_____

[1] Bradley Smith, the current Director of the Office of Foreign Assets Control, is automatically
substituted for Andrea Gacki pursuant to Fed. R. Civ. P. 25(d).

## INTRODUCTION

1.    On March 1, 2024, Defendant OFAC issued a denial of Plaintiff's petition for administrative reconsideration seeking the rescission of his designation under Executive Order ("E.O.") 13413, as amended, and the removal of his name from OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List"). In doing so, Defendants acted contrary to OFAC's own delisting procedures and policies and failed to provide a reasoned basis as to why the basis for Plaintiff's designation is sufficient or, alternatively, why there has not been a change in circumstances negating the basis for that designation.

2.    Plaintiff was designated by OFAC on March 17, 2022, at which time his name was included on OFAC's SDN List. *See* Press Release, U.S. Dep't of the Treasury, *Treasury Sanctions Alain Goetz and a Network of Companies Involved in the Illicit Gold Trade* (Mar. 17, 2022). OFAC also designated eight companies for allegedly being owned or controlled by Plaintiff. *Id.*

3.    Specifically, OFAC designated Plaintiff for allegedly (1) being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the Democratic Republic of Congo ("DRC") or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; (2) being a leader of African Gold Refinery Limited ("AGR"), an entity whose property and interests in property are blocked under the Order; and (3) having acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked under the Order. 87 Fed. Reg. 16552 (Mar. 23, 2022).

4.    As a result of his designation, Plaintiff's name was added to OFAC's SDN List. The legal consequence of Plaintiff's designation is that his property and interests in property within

2

U.S. jurisdiction are blocked, and U.S. persons are prohibited from engaging in any transactions or dealings with him. Moreover, U.S. and foreign persons who engage in certain transactions or dealings with Plaintiff risk exposure to sanctions under E.O. 13413, as amended.

5.      Plaintiff has twice availed himself of OFAC's administrative reconsideration process under 31 C.F.R. § 501.807, in efforts to seek the recission of his E.O. 13413, as amended, designation and removal of his name from OFAC's SDN List. Those matters involved the submission of information and documentation in response to the determinations, conclusions, and findings underlying OFAC's designation of Plaintiff, and timely responses to OFAC's questionnaires which ostensibly sought information relevant to its reconsideration of Plaintiff's designation. Both of those matters, however, resulted in denial actions which OFAC undertook on June 30, 2023 and March 1, 2024, respectively.

6.      Following OFAC's first denial of Plaintiff's petition, Plaintiff endeavored to address the bases underlying the decision which resulted in the opening of a second administrative reconsideration matter. In his renewed petition, Plaintiff proposed remedial measures designed to address OFAC's bases for denying his initial petition. In a supplemental submission, Plaintiff later argued that the factual basis for his designation was in error and, alternatively, that the circumstances giving rise to the designation were no longer applicable.

7.      Following a brief exchange with OFAC through the issuance of one questionnaire, OFAC denied Plaintiff's second petition for administrative reconsideration based in large part on foreign policy guidance from the U.S. Department of State. Despite the second petition addressing the concerns OFAC highlighted in denying Plaintiff's first petition, OFAC did not engage with the substance of Plaintiff's arguments and evidence provided in support of the second petition for administrative reconsideration. Nor did OFAC's second denial identify Plaintiff's involvement in

sanctionable conduct linking him to gold trade funding the armed conflict by rebel groups in the DRC, or, indeed, any ongoing conduct by Plaintiff related to the basis for his designation under E.O. 13413, as amended. Rather, OFAC engaged in conclusory and speculative reasoning to support its decision to deny Plaintiff's second petition for administrative reconsideration. Defendant OFAC did so by stating that Plaintiff was to remain designated due to his failure to accept and acknowledge the purported harm brought by his alleged sanctionable conduct, and because OFAC believes he could again in the future engage in sanctionable conduct.

8.      Additionally, in denying Plaintiff's second petition, OFAC impermissibly expanded the burden for Plaintiff to seek delisting under OFAC's delisting procedures at 31 C.F.R. § 501.807 by requiring an admission of sanctionable conduct. Specifically, OFAC suggests that the only way Plaintiff has a chance to be delisted is if he accepts responsibility for being involved in the conflict gold trade benefitting rebel groups in the DRC. This requirement is contrary to and beyond the scope of OFAC's own procedures, and fails to provide Plaintiff a meaningful process to contest his designation.

9.      In light of the above, Plaintiff appeals to this Court for relief. OFAC's actions on their face are arbitrary and capricious and not in accordance with law, and require the Court's intervention to be corrected.

## JURISDICTION AND VENUE

10.     This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*. and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

12.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which the Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

13.     Plaintiff Alain Goetz is and was at all times herein a citizen of Belgium. He currently resides at Sienna Lake, Villa 6, Jumeirah Golf Estates, Dubai, United Arab Emirates.

14.     Plaintiff is a precious metals expert who has dedicated much of his life to the gold industry. In 2014, Plaintiff established AGR, a gold refinery in Entebbe, Uganda. Plaintiff is no longer a shareholder of AGR nor has any involvement in the company.

15.     Plaintiff is sanctioned under E.O. 13413, as amended, and his name is included on OFAC's SDN List.

16.     Defendant OFAC is a federal administrative agency of the United States Department of the Treasury and is located at 1500 Pennsylvania Avenue, NW, Freedman's Bank Building, Washington D.C. 20220. OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent

5

with E.O. 13413, as amended, and the implementing regulations at 31 C.F.R. Parts 501 and 547, the "Reporting, Procedures, and Penalties Regulations," and the "Democratic Republic of the Congo Sanctions Regulations," respectively. OFAC imposed sanctions on Plaintiff under E.O. 13413, as amended, and denied Plaintiff's petitions for administrative reconsideration.

