**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ALAIN GOETZ                                         )
                                                    )
    Plaintiff,                   )
                                                    )
         v.                 )     Case No. 1: 22-cv-1204 (JEB)
                                                    )
LISA M. PALLUCONI                                   )
Acting Director of the Office of Foreign            )
Assets Control, *et al*.                            )
                                                    )
    Defendants.                  )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ………………………………………………………………………...1

BACKGROUND ……………………………………………………………………………4

    I.    Statutory and Regulatory Background ……………………………………………4

        A.    International Emergency Economic Powers Act …………………………4

        B.    Executive Order 13413, as Amended ………….…………………………5

        C.    Democratic Republic of the Congo Sanctions Regulations ……………..6

        D.    OFAC's Delisting Procedures …………………………………………..6

    II.    Statement of Facts …………………………………………………………...7

        A.    OFAC's Designation of Plaintiff …………………………………………7

        B.    Plaintiff's Complaint …………………….…………………………………8

        C.    OFAC's Administrative Record Underlying Plaintiff's Designation …......8

        D.    Plaintiff's First Administrative Reconsideration Matter ………………...10

        E.    OFAC's Denial Decision ……………………….…………………………13

        F.    OFAC's Administrative Record Underlying First Denial ……..………....15

        G.    Plaintiff's Second Administrative Reconsideration Matter ……….……..16

        H.    OFAC's Second Denial Decision ………………………………………..21

        I.    OFAC's Administrative Record Underlying Second Denial ……..………22

        J.    Plaintiff's Amended Complaint …………………………….………………24

LEGAL STANDARDS ……………………………………………………………………24

    I.    Summary Judgment Standard ………………………………………………24

DISCUSSION ……………………………………………………………………………...25

I.      The APA Imposes Limitations on OFAC and Requires this Court to Hold Unlawful Agency Action, Findings, and Conclusions that are Arbitrary and Capricious …………………………………………………...………………………….25

II.     OFAC Did Not Act Reasonably in Denying Plaintiff's Second Petition for Administrative Reconsideration …………………………………………………27

III.    Plaintiff's Arguments Demonstrate that OFAC Did Not Act Reasonably in Denying His Second Petition for Administrative Reconsideration ………………………...31

        A.      Plaintiff is Subject to Sanctions Solely for Past Conduct Which Has Abated ………………………………………………………………………………31

        B.      OFAC Does Not Have a Reasonable Basis to Doubt that Plaintiff Has Cut Ties with AGR or to Conclude that Plaintiff's Alleged Past Conduct Might Reoccur ………………………………………………………………..…...34

        C.      OFAC Has Not Linked Plaintiff's Conduct to Armed Groups in the DRC ………………………………………………………………………….....36

        D.      OFAC's Finding of No Changed Circumstances Justifying Delisting is Arbitrary and Capricious ……………………………………………...37

        E.      OFAC Has Not Provided a Reasoned Explanation as to Why Plaintiff's Proposed Remedial Measures are Inadequate …………………………39

        F.      OFAC's Denial of Plaintiff's Second Petition Because Plaintiff Has Not Admitted to Past Conduct While Stating that an Admission is Not Necessary for Delisting is Arbitrary and Capricious ……...………..……...42

CONCLUSION ………………………………………………………………………………45

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*Amerijet Int'l Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ...................................25, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................24

*Basengezi v. Smith*, No. 23-cv-1249 (JEB), 2024 WL 1050340 (D.D.C. Mar. 11, 2024) ......32, 44

*Bowman Transp., Inc. v. Arkansas-Best Freight*, 491 U.S. 281 (1974) ..............................26

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ..................................25

*Butte Cnty. v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010) ....................................................25

*Carter v. George Washington Univ.*, 387 F.3d 872 (D.C. Cir. 2004) .................................24

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ...............................26, 27

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Off. of Foreign Assets Control*,
    57 F.3d 913 (D.C. Cir. 2017) ..........................................................................26

*Friends of the Capital Crescent Trail v. Fed. Transit Admin.*,
    253 F. Supp. 3d 296, 302 (D.D.C. 2017) ............................................................27

*Getty v. Fed. Savings and Loans Ins. Corp.*, 805 F.2d 1050 (D.C. Cir. 1986) ..............27, 30

*Judulang v. Holder*, 565 U.S. 42 (2011) ..............................................................26, 27

*Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012) ......................................................25

*Karadzic v. Gacki*, 602 F. Supp. 3d 103 (D.D.C. 2022) .................................................32

*King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*,
    330 F. Supp. 3d 477 (D.D.C. 2018) ..................................................................24

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
    26 F.3d 492 (D.C. Cir. 2016) ..........................................................................24

*Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021) ........................35

*MomoCon, LLC v. Small Bus. Admin.*, No. 21-cv-2386 (RC) (D.D.C. Feb. 10, 2022) .......27, 30

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (1983) ...........................................................................25, 26, 29

*Olenga v. Gacki*, 507 F. Supp. 3d 260 (D.D.C. 2020) ……………………………………………32

*Pejcic v. Gacki*, No. 19-cv-02437 (APM), 2021 WL 1209299 (D.D.C. Mar. 30, 2021) ………….32

*Pharm. Research & Mfrs. Of Am. v. Fed. Trade Comm'n*, 790 F.3d 198 (D.C. Cir. 2015) ……….31

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) …………………………………………………..26

*Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006) ……………………………………...25

*U.S. Sugar Corp. v. EPA*, 830 F.3d 579 (D.C. Cir. 2016) ………………………………………...26

*Williams Gas v. FERC*, 475 F.3d 319 (D.C. Cir. 2006) …………………………………………30

*Xiaomi Corp. v. Dep't of Def.*, No. 21-cv-280 (RC),
    2021 WL 950144 (D.D.C. Mar. 12, 2021) …………………………………………………26

*Zevallos v. Obama*, 10 F. Supp. 3d 111 (D.D.C. 2014) ……………………………………………...25

## STATUTES

5 U.S.C. § 701 *et seq.* ……………………………………………………………………….4, 25

5 U.S.C. § 706 ……………………………………………………………………...…………25, 45

50 U.S.C. § 1701 ........................................................................................................................ 4

50 U.S.C. § 1702 ........................................................................................................................ 5

## EXECUTIVE ORDERS

Exec. Order 13413, 71 FED. REG. 64,103 (Oct. 27, 2006)................................................*passim*

Exec. Order 13671, 79 FED. REG. 39,947 (July 10, 2014) ……………………………………...5, 6

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56 ……………………………………………………………………...24

## REGULATIONS

31 C.F.R. Part 547, 83 FED. REG. 57,308 (Nov. 15, 2018) ……………………………………….4, 6

31 C.F.R. § 501.807 …………………………………………………………….. *passim*

31 C.F.R. § 547.201 ................................................................................................. 6

# INTRODUCTION

Alain Goetz ("Plaintiff"), a Belgian gold expert, founded African Gold Refinery Limited ("AGR")—a gold refinery in Uganda—in 2014. At that time, the country had an underdeveloped regulatory infrastructure with respect to mineral trade. Despite this, Plaintiff—through AGR—endeavored to implement robust due diligence policies and procedures on the sourcing and refining of gold, and sought to continuously improve the company's systems and processes to align with regional and international standards. Despite these efforts, OFAC found AGR's due diligence processes inadequate, and alleged AGR to be involved in refining gold purportedly sourced from the Democratic Republic of the Congo ("DRC"). Notwithstanding the government's attempt to characterize Plaintiff as a nefarious international gold smuggler, the reality is that he was sanctioned under Executive Order ("E.O.") 13413, as amended, for operating a company that allegedly performed inadequate due diligence nearly a decade ago.

As a result of AGR's purported due diligence failings, OFAC designated Plaintiff for three reasons. First, for being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. 87 Fed. Reg. 16,552 (Mar. 23, 2022). Second, he was designated for being a leader of AGR. *Id*. Finally, he was designated for having acted or purported to act for or on behalf of AGR. *Id*.

Plaintiff twice availed himself of OFAC's administrative reconsideration process, in efforts to seek the recission of his E.O. 13413, as amended, designation, and the removal of his name from OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List"). Both of

those matters, however, resulted in denial actions which OFAC undertook on June 20, 2023 and March 1, 2024, respectively.

Throughout both administrative delisting matters, Plaintiff provided extensive information and documentation demonstrating why his designation should be rescinded. Notwithstanding such information and documentation, Plaintiff's request for a rescission of his designation and removal from the SDN List were denied for what OFAC expressly admits is historic conduct which has abated. The irony of those decisions, however, is that they were not complete denials that the circumstances underlying Plaintiff's designation had changed. Indeed, in rendering their decisions, OFAC conceded that Plaintiff is no longer a leader of AGR—the company through which the alleged due diligence failings occurred. In doing so, OFAC rescinded that basis of Plaintiff's designation thereby acknowledging that Plaintiff has separated himself from the vehicle through which he allegedly engaged in the sanctionable conduct which had given rise to his designation.

What is left then is OFAC's determination that Plaintiff should be solely sanctioned for his past acts with respect to AGR—an entity that he has left and which OFAC has affirmatively determined that he is no longer a leader of—and under the following attenuated theory: (1) because Plaintiff used to work at AGR, and (2) because AGR refined gold from private miners who purportedly sourced such gold from the Eastern DRC, and (3) because certain non-sanctioned rebel groups operate in that region, and (4) because those certain non-sanctioned rebel groups activities threaten the peace, security, or stability of the DRC or undermine democratic processes or institutions in the DRC through the illicit trade in natural resources of the DRC, (5) that Plaintiff is responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade

in natural resources of the DRC. Strangely, the administrative records compiled in support of this unusual theory do not identify any dealings between Plaintiff and these rebel groups, nor even any dealings between Plaintiff and the miners who brought gold to AGR from areas in which those groups operated. Furthermore, OFAC fails to identify what aspects of the trade in such gold is forbidden by law, rule, or customs—i.e., how the trade itself is illicit.

