**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ALAIN GOETZ,                            )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Civil Action No. 1:22-cv-1204 (JEB)
                                        )
LISA M. PALLUCONI, Acting Director,     )
Office of Foreign Assets Control, *et al.*, )
                                        )
        Defendants.                     )
_____)

**DEFENDANTS' COMBINED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

AMY E. POWELL
Senior Trial Attorney
Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 2760
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

DISCUSSION ...................................................................................................... 2

I.    OFAC Acted Reasonably in Denying Plaintiff's Second Petition for
      Delisting. ............................................................................................. 2

II.   Plaintiff's Other Arguments Do Not Undermine the Conclusion that Goetz
      is Subject to Sanctions under E.O. 13413, as amended. ......................... 9

      A.    Plaintiff is Subject to Sanctions for Past Conduct. .................... 9

      B.    OFAC Has Reasonable Basis to Doubt that Goetz Has Cut Ties
            with AGR and Reasonable Concerns that his Conduct Might
            Recur. .................................................................................. 10

      C.    OFAC Reasonably Linked Plaintiff's Conduct to Armed Groups in
            the DRC. ............................................................................... 11

      D.    OFAC Reasonably Found No Change in Circumstances Justifying
            Delisting. .............................................................................. 12

      E.    OFAC Reasonably Found Goetz's Proposed Terms of Removal
            Inadequate. ........................................................................... 13

      F.    Plaintiff's Arguments about Acknowledgement of Past Conduct
            are Unpersuasive. ................................................................. 16

      G.    Harmless Error. .................................................................... 16

CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Air Canada v. Dep't of Transp.*,
148 F.3d 1142 (D.C. Cir. 1998) ............................................................... 17

*Basengezi v. Smith*,
No. CV 23-1249 (JEB), 2024 WL 1050340 (D.D.C. Mar. 11, 2024) ............................. 2, 9, 13

*Bello v. Gacki*,
94 F.4th 1067 (D.C. Cir. 2024) ............................................................... 10

*Comcast Corp. v. FCC*,
526 F.3d 763 (D.C. Cir. 2008) ............................................................... 4

*Dickson v. Sec'y of Def.*,
68 F.3d 1396 (D.C. Cir. 1995) ............................................................... 2

*Friends of the Capital Crescent Trail v. Fed. Transit Admin.*,
253 F. Supp. 3d 296 (D.D.C. 2017) ............................................................ 3

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003) ...................... 2, 13

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ............................................................... 2, 9

*Islamic Am. Relief Agency v. Gonzales*,
477 F.3d 728 (D.C. Cir. 2007) ............................................................... 2, 17

*James Madison Project v. Dep't of Just.*,
302 F. Supp. 3d 12 (D.D.C. 2018) ............................................................ 3, 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......................................................................... 2

*Paralyzed Veterans of Am. v. Sec'y of Veterans Affs.*,
345 F.3d 1334 (Fed. Cir. 2003) .............................................................. 4

*Small Refiner Lead Phase-Down Task Force v. U.S. EPA*,
705 F.2d 506 (D.C. Cir. 1983) ............................................................... 2

*U.S. Postal Serv. v. Gregory*,
534 U.S. 1 (2001) ........................................................................... 3

*United States v. Chem. Found.*,
   272 U.S. 1 (1926)..................................................................................................... 3

*Zevallos v. Obama*,
   793 F.3d 106 (D.C. Cir. 2015)................................................................................. 17

**STATUTES**

5 U.S.C. § 706.................................................................................................................. 17

**REGULATIONS**

31 C.F.R. § 501.807...................................................................................................... 4, 13

Exec. Order No. 13413, Blocking Property of Certain Persons Contributing to the Conflict
   in the Democratic Republic of the Congo,
   71 Fed. Reg. 64,105 (Oct. 27, 2006)................................................................. 1, 2, 4, 9

Exec. Order No. 13671, Taking Additional Steps to Address the National Emergency With
   Respect to the Conflict in the Democratic Republic of the Congo,
   79 Fed. Reg. 39,949 (July 8, 2014)............................................................................. 1

