**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ALAIN GOETZ                             )
                                        )
        Plaintiff,                      )
                                        )
                v.                      )        Case No. 1:22-cv-1204 (JEB)
                                        )
LISA M. PALLUCONI                       )
Acting Director of the Office of Foreign )
Assets Control, _et al_.                )
                                        )
        Defendants.                     )
_____ )

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………...1

ARGUMENT ……………………………………………………………………… 2

I.    OFAC Did Not Act Reasonably in Denying Plaintiff's Petition for Administrative Reconsideration …………………….……………………………………… 2

II.   Plaintiff's Arguments Do Undermine the Conclusion that He is Subject to Sanctions Under E.O. 13413, as amended ………………….………………12

A.    Plaintiff is Subject to Sanctions Solely for Alleged Past Conduct that, Even if Believed, by Defendants' Own Admission is Not Ongoing ……………12

B.    OFAC Does Not Have Reasonable Basis to Doubt that Plaintiff Has Cut Ties with AGR or Reasonable Concerns that His Conduct Might Recur…14

C.    OFAC Did Not Reasonably Link Plaintiff's Conduct to Armed Groups in the DRC…………….……….……….…………………………….…...16

D.    OFAC Did Not Reasonably Find No Change in Circumstances Justifying Delisting ……………….……………………………….………………...17

E.    OFAC Did Not Reasonably Find Plaintiff's Proposed Terms of Removal Inadequate ……………..……………………….…………………….…..18

F.    Plaintiff's Arguments about Acknowledgement of Past Conduct are Persuasive ……………………….……………………..……….....21

G.    Defendants' Reliance on the Harmless Error Rule is Misplaced ………..21

CONCLUSION …………………………………………………………………24

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*100Reporters LLC v. United States Dep't of Justice*,
    248 F. Supp. 3d 115 (D.D.C. 2017) ……………………………………………………19

*Air Canada v. Dep't of Transp.*, 148 F.3d 1142 (D.C. Cir. 1998) ………………………………..22

*Basengezi v. Smith*, No. 23-cv-1249 (JEB), 2024 WL 1050340 (D.D.C. Mar. 11, 2024) …..........13

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ………………….…....………..5, 6

*Comcast Corp. v. F.C.C.*, 526 F.3d 763 (D.C. Cir. 2008) ……………………………………….4

*Ehrman v. United States*, 429 F. Supp. 2d 61 (D.D.C. 2006) ………………………………………6

*Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1 (1976) ……………………………15

*Friends of the Capital Crescent Trail v. Fed. Transit Admin.*,
    253 F. Supp. 3d 296 (D.D.C. 2017) …………………………………………………..2, 3

*Getty v. Fed. Savings and Loans Ins. Corp.*, 805 F.2d 1050 (D.C. Cir. 1986) …….………...…..5, 6

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) ………………..23

*James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12 (D.D.C. 2018) ……………………4

*Judulang v. Holder*, 565 U.S. 42 (2011) ……………………………………………..…………..23

*Karadzic v. Gacki*, 602 F. Supp. 3d 103 (D.D.C. 2022) …………………………………………12

*Lopez Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024) …………………………………………...13

*Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021) …………………......7

*MomoCon, LLC v. Small Bus. Admin.*, No. 21-cv-2386 (RC) (D.D.C. Feb. 10, 2022) …......3, 6, 10

*Mori v. Dep't of Navy*, 917 F. Supp. 2d 60 (D.D.C. 2013) …………………………………………10

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (1983) ………………………………………………..…………….2, 6

*Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221 (D.C. Cir. 2007) ………………….....24

*Noble Energy, Inc. v. Salazar*, 691 F. Supp. 2d 14 (D.D.C. 2010) …………………………….....12

*Olenga v. Gacki*, 507 F. Supp. 3d 260 (D.D.C. 2020) …………………………………...……13, 24

*Paralyzed Veterans of America v. Secretary of Veterans Affairs*,
    345 F.3d 1334 (Fed. Cir. 2003) …………………………………………………………5

*Pejcic v. Gacki*, No. 19-cv-02437 (APM), 2021 WL 1209299 (D.D.C. Mar. 30, 2021) …………13

*Sierra Club v. Salazar*, 177 F. Supp. 3d 512 (2016) ……...……………………………….....15

*Smith v. Dalton*, 927 F. Supp. 1 (D.D.C. 1996) …………………………………………...……6, 10

*United States v. Chem. Found.*, 272 U.S. 1 (1926) ……………………………………………...4

*U.S. Postal Service v. Gregory*, 534 U.S. 1 (2001) …………………………………………...4

*Williams Gas v. FERC*, 475 F.3d 319 (D.C. Cir. 2006) …………………………………………...2

*Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015) …...…………………………………...…..22, 23

## STATUTES

5 U.S.C. § 706 ………………………………………………………………...…………1, 5

22 U.S.C. § 10102 ……………………………………………………………………….11

50 U.S.C. § 1701 *et seq* ............................................................................. 4

## EXECUTIVE ORDERS

Exec. Order 13413, 71 FED. REG. 64,103 (Oct. 27, 2006) ……………………………………7, 12

## REGULATIONS

31 C.F.R. § 501.807 ……………………………………………………………...…..3, 20

## OTHER AUTHORITIES

*Black's Law Dictionary* (12th ed. 2024) …………………………………………………14

# INTRODUCTION

Throughout the briefings in this matter, Defendants have failed to rebut the numerous reasons why their denial action violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Instead, to defend their failure to provide a reasoned explanation for their denial of Plaintiff's petition for administrative reconsideration and accord proper consideration to Plaintiff's submissions during the delisting matter, Defendants attempt to bar this Court from undertaking any meaningful inquiry into OFAC's denial decision. Indeed, Defendants' overall argument is that the Court should rule in their favor because their decision is entitled to substantial deference and the presumption of regularity; and, alternatively, that any error that Defendants may have made would constitute a harmless error.