17.     Defendant Bradley T. Smith is the Director of OFAC. In this role, Mr. Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for administrative reconsideration. Mr. Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.    Plaintiff's Request for Stay of Designation

18.     On March 17, 2022, Plaintiff submitted a request to stay any sanctions investigation or pending action under consideration targeting him. In doing so, Plaintiff exercised his right under the APA to appear before an agency (i.e., OFAC) via written submission to provide information that may be relevant to a proceeding or action in connection with an agency function.

19.     Plaintiff's request included substantive arguments and extensive documentation negating certain allegations raised by open-source reporting that Defendants considered and/or relied upon in designating him.

20.     Specifically, Plaintiff provided documents evidencing AGR's due diligence measures to ensure gold traceability in the supply chain, including: 1) AGR's account opening Know Your Customer ("KYC") form; 2) AGR's onboarding process; 3) AGR's client acceptance policy; 4) AGR's precious metals supply chain policy; 5) AGR's anti-money laundering and counterterrorism financing compliance requirements; 6) AGR's country list; 7) AGR's anti-bribery policy compliance handbook; and 8) AGR's employee acknowledgement of AGR's anti-bribery policy. Plaintiff also provided information regarding AGR's policies and procedures to

determine the origin of the gold it sources and refines, including the types of documents it requires from clients before a business relationship is established, employee training programs, and regular independent audits with respect to AGR's compliance with those measures.

21.    Plaintiff's submission also provided information and supporting documentation that the circumstances supporting a designation would no longer be applicable as he is no longer a shareholder nor is involved with the management of AGR.

22.    Plaintiff requested that his submission be included in any administrative record being, or to be compiled, as part of a sanctions investigation involving him that might lead to his designation by OFAC. He also expressed his willingness to cooperate with OFAC and indicated his intention to provide further information and evidence in support of his request.

**B.    OFAC's Designation of Alain Goetz**

23.    On March 17, 2022, OFAC designated Plaintiff and AGR under E.O. 13413, as amended. Press Release, U.S. Dep't of the Treasury, *Treasury Sanctions Alain Goetz and a Network of Companies Involved in the Illicit Gold Trade* (Mar. 17, 2022). OFAC also designated eight companies for allegedly being owned and/or controlled by Plaintiff. *Id.*

24.    Specifically, OFAC designated Plaintiff for allegedly: (1) being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; (2) being a leader of AGR, an entity whose property and interests in property are blocked under the Order; and (3) having acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked under the Order. 87 Fed. Reg. 16552 (Mar. 23, 2022).

25.     As a result of his designation, Plaintiff's name was added to OFAC's SDN List. The legal consequence of Plaintiff's designation is that his property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are prohibited from engaging in any transactions or dealings with him. Moreover, U.S. and foreign persons who engage in certain transactions or dealings with Plaintiff risk exposure to sanctions themselves under E.O. 13413, as amended.

26.     On April 29, 2022, Plaintiff initiated this action against Defendants, seeking judicial review of OFAC's designation of him under E.O. 13413, as amended, and his inclusion on the SDN List. In particular, Plaintiff asserted that OFAC failed to consider his March 17, 2022 submission prior to designating him.

27.     On January 31, 2023, OFAC disclosed the administrative record underlying its determination that Plaintiff meets the criteria for designation under E.O. 13413, as amended.

28.     That record demonstrated that, in designating Plaintiff, OFAC made three determinations in support of its designation action. First, OFAC determined that Plaintiff is responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. First Admin. Record ("A.R. 1") at 0013. Second, OFAC determined that Plaintiff is a leader of AGR, an entity whose property and interests in property are blocked under E.O. 13413, as amended. *Id.*   Third, OFAC determined that Plaintiff has acted or purported to act for or on behalf of, directly or indirectly, AGR. *Id.*

29.     With respect to the first determination, OFAC concluded that Plaintiff incorporated AGR in 2014, has directly or indirectly owned AGR since then, and was chief executive officer

of, and had other roles at AGR, and was involved in AGR's gold trading activities until at least 2017. *Id.* at 0026.

30.     OFAC also concluded that AGR has engaged in the illicit trade in gold of the DRC since at least 2016, and Plaintiff was involved in AGR's activities. *Id.* at 0028. Further, OFAC concluded that through his involvement in AGR, Plaintiff is responsible for or complicit in, or has engaged in, directly or indirectly, support to Mai-Mai Yakutumba, Raia Mutomboki, and undisclosed others through the illicit trade in gold of the DRC. *Id.* at 0031.

31.     Additionally, OFAC concluded that the Mai-Mai Yakutumba, Raia Mutomboki, the undisclosed others, and DRC rebel groups, are involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC. *Id.* at 0032.

32.     Finally, OFAC concluded that Plaintiff is responsible for or complicit in, or has engaged in, directly or indirectly, support to other DRC rebel groups that are involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. *Id.* at 0033.

33.     With respect to the second and third determinations, the unredacted portions of the evidentiary memorandum do not reveal whether OFAC made any additional conclusion(s) related to the respective determinations.

##     C.     First Administrative Reconsideration Matter

34.     OFAC administers regulatory procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow interested parties to request reconsideration of their designations by arguing that there is an insufficient basis for the designation; assert that

the circumstances resulting in the designation no longer apply; and/or propose remedial measures designed to negate the basis of the designation. *Id.*

35.    OFAC has also provided guidance for persons seeking delisting. U.S. Dep't of the Treasury, *Filing a Petition for Removal from an OFAC List*, https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.  That  guidance states that "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id.* The guidance also offers examples of situations in which a delisting would be warranted, including "a positive change in behavior" or when "the basis for the designation or other sanction no longer exists." *Id.*

36.    Following the resolution of litigation challenging Plaintiff's initial designation, on December 6, 2022, OFAC sent Plaintiff's counsel a letter confirming receipt of the materials sent on March 17, 2022, the same date as Plaintiff's designation. Specifically, OFAC informed Plaintiff that it did not receive the March 17 submission until after Plaintiff's designation, even though that designation had not yet been publicly announced. OFAC stated that "in exercise of [its] administrative discretion in these specific circumstances, [OFAC has] determined to treat [Plaintiff's] March 17 submission as a request for delisting pursuant to 31 C.F.R. § 501.807." OFAC also stated that "[i]n connection with this petition, [OFAC] will be providing [Plaintiff] a redacted version of the administrative record of [Plaintiff's] March 17 designation" and that if Plaintiff wishes to submit additional material in support of his delisting, to do so within 30 days or request an extension.