During the first administrative matter, Plaintiff proposed fourteen remedial measures to address the bases for his designation, and to ensure OFAC that he is not currently involved, and will not become involved in, sanctionable conduct in the future. These remedial measures allowed for monitoring of Plaintiff's financial and commercial activities, and the provision of certifications and reports on those activities, which would be subject to penalty of perjury were he to be untruthful. OFAC, however, denied Plaintiff's first petition stating that he has not accepted responsibility for his past actions with respect to his alleged involvement in the conflict gold trade. Further, OFAC noted that Plaintiff would need to indicate that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him. OFAC also asserted that Plaintiff would need to share information about his activities and others involved in the gold trade, identify tangible commitments to contributing to positive change in the DRC, as well as the gold sector throughout the region.

In response, Plaintiff proposed additional remedial measures identifying tangible commitments to contributing to positive change in the DRC, in efforts to address OFAC's bases for denying his first petition for administrative reconsideration. These measures included, for example, making a public statement regarding his position on conflict gold and calling upon those in the gold industry to adopt policies and procedures to identify and combat trade in conflict minerals. Plaintiff also proposed to provide a donation to, for instance, a charity or non-profit

organization aimed at promoting transparent minerals trade in the region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC. Plaintiff further proposed to undertake efforts to promote and support advocacy initiatives related to supply chain transparency. Finally, Plaintiff noted that his companies are either inactive or undergoing liquidation, and the one active company that he had was nationalized by the Rwandan government.

OFAC again denied his petition, stating that Plaintiff's additional measures are insufficient and that he would need to admit to sanctionable conduct to potentially achieve delisting. OFAC further speculated that because Plaintiff may resume his business operations in the future and potentially engage in sanctionable conduct through those companies that were undergoing liquidation or were otherwise inactive, that he should remain sanctioned.

Defendants' actions on their face are arbitrary and capricious under the APA and contrary to law, and require this Court's intervention for relief.

## BACKGROUND

### I.  STATUTORY AND REGULATORY BACKGROUND

#### A.  International Emergency Economic Powers Act

Executive Order ("E.O.") 13413, as amended, and its implementing regulations—the Democratic Republic of the Congo Sanctions Regulations, 31 C.F.R. Part 547—are promulgated under the authority of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. IEEPA authorizes the President "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). IEEPA provides the President the power to "regulate, . . . prevent or prohibit . . . transactions involving, any property in which any

foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).

## B.  Executive Order 13413, as Amended

E.O. 13413 was issued in response to the "widespread violence and atrocities [in the DRC] that continue to threaten regional stability." Exec. Order No. 13413, Preamble (Oct. 27, 2006); 71 FED. REG. 64,103 (Oct. 31, 2006). E.O. 13413 authorized the Secretary of the Treasury to block (or "freeze") all property in which a person determined to meet the enumerated criteria for designation has an interest that is or comes within the United States or the possession or control of a U.S. person. Exec. Order No. 13413, § 1 (Oct. 27, 2006). U.S. persons are generally prohibited from engaging in transactions with persons subject to blocking sanctions under E.O. 13413, and non-U.S. persons risk exposure to U.S. sanctions from engaging in most transactions with, or activities involving, such blocked persons. *See id.* at § 1(a)(ii)(F); 79 FED. REG. 39,947 (July 10, 2014).

E.O. 13671 amended, *inter alia*, the criteria for designation set forth in E.O. 13413, authorizing the Secretary of the Treasury to designate any person determined to be responsible for or complicit in, or to have engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. Exec. Order No. 13413, § 1(a)(ii)(C)(7) (Oct. 27, 2006); 79 FED. REG. 39,947 (July 10, 2014). E.O. 13671 also authorizes the Secretary of the Treasury to designate any person determined to be a leader of an entity whose property and interests in property are blocked pursuant to the Order. Exec. Order No. 13413, § 1(a)(ii)(E) (Oct. 27, 2006); 79 FED. REG. 39,947 (July 10, 2014). Finally, in relevant part, E.O. 13671 authorizes the Secretary of the Treasury to

designate any person determined to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to the Order. Exec. Order No. 13413, § 1(a)(ii)(G) (Oct. 27, 2006); 79 FED. REG. 39,947 (July 10, 2014). Persons designated under the amended E.O. 13413 are likewise subject to blocking sanctions, and non-U.S. persons risk exposure to U.S. sanctions for engaging in certain transactions or activities with them.

### C.     Democratic Republic of the Congo Sanctions Regulations

Pursuant to the authorities set forth in E.O. 13413, as amended, OFAC promulgated the Democratic Republic of the Congo Sanctions Regulations ("DRCSR"), 31 C.F.R. Part 547, to implement E.O. 13413 and its amendments in E.O. 13671. *See* 83 FED. REG. 57,308 (Nov. 15, 2018). In relevant part, the DRCSR impose blocking sanctions on (1) any person determined by the Secretary of the Treasury to be responsible for or complicit in, or to have engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; (2) to be a leader of an entity whose property and interests in property are blocked pursuant to the DRCSR; and (3) to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to the DRCSR. 31 C.F.R. § 547.201. The names of persons listed in or designated pursuant to E.O. 13413 are incorporated into OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List") with the identifying program tag "[DRCONGO]." NOTE 1 to 31 C.F.R. § 547.201(a).

### D.     OFAC's Delisting Procedures

OFAC administers regulatory procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow sanctioned persons to request reconsideration of their designations, stating that such parties "may submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply. *Id.* Further, "[t]he sanctioned person also *may* also propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps, which the person believes would negate the basis for the sanction." *Id*. (emphasis added).

Following review of a petition for administrative reconsideration, OFAC provides a written decision to the sanctioned person, which identifies in substance whether OFAC believes the person continues to meet the criteria for designation under the relevant sanctions authority or whether the person merits the rescission of their designation and delisting. 31 C.F.R. § 501.807(d).

## II.    STATEMENT OF FACTS

### A.    OFAC's Designation of Plaintiff

On March 17, 2022, Plaintiff submitted to OFAC a request to stay any sanctions investigation or pending action under consideration that would target him. DRC-34996-0089– 0211.[1] This request included arguments and supporting documentation rebutting certain allegations contained in open-source reporting, which Plaintiff believed OFAC may consider in a

---

[1] This action concerns three administrative records compiled by OFAC. DRC-30316 is the bates-stamped prefix for the first administrative record supporting OFAC's designation of Plaintiff; DRC-34996 is the prefix for the administrative record supporting OFAC's first denial decision; and DRC-37986 is the prefix for the administrative record supporting OFAC's second denial.

potential designation action against him. Much of the content in this submission included corporate information and documents for AGR. *See id.*

That same day, OFAC designated Plaintiff and AGR under E.O. 13413, as amended, as well as eight companies for being owned or controlled by Plaintiff. 87 Fed. Reg. 16,552 (Mar. 23, 2022). OFAC designated Plaintiff for (1) being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; (2) being a leader of AGR, an entity whose property and interests in property are blocked under the Order; and (3) having acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked under the Order. *Id.*

As a result of the designation, Plaintiff's name was added to OFAC's SDN List, resulting in the blocking of his property and interests in property subject to U.S. jurisdiction and the prohibition on U.S. persons' ability to transact or deal with Plaintiff. *Id.*

## B. Plaintiff's Complaint

On April 29, 2022, Plaintiff initiated this action against Defendants, seeking judicial review of OFAC's designation of him under E.O. 13413, as amended, and his inclusion on the SDN List. ECF No. 1. Specifically, Plaintiff alleged that OFAC failed to consider his March 17, 2022 submission prior to designating him. *Id.* at ¶ 39.

## C. OFAC's Administrative Record Underlying Plaintiff's Designation

On January 31, 2023, OFAC produced the unclassified and non-privileged portions of the administrative record underlying Plaintiff's designation under E.O. 13413, as amended, including the evidentiary memorandum and supporting exhibits. On September 4, 2024, OFAC lifted three

redactions in the administrative record and disclosed the updated version of the record including those three unredacted portions. These disclosures comprise all of the substantive information released to Plaintiff as to the initial bases for his designation under E.O. 13413, as amended, and contains certain of OFAC's findings, conclusions, and determinations supporting the designation. Specifically, the record states that OFAC made three determinations in designating Plaintiff.

First, OFAC determined that Plaintiff is responsible for or complicit in, or has engaged in directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. DRC-30316-0013. Second, OFAC determined that Plaintiff is a leader of AGR, an entity whose property and interests in property are blocked under E.O. 13413, as amended. *Id.* Third, OFAC determined that Plaintiff has acted or purported to act for or on behalf of, directly or indirectly, AGR. *Id.*

With respect to the first determination, OFAC concluded that Plaintiff incorporated AGR in 2014, has directly or indirectly owned AGR since then, and was chief executive officer of, and had other roles at, AGR, and was involved in AGR's gold trading activities until at least 2017. DRC-30316-0026. OFAC also concluded that AGR has engaged in the illicit trade in gold of the DRC since at least 2016, and that Plaintiff was involved in AGR's activities. DRC-30316-0028. Further, OFAC concluded that through his involvement in AGR, Plaintiff is responsible for or complicit in, or has engaged in, directly or indirectly, support to Mai-Mai Yakutumba, Raia Mutomboki, and undisclosed others through the illicit trade in gold of the DRC. DRC-30316-0031.