## INTRODUCTION

As explained in Defendants' motion for summary judgment, the record amply supports OFAC's conclusion that Plaintiff should remain on the Specially Designated Nationals ("SDN") List because he was engaged in the illicit DRC gold trade and because he acted on behalf of African Gold Refinery Limited ("AGR"), a designated entity.  Plaintiff picks around the edges of those conclusions and reiterates the meager claims in his delisting petition, but ultimately he has little rejoinder to the conclusion that he was responsible for or complicit in, or had engaged in directly or indirectly, support to persons involved in activities that threaten the peace, security, or stability of the DRC or that undermine the DRC's democratic processes or institutions through the illicit trade in natural resources of the DRC.  *See* Exec. Order No. 13413, Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo, 71 Fed. Reg. 64,105 (Oct. 27, 2006), *as amended by* Exec. Order No. 13671, Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo, 79 Fed. Reg. 39,949 (July 8, 2014) ("EO 13413, as amended" or "the Order").  Moreover, he has no rejoinder at all to the conclusion that he acted or purported to act for or on behalf of, directly or indirectly, AGR, a designated entity.  He relies instead primarily on the argument that the circumstances resulting in his listing no longer apply and that he has proposed terms of removal which would negate the basis for his listing.  The Government, however, has ample reason to doubt many of his claims, which would not, in any case, constitute a change in circumstances warranting delisting or constitute remedial steps that negate the basis for listing.  The Court should grant summary judgment to the Government.

**DISCUSSION**

**I.    OFAC Acted Reasonably in Denying Plaintiff's Second Petition for Delisting.**

OFAC's well-reasoned determination that Plaintiff meets the standards in E.O. 13413, as amended, "meets the 'minimal standards of rationality,' and therefore must be upheld[,]" *see Holy Land Found. for Relief & Dev. v. Ashcroft,* 219 F. Supp. 2d 57, 74 (D.D.C. 2002) (quoting *Small Refiner Lead Phase-Down Task Force v. U.S. EPA*, 705 F.2d 506, 521 (D.C. Cir. 1983)), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003). This Court has repeatedly recognized that OFAC is owed substantial deference under the applicable standard of review, especially in a case, such as this, at the intersection of national security, foreign policy, and administrative law. *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[W]e reiterate that our review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential."). An agency's decision may be deemed arbitrary and capricious only where it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or its decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court may not "substitute its judgment for that of the agency"; rather, the agency's decision should be affirmed as long as it is supported by a rational basis. *Id.* And the Administrative Procedure Act ("APA") does not require "a model of analytic precision"—so long as the "the agency's path may be reasonably discerned" and its explanations contain a "rational connection between the facts found and the choice made," the APA is satisfied. *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (internal quotation marks omitted); *Basengezi v. Smith*, No. CV 23-1249 (JEB), 2024 WL 1050340, at *6 (D.D.C. Mar. 11, 2024), *appeal filed*, No. 24-5130 (D.C. Cir. May 14, 2024). Defendants' actions in this case readily satisfy this standard.

2

Plaintiff insists that he has offered substantial submissions to justify delisting, including that his companies are currently inactive or in liquidation, and that OFAC must have failed to consider these and other arguments in his delisting petition because the Government's brief characterizes his second delisting petition as "tweets and promises." *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J and Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 33, at 28-30. Not so. The administrative record demonstrates that the agency "grappled" with each of his arguments and explained why a contrary decision was made. *See Friends of the Capital Crescent Trail v. Fed. Transit Admin.*, 253 F. Supp. 3d 296, 302 (D.D.C. 2017) (holding that arguments made in litigation failed adequately to "grapple" with competing evidence from expert witnesses); Pl.'s Mem. at 27 (citing same).

OFAC, in writing, expressly informed Plaintiff that it considered all of the arguments and evidence he submitted in support of each petition for reconsideration. *See* DRC-37986-0001 ("After reviewing all information available to OFAC, including . . . the material you submitted, OFAC has determined that your client has not provided credible arguments or evidence . . . [.]"); DRC-34996-0001 (similar). Additionally, OFAC summarized, and made frequent reference to, Plaintiff's questionnaire responses, *see e.g.*, DRC-37986-0001-03, 0006-07; DRC-34996-0001-03, 0006-11, which shows the agency expressly considered Plaintiff's submissions during the adjudication of his delisting petition. The Supreme Court has been clear that an agency's affirmation is entitled to a presumption of regularity. *See, e.g.*, *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and . . . that they have properly discharged their official duties."); *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies[.]"). This presumption applies "where a government official or entity conducts official acts in the manner provided by statute, regulation, or policy." *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 32 (D.D.C.