In other words, Defendants effectively argue that this Court is precluded from engaging in the review required under the APA, and from acknowledging the obvious flaws in OFAC's denial determination. No amount of deference, however, can shield Defendants from the fact that OFAC violated the basic rules of agency decision-making by failing to fairly consider, and evidence their consideration of, Plaintiff's arguments and evidentiary support, and Defendants failure to provide a reasoned explanation of their decision.

For these reasons, and those outlined below and in Plaintiff's prior brief, Defendants' failures constitute arbitrary and capricious agency action under the APA; and their denial action should not be upheld. Accordingly, Plaintiff respectfully requests that this Court grant summary judgment in favor of Plaintiff.

## ARGUMENT

### I.    OFAC DID NOT ACT REASONABLY IN DENYING PLAINTIFF'S PETITION FOR ADMINISTRATIVE RECONSIDERATION

In arguing that OFAC's decision meets the APA standard of review, Defendants claim that "[a]n agency's decision may be deemed arbitrary and capricious *only* where it 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,' or its decision 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Defs.' Reply Mem. in Support of Defs.' Mot. for Summ. J. and Opp. to Pl.'s Cross-Mot. for Summ. J., ECF No. 35 ("Defs.' Reply Mem.") at 6 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (emphasis added).

Defendants mischaracterize the law, however, because neither *State Farm* nor any other relevant case in this Circuit regard these specific circumstances as the "only" occasions where an agency may act arbitrarily and capriciously in violation of the APA. For instance, and as Plaintiff has previously noted, this Court has found that where an agency's "memorandum included no analysis" of a party's submissions and their relevance to the agency's decision, the agency action is "arbitrary and capricious" under the APA. *See* Pl.'s Mem. Supp. Cross-Mot. for Summ. J. and Opp. to Defs.' Mot. for Summ. J., ECF No. 34-1 ("Pl.'s Cross-Mot.") at 33 (citing *Friends of the Capital Crescent Trail v. Fed. Transit Admin.*, 253 F. Supp. 3d 296, 302 (D.D.C. 2017)). Again, Defendants' failure to provide a reasoned explanation for discounting the arguments and evidence provided by Plaintiff during his delisting matter demonstrates that Defendants arbitrarily rejected his arguments without any meaningful consideration or explanation as to why they are insufficient. Pl.'s Cross-Mot. at 34; *see Williams Gas v. FERC*, 475 F.3d 319, 326 (D.C. Cir. 2006) (noting that

"[a]rbitrary and capricious review demands evidence of reasoned decision-making") (internal quotations omitted); *MomoCon, LLC v. Small Bus. Admin.*, No. 21-cv-2386 (RC) at *12 (D.D.C. Feb. 10, 2022) ("An agency action that lacks explanation is a textbook example of arbitrary and capricious action …"). In other words, even if, *arguendo*, OFAC did review the information submitted by Plaintiff during his delisting matter, OFAC was nonetheless obligated to provide an explanation for discounting Plaintiff's arguments and supporting evidence.

Defendants contend that the "administrative record demonstrates that the agency 'grappled' with each of [Plaintiff's] arguments and explained why a contrary decision was made." Defs.' Reply Mem. at 7 (quoting *Friends of the Capital Crescent Trail*, 253 F. Supp. 3d at 302). This is not true, however. Indeed, the record does not evidence how OFAC's "grappled" with Plaintiff's evidentiary submissions; how it weighed Plaintiff's evidence against that in its own possession; and how it ultimately decided to assign less weight to Plaintiff's evidence than that of its own. Instead, Defendants skirted this obligation with broad statements that it "considered" all the evidence before it. *See, e.g.*, DRC-37986-0001; DRC-34996-0001.

Moreover, OFAC claims that because it "expressly informed Plaintiff [in writing] that it considered all of the arguments and evidence he submitted in support of each petition for reconsideration" and that its "affirmation is entitled to a presumption of regularity." Defs. Reply Mem. at 7. Specifically, Defendants assert that this presumption "applies 'where a government official or entity conducts official acts in the manner provided by statute, regulations, or policy'" *Id.* (citations omitted). Accordingly, Defendants claim that the presumption of regularity applies to the instant case, as "OFAC issued its decision pursuant to [31 C.F.R. § 501.807]." Defs. Reply Mem. at 8.

Nevertheless, Defendants attempt to stretch the case law to support their position. The cases that Defendants cite, however, do not support their position, are irrelevant to the issue at hand, and are entirely unrelated to OFAC or its adjudication of petitions for administrative reconsideration. *See* Defs.' Reply Mem. at 7-8. Moreover, and notably, Defendants fail to address an important qualification regarding the presumption of regularity—that *absent clear evidence to the contrary*, courts presume that public officers have properly discharged their official duties. *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) (emphasis added).

For instance, in *United States v. Chem. Found.*, a State Department custodian authorized the government to seize "enemy-owned" intellectual property and sell it to Chemical Foundation. *Chem. Found.*, 272 U.S. at 4, 6-7. The United States brought suit to void the sales alleging that the orders "were induced by misrepresentation and . . . without knowledge of material facts." *Id*. at 14. The Supreme Court, invoking the presumption of regularity, held that it would assume that the custodian "acted upon knowledge of the material facts," absent clear evidence to the contrary. *Id*. at 15. Critically, the presumption of regularity was invoked only after the United States had failed to make a showing that the orders had been "induced by misrepresentation and were made without knowledge of the material facts." *Id*. at 14. This is a far cry from the case at hand, where the record itself is plainly devoid of any substantive discussion of Plaintiff's submissions to OFAC. *See, e.g.*, Pl.'s Cross-Mot. at 34-37.