37.    On January 31, 2023, OFAC produced the unclassified and non-privileged portions of the administrative record underlying Plaintiff's March 17, 2022 designation, including the evidentiary memorandum and supporting exhibits.

38.     On February 28, 2023, Plaintiff provided a submission containing additional arguments and information to further support his request for stay of designation, which OFAC was treating as a petition for administrative reconsideration. Specifically, Plaintiff asserted that there is an insufficient basis for his designation insofar as OFAC has not alleged sanctionable conduct by Plaintiff himself with respect to dealing in conflict gold with rebel groups in the DRC. Second, Plaintiff offered a separate, alternative argument by proposing remedial measures which, if adopted, would negate the basis for his designation under E.O. 13413, as amended.

39.     More specifically, Plaintiff asserted that the administrative record failed to specify conduct linking him to rebel groups purportedly operating in the DRC, much less allege any ongoing conduct by Plaintiff, which therefore does not afford Plaintiff a meaningful opportunity to rebut OFAC's allegations. Indeed, many of the exhibits that OFAC relied upon in the designation action do not even mention him. Instead, Plaintiff argued, OFAC attributed purported sanctionable conduct by one party (AGR) to Plaintiff without showing how Plaintiff himself was involved in that activity.

40.     With respect to all three determinations, Plaintiff stated that much of OFAC's evidence linking him to AGR was "until at least 2017" or "as of 2017." In other words, Plaintiff argued that OFAC's findings and conclusions were based on sources that describe alleged activities until 2017—i.e., purely historic conduct—which calls into question OFAC's fact-finding procedures as to how OFAC gathered and assessed the information underlying Plaintiff's designation.

41.     Furthermore, Plaintiff argued that OFAC did not evidence any ongoing conduct by Plaintiff nor provide supporting documents demonstrating that he currently owns or controls AGR, thereby negating the second determination—i.e., that Plaintiff is a leader of AGR. Plaintiff also

provided evidence that he is no longer involved with AGR, including exhibits evidencing his resignation from AGR's board of directors, share transfer agreement, and other similar documents.

42.    Alternatively, Plaintiff proposed remedial measures designed to negate the basis of his designation. Amongst others, these measures included disclosure of information and documentation regarding Plaintiff's current sources of income and the entities that he owns or controls or is otherwise involved with, the implementation of sanctions and anti-money laundering compliance procedures, and regular certifications on various sanctions-related compliance measures.

43.    In response, on March 21, 2023, OFAC assigned the matter Case ID: DRC-31659 and issued a questionnaire seeking additional, corroborating, or clarifying information. The questionnaire sought information regarding, for example, personal identifying and biographical information, ownership interests and assets, business activities and involvement, legal proceedings, relationships with certain entities and individuals, and supporting documentation.

44.    Plaintiff responded to OFAC's questionnaire on April 11, 2023, providing the requested information and extensive documentation, including various corporate records regarding several entities.

45.    On April 25, 2023, OFAC issued a second questionnaire to Plaintiff seeking further information and documentation to clarify or corroborate certain responses in Plaintiff's April 11, 2023 response to OFAC's March 21, 2023 questionnaire. OFAC also requested information regarding certain public reporting and Plaintiff's business activities in Turkey, United Arab Emirates, Brazil, Venezuela, Rwanda, Uganda, and Belgium.

46.    On May 19, 2023, Plaintiff responded to that questionnaire and provided additional supporting documentation.

47.     On June 9, 2023, Plaintiff provided a supplemental submission to further support his delisting request. Specifically, Plaintiff provided additional information responsive to OFAC's March 21, 2023 and April 25, 2023 questionnaires.

**D.     OFAC's First Denial Decision**

48.     On June 30, 2023, OFAC denied Plaintiff's delisting request. In its denial letter, OFAC stated that it "determined that [Plaintiff] has not provided credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply." In doing so, OFAC acknowledged that Plaintiff no longer met the criteria for designation under E.O. 13413, as amended, for being a leader of AGR, but stated that there were other grounds for which Plaintiff should remain designated.

49.     Specifically, OFAC stated that Plaintiff still meets the criteria for designation under E.O. 13413, as amended, for having acted or purported to act for or on behalf of, directly or indirectly, AGR. OFAC based this determination on Plaintiff's alleged past conduct on behalf of the company, including, for example, Plaintiff's participation in a meeting as AGR's CEO with a U.S. Embassy Kampala economic officer in 2017. Specifically, OFAC stated that "[i]t is undisputed that AGR is an entity whose property and interests in property are blocked pursuant to the Order. [Plaintiff] therefore meets the criteria for designation pursuant to the Order for having acted or purported to act for or on behalf of, directly or indirectly, AGR."

50.     The denial letter further states that "AGR has sourced illicit gold from mines in the regions of DRC that are controlled by armed groups, including the Mai-Mai Yakutumba and Raia Mutomboki, that are involved in destabilizing activities in South Kivu, DRC." OFAC's denial letter further maintained that due to Plaintiff's "direct or indirect ownership or control of AGR during the relevant periods, having held leadership positions in AGR when this activity occurred,

and his prior involvement in AGR's gold trading activities," he continues to the meet the criteria for designation.

51.    OFAC also assessed that the allegations regarding Plaintiff's "links to refining conflict gold at AGR are credible, and OFAC has relied on information that is more recent than that of 2017 while assessing his petition for delisting." According to OFAC, Plaintiff "has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR and other entities" and that he "currently owns and controls companies that *may* enable him to continue engaging in the illicit gold trade." (emphasis added).