In addition, OFAC concluded that the Mai-Mai Yakutumba, Raia Mutomboki, and other the undisclosed DRC rebel groups, are involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC. DRC-

30316-0032. Lastly, OFAC concluded that Plaintiff is responsible for or complicit in, or has engaged in support to other DRC rebel groups that are involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. DRC-30316-0033.

With respect to the second and third determinations, the unredacted portions of the evidentiary memorandum do not reveal whether OFAC made any additional conclusion(s) related to the respective determinations.

### D.    Plaintiff's First Administrative Reconsideration Matter

On December 6, 2022, OFAC sent Plaintiff's counsel a letter confirming receipt of the materials sent on March 17, 2022, the same date as Plaintiff's designation. DRC-34996-0948. In its letter, OFAC informed Plaintiff that "in exercise of [its] administrative discretion . . . [OFAC has] determined to treat [Plaintiff's] March 17 submission as a request for delisting pursuant to 31 C.F.R. § 501.807." DRC-34996-0949. Accordingly, OFAC stated that if Plaintiff wishes to submit additional material in support of his delisting, to do so within 30 days or request an extension. *Id.*

On February 28, 2023, Plaintiff provided a submission containing additional arguments and information to further support his request for stay of designation, which OFAC was treating as a petition for administrative reconsideration. DRC-34996-0212–0232. In his submission, Plaintiff asserted that there is an insufficient basis for his designation and offered a separate, alternative argument by proposing remedial measures which, if adopted, would negate the basis for his designation under E.O. 13413, as amended. DRC-34996-0217.

With respect to the insufficient basis argument, Plaintiff argued, *inter alia*, that OFAC's findings and conclusions were based on sources that describe purely historic conduct given that much of its evidence linking him to AGR was "until at least 2017" or "as of 2017." DRC-34996-

0217. Plaintiff also argued that OFAC failed to evidence ongoing sanctionable conduct by him or that he currently owns or controls AGR. DRC-34996-0218. Indeed, Plaintiff provided exhibits evidencing his resignation from AGR's board of directors, share transfer agreement, and other similar documents. DRC-34996-0224–0232.

Plaintiff alternatively proposed fourteen remedial measures designed to negate the basis of his designation when implemented. DRC-34996-0218–0221. Plaintiff also indicated to OFAC that he "is open to considering any additional terms or conditions that would merit the recission of his designation." DRC-34996-0218. Specifically, Plaintiff proposed the following remedial measures for a five-year period, some of which have been consolidated:

- Provide documentation evidencing his sources of income and entities that he owns;

- Certify that Plaintiff is not engaged in any sanctionable dealings;

- Certify that Plaintiff is not violating any U.S. sanctions or anti-money laundering laws;

- Undergo annual sanctions audits to review his finances and those of his companies;

- Provide documentation of all senior management positions, advisory roles, or board seats that Plaintiff holds along with details or his role(s) in each entity;

- Inform OFAC prior to Plaintiff registering, operating, or working for a business entity;

- Implement and provide procedures on OFAC and anti-money laundering compliance for any businesses that Plaintiff owns or controls;

- Provide OFAC with all operational reports and documents for all entities that he owns or controls, or has an ownership interest in;

- Inform OFAC if Plaintiff transacts or facilitates transactions with an SDN or an entity owned or controlled by an SDN;

- Certify that Plaintiff will respond to any request for information from OFAC regarding compliance with the remedial measures or general compliance with U.S sanctions;

- Provide a full and complete list of the sources of gold for the companies which holds a majority interest or controls; and

- Undergo an annual audit by an independent third party to ensure that the policies and procedures in his companies conform to nationally and internationally recognized due diligence frameworks.

DRC-34996-0218–0221.

These remedial measures would have ensured that OFAC has a means to both identify and trace Plaintiff's business activities, and to evidence that no support or assistance would be provided, directly or indirectly, to rebel groups dealing in conflict gold in the DRC. DRC-34996-0222. Additionally, the remedial measures contain reporting requirements that would enable OFAC to monitor Plaintiff's activities to ensure that the remedial measures are implemented, and that he is not engaged in sanctionable conduct now or in the future. *Id.*

In proposing these measures, Plaintiff noted that OFAC commonly enters into Terms of Removal Agreements ("TORs") with parties seeking delisting which memorialize remedial steps undertaken by the party seeking delisting in exchange for the removal from the SDN List. DRC-34996-0215. Plaintiff also provided examples of instances where OFAC entered into TORs with entities outside of U.S. jurisdiction. DRC-34996-0010–0216. Indeed, the remedial measures that OFAC has previously accepted were similar to those Plaintiff offered, such as, for example, refraining from business relations or other connections from SDNs and implementing a U.S. sanctions compliance program. *Id.*

In response, OFAC assigned the matter Case ID: DRC-31659; and Plaintiff responded to two questionnaires from OFAC seeking additional, corroborating, or clarifying information. DRC-34996-0233–0235; DRC-34996-0239–0945. Notably, in his response to OFAC's first questionnaire, Plaintiff indicated that he served as a consultant for AGR after resigning as CEO in November 2018 and as director in January 2019. DRC-34996-0243. In response to a follow-up question about his involvement with AGR in OFAC's second questionnaire, Plaintiff provided a copy of his termination letter dated June 7, 2021 from AGR as consultant, being "directed to refrain from acting pursuant to the [employment agreement] or otherwise, for and/or on behalf of [AGR]." DRC-34996-0893. Plaintiff later provided a supplemental submission containing additional information responsive to OFAC's questionnaires generally. DRC-34996-0950–0952.

### E.     OFAC's First Denial Decision

On June 30, 2023, OFAC denied Plaintiff's petition for administrative reconsideration. DRC-34996-0001–0003. In its denial letter, OFAC stated that it "determined that [Plaintiff] has not provided credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply." DRC-34996-0001. OFAC acknowledged, however, that Plaintiff no longer met the criteria for designation under E.O. 13413, as amended, for being a leader of AGR. DRC-34996-0002.

Despite this, OFAC determined that there were other grounds for which Plaintiff should remain designated, such as for having acted or purported to act for or on behalf of, directly or indirectly, AGR. *Id.* OFAC based this determination on Plaintiff's alleged past conduct on behalf of the company, including, for example, Plaintiff's participation in a meeting as AGR's CEO with a U.S. Embassy Kampala economic officer in 2017. *Id.* OFAC's denial letter further stated that Plaintiff continues to meet the criteria for designation due to his "direct or indirect ownership or

control of AGR during the relevant periods, having held leadership positions in AGR" when the alleged sanctionable activity occurred, "and his prior involvement in AGR's gold trading activities." *Id.* According to OFAC, Plaintiff "has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR and other entities" and that he "currently owns and controls companies that *may* enable him to continue engaging in the illicit gold trade." (emphasis added). *Id.* Further, and notably, OFAC assessed that Plaintiff "has not taken any responsibility for his past actions with respect to his involvement in the conflict gold trade, which casts doubt that [Plaintiff] has undergone a change in circumstances with respect to his original designation." *Id.*

In support of its denial, OFAC cited foreign policy guidance from the U.S. Department of State, which recommended that OFAC deny Plaintiff's petition for administrative reconsideration. According to the guidance, "[f]oreign policy considerations related to the ongoing conflict in Eastern DRC . . . and Uganda lead to a recommendation of denial for delisting absent a documented change in behavior beyond what [Plaintiff] has provided to date." DRC-34996-0002–0003.

According to the guidance, even if Plaintiff "purports to have formally distanced himself from AGR, [Plaintiff's] recent statements and submissions continue his previous line of thinking and action continues. [Plaintiff] fails to provide any indications that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him." DRC-34996-0003. The State Department assessed that Plaintiff "has provided no basis to believe that his views or approach to sourcing gold from high-risk or conflict areas has changed. Whether his business is conducted via AGR or other entities, his statements demonstrate that his ongoing and likely future role in this trade and the broader policy concerns connected thereto remain a significant concern. Throughout the decades [Plaintiff]

has denied any awareness of, or refused to accept responsibility for the role of gold in conflict in the DRC." *Id.*

Additionally, the State Department guidance indicated that to demonstrate changed behavior that would justify delisting, Plaintiff should first demonstrate acceptance and acknowledgement of responsibility for his past actions and their connection to the conflict in the region. *Id.* According to the guidance, such acceptance would include "sharing information about his activities and others involved in the gold trade, and then identify tangible commitments to contributing to positive change in the DRC, as well as the gold sector throughout the region." *Id.*

With respect to Plaintiff's proposed remedial measures, OFAC stated that "any additional insight offered to OFAC through the implementation of these proposed steps would not undermine the criteria for designation." *Id.* OFAC claimed that Plaintiff's "past obfuscation undermines his credibility and OFAC's trust in the materials that would be provided by [Plaintiff] under the requirements of a [Terms of Removal Agreement ("TOR")]." *Id.* Finally, OFAC noted that it "may be constrained in its ability to enforce the requirements of a TOR as it relates to entities that are domiciled outside of the United States." *Id.* Thus, OFAC stated that Plaintiff's petition is denied, and that his name would continue to appear on the SDN List. *Id.*

### F. OFAC's Administrative Record Underlying First Denial

The administrative record underlying OFAC's June 30, 2023 denial contains OFAC's purported rationale for denying Plaintiff's first petition for administrative reconsideration. OFAC cited the State Department's foreign policy guidance recommending that OFAC deny Plaintiff's petition. DRC-34996-0011.