2018); *see also Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) ("We must presume an agency acts in good faith[.]"); *Paralyzed Veterans of Am. v. Sec'y of Veterans Affs.*, 345 F.3d 1334, 1349 (Fed. Cir. 2003) ("[G]overnment officials are presumed to act in good faith and with regularity."). Such is the case here, as OFAC issued its decision pursuant to the applicable regulation. *See* 31 C.F.R. § 501.807.

Moreover, during the delisting proceedings, Defendants explicitly addressed each of the arguments made by the petitioner. For example, Plaintiff argues that Defendants failed to consider that his currently owned metals companies are inactive. Pl.'s Mem. at 28. This argument misconstrues the course of the administrative proceedings and is belied by the record. In the first delisting proceeding, Plaintiff argued that his alleged dissociation from AGR justified delisting. *See* DRC-34996-0092-93 (arguing in March 2022 that he had divested and resigned but continued to serve as consultant/promoter); *id*. at 218 (in February 2023, detailing history of divestment/resignation). OFAC sought and received information about other companies he owns and controls as well. *See, e.g.*, DRC-34996-0242-46 (as of April 2023, listing at least 5 companies that he currently owns or controls, as well as two others in liquidation); 841-45 (in May 2023, confirmed that he still held shares in those 5 companies, and that Aldango is operational). Upon due consideration of all of that information and more, OFAC agreed with Plaintiff's contention that he no longer met the standard for currently being a leader of AGR following his formal resignation, but determined that he continued to meet the standards for designation under Section 1(a)(ii)(C)(7) (because he has engaged in support to entities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through illicit trade in natural resources) and Section 1(a)(ii)(G) (because he has acted for or on behalf of AGR) of E.O. 13413, as amended. DRC-34996-0011-12. Additional evidence regarding Goetz's decades-long participation in illicit gold trade continues to support his original designation, and OFAC assessed

that Goetz's denials in this regard are not credible in light of the weight of the evidence. *See generally* DRC-34996-0014-24. Moreover, and damningly, despite previous claims that he divested from AGR in 2018, Goetz remained the (indirect) majority owner of AGR through at least mid-2021, continued signing documents on its behalf, and may have continued to serve in some consulting role, all of which casts doubt on the credibility of claims of divestment, particularly given his failure to take responsibility for past actions. DRC-34996-0024-30. With respect to his other companies, OFAC assessed that his continued ownership interests in gold and metals companies provide him with the means to continue operating in the illicit gold trade should he be delisted. DRC-34996-0002, 0029-30. Thus, it is Defendants who first raised the status of Plaintiff's other companies and determined that his existing ownership interests were one factor weighing against delisting because he has the means to continue participating in the gold trade.

When Goetz submitted his second delisting petition in July 2023, he did not explicitly dispute this finding (which had appeared in the denial letter he received), nor did he make any argument for delisting based on the lack of current activity in gold and metals. *See* DRC-37986-0036-38. In other words, he never argued that the inactivity of his companies was itself a change in circumstances. In November 2023, in response to an OFAC questionnaire about whether any of his companies would take steps to address the gold trade, the petitioner indicated he was unable to respond because "the companies in which he still maintains an ownership interest are inactive and indeed did not have any business activities prior to Petitioner's designation." *See* DRC-37986-0044. He further indicated that while he remains an "indirect shareholder" in Aldango (the company previously identified as "operational"), he is currently in litigation against the company as a result of it being nationalized by the Rwandan government. *Id*. OFAC also considered the information previously submitted. *See, e.g.*, DRC-37986-0012. OFAC concluded, again, that

Goetz continued to meet two criteria for designation, given the absence of additional information on these points. OFAC re-iterated its findings that "GOETZ* has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR* and other entities," and continued to assess that "GOETZ* currently owns and controls companies that may enable him to continue engaging in the illicit gold trade." *See* DRC-37986-0016.