Furthermore, the case law cited by the Defendants fails to support their position. *See* Defs.' Reply Mem. at 7-8 (citing *U.S. Postal Service v. Gregory*, 534 U.S. 1, 10 (2001) (related to employment disciplinary actions); *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12 (D.D.C. 2018) (related to agency FOIA disclosures); *Comcast Corp. v. F.C.C.*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) (challenging the FCC's policy regarding set-top converter boxes, making

assertions bordering on accusations of the Commission's bad faith); *Paralyzed Veterans of America v. Secretary of Veterans Affairs*, 345 F.3d 1334, 1349 (Fed. Cir. 2003) ("We will not invalidate a regulation [implementing the Veterans Claims Assistance Act] based on an assumption that government officials will fail to do what the regulation requires."). In short, none of these cases hold that an affirmation that Defendants considered all of the arguments and evidence Plaintiff submitted in support of the petition for administrative reconsideration) is entitled to a blanket presumption of regularity. *See generally* Defs.' Reply Mem. at 7-8.

By relying on the presumption of regularity, Defendants improperly repurpose the presumption as an additional layer of deference to prevent the Court from scrutinizing Defendants' denial of Plaintiff's petition for administrative reconsideration. As the Court is aware, however, the presumption does not replace or supersede judicial review under the APA. *See* 5 U.S.C. § 706. Indeed, the presumption of regularity—a far more limited doctrine than suggested by Defendants—does not insulate agencies from "thorough, probing, in-depth review." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971) (noting further that while "the Secretary's decision is entitled to a presumption of regularity," a reviewing court must still make a "substantial inquiry" into that decision.). That is why, for instance, the presumption has not overridden the rule that agencies must engage in, *and evidence their engagement in*, "reasoned consideration," including of a petitioner's submissions before it. *Getty v. Federal Savings and Loan Ins. Corp.*, 805 F.2d 1050, 1057 (D.C. Cir. 1986) ("conclusory recitation . . . fall[s] far short of the '*reasoned* consideration'" required by law). Plainly, the presumption of regularity does not preempt the courts from reviewing agency action to ensure the lawfulness and integrity of agency decision-making, and a statement that evidence was considered does not make Defendants review automatically lawful under the APA, even if the presumption of regularity applies.

If there is one basic rule under the APA, it is that agencies must engage in reasoned decision-making, including consideration of the materials submitted by a petitioner, and provide a reasoned analysis as to why those materials should or should not guide the agency's decision. *See State Farm*, 463 U.S. at 52 (finding an agency explanation as insufficient to enable the court to determine that the agency action "was the product of reasoned decisionmaking."). Indeed, the Supreme Court has stated that an agency's mere statement "that a factor was considered . . . is not a substitute for considering it." *Citizens to Preserve Overton Park*, 401 U.S. at 416. *See also MomoCon*, No. 21-cv-2386 (RC) at *12 ("An agency action that lacks explanation is a textbook example of arbitrary and capricious action …"). As this Court has previously held, an agency must "*show* that it has considered all of the evidence before it and . . . state why evidence contrary to the ultimate conclusion reached was disregarded or given lesser weight." *Smith v. Dalton*, 927 F. Supp. 1, 10 (D.D.C. 1996) (emphasis added). Even if a court may otherwise consider an agency's challenged decision ultimately valid, it "cannot affirm it because the [agency seemingly] did not consider all relevant evidence in the record[.]" *Ehrman v. United States*, 429 F. Supp. 2d 61, 68-70 (D.D.C. 2006).

In the instant case, merely summarizing Plaintiff's arguments and asserting that those arguments were considered, without providing a reasoned explanation as to why the arguments and evidence were discounted, are not enough to pass the APA's muster. *See Getty*, 805 F.2d at 1055 ("conclusory recitation . . . fall[s] far short of the '*reasoned* consideration'" required by law). Moreover, just because OFAC claims that it considered all of Plaintiff's arguments does not mean that it did and that the Court should overlook the deficiencies in its rationale.

Next, OFAC continuously claims that Plaintiff's interest in dormant companies show that his involvement in the gold trade in the DRC could be resumed at a later date. *See, e.g.*, Defs.'

Reply Mem. at 9; DRC-34996-0002, 0029-30. Defendants do not, however, provide any evidence that such companies will be reestablished in the future, much less do business in gold, or even the DRC, but rather speculate that it could happen. *See generally* Defs.' Reply Mem. at 9; DRC-34996-0002, 0029-30. Notably, OFAC has not alleged that any of these companies were previously used to trade in conflict gold related to the DRC, nor that Plaintiff has a history of resuscitating dormant companies to engage in the trade of conflict gold related to the DRC. Instead, Defendants wildly theorize that having an interest in a dormant company is evidence that Plaintiff could engage in sanctionable conduct with respect to the DRC in the future. Such blatant speculation cannot stand as grounds for upholding OFAC's denial decision. *See* Pl.'s Cross-Mot. at 41 (citing *Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021) (finding that a mere potential for future conduct or speculative connections with sanctioned entities was insufficient to uphold a sanctions designation).

      This entire line of argument is critical as OFAC attempts to distract the Court from its main failure—that there is no allegation of ongoing sanctionable conduct. Indeed, OFAC has never alleged that Plaintiff has a history of resuming inactive companies, much less that any of those inactive companies were involved in the conflict gold trade in the DRC. Thus, not only is its denial arbitrary and capricious for failing to allege any ongoing sanctionable conduct, but also for speculating future conduct by companies that have never been linked to the alleged conflict gold trade in the DRC. In short, having ownership interests in inactive companies that have not been tied to the conflict gold trade in the DRC previously should not be deemed is not sanctionable conduct sufficient to maintain a designation under E.O. 13413, as amended.

      In addition, Defendants do not explain how or provide evidence that Plaintiff's litigation related to Aldango against the Rwandan government—even if *arguendo* he is seeking to regain

control of those assets (he is not)—would result in engaging in conflict gold trade related to the DRC. *See* Defs.' Reply Mem. at 10. Notably, if this was truly a point of concern for the agency, this is something that OFAC could have requested information on in a questionnaire, but they did not. *See id.* ("Plaintiff has not submitted sufficient information regarding the litigation related to Aldango to allow the USG to determine whether he is seeking to regain control of those assets"). Instead, Defendants vaguely and repeatedly refer to Plaintiff's alleged "long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR* and other entities" without providing any detail as to what that means or identify any specific conduct by Plaintiff. *See, e.g.*, Defs.' Reply Mem. at 10; DRC-37986-0016. In doing so, they gloss over their tacit admission that Plaintiff is not engaged in sanctionable activity. Defs.' Reply Mem. at 15 ("There is no requirement that OFAC lift sanctions on an individual who might have temporarily paused his sanctionable activity[.]").