52.    Notably, OFAC assessed that Plaintiff "has not taken any responsibility for his past actions with respect to his involvement in the conflict gold trade, which casts doubt that [Plaintiff] has undergone a change in circumstances with respect to his original designation."

53.    In support of its denial action, OFAC's denial letter cited foreign policy guidance from the U.S. Department of State, which recommended that OFAC deny Plaintiff's petition for administrative reconsideration. According to the guidance, Plaintiff "has been an integral and essential part of the conflict gold trade in the DRC since the 1990s through the activities of several companies and associates." Further, "[f]oreign policy considerations related to the ongoing conflict in Eastern DRC . . . and Uganda lead to a recommendation of denial for delisting absent a documented change in behavior beyond what [Plaintiff] has provided to date."

54.    The State Department guidance noted that even if Plaintiff "purports to have formally distanced himself from AGR, [Plaintiff's] recent statements and submissions continue his previous line of thinking and action continues. [Plaintiff] fails to provide any indications that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him." The State Department assessed that

Plaintiff "has provided no basis to believe that his views or approach to sourcing gold from high-risk or conflict areas has changed. Whether his business is conducted via AGR or other entities, his statements demonstrate that his ongoing and likely future role in this trade and the broader policy concerns connected thereto remain a significant concern. Throughout the decades [Plaintiff] has denied any awareness of, or refused to accept responsibility for the role of gold in conflict in the DRC."

55.     The State Department guidance indicated that to demonstrate changed behavior that would justify delisting, that Plaintiff should first demonstrate acceptance and acknowledgement of responsibility for his past actions and their connection to the conflict in the region. According to the State Department, such acceptance would include "sharing information about his activities and others involved in this gold trade, and then identify tangible commitments to contributing to positive change in the DRC, as well as the gold sector throughout the region." According to the State Department, delisting Plaintiff without this level of acknowledgement and changed behavior would undermine U.S. actions in Eastern Congo and other contexts related to the conflict and illicit gold trade.

56.     OFAC acknowledged that Plaintiff proposed remedial measures relating to, for example, compliance procedures, reporting requirements, periodic audits, and other provisions; "[h]owever, any additional insight offered to OFAC through the implementation of these proposed steps would not undermine the criteria for designation." According to OFAC, Plaintiff's "past obfuscation undermines his credibility and OFAC's trust in the materials that would be provided by [Plaintiff] under the requirements of a [Terms of Removal Agreement ("TOR")]."

57.     Finally, OFAC noted that it "may be constrained in its ability to enforce the requirements of a TOR as it relates to entities that are domiciled outside of the United States."

Thus, OFAC stated that Plaintiff's delisting request is denied, and that his name would appear on the SDN List.

       **E.**      **Second Administrative Reconsideration Matter**

      58.    On July 21, 2023, in efforts to address OFAC's bases for denying his delisting request, Plaintiff sent a letter to OFAC proposing additional remedial measures. In this letter, Plaintiff requested that OFAC reopen Case ID DRC-31659 and consider the remedial measures in tandem with those proposed in his February 28, 2023 submission. He noted that if OFAC is unwilling to reopen the matter, then OFAC should consider the remedial measures alongside those proposed in his February 28, 2023 submission.

      59.    Specifically, Plaintiff proposed to make a public statement clarifying his previous statements regarding conflict minerals and acknowledging current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold. Plaintiff noted that the public statement would clarify that he understands that trade in conflict minerals has an adverse impact on local populations, fuels corruption and violence, and leads to environmental degradation. The public statement would also call upon those in the gold industry to adopt policies and procedures to identify and combat trade in conflict minerals.

      60.    Plaintiff indicated that while he proposes to make a formal public statement, he has already expressed his position on conflict minerals on X.com. In particular, Plaintiff cited a July 12, 2023 post on X.com stating that "[e]verything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefit rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain. However, we should not forget the vulnerable Artisanal and Small-scale Miners who earn an honest living from mining in order to look after their families. Supporting these numerous small groups is important."

61.     Plaintiff also proposed that he would provide a donation in an amount that he can afford to a charity or non-profit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the Democratic Republic of the Congo or the Government of Uganda.

62.     Finally, Plaintiff proposed to undertake efforts to promote and support advocacy initiatives related to supply chain transparency.

63.     Plaintiff request that, if accepted by OFAC, these remedial measures would be memorialized in a TOR which would lead to the removal of Plaintiff's E.O. 13413, as amended, designation and name from the SDN List in exchange for his implementation of those measures. Plaintiff noted that he is willing to consider any additional remedial measures that OFAC believes are necessary to merit his delisting.

64.     On July 28, 2023, OFAC opened a new case for that submission and assigned the matter Case ID: DRC-34969.

65.     On August 28, 2023, OFAC issued a questionnaire seeking additional, clarifying, or corroborating information with respect to Plaintiff's additional remedial measures proposed in his July 21, 2023 letter "to assist OFAC in properly evaluating whether there has been a change in [Plaintiff's] circumstances since OFAC rendered its decision on June 30."

66.     Specifically, OFAC requested more information regarding the nature of Plaintiff's proposed statement. In particular, OFAC inquired as to the substance of the proposed clarifications; the timing, venue, and nature of such clarifications; whether and how such clarifications would address Plaintiff's prior conduct and statements; and whether Plaintiff intends to address the topic of gold trade in the DRC, Uganda, the UAE, and other places.

67.    OFAC also asked for more information regarding the nature of Plaintiff's financial condition and the proposed donation. This included an update on Plaintiff's financial situation since his April 11, 2023 response to OFAC's March 21, 2023 questionnaire; the amount and frequency of any anticipated donations; the anticipated recipients of such donations; and whether such donations would be attributed to Plaintiff or made anonymously.

68.    Finally, OFAC requested additional information regarding the proposed advocacy efforts, including the types of activities Plaintiff is willing to pursue, and whether any companies that Plaintiff owns or controls intend to issue any public reports or take other public actions regarding their sourcing and supply chain practices.