Further, OFAC conceded that there is no longer a basis for designation for Plaintiff being a leader or AGR, but determined that Plaintiff continued to meet two of the three original bases

for designation under E.O. 13413, as amended. DRC-34996-0012. Namely, OFAC determined that Plaintiff continues (1) to be responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; and (2) has acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked under E.O. 13413, as amended. *Id.*

### G.    Plaintiff's Second Administrative Reconsideration Matter

On July 21, 2023, Plaintiff sent a letter to OFAC proposing additional remedial measures in efforts to address OFAC's bases for denying his petition for administrative reconsideration. DRC-37986-0036–0038. In this letter, Plaintiff requested that OFAC consider the remedial measures alongside those proposed in his February 28, 2023 submission from his first delisting matter. DRC-37986-0037.

Specifically, Plaintiff proposed to make a public statement clarifying his previous statements regarding conflict minerals and acknowledging current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold. *Id.* Plaintiff noted that the public statement would clarify that he understands that trade in conflict minerals has an adverse impact on local populations, fuels corruption and violence, and leads to environmental degradation. The public statement would also call upon those in the gold industry to adopt policies and procedures to identify and combat trade in conflict minerals. *Id.*

Plaintiff also proposed that he would donate to a non-profit organization promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the

Democratic Republic of the Congo or the Government of Uganda. DRC-37986-0038. Finally, Plaintiff proposed to undertake efforts to promote and support advocacy initiatives related to supply chain transparency. *Id.*

Plaintiff noted that, while he proposes to make a formal public statement, he has already expressed his position on conflict minerals on X.com. In particular, Plaintiff cited a July 12, 2023 post on X.com stating that "[e]verything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefit rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain." DRC-37986-0037. Plaintiff indicated, however, that his proposed public statement would provide further clarification on the points identified in this remedial measure. *Id.*

Plaintiff requested that, if accepted by OFAC, these remedial measures would be memorialized in a TOR and implemented by Plaintiff, which would lead to the removal of Plaintiff's E.O. 13413, as amended, designation and name from the SDN List. *Id.* Plaintiff reiterated that he is willing to consider any remedial measures that OFAC believes are necessary to achieve delisting. DRC-37986-0038.

In response, OFAC opened a new case for that submission and assigned the matter Case ID: DRC-34969; and issued one questionnaire on August 28, 2023 seeking additional, clarifying, or corroborating information with respect to Plaintiff's additional remedial measures proposed in his July 21, 2023 letter. DRC-37986-0120–0122.

On November 26, 2023, Plaintiff responded to the questionnaire and provided additional information and arguments in support of his petition. DRC-37986-0039–0099. In doing so, Plaintiff emphasized that he "fully understands and recognizes that there are serious concerns and risks arising from sourcing minerals from high-risk or conflict areas, and that there are immense

consequences that arise as a result of illicit trade benefitting the conflict in the DRC and Great Lakes Region." DRC-37986-0040. Further, Plaintiff noted that his "proposed clarifications will address his prior conduct and statements by advocating for transparency, accountability, and continuous improvement with respect to the gold sector, making clear that his prior positions were either misconstrued or are being retracted." DRC-37986-0042.

Plaintiff also stated that he "has already made several public statements regarding these points and is committed to further addressing the gravity of the situation in the DRC and Great Lakes Region with respect to the sourcing and trade of conflict gold" and provided examples of such statements on X.com. DRC-37986-0040–0041. For instance, Plaintiff has stated on X.com that "[e]verything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefits rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain." DRC-37986-0041. And "[i]t is crucial to foster trade within formal institutions that enable transparent transactions and clear identification of traders." *Id.* He noted that he "intends to make an additional public statement that would underscore these principles and reinforce his position on conflict gold." *Id.*

Moreover, Plaintiff informed OFAC that since his April 11, 2023 response to OFAC's March 21, 2023 questionnaire and July 21, 2023 letter, his financial situation had worsened due to an investment gone awry, and his lack of business activities and additional sources of income. DRC-37986-0043. In light of those circumstances, Plaintiff noted that he no longer has the means to make a meaningful donation, but is hopeful that he will reestablish himself financially following his delisting and will be able to provide such a donation in the future. *Id.*

With respect to advocacy initiatives, Plaintiff stated that he "is committed to promoting and supporting advocacy initiatives aimed at enhancing supply chain transparency." DRC-37986-

0044. In this regard, Plaintiff indicated his intention to "join collaborative partnerships and participate in and promote supply chain transparency awareness campaigns," and his plans to "engage with non-governmental organizations that specialize in responsible sourcing and sustainable mining practices to develop best practices for supply chain transparency." *Id.*

Plaintiff stated that he intended to launch awareness campaigns to educate stakeholders on the importance of supply chain transparency and implementing guidelines by the International Conference on the Great Lakes Region ("ICGLR") and Organisation for Economic Co-operation and Development ("OECD"). *Id.* These campaigns, Plaintiff noted, "participation in meetings, webinars, and social media campaigns to disseminate knowledge and encourage dialogue among relevant parties." *Id.* Moreover, Plaintiff clarified that the companies in which he still maintains an ownership interest are inactive. *Id.* He indicated that he maintains an indirect interest in a company called Aldango Limited, but that he does not have any control over the company as it has been nationalized by the Rwandan government. *Id.*

Finally, Plaintiff argued that there is an insufficient basis for his continued designation. DRC-37986-0044–0045. Specifically, OFAC relied on the State Department's foreign policy guidance in denying his petition which did not provide any basis for his continued designation that was connected to the designation criteria of E.O. 13413, as amended, nor to the bases for delisting set forth in 31 C.F.R. § 501.807. DRC-37986-0045. In support of that argument, Plaintiff noted that there is no U.S. legal authority that requires an admission of sanctionable conduct to achieve delisting and that even OFAC's Procedures Governing Delisting from the SDN List does not express a requirement that the blocked person admit to the conduct underlying their designation to achieve delisting. *Id.* Likewise, Plaintiff noted that there is no requirement in the Procedures Governing Delisting from the SDN List which would require Plaintiff to share information about

the activities of others to secure delisting. *Id.* Nor are there requirements in those procedures which require a blocked person to identify commitments to contribute to positive change in a region, sector, or otherwise to secure delisting. *Id.* Thus, Plaintiff asserted that there is an insufficient basis for his continued designation under E.O. 13413, as amended, as there is no legal requirement for Plaintiff to admit to sanctionable conduct, provide information on others, commit to positive change—a term unidentified by the State Department—nor demonstrate "changed behavior," as opposed to a change in the circumstances that gave rise to the initial designation. DRC-37986-0047. By doing so, OFAC, through its reliance on that guidance, impermissibly expanded the burden imposed by 31 C.F.R. § 501.807. DRC-37986-0046.

Moreover, Plaintiff asserted that many parties who have been removed from the SDN List without admitting involvement in sanctionable conduct, sharing information about the activities of others, or contributing to positive change. *Id.* Further, Plaintiff notes that OFAC has not provided any explanation for why those similarly situated parties—i.e., blocked persons seeking removal from the SDN List under 31 C.F.R. § 501.807—were not subject to this expanded burden, while Plaintiff is. *Id.*

In addition, Plaintiff noted that he has already denounced trading in conflict gold and has voiced his commitment to improving the gold sector in the region. *Id.* Indeed, he is also no longer a leader of AGR, as OFAC conceded in its denial letter, and Plaintiff has severed his relationship with AGR by divesting his interests in, and ceasing any role with that company. *Id.* Thus, Plaintiff noted that he indeed has demonstrated changed circumstances underlying his designation. *Id.*

Plaintiff also asserted that the alleged investigations cited in the State Department's foreign policy guidance do not form a lawful basis to maintain sanctions on Plaintiff, as they do not evidence sanctionable conduct nor pertain to the DRC. *Id.* For example, that same guidance noted

that the money laundering case was "unrelated to [Plaintiff's] activities in the DRC." *Id.* In any event, Plaintiff noted, he is unaware of any ongoing or pending investigations involving him by authorities in Belgium or the UAE with respect to money laundering or any other alleged infraction, or any judgment involving him which requires him to pay 558 million euros or any other amount. *Id.* Plaintiff indicated, however, that he is aware that there has been false reporting alleging such circumstances. DRC-37986-0047.

### H.  OFAC's Second Denial Decision

On March 1, 2024, Defendants denied Plaintiff's second petition for administrative reconsideration, stating that it "has determined that [Plaintiff] has not provided credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in [his] designation no longer apply." DRC-37986-0001–0002. Specifically, OFAC stated that "[n]either the proposed remedial measures nor the other arguments in [Plaintiff's] July and November 2023 submissions contradict OFAC's determinations or demonstrate that the circumstances resulting in [his] designation no longer apply. DRC-37986-0002. Accordingly, OFAC found that Plaintiff continued to meet two of the three bases for his designation, and "does not present any information to contradict that finding." *Id.*

Defendants further stated that OFAC does not require an admission of sanctionable conduct "as a prerequisite to delisting in general, although in some cases, acceptance of responsibility for past acts could be evidence of changed circumstances, depending on the totality of the circumstances. Here, there is no evidence that [Plaintiff] has accepted responsibility for his past acts." *Id.* Further, Defendants noted that Plaintiff's statements on X.com "and proposed statements do not constitute a change in circumstances warranting [Plaintiff's] delisting." DRC-37986-0003.