This assessment, that he could use his decades of experience and existing ownership interest to conduct gold trade activity in the absence of sanctions, is fully consistent with Plaintiff's own submissions as well. While he claims that most of his companies are "inactive," he does not claim that they have been sold or are in dissolution or otherwise permanently disabled; nor has he submitted any documentary evidence to that effect. That they are allegedly "inactive" does not even contradict OFAC's finding of ongoing ownership interests.

There are, in addition, other indications in the record that such ownership could result in renewed activity. For example, the petitioner's proposed Terms of Removal ("TOR") as described in February 2023 offers, *inter alia*, to provide OFAC a complete list of the sources of gold for the companies he owns or controls and to undergo an annual audit for compliance with due diligence frameworks related to the mineral trade. DRC-34996-0221. These would be nonsensical proposals if none of those companies have any current or future sources of gold and no intention or ability to engage in the mineral trade in the future. Indeed, it would be reasonable to infer from the proposals that he *does* intend to re-engage in the mineral trade if he were delisted; otherwise, the TOR would have proposed that he would not engage in the mineral trade, not that he will do so subject to audits and monitoring. Plaintiff has not submitted sufficient information regarding the litigation related to Aldango to allow the USG to determine whether he is seeking to regain control of those assets. DRC-37986-00044. And as recently as a June 2023 submission, Goetz

confirmed the identity of a currently serving director at Aldbra Limited, who performs administrative duties.  DRC-34996- 0951.  In short, even if the companies are as "inactive" as Goetz claims, they continue to exist, he continues to have an ownership interest, and it appears from Plaintiff's own submission that they may have assets and directors.  There is certainly no evidence, nor even a claim from Goetz, that it would be unlikely or impossible for him to engage in the gold trade in the future.  He cannot invent this argument for the first time in a summary judgment motion.

Plaintiff recites his other arguments from the petitions as well, Pl.'s Mem. at 29, but the record reflects that each of these arguments was considered explicitly or implicitly to the extent relevant.  For example:

- Plaintiff's argument that OFAC impermissibly required an admission of sanctionable conduct is explicitly addressed at DRC-37986-0002, 0013.

- Plaintiff's arguments about the delisting regulations are addressed at DRC-37986-0002, 0013.

- Plaintiff's allegations about "similarly situated parties" are addressed at DRC-37986-0002, 0013-14.

- The connection between international investigations and the basis for sanction is addressed at DRC-37986-0016-17.

- Plaintiff's claims about his philanthropic activities and tweets about conflict gold are extensively addressed at DRC-37986-0013-16, 0018-19.

Plaintiff also argues that OFAC makes several "conclusory" findings, including that delisting Goetz would undermine international cooperation on the issue of conflict gold.  Pl.'s Mem. at 30-31.  Plaintiff grumbles about the various data points supporting that conclusion, but all of these points are explicitly connected to the conclusion.  For example, OFAC had previously explained in the first denial why it believed the anonymized UAE report is about the Plaintiff, despite not mentioning his name.  *See* DRC-34996-0017-18 (explaining OFAC's assessment that

the anonymized UAE Financial Intelligence report is about Goetz based on characteristics in the report compared with widely known information about Goetz); *id*. at 0023 (citing cable confirming UAE investigation into Goetz).  And while the previous Belgian conviction may be unrelated to his activities in the DRC, it is related to his participation in illicit gold trade in Europe.  *See* DRC-37986-0016, DRC-30316-0036 (citing DRC-30316-0334-36); DRC-37986-0066.  And while Plaintiff is correct that the Security Council has not yet taken "direct action," the UN Group of Experts reports demonstrate UN investigation of Goetz's activities as part of its ongoing interest in the conflict gold trade.  DRC-37986-0017, DRC-30316-0028-30 (citing GOE reports as Exhibits 24, 25, 28, 51, 60).  And of course, the State Department's foreign policy guidance ties this all together, explaining that delisting Goetz now without any accountability for or even acknowledgement of past conduct would undermine U.S. foreign policy stance on these issues, including U.S. efforts to hold people like Goetz accountable for their actions, and would send a "clear signal" that it is acceptable to undermine civil society and the UN Group of Experts.  DRC-37986-0110-11.