As Plaintiff argued in his prior brief, OFAC ultimately denied Plaintiff's petition based on a hypothetical of what could occur in the future. Specifically, Defendants claim that despite the fact that Plaintiff's companies—with the exception of Aldango, which has been nationalized by the Rwandan government—are inactive, Plaintiff "does not claim that they have been sold or are in dissolution or otherwise permanently disabled." Defs.' Reply Mem. at 10. Under Defendants' logic, however, there is nothing that Plaintiff can do to demonstrate a change in circumstances because there will always be a theoretical possibility that he can engage in sanctionable conduct; for example, by hypothetically starting new companies. *See generally* Defs.' Reply Mem. at 11. Defendants also illogically muse that there is "certainly no evidence, nor even a claim from Goetz, that it would be unlikely or impossible for him to engage in the gold trade in the future." Defs.' Reply Mem. at 11. Again, such reasoning is speculative, and the decision-making it supports is

thus *per se* arbitrary and capricious, nonsensical, and fails to provide Plaintiff with a meaningful opportunity to contest his designation. Pl.'s Cross-Mot. at 42.

Defendants also attempt to use Plaintiff's proposed remedial measures against him. They do so by claiming that his proposal "to provide OFAC a complete list of the sources of gold for the companies he owns or controls and to undergo an annual audit for compliance with due diligence frameworks related to the mineral trade" means that Plaintiff is contemplating renewing those activities. Defs.' Reply Mem. at 10; DRC-34996-0221. Defendants' argument misconstrues Plaintiff's good-faith offer and its meaning. Indeed, the remedial measures were only to address Defendants' concerns about future activities; not an admission of any intent to engage in any future activities. Rather, Plaintiff offered numerous measures to ensure full transparency into his activities and certifications that he would not engage in sanctionable dealings in the future. Plaintiff did so by offering to have an independent third-party monitor conduct an annual sanctions audit to review Plaintiff's finances and those of his companies, to the extent he has any in the future. That third party monitor would also ensure that the policies and procedures in his companies (current or future) conform to nationally and internationally recognized due diligence frameworks. DRC-34996-0218-0221.

There is nothing in the remedial measures that Plaintiff proposed suggesting that he intends to resume sanctionable conduct—rather, the measures demonstrate the opposite, that he does *not* intend to engage in any sanctionable conduct and is offering a means by which OFAC can be assured of that. *See id.* Defendants' attempt to twist Plaintiff's words and good faith offer to address their concerns in order to illogically conclude that because he may have companies in the future that will engage in conflict gold trade is unfounded, and thus arbitrary and capricious. *See* Defs.' Reply Mem. at 10.

Next, Defendants claim that each of Plaintiff's arguments "was considered explicitly or *implicitly* to the extent relevant." Defs.' Reply Mem. at 11. (emphasis added). That OFAC implicitly considered some of Plaintiff's evidence in rendering its decision serves as an effective admission of deficiencies in its own decision-making. In short, Defendants tacitly admit that they failed to expressly address evidence in the record to and "show that it has considered all of the evidence before it and . . . state why evidence contrary to the ultimate conclusion reached was disregarded or given lesser weight." *Smith*, 927 F. Supp. at 10; *see also Mori v. Dep't of Navy*, 917 F. Supp. 2d 60, 64 (D.D.C. 2013) ("By not discussing plaintiff's evidence, the Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found plaintiff's evidence unpersuasive.").

However, by stating that OFAC "implicitly" addressed some of Plaintiff's evidence, Defendants admit: (1) that some of Plaintiff's evidence has not been addressed by OFAC in the record; and (2) the record does not contain any "discussion," or "show [] consideration," by OFAC of Plaintiff's evidence to allow the Court to engage in the review required by the APA. *Id.* OFAC's failure to address Plaintiff's evidence and address why it disregarded or gave lesser weight to it renders its denial action arbitrary and capricious under the APA. *See MomoCon*, No. 21-cv-2386 (RC) at *12 ("An agency action that lacks explanation is a textbook example of arbitrary and capricious action . . .").

Defendants further seek to defend their actions by citing purported "international cooperation" efforts. Defs.' Reply Mem. at 11-12. Evidence of these international cooperation efforts involve an anonymized report, a Belgian proceeding unrelated to the DRC, and an "ongoing interest" by the UN Group of Experts despite no "direct action." *Id.*; DRC-34996-0017-18, 0023; DRC-37986-0016-17, 0066; DRC-30316-0028-36. First, OFAC claims that the Belgian

proceedings "is related to his participation in illicit gold trade in Europe." Defs.' Reply Mem. at 12; DRC-37986-0016, 0066; DRC-30316-0036. Plaintiff is not designated, however, for alleged activities in Europe or even for the general trade in gold (illicit or otherwise); but rather for activities related to the DRC, and Defendants make no attempt to connect such proceedings to the DRC. These failures and the randomness of Defendants' evidence and reasoning demonstrate that they are grasping at straws to justify the designation, because they know Plaintiff has no involvement in or connection with the DRC. *See* Defs.' Reply Mem. at 12; DRC-37986-0016, 0066; DRC-30316-0036.

In addition, OFAC's cite to the State Department's foreign policy guidance which states that delisting Plaintiff "would send a 'clear signal' that it is acceptable to undermine civil society and the UN Group of Experts." Defs.' Mem. at 12. The appeal to the foreign policy guidance, however, is unavailing. First, even if *arguendo* the guidance is to be believed, it is unclear how that is a material consideration as to whether Plaintiff engaged in or is engaging in sanctionable conduct with respect to the DRC. Second, there is no explanation whatsoever which indicates how it would the delisting would undermine civil society or the UN Group of Experts, or what the consequences of that would be.