69.    On November 26, 2023, Plaintiff responded to the questionnaire and provided additional information and arguments in support of his delisting request. In doing so, Plaintiff noted that his "proposed clarifications will address his prior conduct and statements by advocating for transparency, accountability, and continuous improvement with respect to the gold sector, making clear that his prior positions were either misconstrued or are being retracted." Plaintiff noted that he "fully understands and recognizes that there are serious concerns and risks arising from sourcing minerals from high-risk or conflict areas, and that there are immense consequences that arise as a result of illicit trade benefitting the conflict in the DRC and Great Lakes Region."

70.    Plaintiff also stated that he "has already made several public statements regarding these points and is committed to further addressing the gravity of the situation in the DRC and Great Lakes Region with respect to the sourcing and trade of conflict gold" and provided examples of such statements on X.com. For instance, Plaintiff has stated on X.com that "[e]verything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefits rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain."

He noted that he "intends to make an additional public statement that would underscore these principles and reinforce his position on conflict gold."

71.    Moreover, Plaintiff informed OFAC that since his April 11, 2023 response to OFAC's March 21, 2023 questionnaire and July 21, 2023 letter, his financial situation had worsened due to an investment that went awry, and his lack of business activities and additional sources of income. As such, Plaintiff noted that he no longer has the means to make a meaningful donation, but is hopeful that he will reestablish himself financially following his delisting and will be able to provide such a donation in the future.

72.    With respect to advocacy initiatives, Plaintiff stated that he is committed to promoting and supporting advocacy initiatives aimed at enhancing supply chain transparency. In this regard, Plaintiff indicated his intention to join partnerships and participate in and promote supply chain transparency awareness campaigns, and plans to engage with non-governmental organizations that specialize in responsible sourcing and sustainable mining practices to develop best practices for supply chain transparency, including the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum.

73.    Plaintiff stated that he also intends to launch awareness campaigns to educate stakeholders on the importance of supply chain transparency and implementing guidelines by the International Conference on the Great Lakes Region ("ICGLR") and Organisation for Economic Co-operation and Development ("OECD").

74.    Plaintiff also clarified that the companies in which he still maintains an ownership interest are inactive.

75.    Finally, Plaintiff asserted an additional basis for delisting and argued that there is an insufficient basis for his continued designation. Specifically, OFAC relied on the State

Department's foreign policy guidance in denying his delisting request which did not provide any basis for his continued designation that was connected to the designation criteria of E.O. 13413, as amended, nor to the bases for delisting set forth in 31 C.F.R. § 501.807.

76.    In support of that argument, Plaintiff noted that there is no U.S. legal authority that requires an admission of sanctionable conduct to achieve delisting and that even OFAC's Procedures Governing Delisting from the SDN List does not express a requirement that the blocked person admit to the conduct underlying their designation to achieve delisting. He likewise noted that there is no requirement in the Procedures Governing Delisting from the SDN List which would require Plaintiff to share information about the activities of others to secure delisting. Nor are there requirements in those procedures which require a blocked person to identify commitments to contribute to positive change in a region, sector, or otherwise to secure delisting. Thus, by requiring admissions, information sharing on the activities of others, and committing to contributing to "positive change"—a term undefined by the State Department—the State Department, and OFAC, through its reliance on that guidance, impermissibly expanded the burden imposed by 31 C.F.R. § 501.807.

77.    Moreover, Plaintiff asserted that many parties who have been removed from the SDN List without admitting involvement in sanctionable conduct, sharing information about the activities of others, or contributing to positive change. There is no explanation offered by OFAC as to why those similarly situated parties—i.e., blocked persons seeking removal from the SDN List under 31 C.F.R. § 501.807—were not subject to this expanded burden, while Plaintiff is.

78.    In addition, Plaintiff noted that he has already denounced trading in conflict gold and has voiced his commitment to improving the gold sector in the region. He is also no longer a leader of AGR, as OFAC conceded in its denial letter, and Plaintiff has severed his relationship

with AGR by divesting his interests in, and ceasing his role within the company. Thus, Plaintiff noted that he indeed has demonstrated a change in the circumstances underlying his designation.

79.    Plaintiff also asserted that the alleged investigations cited in the State Department's foreign policy guidance do not form a lawful basis to maintain sanctions on Plaintiff, as they do not evidence sanctionable conduct nor pertain to the DRC. For example, that same guidance noted that the money laundering case was "unrelated to [Plaintiff's] activities in the DRC." In any event, as Plaintiff noted, he is unaware of any ongoing or pending investigations involving him by authorities in Belgium and/or the UAE with respect to money laundering or any other alleged infraction, or any judgment involving him which requires him to pay 558 million euros or any other amount. Plaintiff indicated, however, that he is aware that there has been false reporting alleging such circumstances.

80.    Thus, Plaintiff asserted that there is an insufficient basis for his continued designation under E.O. 13413, as amended, to the extent that such continued designation is based on the State Department's foreign policy guidance memorandum. Indeed, there is no legal requirement for Plaintiff to admit to sanctionable conduct, provide information on others, commit to positive change in the region, nor demonstrate "changed behavior," as opposed to a change in the circumstances that gave rise to the initial designation.

81.    Despite the lack of such legal requirements, Plaintiff noted that he has, in fact, demonstrated a change in circumstances by separating himself from those entities OFAC identified as the means through which he engaged in sanctionable conduct. Further, Plaintiff identified commitments to contribute to positive change in the DRC through public statements, willingness to engage in activities for transparency with respect to the trade in minerals, and commitment to donate to organizations combatting illicit gold trade once he has the financial means to do so.

82.     Finally, Plaintiff provided additional information detailing his philanthropic activities both within and outside of Uganda to demonstrate his commitment to making a positive impact in the community and priority to support humanitarian causes.

**F.     OFAC's Second Denial Decision**

83.     On March 1, 2024, Defendants denied Plaintiff's second delisting request, stating that it "has determined that [Plaintiff] has not provided credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in [his] designation no longer apply."