Moreover, Defendants assessed that Plaintiff's advocacy to promote and support advocacy initiatives related to supply chain transparency "lack sufficient specificity to constitute a change in circumstances warranting delisting." *Id.* Finally, Defendants rejected Plaintiff's proposed remedial measures, stating that OFAC "has reason to believe that such measures would not provide credible assurance that [Plaintiff] will not engage in the activities that resulted in his designation pursuant to the Order and would not negate the basis for his designation." *Id.* Defendants added that Plaintiff's "past obfuscation undermine[s] his credibility and that OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States." *Id.*

## I.     OFAC's Administrative Record Underlying Second Denial

The administrative record underlying OFAC's March 1, 2024 denial contains Defendants' purported rationale for denying Plaintiff's second petition for administrative reconsideration. Specifically, OFAC determined that Plaintiff failed to demonstrate that the circumstances resulting in his designation no longer apply or that an insufficient basis exists for his designation pursuant to 31 C.F.R. § 501.807. DRC-37986-0012. In reaching this determination, OFAC relied on the foreign policy guidance provided by State, as memorialized in a February 28, 2024 memorandum. DRC-37986-0007.

The administrative record stated that it does not require an admission of sanctionable conduct as a prerequisite to delisting in general, "although in some cases, acceptance of responsibility for past acts could be evidence of changed circumstances, depending on the totality of the circumstances." DRC-37986-0013. The administrative record found that there is no evidence that Plaintiff has accepted responsibility for his alleged past acts. *Id.*

With respect to Plaintiff's statements on X.com, the administrative record cites to the State Department's February 2024 foreign policy guidance memorandum, indicating that the statements are "vague, high level, and devoid of serious content" and "do not provide any meaningful demonstration of change in behavior." *Id.* OFAC further cited the State Department's February 2024 foreign policy guidance that it "cannot meaningfully assess the content of proposed future statements, especially when the content of such proposed statements is amorphous and vague. Changes in behavior are demonstrated by tangible actions rather than plans to make statements in the future without having the detail needed to assess the contents of such statements." DRC-37986-0014. Accordingly, OFAC assessed that the proposed statements do not constitute a change in circumstances. *Id.*

With respect to the advocacy initiatives that Plaintiff proposed, OFAC stated that Plaintiff "has not provided any further information about the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum, and therefore OFAC is unable to assess the merits of these organizations" related to Plaintiff's petition. DRC-37986-0015. Further, "proposed possible future actions do not at this point provide a basis for finding changed circumstances" as Plaintiff "does not offer any further information about these initiatives nor appeared to have initiated them." *Id.* Accordingly, OFAC assessed that Plaintiff's proposal to join partnerships aimed at promoting supply chain transparency lacks sufficient specificity to constitute a change in circumstances warranting delisting or to serve as a component of a TOR. *Id.*

OFAC noted that Plaintiff "has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR and other entities, and assessed that [Plaintiff] currently owns and controls companies that may enable him to continue engaging in the illicit gold trade." DRC-37986-0016. Additionally, OFAC concluded that delisting Plaintiff at this

time "may undermine or complicate international efforts to enforce standards and accountability and could have negative foreign policy consequences." *Id.* In support of this conclusion, OFAC cites to: 1) the sanctions against Plaintiff by the EU; 2) an anonymized summary by the UAE Financial Intelligence Unit which does not identify Plaintiff; 3) a purported review by the Belgian Federal Prosecutor's Office "unrelated to [Plaintiff's] activities in the DRC;" and 4) information gathering by the UN Group of Experts on Plaintiff's activities since at least 2009 as part of its ongoing focus on the gold trade, which notes that "no direct action has been taken by the Security Council to date against [Plaintiff] or his companies." DRC-37986-0016–0017.

## J.     Plaintiff's Amended Complaint

Following Defendants' disclosure of the administrative records underlying their decision to deny both of Plaintiff's petitions for administrative reconsideration, Plaintiff filed an Amended Complaint, which alleged that Defendants' denial of Plaintiff's petition for administrative reconsideration constitutes arbitrary and capricious agency action in violation of the APA. Am. Compl., ECF No. 31, ¶¶ 112-124.

## LEGAL STANDARDS

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is 'genuine' only if a reasonable fact-finder could find for the nonmoving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court may grant summary judgment "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable

inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the APA, 5 U.S.C. § 701 *et seq.*, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

## DISCUSSION

### I. THE APA IMPOSES LIMITATIONS ON OFAC AND REQUIRES THIS COURT TO HOLD UNLAWFUL AGENCY ACTION, FINDINGS, AND CONCLUSIONS THAT ARE ARBITRARY AND CAPRICIOUS

The APA requires courts to set aside and hold unlawful agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law. 5 U.S.C. § 706(2)(A). When reviewing an APA claim, a court must determine whether, as a matter of law, "the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).

Such review involves ascertaining whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014)

(stating that conclusory statements will not do; and that an agency's statement must be one of reasoning) (citing *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (internal quotation marks omitted)); *Xiaomi Corp. v. Dep't of Def.*, No. 21-cv-280 (RC), 2021 WL 950144, at *5-*8 (D.D.C. Mar. 12, 2021) (finding that the U.S. Department of Defense skipped the most "critical step" of an agency "connecting the facts to the conclusion" when it simply parroted the language of the statute followed by a conclusory statement in support of its designation action against an entity). A court's review in this regard must be "thorough, probing, in-depth . . ." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).

Further, courts must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas-Best Freight*, 491 U.S. 281, 285 (1974) (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416 (1971)). For instance, an agency acts arbitrarily and capriciously in violation of the APA where it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise . . ." *State Farm*, 463 U.S. at 42-43; *see also Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Off. of Foreign Assets Control*, 857 F.3d 913, 927-28 (D.C. Cir. 2017) (finding that OFAC failed to adequately explain why it discounted certain evidence and why it was found to not be credible) (quoting *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 652 (D.C. Cir. 2016) (per curiam)).

Where deficiencies in an agency's decision or reasoning are identified, a court is unable to remedy those deficiencies by "supply[ing] a reasoned basis for the agency's action that the agency itself has not given." *Bowman Transp., Inc.*, 419 U.S. at 286. Instead, a court is limited to judging

the permissibility of an agency action based on the contemporaneous explanation given by the agency itself. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Xiaomi*, 2021 WL 950144, at *1-*4 (explaining that "even in [the national security] context, 'courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking.'") (quoting *Judulang v. Holder*, 565 U.S. 42, 53 (2011)).

## II.    OFAC DID NOT ACT REASONABLY IN DENYING PLAINTIFF'S SECOND PETITION FOR ADMINISTRATIVE RECONSIDERATION

The APA requires courts to undertake a "searching and careful" review of agency action and an agency's mere statement "that a factor was considered . . . is not a substitute for considering it." *Citizens to Preserve Overton Park*, 401 U.S. at 416; *Getty v. Fed. Savings and Loans Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986); *see also Getty*, 805 F.2d at 1057 (noting that "conclusory recitation . . . fall[s] far short of the '*reasoned* consideration'" required by law). Courts have underscored that "the fact that the agency is entitled to its own discretion does not mean that it can disregard materials that were included in the administrative record . . ." *Friends of the Capital Crescent Trail v. Fed. Transit Admin.*, 253 F. Supp. 3d 296, 302 (D.D.C. 2017).

Instead, agencies must show that they "grapple[d] with plaintiff['s] submission" and "[took] a *hard look* at all of the information in the administrative record that could inform the agency . . ." *Id*. at 302-303 (where an agency "memorandum included no analysis" of plaintiff's submissions and their relevance to the agency decision, the agency action is "arbitrary and capricious.") (emphasis in original). Indeed, this Court has previously found that an agency's failure to discuss the evidence submitted to it leaves "plaintiff and the Court to scratch their heads as to why the [agency] found plaintiff's evidence unpersuasive." *MomoCon, LLC v. Small Bus. Admin.*, No. 21-cv-2386 (RC) at *12 (D.D.C. Feb. 10, 2022) ("An agency action that lacks explanation is a textbook example of arbitrary and capricious action . . ."). Further, the mere

inclusion of Plaintiff's materials in the record is not sufficient under the APA; rather, OFAC must "discuss [Plaintiff's] evidence" in its evidentiary memorandum and explain why it discounted such evidence in reaching its denial decision. *MomoCon, LLC*, No. 21-cv-2386 (RC) at *12.

In this case, OFAC did not act reasonably in denying Plaintiff's second petition for administrative reconsideration, and Plaintiff has indeed presented evidence of changed circumstances and proposed terms of removal that would negate the basis for designation. Specifically, Defendants' administrative record underlying the second denial fails to provide a reasoned explanation for discounting the arguments and evidence presented by Plaintiff during his delisting matter and instead reflects that Defendants arbitrarily rejected Plaintiff's arguments without any meaningful consideration or explanation as to why they are insufficient.

First, Defendants argue that they "are entitled to summary judgment because Plaintiff, a foreign national, cannot show that [OFAC] acted unreasonably in concluding that Plaintiff's tweets and promises were insufficient to warrant delisting him from sanctions validly imposed for having acted on behalf of [AGR] and his complicity in activities that threatened the peace, security or stability of the DRC." Defs.' Mot. Summ. J. ("MSJ"), at 7 (Sept. 20, 2024) (ECF No. 32-1).