Finally, in this section, Plaintiff expresses some confusion about whether Defendants believe he has conceded his involvement in the gold trade, as detailed in the original designation action and first denial.  Pl.'s Mem. at 31.  It is Defendants' understanding that Goetz continues to dispute his involvement in the trade of conflict gold and asked that his July 2023 submission be considered alongside other evidence.  During the second delisting process, however, he offered no new evidence, argument or information that would tend to contradict the findings in the original designation or first denial, which were based on substantial evidence of Goetz's decades-long participation in illicit DRC gold trade.  *See* generally Defs.' Mem. Supp. Mot. for Summ. J.

("Defs.' MSJ"), ECF No. 32.  And of course, he does not dispute that he acted for on behalf of AGR in the past.

II.    **Plaintiff's Other Arguments Do Not Undermine the Conclusion that Goetz is Subject to Sanctions under E.O. 13413, as amended.**

Plaintiff reiterates a variety of other arguments, posited in the Complaint, that are largely addressed in Defendants' opening memorandum.

A.    Plaintiff is Subject to Sanctions for Past Conduct.

Defendants explained in the opening memorandum that designation on past conduct alone is both permissible and reasonable under the plain text of the Executive Order.  *See* Defs.' MSJ at 18-19.  Courts in this district have now repeatedly re-affirmed this principle, including with respect to this same executive order.  *Id* (collecting cases).  Plaintiff's argument that plaintiffs in those cases also had more recent conduct is unavailing.  This Plaintiff himself has engaged in more recent conduct, but even if that were not the case, this Court has explicitly held that "E.O. 13413 expressly permits designating persons based solely on past activity[.]" *Basengezi*, 2024 WL 1050340, at *7 (quotations omitted).

As set forth in greater detail below, Defendants have not conceded that Plaintiff is designated based solely on past conduct, and have reason to doubt his total dissociation from AGR. *See* Part II.B, infra; *see* Defs.' MSJ at 19-23.  Plaintiff's selective citation of some older conduct is not evidence to the contrary and is certainly not proof that there is no "recent conduct."  For example, Plaintiff admitted engaging in consulting/promotional activity on behalf of AGR as recently as 2022.  *See* DRC-34996-0027 (citing 0092). [1]  And otherwise has admitted to engaging activity on behalf of AGR until at least 2021.  *See* Defs.' MSJ at 22.  This is hardly ancient history.

_____

[1] Nor is it impermissible to rely in part on conduct pre-dating the Executive Order, as Plaintiff suggests without citation.  Pl.'s Mem. at 33.  Such conduct is some evidence that Goetz met the standard at the time of designation, that he would continue such conduct, and that he

B. <u>OFAC Has Reasonable Basis to Doubt that Goetz Has Cut Ties with AGR and Reasonable Concerns that his Conduct Might Recur.</u>

Defendants explained that OFAC had concerns about Goetz's dissociation from AGR and had a reasonable basis to believe that his conduct might recur.  Defs.' MSJ at 19-23.

Plaintiff claims that he has never flipflopped on his consultancy role with AGR.  This ignores (1) his constantly evolving description of his relationship with AGR in statements to OFAC and the media, *see* Defs.' MSJ at 20; and (2) the belated attempt to backtrack on the consultancy role, *compare* DRC-34996-0092 (explaining that he "serves in a limited role as a consultant/promoter") *with* DRC-34996-0841 (insisting that he never ended up providing any services under the consultancy agreement).  Additional information bearing on Plaintiff's pattern of obfuscation is available to the Court *ex parte* and *in camera*.  *See* DRC-34996-0029.

Plaintiff further complains that the record does not show that his past conduct might recur because OFAC does not explain how his inactive and nationalized companies could be linked to future conflict gold trade in the DRC, something he describes as "pure speculation."  Pl.'s Mem. at 35-36.  As explained above in Part I, his ownership interests in at least seven separate mineral or gold companies are evidence from which OFAC can infer that he possesses the means to continue in the gold trade, and he has not submitted any evidence (or even made the claim) that use of such companies for future business is unlikely or impossible.  *See supra* pp. 4-7.  While he