Moreover, it is unclear under what authority sanctions should be maintained due to the interests or efforts of civil society groups or the United Nations. Indeed, if Congress intended that to be the case, it would have included such language in the International Emergency Economic Powers Act ("IEEPA"), as it did in the Global Magnitsky Human Rights Accountability Act. *See* 22 U.S.C. § 10102 (stating that consideration of certain information in imposing sanctions include "credible information obtained by other countries and nongovernmental organizations that monitor violations of human rights."). Congress, however, did not and has not done so, with respect to

IEEPA based sanctions such as those Plaintiff is designated under.  In short, Defendants conclusion that delisting parties might offend the interests of unidentified civil society groups—whose interests, funding, and credibility are unknown—is not supported by law. *See Noble Energy, Inc. v. Salazar*, 691 F. Supp. 2d 14 (D.D.C. 2010) (stating that agencies must make their decisions based strictly on the merits and without regard to any considerations not made relevant by Congress in the applicable statutes; and that agency action must be set aside if found to be motivated by political pressures or extraneous factors). Finally, Defendants have not provided any reasoning or support to show that the United Nations Group of Experts seeks to have OFAC maintain U.S. sanctions on Plaintiff, or that they will not be able to carry out their investigation if Plaintiff's U.S. sanctions designation is removed. *See* DRC-37986-0016-0017. Extraneous factors—such as the vague policy reasons put forward by the Defendants—cannot serve as a basis to maintain sanctions for undermining peace and stability in the DRC. Defendants' reliance on the State Department's foreign policy guidance is therefore *per se* arbitrary and capricious.

## II.    PLAINTIFF'S ARGUMENTS DO UNDERMINE THE CONCLUSION THAT HE IS SUBJECT TO SANCTIONS UNDER E.O. 13413, AS AMENDED

### A.    Plaintiff is Subject to Sanctions Solely for Alleged Past Conduct that, Even if Believed, by Defendants' Own Admission is Not Ongoing.

Defendants reiterate that a "designation based on past conduct alone" is permissible and that "[c]ourts in this district have now repeatedly re-affirmed this principle." Defs.' Reply Mem. at 13 (citing Defs. Mot. Summ. J. at 18-19) (citing cases). Defendants then go on to mischaracterize Plaintiff's argument that the plaintiffs in the cases that Defendants relied on "also had more recent conduct." Defs.' Reply Mem. at 13.

As Plaintiff previously noted, in those cases OFAC had also alleged *ongoing* sanctionable conduct—not just recent conduct—which served as a basis for their continued designation. Pl.'s

Cross-Mot. at 38; *see Karadzic v. Gacki*, 602 F. Supp. 3d 103, 107-15 (D.D.C. 2022) (finding that OFAC did not rest only on historical evidence, but rather had also relied on recent and ongoing conduct in support of its decision); *Basengezi v. Smith*, No. 23-cv-1249 (JEB), 2024 WL 1050340 at *3 (D.D.C. Mar. 11, 2024) (OFAC determined that the plaintiff "continue[d] to exert influence over democratic processes or institutions in the DRC" due to his consultancy work, and thus the circumstances that led to his designation had not materially changed); *Pejcic v. Gacki*, No. 19-cv-02437 (APM), 2021 WL 1209299, at *3-*8 (D.D.C. Mar. 30, 2021) (finding that OFAC's denial of the plaintiff's petition for reconsideration was not arbitrary or capricious given the substantial evidence supporting his ongoing obstruction of the Dayton Accords; and that even if his material support had ceased, OFAC "could reasonably conclude that [the plaintiff's] independent conduct justifies continued designation"); *Olenga v. Gacki*, 507 F. Supp. 3d 260, 281-82 (D.D.C. 2020) (noting OFAC finding of ongoing sanctionable conduct and stating that "[t]hat recent conduct is at odds with [the plaintiff's] argument that his re-designation was based on only past acts."). Moreover, those cases are inapposite here, as they state that historical evidence can be used to provide context for more recent activity; not that it can be the sole basis for continued designation.[1]

While Defendants claim that "Plaintiff has engaged in more recent conduct[,]" such conduct is not alleged to be *ongoing* conduct. *See* Defs.' Reply Mem. at 13. Thus, there is a distinction between being designated for alleged conduct that occurred in the past—which, in any event, Plaintiff disputes having done—and having sanctions maintained solely for something that

---

[1] OFAC attempts to rely on the *Lopez Bello v. Gacki* case to state that it does not matter if the sanctionable activity is alleged to have occurred before the legal authority rendering that activity sanctionable occurred. *See* Defs.' Reply Mem. at 14 (citing *Lopez Bello v. Gacki*, 94 F.4th 1067, 1073 n.7 (D.C. Cir. 2024)). However, that case concerns activities that occurred after the relevant law (the Foreign Narcotics Kingpin Designation Act) was issued. *See id.* OFAC's reliance on that case is thus misplaced.

occurred and ended in the past. Indeed, OFAC provides no limiting principle or condition on when the ability to renew activity would be deemed to cease. In other words, Defendants suggest that if Plaintiff did something in the past, he could be sanctioned forever because he is believed to have done it, and might do it again in the future. *See generally* Defs.' Reply Mem. at 13. This position cannot withstand legal scrutiny, and is on its face arbitrary and capricious.

B.  OFAC Does Not Have Reasonable Basis to Doubt that Plaintiff Has Cut Ties with AGR or Reasonable Concerns that his Conduct Might Recur.

As Plaintiff previously noted, Defendants' administrative record fails to explain how his inactive or soon-to-be liquidated companies can be resuscitated to engage in the activities necessary to deal with rebel groups or trade in conflict gold in the DRC. Defendants' conclusion that this points to his "likely future role in [conflict gold] trade" is pure speculation, and arbitrary and capricious under the APA. Pl.'s Cross-Mot. at 41; *see* DRC-34996-0014. OFAC's attempts to conflate this speculation as the drawing of inferences fails. *See* Defs.' Reply Mem. at 10, 14 (stating that Plaintiff's "ownership interests in at least seven separate mineral or gold companies are evidence from which OFAC can infer. That he possesses the means to continue in the gold trade").