84.     Specifically, Defendants stated that "[n]either the proposed remedial measures nor the other arguments in [Plaintiff's] July and November 2023 submissions contradict OFAC's determinations or demonstrate that the circumstances resulting in [his] designation no longer apply. Accordingly, OFAC continues to find that [Plaintiff] meets two of the three bases for his designation."

85.     Defendants also stated that Plaintiff "does not present any information to contradict that finding" (that two of the three bases for his designation remain valid) and "also does not take into consideration the unique circumstances giving rise to [Plaintiff's] designation." Defendants further stated that OFAC does not require an admission of sanctionable conduct "as a prerequisite to delisting in general, although in some cases, acceptance of responsibility for past acts could be evidence of changed circumstances, depending on the totality of the circumstances. Here, there is no evidence that [Plaintiff] has accepted responsibility for his past acts."

86.     Further, Defendants noted that "State has provided foreign policy guidance indicating that [Plaintiff's] proposed statements, and the statements [Plaintiff] has allegedly already made, are insufficient to ameliorate State's foreign policy concerns with respect to

delisting [Plaintiff]. Accordingly, "OFAC assesses that such statements and proposed statements do not constitute a change in circumstances warranting [Plaintiff's] delisting."

87.    Additionally, Defendants assessed that Plaintiff's advocacy to promote and support advocacy initiatives related to supply chain transparency "lack sufficient specificity to constitute a change in circumstances warranting delisting."

88.    Finally, Defendants rejected Plaintiff's proposed remedial measures, stating that OFAC "has reason to believe that such measures would not provide credible assurance that [Plaintiff] will not engage in the activities that resulted in his designation pursuant to the Order and would not negate the basis for his designation." Defendants added that Plaintiff's "past obfuscation undermine[s] his credibility and that OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States." OFAC's denial letter does not identify that past obfuscation it was considering in undertaking that finding.

## G.    Disclosure of Administrative Records Underlying OFAC Denials

89.    On June 4, 2024, OFAC produced to Plaintiff the unclassified, non-privileged portions of the administrative records for OFAC's June 30, 2023 and March 1, 2024 denials of Plaintiff's delisting petitions, and filed the certified list of contents of the administrative records in this matter. *See* ECF No. 29.

### 1.    Administrative Record for OFAC's June 30, 2023 Denial

90.    The administrative record underlying OFAC's June 30, 2023 denial contains OFAC's purported rationale for denying Plaintiff's first petition for administrative reconsideration. Specifically, OFAC cited the State Department's foreign policy guidance

recommending that OFAC deny Plaintiff's petition for administrative reconsideration. Second Admin. Record ("A.R. 2") at 0011.

91.     In sum, OFAC conceded that there is no longer a basis for designation for Plaintiff being a leader or AGR, but determined that Plaintiff continued to meet two of the three original bases for designation under E.O. 13413, as amended. Namely, OFAC determined that Plaintiff continues (1) to be responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; and (2) has acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked under E.O. 13413, as amended. *Id.* at 0012. OFAC stated that it has reason to doubt that Plaintiff's claims of changed behavior truly constitute a change in circumstances.

2.     Administrative Record for OFAC's March 1, 2024 Denial

92.     The administrative record underlying OFAC's March 1, 2024 denial contains Defendants' purported rationale for denying Plaintiff's second petition for administrative reconsideration. Specifically, OFAC stated that Plaintiff "has failed to establish that OFAC lacked a sufficient basis for OFAC's March 17, 2022 designation of [Plaintiff] pursuant to E.O. 13413, as amended, or that circumstances resulting in the designation no longer apply. In reaching this determination, OFAC has taken into account the foreign policy guidance provided by State, as memorialized in a February 28, 2024 memorandum." Third Admin. Record ("A.R. 3") at 0007.

93.     That administrative record stated that Plaintiff still meets two of the three original bases for designation under E.O. 13413, as amended. Namely, that OFAC determined that Plaintiff (1) is responsible for or complicit in, or has engaged in, directly or indirectly, support to persons,

including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; and (2) has acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked under E.O. 13413, as amended. *Id.* at 0011.

94.    OFAC also stated that it has reason to believe that Plaintiff's claims of changed behavior and proposed remedial measures do not constitute a change in circumstances warranting delisting. *Id.* Accordingly, OFAC determined that Plaintiff failed to demonstrate that the circumstances resulting in his designation no longer apply or that an insufficient basis exists for his designation pursuant to 31 C.F.R. § 501.807. *Id.*

95.    Specifically, the administrative record noted that Plaintiff's proposed remedial measures do "not fully address the basis for designation or ameliorate the threat posed by [Plaintiff's] past and future activities." *Id.* at 0012. OFAC added that Plaintiff "has not shown himself to be trustworthy enough for OFAC to enter into a proposed TOR as a way of negating [Plaintiff's] bases for designation." Further, OFAC reasoned that it "may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States." *Id.*

96.    The administrative record stated that it does not require an admission of sanctionable conduct as a prerequisite to delisting in general, "although in some cases, acceptance of responsibility for past acts could be evidence of changed circumstances, depending on the totality of the circumstances." The administrative record found that there is no evidence that Plaintiff has accepted responsibility for his alleged past acts. *Id.* at 0013.

97.    With respect to Plaintiff's statements on X.com, the administrative record cites to the State Department's February 2024 foreign policy guidance memorandum, indicating that the statements are "vague, high level, and devoid of serious content" and "do not provide any meaningful demonstration of change in behavior." *Id.*

98.    OFAC also cited the State Department's June 2023 foreign policy guidance memorandum in recommending the denial of Plaintiff's first petition for administrative reconsideration. Specifically, the administrative record cited Plaintiff's "role as a buyer and trader of gold during the DRC's civil wars in the 1990s helped create the ecosystem that exists today where gold is used by numerous armed groups to fund conflicts and violence." It was further noted that "[t]his situation has resulted in the death of tens of thousands of people and led to the injury and displacement of millions of others in Eastern DRC and the surrounding region." *Id.* at 0014.