Plaintiff, however, has indeed demonstrated and offered more than just "tweets and promises." *Id*. For example, Plaintiff provided updated information regarding his business activities—or lack thereof. *See* DRC-37986-0044. Specifically, Plaintiff clarified to OFAC that the companies in which he still maintains an ownership interest are either inactive or undergoing liquidation. *Id.* He noted that while he maintains an indirect interest in Aldango Limited ("Aldango"), he does not have any control over the company since it has been nationalized by the Rwandan government. *Id.*

Further, Plaintiff offered several additional arguments, including an additional basis for delisting. DRC-37986-0044–0045. These arguments and information included: 1) that OFAC, through its reliance on the second State Department foreign policy guidance, impermissibly expanded the burden imposed in its own delisting procedures, 31 C.F.R. § 501.807 by requiring an admission of sanctionable conduct to achieve delisting; 2) that there is no requirement under the delisting regulations which would require Plaintiff to share information about the activities of others to secure delisting; 3) that the delisting regulations do not require a blocked person to identify commitments to contribute to positive change in a region, sector, or otherwise to secure delisting; 4) that OFAC treated Plaintiff differently than similarly situated parties that were removed from the SDN List but were not subject to this expanded burden, and failed to provide an explanation as to why OFAC was treating him differently than such similarly situated parties; and 5) that the alleged investigations in the State Department foreign policy guidance do not form a basis to maintain sanctions on Plaintiff as they do not evidence sanctionable conduct or pertain to the DRC. DRC-37986-0044–0046.

Moreover, Plaintiff reiterated that he had demonstrated a change in the circumstances giving rise to his designation given that he has denounced trading in conflict gold, voiced his commitment to improving the gold sector in the region, and had fully severed his relationship with AGR. *Id*. Plaintiff also highlighted his philanthropic activities both within and outside of Uganda demonstrating his commitment to making a positive impact in the community and priority to support humanitarian causes. DRC-37986-0044–0047.

Despite this information, Defendants characterize Plaintiff's actions as just "tweets and promises." *See* MSJ at 7. On its face, Defendants' characterization reveals that they did not consider all of the information that Plaintiff provided in support of his delisting petition, much less

provide a reasoned explanation as to why they were discounting such information. OFAC's off-hand dismissal of this evidence contradicts its obligation under the APA to "examine the relevant data and articulate a satisfactory explanation for its action . . ." *State Farm*, 463 U.S. at 43. Indeed, this failure constitutes a "textbook example" of arbitrary and capricious agency action in violation of the APA. *MomoCon*, No. 21-cv-2386 (RC) at *12.

Furthermore, OFAC also included several conclusory findings in its administrative record underlying the second denial decision. *See Amerijet Int'l*, 753 F.3d at 1350 (stating that conclusory statements will not do; and that an agency's statement must be one of reasoning); *Getty*, 805 F.2d at 1057 (noting that "conclusory recitation . . . fall[s] far short of the '*reasoned* consideration'" required by law). Specifically, OFAC stated that Plaintiff's "designation supported international cooperation on the issue of conflict gold, and that delisting would undermine those efforts, particularly given his failure to take responsibility for his actions, and ongoing international investigations." MSJ at 22 (citing DRC-34996-0013-14, 0030-31).

The "international investigations" that OFAC cites are the sanctions against Plaintiff by the EU, which appear to be based on OFAC's designation of Plaintiff; an anonymized summary by the UAE's Financial Intelligence Unit which does not mention Plaintiff; a purported review by the Belgian Federal Prosecutor's Office "unrelated to [Plaintiff's] activities in the DRC"; and information gathering by the UN Group of Experts noting that "no direct action has been taken by the Security Council to date against [Plaintiff] or his companies." DRC-37986-0016–0017. OFAC does not explain how delisting or a "failure" to take responsibility for his actions, and "ongoing" international investigations would undermine those efforts, nor does it make any effort to connect such purported facts to the conclusion they are alleged to support. *See* MSJ at 22.

Accordingly, as there are no links established between the information in the administrative record and the conclusions they purportedly support, Defendants failed to engage in "reasoned decision-making." *See Williams Gas v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006) (noting that "[a]rbitrary and capricious review 'demands evidence of reasoned decision-making.'"); *Pharm. Research & Mfrs. Of Am. v. Fed. Trade Comm'n*, 790 F.3d 198, 209 (D.C. Cir. 2015) ("[T]he touchstone of arbitrary and capricious review is reasoned decision-making.").

Finally, Defendants insinuate that Plaintiff concedes OFAC's findings made in the original designation action and first denial decision. *See* MSJ at 17. To be clear, however, Plaintiff disagrees with such findings. However, he is challenging the denial of his second petition as the information addressed in the second denial record arises from that provided in the first denial and the initial designation action. *See* MSJ at 22 (acknowledging that "[i]n his second petition, Plaintiff requested that three new proposed remedial measures be considered 'alongside' his previous arguments."). Indeed, Defendants appear to understand this, and, indeed, contradict their own claim that Plaintiff is not challenging the findings in the original designation. *See* MSJ at 27 (noting that Plaintiff has disputed that he "has not sourced or refined illegally smuggled conflict gold at AGR") (citing DRC-34996-0091).

For these reasons, Defendants' second denial of Plaintiff's petition for administrative reconsideration was arbitrary and capricious under the APA. Accordingly, this Court should grant summary judgment for the Plaintiff.

### III. PLAINTIFF'S ARGUMENTS DEMONSTRATE THAT OFAC DID NOT ACT REASONABLY IN DENYING HIS SECOND PETITION FOR ADMINISTRATIVE RECONSIDERATION

#### A. Plaintiff is Subject to Sanctions Solely for Past Conduct Which Has Abated

Defendants have not alleged any specific or ongoing sanctionable conduct by Plaintiff and instead rely on historic conduct to justify maintaining sanctions on Plaintiff. In doing so, Defendants have failed to provide a basis for Plaintiff's continued designation that is connected to the designation criteria or to the bases for delisting set forth in the regulations.

Defendants argue, however, that "past conduct alone is sufficient for maintaining sanctions," implying that a designation can remain in perpetuity due to the past-tense nature of the legal designation criteria. *See* MSJ at 25. In support, Defendants have relied on cases that do not concern the continued designation of a person based on past-tense conduct alone. Indeed, while the legal designation criteria in those cases may have encompassed past conduct, OFAC had concluded in each case that the respective sanctioned persons were engaged in ongoing sanctionable conduct, which served as a basis for their continued designation. *See, e.g.*, *Karadzic v. Gacki*, 602 F. Supp. 3d 103, 107-15 (D.D.C. 2022) (finding that OFAC "did not rest only on historical evidence, but rather had also relied on recent conduct in support of its decision" and that "[t]his recent conduct provides OFAC an independent basis to continue to the sanctions."); *Basengezi v. Smith*, No. 23-cv-1249 (JEB), 2024 WL 1050340 at *3 (D.D.C. Mar. 11, 2024) (OFAC determined that the plaintiff "continue[d] to exert influence over democratic processes or institutions in the DRC" due to his consultancy work, and thus the circumstances that led to his designation had not materially changed); *Pejcic v. Gacki*, No. 19-cv-02437 (APM), 2021 WL 1209299, at *3-*8 (D.D.C. Mar. 30, 2021) (finding that OFAC's denial of the plaintiff's petition for administrative reconsideration was not arbitrary or capricious given the substantial evidence supporting his ongoing obstruction of the Dayton Accords; and that even if his material support had ceased, OFAC "could reasonably conclude that [the plaintiff's] independent conduct justifies continued designation"); *Olenga v. Gacki*, 507 F. Supp. 3d 260, 281-82 (D.D.C. 2020) (noting

OFAC finding of ongoing sanctionable conduct and stating that "[t]hat recent conduct is at odds with [the plaintiff's] argument that his re-designation was based on only past acts.").

Unlike the cases that Defendants relied on, the second denial administrative record does not allege any specific or ongoing sanctionable conduct by Plaintiff that meets the criteria for continued designation under E.O. 13413, as amended, and is based on past conduct. *Cf.* MSJ at 20, 24 (citing DRC-30316-0026-34, 0027-34) (stating that OFAC found that Plaintiff was purportedly involved in conflict gold trade from the DRC "from at least 2014 to at least 2017" and "Plaintiff was acting for or on behalf of AGR . . . [and] was identified as the CEO of AGR on a company website as late as October 2018"); DRC-34996-0002 (citing Plaintiff's alleged participation in a meeting as AGR's CEO with a U.S. Embassy Kampala economic officer in 2017).

Indeed, the record does not reflect any conduct related to the conflict gold trade from anytime in the recent past, nor do Defendants allege that Plaintiff has any current ties to AGR. MSJ at 24 (citing DRC-37986-0016) ("Goetz's consulting relationship may have ceased"). Moreover, Defendants merely make vague references to Plaintiff's alleged "decades-long involvement in the illicit gold trade" without any further details on the nature and scope of involvement or any other specifics. *See, e.g.*, DRC-37986-0016–19, 0100–103. Notably, such unidentified conduct is alleged to have occurred prior to the issuance of E.O. 13413, so to the extent Defendants relied on such information in denying Plaintiff's second petition, such reliance is arbitrary and capricious, or otherwise not in accordance with law.

Thus, in failing to allege any specific or ongoing sanctionable conduct by Plaintiff and instead relying on historic conduct alone to justify maintaining sanctions on Plaintiff, Defendants have violated the APA. This violation has occurred insofar as Defendants have not provided a

reasonable basis for Plaintiff's continued designation that is connected to the designation criteria or to the bases for delisting set forth in the regulations.