---

continues to be capable of renewing such activity.  And the D.C. Circuit has long agreed that such historical information may be appropriately considered.  *See Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 162 (D.C. Cir. 2003) (rejecting argument that Treasury was arbitrary and capricious in relying on information that predated the 1995 designation of Hamas as a terrorist organization because "it was clearly rational for Treasury to consider HLF's genesis and history, which closely connect it with Hamas"); *see also Bello v. Gacki,* 94 F.4th 1067, 1073 n.7 (D.C. Cir. 2024) ("OFAC could rely on information regarding Lopez Bello's assistance and support [to an SDN] before [the SDN's] designation.").

alleges that two of the companies were "in liquidation" last year and that most of the other companies are "inactive," at least five such companies currently still exist and have assets, and in at least one case, an employee. *Id*. And he claims that one company – Aldango – is currently active. *Id*. While Goetz claims he does not currently exercise operational control over that company, he claims that he has a significant ownership interest and remains in litigation related to its nationalization, making it unclear from the submissions whether he retains claims on that company's operations. (Like AGR, that refinery is located in a smaller country adjacent to the DRC and is therefore proximate to the gold mines in the Eastern DRC.) And recently as 2023, he still plainly contemplated future activities in the gold trade in general. *See* DRC-34996-0221 (proposing audits/monitoring related to his gold trade activity). Taken in combination with his decades-long participation in the gold trade in general and the conflict gold trade with DRC in particular, including founding new refineries, this information tends to support OFAC's conclusion that he poses a risk of future participation in the illicit gold trade. There is no requirement that OFAC lift sanctions on an individual who might have temporarily paused his sanctionable activity, despite a long history of such activity, and who has demonstrated an ability to renew such activity.

C.   OFAC Reasonably Linked Plaintiff's Conduct to Armed Groups in the DRC.

Plaintiff disputes OFAC's conclusion that AGR, under Plaintiff's then-leadership, engaged in the trade of conflict gold from the DRC, insisting that it relies on a chain of speculation about where AGR's gold may have come from. Pl.'s Mem. at 36-37. It does not. The records for the original designation and both denials include public and non-public evidence about AGR's dealings in conflict gold from the DRC and lack of due diligence in general. *See* DRC-30316-0026-34; DRC-34996-0014-24; DRC-37986-0016. While some of the most recent evidence is circumstantial, *see, e.g.*, DRC-34996-0023 (describing Exhibit 20, a media article concluding that

AGR and other refineries in Uganda are relying on smuggled DRC gold because 2021 gold exports outstripped Ugandan gold production by a factor of 7), other evidence is direct. *See, e.g.*, DRC-30316-0027-28 (describing Exhibits 12 and 6, which detail at least two separate 2017 admissions of trade in undocumented gold from DRC); 0028-29 (describing 2020 GOE report examining documentary evidence of particular purchase of gold from smuggler in 2019); 0029-30 (describing 2018 NGO report with testimony from multiple witnesses with direct knowledge of smuggling and AGR). And ample additional evidence establishes that the trade in gold from the DRC benefits armed groups and drives the conflict. *See, e.g.*, DRC-30316-0017-19 (citing, inter alia, 2092-2117, 0588-91); DRC-34996-0012 (citing 0961-69). Additional non-public evidence is available for the Court's *ex parte, in camera* review. *See, e.g.*, DRC-30316-0032-33.

   D.   OFAC Reasonably Found No Change in Circumstances Justifying Delisting.

   Plaintiff argues that Defendants failed to consider the "totality" of Plaintiff's submissions, arguing that Goetz has both resigned from AGR and publicly supported an end to the trade in conflict gold. *See* Pl.'s Mem. at 38-39. In fact, OFAC clearly considered and reasonably rejected each of these arguments. Defs.' MSJ at 25-26. The denial memoranda specifically consider Goetz's resignation from AGR and conclude that it is insufficient to justify delisting, particularly in light of (1) continued concerns about his credibility, (2) his continued ability to engage in the conflict gold trade in the event of delisting, and (3) weighty foreign policy concerns associated with delisting someone who has not been held accountable or even acknowledged past conduct. DRC-34996-0011-12, 0029-30; DRC-37986-0016-17. It appears that the global spotlight on the conflict gold trade in recent years has negatively affected Mr. Goetz's conflict gold trade business and that he is at least verbally willing to express support for regional change, transparency and accountability. While Defendants welcome Mr. Goetz's vocal commitment to positive change in

the region, he will need to do more to demonstrate changed circumstances that would negate the basis for designation. *See* DRC-37986-0015, 0110-11. That determination is without any prejudice to a future request for delisting based on changed circumstances if he ultimately undertakes these proposed actions. And it certainly meets the "minimal standards of rationality" required by APA review in this area. *See Holy Land Found.*, 219 F. Supp. 2d at 74 (citation omitted).