Notably, an "inference" is a conclusion reached by considering other facts and deducing a logical consequence from them. *Inference*, Black's Law Dictionary (12th ed. 2024). On the other hand, "speculation" is the practice or an instance of theorizing about matters over which there is no certain knowledge. *Speculation*, Black's Law Dictionary (12th ed. 2024). In other words, an "inference" is a conclusion reached based on logical reasoning and evidence, while "speculation" is a theory with little supporting evidence and is considered to be conjecture or supposition.

Merely owning inactive and soon-to-be liquidated companies in the mineral and gold industry does not form a basis to infer that those companies will be used in the future to engage in

sanctionable conduct. *See* Defs.' Reply Mem. at 14. Indeed, Defendants have mustered no evidence or reasoning to demonstrate that these entities were ever linked to the DRC in any way, nor that Plaintiff has demonstrated a pattern of behavior by which he allows companies to go inactive, only to resuscitate them later for use in conflict gold trade in the DRC. Nor have Defendants offered any evidence or support to show that Plaintiff has any intent to be involved in such DRC-related gold trade in the future. In short, Defendants theory is that they believe Plaintiff did something in the past, and that because he has an interest in companies, that he could engage in that same activity again. *See id.* By that logic, Plaintiff's mere existence form a basis for his designation, as he could at any use a new company to engage in sanctionable conduct.

It is clear then that Defendant is not drawing inferences by logically deducing future outcomes based on available evidence; rather, it is engaging in conjecture and speculation in violation of the APA to justify is arbitrary decision to maintain sanctions on Plaintiff. *See id.* As this Court is aware, an agency's reasoning is considered deficient under the arbitrary and capricious standard if it is based on speculation, mere conjecture, abstract theorizing, or is conclusory. *Sierra Club v. Salazar*, 177 F. Supp. 3d 512 (2016); *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1 (1976). Thus, while Defendants attempt to characterize their theorizing as making inferences, their findings and conclusions are not supported by evidence and are thus speculation, in violation of the APA.

Moreover, Defendants admit themselves that Plaintiff "might have temporarily paused his sanctionable activity[,]" which further supports that that there is no ongoing conduct, and that Defendants hypothetical scenarios about future conduct are pure speculation. Againg, such speculation is *per se* arbitrary and capricious under the APA and thus Defendants' denial decision should be deemed unlawful.

C.    OFAC Did Not Reasonably Link Plaintiff's Conduct to Armed Groups in the DRC.

OFAC fails to make logical connections in linking conduct by Plaintiff to armed groups in the DRC. Specifically, OFAC claims that "[t]he records for the original designation and both denials include public and non-public evidence about AGR's dealings in conflict gold from the DRC and the lack of due diligence in general." Defs.' Reply Mem. at 15. Defendants' finding that AGR had a "lack of due diligence in general" is belied by the fact that Plaintiff provided extensive documentation in his March 17, 2022 request for stay which included copies of AGR's due diligence policies and procedures. *Id.*; DRC-34996-0089-0211.

Of course, and emblematic of the type of impermissible agency decision-making Defendants have engaged in, OFAC does not grapple with that documentation or explain how the nearly 50 pages of materials evidencing AGR's due diligence policies, procedures, and related materials, lead to a finding that AGR had a "lack of due diligence in general." *See* DRC-34996-0089-0211. Notably, Defendants themselves do not identify how AGR's compliance program was lacking, nor any instances in which AGR engaged in illicit dealings that would have been prevented had adequate due diligence measures existed; much less any dealings by AGR that can be traced back to rebel groups in Eastern DRC.

This type of deficient reasoning combined with the fact that OFAC admitted that "some of the most recent evidence is circumstantial[,]" underscore the lack of any real link between Plaintiff's conduct and armed groups operating in the DRC. *See* Defs.' Reply Mem. at 15-16. OFAC's generalized and conclusory response that such link was established fails to clearly articulate how Plaintiff's conduct at AGR is linked to armed groups in the DRC. *See generally id.*

D.    OFAC Did Not Reasonably Find No Changes in Circumstances Justifying Delisting.

OFAC's position that Plaintiff has not done enough to demonstrate a change in circumstances is arbitrary and capricious under the APA. *See* Defs.' Reply Mem. at 16-17. Specifically, OFAC claims that a change in circumstances has not been demonstrated despite the fact that Plaintiff resigned from AGR and publicly supported an end to the trade in conflict gold. *Id*. According to OFAC it could not find such a change in circumstance due to concerns over Plaintiff's credibility; his theorized ability to engage in sanctionable conduct; and because he has not been held accountable or acknowledged past conduct. Defs. Reply Mem. at 16. It is unclear, however, how these points relate to his changed circumstances that he has demonstrated in separating himself from AGR, as well as shown that the remaining companies are inactive, undergoing liquidation, or otherwise seized by the Rwandan government. *See* Pl.'s Cross-Mot. at 45; DRC-37986-0044-0047.

Regardless of whether Defendants believe Plaintiff, or whether he could engage in some future conduct, or whether he has or has not admitted to sanctionable conduct, Defendants have not found that Plaintiff is engaged in the trade of conflict gold from DRC, or that he continues to own or control AGR. In addition, Plaintiff's public statements are clear on their face that he opposes trade in conflict gold and calls for greater transparency with respect to mineral trade. Perhaps that is not good enough for Defendants, but they have not adequately explained why—for instance, by identifying what a satisfactory statement would entail—nor have they demonstrated how the purported inadequacies of his public statements are linked to the trade in conflict gold in the DRC.

By ignoring this clear change in circumstances without finding that Plaintiff continues to be involved in the DRC conflict gold trade—and instead arguing that Plaintiff may potentially

become involved in such trade at some unidentified point in the future and has not made certain public statements of an unidentified specificity—Defendants have acted arbitrarily and capriciously. DRC-37986-0016.