99.    OFAC further cited the State Department's February 2024 foreign policy guidance that it "cannot meaningfully assess the content of proposed future statements, especially when the content of such proposed statements is amorphous and vague. Changes in behavior are demonstrated by tangible actions rather than plans to make statements in the future without having the detail needed to assess the contents of such statements." *Id.* Accordingly, OFAC assessed that the proposed statements do not constitute a change in circumstances. *Id.*

100.    With respect to the advocacy initiatives that Plaintiff proposed, OFAC stated that Plaintiff has not provided any further information about the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum, and therefore OFAC is unable to assess the merits of these organizations related to Plaintiff's delisting request. *Id.* at 0015. Further, "proposed possible future actions do not at this point provide a basis for finding changed circumstances" as Plaintiff "does not offer any further information about these initiatives nor appeared to have

initiated them." *Id.* Accordingly, OFAC assessed that Plaintiff's proposal to join partnerships aimed at promoting supply chain transparency lacks sufficient specificity to constitute a change in circumstances warranting delisting or to serve as a component of a TOR. *Id.*

101.    OFAC noted that Plaintiff "has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR and other entities, and assessed that [Plaintiff] currently owns and controls companies that may enable him to continue engaging in the illicit gold trade." *Id.* at 0016. OFAC does not explain how these inactive companies, some of which are in liquidation, could be resuscitated to continue engaging in the illicit gold trade.

102.    Additionally, OFAC concluded that delisting Plaintiff at this time "may undermine or complicate international efforts to enforce standards and accountability and could have negative foreign policy consequences." *Id.* at 0016. In support of this conclusion, OFAC cites to the sanctions against Plaintiff by the European Union ("EU"), an anonymized summary by the UAE Financial Intelligence Unit which does not specifically identify Plaintiff; a purported review by the Belgian Federal Prosecutor's Office "unrelated to [Plaintiff's] activities in the DRC;" and information gathering by the UN Group of Experts on Plaintiff's activities since at least 2009 as part of its ongoing focus on the gold trade, which notes that "no direct action has been taken by the Security Council to date against [Plaintiff] or his companies." *Id.* at 0016-0017.

103.    OFAC dedicates a section on the State Department's recommendation on foreign policy grounds that OFAC deny Plaintiff's petition for administrative reconsideration, reiterating several points made in the above paragraphs. *Id.* at 0017-0018. The State Department again stated that Plaintiff "has not even acknowledged his past conduct or demonstrated an ongoing commitment to new behavior." *Id.* at 0018-0019. Further, the State Department asserted that

"commitments to make statements or take actions in the future, especially when they are vague and amorphous, as in the present case, are generally insufficient to justify delisting." *Id.* OFAC's administrative record does not explain why the commitment to take actions in the future are generally insufficient to justify delisting given that OFAC's delisting procedures expressly state that a party "may propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a).

104.     Defendants' administrative record underlying the second denial does not provide an explanation for discounting the arguments and evidence presented by Plaintiff during his delisting matter. Further, the administrative record does not allege any specific or ongoing sanctionable conduct by Plaintiff that meets the criteria for continued designation under E.O. 13413, as amended.

105.     Further, the administrative record does not tie any conduct by AGR relating to the conflict gold trade with rebel groups in the DRC to Plaintiff, and instead reflects that Plaintiff is no longer a leader of AGR and does not currently engage in activities, directly, or indirectly, through AGR.

106.     Moreover, despite raising credibility concerns regarding Plaintiff, Defendants do not indicate that they determined, concluded, or otherwise found that Plaintiff made a false statement during his delisting matter.

**H.     Harm to Plaintiff**

107.     Defendants' designation of Plaintiff—and Defendants' denial of Plaintiff's petition for administrative reconsideration—has caused substantial harm to Plaintiff personally, professionally, and financially, tarnishing his reputation and upending his ability to conduct basic transactions to support his livelihood.

108.    Specifically, as a direct result of his designation under E.O. 13413, as amended, Plaintiff has experienced personal and commercial financial devastation due to the significant loss in commercial partnerships, business relationships, and revenue from his businesses. Indeed, OFAC's designation caused the closure of Plaintiff's businesses, which are now inactive or in the process of liquidation. Moreover, Plaintiff has had to cease his involvement in companies that he founded, such as AGR, due to the designation.

109.    Plaintiff has now been sanctioned for over two years, during which time he has essentially been cut off from much of the global financial system as many foreign financial institutions and service providers have refused to undertake any activities with Plaintiff for fear of exposure to U.S. sanctions themselves. For example, global financial institutions have closed Plaintiff's accounts, and his health insurance has been cancelled due to his designation. *See* A.R. 3 at 0043.

110.    Further, as the legal consequences of Plaintiff's designation include a prohibition on U.S. persons engaging in transactions and dealings with Plaintiff and exposure of non-U.S. persons to sanctions for engaging in any transactions with Plaintiff anywhere in the world, Defendants have imposed an effective global ban on dealings with Plaintiff.

111.    Finally, OFAC's allegations linking Plaintiff to gold trafficking and the financing of armed conflict in the DRC have tarnished Plaintiff's name and reputation on a global scale, and this harm will only compound over time so long as he remains subject to U.S. sanctions.

## LEGAL CLAIMS

### COUNT I

**DEFENDANTS' DENIAL OF PLAINTIFF'S JULY 21, 2023 PETITION FOR
ADMINISTRATIVE RECONSIDERATION CONSTITUTES ARBITRARY AND
CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE
PROCEDURE ACT**

112.   Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

113.   Agency action, findings, and conclusions found to be not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

114.   OFAC promulgates procedures by which parties subject to its sanctions can petition for reconsideration of their designation and for delisting from the SDN List. 31 C.F.R. § 501.807. Pursuant to OFAC's delisting procedures, a designated person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" or "*propose remedial steps on the person's part . . . which the person believes would negate the basis for designation.*" 31 C.F.R. § 501.807(a) (emphasis added). Designated persons may also argue that there has been a change in circumstances nullifying the reasons for their designation. 31 C.F.R. § 501.807.