<blockquote>

**B.**     **OFAC Does Not Have a Reasonable Basis to Doubt that Plaintiff Has Cut Ties with AGR or to Conclude that Plaintiff's Alleged Past Conduct Might Reoccur**

</blockquote>

OFAC does not have a reasonable basis to doubt that Plaintiff has cut ties with AGR or to conclude that Plaintiff's alleged past conduct might reoccur. First, Defendants have already conceded that Plaintiff is no longer a leader of AGR, following Plaintiff's divestment of his shares and resignation as CEO and director of the company. DRC-34996-0012; *see* MSJ at 25.

Further, contrary to Defendants' mischaracterizations of Plaintiff's stated involvement in AGR, Plaintiff has consistently maintained that he was a consultant/promoter at AGR at the time he and the company were sanctioned, and then later ceased his involvement with the company in this capacity. *See* MSJ at 26, 28 (stating that Plaintiff has backtracked or "flipflopped" his position); *but see* DRC-34996-0092 (Plaintiff stating that he was no longer involved with the management of AGR but still remained with AGR in a limited capacity as a consultant/promoter); DRC-34996-0243 (Plaintiff stating that he served as a consultant for AGR after resigning as CEO in November 2018 and as director in January 2019); DRC-34996-0893 (Plaintiff providing a copy of his termination letter dated June 7, 2021 from AGR for his consultant role, being "directed to refrain from acting pursuant to the [employment agreement] or otherwise, for and/or on behalf of [AGR]."). Indeed, Defendants have not provided any findings or evidence that Plaintiff currently maintains a relationship with AGR, nor any reason for characterizing Plaintiff's position with respect to AGR in the manner that they have. Accordingly, OFAC does not have a reasonable basis to doubt that Plaintiff has cut ties with AGR.

Likewise, OFAC does not have a reasonable basis to conclude that Plaintiff's alleged past conduct might reoccur. In denying Plaintiff's second petition, OFAC noted that Plaintiff "currently owns and controls companies that may enable him to continue engaging in the illicit gold trade." DRC-37986-0016; *see generally* MSJ at 26 (citing DRC 34996-0029) (stating that OFAC found that Plaintiff has the means to continue participating in the illicit gold trade). Notably, Defendants make no connection between such ability to participate in the gold trade in the future and DRC. Further, Plaintiff has informed OFAC that with exception of Aldango—which has been nationalized by the Rwandan government and he has no control over that company—his companies are inactive or undergoing liquidation. *See* DRC-37986-0044.

Defendants' administrative record fails to explain how these inactive or soon-to-be liquidated companies, can be resuscitated to engage in the activities necessary to deal with rebel groups or trade in conflict gold in the DRC. For example, Defendants have not detailed how Plaintiff would be able to retake a company nationalized by a government and engage in conflict gold trade, nor that Plaintiff has revived inactive companies in the past, nor whether and how Plaintiff's these inactive companies could be linked to the conflict gold trade from the DRC. According to Defendants, however, "his statements demonstrate that his ongoing and likely future role in this trade and the broader policy concerns connected thereto remain a significant concern.'" MSJ at 26-27 (citing DRC-34996-0014).

Defendants' conclusion in this regard is pure speculation, which, of course, is per se arbitrary and capricious under the APA. *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021) (finding that a mere potential for future conduct or speculative connections with sanctioned entities was insufficient to uphold a sanctions designation, emphasizing that a

designation must be supported by substantial evidence of actual conduct). Indeed, the ability to engage in sanctionable conduct alone is insufficient to demonstrate conduct that justifies sanctions.

Moreover, by speculating as to companies that Plaintiff owns or controls that "may enable him to continue engaging in the illicit gold trade" without alleging actual ongoing conduct, Defendants have tacitly conceded that Plaintiff is not involved in sanctionable conduct at the present time. MSJ at 26 (citing DRC 34996-0029). Accordingly, Defendants have failed to provide a reasonable explanation by speculating that Plaintiff may engage in certain sanctionable conduct in the future and thus have acted arbitrarily and capriciously under the APA.

### C.     OFAC Has Not Linked Plaintiff's Conduct to Armed Groups in the DRC

Further, the administrative record underlying the second denial does not tie Plaintiff to any conduct by AGR relating to the conflict gold trade with rebel groups in the DRC, and instead reflects that Plaintiff is no longer a leader of AGR and does not currently engage in any activities, directly, or indirectly, through AGR. DRC-34996-0012; *see* MSJ at 25. Rather, Defendants employ mental gymnastics to conclude that Plaintiff is responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. *See* DRC-30316-0031. Indeed, Defendants' logic is that 1) because there is conflict gold trade occurring in a region of the DRC where armed groups are located; 2) and because gold from that area may be sourced by miners in that region; 3) and because those miners might have supplied that gold to refineries in the region; 4) and because AGR is a large gold refinery in a neighboring country (i.e., Uganda) that a decade ago allegedly did not have proper due diligence processes, that 5) AGR may have refined conflict gold from those regions of the DRC. *See generally* DRC-30316-0031. Defendants

then make the further leap that because Plaintiff was once the owner and CEO of AGR, that he is responsible for or complicit in activities that threaten the peace, security, or stability of the DRC, regardless of whether Plaintiff is still involved in the gold industry. *Id*. This is again because some time ago OFAC believes AGR's due diligence efforts may have failed to detect, and thus refined, gold from regions of the DRC where armed rebel groups were operating. *Id.*

Defendants' efforts to broadly and vaguely tie Plaintiff to rebel groups in the DRC does not pass the APA's muster. *See* MSJ at 29-30 ("the generalized evidence about Goetz's use of smuggled gold from the DRC, which generally benefits armed groups and drives the conflict is sufficient to support Goetz's designation."). Indeed, Defendants appear to tacitly agree that their findings are vague and attenuated. MSJ at 30 (stating that "[t]here is no requirement that OFAC further identify the specific groups being supported or show direct linkage."). Moreover, while Defendants state that AGR demonstrated a "general unwillingness to ask or answer questions about the source of that gold," MSJ at 29, Plaintiff did provide OFAC with AGR's intake policies and procedures. Notably, those policies and procedures did include questioning the sourcing of gold to be refined by AGR. *See* DRC-34996-0089–0211. In sum, Defendants have no concrete or specific, or even substantial evidence, and instead have attempted to broadly link Plaintiff to rebel groups in the DRC through various inferences and assumptions. *See* MSJ at 30 ("Mai-Mai Yakutumba was active in North Kivu and South Kivu provinces of the DRC" and "[t]hose are provinces from which AGR acknowledges sourcing large amounts of gold" although "it denies sourcing from 'conflict areas.'") (citing DRC-34996-0033; DRC-30316-0031).

Accordingly, as Defendants' administrative record fails to adequately specify conduct linking Plaintiff to rebel groups purportedly operating in the DRC, much less allege any ongoing conduct by Plaintiff, Defendants have acted arbitrarily and capriciously in violation of the APA.

### D. OFAC's Finding of No Change in Circumstances Justifying Delisting is Arbitrary and Capricious

Defendants have acted arbitrarily and capriciously by failing to consider the totality of Plaintiff's information, arguments, and evidence in finding no change in circumstances in support of its denial action. In denying Plaintiff's first petition for administrative reconsideration, OFAC cited the State Department's foreign policy guidance that Plaintiff "fails to provide any indications that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him." DRC-34996-0003.

In response to that guidance, Plaintiff provided excerpts of public statements he made which provided "indications that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him. *See generally id.* Indeed, Plaintiff cited a July 12, 2023 post stating that "[e]verything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefit rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain." DRC-37986-0037. He also publicly stated that "[i]t is crucial to foster trade within formal institutions that enable transparent transactions and clear identification of traders." DRC-37986-0041.

Moreover, Plaintiff acknowledged in his own submission to OFAC that he "fully understands and recognizes that there are serious concerns and risks arising from sourcing minerals from high-risk or conflict areas, and that there are immense consequences that arise as a result of illicit trade benefitting the conflict in the DRC and Great Lakes Region." DRC-37986-0040. Despite providing "indications that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted," Defendants arbitrarily found that such statements do not demonstrate a change in circumstances. DRC-37986-0003, 0013. This is because, according to the Defendants', Plaintiff's statements are purportedly "vague, high level, and devoid of serious

content" and "do not provide any meaningful demonstration of change in behavior." *Id*. This is despite that Defendants themselves have already found a significant change in circumstances—i.e., that Plaintiff is no longer a leader of AGR. DRC-34996-0012; *see* MSJ at 25.

In reality, Plaintiff has, in fact, demonstrated a change in circumstances giving rise to his designation by separating himself from AGR, and the remaining companies that he owns or controls are inactive, undergoing liquidation, or otherwise seized by the Rwandan government. *See* DRC-37986-0044–0047. By ignoring this clear change in circumstances without finding that Plaintiff continues to be involved in the DRC conflict gold trade—and instead arguing that Plaintiff may potentially become involved in such trade at some unidentified point in the future—Defendants have acted arbitrarily and capriciously. DRC-37986-0016; *see generally* MSJ at 26 (citing DRC 34996-0029).

### E. OFAC Has Not Provided a Reasoned Explanation as to Why Plaintiff's Proposed Remedial Measures Are Inadequate

Plaintiff proposed numerous remedial measures designed to address the bases for his designation and continued designation under E.O. 13413, as amended. These measures included, for example, disclosure of extensive personal and corporate documentation regarding his and his businesses' activities; disclosure of comprehensive financial information and documentation of his personal and business finances; provision of certifications that he is not engaged in sanctionable conduct or dealings; implementation of sanctions policies and procedures in any businesses that he owns or controls; provision of responses to any questions from OFAC; and undergoing annual sanctions audits by an independent third party with respect to his own personal finances and those of the companies that he owns or controls, in addition to annual audits on the implementation of corporate policies and procedures. DRC-34996-0218–0221. Further, Plaintiff identified commitments to contribute to positive change in the DRC through public statements, willingness

to engage in activities for transparency with respect to the trade in minerals, and commitment to donate to organizations combatting illicit gold trade once he has the financial means to do so. DRC-37986-0047.