    E. OFAC Reasonably Found Goetz's Proposed Terms of Removal Inadequate.

    Defendants previously explained the Plaintiff's proposed remedial measures and terms of removal were insufficient to justify delisting, particularly given Plaintiff's past history of obfuscation and the possible difficulty and resource concerns inherent in enforcing such measures with respect to a wholly foreign person. Defs.' MSJ at 25-26. It bears repeating that the standard governing the consideration of delisting petitions and terms of removal is highly discretionary and the agency's decision is entitled to considerable deference. 31 C.F.R. § 501.807; Defs.' MSJ at 12-13; *Basengezi*, 2024 WL 1050340, at *7 ("nothing in the regulations compels OFAC to delist an individual who has ceased to engage in previous sanctionable conduct").

    Plaintiff continues to argue that OFAC found that future commitments are generally insufficient to justify delisting, Pl.'s Mem at 40, partially quoting language from State's foreign policy guidance to that effect, *see* DRC-37986-0103 (noting, in the context of explaining State's foreign policy judgment, that "commitments to make statements or take actions in the future, especially when they are vague and amorphous, as in the present case, are generally insufficient to justify delisting."). Even the most cursory review of OFAC's evidentiary memoranda reveals that OFAC did not take the position that commitments to make statements or take actions in the future could never form part of the basis for a delisting, but rather assessed the actual commitments

13

proposed by Mr. Goetz and explained why they were too vague, and too difficult to monitor or enforce, particularly in light of credibility concerns about Goetz and State's foreign policy concerns.   DRC-34996-0029; DRC-37986 0014-16.   Nothing about OFAC or State analysis is inconsistent with the regulations that permit submission of proposed future actions.

Plaintiff argues that there no actual findings about Goetz's credibility and past obfuscation, and that in any event he proposed a third-party auditor who could monitor his compliance.   Pl.'s Mem. at 41.  Defendants previously explained the basis for the determination that Mr. Goetz is not trustworthy.  *See* Defs.' MSJ at 21-23 (describing Goetz's long history of obfuscating his trade in conflict gold, his likely obfuscation of his ownership of AGR, his dealing in disguised Venezuelan gold, and other evidence).

Plaintiff also argues that the proposed TOR is enforceable because the Government could bring perjury charges if he lied, and because OFAC could "redesignate Plaintiff in the future if they believe he has not faithfully carried out the proposed remedial measures[.]"  Mem. at 41. Neither of those solutions is always simple, however, and the availability of some possible enforcement measures does not obligate OFAC to enter a TOR.  It should go without saying that it may be complicated to monitor and enforce a TOR applied overseas.  Ultimately, monitoring depends on Goetz providing complete and accurate information to the Government and/or a monitor, and he would be providing that information from a jurisdiction where the U.S. Government may lack full coercive authority to ensure compliance and candor.  OFAC may not always be able to enforce a subpoena overseas, the Government may not be able to seize records or individuals overseas pursuant to its usual domestic authorities, and the Government cannot always reliably extradict criminal defendants from overseas. Moreover, it is not necessarily always straightforward or feasible to redesignate someone who violated a TOR for the sole reason of the TOR breach.  But even if all of those enforcement means were available, OFAC is under no

obligation to expend such monitoring resources to enter a TOR with someone OFAC has found to lack candor.