       E.    <u>OFAC Did Not Reasonably Find Plaintiff's Proposed Terms of Removal Inadequate.</u>

Defendants backtrack on their position regarding future commitments being generally insufficient to justify delisting, claiming that "OFAC did not take the position that commitments to make statements or take actions in the future could never form part of the basis for a delisting." *Compare* Defs.' Reply Mem. at 17 *with* MSJ at 8 ("commitments to make statements or take actions in the future . . . are generally insufficient to justify delisting."); DRC-37986-0003. This logic, however, highlights OFAC's arbitrary and capricious treatment of Plaintiff vis-à-vis other petitioners. According to Defendants, if Plaintiff proposes commitments, his remedial measures are deemed to be inadequate; however, if another petitioner proposes commitments, they may form the basis for a delisting. *See* Defs.' Reply Mem. at 17. Defendants' disparate treatment of Plaintiff's petition for administrative reconsideration lacks a basis under law and violates the APA.

Further, in response to Plaintiff's assertion that there are no actual findings about his credibility and past obfuscation, and that, in any event, he proposed a third-party auditor who could monitor his compliance, Defendants claim that Plaintiff "is not trustworthy." *See* Pl.'s Cross-Mot. at 47; Defs.' Reply Mem. at 18. However, one of Plaintiff's remedial measures involves using a third-party auditor to review and verify the information, which would address OFAC's concerns that Plaintiff is not credible. DRC-34996-0218-0221. Indeed, this independent third-party auditor would monitor and ensure that Plaintiff is carrying out the measures, and report to OFAC with the results; thereby taking Plaintiff's truthfulness out of the equation. *Id.* While Defendants may suggest that they cannot be assured—due to Plaintiff's alleged untrustworthiness (Defs.' Reply

Mem. at 18)—the monitor will receive all or the correct information necessary to its work; certainly independent monitors are adept at identifying when such circumstances exist and being on guard to ensure that they do not occur. *See generally 100Reporters LLC v. United States Dep't of Justice*, 248 F. Supp. 3d 115 (D.D.C. 2017) (DOJ acknowledging that independent monitors conduct reviews that the DOJ could not, due to limited resources, indicating the trust placed in the monitor's independent assessment). OFAC fails to adequately address why, in this case, such a monitor would be insufficient, by, for example, stating how Plaintiff would obfuscate information from them or how the monitor would be unable to identify circumstances in which it is being misled. *See* Defs.' Reply Mem. at 18.

Defendants also indicated that they would have to expend resources to ensure monitoring in a TOR. Defs.' Reply Mem. at 18-19. Defendants fail to explain how or what level of resources would be involved, considering the monitoring of compliance with the TOR would be at the Plaintiff's expense. *See id.* In addition, perpetual agency proceedings and litigation will certainly expend far more resources than OFAC receiving and reviewing reports and certifications from Plaintiff and a third-party monitor. *See generally id.* Of course, how to spend OFAC's resources is at its own discretion, however, Defendants offer no explanation as to how reviewing information submitted to it demonstrating Plaintiff's compliance with a removal agreement would be any burdensome than reading Plaintiff's future delisting petitions, civil complaints, and litigation briefings. *See generally id.*

Moreover, OFAC's excuses of potential challenges in monitoring and enforcing an overseas TOR is yet another example of their refusal to engage in reasoned decision-making in this matter. *See id.* Indeed, OFAC has previously entered into TORs with foreign persons in jurisdictions outside the U.S. based on similar measures. *See, e.g.*, DRC-34996-0010-0216. OFAC

strangely argues, however, that "having once entered into a TOR in one circumstance does not suggest that OFAC should" in every case. Defs. Reply Mem. at 19. While OFAC seems to claim that there was only one circumstance of a TOR, OFAC routinely enters into TORs with numerous sanctioned parties under various sanctions programs. *See* Defs.' Reply Mem. at 19; DRC-34996-0010-0216. OFAC's failure to treat Plaintiff the same as those similarly situated parties is arbitrary and capricious, and its purported rationale for rejecting the terms violates the APA.

Further, Defendants complain that Plaintiff's remedial measures "were barely articulated concepts," however, those remedial measures were presented in the same way in other cases that were accepted by OFAC. *See* Defs.' Reply Mem. at 19; DRC-34996-0010-0216. Indeed, Plaintiff's proposed measures were based on and substantially similar to those that OFAC previously accepted as part of TOR negotiated by undersigned counsel in other cases. *See, e.g.*, DRC-34996-0010-0216; DRC-34996-0218-0221.

Defendants further conclude that a TOR is not enforceable because it is not "straightforward or feasible to re-designate someone." Defs.' Reply Mem. at 18. Defendants do not provide any explanation as to why it would be difficult to do so, what some of the challenges in doing so would be, or why there would be any challenges with respect to Plaintiff's specific redesignation; particularly since they have already developed administrative records justifying continuing sanctions solely on alleged past conduct. *See id.*

Finally, Defendants take issue with the fact that Plaintiff did not initiate steps towards execution of the remedial measures. Defs.' Reply Mem. at 20. There are two main problems with this line of argument, however. First, the delisting regulations state that a sanctioned party "*may* propose remedial steps on the person's part"—not that the party *must* undertake remedial measures. *See* 31 C.F.R. § 501.807(a) (emphasis added). Defendants offer no explanation why the

20

burden under its regulations is shifted here. Second, Plaintiff did, in fact, take steps towards execution of his proposed remedial measures by making public statements against the trade in conflict minerals on X/Twitter. DRC-37986-0037; DRC-37986-0040-0041. In light of these reasons, Defendants did not reasonably find Plaintiff's proposed terms of removal inadequate, nor explain why they are inadequate, is arbitrary and capricious.

> F.    Plaintiff's Arguments about Acknowledgement of Past Conduct are Persuasive.