115.   By failing to provide any basis for Plaintiff's continued designation that is connected to the designation criteria of E.O. 13413, as amended, or to the bases for delisting set forth in 31 C.F.R. § 501.807, Defendants acted inconsistent with their own regulations and arbitrarily and capriciously under the APA.

116.   Defendants' administrative record underlying March 1, 2024 denial does not provide a reasoned explanation for discounting the arguments and evidence presented by Plaintiff

during the course of his delisting matter. Indeed, Defendants do not allege any specific or ongoing sanctionable conduct by Plaintiff that meets the criteria for continued designation under E.O. 13413, as amended.

117.    In addition, by speculating as to companies that Plaintiff purportedly owns or controls that "may enable him to continue engaging in the illicit gold trade," Defendants have tacitly conceded that Plaintiff is not involved in sanctionable conduct at the present time. Basing an agency action on speculation that a party may engage in certain conduct is per se arbitrary and capricious in violation of the APA.

118.    Further, by requiring an admission of sanctionable conduct to merit potential delisting, OFAC impermissibly expanded the scope of 31 C.F.R. § 501.807 and failed to provide a meaningful process by which Plaintiff can challenge his designation. Defendants thus acted arbitrarily and capriciously in violation of the APA. Notably, there is no U.S. legal authority that requires an admission of sanctionable conduct to achieve delisting, and even OFAC's Procedures Governing Delisting from the SDN List does not express a requirement that the blocked person admit to the conduct underlying their designation to achieve delisting. Such an ad hoc expansion of the burden upon the party petitioning for delisting from the SDN List is similarly arbitrary and capricious and not in accordance with law in violation of the APA.

119.    Furthermore, Defendants' administrative record fails to specify conduct linking Plaintiff to rebel groups purportedly operating in the DRC, much less allege any ongoing conduct by Plaintiff, and, as such, does not afford Plaintiff a meaningful opportunity to rebut OFAC's denial action. In addition, Defendants' administrative record fails to describe how Plaintiff's inactive companies can be resuscitated to engage in the activities necessary to deal with rebel groups or trade in conflict gold in the DRC. Nor do Defendants explain how Plaintiff's failure to

admit Defendants' allegations that he is responsible for trade in conflict gold is a predictor that he will or has the ability to engage in such activities in the future. As no links are established between the information in the administrative record and the conclusions they purportedly support, and OFAC's determinations are merely conclusory and speculative statements failing to link any facts to the conclusion asserted, Defendants' denial was arbitrary and capricious and evidence a failure to engage in reasoned decision making.

120.    Furthermore, were Plaintiff to admit to the conduct for which he was sanctioned then his designation will be maintained as Defendants are already maintaining his designation, in part, because they have determined that he engaged in such alleged actions in the past. In other words, Defendants are pinning Plaintiff's continued designation on historic conduct (dating back to the 1990s) insofar as they already have acknowledged that that he is no longer at AGR, have not identified any present sanctionable conduct involving the DRC and conflict gold trade that he is engaged in, and have only stated that he may engage in such sanctionable conduct in the future. This renders OFAC delisting procedure at odds with due process—and thus not in accordance with law—insofar as it does not afford Plaintiff a meaningful opportunity to respond his designation. This is because Plaintiff's position with respect to whether he engaged in the conduct that OFAC has found sanctionable will be used against him regardless of an admission or denial of involvement in such conduct. Such circumstances are not in accordance with law and thus in violation of the APA.

121.    Moreover, many parties who have been removed from the SDN List without admitting involvement in sanctionable conduct, sharing information about the activities of others, or contributing to positive change. There is no explanation offered by OFAC as to why those similarly situated parties—i.e., blocked persons seeking removal from the SDN List under 31

C.F.R. § 501.807—were not subject to this expanded burden, while Plaintiff is. OFAC's failure to explain why Plaintiff is being treated in a disparate manner with these similarly situated parties in and of itself is per se arbitrary and capricious and in violation of the APA.

122.    In any event, Plaintiff has already denounced trading in conflict gold and has voiced his commitment to improving the gold sector in the region. Further, he has demonstrated that he is no longer a leader of AGR—as OFAC has conceded—and has severed his relationship with AGR by divesting his interests in, and ceasing his role within the company. Thus, Plaintiff has demonstrated a change in the circumstances underlying his designation. By ignoring this clear change in circumstances without alleging new conduct and indefinitely imposing sanctions on Plaintiff due to the past tense nature of the legal designation criteria under which he was designated, Defendants have acted arbitrarily and capriciously in violation of the APA.

123.    Defendants' failure to explain why Plaintiff's commitments to take actions in the future are generally insufficient to justify delisting, when its OFAC's own delisting procedures clearly state that a party "may propose remedial steps on the person's part . . . which the person believes would negate the basis for designation, is also not in accordance with law. Indeed, were OFAC's interpretation of its regulation correct, then it would negate the ability to propose remedial measures to negate the basis of designation in exchange for delisting—a right expressly afforded to persons on the SDN List by that regulation. Accordingly, OFAC's conclusion that commitments to future actions are generally insufficient to warrant delisting is not in accordance with law and thus in violation of the APA.

124.    Finally, despite raising credibility concerns regarding Plaintiff, Defendants fail to explain how they—or even that they did—determined, concluded, or otherwise found that Plaintiff

made a false statement during his delisting matter. Defendants have therefore acted arbitrarily and capriciously in violation of the APA.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Issue an order vacating OFAC's March 1, 2024 denial of Plaintiff's second petition for administrative reconsideration;

B.    Order Defendants to rescind Plaintiff's designation under E.O. 13413, as amended;

C.    Declare Defendants' designation of Plaintiff under E.O. 13413, as amended to be unlawful;

D.    Grant an award to Plaintiff of its costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

E.    Grant such other and further relief as the Court may deem proper.

Dated: July 22, 2024                                      Respectfully submitted,

/s/ Erich C. Ferrari, Esq.
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

*Attorney for Plaintiff*