Despite this, OFAC claims that it "reasonably determined that Goetz's proposed future 'remedial measures' are inadequate to demonstrate changed circumstances or any other basis for delisting." MSJ at 8; *see also* DRC-37986-0003 ("commitments to make statements or take actions in the future . . . are generally insufficient to justify delisting."). This is nonsensical, however, given that OFAC's delisting procedures separately address changes in circumstances and proposals of remedial measures. 31 C.F.R. § 501.807. Further, Defendants' failure to explain why Plaintiff's commitments to take actions in the future are generally insufficient to justify delisting, given that OFAC's own delisting procedures clearly state that a party "*may* propose remedial steps on the person's part . . . which the person believes *would* negate the basis for designation, is also not in accordance with law. 31 C.F.R. § 501.807(a). (emphasis added).

Indeed, were OFAC's interpretation plausible, it would negate the ability to propose remedial measures to negate the basis of designation in exchange for delisting—a right expressly afforded by that regulation to listed persons. Accordingly, OFAC's conclusion that commitments to future actions are generally insufficient to warrant delisting is not consistent with the plain language of 31 C.F.R. § 501.807, and thus not in accordance with law in violation of the APA.

Moreover, OFAC claims that there is no way to monitor and enforce the remedial measures that Plaintiff has proposed. *See* MSJ at 31 ("OFAC is under no obligation to delist people who have proposed future actions that OFAC has little meaningful way to monitor and enforce."). In addition, OFAC claims that "in order for those to be effective, OFAC would need to devote substantial resources to oversight and review and trust that it was getting accurate information

from outside its jurisdiction." MSJ at 32 (citing DRC-34996-0010-11). Defendants added that Plaintiff's "past obfuscation undermine[s] his credibility and that OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States." *Id.*

OFAC's denial letter does not identify that past obfuscation it was considering in undertaking that finding, nor does OFAC affirmatively find that there was any such obfuscation. DRC-37986-0003; *but see* MSJ at 28 ("It is noteworthy that his ownership and control of AGR was itself the subject of some *possible* obfuscation.") (emphasis added). Nor do Defendants identify the difficulties in policing and enforcing the proposed terms of removal or provide a reasoned explanation why they discounted any measures Plaintiff proposed that would address their enforcement abilities with respect to the remedial measures. Indeed, Plaintiff proposed an independent third-party auditor who would monitor and ensure that Plaintiff is carrying out the measures, and report to OFAC with the results. DRC-34996-0218–0221. Further, the certifications that Plaintiff provides would be under penalty of perjury, thus availing himself to U.S. jurisdiction thereby making any obfuscation or material omission subject to criminal penalties under U.S. law. Finally, and most obviously, the fact remains that Defendants can redesignate Plaintiff in the future if they believe he has not faithfully carried out the proposed remedial measures or is otherwise engaged in sanctionable conduct. Such ability provides Defendants all of the policing and enforcement latitude that they require.

Defendants' rationale here is further shown to be arbitrary and capricious given that OFAC has previously entered into numerous TORs with foreign persons outside of U.S. jurisdiction. *See, e.g.*, DRC-34996-0010–0216 (describing TORs that OFAC has entered into). OFAC offers no explanation why these other foreign persons received TORs and Plaintiff did not, nor did OFAC

identify what enforceability challenges exist in Plaintiff's case that were not present in other cases where TORs were provided. MSJ at 31 ("A commitment to future actions can form a reasonable part of a changed circumstances delisting in an appropriate case, but this is not that case.").

OFAC also stated that Plaintiff's "vague public statements and amorphous proposals for collaborative partnerships failed to demonstrate the kind of changed circumstances that might negate the basis for listing." MSJ at 23 (citing DRC-37986-0012-16). Defendants fail to explain why the proposals are vague and amorphous, and instead flimsily pointing that Plaintiff "has not provided any further information about the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum, and therefore OFAC is unable to assess the merits of these organizations." DRC-37986-0015. Indeed, if Defendants truly required additional information to assess these organizations, they could have inquired about them through questionnaires during the delisting process or conducted a quick internet search to learn more about the organizations. The record is devoid of any attempt by Defendants to do so, and thus demonstrates that OFAC failed to adequately consider Plaintiff's proposed measures and reasonably explain why they were insufficient to negate the basis of his designation.

Finally, despite raising credibility concerns regarding Plaintiff, Defendants fail to explain how they—or even if they—determined, concluded, or otherwise found that Plaintiff made a false statement during his delisting matter. Accordingly, for the reasons stated above, Defendants failed to provide an adequate explanation as to why Plaintiff's remedial measures are inadequate and have thus acted arbitrarily and capriciously in violation of the APA.

      **F.**    **OFAC's Denial of Plaintiff's Second Petition Because Plaintiff Has Not Admitted to Past Conduct While Stating that an Admission is Not Necessary for Delisting is Arbitrary and Capricious**

OFAC's denial of Plaintiff's second petition due to Plaintiff not admitting OFAC's allegations, despite stating itself that an admission of sanctionable conduct is not necessary to achieve delisting, is also arbitrary and capricious. Specifically, OFAC claims that there is no blanket requirement that a sanctioned person must admit to OFAC's allegations of sanctionable conduct to achieve delisting; however, because Plaintiff did not make such an admission, his petition will be denied. MSJ at 31-33. As result, OFAC strangely takes the position that no number of positive steps, actual change in behavior, or proposed steps would be sufficient to warrant delisting unless Plaintiff admits to engaging in such conduct, while also simultaneously saying that Plaintiff does not need to admit to the conduct to be delisted. *See generally id.*

Notably, there is no U.S. legal authority that requires an admission of sanctionable conduct to achieve delisting, and even OFAC's Procedures Governing Delisting from the SDN List do not express a requirement that the blocked person admit to the conduct underlying their designation to achieve delisting. However, by requiring an admission of sanctionable conduct to merit potential delisting here, OFAC impermissibly expanded the scope of 31 C.F.R. § 501.807 and failed to provide a meaningful process by which Plaintiff can challenge his designation. Such an ad hoc expansion of the burden upon the party petitioning for delisting from the SDN List is similarly arbitrary and capricious and not in accordance with law in violation of the APA.

Moreover, requiring admission to the conduct for which Plaintiff was sanctioned would result in his continued designation as Defendants are already maintaining his designation, in part, because they have determined that he engaged in such alleged actions in the past. In other words, Defendants are pinning Plaintiff's continued designation on historic conduct insofar as they already have acknowledged that that he is no longer at AGR, have not identified any ongoing sanctionable conduct, and have only stated that he may engage in such sanctionable conduct in the

future. This renders OFAC delisting procedure not in accordance with law insofar as it does not afford Plaintiff a meaningful opportunity to respond his designation because his position with respect to whether he engaged in sanctionable conduct will be used against him regardless of whether it's an admission or denial. Moreover, Defendants have not explained how admitting to sanctionable conduct negates the original basis for the designation or otherwise evidences a change in circumstances. Defendants try to support their position by claiming that the court in *Basengezi* rejected similar argument where the plaintiff argued that if past conduct was a basis for rejecting a delisting petition, then a plaintiff could never show changed circumstances under the regulation. *See* MSJ at 34; *Basengezi*, 2024 WL 1050340, at *7. This case in inapposite, however, as OFAC did not require Plaintiff to admit to the conduct that OFAC sanctioned him for. *See* MSJ at 34. Thus, to the extent that Defendants require an admission of sanctionable conduct by Plaintiff, Defendants' position is not in accordance with law and thus in violation of the APA.

Finally, many sanctioned parties have been removed from the SDN List without admitting involvement in sanctionable conduct. There is no explanation offered by OFAC as to why those similarly situated parties—i.e., blocked persons seeking removal from the SDN List under 31 C.F.R. § 501.807—were not subject to this expanded burden, while Plaintiff is. As a result, OFAC's failure to explain why Plaintiff is being treated in a disparate manner with these similarly situated parties in and of itself is per se arbitrary and capricious and in violation of the APA.

That said, if Defendants truly do not require an admission of sanctionable conduct then the point is moot, and Plaintiff's admission or denial of sanctionable conduct is irrelevant. Were that the case, however, it begs the question as to why OFAC would raise in the first instance. As such, it is clear that OFAC is requiring an admission of sanctionable conduct in order for Plaintiff to be

delisted, regardless of their assertion that one is not required, and such a requirement is arbitrary and capricious and thus in violation of the APA.

***

In sum, the administrative record does not demonstrate that OFAC's denial of Plaintiff's second petition for administrative reconsideration satisfies the APA standard. Defendants failed to provide any basis for Plaintiff's continued designation that is connected to the designation criteria of E.O. 13413, as amended, or to the bases for delisting set forth in 31 C.F.R. § 501.807, thus acting inconsistent with their own regulations and arbitrarily and capriciously under the APA. Accordingly, OFAC's decision was arbitrary, capricious, and an abuse of discretion under 5 U.S. § 706(2)(A). The Court should therefore deny Defendants' motion for summary judgment and grant Plaintiff's summary judgment on Count One of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment; deny Defendant's motion for summary judgment; and enter judgment for Plaintiff on all claims.

Dated: October 21, 2024

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*