Plaintiff also argues that OFAC has previously entered into TORs with foreign persons outside the United States and that OFAC's refusal to do so here is arbitrary and capricious. Pl.'s Mem. at 41-42. But having once entered into a TOR in one circumstance does not suggest that OFAC should, much less is obligated to do so in every case. Rather, here, the agency weighed the consequences and risks of a TOR and determined that the proposed measures did not justify delisting under the circumstances. OFAC concluded, "based on the totality of the information provided in [the] July 21, 2023 letter to OFAC and November 26, 2023 questionnaire responses, OFAC has reason to believe that such measures would not provide credible assurance that [Goetz] will not engage in the activities that resulted in his designation pursuant to the Order and would not negate the basis for his designation." DRC-37986-0003. Each case is evaluated on its own merits and with due considerations for the foreign policy and national security implications of the proposed delisting.

Finally, Plaintiff argues that his proposals are not vague and that OFAC could have just asked more questions or done more research. Pl.'s Mem. at 42. But Goetz's proposals were barely articulated concepts, not concrete plans, and OFAC did in fact ask questions. The initial submission contained just a few sparse sentences on each additional "remedial measure:" public statements on the conflict gold trade, a donation to unspecified charity or nonprofit working on the mineral trade, and unspecified future efforts to support advocacy initiatives on supply chain transparency. DRC-37986-0037-38. The follow-up submission, responding to OFAC's requests for more information was barely better. For example, Goetz outlined some general principles for past and future public statements, none of which were particularly detailed or substantive and none

of which admitted that he was even changing his past positions. DRC-37986-0040-42. Goetz retracted his offer to make a donation altogether in light of his changed financial circumstances, at least until some unspecified future date. DRC-37986-0042-43. With respect to "advocacy initiatives," the November 2023 submission includes two paragraphs of general ideas of his intentions for possible future initiatives and partners – a far cry from specific or concrete plans. DRC-37986-0043-44. Nothing in the record suggests that Goetz has initiated these efforts or even begun making concrete plans. Nothing requires OFAC to flesh out Plaintiff's proposals for him. OFAC acted reasonably in refusing to enter a TOR with Goetz under these circumstances.

F.    Plaintiff's Arguments about Acknowledgement of Past Conduct are Unpersuasive.

Defendants previously explained that OFAC does not impose a blanket requirement for admission of past sanctionable conduct to be delisted but that such admissions (including taking responsibility and making amends) could be significant factors to be weighed along with the totality of the circumstances, and formed an explicit part of the State Department's foreign policy guidance. Defs.' MSJ at 26-28; DRC-37986-0013. Plaintiff continues to argue that there is a requirement and that it is unfair but does not grapple with the agency's explanation. The agency's reasoned analysis clearly comports with "minimum standards of rationality."

G.    Harmless Error.

Even if the Court were to find some error on any of the above points, the Court should also find that any such error was harmless. Any mistakes by OFAC during the delisting process constitute harmless error, and summary judgment should still be granted for the agency. *See* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."); *see also Air Canada v. Dep't of Transp.*, 148 F.3d 1142, 1156 (D.C. Cir. 1998) ("As incorporated into the APA, the harmless error

rule requires the party asserting error to demonstrate prejudice from the error.").  As discussed above, the APA standard of review is exceedingly deferential, especially in the context of national security and foreign policy, as is the case here.  *See Islamic Am. Relief Agency*, 477 F.3d at 734 ("[W]e reiterate that our review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential.").  Moreover, the denial evidentiary and supporting exhibits demonstrate that OFAC had more than sufficient evidence to deny Plaintiff's petition for reconsideration under this standard.  Thus, even if, for the sake of argument, OFAC conceivably committed an error by not individually cataloging some of Plaintiff's arguments in the denial memorandum, it should be deemed harmless.  *See Zevallos v. Obama*, 793 F.3d 106, 115 (D.C. Cir. 2015) (finding that OFAC committed at most a harmless error when it considered petition for delisting withdrawn).

## CONCLUSION

For the foregoing reasons, and based on review of the whole administrative record, the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.


Dated: November 15, 2024              Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney General

                                      BRIGHAM J. BOWEN
                                      Assistant Branch Director

                                      */s/Amy E. Powell*
                                      AMY E. POWELL
                                      Senior Trial Attorney
                                      Federal Programs Branch
                                      Civil Division, Department of Justice
                                      c/o U.S. Attorney's Office
                                      150 Fayetteville St., Suite 2100
                                      Raleigh, NC 2760

Phone: 919-856-4013
Email: amy.powell@usdoj.gov

*Counsel for Defendants*