Defendants next restate that while OFAC does not impose a blanket requirement for admission of past sanctionable conduct to be delisted, Plaintiff's petition for administrative reconsideration was in part denied because he did not make such an admission. *See* Defs.' Reply Mem. at 20; DRC-34996-0003 (stating that Plaintiff should demonstrate acceptance and acknowledgement of responsibility for past actions to demonstrate changed behavior that would justify delisting). This argument is nonsensical. If Defendants require Plaintiff to admit to sanctionable conduct, they should just say that; however, they know they cannot impose such a requirement because doing so is unsupported in law. Instead, Defendants twist themselves in knots to argue that parties seeking removal of a sanctions designation not need admit to sanctionable conduct to have that designation removed, however, because Plaintiff has not done so, his failure to make such an admission is factored into the decision to maintain sanctions on him.

Defendants' reasoning here could not be any more arbitrary and capricious, and is demonstrative of the lack of reasonableness of their decision making in denying Plaintiff's petition for removal. *See id.*

> G.    Defendants' Reliance on the Harmless Error Rule is Misplaced.

Defendants' fallback position is two-fold. First, they assert that, even if mistakes were made by OFAC during the delisting process, those mistakes "constitute harmless error," as "the

denial evidentiary and supporting exhibits demonstrate that OFAC had more than sufficient evidence to deny Plaintiff's petition for reconsideration. Defs. Reply Mem. at 20-21. Next, they argue that the relevant "standard of review is exceedingly deferential, especially in the context of national security and foreign policy, as is the case here." Defs. Reply Mem. at 20-21. In short, Defendants suggest that the Court is barred from undertaking any substantive review of OFAC's denial decision, implying instead that the Court is a rubber-stamp for OFAC's decisions. *See id.*

The "harmless error rule" places the burden on "the party asserting error to demonstrate prejudice from the error." *Air Canada v. Dep't of Transp.*, 148 F.3d 1142, 1156 (D.C. Cir. 1998). Under the "harmless error rule," courts "will not invalidate [an agency's] decision based on procedural error unless the errors alleged could have affected the outcome." *Zevallos v. Obama*, 793 F.3d 106, 115 (D.C. Cir. 2015).

Notably, the Defendants' argument that even if OFAC "committed an error by not individually cataloguing some of Plaintiff's arguments in the denial memorandum, it should be deemed harmless" improperly relies on *Zevallos*. 793 F.3d at 115 (finding that OFAC committed at most a harmless error when it considered petition for delisting withdrawn). Defs.' Reply Mem. at 21. That case, however, concerns a different set of facts and a procedural error that the OFAC later rectified, unlike in this case. *See id.* Specifically, in *Zevallos*, the burden was on Zevallos to "show that a different process would have led Treasury to a different decision." *Id*. Ultimately, the *Zevallos* court stated that it would not invalidate OFAC's adjudication of the plaintiff's petition for administrative reconsideration because the plaintiff could not demonstrate any injury from OFAC's loss of evidence, since OFAC had remediated that mistake by assuming that everything the plaintiff said about what was missing in the evidence was true. *Zevallos*, 793 F.3d at 115.

There is no parallel to the *Zevallos* decision here that would permit Defendants to make similar claim to the 'harmless error' rule. Indeed, the error alleged by Plaintiff does not even qualify as procedural error, at least not as the type discussed in *Zevallos*. *See Zevallos*, 793 F.3d at 714-715 (noting that while Zevallos' claim rested on OFAC "losing the exhibits he submitted . . . as part of his original delisting request," "Treasury remediated that mistake by assuming that everything Zevallos said about what was in the missing evidence was true."). Here, however, Plaintiff does not allege that Defendants lost his evidence, nor that they failed to review the evidence. Instead, Defendants did the opposite, they purportedly reviewed the evidence without providing a reasoned explanation why they were discounting Plaintiff's arguments and evidence as not being credible and by failing to assess or analyze how it came to that determination. *See, e.g.*, DRC-37986-0001-0002. Had OFAC acted as it did in *Zevallos*, then Defendants would have accepted all of Plaintiff's evidence as true, and thus Plaintiff's arguments and evidence would have been deemed credible. Deeming such evidence as true would have demonstrated that Plaintiff did not engage in the conduct alleged by OFAC to have served as the basis for his designation, thereby negating the basis and, in turn, the determination that Plaintiff engaged in conduct warranting designation under E.O. 13413, as amended. Accordingly, OFAC's error in this case is not procedural in nature, but rather substantive; and it is clear that the error alleged by Plaintiff would have dramatically affected the outcome of his delisting matter.

Finally, while courts have shown deference towards OFAC's decision-making, that deference does not immunize OFAC from judicial scrutiny. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (noting that the court must "review the agency record to determine whether the agency's decision was supported by a rational basis."); *see also Judulang v. Holder*, 565 U.S. 42, 53 (2011) (noting that, in the context of national security, "courts

retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking."). Indeed, nothing in the case law evidences any change in the way challenges to OFAC decisions are reviewed under the APA. *See, e.g., Olenga*, 507 F. Supp. 3d at 280-282 (D.D.C. 2020) (finding that, even when applying this "highly deferential standard," "the record makes clear that the Office considered the competing facts," as required to do, and "resol[ved] which pieces of evidence were most credible and convincing."). Indeed, a court must still determine whether Defendants "considered the relevant facts and articulated a rational connection between the facts found and the choice made." *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007) (quotation marks and citation omitted). Any deference afforded to Defendants—under the harmless error rule or otherwise—does not change this basic principle of law, and should not be an impermeable shield by which a court can never second guess or limit Defendants decision making.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment and enter judgment in favor of Plaintiff.


Dated: December 6, 2024                    Respectfully submitted,

                                           /s/ Erich C. Ferrari
                                           Erich C. Ferrari, Esq.
                                           Ferrari & Associates
                                           1455 Pennsylvania Ave., NW
                                           Suite 400
                                           Washington, D.C. 20004
                                           Telephone: (202) 280-6370
                                           Email: ferrari@falawpc.com
                                           D.C. Bar No. 978253

                                           *Counsel for Plaintiff*