# Exhibit 8 Part 3

A resolution adopted and executed in writing under the hands of all the members and/or shareholders of the Company though not passed at a general or extra ordinary meeting, shall be valid and have the same force as if it had been duly passed at a general or extra ordinary meeting as the case may be duly provided in all cases that all members sign the resolution.

22.  Articles 52 to 57 of Table "A" shall apply but so that:

   (a)  A general meeting shall be called in accordance with section 140 of the Companies Act

   (b)  Two members present personally or by proxy shall form a quorum.

   (c)  The chairman of all meetings of the members whether general or extra ordinary shall be the chairman of the board of directors or such other person appointed by the Board of Directors.

23.  At any general meeting a resolution put to vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

   (a)  By the chairman, or

   (b)  By at least two members present in person or by proxy entitled to vote; or

   (c)  By any member or members present in person or by proxy and representing not less one tenth of the total voting rights of all the members having paid up equal to not less than one tenth of the total sum paid up on all the shares conferring that right.

   (d)  By a member or members holding shares in the Company conferring a right to vote at the meeting being shares on which an aggregate sum has been

DRC-34996 0557

paid up equal to not less than one tenth of the total sum paid up on all the shares conferring that right.

## VOTING OF MEMBERS

24. Articles 62 to 73 of table "A" shall apply save that an instrument of proxy may be in the usual standard form or in any other form approved or accepted by the Directors.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

25. Any corporation which is a member of the Company may by resolution of its Directors or other governing body authorize such person as it thinks fit to act as its representative at any meeting of the Company or of class or members of the Company, and the person so authorized shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the Company.

## DIRECTORS

30. (a) unless and until otherwise determined by the Company In a general meeting, the number of Directors shall not be less than two (2) or more than Nine (9).

   (b) So long as the number of Directors does not exceed four, the quorum necessary for the transaction of the business of the Directors shall be two and in all other cases it shall be three.

31. (a) Unless and until determined by the Company in general Meeting, a Director is not required to hold any share or shares in the Company i.e. no share qualification is required for appointment of a director.

   (b) Each Director shall be paid remuneration at such rate as the Company in general meeting shall direct and each Director shall be entitled to be paid his reasonable travelling expenses incurred by him whilst employed in the business of the Company and any amount fixed by the Board of

DRC-34996 0558

# Exhibit 8 Part 3

Directors according to the circumstances of each case for attending Board Meetings.

## BORROWING POWERS

32.  The Board of Directors may from time to time at their discretion borrow and secure the payment of any sum or sums of money for the purpose of the Company.

33.  The Board of Directors may secure the repayment of such moneys in such manner and upon such terms and conditions in all respects as they think fit and in particular subject to article 3 hereof by the issuance of debentures or debenture stock of the Company charged upon all or any part of the property of the Company (both present and future) including the uncalled capital for the time being.

(b)  Article 79 of Table "A" shall apply.

## DISQUALIFICATION OF DIRECTORS

34.  The office of a Director shall ipso facto be vacated:

(a)  If the director is found to be a lunatic or becomes of unsound mind;
(b)  If the director shall become bankrupt or compound with his creditors;
(c)  If by notice in writing to the Company the director resigns from office;
(d)  If for more than six months, the director is absent without permission of the directors from duly convened meetings of the directors held during that period

## POWERS AND DUTIES OF DIRECTORS

35.  The powers and duties of directors shall be as described and in accordance with Articles 80 to 87 of Table A..

## ROTATION OF DIRECTORS

36.  Articles 89 to 97 of Table "A" shall apply

DRC-34996 0559

# Exhibit 8 Part 3

## PROCEEDINGS OF DIRECTORS

37. (a)   Article 98to 106 (both inclusive) of Table "A" shall Apply however a resolution determined without any meeting of Directors but signed and executed by all Directors shall be as valid and effectual as a resolution duly passed at a meeting of the Directors.

   (b)   The last sentence of Regulation 98 of part 1 of Table "A" shall not apply to the Company.

## MANAGING DIRECTOR

38.   Articles 107 to 109 of Table A shall apply.

39.   The managing Director shall preside as chairman of any meeting in the absence of a Chairman being appointed by the Board of Directors.

40.   Unless otherwise directed by the Board of Directors:

   (a)   The day to day management of the business of the Company shall be the responsibility of the Managing Director of the Company who shall have power and authority on behalf of the Company to make all purchases and sales, and enter into all contracts and do all other things usual, necessary or desirable in the management of the affairs and business of the Company or otherwise and from time to time remove or suspend such employees as he shall think proper.;

   (b)   All bills of exchange, promissory notes, cheques and negotiable instruments and receipts and discharges and other papers requisite in the ordinary course of business shall be drawn, endorsed, accepted, signed and executed by the Managing Director or by any one or two Directors of the Company appointed for such purpose either by the Managing director or by the Board of Directors as may be the case and the receipts so signed in the usual course of business of the Company or for any moneys, goods or property lent to or payable or belonging to the Company

19 | P a g e

# Exhibit 8 Part 3

for the moneys, funds or property which in such receipts shall be acknowledged to be received.; and

(c) Subject to approval by the Board, the Managing Director is authorized to sub delegate all or any of the powers, authority and discretion bestowed under these Articles.

## CAPITALIZATION OF PROFITS

**44.** Articles 128(1), 128(2) and 129(1) of Table A shall apply.

## SECRETARY

**45.** The Secretary shall be appointed by the Directors for such term, at such remuneration and upon such conditions as they may think fit; and any Secretary so appointed may be removed by them.

## SEAL

**46.** The Directors shall provide for the safe custody of the seal, which shall only be used by the authority of the Directors and every instrument to which the seal shall be affixed shall be signed by a Director and shall be countersigned by the Secretary or by a second Director or by some other person appointed by the Directors for the purpose.

## DIVIDENDS AND RESERVE

**47.** Articles 114 to 122 of Table "A" shall apply.

## ACCOUNTS

**48.** Articles 123 to 126 of Table "A" shall apply.

## AUDIT

**49.** Once at least in every year the accounts of the Company shall be examined and the correctness of the profit and loss account and balance sheet ascertained by an auditor.

**50.** The Company at each ordinary meeting shall appoint an auditor to hold office until the next ordinary meeting and his

20 | P a g e

## Exhibit 8 Part 3

appointment, remuneration, rights and duties shall be regulated as provided in section 167 to 170 of the Companies Act.

### NOTICES

**51.** A notice may be served by the Company upon any member either personally or by sending it through the post in a prepaid letter envelope or wrapper addressed to each member at his registered place of address.

**52.** Each holder of registered shares whose place of address is not in Uganda, may from time to time notify in writing to the Company an address within Uganda which shall be deemed his registered place of address within the meaning of the preceding clause; if he shall not have named such an address he shall not be entitled to any notices.

**53.** All notices shall with respect to any registered shares which persons are jointly entitled to, be given to whichever of such persons is named first in the register and notice so given shall be sufficient notice to all the holders of such shares.

**54.** Any notice sent by post shall be deemed to have been served two weeks after the date on which the letter, envelope or wrapper containing the same is posted, and in proving such service it shall be sufficient to prove that the letter, envelope or wrapper containing the notice was properly addressed and put into the post office.

**55.** In case where a given number of day's notice extending over any other period is required to be given for the day of service shall not but the day upon which the notice shall expire shall be counted in such number of days or other period.

**56.** (a)    Save as herein before provided notice of every general meeting shall be given to every member of the Company.

(b) All words in Regulation 134 (a) of part 1 of Table "A" except the words "every member" shall apply to the Company.

### WINDING UP

**57.** If the Company shall be winding up whether voluntarily or otherwise, the liquidator may with the sanction of an extra

21 | P a g e

# Exhibit 8 Part 3

ordinary resolution, divide among the contributors in specie or kind the whole or any part of the assets of the Company and such division may if so decided by special resolution otherwise than in accordance with the right of the members.

## *INDEMNITY*

58.  Every director, manager or officer of the Company or person (whether an officer of the Company or not) employed by the Company as Auditor shall be indemnified out of the funds of the Company against all liabilities incurred by him as such Director, Manager, officer or Auditor in defending any proceedings whether civil or criminal in which judgment is given in his favour, or in which he is acquitted, or in connection with any application under section 285 of the Companies Act in which relief is granted to him by Court.

We, the several persons whose names, addresses and descriptions are hereunto subscribed are desirous of being formed into a Company in pursuance of the Articles of Association and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAME, POSTAL ADRESS AND OCCUPATION OF SUBSCRIBER | SIGNATURES OF SUBSCRIBER |
|---|---|
| **ALAIN FRANCOIS V.GOETZ** <br> **JACOB JACOBSSTRAAT 58** <br> **2018 ANTWERP,** <br> **BELGIUM** <br> **BUSINESS EXECUTIVE** | |
| **MOSES SADOORI** <br> **P.O. BOX 8520** <br> **KAMPALA** <br> **BUSINESS EXECUTIVE** | |

Dated at Kampala this ____28ᵗʰ____ Day of November 2015

DRC-34996 0563

# Exhibit 8 Part 3

**WITNESS TO THE ABOVE SIGNATURES:**

Signature:

Name in Full:

Postal Address:

Occupation:

*Sharon Tem*
LLB (MUK) DIP LP. (LDC)
ADVOCATE
P. O. Box 6800, Kampala
Tel: 0772 368 361. Email: tem@lawvor.com

DRC-34996 0564

Exhibit 8 Part 3

# Annex
# K

DRC-34996 0565

Exhibit 8 Part 3

**Republic of Seychelles**

INTERNATIONAL BUSINESS COMPANIES ACT, 2016

(Act 15 of 2016)

*Certificate of Incorporation*

THIS IS TO CERTIFY that, having satisfied all the requirements in respect of incorporation under the International Business Companies Act, 2016,

**AGR International Ltd.**

is incorporated in the Republic of Seychelles as an International Business Company,

on this **6th** day of **December 2017**

Given at Victoria, Seychelles.

*Company No:* 200304

REGISTRAR OF INTERNATIONAL BUSINESS COMPANIES



# Exhibit 8 Part 3

## THE INTERNATIONAL BUSINESS COMPANIES ACT, 2016

### RESOLUTION OF SUBSCRIBER IN WRITING

## AGR International Ltd.
### Company No.: 200304

The undersigned being the subscriber to the Memorandum of the abovenamed company declare as follows:

1.  **IT IS RESOLVED** that the following person be and is hereby appointed as director of the company:

    **Name:** ALAIN FRANCOIS V. GOETZ
    **Address:** VILLA 39, FROND N PALM JUMEIRAH DUBAI, UNITED ARAB EMIRATES

2.  **IT IS RESOLVED** that all the rights of the subscriber shall expire upon acceptance by the director of the company of his appointment duly notified in writing to the subscriber.

Dated this 06th day of December 2017.

.............................................................

**AAA International Services Ltd**
**Subscriber, represented by**
Ms. Sheryl Marie

DRC-34996 0567

# Exhibit 8 Part 3

## CERTIFICATE OF COLLATION

I, the undersigned, **Mr. Sammy Freminot** Notary Public by authority of Government duly admitted and sworn and practising at Victoria, Mahé, Republic of Seychelles do hereby certify and attest that I have collated and compared the annexed copies of the following documents pertaining to the company **AGR International Ltd.**, namely:

(i) Certificate of Incorporation - Certificate No 200304,

(ii) Memorandum of Association dated 06th day of December 2017,

(iii) Articles of Association dated 06th day of December 2017,

(iv) Resolution of Subscriber in Writing dated 06th day of December 2017,

(v) Registers of Director dated 06th day of December 2017,

(vi) Registers of Member dated 06th day of December 2017,

(vii) Share Certificate No 1 dated 06th day of December 2017

the originals thereof, and I confirm that the said copies are true copies of the originals.

**FAITH AND TESTIMONY WHEREOF** an Act being required, I have granted the same under and seal of office to serve and avail as occasion may require.

**DONE AND PASSED** at Victoria on this 06th day of December 2017.

Mr. Sammy Freminot
NOTARY PUBLIC

Exhibit 8 Part 3

## APOSTILLE

### (Convention de la Haye du 5 Octobre 1961)

1. Country:    **REPUBLIC OF SEYCHELLES**

   **This public document**

2. **has been signed by    S. FREMINOT**

3. **acting in the capacity of  NOTARY**

4. **bears the seal/stamp of SAMMY A FREMINOT**

   **NOTARY PUBLIC, VICTORIA, MAHE SEYCHELLES**

   **Certified**

5. at    **VICTORIA**    6.    07TH DECEMBER  2017

7. by   **J. LEPATHY, DEPUTY REGISTRAR, SUPREME COURT**

8. No.   **28855  OF 2017**

9. Seal/Stamp         10. Signature

DRC-34996 0569

Exhibit 8 Part 3

**Republic of Seychelles**

INTERNATIONAL BUSINESS COMPANIES ACT, 2016

(Act 15 of 2016)

*Certificate of Incorporation*

THIS IS TO CERTIFY that, having satisfied all the requirements in respect of incorporation under the International Business Companies Act, 2016,

**AGR International Ltd.**

is incorporated in the Republic of Seychelles as an International Business Company,

on this **6th day of December 2017**

Given at Victoria, Seychelles.

*Company No:* **200304**

REGISTRAR OF INTERNATIONAL BUSINESS COMPANIES



REPUBLIC OF SEYCHELLES
THE INTERNATIONAL BUSINESS COMPANIES ACT 2016

## AGR International Ltd.
## IBC NO: 200304

REGISTRAR OF INTERNATIONAL
BUSINESS COMPANIES
REPUBLIC OF SEYCHELLES

## MEMORANDUM OF ASSOCIATION

0 6 DEC 2017

1.  The name of the company is AGR International Ltd..

2.  The Registered Office of the company is situated at Global Gateway 8, Rue de la Perle, Providence, Mahé, Seychelles.

3.  The Registered Agent of the company is AAA INTERNATIONAL SERVICES LTD. of Global Gateway 8, Rue de la Perle, Providence, Mahé, Seychelles.

4.  The objects of the company are to engage in any act or activity that is not prohibited under any law for the time being in force in Seychelles, except that the company shall not:

    a.  Carry on business in Seychelles except as provided for in Section 5(3) of the Act.
    b.  Own an interest in immovable property situated in Seychelles, or a lease of immovable property situated in Seychelles otherwise than referred to in subsection 5(3)(f);
    c.  Carry on banking business (as defined in the Financial Institutions Act) in or outside Seychelles;
    d.  Carry on insurance business (as defined in the Insurance Act) in Seychelles or Outside Seychelles unless it is licensed or otherwise legally able to do so under the laws of each country outside Seychelles in which it carries on such business;
    e.  Carry on business providing international corporate services, international corporate services, international trustee services or foundation services (as defined in the International Corporate Services Providers Act (Cap 275) except –
        i.  To the extent permitted under the International Corporate Service Providers Act (Cap 275); and
        ii.  In the case of carrying on such business outside Seychelles, if the company is licensed or otherwise legally able to do so under the laws of each country outside Seychelles in which it carries on such business;
    f.  Carry on securities business (as defined in the Securities Act) – in Seychelles or Outside 'Seychelles unless it is licensed or otherwise legally able to do so under the laws of each country outside Seychelles in which it carries on such business;
    g.  Carry on business as a mutual fund (as defined in the Mutual Fund and Hedge Fund Act) unless it is licensed or otherwise legally able to do so under the laws of a recognized jurisdiction (as defined in the Mutual Fund and Hedge Fund Act) or;
    h.  Carry on gambling business (as defined in the Seychelles Gambling Act), including interactive gambling business in Seychelles; or outside Seychelles unless it is licensed or otherwise legally able to do so under the laws of each country outside Seychelles in which it carries on such business.

5.  The company shall be limited by shares.

6.  The liability of a member arising from the member's holding of any share is limited to the amount (if any) unpaid on it.

7.  The authorised share capital of the company is US$ 150,000.00 (One Hundred and Fifty Thousand United States dollars) divided into 150,000 Shares of US$ 1.00 each. The aggregate of the par value of the shares that the company is authorised to issue is equal to its authorised capital.

8.  The Directors shall not issue share certificates unless specifically applied for by shareholders.

9.  All the shares in the company shall be issued in United States dollars, as ordinary registered shares only, all of the same class and series, all carrying equal voting rights, equal rights to dividends, equal rights to the return of capital and participation in surplus assets on a winding-up and shall rank pari passu in every other respect.

DRC-34996 0571

# Exhibit 8 Part 3

10. Insofar as not specifically prescribed by this Memorandum, the directors of the company may by their resolutions further establish such other classes, designations, powers, preferences, rights, qualifications, limitations and restrictions, in accordance with Section 33 (2), to company shares as may be determined by a Resolution of the Board of Directors.

11. All meetings and resolutions of the company may be held by electronic means as long as it does not impair any individual's right to be heard.


We, the undersigned subscribers are desirous of being formed into an International Business Company to be governed by this Memorandum of Association.

Dated this 06th day of December 2017.


Subscriber's signature:

Ms. Sheryl Maria for and on behalf of:

Name:                    AAA INTERNATIONAL SERVICES LTD.
Address:                 Global Gateway 8, Rue de la Perle, Providence, Mahé, Seychelles.


Witness to the above signature
Signature:
Name:                    Ms. Joesie Lucas
Address:                 Global Gateway 8, Rue de la Perle, Providence, Mahé, Seychelles.


REGISTRAR OF INTERNATIONAL
BUSINESS COMPANIES
REPUBLIC OF SEYCHELLES

0 6 DEC 2017

# Exhibit 8 Part 3

REPUBLIC OF SEYCHELLES

THE INTERNATIONAL BUSINESS COMPANIES ACT, 2016

## ARTICLES OF ASSOCIATION

OF

## AGR International Ltd.

REGISTRAR OF INTERNATIONAL
BUSINESS COMPANIES
REPUBLIC OF SEYCHELLES

0 6 DEC 2017

### 1. INTERPRETATION

1.1. In these Articles, if not inconsistent with the subject or context, the words and expressions shall bear the following meanings:

"Capital" - the sum of the aggregate par value of all outstanding shares with par value of the Company and shares with par value held by the Company as treasury shares plus the aggregate of the amounts designated as capital of all outstanding shares without par value of the Company and shares without par value held by the Company as treasury shares, and the amounts as are from time to time transferred from surplus to capital by resolution of directors.

"Member" - a person who holds shares in the Company and is registered as such in the Register of Members.

"Person" - an individual, a corporation, a trust, the estate of a deceased individual, a partnership or an unincorporated association of persons.

"Resolution of directors" - a resolution approved at a duly constituted meeting of the Company or of a committee of directors of the Company by the affirmative vote of a simple majority of the directors present who voted and did not abstain where the meeting was called on proper notice or, if on short notice, if those directors not present have waived notice; or a resolution consented to in writing by all directors or of all members of the committee, as the case may be.

"Resolution of Members" - a resolution approved at a duly constituted meeting of the members of the Company by the affirmative vote of a simple majority of the votes of the shareholders present at the meeting and entitled to vote thereon and who voted and did not abstain, or a simple majority of the votes of the shareholders of each class or series of shares present at the meeting and entitled to vote thereon as a class or series and who voted and did not abstain or a simple majority of the votes of the remaining shareholders entitled to vote thereon present at the meeting and who voted and did not abstain; or a resolution consented to in writing by an absolute majority of the votes of each class or series of shares entitled to vote thereon; or an absolute majority of the votes of each class or series of shares entitled to vote thereon as a class or series and of an absolute majority of the votes of the remaining shares entitled to vote thereon.

"Securities" - shares and debt obligations of every kind, and options, warrants and rights to acquire shares or debt obligations.

"Surplus" - the excess, if any, at the time of the determination of the total assets of the company over the aggregate of its total liabilities as shown in its books of accounts, plus the Company's capital.

"Memorandum" - the Memorandum of Association of the Company as originally issued or as from time to time amended.

"The Act" - The International Business Companies Act 2016.

Exhibit 8 Part 3

"Seal" - the common seal of the Company, as may be used by the Company.

"Articles" - these Articles of Association as originally issued or as from time to time amended.

"Treasury Shares" – the shares in the Company that were otherwise acquired by the Company and not cancelled.

1.2. Save as aforesaid any words or expressions defined in the Act shall bear the same meaning in these Articles.

1.3. A reference in these Articles to voting in relation to shares shall be construed as a reference to voting by members holding the shares, except that it is the votes allocated to shares that shall be counted and not the number of members who actually voted, and a reference to shares being present at a meeting shall be given a corresponding construction.

1.4. A reference to money in these articles is a reference to the currency of the United States of America.

## 2.  SHARES, AUTHORISED CAPITAL AND CAPITAL

2.1. The Company shall only issue registered shares.

2.2. The Company may issue to every member holding registered shares in the Company a certificate signed by a director or officer of the company and under the seal (if used by the Company) specifying the share or shares held by him, and the signature of the director or officer and the seal may be facsimiles.

2.3. Any member receiving a share certificate for registered shares shall indemnify and hold the Company and its directors and officers harmless from any loss or liability which it or they may incur by reason of the wrongful or fraudulent use or representation made by any person by virtue of the possession thereof. If a share certificate for registered shares is worn out or lost it may be renewed on production of the worn out certificate or on satisfactory proof of its loss together with such indemnity as may be required by a resolution of directors.

2.4. If several persons are registered as joint holders of any shares, any one of such persons may be given an effectual receipt for any dividends payable in respect of such shares.

2.5. Section 57. Of the Act shall apply in regards to Pre-emptive rights and Before issuing shares that rank or would rank as to voting or distribution rights, or both, equally with or prior to shares already issued by the company, the directors shall offer the shares to existing shareholders in such a manner that, if the offer was accepted by those shareholders, the existing voting or distribution rights, or both, of those shareholders would be maintained.

2.6. Subject to the provisions of these articles and any resolution of members, the unissued shares of the Company shall be at the disposal of the directors who may, without prejudice to any rights previously conferred on the holders of any existing shares or class or series of shares, offer, allot, grant options over or otherwise dispose of the shares to such persons at such times and upon such terms and conditions as the Company may by resolution of directors determine.

2.7. The shares in the Company shall be issued for money, services rendered, personal property, an estate in real property, a promissory note or other binding obligation to contribute money or property or any combination of the foregoing as shall be determined by a resolution of directors.

2.8. The liability of a member arising from the member's holding of any share s limited to the amount (if any) unpaid on it.

2.9. The shares in the Company may be issued for such amount of consideration as the directors may from time to time by resolution of directors determine, except that in the case of shares with par value, the amount shall not be less than the par value, and in the absence of fraud the decision of the directors as to the value of the consideration received by the Company in respect of the issue is conclusive unless a question of law is involved. The consideration in respect of the shares constitutes capital to the extent of par value and the excess constitutes surplus.

2.10. A share issued by the Company upon conversion of, or in exchange for, another share, a debt obligation or other security in the Company shall be treated for all purposes as having being issued for money equal to the consideration received or deemed to have been received by the Company in respect of the other share, debt obligation or security.

2.11. Treasury shares may be disposed of by the Company on such terms and conditions (not otherwise inconsistent with these articles) as the Company may by resolution of directors determine.

2.12. The Company may issue fractions of a share and a fractional share shall have the same corresponding fractional liabilities, limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class or series of shares.

2.13. Upon the issue by the Company of a share without par value, the consideration in respect of the share constitutes capital to the extent designated by the directors, and the excess constitutes surplus, except that the directors must designate as capital an amount of the consideration that is at least equal to the amount that the share is entitled to as a preference, if any, in the assets of the Company upon liquidation of the Company.

2.14. The Company may purchase, redeem or otherwise acquire and hold its own shares but no purchase, redemption or other acquisition, which shall constitute a reduction in capital, shall be made except in compliance with articles 5.4 and 5.5.

2.15. Shares that the Company purchases, redeems or otherwise acquires pursuant to article 2.12. may be cancelled or held as treasury shares unless the shares are purchased, redeemed or otherwise acquired out of capital and would otherwise infringe upon the requirements of articles 5.4 and 5.5, or to the extent that such shares are in excess of 80 per cent of the issued shares of the Company, in which case they shall be cancelled but they shall be available for reissue. Upon the cancellation of a share, the amount included as capital of the Company with respect to that share shall be deducted from the capital of the Company.

2.16. Where shares in the Company are held by the Company as treasury shares or are held by another company of which the Company holds, directly or indirectly, shares having more than 50 per cent of the votes in the election of directors of the other company, such shares of the Company are not entitled to vote or to have dividends paid thereon and shall not be treated as outstanding for any purpose except for purposes of determining the capital of the Company.

2.17. No notice of a trust, whether expressed, implied or constructive, shall be entered in the share register.

## 3. TRANSFER OF SHARES

3.1. Subject to any limitations in the memorandum, registered shares in the Company may be transferred by a written instrument of transfer signed by the transferor and containing the name and address of the transferee, but in the absence of such written instrument of transfer the directors may accept such evidence of a transfer of shares as they consider appropriate.

3.2. The Company shall not be required to treat a transferee of a registered share in the Company as a member until the transferor's name has been entered in the share register.



# Exhibit 8 Part 3

3.3. Subject to any limitations in the Memorandum, the Company must on the application of the transferor or transferee of a registered share in the Company, enter the transferors' name in the share register save that the registration of transfers may be suspended and the share register closed at such times and for such periods as the may be determined from time to time by resolution of directors, provided always that such registration shall not be suspended and the share register closed for more than 60 days in any period of 12 months.

## 4. TRANSMISSION OF SHARES

4.1. The executor or administrator of a deceased member, the guardian of an incompetent member or the trustee of a bankrupt member shall be the only persons recognised by the Company as having any title to his share but they shall not be entitled to exercise any rights as a member of the Company until they have proceeded as set forth in the next two articles.

4.2. Any person becoming entitled by operation of law or otherwise to a share or shares in consequence of the death, incompetence or bankruptcy of any member may be registered as a member upon such evidence being produced as may reasonably be required by the directors. An application by any such person to be registered, as a member shall be deemed to be a transfer of shares of the deceased, incompetent or bankrupt member and the directors shall treat it as such.

4.3. Any person who has become entitled to a share or shares in consequence of the death, incompetence or bankruptcy of any member may, instead of being registered himself, request in writing that some person to be named by him be registered as the transferee of such share or shares and such request shall likewise be treated as if it were a transfer.

4.4. What amounts to incompetence on the part of a person is a matter to be determined by the court, having regard to all the relevant evidence and the circumstances of the case.

## 5. REDUCTION OR INCREASE IN AUTHORISED CAPITAL OR CAPITAL

5.1. The Company may by a resolution of directors amend the Memorandum to increase or reduce its authorised capital and in connection therewith the Company may, in respect of any unissued shares increase or reduce the number of shares, increase or reduce the par value of any shares or effect any combination of the foregoing.

5.2. The Company may amend the Memorandum to divide the shares, including issued shares, of a class and series into a larger number of shares of the same class or series; or to combine the shares, including issued shares, of a class or series into a smaller number of shares of the same class or series; provided, however, that where shares are divided or combined under this provision, the aggregate par value of the new shares must be equal to the aggregate par value of the original shares.

5.3. The capital of the Company may by a resolution of directors be increased by transferring an amount of the surplus of the Company to capital, and, subject to the provisions of articles 5.4 and 5.5 the capital of the Company may be reduced by transferring an amount of the capital of the Company to surplus.

5.4. No reduction of capital shall be effected that reduces the capital of the Company to an amount that after the reduction is less than the aggregate par value of all outstanding shares with par value and all shares with par value held by the Company as treasury shares, and the aggregate of the amounts designated as capital of all outstanding shares without par value and all shares without par value held by the Company a treasury shares that are entitled to a preference, if any, in the assets of the Company upon liquidation of the Company.

5.5. No reduction of capital shall be effected unless the directors determine that after the reduction, the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and that the realisable assets of the Company will not be less than its total liabilities, other than deferred taxes,

as shown in the books of the Company, and its remaining capital, and, in the absence of fraud, the decision of the directors as to the realisable value of the assets of the Company is conclusive, unless a question of law is involved.

5.6. Where the Company reduces its capital the Company may return to its members any amount received by the Company upon the issue of any of its shares; or purchase, redeem or otherwise acquire its shares out of capital; or cancel any capital that is lost or not represented by assets having a realisable value.

## 6. MEETINGS AND CONSENTS OF MEMBERS

6.1. The directors of the Company may convene meetings of the members of the Company at such times, in such manner and places in or outside Seychelles as the directors consider necessary or desirable.

6.2. Upon the written request of members holding 10 per cent or more of the outstanding voting shares in the Company, the directors shall convene a meeting of members.

6.3. In respect of meeting requiring an ordinary resolution of members, the directors shall give not less than 7 days notice of meetings of members to these persons whose names on the date the notice is given appear as members in the share register of the Company. In respect of special resolutions, the directors shall give not less than 21 days' notice of meetings of members to those persons whose names on the date the notice is given appear as members in the share register of the Company.

6.4. The requirement of article 6.3. shall not apply if members holding not less than 50% of the total number of shares entitled to vote on all matters to be considered at the meeting have agreed to a shorter notice of the meeting; or if all members holding shares entitled to vote on all or any matters to be considered at the meeting have waived notice of the meeting and therefore presence at the meeting shall be deemed to constitute waiver.

6.5. The inadvertent failure of the directors to give notice of a meeting to a member, or the fact that a member has not received notice, does not invalidate the meeting.

6.6. A member may be represented at a meeting of members by a proxy who may speak and vote on behalf of the member.

6.7. The instrument appointing a proxy shall be produced at the place appointed for the meeting before the time for holding the meeting at which the person named in such instrument proposes to vote.

6.8. An instrument appointing a proxy shall be in such form as the chairman of the meeting shall accept as properly evidencing the wishes of the member appointing a proxy. Only members who are individuals may appoint proxies.

6.9. In respect of joint ownership of shares, if two or more persons hold shares jointly, each of them may be present in person or by proxy at a meeting of members and may speak as a member; if only one of the joint owners is present in person or by proxy he may vote on behalf of all joint owners; and if two or more of the joint owners are present in person or by proxy they must vote as one.

6.10. A member shall be deemed to be present at a meeting of members if he participates by telephone or other electronic means and all members participating in the meeting are able to hear each other.

6.11. A meeting of members is duly constituted if, at the commencement of the meeting, there are present in person or by proxy not less than 50 per cent of the votes of the shares or class or series of shares entitled to vote on resolutions of members to be considered at the meeting. If a quorum is present, notwithstanding the fact that such quorum may be represented by only one person then such person may resolve any matter and a certificate signed by such person accompanied, where such person be a proxy, by a copy of the proxy form, shall constitute a valid resolution of members.



# Exhibit 8 Part 3

6.12. If within two hours from the time appointed for the meeting a quorum is not present, the meeting, if convened upon a requisition of members, shall be dissolved; in any other case it shall stand adjourned to the next business day at the same time and place or to such other time and place as the directors may determine, and if at the adjourned meeting there are present within one hour from the time appointed for the meeting in person or by proxy not less than one-third of the votes of the shares of each class or series of shares entitled to vote on the resolutions to be considered by the meeting, those present shall constitute a quorum, but otherwise the meeting shall be dissolved.

6.13. At every meeting of members, the chairman of the board of directors shall preside as chairman of the meeting. If there is no chairman of the board of directors or the chairman of the board of directors is not present at the meeting, the members present shall choose someone of their number to be the chairman of the meeting. If the members are unable to choose a chairman for any reason, then the person representing the greatest number of voting shares present in person or by prescribed form of proxy at the meeting shall preside as chairman, failing which the oldest individual member or representative of a member present shall take the chair.

6.14. The chairman may, with the consent of the meeting, adjourn any meeting from time to time, and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.

6.15. At any meeting of the members the chairman shall be responsible for deciding in such manner as he shall consider appropriate whether any resolution has been carried or not, and the result of his decision shall be announced to the meeting and recorded in the minutes thereof. If the chairman shall have any doubt as to the outcome of any resolution put to the vote, he shall cause a poll to be taken of all votes cast upon such resolution, but if the chairman shall fail to take a poll then any member present in person or by proxy who disputes the announcement by the chairman of the result of any vote may immediately following such announcement demand that a poll be taken and the chairman shall thereupon cause a poll to be taken. If a poll is taken at any meeting, the result thereof shall be duly recorded in the minutes of the meeting by the chairman.

6.16. Any person other than an individual shall be regarded as one member and subject to article 6.17 the right of any individual to speak for or represent such member shall be determined by the law of the jurisdiction where, and by the documents by which the person is constituted or derives its existence. In case of doubt, the directors may in good faith seek legal advice from any qualified person and unless and until a Court of competent jurisdiction shall otherwise rule, the directors may rely and act upon such advice.

6.17. Any person other than an individual which is a member of the Company may by resolution of its directors or other governing body authorise such persons as it thinks fit to act as its representative at any meeting of the Company or of any class of members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the person which he represents as that person could exercise if it were an individual member of the Company.

6.18. The chairman of any meeting at which a vote is cast by proxy or on behalf of any person other than an individual may call for a certified copy of such proxy or authority which shall be produced within 7 days of being so requested, or the votes cast by such proxy or on behalf of such person shall be disregarded.

6.19. Directors of the company may attend and speak at any meeting of members of the Company and at any separate meeting of the holders of any class or series of shares in the Company.

## 7. DIRECTORS

7.1. The first directors of the Company shall be elected by the subscribers to the Memorandum within 9 months of the date of incorporation of the company. Thereafter, the directors shall be elected by the members for such terms as the members may determine.

Exhibit 8 Part 3

7.2. The minimum number of directors shall be one and the maximum number shall be seven.

7.3. Each director shall hold office for the term, if any, fixed by resolution of members or until his earlier death, resignation or removal.

7.4. A director may be removed from office, with or without cause, by a resolution of members at a meeting or by a resolution in writing passed by in excess of half of the members of the company entitled to vote.

7.5. A director may resign his office by giving written notice of his resignation to the Company, and the resignation shall have effect from the date the notice is received by the Company or from such later date as may be specified in the notice.

7.6. A vacancy in the board of directors may be filled by a resolution of members or by a resolution of the majority of the remaining directors.

7.7. With the prior or subsequent approval by a resolution of members, the directors may, by a resolution of directors, fix the emoluments of directors with respect to services to be rendered in any capacity to the company.

7.8. A director shall not require a share qualification, and may be an individual or a company.

7.9. No person shall act as director of the company if he has been adjudged bankrupt or is prohibited by virtue of any written law or court order from Acting as such.

7.10. Nothing in these Articles of Association shall prevent the appointment of a Reserve Director on such terms and conditions as may be decided by a resolution of the Board of Directors.

7.11. Nothing in these Articles shall prevent the appointment of an Alternate Director on such terms and conditions as may be decided by a resolution of the Board of Directors.

## 8. POWERS OF DIRECTORS

8.1. The business and affairs of the Company shall be managed by the directors who will pay all expenses incurred preliminary to and in conjunction with the formation and registration of the Company and may exercise all such powers of the Company as are not by the Act or by the Memorandum or these Articles required to be exercised by the members of the Company, subject to any delegation of such powers as may be authorised by these articles and to such requirements as may be prescribed by a resolution of members; but no requirement made by a resolution of members shall prevail if it be inconsistent with these articles nor shall such requirement invalidate any prior act of the directors which would have been valid if such requirement had not been made.

8.2. The directors may, by a resolution of directors, appoint any person, including a person who is a director, to be an officer or agent of the Company.

8.3. Every officer or agent of the Company has such powers and authority of the directors, including the power and authority to affix the seal, as are set forth in these Articles or in the Resolution appointing the officer or agent, except that no officer or agent has any authority with respect to fixing the emoluments of directors.

8.4. Any director which is a body corporate may appoint any person its duly authorised representative for the purpose of representing it at meetings of the Board of Directors or with respect to unanimous written consents.

8.5. The continuing directors may act notwithstanding any vacancy in their body, save that if their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum for a meeting of



Exhibit 8 Part 3

directors, the continuing directors or director may act only for the purpose of appointing directors to fill any vacancy that has arisen or summoning a meeting of members.

8.6. All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments, and all receipts for monies paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as shall from time to time be determined by resolution of directors.

8.7. In accordance with 15.1, The Directors of the Company shall cause to be kept reliable accounting records that –
   a) are sufficient to show and explain the company's transactions;
   b) enable the financial position of the company to be determined with reasonable accuracy at any time; and
   c) allow for accounts of the company to be prepared.

### 9.  PROCEEDINGS OF DIRECTORS

9.1. The directors of the Company or any committee thereof may meet at such times and in such manner and places within or without the Republic of Seychelles as the directors may determine to be necessary or desirable.

9.2. A director shall be deemed to be present at a meeting of directors if he participates by telephone or other electronic means and all directors participating in the meeting are able to hear each other.

9.3. A director shall be given not less than 2 days' notice of meetings of directors, but a meeting of directors held without 2 days' notice having been given to all directors shall be valid if all the directors entitled to vote at the meeting who do not attend waive notice of the meeting. The inadvertent failure to give notice of a meeting to a director, or the fact that a director has not received the notice, does not invalidate the meeting.

9.4. A director may by a written instrument appoint an alternate who need not be a director and an alternate is entitled to attend meetings in the absence of the respective director and to vote or consent in his place.

9.5. A meeting of directors is duly constituted for all purposes if at the commencement of the meeting there are present in person or by alternate not less than one half of the total number of directors, unless there are only two directors in which case the quorum shall be two.

9.6. If the company shall have only one director the provisions herein contained for meetings of the directors shall not apply but such sole director shall have full power to represent and act for the Company in all matters that fall outside the exclusive competence of the members of the Company according to the Act, the Memorandum or these Articles, and in lieu of minutes of a meeting shall record in writing and sign a note or memorandum of all matters requiring a resolution of directors. Such a note or memorandum shall constitute sufficient evidence of such resolution for all purposes.

9.7. At every meeting of the directors the chairman of the board of directors shall preside as chairman of the meeting. If there is no chairman of the board of directors or if the chairman of the board of directors is not present at the meeting, the directors shall choose someone of their number to be the chairman of the meeting.

9.8. The directors shall cause to be properly kept all minutes of all meetings of directors, members, committees of directors, committee of officers and committees of members; all copies of all resolutions consented to by directors, members and committees of directors, committees of officers and committees of members; and such other accounts and records as the directors by resolution of directors consider necessary or desirable in order to reflect the financial position of the company.

9.9. The books, records and minutes shall be kept at the registered office of the Company or at such other place as the directors determine.

9.10. The directors may, by a resolution of directors, designate one or more committees, each comprising of one or more directors.

9.11. Each committee of directors has such powers and authorities of the directors, including the power and authority to affix the seal (if any), as set forth in the resolution of directors establishing the committee, except that no committee has any power or authority either to amend the Memorandum or these Articles.

### 10. OFFICERS

10.1. The company may by resolution of directors appoint officers of the Company at such times as shall be considered necessary or desirable. Such officers may consist of a chairman of the board, president and one or more vice presidents, secretaries and treasurers and such other officers as may from time to time be deemed desirable. Any number of offices may be held by the same person.

10.2. The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by resolution of directors or resolution of members, but in the absence of any specific allocation of duties it shall be the responsibility of the chairman of the board to preside at meetings of directors and members, the president to manage the day to day affairs of the company, the vice presidents to act in order of seniority in the absence of the president but otherwise to perform such duties as may be delegated to them by the president, the secretaries to maintain the share register, minute books and records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the treasurer to be responsible for the financial affairs of the Company.

10.3. The emoluments of all officers shall be fixed by resolution of directors.

10.4. The officers of the Company shall hold office until their successors are duly elected and qualified, but any officer elected or appointed by the directors may be removed at any time, with or without cause, by resolution of directors. Any vacancy occurring in any office of the Company may be filled by resolution of directors.

### 11. CONFLICT OF INTEREST

11.1. No agreement or transaction between the Company and one or more of its directors or any person in which any director has a financial interest or to whom any director is related, including as a director of that other person, is void or void able for this reason only or by reason only that the director is present at the meeting of directors or at the meeting of the committee of directors that approves the agreement or transaction or that the vote or consent of the director is counted for that purpose if the material facts of the interest of each director in the agreement or transaction and his interest in or relationship to the other party to the agreement or transaction are disclosed in good faith or are known by the other directors.

11.2. A director who has an interest in any particular business to be considered at a meeting of directors or members may be counted for the purposes of determining whether the meeting is duly constituted.

### 12. INDEMNIFICATION

12.1. Subject to article 12.2 the Company may indemnify against all expenses, including legal fees, and against all judgments, fines and amounts paid in settlement and reasonably incurred in connection with legal, administrative or investigate proceedings, any person who is or was a party or is threatened to be made a party to any threatened, pending or completed proceedings, whether civil, criminal, administrative or investigative, by reason of the fact that the person is or was a director, an officer or a liquidator of the company; and/or is or was, at the request of the company, serving as a director, officer or liquidator of, or in

Exhibit 8 Part 3

any other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise.

12.2. Article 12.1 only applies to a person referred to in that article if the person acted honestly and in good faith with a view to the best interests of the Company and, in the case of criminal proceedings, the person had no reasonable cause to believe that his conduct was unlawful.

12.3. The decision of the directors as to whether the person acted honestly and in good faith and with a view to the best interests of the Company and as to whether the person had no reasonable cause to believe that his conduct was unlawful is, in the absence of fraud, sufficient for the purposes of these articles, unless a question of law is involved.

12.4. The termination of any proceedings by any judgment, order, settlement, conviction or the entering of a nolle prosequi does not, by itself, create a presumption that the person did not act honestly and in good faith and with a view to the best interests of the Company or that the person had reasonable cause to believe that his conduct was unlawful.

12.5. If a person referred to in article 12.1 has been successful in defense of any proceedings referred to in that article, the person is entitled to be indemnified against all expenses, including legal fees, and against all judgments, fines and amounts paid in settlement and reasonably incurred by the respective person.

## 13. SEAL

13.1. At incorporation, the Company has elected to operate without Common Seal. Any documents and legal instruments which if made between private persons would be by law required to be in writing shall on behalf of the Company be made in writing and shall be valid if signed by any of the Directors or authorized signatories of the Company. However, the directors of the Company may by a resolution at any time in the future elect to procure a Common Seal for the Company. In such event all rules of these Articles in regards use, safekeeping and application of a Company Seal shall be applicable.

13.2. The directors shall provide for the safe custody of the Seal. The Seal when affixed to any written instrument shall be witnessed by a director or any other person so authorised from time to time by resolution of directors. The directors may provide for a facsimile of the Seal and of the signature of any director or authorised person which may be reproduced by printing or other means on any instrument and it shall have the same validity as if the Seal had been affixed to such instrument and the same had been signed as here in before described.

## 14. DIVIDENDS

14.1. The Company may by a resolution of directors declare and pay dividends in money, shares or other property but dividends shall only be declared and paid out of surplus. In the event that dividends are paid in kind the directors shall have responsibility for establishing and recording in the resolution of directors authorising the dividends, a fair and proper value for the assets to be so distributed.

14.2. The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the Company.

14.3. The directors may, before declaring any dividend, set aside out of the profits of the Company such sum as they think proper as a reserve fund upon such securities as they may select.

14.4. No dividends shall be declared and paid unless the directors determine that immediately after the payment of the dividend the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and the reasonable value of the assets of the Company will not be less than the sum of its total liabilities, other than deferred taxes, as shown in its books of account, and its capital. In the absence of

DRC-34996 0582

# Exhibit 8 Part 3

fraud, the decision of the directors as to the reasonable value of the assets of the Company is conclusive, unless a question of law is involved.

14.5. Notice of any dividend that may have been declared shall be given to each member in the manner hereinafter mentioned and all dividends unclaimed for three years after having been declared may be forfeited by resolution of directors for the benefit of the Company.

14.6. No dividend shall bear interest against the Company and no dividend shall be paid on shares that are not fully paid-up described in article 2.14.

14.7. A share issued as a dividend by the Company shall be treated for all purposes as having been issued for money equal to the surplus that is transferred to capital upon the issue of the share.

14.8. In the case of a dividend of authorised but unissued shares with par value, an amount equal to the aggregate par value of the shares shall be transferred from surplus to capital at the time of the distribution.

14.9. In the case of a dividend of authorized but unissued shares without par value, the amount designated by the directors shall be transferred from surplus to capital at the time of the distribution, except that the directors must designate as capital an amount that is at least equal to the amount that the shares are entitled to as a preference, if any, in the assets of the Company upon liquidation of the Company.

14.10.    A dividend of the issued and outstanding shares of a class or series of shares into a larger number of shares of the same class or series having a proportionately smaller par value does not constitute a dividend of shares.

## 15.  ACCOUNTS AND RECORDS

15.1. The company shall keep such accounts and records as the directors of the Company consider necessary or desirable in order to reflect the financial position of the Company. The company shall keep minutes or some notes or memoranda in writing of all meetings of directors, members, committees of directors, committees of officers and committees of members, and copies of all resolutions or decisions consented to or arrived at by directors, members, committees of directors, committees of officers and committees of members.

15.2. The books, records, minutes and notes required by Article 15.1 shall be kept at the registered office of the Company or at the principal business office of the Company or at such other place as the directors determine, and shall be kept open to the inspection of the directors at all times.

15.3. Where such books, records and minutes are kept at a place other than the registered office of the company the address of such other place shall be notified to the Registrar by the directors or the registered agent.

## 16.  AUDIT

16.1. The Company may by resolution of members call for the accounts to be examined by auditors. The first auditors shall be appointed by resolution of directors; subsequent auditors shall be appointed by a resolution of members.

16.2. The auditors may be members of the Company but no director or other officer shall be eligible to be the auditor of the company during his continuance in office. An auditor appointed by the directors may at any time be removed and replaced by a resolution of members.

16.3. If the auditors are appointed by the directors, their remuneration may be fixed by a resolution of directors, otherwise it shall be fixed by a resolution of members of the company.

# Exhibit 8 Part 3

## 17. AMENDMENTS TO ARTICLES

The Company may alter or modify the provisions contained in these Articles, as originally drafted or as amended from time to time, by resolution of directors or by resolution of members.

## 18. CONTINUATION

The Company may, by resolution of directors or by resolution of members, continue as a company incorporated under the laws of a jurisdiction outside Seychelles in the manner provided under those laws.

Dated this 06ᵗʰ day of December, 2017.

Subscriber's signature:

Name:                    Ms. Sheryl Marie for and on behalf of:
Address:                 AAA INTERNATIONAL SERVICES LTD.
                         Global Gateway 8, Rue de la Perle, Providence, Mahé, Seychelles.

Witness to the above signature
Signature:
Name:                    Ms. Joesie Lucas
Address:                 Global Gateway 8, Rue de la Perle, Providence, Mahé, Seychelles.

REGISTRAR OF INTERNATIONAL
BUSINESS COMPANIES
REPUBLIC OF SEYCHELLES

0 6 DEC 2017

# Exhibit 8 Part 3

## THE INTERNATIONAL BUSINESS COMPANIES ACT, 2016

## <u>RESOLUTION OF SUBSCRIBER IN WRITING</u>

## AGR International Ltd.
### Company No.: 200304

The undersigned being the subscriber to the Memorandum of the abovenamed company declare as follows:

1.  **IT IS RESOLVED** that the following person be and is hereby appointed as director of the company:

    **Name:** ALAIN FRANCOIS V. GOETZ
    **Address:** VILLA 39, FROND N PALM JUMEIRAH DUBAI, UNITED ARAB EMIRATES

2.  **IT IS RESOLVED** that all the rights of the subscriber shall expire upon acceptance by the director of the company of his appointment duly notified in writing to the subscriber.

Dated this 06th day of December 2017.

......................................................

**AAA International Services Ltd**
**Subscriber, represented by**
Ms. Sheryl Marie

DRC-34996 0585

**Exhibit 8 Part 3**

Company Name:  **AGR International Ltd.**
Certificate:       200304
Incorporated:     06/12/2017
Registered Office:  Global Gateway 8, Rue de la Perle, Providence, Mahe, Seychelles

| DATE OF APPOINTMENT | FULL NAME | NATIONALITY (In the case of a Body Corporate its place of Registration) | DATE OF BIRTH (In the case of a body corporate, its date of registration.) | ADDRESS (In the case of a body corporate, its date of Incorporation or registration.) | BUSINESS OCCUPATION | DATE OF RESIGNATION |
|---|---|---|---|---|---|---|
| 6 Dec 2017 | ALAIN FRANCOIS V. GOETZ | Belgian | 24 Apr 1965 | VILLA 39, FROND N PALM JUMEIRAH DUBAI, UNITED ARAB EMIRATES | | |

Printed: 06/12/2017

DRC-04996 0586

Notes:
Company shall keep its Register of Directors at its registered office in Seychelles and shall ensure that the information required to be kept in its Register of Directors is accurate and up-to-date. A company that contravenes the requirement to keep ... of Directors in accordance with section 150(1) or (2) of the International Business Companies Act 2016 (the 'Act') shall be liable to a penalty fee of US$500 and an additional penalty fee of US$50 for each day or part thereof during which ... ontion continues. A director who knowingly permits a contravention of the requirement to keep a Register of Directors in accordance with section 150(1) or (2) of the Act shall be liable to a penalty fee of US$500 and an additional penalty ... r each day or part thereof during which the contravention continues.

Exhibit 8 Part 3

Company Name:    AGR International Ltd.
Certificate:     200304
Incorporated:    06/12/2017
Registered Office:   Global Gateway 8, Rue de la Perle, Providence, Mahe, Seychelles

| NAME OF MEMBER | ADDRESS | DATE ENTERED AS A MEMBER | SHARE LEDGER NUMBER | NUMBER OF SHARES HELD | DESCRIPTION OF SHARES | DATE CEASED TO BE A MEMBER | COMMENTS |
|---|---|---|---|---|---|---|---|
| ALAIN FRANCOIS V. GOETZ | VILLA 39, FROND N PALM JUMEIRAH DUBAI, UNITED ARAB EMIRATES | 6 Dec 2017 | 1 | 150000 | Ordinary shares of 1 USD each | | |

Printed:  06/12/2017

Notes
The Company shall keep its Register of Members at its registered office in Seychelles and shall ensure that the information required to be kept in its Register of Members is accurate and up-to-date. A company that contravenes the requirement to keep a Register of Members in accordance with section 104(1) or (2) of the International Business Companies Act 2016 (the 'Act') shall be liable to a penalty fee of US$500 and an additional penalty fee of US$50 for each day, or part thereof during which contravention continues. A director who knowingly permits a contravention of the requirement to keep a Register of Members in accordance with section 104(1) or (2) of the Act shall be liable to a penalty fee of US$500 and an additional penalty US$50 for each day or part thereof during which the contravention continues.

DRC-34906 0587

Exhibit 8 Part 3



**AGR International Ltd.**

Incorporated in Republic of Seychelles
under the International Business Companies Act, 2016

No. of Certificate: *1*

No. of shares: *150,000*

**THIS IS TO CERTIFY** that *ALAIN FRANCOIS V. GOETZ* of *VILLA 39, FROND N PALM JUMEIRAH DUBAI, UNITED ARAB EMIRATES* is the Registered Proprietor of *One Hundred and Fifty Thousand (150,000)* Shares of *US$1.00* each in the above-named Company subject to the Memorandum and Articles of Association thereof.

Dated this *06th day of December 2017*

ALAIN FRANCOIS V. GOETZ
Director
AGR International Ltd.

DRC-34996 0588

Exhibit 8 Part 3

# Annex L

DRC-34996 0589

⟨Formuller IV⟩ 

Exhibit 8 Part 3

ff;,l;l:Jtf;,-;, .           , JІ',a C.



Intended for the Belgian Official Gazette

AKTEN and EXCEPTIONS from AKTEN shall be published ın the b1Jlagen lot hel belgian official journal

together with a copy of the clerk's report

1 InschnJvmg

Register of European econom1cooperatives Register of

economic cooperatives Register of agricultural companies

Register of civillllJlc companies that have taken the form of a hande/society

Register of foreign companies not covered by the provisions of articles 81 and 82 of the Code of Companies.

2. F1rma or special name of the company or of the
,ım,,wec̲ k̲ m̲ g̲ ,''''°'l̲o̲ ̲ s̲ d̲ ,'''''''  l̲,l̲ea̲ b̲ li̲ k̲l̲ ̲l̲

Birchrode

3 Legal form (in full)

Private Limited Liability Company Jacob Jacobsstraat 56,

4 Zelel (municipality, street, number)

2018 Antwerp

5. Trade Register

6. V.A.T.

7 Subject of the deed

### ESTABLISHMENT - APPOINTMENTS

It appears from a deed executed before Meester Koen De Raeymaecker, notary public with registered office in Antwerp, on 22/11/2002, that the private limited liability company Berkenrode, whose registered office is at Jacob Jacobsstraat 56, 2018 Antwerp, has been incorporated. The company is incorporated for an unlimited period from the date of deposit of the extract from the deed of incorporation at the office of the Commercial Court. The purpose of the company is to perform management, consulting, management and investment activities. These activities include, but are not limited to, the performance of management functions in various companies, the conclusion of consulting agreements, the performance of consulting functions in an independent manner and the provision of advice, assistance and direction to companies, individuals and institutions. The company may also provide, develop and deliver all services and advices related to the aforementioned activities, as well as organise trainings and mcentives. Providing operational services and advices in financial and strategic management, general and organisational management for commercial companies, financial control and management accounting, administrative organisation and personnel management. D1enstverlening to companies or individuals for integrat1on (relocation service), this can relate both to the provision of accommodation and to the provision of information and guidance. With broadcasting of the activities

# Exhibit 8 Part 3

and operations legally reserved for deposited banks, holders of short term deposits, savings banks, mortgage companies, capital companies, asset management companies and investment advisory companies: a) acquiring, by subscription or purchase and managing shares, bonds, savings bonds or other transferable securities and securities, of whatever form, of Belgian or foreign companies, whether existing or to be incorporated; b) promoting the incorporation of companies by contribution, participation or investment; c) acting as intermediary in negotiations for the total or partial acquisition of shares; in the broadest sense, participating in the issue of shares and fixed-income securities by subscription, deposit, negotiation or otherwise, and carrying out any transaction relating to portfolio management or capital management and investments of all kinds;

d) participating in and observing all management tasks, exercising mandates and functions in other companies or enterprises; e) leasing or renting, whether or not under the VAT system, purchase and sale of movable and immovable property and rights; as well as all activities related to real estate leasing; f) developing, buying, selling, taking in licentie or giving patents, know-how and related intangible durable assets; g) concluding life annuity agreements as well as making periodic payments and implementing pension schemes; h) granting or taking out loans and credit facilities, whether or not secured by mortgage, providing securities, also for debts of third parties, including mortgage security on goods belonging to the company for debts to third parties, to one or more of its sister companies or subsidiaries, or for debts of third parties, of (other) natural persons or legal entities, as well as coöperating on a principal or surety basis with the company.(other) natural persons or legal entities, as well as co-bonding and guaranteeing such debts, 1). the provision of advice of a financial, technical, commercial or administrative nature, in the broadest sense, with the exception of advice concerning be!assistance and services, directly or indirectly in the fields of administration and finance, sales, production and general management; the provision of all services and the execution of all assignments and in the form of organizational studies, expertises, The company may in no way perform asset management or investment advice as referred to in Book IV of the law of December 4, 1990 on financial transactions and markets and the Royal Decree on asset management and investment advice of August 5, 1991, 1ndustrial, immovable, movable and f1nanc1el nature, that are directly or indirectly related or connected with this do! The company may achieve its object both in Belgium and abroad in all manners and methods it deems most appropriate,The shareholders declare and acknowledge that all and each of the shares are fully paid up so that the aforementioned sum is at the disposal of the company as from the filing of the deed of incorporation at the clerk's office of the commercial court. The obligation to make such withdrawals ceases when the reserve fund reaches 1/10th of the share capital. The remaining profit is allocated as follows

# Exhibit 8 Part 3

The balance of the liquidation will be divided among the partners in accordance with their respective shares, each share carrying an equal right. Any remaining balance will be divided between the partners in the same proportion, without any partner being obliged to pay more than he has contributed to the company. The company is managed by 88 one or more managers, who may or may not be partners. Each manager represents the company in and out of court. The annual meeting must be convened each year on the third Wednesday of May at 5 p.m. and for the first time in two thousand and four. If that day is a public holiday, the meeting will be held on the next working day. The financial year of the company begins on the first of January and ends on the first of December. The first financial year ends on December 88, two thousand and three. Mr Alain Goetz and Ms Sandra Weyler, domiciled at 25, Ruiterslaan, 2110 Wijnegem, are hereby appointed managers for the duration of the company. Power of attorney is granted to Mrs. Inge Van Roy, at 2830 Willebroek, Bezefaerstraat 27, with the right of indexation for registration in the commercial register and VAT and all other administrative matters.
--- FOR DISSECTING EXCERPT ---

Master Koen De Raeymaecker, notary public.
TegeliJk h1er filed. exped1tion of the deed and bank attestation,

DRC-34996 0592

# Exhibit 8 Part 3

(Formulier IV)

*02144787*

Bestemd voor het Belgisch Staatsblad

Neergelegd ter griffie van de rechtbank van koophandel

te ANTWERPEN.          26 NOV 2002

op

Bestemd voor de rechtbank

AKTEN en UITTREKSELS uit AKTEN bekend te maken in de bijlagen tot het BELGISCH STAATSBLAD

samen met een afschrift ter griffie neer te leggen

Bijlagen bij het Belgisch Staatsblad - 03/12/2002 - Annexes du Moniteur belge

| | |
|---|---|
| 1 Inschrijving | Register van de burgerlijke vennootschappen die de vorm van een handelsvennootschap hebben aangenomen |
| Register van de Europese economische samenw.verbanden | Register van de buitenlandse vennootschappen die niet vallen onder het voorschrift van artikelen 81 en 82 van het Wetboek van vennoot-schappen |
| Register van de economische samenwerkingsverbanden | |
| Register van de landbouwvennootschappen | |
| 2. Firma of bijzondere naam van de vennootschap of van het samenwerkingsverband (zoals deze uit de statuten blijkt) | Berkenrode |
| 3 Rechtsvorm (voluit) | Besloten Vennootschap met Beperkte Aansprakelijkheid |
| 4 Zetel (gemeente, straat, nummer) | Jacob Jacobsstraat 56, 2018 Antwerpen |
| 5. Handelsregister | X/73.390 |
| 6. B.T.W | |

## 7 Onderwerp van de akte

### OPRICHTING - BENOEMINGEN

ER BLIJKT uit een akte verleden voor Meester Koen De Raeymaecker, notaris met standplaats te Antwerpen, op 22/11/2002, dat werd opgericht de besloten vennootschap met beperkte aansprakelijkheid Berkenrode met zetel te Jacob Jacobsstraat 56, 2018 Antwerpen. De vennootschap is opgericht voor onbepaalde duur te rekenen vanaf de neerlegging van het uittreksel uit de oprichtingsakte op de griffie van de rechtbank van koophandel. De vennootschap heeft tot doel Het uitoefenen van management, consulting-, beheers-en beleggingsactiviteiten. Deze activiteiten omvatten ondermeer, zonder dat deze opsomming beperkend is, het uitoefenen van managementfuncties in diverse ondernemingen, het sluiten van consultingovereenkomsten, het uitoefenen van consultingfuncties op onafhankelijke wijze en het verlenen van advies, bijstand en leiding aan bedrijven, privé-personen en instellingen.De vennootschap mag tevens alle diensten en adviezen inzake voormelde activiteiten verschaffen, ontwikkelen en leveren, alsook overgaan tot het organiseren van opleidingen en incentives Het voorzien van operationele services en advies in financieel en strategisch management, in algemeen en organisatorisch management voor commerciële bedrijven, in financial control en management accounting, in administratieve organisatie alsook in personeel management. Dienstverlening aan bedrijven of individuele personen voor integratie (relocation service), dit kan zowel betrekking hebben op het vinden van huisvesting als op het verlenen van informatie en begeleiding. Met uitzondering van de activiteiten

Nummer van de check
Nummer bankrekening  220-0260231-16

DRC-34996 0593

Exhibit 8 Part 3

Bijlagen bij het Belgisch Staatsblad - 03/12/2002 - Annexes du Moniteur belge

en verrichtingen die wettelijk voorbehouden zijn aan depositobanken, houders van deposito's op korte termijn, spaarkassen, hypotheekmaatschappijen, kapitalisatie-ondernemingen, ondernemingen voor vermogensbeheer en beleggingsadvies: a) het verwerven, door inschrijving of aankoop en het beheren van aandelen, obligaties, kasbons of andere roerende waarden en effecten, van welke vorm ook, van Belgische of buitenlandse, bestaande of nog op te richten vennootschappen; b) het bevorderen van de oprichting van vennootschappen door inbreng, participatie of investering; c) het optreden als tussenpersoon bij onderhandelingen door gehele of gedeeltelijke overname van aandelen; in de meest ruime betekenis, het deelnemen aan emissieverrichtingen van aandelen en vastrentende waarden door intekening, waarborgplaatsing, verhandeling of anderszins, alsmede het verwezenlijken van om het even welke verrichtingen inzake portefeuille-of kapitaalbestuur en beleggingen van allerlei aard; d) het deelnemen in en het waarnemen van alle bestuursopdrachten, het uitoefenen van mandaten en functies in andere vennootschappen of ondernemingen; e) het verhuren of huren al of niet onder het BTW-stelsel, aan-en verkoop van roerende en onroerende goederen en rechten; alsmede alle activiteiten die betrekking hebben op onroerende leasing; f) het ontwikkelen, kopen, verkopen, in licentie nemen of geven van octrooien, know-how en aanverwante immateriële duurzame activa; g) het afsluiten van lijfrente-overeenkomsten alsmede het doen van periodieke uitkeringen en uitvoeren van pensioenregelingen; h) het toestaan of opnemen van leningen en kredietopeningen, al dan niet onder hypothecair verband, het verstrekken van zekerheden, ook voor schulden van derden, waaronder begrepen hypothecaire zekerheid op haar toebehorende goederen voor schulden aan derden, aan één of meer van haar zuster-of dochtervennootschappen, dan wel voor schulden van derden, van (andere) natuurlijke personen of rechtspersonen, alsmede het zich hoofdelijk of als borg medeverbinden en aval verlenen voor die schulden, i). het verlenen van adviezen van financiële, technische, commerciële of administratieve aard, in de ruimste zin, met uitzondering van adviesverschaffing inzake beleggingen en geldplaatsingen; bijstand en diensten verlenen, rechtstreeks of onrechtstreeks op het vlak van administratie en financiën, verkoop, productie en algemeen bestuur; het verlenen van alle dienstprestaties en het uitvoeren van alle opdrachten onder de vorm van organisatiestudies, expertises, technische handelingen en raadgevingen of andere op eender welk vlak binnen het maatschappelijk doel. De vennootschap mag geenszins aan vermogensbeheer of beleggingsadvies doen zoals bedoeld in boek IV van de wet van 4 december 1990 op de financiële transacties en de financiële markten en het Koninklijk Besluit over het vermogensbeheer en het beleggingsadvies van 5 augustus 1991. Bovenvermelde opsomming is niet beperkend zodat de vennootschap alle handelingen kan stellen van commerciële, industriële, onroerende, roerende en financiële aard, die rechtstreeks of onrechtstreeks met dit doel verwant zijn of verknocht zijn of op welke wijze ook kunnen bijdragen tot de verwezenlijking van dit doel. De vennootschap mag haar doel verwezenlijken zowel in België als in het buitenland op alle wijzen en manieren die zij het best geschikt zou achten. Het geheel geplaatste maatschappelijk kapitaal bedraagt twintigduizend euro (20.000,00 EUR) verdeeld in tweehonderd gelijke aandelen zonder aanduiding van waarde, welk volledig en onvoorwaardelijk onderschreven is. De oprichters verklaren en erkennen dat alle en elk der aandelen volgestort zijn zodat de voormelde som ter beschikking is van de vennootschap vanaf de neerlegging van de oprichtingsakte op de griffie van de rechtbank van Koophandel. Jaarlijks wordt van de nettowinst een bedrag van ten minste 1/20ste afgenomen voor de vorming van een reservefonds; de verplichting tot deze afneming houdt op wanneer het reservefonds 1/10de van het maatschappelijk kapitaal heeft bereikt. De overige winst krijgt de bestemming die

# Exhibit 8 Part 3

Bijlagen bij het Belgisch Staatsblad - 03/12/2002 - Annexes du Moniteur belge

de jaarvergadering haar zal geven, beslissend bij meerderheid van stemmen op voorstel van de zaakvoerder(s) Het batig saldo van de vereffening zal verdeeld worden onder de vennoten, in overeenstemming met hun respectievelijke aandelen, elk aandeel brengt immers een gelijk recht met zich mee. Het eventuele verlies zal in dezelfde verhouding verdeeld worden tussen de vennoten, zonder dat nochtans een vennoot verplicht kan worden meer te storten dan hetgeen hij in de vennootschap heeft ingebracht. De vennootschap wordt bestuurd door één of meer zaakvoerders, al dan niet vennoot. Iedere zaakvoerder vertegenwoordigt de vennootschap in en buiten rechte. De jaarvergadering moet ieder jaar worden bijeengeroepen op de derde woensdag van de maand mei om 17u00 en voor de eerste maal in tweeduizend en vier indien die dag een wettelijke feestdag is wordt de vergadering de eerstvolgende werkdag gehouden. Het boekjaar van de vennootschap gaat in op één januari en eindigt op één en dertig december. Het eerste boekjaar eindigt op één en dertig december tweeduizend en drie. Tot zaakvoerder wordt benoemd voor de duur van de vennootschap: De heer Alain Goetz en mevrouw Sandra Weyler, samenwonende te 2110 Wijnegem, Ruiterslaan 25. Het mandaat is statutair onbezoldigd. Volmacht wordt verleend aan mevrouw Inge Van Roy, te 2830 Willebroek, Bezelaerstraat 27, met recht van indeplaatsstelling voor de inschrijving in het handelsregister en de BTW en alle andere administratieve aangelegenheden.

--- VOOR ONTLEDEND UITTREKSEL ---

Meester Koen De Raeymaecker, notaris.
Tegelijk hiermee neergelegd, expeditie van de akte en het bankattest,

DRC-34996 0595

# Exhibit 8 Part 3 <sup>Mod 2.0</sup>



Submitted to the Belgian Official Journal

Liege B

*09305230*

To be published in the annexes to the Moniteur belge, copy after deposit at the Registry of the act

Deposited

04-12-2009

Regist

Company no :

Designation

(in full) : **BERKENRODE**

Legal form : **Limited liability company** Registered office : 2018 Antwerp, Jacob Jacobsstraat 56

**Subject deed** : **Modification**

The minutes of the extraordinary general meeting held before Frederik Jorissen, notary public in Antwerp, at his office, on the second of December, two thousand and nine, show that the following resolutions were passed unanimously:

1/ Change the name to "ALAXY" .

2/ Transfer of the registered office to 2100 Antwerp (Deurne), Santvoortbeeklaan 21-23. 3/ Adoption of the new coordinated text of the Articles of Association.

4/ Authorization for the undersigned notary to carry out the formalities of publication and modification of registration in the Register of Legal Entities of the Crossroads Bank for Enterprises. Also appointed as special proxy: Mrs. Inge VAN ROY, residing at 2830 Blaasveld, Bezelaerstraat 27, in order to fulfil all formalities in the name of and on behalf of the company at the registry of the commercial court, at the enterprise offices, the VAT administration and all other fiscal and administrative authorities.

For dissecting excerpt
Notary Frederik Jorissen

Annexes to the Moniteur belge - 08/12/2009 - Annexes du Moniteur belge

# Exhibit 8 Part 3

Mod 2.0



**Luik B**    **In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

Voor-behouden aan het Belgisch Staatsblad

*09305230*



Neergelegd
04-12-2009

Griffie

Ondernemingsnr :
**Benaming**
(voluit) : **BERKENRODE**

Rechtsvorm : Besloten vennootschap met beperkte aansprakelijkheid

Zetel : 2018 Antwerpen, Jacob Jacobsstraat 56

**Onderwerp akte** : **Modificatie**

Uit het proces-verbaal van de buitengewone algemene vergadering gehouden voor notaris Frederik Jorissen te Antwerpen, in zijn kantoor, op twee december tweeduizend negen, blijkt dat met eenparigheid volgende beslissingen werden genomen :
1/ Wijzing van de naam in "ALAXY" .
2/ Verplaatsing van de zetel naar 2100 Antwerpen (Deurne), Santvoortbeeklaan 21-23.
3/ Vaststelling van de nieuwe gecoördineerde tekst van de statuten.
4/ Machtiging van ondergetekende notaris om zorg te dragen voor de formaliteiten van openbaarmaking en wijziging van inschrijving in het rechtspersonenregister van de Kruispuntbank van Ondernemingen. Tevens wordt tot bijzondere volmachtdrager aangesteld: mevrouw Inge VAN ROY, wonende te 2830 Blaasveld, Bezelaerstraat 27, teneinde alle formaliteiten in naam en voor rekening van de vennootschap te vervullen ter griffie van de rechtbank van koophandel, bij de ondernemingsloketten, de BTW-administratie en alle overige fiscale en administratieve besturen.

Voor ontledend uittreksel
Notaris Frederik Jorissen

Bijlagen bij het Belgisch Staatsblad - 08/12/2009 - Annexes du Moniteur belge

Op de laatste blz. van Luik B vermelden : Recto : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
Verso : Naam en handtekening.

DRC-34996 0597

Exhibit 8 Part 3

# Annex M

DRC-34996 0598

# Exhibit 8 Part 3

Mod 2.0

Luik B    In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte

Voor-behouden aan het Belgisch Staatsblad

*08302753*



Submitted
17-09-2008

Griffie

Bijlagen bij het Belgisch Staatsblad - 19/09/2008 - Annexes du Moniteur belge

Company No. : 0806408906

Name (in full) : **CG - Vastgoed Invest**

Legal Form : Public limited Company

Address : 2018 Antwerpen, Jacob Jacobsstraat 56

Subject of Act : **Incorporation**

From a deed executed before Notary Frederik Jorissen in Antwerp on the seventeenth of September two thousand and eight, at his office, it appears that a company has been established with the following characteristics:

LEGAL FORM AND NAME: Limited liability company with the name "CG - Vastgoed Invest". Address: 2018 Antwerp, Jacob Jacobsstraat 56; RPR Antwerp.

DURATION: The company is incorporated for an unlimited duration.

FOUNDERS: 1. Mr. GOETZ Alain François Viviane, residing at 2340 Luxembourg, Rue Philippe II 1, GREAT HERTOGDOM LUXEMBOURG, of Belgian nationality. 2. Mr. GOETZ Sylvain, residing at 2900 Schoten, Alfons Servaislei 96.

CAPITAL: one hundred and fifty thousand euros (EUR 150,000), paid up in full into a special account with KBC Bank, represented by 150 shares without nominal value, subscribed for half each by the aforementioned founders.

Compliance with the legal requirements for placing and paying up the capital was confirmed by the undersigned notary public.

FINANCIAL YEAR: commences on the first of January and ends on the thirty-first of December; first fiscal year until the thirty-first of December, two thousand and nine.

ADJUSTMENT OF RESERVES/WINST DISTRIBUTION: Five percent of the net profit shall be taken in advance to form the legal reserve fund until it reaches one-tenth of the share capital.

The balance is used according to the decision of the general meeting.

DESTRUCTION LIQUIDATION BALDO: Company assets will first serve to satisfy creditors, and cover the costs of liquidation, which distribution will be approved in advance by the competent commercial court.

The net assets of the liquidation will be distributed among the company shares; if proofs of participation exist, they will be eligible for their share in the mass to be distributed together with the capital shares, but only after the latter have been repaid their contribution.

GOVERNANCE/COMPETENCE: The company is managed by a Board of Directors consisting of at least three members, who may or may not be shareholders. They are appointed by the general meeting for a maximum period of six years; their mandate ends at the conclusion of the ordinary general meeting. Retiring directors are eligible for reappointment at any time.

The board of directors, as a college, represents the company in all acts in and out of court. It acts by the majority of its members. Without prejudice to the general power of representation of the board of directors as a college, the company shall be validly represented vis-à-vis third parties by one managing director acting alone. The body representing the company in accordance with this article may appoint proxies. Only special and limited powers of attorney for certain or a series of certain legal acts are permissible. These proxies bind the company within the limits of the power of attorney granted to them.

The number of directors is set at two and directors are appointed for a period of six years:

1.      The private limited liability company "BERKENRODE", with registered office in 2018 Antwerp, Jacob Jacobsstraat 56, registered in the Register of Legal Entities with enterprise number 0478.862.274, with permanent representative Mrs. WEYLER Sandra Christiane Henri, residing at

DRC-34984

# Exhibit 8 Part 3

2900 Schoten, Erikadreef 2A.

2.    The limited liability company "WORLDWIDE CONSULTING", with its registered office at 2018 Antwerp, Jacob Jacobsstraat 56, registered in the Register of Legal Entities in Antwerp with Company No. 478.862.175, with the aforementioned Mr. GOETZ Sylvain aforementioned as permanent representative.

The mandate of the directors will be unremunerated until otherwise decided by the general meeting.

COMMISSIONER: In accordance with the possibility provided for in Article 21 of the Articles of Association, no statutory auditor has been appointed.

PURPOSE: The objects of the company are :

The investment in, subscription for, firm takeover, placement, purchase, sale and trading of shares, units, bonds, warrants, certificates, claims, funds and other transferable securities, issued by Belgian or foreign companies, whether or not in the form of trading companies, administrative offices, institutions and associations, whether or not with a (semi-)public legal status

) public law status;

Managing investments and participations in subsidiaries, acting as director, providing advice, management and other services to or in accordance with the company's own activities. These services may be provided pursuant to contractual or statutory appointments and in the capacity of external counsel or body of the client;

Providing loans and advances under any form or duration, to all affiliated companies or companies in which it holds a participation, as well as guaranteeing all commitments of the same companies.

This enumeration is not exhaustive and the terms asset management or advice mentioned in these Articles of Association are activities other than those referred to by the Law of April six, nineteen hundred and ninety-five concerning secondary markets, the status and supervision of investment companies, intermediaries and investment advisors.

To this end, the company may cooperate with, participate in, or in any way, directly or indirectly, take interests in other companies.

The company may act as guarantor both for its own commitments and for the commitments of third parties, including by mortgaging or pledging its assets, including its own business.

The company may also act as director, proxy, agent or liquidator in other companies or businesses.

In general, the company may perform any commercial, industrial, financial, movable or immovable acts directly or indirectly related to its corporate purpose or which are likely to facilitate the achievement thereof in whole or in part

The purpose of the company is to operate, in Belgium and abroad, a real estate company. Buying, selling, exchanging real estate, subdividing building land, renting, letting, building and renovating, managing real estate and movable property for its own account. Acting as construction promoter and coordinator. Building, converting, subdividing, building promotion and project development in the real estate sector. The company may, in general, perform all commercial, industrial, financial, movable and immovable actions that are directly or indirectly related to its corporate purpose, or that are of a nature to facilitate or extend the achievement thereof, and that are necessary, useful or even conducive thereto. Furthermore, the company may take an interest, whether by means of participation, contribution or any other means, in all companies, enterprises, economic partnerships, professional associations or groupings, existing or to be incorporated, both in Belgium and abroad, which pursue an identical, complementary or similar purpose, or which are of a nature to promote the development of its business. The company may participate, in any form, in the creation, expansion, conversion, merger, absorption, management and control of companies having similar, related or complementary activities. It may also provide any assistance to companies in which it has an interest, including in the form of loans, advances or guarantees, as well as assistance with management and/or administration. Accordingly, the company may, with or without remuneration, act as director, proxy holder, mandatary or liquidator in other companies, act as guarantor for third parties, managers and partners, as well as grant them loans, advances and credits, with or without collateral and/or personal guarantees, subject to the relevant legal restrictions.

The above enumeration is only indicative and by no means exhaustive. The general meeting of shareholders may interpret, explain and extend the purpose of the company, subject to compliance with the relevant legal rules.

To this end, the company may cooperate with, participate in, or in any way, directly or indirectly, take an interest in other enterprises.

The company may act as guarantor both for its own commitments and for the commitments of third parties, including by mortgaging or pledging its assets, including its own business.

DRC-3499.0.0.0.0 general, the company may carry out any commercial, industrial, financial, movable or immovable transaction directly or indirectly related to its corporate purpose or which is likely to facilitate the

# Exhibit 8 Part 3

achievement thereof in whole or in part.

REGULAR GENERAL MEETING: on the third Friday of the month of May at eighteen o'clock; if that day is a holiday, the meeting shall be held on the next working day

Ordinary, special and extraordinary general meetings are held at the company's registered office or at any other place in the municipality where the company is located, designated in the notice of meeting.

To be admitted to a general meeting, shareholders must give notice of their intention to participate in the meeting at least five days before the date of the meeting by ordinary letter addressed to the company's registered office.

Each share is entitled to one vote.

SPECIAL POWER OF ATTORNEY: The undersigned notary is authorized to take care of the formalities of publication and registration of the company in the Register of Legal Entities. Special power of attorney is also granted to Mr. Freddy SOLLIE, residing at 2870 Puurs, Hof Ter Bollen 45, to carry out all present and future formalities in the name of and on behalf of the company with the enterprise offices, VAT administration, and all other fiscal and administrative administrations.

Board of Directors

The two directors immediately met in board of directors in order to appoint, subject to the acquisition of legal personality by the company, unanimously as managing directors:

1/ The aforementioned Private Limited Liability Company "BERKENRODE", with the permanent representative of the aforementioned Ms. WEYLER Sandra.

2/ The aforementioned Private Limited Liability Company "WORLDWIDE CONSULTING", permanently represented by the aforementioned Mr. GOETZ Sylvain.

The mandate of the Managing Directors will be unremunerated.

For dissecting extracts

Notary                              Frederik                              Jorissen

# Exhibit 8 Part 3

DRC-34996 0602

# Exhibit 8 Part 3

DRC-34996 0603

# Exhibit 8 Part 3
Mod 2.0



**In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**



Neergelegd
17-09-2008

**Griffie**

Voorbehouden aan het Belgisch Staatsblad

*08302753*

*Bijlagen bij het Belgisch Staatsblad - 19/09/2008 - Annexes du Moniteur belge*

Ondernemingsnr : 0806408906

**Benaming**

(voluit) : **CG - Vastgoed Invest**

Rechtsvorm : Naamloze vennootschap

Zetel : 2018 Antwerpen, Jacob Jacobsstraat 56

<u>Onderwerp akte</u> : Oprichting

Uit een akte verleden voor notaris Frederik Jorissen te Antwerpen op zeventien september tweeduizend acht, in zijn kantoor, blijkt dat een vennootschap werd opgericht met volgende kenmerken:

<u>RECHTSVORM EN NAAM</u>: Naamloze vennootschap met de naam "CG - Vastgoed Invest".

<u>ZETEL</u>: 2018 Antwerpen, Jacob Jacobsstraat 56; RPR Antwerpen.

<u>DUUR</u>: De vennootschap is opgericht voor een onbeperkte duur.

<u>OPRICHTERS</u>: 1. De heer GOETZ Alain François Viviane, wonende te 2340 Luxembourg, Rue Philippe II 1, GROOT-HERTOGDOM LUXEMBURG, van Belgische nationaliteit. 2. De heer GOETZ Sylvain, wonende te 2900 Schoten, Alfons Servaislei 96.

<u>KAPITAAL</u>: honderdvijftigduizend euro (150.000 EUR), volledig volstort op een bijzondere rekening bij KBC Bank, vertegenwoordigd door 150 aandelen zonder nominale waarde, waarop werd ingetekend door voornoemde oprichters, ieder voor de helft.

De naleving van de wettelijke vereisten voor plaatsing en storting van het kapitaal werden door ondergetekende notaris bevestigd.

<u>BOEKJAAR</u>: vangt aan op één januari en eindigt op eenendertig december; eerste boekjaar tot eenendertig december tweeduizend negen.

<u>AANLEG RESERVES/WINSTVERDELING</u>: Van de nettowinst wordt vijf procent vooraf genomen voor de vorming van het wettelijke reservefonds, totdat die één/tiende van het maatschappelijk kapitaal bedraagt. Het saldo wordt aangewend volgens de beslissing van de algemene vergadering.

<u>BESTEMMING LIQUIDATIESALDO</u>: Het vennootschapsvermogen zal eerst dienen om de schuldeisers te voldoen, en de kosten van de vereffening te dekken, welke verdeling vooraf door de bevoegde rechtbank van koophandel zal worden goedgekeurd.

Het netto actief van de vereffening wordt verdeeld onder de maatschappelijke aandelen; indien bewijzen van deelgerechtigheid bestaan komen deze in aanmerking voor hun deel in de te verdelen massa samen met de kapitaalaandelen, doch slechts nadat deze laatste hun inbreng kregen terugbetaald.

<u>BESTUUR/BEVOEGDHEID</u>: De vennootschap wordt bestuurd door een raad van bestuur, ten minste bestaande uit drie leden, al dan niet aandeelhouders. Zij worden benoemd door de algemene vergadering voor een periode van maximum zes jaar; hun opdracht eindigt bij de sluiting van de gewone algemene vergadering. Aftredende bestuurders zijn steeds herbenoembaar.

De raad van bestuur is bevoegd om alle handelingen van intern bestuur te verrichten die nodig of dienstig zijn tot verwezenlijking van het doel van de vennootschap, met uitzondering van die handelingen waarvoor volgens de wet alleen de algemene vergadering bevoegd is.

De raad van bestuur vertegenwoordigt als college de vennootschap in alle handelingen in en buiten rechte. Hij handelt door de meerderheid van zijn leden. Onverminderd de algemene vertegenwoordigingsbevoegdheid van de raad van bestuur als college, wordt de vennootschap ten aanzien van derden rechtsgeldig verbonden door één gedelegeerd bestuurder alleen optredend. Het orgaan dat overeenkomstig dit artikel de vennootschap vertegenwoordigt, kan lasthebbers aanstellen. Alleen bijzondere en beperkte volmachten voor bepaalde of een reeks bepaalde rechtshandelingen zijn geoorloofd. Deze lasthebbers verbinden de vennootschap binnen de perken van de hun verleende volmacht.

Het aantal bestuurders wordt bepaald op twee en tot bestuurders worden benoemd voor een periode van zes jaar:

1. De Besloten vennootschap met beperkte aansprakelijkheid "BERKENRODE", met zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, ingeschreven in het rechtspersonenregister met ondernemingsnummer 0478.862.274, met als vaste vertegenwoordiger mevrouw WEYLER Sandra Christiane Henri, wonende te 2900 Schoten, Erikadreef 2A.

2.De Besloten vennootschap met beperkte aansprakelijkheid "WORLDWIDE CONSULTING", met zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, ingeschreven in het rechtspersonenregister te Antwerpen met

Op de laatste blz. van **Luik B** vermelden : **Recto** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

**Verso** : Naam en handtekening.

DRC-34996 0604

# Exhibit 8 Part 3

ondernemingsnummer 0478.862.175, met als vaste vertegenwoordiger de voornoemde heer GOETZ Sylvain voornoemd.

Het mandaat van de bestuurders zal onbezoldigd zijn zolang de algemene vergadering hierover niet anders beslist.

COMMISSARIS: Overeenkomstig de mogelijkheid voorzien in artikel 21 van de statuten wordt er geen commissaris benoemd.

DOEL: De vennootschap heeft tot doel :

Het beleggen, het intekenen op, vast overnemen, plaatsen, kopen, verkopen en verhandelen van aandelen, deelbewijzen, obligaties, warrants, certificaten, schuldvorderingen, gelden en andere roerende waarden, uitgegeven door Belgische of buitenlandse ondernemingen al dan niet onder de vorm van handelsvennootschappen, administratiekantoren, instellingen en verenigingen, al dan niet met een (semi-)publiekrechterlijk statuut;

Het beheren van beleggingen en van participaties in dochtervennootschappen, het waarnemen van bestuurdersfuncties, het verlenen van advies, management en andere diensten aan of in overeenstemming met de activiteiten die de vennootschap zelf voert. Deze diensten kunnen worden geleverd krachtens contractuele of statutaire benoemingen en in de hoedanigheid van externe raadgever of orgaan van de cliënt;

Het verstrekken van leningen en voorschotten onder eender welke vorm of duur, aan alle verbonden ondernemingen of ondernemingen waarin ze een participatie bezit, alsmede het waarborgen van alle verbintenissen van zelfde ondernemingen.

Deze opsomming is niet limitatief en de termen vermogensbeheer of advies in deze statuten vermeld zijn activiteiten andere dan deze bedoeld door de Wet van zes april negentienhonderd vijfennegentig inzake de secundaire markten, het statuut van en het toezicht op de beleggingsondernemingen, de bemiddelaars en de beleggingsadviseurs.

Daartoe kan de vennootschap samenwerken met, deelnemen in, of op gelijk welke wijze, rechtstreeks of onrechtstreeks, belangen nemen in andere ondernemingen.

De vennootschap kan zowel tot waarborg van eigen verbintenissen als tot waarborg van verbintenissen van derden borg stellen, onder meer door haar goederen in hypotheek of in pand te geven, inclusief de eigen handelszaak.

De vennootschap kan eveneens optreden als bestuurder, volmachtdrager, mandataris of vereffenaar in andere vennootschappen of ondernemingen.

De vennootschap kan in het algemeen alle commerciële, industriële, financiële, roerende of onroerende handelingen verrichten in rechtstreeks of onrechtstreeks verband met haar maatschappelijk doel of welke van aard zouden zijn de verwezenlijking ervan geheel of ten dele te vergemakkelijken.

De vennootschap heeft tot doel, in België en in het buitenland de uitbating van een maatschappij voor onroerende goederen. Het aankopen, verkopen, ruilen van onroerende goederen, het verkavelen van bouwgronden, het huren, verhuren, bouwen en verbouwen, het beheren van onroerende- en roerende goederen voor eigen rekening. Het optreden als bouwpromotor en coördinator. Het bouwen, verbouwen, het verkavelen, de bouwpromotie en de projectontwikkeling in de onroerende sector. De vennootschap zal in het algemeen alle commerciële, industriële, financiële, roerende en onroerende handelingen mogen verrichten die rechtstreeks of onrechtstreeks verband houden met haar maatschappelijk doel, of die van aard zijn de verwezenlijking ervan te vergemakkelijken of uit te breiden, en die daartoe noodzakelijk, nuttig of zelfs maar bevorderend zijn. De vennootschap mag daarenboven belangen nemen hetzij door deelneming, inbreng of welke andere wijze, in alle vennootschappen, ondernemingen, economische samenwerkingsverbanden, beroepsverenigingen of groeperingen, bestaande of op te richten, zo in België als in het buitenland, die een gelijkluidend, aanvullend of soortgelijk doel nastreven, of die van aard zijn de ontwikkeling van haar onderneming te bevorderen. De vennootschap is bevoegd deel te nemen onder gelijk welke vorm aan de oprichting, uitbreiding, omzetting, fusie, opslorping, het bestuur en de controle van ondernemingen met gelijkaardige, aanverwante of aanvullende activiteiten. Ze kan verder alle hulp verlenen aan ondernemingen waarin ze belang stelt onder meer in de vorm van leningen, voorschotten of borgstellingen, alsook bij wijze van bijstand inzake bestuur en of administratie. De vennootschap mag bijgevolg en al dan niet mits vergoeding optreden als bestuurder, volmachtdrager, mandataris of vereffenaar in andere vennootschappen, zich borg stellen voor derden, zaakvoerders en vennoten, evenals hun leningen, voorschotten en kredieten toestaan, met of zonder zakelijke en/of persoonlijke zekerheden, behoudens de wettelijke beperkingen ter zake.

Voornoemde opsomming is alleen aanhalend en geenszins limitatief. De algemene vergadering der vennoten kan het doel van de vennootschap uitleggen, verklaren en uitbreiden, mits zicht te schikken naar de wettelijk regels ter zake.

Daartoe kan de vennootschap samenwerken met, deelnemen in, of op gelijk welke wijze, rechtstreeks of onrechtstreeks, belangen nemen in andere ondernemingen.

De vennootschap kan zowel tot waarborg van eigen verbintenissen als tot waarborg van verbintenissen van derden borg stellen, onder meer door haar goederen in hypotheek of in pand te geven, inclusief de eigen handelszaak.

De vennootschap kan in het algemeen alle commerciële, industriële, financiële, roerende of onroerende handelingen verrichten in rechtstreeks of onrechtstreeks verband met haar maatschappelijk doel of welke van aard zouden zijn de verwezenlijking ervan geheel of gedeeltelijk te vergemakkelijken.

GEWONE ALGEMENE VERGADERING: op de derde vrijdag van de maand mei  om achttien uur; indien die dag een feestdag is, wordt de vergadering gehouden op de eerstvolgende werkdag.

Bijlagen bij het Belgisch Staatsblad - 19/09/2008 - Annexes du Moniteur belge

# Exhibit 8 Part 3

De gewone, de bijzondere en de buitengewone algemene vergaderingen worden gehouden in de zetel van de vennootschap of in elke andere plaats van de gemeente waar de vennootschap is gevestigd, aangewezen in de oproeping.

Om tot een algemene vergadering toegelaten te worden moeten de aandeelhouders uiterlijk vijf dagen voor de datum van de vergadering kennis geven van hun voornemen om aan de vergadering deel te nemen bij gewone brief, te richten aan de zetel van de vennootschap.

Elk aandeel geeft recht op één stem.

BIJZONDERE VOLMACHT: Ondergetekende notaris wordt gemachtigd om zorg te dragen voor de formaliteiten van openbaarmaking en inschrijving van de vennootschap in het rechtspersonenregister. Tevens wordt bijzondere volmacht verleend aan de heer Freddy SOLLIE, wonende te 2870 Puurs, Hof Ter Bollen 45, om alle huidige en latere formaliteiten te vervullen in naam en voor rekening van de vennootschap bij de ondernemingsloketten, BTW-administratie, en alle overige fiscale en administratieve besturen.

## Raad van bestuur

De beide bestuurders zijn terstond bijeengekomen in raad van bestuur teneinde, onder voorbehoud van de verwerving van de rechtspersoonlijkheid door de vennootschap, met eenparigheid te benoemen tot gedelegeerd bestuurders:

1/ De voormelde Besloten vennootschap met beperkte aansprakelijkheid "BERKENRODE", met als vaste vertegenwoordiger voornoemde mevrouw WEYLER Sandra.

2/ De voormelde Besloten vennootschap met beperkte aansprakelijkheid "WORLDWIDE CONSULTING", met als vaste vertegenwoordiger voornoemde heer GOETZ Sylvain.

Het mandaat van de gedelegeerd bestuurders zal onbezoldigd zijn.


Voor ontledend uittreksel
Notaris Frederik Jorissens

Bijlagen bij het Belgisch Staatsblad - 19/09/2008 - Annexes du Moniteur belge

Exhibit 8 Part 4

# Annex M

DRC-34996 0607

*Share Purchase and Sale Agreement*

*between*

Mr Alain Goetz

*and*

AGR International Limited

08 February 2018







DRC-34996 0608

# Exhibit 8 Part 4

**THIS SHARE PURCHASE AND SALE AGREEMENT** (this *"Agreement"*) is entered into on 08th of February 2018 in Entebbe, Uganda

*between*

(1) **AGR INTERNATIONAL LTD,** a company duly incorporated under the International Business Companies Act 0f 2016 with registered office address at Global Gateway 8, Rue de la Perle, Providence, Mahe, Seychelles, represented herein by its sole shareholder and director, Mr. Majd Mohammed Abdulaziz Mousa (the "Buyer").

(2) **Mr. Alain Goetz,** Belgium national, having its residential address at Frond N, villa 39, Palm Jumeirah, PO Box 64701, Dubai (the "Seller"),

and

(3) **AFRICAN GOLD REFINERY LIMITED,** a company organized under the laws of the Republic of Uganda, having its corporate address at Sebugwawo Road, Entebbe Kampala, Uganda (the "Company")

(individually a *"Party"* and together the *"Parties"*).

## RECITALS

*Whereas,*

a) The Company is a private limited company incorporated in the Republic of Uganda with an authorised share capital of Five Million Ugandan Shillings (UGX 5,000,000) divided into 100 ordinary shares with a par value of Fifty Thousand Ugandan Shillings (UGX 50,000), of which 100 ordinary shares of have been fully paid-up or credited as fully paid-up.

b) The Seller owns 99% of the issued and outstanding share capital (being 99 shares) in the Company.

c) The Seller wishes to sell to the Buyer, and the Buyer wishes to purchase from the Seller, an aggregate of 99 shares (the "Shares") of stock of the Seller in the Company, upon the terms and conditions set forth in this Agreement.

Now, Therefore, in consideration of the mutual covenants and undertakings contained herein, the receipt and sufficiency of which the Parties to this Agreement hereby acknowledge and subject to the terms and conditions herein set forth, and with the intent to be legally bound by the terms hereof, the Parties hereto agree as follows:

## I.    DEFINITIONS AND INTERPRETATION

1.1   Unless otherwise indicated, the following terms in this Agreement shall have the meanings set forth below:

| | |
|---|---|
| **"Accounting Policies"** | means the accounting practices carried out, in all material aspects, in accordance with IFRS (or other internationally accepted accounting principles), as applicable in the Republic of Uganda. |
| **"Agreement"** | means this agreement, as varied, amended or supplemented from time to time by the parties; |
| **"Business Day"** | means a day excluding Saturdays, Sundays and public holidays (including announced ungazetted public holidays), on which banking and financial institutions are open for business in the Republic of Uganda for transaction of business of the nature required or contemplated by this Agreement; |
| **"Buyer"** | shall have the meaning set forth in the _____ this Agreement |

DRC-34996 0609

# Exhibit 8 Part 4

| | |
|---|---|
| "Claim" | means any claim arising under or in connection with this Agreement (or any related document). |
| "Closing" | shall have the meaning set forth in Section 4.1. |
| "Closing Date" | shall have the meaning set forth in Section 4.1. |
| "Company" | means AFRICAN GOLD REFINERY LIMITED, a private limited company incorporated in the Republic of Uganda and having its registered office at Sebugwawo Road, Entebbe Kampala Uganda; |
| "Encumbrance" | means any interest or equity of any person (including any right to acquire, option or right of pre-emption) or any mortgage, charge, pledge, lien, assignment, hypothecation, security interest, title retention or any other security agreement or arrangement. |
| "Governmental Authority" | means any government or political subdivision, whether federal, state, local or foreign, or any agency, commission, instrumentality or other authority of any such government or political subdivision, or any federal, state, local or foreign court or arbitrator. |
| "MOA" | means the Memorandum & Articles of Association of the Company that has been lodged with the Register of Companies in the Republic of Uganda; |
| "Parties" or "Party" | means the parties or any party to this Agreement, their heirs, estates, personal representatives, successors in title and permitted assigns; |
| "Seller" | shall have the meaning set forth in the Recitals to this Agreement. |
| "Shares" | shall have the meaning set forth in the Recitals to this Agreement. |
| "Share Purchase Price" | shall have the meaning set forth in Section 3.1. |
| "Transfer Terms" | means that all the Option Shares shall be transferred free from any encumbrances or any restriction in dealings together with all title, rights, benefits and interests attaching thereto as at the Exercise Date. |
| "UGX" | means the currency of the Republic of Uganda, the Uganda Shillings |
| "USD" | means the United States Dollar |

1.2  Words and expressions denoting the singular include the plural and vice versa.

1.3  Words and expressions denoting the whole include any part.

1.4  Words and expressions denoting any gender include all genders.

1.5  Words and expressions applicable to a natural person include any person.

1.6  A person includes its estate, heirs, personal representatives, successors in title and any other person for the time being deriving title under it.

1.7  A day, month or year means a day, month or year, as the case may be, reckoned according to the Gregorian calendar.

1.8  A statute or statutory provision includes a reference to:-

a)  (a) that statute or statutory provision; and

b)  (b) all statutory instruments or orders made pursuant to it;

as from time to time amended, extended, re-enacted or consolidated.

1.9  Any word or expression used in this Agreement which is defined in the Act shall have the meaning ascribed to them in the said Act.

1.10 A document includes the same as from time to time varied in any manner or by any power or howsoever and any document from time to time issued or executed supplemental, in addition or in substitution to it.

DRC-34996 0610

# Exhibit 8 Part 4

1.11 Headings and sub-headings are inserted for convenience only and have no legal effect.

1.12 Unless prohibited by law, no rule of construction applies to the disadvantage of the Party responsible for the preparation of this Agreement.

## 2. PURCHASE AND SALE

2.1 Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, the Seller hereby sells, assigns, transfers, conveys and delivers to the Buyer, and the Buyer hereby purchases, acquires and accepts from the Seller, free and clear of Encumbrances all of the Seller's right, title and interest in, at the time of Closing, the Shares.

2.2 The Seller hereby irrevocably waives any restrictions on transfer to the extent possible (including any of its rights of pre-emption) which may exist in relation to the Shares, whether existing under the articles of association (or local equivalent) of the Company or otherwise.

## 3. PURCHASE PRICE

3.1 The purchase price of the Shares is USD 2,200,000.00 (Two Million Two Hundred Thousand United States Dollar).

## 4. CLOSING

4.1 Subject to the terms and conditions of this Agreement, the sale and purchase of the Shares contemplated by this Agreement shall take place at a closing (the "Closing") held at the Company's office address on the date hereof (the "Closing Date"). Except to the extent expressly set forth in this Agreement to the contrary, and notwithstanding the actual occurrence of the Closing at any particular time on the Closing Date, the Closing shall be deemed to occur and be effective as of 12:01 PM on the Closing Date.

4.2 Upon the terms and subject to the conditions of this Agreement, at the Closing, the Seller shall deliver to the Buyer:

    c)   copies of the resolutions (or local equivalent) of the board of directors (or local equivalent) and, where required, the stockholder(s) of the Seller, authorizing and approving the transactions contemplated by this Agreement, certified by the respective corporate secretary (or local equivalent) or a director to be true and complete and in full force and effect and unmodified as of the Closing;

    d)   the share certificates relating to the Shares;

    e)   the share register of the Company;

    f)   a duly completed stock transfer form transferring the Shares to the Seller.

4.3 Each document of transfer or assumption referred to in this Section 4.2 (or in any related definition set forth in Article 1) that is not attached as an Exhibit or a Schedule to this Agreement shall be in customary form (including with respect to the jurisdiction to which it pertains) and shall be reasonably satisfactory in form and substance to the parties thereto, but shall not contain any representations, warranties, covenants or agreements other than those specifically contemplated in or referred to in this Agreement.

4.4 Upon the terms and subject to the conditions of this Agreement, at the Closing, the Parties shall sign the transfer of the Shares in the share register of the Company.

## 5 NOTICES

5.1 All notices and communications among the Parties shall be made in writing and in the English language by e-mail, delivery in person (including courier service) or registered airmail letter to the appropriate correspondence addresses set forth below:

**The Buyer:**

AGR INTERNATIONAL LTD
Global Gateway 8, Rue de la Perle.
Providence, Mahe, Seychelles
Attention to: Majd Mohammed Abdulaziz Mousa




# Exhibit 8 Part 4

**The Seller:**

Alain Goetz
PO Box 64701
Palm Jumeirah, Frond N, Villa 039
Dubai, United Arab Emirates

with a copy to:

**TEM ADVOCATES & SOLICITORS**
P.O. Box 6800, Kampala Uganda
Plot 11-A Acacia Avenue Kololo

or to such other address as any Party shall specify by written notice so given, and such notice shall be deemed to have been delivered as of the date so telecommunicated, personally delivered or mailed. Any Party to this Agreement may notify any other Party of any changes to the address or any of the other details specified in this paragraph; provided however, that such notification shall only be effective on the date specified in such notice or five (5) business days after the notice is given, whichever is later. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice as of the date of such rejection, refusal or inability to deliver.

5.2   Any such notice shall be deemed to be served and received,

(a) if left at any such address, at the same time when it is so left;

(b) if sent by post, forty-eight (48) hours after posting within the same country or seven (7) days after posting internationally;

(c) if sent by facsimile transmission, at the time of despatch of the facsimile transmission to the correct facsimile number;

(d) if sent by email, at the time of delivery of the email; and

(e) if sent by courier, on the second day following the day of placing it with the relevant courier services, as the case may be.

## 6   COUNTERPARTS, EFFECTIVENESS

6.1   This Agreement may be executed in two or more consecutive counterparts (including by facsimile and/or e-mail attached PDF), each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument, and shall become effective when one or more counterparts have been signed by each of the Parties and delivered (by telecopy or otherwise) to the other Parties.

## 7.   GOVERNING LAW

7.1   The execution, validity, interpretation and implementation of this Agreement and the settlement of disputes thereunder shall be governed by the laws of the Republic of Uganda. Any and all disputes arising out of or in connection with this Agreement shall be finally settled by the Courts in the Republic of Uganda.

## 8   ASSIGNMENT

8.1   No Party to this Agreement may assign any of its rights and obligations under this Agreement without the prior written consent of the other party hereto; provided, however, either party may assign its rights and obligations to one or more of its respective Wholly-Owned Subsidiaries (it being understood that such assignment shall not be permitted if it would delay or impair the consummation of the transactions contemplated hereby); provided, further, that, no such assignment shall relieve the assigning party of any of its obligations hereunder.

DRC-34996 0612

# Exhibit 8 Part 4

**9    PARTIES IN INTEREST**

9.1  This Agreement and all the provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein express or implied shall give or be construed to give to any person, other than the Parties hereto and such permitted assigns, any legal or equitable rights hereunder.

**10    ENTIRE AGREEMENT**

10.1  This Agreement (including the Schedules and Exhibits attached hereto or delivered in connection herewith) constitutes the entire agreement among the Parties hereto with respect to the matters covered by this Agreement and thereby, and supersede all previous written, oral or implied understandings among them with respect to such matters.

**11    FURTHER ASSURANCE**

11.1  After Closing, each of the Parties shall do, execute and deliver or procure to be done, executed and delivered, at the reasonable request and expense of the other Party, all such further acts, deeds, documents, instruments of conveyance, assignment and transfer and things as may be necessary to give effect to the terms of this Agreement.

**12    AMENDMENT AND MODIFICATION**

12.1  This Agreement may not be amended except by an instrument in writing signed on behalf of each of the Parties hereto.

**13    WAIVER**

13.1  Any of the terms or conditions of this Agreement may be waived at any time by the party or parties hereto entitled to the benefit thereof, but only by a writing signed by the Party or Parties waiving such terms or conditions.

**14    SEVERABILITY**

14.1  If any term, provisions, covenant or restriction of this Agreement is held by a court of competent jurisdiction (i.e. including an arbitral tribunal) or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions completed by this Agreement is not affected in any manner materially adverse to any party. Upon such determination. the parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated by this Agreement be consummated as originally contemplated to the fullest extent possible.

**15    INTERPRETATION**

15.1  Unless otherwise indicated to the contrary in this Agreement by the context or use thereof:  (i) the words, "herein," "hereto," "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Section or paragraph hereof: (ii) words importing the masculine gender shall also include the feminine and neutral genders, and vice versa; (iii) words importing the singular shall also include the plural, and vice versa; (iv) the word "including" means "including without limitation".

15.2  The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

# Exhibit 8 Part 4

## 16    REPRESENTATIONS AND WARRANTIES

16.1 All representations and warranties from the Seller to the Buyer in connection with the transfer of the Shares are set forth in Schedule 1.

16.2 All representations and warranties from the Buyer to the Seller in connection with the transfer of the Shares are set forth in Schedule 2.

16.3 Each Party irrevocably and unconditionally waives any right it may have to claim    damages    for    any misrepresentation, or breach of any warranty, not contained in this Agreement or any such collateral or supplemental agreement unless such misrepresentation or warranty was made fraudulently.

16.4 Each Party irrevocably and unconditionally waives any right it may have to rescind this Agreement.

16.5 The Buyer confirms that, as at the time of entering into this Agreement, it has no knowledge (whether actual, constructive or imputed) of any fact, matter or circumstance which might lead to any Claim against the Seller and irrevocably and unconditionally waives any right to any Claim where it has any such knowledge on or before the Closing Date.

## 17    GOVERNING LANGUAGE

17.1 The English language shall be the definitive and controlling text of this Agreement, notwithstanding the translation of this Agreement into any other language.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the day and year first above written.







Page 6 of 10

# Exhibit 8 Part 4

---

**SCHEDULE 1**
**SELLER'S REPRESENTATIONS AND WARRANTIES**

---

**1. RELATIONSHIP BETWEEN SCHEDULE 1 AND OTHER PROVISIONS OF THE AGREEMENT**

1.1 In case of any conflict between on the one hand any of the following provisions and on the other hand the previous provisions of this Agreement, the previous provisions shall prevail.

1.2 The following provisions are an integral part of the Agreement. All capitalized terms are defined in the Agreement.

**2. GENERAL REPRESENTATIONS AND WARRANTIES of the SELLER**

The Seller hereby represents and warrants to the Buyer that the following statements are true and correct as of the date hereof and shall be true as of the Closing Date:

2.1 Capacity of the Seller, and the Company.

The Seller and the Company has the full legal right and capacity to enter into this Agreement and perform its obligations hereunder.

True, correct and complete copies of all organizing documents of the Seller have been provided to the Buyer.

The Seller declares that the Company has the right and full power to enter into and perform this Agreement and that, to the Seller's knowledge, each of them does not thereby violate any applicable law or any court or arbitration decision rendered by any court (of the jurisdiction of its incorporation or otherwise) to which it may be subject or any agreement to which it is a party.

2.2 Authorization by the Company – Enforceability.

The Company has taken all actions necessary for the execution, delivery and performance of this Agreement by each of them and the consummation of the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by the Company. Assuming the due authorization, execution and delivery by the Buyer, this Agreement constitutes a valid and binding obligation of the Company enforceable against each of them in accordance with its terms.

2.3 Absence of certain conflicts.

To the Seller's knowledge, neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will (a) conflict with or result in a breach of any provision of the organizing documents of the Company; (b) require the payment or the incurring of any obligation on the part of the Company or result in a loss of rights or default (or give rise to any right of termination, cancellation or acceleration), with or without notice or lapse of time, under any of the provisions of any contract, agreement or instrument to which a Company is a party or the Shares may be bound, (c) breach or otherwise constitute a default under any agreement or undertaking binding on the Seller or the Shares or (d) violate any judgment, decree, order, injunction, or any statute, law, regulation or rule of any court or any federal, regional, provincial, municipal or other domestic or foreign Governmental Authority applicable to a Company, the Shares or any of its operations or property.

2.4 Title to Shares.

The Appendix to this Agreement sets forth the whole of the Seller's shares or interest in the Company (being the Shares) or in any subsidiary of the Company (and to the extent the Seller shall have any additional interest or shares in the Company, the same shall be included as Shares and transferred to the Buyer at Closing at no additional cost to the Buyer). The Shares have been duly authorized and validly issued and fully paid and non-assessable. None of the Shares were issued in violation of any applicable Law. The Seller shall convey to the Buyer, good and marketable title to the Shares. The Shares are and shall be held by the Buyer free and clear of all Encumbrances, charges, demands or adverse claims or other restrictions on the exercise of any of the attributes of ownership. The Seller has full voting power over the Shares, subject to no proxy, shareholders' agreement, voting trust or other agreement relating to the voting of any of the Shares other than the articles of association of the Company. As of the Closing Date no person will have any

DRC-34996 0615

# Exhibit 8 Part 4

preemptive right to purchase the Shares other than as set forth in this Agreement and/or the articles of association of the Company.

2.5 Litigation.

There are no legal proceedings now in progress, pending or, to the Seller's knowledge, threatened against the Seller which could adversely affect the validity and enforceability of the transfer of the Shares to the Buyer. The Seller is not subject to any order, writ, injunction or decree of any court or any Governmental Authority which could adversely affect the validity and enforceability of the transfer of the Shares to the Buyer.

The Company is not involved in any pending or, to the Seller's knowledge, threatened legal disputes, administrative proceedings or administrative inquiries nor are there any circumstances known to the Seller which might reasonably be expected to provide a basis for such litigation, or which might have a substantial negative impact on the Company's financial situation, unless disclosed.

2.6 Proper and valid organization.

The Company is a corporation that is duly organized and validly existing under the applicable laws of the Republic of Uganda and was properly constituted. It has its actual centre of administration at its registered office and it has no branches or representative offices, whether in Uganda or abroad; and it has all requisite corporate power and authority under applicable laws to carry on the business presently conducted by it.

The Company has at all times acted, in all material respects, in accordance with its respective articles of association and the laws and regulations of the Republic of Uganda.

2.7 Books and records.

The Company's books and records are up to date. All board meetings and shareholders meetings have been held in compliance with the applicable law and the respective minutes of the board meetings and shareholder meetings are kept and available at the Company's registered office.

2.9 No insolvency proceedings.

No insolvency or similar proceedings have been commenced or, to the Seller's knowledge, applied for in respect of the Company. The Company is not unable to pay its due debts.

2.10 Further assurances.

From time to time on or after the Closing Date, the Seller and the Buyer will execute and deliver to each other all such further assignments, endorsements and other documents as are reasonably requested in order to complete the transfer of the Shares to the Buyer, to enable the Buyer to exercise full rights as the sole owner of the Shares and to otherwise carry out the transactions contemplated by this Agreement.

2.13 Ownership rights.

Without limitation, to the extent the Seller shall have ownership interests or rights in the Company other than the Shares, such additional interests shall be conveyed to the Buyer at Closing without additional consideration due from the Buyer.







Page 8 of 10

DRC-34996 0618

# Exhibit 8 Part 4

---

**SCHEDULE 2**
**BUYER'S REPRESENTATIONS AND WARRANTIES**

---

The Buyer hereby represents and warrants to the Seller that the following statements are true and correct as of the date hereof and shall be true as of the Closing Date:

1. Buyer capacity

   a) The Buyer has the full legal right and capacity to enter into this Agreement and perform its obligations hereunder.

   b) The Buyer declares that it has the right and full power to enter into and perform this Agreement and that, to the Buyer's knowledge, it does not thereby violate any laws of the Republic of Uganda (or regulation or ruling therefore) or foreign court to which it may be subject or any agreement to which it is a party.

2. Authorization by the Buyer – Enforceability.

   a) The Buyer has taken all actions necessary for the execution, delivery and performance of this Agreement by the Buyer and the consummation of the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by the Buyer. Assuming the due authorization, execution and delivery by the Seller, this Agreement constitutes a valid and binding obligation of the Buyer enforceable against the Buyer in accordance with its terms.

3. Absence of certain conflicts.

   a) To the Buyer's knowledge, neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will (a) conflict with or result in a breach of any provision of the organizing documents of the Buyer; (b) require the payment or the incurring of any obligation on the part of the Buyer or result in a loss of rights or default (or give rise to any right of termination, cancellation or acceleration), with or without notice or lapse of time, under any of the provisions of any contract, agreement or instrument to which the Buyer is a party, (c) breach or otherwise constitute a default under any agreement or undertaking binding on the Buyer or (d) violate any judgment, decree, order, injunction, or any statute, law, regulation or rule of any court or any federal, regional, provincial, municipal or other domestic or foreign Governmental Authority applicable to the Buyer or any of its operations or property.







Page 9 of 10

DRC-34996 0617

# Exhibit 8 Part 4

**EXECUTION PAGE**

Name: Alain Goetz

Title:

Authorised for and on behalf of Seller

AGR INTERNATIONAL LTD

Name: Majd Mohammed Abdulaziz Mousa

Title: Director

Authorised for and on behalf of Buyer



Page 10 of 10

Exhibit 8 Part 4

# Annex N

DRC-34996 0619

Exhibit 8 Part 4

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (the "Agreement") is made and entered into by and between:

**AFRICAN GOLD REFINERY LTD.**, a limited liability company incorporated under the laws of the Republic of Uganda with principal office address at Sebugwawo Road, Entebbe, P.O. Box 37574 Kampala, Uganda (hereinafter referred to as the "Company");

and

**ALAIN GOETZ**, national of Belgium, residing at Palm Jumeirah, Dubai, United Arab Emirates (hereinafter referred to as the "Consultant").

The Company and the Consultant are hereinafter individually referred to as a "Party" and collectively referred to as the "Parties".

WHEREAS

A.    The Company is a well reputed gold and metal processing company, who is familiar and experiences in gold and metal processing (hereinafter referred to as the "Relevant Business");

B.    The Consultant has experience in doing business in the African Region, in particular in the Republic of Uganda (hereinafter referred to as the "Territory"). The Consultant represents to have knowledge of the local circumstances and market conditions and to have good and interesting contacts within the different institutions regarding the Relevant Business in the Territory;

C.    The Company is desirous of appointing the Consultant as its Promoter for the purposes of promoting and developing the Relevant Business in the Territory and to assist the Company in safeguarding and furthering its business interests with regard to compliance standards of the Relevant Business in the Territory;

D.    The Consultant is desirous of acting as the Promoter of the Company for the purposes of promoting and developing the Relevant Business in the Territory and to assist the Company in safeguarding and furthering its interests with regard to compliance standards of the Relevant Business in the Territory.

NOW, IT IS HEREBY AGREED AS FOLLOWS:

## 1. RECITALS

The above Recitals shall be deemed an integral part of this Agreement.

## 2. APPOINTMENT AND DURATION

2.1.    Subject to and upon the terms and conditions of this Agreement, the Company hereby appoints the Consultant as its Promoter to assist the

1 | Page                                                    PRIVATE AND CONFIDENTIAL

DRC-34996 0620

Company in safeguarding and furthering its interests with regard to compliance standards of the Relevant Business in the Territory.

2.2.    The Agreement shall commence on **10ᵗʰ of November 2018** (hereinafter referred to as the "Commencement Date") and subject to Clause 8, shall be effective and in force for an initial period of five (5) years (hereinafter referred to as the "Initial Period").

## 3. OBJECT OF THE AGREEMENT AND PROMOTER'S DUTIES

Pursuant to its obligation to provide assistance to the Company under Clause 2 and always subject to Clause 4, the Consultant shall:

3.1.    Develop, manage, coordinate, network, implement and monitor a public relations and communications strategy and associated products and activities with various audiences, with objective of promoting awareness and understanding of AGR and its activities including regulatory compliance.

3.2.    Inform the Company on the gold market situation and evolutions in the Territory as well as on new legislation and regulations bearing significant influence to tendering and/or execution of operations in the Territory.

3.3.    Inform in timely manner the Company of all and any relevant issues, data and information relating to the Relevant Business enabling the Company to evaluate the same.

3.4.    Provide the Company with such advice, information and guidance as the Company may require in relation to tendering for and the processing and award of contracts for Relevant Business in the Territory (hereinafter referred to as a "Contract").

3.5.    Introduce any natural person and/or companies to the Company as may be of assistance in award of a Contract.

3.6.    Assist and advice the Company generally, when required, on all aspects of its negotiations for the award of a Contract.

3.7.    After the award of such Contract as aforesaid, assist the Company as it may reasonably require to ensure the smooth operation thereof.

3.8.    At all times, use its best endeavours generally to promote the business of the Company and foster relationships and connections which may benefit the Company in its business and affairs in the Territory.

3.9.    Suggest to or upon request of the Company, prepare and assist visits for quality contacts in relation to the Relevant Business.

3.10.   Assist and advice the Company in relation to obtaining or renewing any required registration in the Territory and regulatory compliance of the Company as per international standards.

2 | Page                                          PRIVATE AND CONFIDENTIAL

3.11. Assist and advice the Company in relation to its dealings with government of any tier, ministries, departments, municipalities and other offices and agencies thereof or allied thereto in the Territory.

3.12. Advice the Company generally as required in connection with local maters in relation to the Relevant Business in the Territory.

## 4. RESTRICTIONS AND LIMITATIONS ON THE PROMOTER'S DUTIES

4.1. It is the intention that the Relevant Business accepted by the Company in the Territory shall be contractually awarded to the Company as principal unless the Company in any particular case in its absolute discretion decides otherwise and the Consultant in the performance of its duties hereunder shall have due regard therefore and shall raise no objection thereto.

4.2. The Consultant is not entitled to oblige the Company to bid for tenders or to accept an order, a letter of intent, a letter of award or alike from a client introduced to it by the Consultant.

4.3. The Consultant shall not, without the express prior written authority of the Company, have any power or authority under the Agreement (and shall not hold himself out as having power or authority):

4.3.1. To sign the Contract or accept orders, a letter of intent, a letter of award, or alike, to settle Company's entitlement to debts, or to accept money on behalf of the Company;

4.3.2. To give any guarantees or warranties to clients or potential clients;

4.3.3. To commit the Company to any binding obligations;

4.3.4. To commit the Company otherwise in any way.

## 5. REMUNERATION AND REIMBURSEMENT OF INCIDENTAL EXPENSES

5.1. As remuneration for the provision of the services by the Consultant, the Company shall pay to the Consultant a fee calculated as provided in the Schedule hereto. Such fee shall be deemed to cover all of the Consultant's operating expenses relative to the provision of its services under the Agreement and the Consultant shall, as a rule, not be entitled to any further or other remuneration or compensation whatsoever, be it reimbursement of expenses, fees, costs or otherwise in respect of its performance under the Agreement, except if and to the extent mutually agreed upon, beforehand and in writing between both Parties.

## 6. EXCLUSIVITY

6.1. The relationship contemplated by the Agreement regarding the Relevant Business has an exclusive character and the Consultant undertakes not to establish a similar association with any other person or Company in the

PRIVATE AND CONFIDENTIAL

DRC-34996 0622

Territory in respect of the Relevant Business while the Agreement continue in full force and effect.

6.2. The Consultant shall not, directly or indirectly, in part or in whole, alone or together with any third party, prepare or submit or take par in the preparation or submission of a tender proposal or any other offer in relation to the Contract other than in accordance with the stipulations of the Agreement.

6.3. The Consultant shall not act, either individually or as a prospective, former or actual member of the Company to participate or take any action which could conflict, or materially hinder the performance of its responsibilities under the Agreement.

6.4. The Consultant represents and warrants that by entering into this Agreement it shall not be in breach of or default under any agreement to which it is a party, or which is binding on it.

6.5. Nothing herein shall affect or restrict, however, the Company's freedom of action in respect of any business undertaken or sought by the Company outside the Territory, or any other business other than the Relevant Business undertake or sought by the Company inside the Territory.

## 7. CONFIDENTIALITY

7.1. All information acquired by a Party from the other Party, including prices and commercial or technical information, shall be treated as confidential by the recipient and shall not be used other than for the purpose contemplated by the Agreement without the prior consent in writing of such other Party unless such information:

7.1.1. is or later becomes public knowledge other than by a breach of the foregoing paragraph, or;

7.1.2. is in the possession of the recipient with the right to disclose prior to receiving it from the other Party;

7.1.3. is independently received by the recipient from a third party having the right to disclose.

7.2. These confidentiality obligations shall survive the expiry or termination of the Agreement.

## 8. TERMINATION

8.1. Notwithstanding anything to the contrary expressed or implied elsewhere herein, the Agreement may be terminated forthwith (without prejudice to the accrued rights and/or remedies of the Parties):

8.1.1. By either Party in the event of a material breach by the other of the terms and conditions of the Agreement provided that, if such breach

PRIVATE AND CONFIDENTIAL

# Exhibit 8 Part 4

is capable or remedy, then the same shall take effect until the Party not in breach shall have given 14 days' notice to the other requiring the breach to be remedied and that the other shall not have remedied the same within that period;

8.1.2.  By either Party by giving notice in writing to the other in the event that the other becomes insolvent, bankrupt or goes into liquidation for the purpose of amalgamation or reconstruction), or enters into an arrangement or composition with its creditors;

8.1.3.  By the Company in the event that the Consultant ceases to be empowered or able to perform its services under the Agreement in the Territory.

8.2.  This Agreement may also be terminated upon mutual written agreement of the Parties.

## 9.  EXTENT OF COMPANY'S LIABILITY

9.1.  The obligations of the Company under this Agreement shall be limited to the payment of fees in respect of relevant Contracts as provided in Clause 5 and the Schedule hereto.

9.2.  The Consultant shall have no right to claim a commission, as described in Clause 5, or any other compensation whatsoever in the event:

9.2.1.  The Company decided not to bid or to accept such introduced to it by the Consultant which the Company may decline for any reason, or

9.2.2.  For any reason whatsoever a Contract is not awarded to the Company or not paid to the Company.

9.3.  Nor shall any compensation be payable by virtue of the termination of this Agreement in accordance with Clause 8 hereof.

## 10.  ASSIGNMENT

10.1.  Neither of the Parties shall without the written consent of the other Party assign, charge, subcontract or otherwise encumber the Agreement or any of its rights or obligations as hereunder.

10.2.  The Company shall have the right to assign this Agreement in whole or in part to any of its holding, associated, affiliated or subsidiary companies.

## 11.  NOTICES

11.1.  Any communication by either Party shall be in writing and shall be deemed to have been sufficiently made:

11.1.1.  On the next business day after the same shall have been delivered by hand to the respective Party at the address hereinafter specified; or

5 | P a g e                                    PRIVATE AND CONFIDENTIAL

11.1.2. Five business days after being posted by registered airmail post to the address hereto specified; or

11.1.3. On the next business day after the same shall have been transmitted by mail or email to the respective Party at the address herein specified.

11.2.   For the purposes of this clause, a "business day" shall be a day on which banks are open for business in the country which the relevant communication is addressed.

## 12. MISCELLANEOUS

12.1.   The headings used in this Agreement are for convenience only and shall not be used to interpret the meaning or construction of the Agreement or any party thereof.

12.2.   All references to times or dates herein shall be construed with reference to the Gregorian calendar.

12.3.   This Agreement supersedes any previous agreements, arrangements or understandings between the Parties relating to the Relevant Business in the Territory.

12.4.   The relationship established hereby shall extend only to the Territory and shall be applicable only to the Relevant Business.

12.5.   Nothing herein shall be construed as creating a partnership between the Parties or as establishing an agency relationship and the Consultant specifically undertakes not to make representations to the contrary. For the avoidance of doubt, nothing herein shall be deemed to constitute a contract of employment.

12.6.   Nothing contemplated in this Agreement shall be construed as in any way limiting or restricting the freedom of action of any holding subsidiary, associated or affiliated company of the Company to establish separately in the Territory.

12.7.   The Parties shall at all times comply with the laws, decrees and regulations of the Territory.

12.8.   The Parties shall, in relation to this Agreement, act towards each other in the utmost good faith.

12.9.   In the event that the Company considers that the Relevant Business could, to its advantage, be developed by a close or modified association with the Consultant, then at the request of the Company both Parties will meet to attempt to work out a mutually acceptable revised basis for their cooperation and if successful in this regard the arrangements herein contained will thereupon be modified accordingly by formal written agreement signed by the Parties.

6 | P a g e                                      PRIVATE AND CONFIDENTIAL

DRC-34996 0625

# Exhibit 8 Part 4

12.10. If the Agreement is to be translated into any other language, the English language version of the Agreement shall always prevail.

## 13. GOVERNING LAW AND DISPUTE RESOLUTION

13.1. This Agreement shall be governed and interpreted in accordance with the English laws.

13.2. Parties shall use their best efforts to settle amicably any dispute arising out of or in connection with the interpretation, breach or enforcement of the Agreement.

13.3. In the event a Party is of the opinion that an amicable settlement cannot be reached, the despite shall be finally settled under the Rules of the London Court International Arbitration (LCIA) by three (3) arbitrators appointed in accordance with said Rules. The venue of arbitration shall be in DIFC-LCIA. The arbitration shall be conducted in the English language.

The Parties have caused the Agreement to be executed in two (2) parts by their duly authorized representatives this 5th day of November 2018. Each Party recognizes having reached one (1) original.

Agreed and Signed
For and on behalf of the Company

African Gold Refinery

Agreed and Signed
For and on behalf of the Consultant

Alain Goetz

PRIVATE AND CONFIDENTIAL

DRC-34996 0626

Exhibit 8 Part 4

# Annex
# O

DRC-34996 0627

# Exhibit 8 Part 4

## LAURIUS

ANTWERP – BRUSSELS

**To Whom It May Concern:**

Antwerp, 03 March 2020

Bert Luyten [13]
Dirk Wellens [13]
Michael Bollen [10]
David Ryckaert [23]
Karen Vermaere [5]
Arnaud Vanimerbeek [20]
Bob Roels [23]
Philippe Loix [23]
Eline Verelst [6]
Gerrit Hendrikx [1]
Stephanie Joris [13]
Ayse Özkan [1]
Lancelot Clément de Cléty [2]
Matthias Verschaffel [5]
Rainier Van Ghyseghem [1]
Zeno Vanregemorter [1]
Sandro Christiaens [2]
Claudia Bijnens [2]
Charlotte Wilmssen [15]
Quinten Hermans [1]

Dear Sir, Madam,

Conc.    :    Mr. Alain Goetz - Questions regarding judgement of 30 January 2020
Our ref.  :    00004694

I act as Belgian local counsel to Industrial Refining Company NV (formerly known as "Tony Goetz NV" – hereinafter "TG") and Mr. Alain Goetz.

During the legal proceedings I represented TG before the court of first instance in Antwerp, which resulted in a judgement of 30 January 2020.

Mr. Alain Goetz requested me to provide a clarification of the standpoint of TG and as well himself regarding this judgment.

The facts underlying the court's decision mainly concern cash payments by TG that took place in 2010 and 2011. At this time, Mr. Alain Goetz was still a director of TG, a company of integrity that does not cooperate in any wat in the illegal trade of gold or other precious metals and conducts its activities in accordance with all applicable rules and regulation.

TG has been an all-Belgian company for more than 30 years, with all its industrial activities exclusively located in Belgium and all employees exclusively employed in Belgium. All employees of TG comply with strict guidelines with regard to the acceptance of gold and verification of the origin of the gold and the identity of the suppliers. Worthy to note also that TG does and did not import or accept gold originating from conflict zones, nor from Venezuela, Uganda, Congo or Dubai (UAE).

We believe that the judgment is erroneous. Neither Mr. Alain Goetz nor TG breached any anti-money laundering regulations or other legislations in force at that time.

Belgian traders in precious metals are currently prohibited from paying precious metals in cash and this follows from article 67 §2 of the Act of 18 September 2017 on the prevention of money laundering and terrorist financing and on restricting the use of cash.

LAURIUS CV

Werf & Vlasnatie, Oudeleeuwenrui 19, B-2000 Antwerp T +32 3 260 88 00 - F +32 3 260 88 10
Kunstlaan / Avenue des Arts 56, B-1000 Brussels T +32 2 313 87 87 - F +32 2 313 87 88
VAT BE 0880 655 773
[1] Antwerp bar - [2] Brussels bar - [3] BV

www.laurius.be

DRC-34996 0628

# Exhibit 8 Part 4

## L A U R I U S

ANTWERP • BRUSSELS

However, the anti-money laundering regulations have been amended several times over the past decades. In 2010-2011, there was no general ban on cash payments by traders when purchasing precious metals. Indeed, the anti-money laundering regulations only imposed cash restrictions (max. €15,000) on the trader who sold a good. This means specifically that the AML regulations prohibiting cash payments were not applicable in case TG purchased precious metals. Moreover, the fact that purchase was settled in case does not imply that the origin of the funds or the purchased goods were *ipso facto* illegal.

It was therefore widespread that cash payments were made in Belgium in the gold industry for amounts in excess of 15.000 EUR. This widespread practice was based on the then existing Belgian legislation and was confirmed by various authorities. The Belgian legislation was amended in 2013 and TG has always complied with the relevant legislation in force.

Nevertheless, TG and Mr. Alain Goetz were convicted by the judgement of 30 January 2020 of money laundering in relation to certain purchases with cash payments to its customers in the period 2010-2011.

TG and Mr. Alain Goetz were hereby amongst others sentenced to a fine (up to EUR 5,500 for Mr. Alain Goetz and up to EUR 99,000 for TG) with deferment of execution for a period of three years, suspended jail term and professional ban for a period of five years and certain amounts were confiscated.

TG and Mr. Alain Goetz contest these facts and uphold that the company did not violate any law, having regard to the facts on which it is based and the regulatory framework in force at the time.

They are invariably convinced that neither he nor any person or company associated with TG has infringed any rules of any kind.

TG and Mr. Alain Goetz emphasize that this discussion does not concern the company's activities since 2012.

To date, no dispute exists as to the legitimacy of TG's activities either before or after this period. Furthermore, TG's activities are regularly monitored by the competent authorities.

Despite its conviction, TG and Mr. Alain Goetz decided not to lodge an appeal and opted to look to the future rather than to the past.

TG and Mr. Alain Goetz therefore paid the confiscated amount of money (EUR 1,089,915.67 each) to the Belgian State (**see attachment 1**). In addition, account should be taken of the forfeiture of the alleged wealth benefits opposed in the above-mentioned judgment. This means that all alleged illicit gains have disappeared from their assets. The legitimacy of the remaining assets is therefore certain.

Finally, in order to be complete that I point out that at the moment Mr. Alain Goetz is no longer part of TG's management or its shareholding (**see attachment 2**).

2

Exhibit 8 Part 4

# L A U R I U S

ANTWERP – BRUSSELS

Please note that this letter is merely for information purposes and is not to be relied upon by any other person than our client and cannot be used or for any other purpose, nor is it to be quoted or made public in any way without our prior written consent.

We are at your disposal for further information.

Best regards,

Bert Luyten

Attachment 1: Proof of payment
Attachment 2: Dismissal of board of directors and UBO-register

Exhibit 8 Part 4

## Proof of Payment

**GOETZ ALAIN | [redacted]**

**standaardprinter : [redacted]**

**Verrichting raadplegen**

**terug naar overzicht**

rekening

**[redacted] EUR**

[redacted]

**GOETZ ALAIN**

oorspronkelijke rekening

**KBC B BETALINGSSYST. & DIENSTEN**
**DRINGENDE UITGAANDE VERRICHTINGEN VIA TARGET - BE**
oorspronkelijke tegenrekening

[redacted]

productype
**KBC-Rekening**

omschrijving
**OVERSCHRIJVING NAAR 27-05**
[redacted]

verrichtingsdatum
**27-05-2020**
valutadatum
**27-05-2020**
boekingsdatum
**27-05-2020**

registratiekanaal
**met Online for Business**
registratie-user

telefoon registratie-user

producttype
**SEPA Credit Transfer**
gebeurtenistype
**overschrijvingen via KBC-online for business**
opdrachtschematype
**individuele overschrijving niet lonen**

afschrift
**2020 026**
weergave in cliëntcommunicatie
☑
bijlage
☐

geïntervenieerd
☐
geforceerd
**niet forceren (standaard)**

Belgian Official Gazette Re: Dismissal of Mr. Alain Goetz

**Exhibit 8 Part 1**

 

In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte



*18150794*

Rechtbank van Koophandel Antwerpen

0 3 OKT. 2018

Griffie afdeling ANTWERPEN

Ondernemingsnr : **0426 588 575**
Benaming
(voluit) : **TONY GOETZ**
(verkort) :

Rechtsvorm : NAAMLOZE VENNOOTSCHAP
Volledig adres v.d. zetel : JACOB JACOBSSTRAAT 58 TE 2018 ANTWERPEN

<u>Onderwerp akte</u> : **ONTSLAG EN BENOEMING RAAD VAN BESTUUR EN GEDELEGEERD BESTUURDER**

De Bijzondere Algemene vergadering der Aandeelhouders van 10 september 2018 heeft unaniem beslist om ontslag te geven aan alle bestuurders, te weten :

1.ALAXY BVBA, met maatschappelijke zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, gekend onder het ondernemingsnummer 0478.862.274 en met vaste vertegenwoordiger WEYLER Sandra, voornoemd;
2.CG-VASTGOED INVEST NV, met maatschappelijke zetel te 2018 Antwerpen, gekend onder ondernemingsnummer 0806.408.906 en met vaste vertegenwoordiger GOETZ Alain, voornoemd.

Tot nieuwe bestuurders worden met éénparigheid van stemmen benoemd voor de wettelijke maximumtermijn van zes jaar :

1.GOETZ Sylvain, wonende te 2970 Schilde, Boerendreef 16;
2.WORLD WIDE CONSULTING BVBA, met maatschappelijke zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, gekend onder het ondernemingsnummer 0478.862.175 en met vaste vertegenwoordiger GOETZ Sylvain, voornoemd.

Zij aanvaarden hun mandaat.
Er wordt bevestigd dat het mandaat van bestuurder onbezoldigd is en blijft.

De Raad van bestuur van 10 september 2018 heeft unaniem beslist om De Heer GOETZ Sylvain, voornoemd te benoemen tot gedelegeerd bestuurder, die aanvaardt. Het mandaat van gedelegeerd bestuurder is onbezoldigd.

GOETZ Sylvain
Gedelegeerd Bestuurder

Op de laatste blz. van Luik B vermelden : <u>Recto</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Verso</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0632

# Exhibit 8 Part 4



Federale
Overheidsdienst
**FINANCIEN**
THESAURIE



## Informatie over de uiteindelijke begunstigde (UBO) Industrial Refining Company

Pagina 1/2

Gedrukt door: Luyten Bert
LAURIUS
23/09/2020

### GEGEVENS OVER DE ENTITEIT

| | |
|---|---|
| KBO-nummer of identificator: | 0426598575 |

| | | | |
|---|---|---|---|
| Aanmaakdatum: | 28/12/1984 | Status: | Normale toestand |
| Naam van de onderneming: | Industrial Refining Company | Rechtsvorm: | Naamloze vennootschap |

### ADRES VAN DE ENTITEIT

| | | | | | |
|---|---|---|---|---|---|
| Straat: | Jacob Jacobsstraat | N°: | 58 | Bus: | NA |
| Postcode: | 2018 | Gemeente: | Antwerpen | | |
| Land: | België | | | | |

### AANVULLENDE INFORMATIE

| Soort | Namen | % (kapitaal) | % (vote) | Aard van de controle |
|---|---|---|---|---|
| | Industrial Refining Company | 100,000 | 100,000 | |
| | ARGOR INTERNATIONAL | 100,000 | 100,000 | Cat.1 : Stemrechten of deelneming in het kapitaal |
| | Goetz Sylvain | 75,100 | 75,100 | Cat.1 : Stemrechten of deelneming in het kapitaal |
| | *Others* | 24,900 | 24,900 | |

Dit uittreksel uit het UBO-register bevat de informatie die momenteel beschikbaar is voor de betreffende rechtspersoon of structuur. Het bevestigt op geen enkele manier de juistheid of volledigheid van de informatie met betrekking tot UBO's van de betrokken juridische entiteit of structuur.

WWW.FIN.BELGIUM.BE
THESAURIE - FEDERALE OVERHEIDSDIENST FINANCIEN
.be

# Exhibit 8 Part 4

 Federale
Overheidsdienst
**FINANCIEN**
THESAURIE



Informatie over de uiteindelijke begunstigde (UBO) Industrial Refining Company

Pagina 2/2

**Gedrukt door: Luyten Bert**
**LAURIUS**
**23/09/2020**

| LIJST VAN DE EFFECTIEVE BEGUNSTIGDE | | | |
|---|---|---|---|
| UITEINDELIJKE BEGUNSTIGDE(N) | AARD VAN DE CONTROLE | NAAM VAN DE ONDERNEMING | AANVANG VAN DE CONTROLE |
| Goetz Sylvain | Cat.1 : Stemrechten of deelneming in het kapitaal | ARGOR INTERNATIONAL | 16/11/2006 |

 Juridische entiteit

 Andere

 Persoon/Uiteindelijke begunstigde

 Groepering van uiteindelijke begunstigden

Dit uittreksel uit het UBO-register bevat de informatie die momenteel beschikbaar is voor de betreffende rechtspersoon of structuur. Het bevestigt op geen enkele manier de juistheid of volledigheid van de informatie met betrekking tot UBO's van de betrokken juridische entiteit of structuur.

Luik B    In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie
na neerlegging van de akte ter griffie

Voor-
behouden
aan het
Belgisch
Staatsblad

*20335982*



Neergelegd
30-07-2020

Griffie

Ondernemingsnr : 0426598575
**Naam**
(voluit) **TONY GOETZ**
(verkort) **TG**

Rechtsvorm : Naamloze vennootschap

Volledig adres v.d. zetel : Jacob Jacobsstraat 58
: 2018 Antwerpen

<u>Onderwerp akte :</u>

BENAMING, ONTSLAGEN, BENOEMINGEN, STATUTEN
(VERTALING, COORDINATIE, OVERIGE WIJZIGINGEN)

Uittreksel afgeleverd vr registratie om neer te leggen ter griffie van de Ondernemingsrechtbank te Antwerpen, afdeling Antwerpen.
Uit een proces-verbaal verleden voor Meester Paul Wellens, notaris, met zetel te Mortsel, op 8 juli 2020, blijkt dat werd gehouden een buitengewone algemene vergadering van "TONY GOETZ" naamloze vennootschap, gevestigd te 2018 Antwerpen, Jacob Jacobsstraat 58, ingeschreven in het rechtspersonenregister te Antwerpen, afdeling Antwerpen onder het nummer BE 0426.598.575, en dat onder meer volgende besluiten werden genomen:
I. De vergadering beslist de naam van de vennootschap te wijzigen in **Industrial Refining Company**, afgekort "IRC"
Bijgevolg beslist de vergadering beslist om de eerste zin van Artikel 1: te vervangen door de volgende tekst:
"De vennootschap heeft de vorm van een naamloze vennootschap.
Haar naam luidt: **Industrial Refining Company**, afgekort "IRC".
II. In toepassing van artikel 39, §1, eerste en derde lid van de wet van 23 maart 2019 tot invoering van het WVV en houdende diverse bepalingen (1), besluit de algemene vergadering om de statuten aan te passen aan de bepalingen van het WVV.
III. Als gevolg van de voorgaande besluit, besluit de algemene vergadering volledig nieuwe statuten aan te nemen, die in overeenstemming zijn met het WVV, zonder evenwel een wijziging aan te brengen in haar voorwerp.
De algemene vergadering verklaart en besluit dat de tekst van de nieuwe statuten als volgt luidt:
**NAAM EN RECHTSVORM**
De vennootschap heeft de vorm van een naamloze vennootschap.
Haar naam luidt: **Industrial Refining Company**, afgekort "IRC".
Deze naam moet steeds – op alle akten, facturen, aankondigingen, bekendmakingen, brieven, orders, websites en andere stukken al dan niet in elektronische vorm, uitgaande van de vennootschap – vermeld worden, evenals de woorden 'naamloze vennootschap', in het Frans 'société anonyme', of het letterwoord 'NV', in het Frans 'SA'.
**ZETEL**
De zetel is gevestigd in het Vlaamse Gewest.
De vennootschap mag, bij besluit van haar bestuursorgaan, administratieve zetels, agentschappen, ateliers, opslagplaatsen en bijhuizen oprichten of opheffen wanneer en waar zij het nodig acht, zowel in België als in het buitenland.
**VOORWERP VAN DE VENNOOTSCHAP**
De vennootschap heeft tot voorwerp:
De groothandel in goudsmeedwerk en juwelen, diverse recuperatieproducten, meer bepaald oude juwelen, kleinhandel in goud- en zilverwerk en juwelen, oude kleren en tweedehandse goederen: meer bepaald oude juwelen.
Groothandel en kleinhandel in edele metalen en aanverwanten.
Groothandel en kleinhandel in monetair goud.

*Op de laatste blz. van Luik B vermelden:*   <u>Voorkant</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Achterkant</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0635

# Exhibit 8 Part 4 Mod PDF 19.01

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B** - vervolg

De vennootschap kan alle handels-, financiële, industriële, roerende en onroerende verrichtingen doen die de verwezenlijking van het maatschappelijk voorwerp rechtstreeks of onrechtstreeks in de hand werken.

Zij kan door middel van inschrijving, inbreng, fusie, opslorping, samenwerking, financiële tussenkomst of afspraak deelnemen in alle andere Belgische of buitenlandse vennootschappen, instellingen of ondernemingen, zonder onderscheid, ongeacht of zij opgericht zijn of nog moeten opgericht worden, wier maatschappelijk voorwerp gelijk is, verwant, verknocht of analoog aan het hare of waarvan de deelname of samenwerking kan bijdragen tot de verwezenlijking van haar doel. Zij kan zich ten gunste van dezelfde vennootschappen borgstellen of haar aval verlenen, optreden als haar agent of vertegenwoordiger, voorschotten toestaan, kredieten verlenen, hypothecaire of andere zekerheden verstrekken.

**DUUR**

De vennootschap is opgericht voor een onbepaalde duur.

**KAPITAAL VAN DE VENNOOTSCHAP**

Het kapitaal bedraagt twintig miljoen euro (20.000.000 EUR), verdeeld in honderd vijfentwintig (125) aandelen met fractiewaarde.

**BESTUUR EN VERTEGENWOORDIGING**

*Samenstelling van het bestuursorgaan*

De vennootschap wordt bestuurd door één of meer bestuurders, natuurlijke personen of rechtspersonen, al dan niet aandeelhouder, benoemd voor ten hoogste zes jaar door de algemene vergadering van aandeelhouders. Indien zij worden benoemd in de statuten, hebben zij de hoedanigheid van statutair bestuurder en is hun mandaat van onbepaalde duur.

De bestuurders worden geacht hun mandaat onbezoldigd uit te oefenen tenzij anders bepaald in de benoemingsbeslissing van de algemene aandeelhoudersvergadering.

De bestuurder wiens mandaat een einde heeft genomen, blijft, als het aantal bestuurders daalt onder het bij de toepasselijke wettelijke bepalingen voorziene minimum, in functie tot zolang de algemene vergadering, om welke reden ook, niet in zijn vervanging voorziet.

De raad van bestuur kan onder zijn leden een voorzitter benoemen. Bij ontstentenis van benoeming of bij afwezigheid van de voorzitter wordt het voorzitterschap waargenomen door de bestuurder aangeduid onder de aanwezige bestuurders door de raad van bestuur.

*Bestuursbevoegdheid*

Het bestuursorgaan is bekleed met de meest uitgebreide macht om alle handelingen te verrichten die nodig of dienstig zijn voor het bereiken van het voorwerp van de vennootschap, met uitzondering van die handelingen aan de algemene vergadering voorbehouden door de wet.

Ingeval er twee bestuurders zijn zullen zij gezamenlijk het bestuur voeren.

Indien er drie of meer bestuurders zijn, vormen deze een college, dat een voorzitter aanstelt en verder handelt zoals een raadsvergadering.

Het bestuursorgaan mag het dagelijks bestuur van de vennootschap delegeren aan één of meer (rechts)personen, al dan niet aandeelhouders. Wordt een bestuurder belast met het dagelijks bestuur dan draagt hij de titel van "gedelegeerd-bestuurder". Wordt een niet-bestuurder belast met het dagelijks bestuur dan draagt hij de titel van directeur of algemeen directeur of elke andere titel waarmee hij/zij in het benoemingsbesluit wordt aangeduid.

Het bestuursorgaan, evenals de gevolmachtigden voor het dagelijks bestuur binnen het kader van dit bestuur, mogen eveneens specifieke bevoegdheden aan één of meer personen van hun keus toekennen.

*Vertegenwoordigingsbevoegdheid van het bestuursorgaan*

Het bestuursorgaan vertegenwoordigt de vennootschap jegens derden en in rechte als eiser of als verweerder. De vennootschap wordt jegens derden en in rechte als eiser of als verweerder tevens geldig vertegenwoordigd, door elke bestuurder, afzonderlijk handelend.

Binnen het kader van het dagelijks bestuur, is de vennootschap tevens geldig vertegenwoordigd door (een) gevolmachtigde(n) tot dit bestuur.

De vennootschap is bovendien, binnen het kader van hun mandaat, geldig verbonden door bijzondere gevolmachtigden.

Bovendien kan de vennootschap in het buitenland vertegenwoordigd worden door iedere persoon uitdrukkelijk daartoe aangesteld door de raad van bestuur.

**ALGEMENE VERGADERING**

De gewone algemene vergadering van aandeelhouders, jaarvergadering genoemd, moet ieder jaar worden bijeengeroepen op *derde vrijdag van de maand juni om zestien (16.00) uur* .

Indien die dag een wettelijke feestdag is, wordt de vergadering op de eerstvolgende werkdag gehouden.

Te allen tijde kan een bijzondere algemene vergadering worden bijeengeroepen om te beraadslagen en te besluiten over alle aangelegenheden die tot haar bevoegdheid behoren en die geen wijziging van de statuten inhouden.

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

*Op de laatste blz. van Luik B vermelden :*    **Voorkant** : *Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen*

**Achterkant** : *Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").*

DRC-34996 0636

# Exhibit 8 Part 4

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

**Voorbehouden aan het Belgisch Staatsblad**

**Luik B** - vervolg

Te allen tijde kan ook een buitengewone algemene vergadering worden bijeengeroepen, om over een wijziging van de statuten te beraadslagen en te besluiten.

De gewone, de bijzondere en de buitengewone algemene vergaderingen worden gehouden in de zetel van de vennootschap, of op een andere plaats aangewezen in de oproeping.

Telt de vennootschap slechts één aandeelhouder, dan oefent hij de bevoegdheden uit die een algemene vergadering zijn toegekend. Hij kan deze niet overdragen. De beslissingen van de enige aandeelhouder die handelt als algemene vergadering worden vermeld in een register dat op de zetel van de vennootschap wordt bijgehouden.

*Bijeenroeping - Bevoegdheid - Verplichting*

Het bestuursorgaan en, in voorkomend geval, de commissaris kunnen zowel een gewone algemene vergadering als een bijzondere of een buitengewone algemene vergadering bijeenroepen. Zij moeten de jaarvergadering bijeenroepen op de bij de statuten bepaalde dag. Zij zijn verplicht de algemene vergadering binnen de drie weken bijeen te roepen wanneer aandeelhouders die een tiende van het aantal uitgegeven aandelen vertegenwoordigen, dat vragen, met ten minste de door de betrokken aandeelhouders voorgestelde agendapunten.

De oproepingen tot een algemene vergadering vermelden de agenda en geschieden door middel van een aankondiging die ten minste vijftien dagen voor de vergadering geplaatst wordt in het Belgisch Staatsblad en in een nationaal verspreid blad. Ingeval een nieuwe oproeping nodig is en de datum van de tweede vergadering werd vermeld in de eerste oproeping, moet de aankondiging voor de tweede vergadering ten minste zeventien dagen voor de vergadering geplaatst worden in het Belgisch Staatsblad en in een nationaal verspreid blad. Indien de agenda van de gewone algemene vergadering zich beperkt tot de behandeling van de jaarrekening, het jaarverslag en, in voorkomend geval, het verslag van de commissaris en de stemming over de kwijting te verlenen aan de bestuurders en, in voorkomend geval, aan de commissaris(sen), is evenwel geen aankondiging in een nationaal verspreid blad vereist. Om tot de vergadering toegelaten te worden, moeten de houders van aandelen aan toonder, uiterlijk vijf dagen voor de datum van de vergadering hun aandelen deponeren op de zetel van de vennootschap.

Op elke algemene vergadering wordt een aanwezigheidslijst bijgehouden.

*Toelating tot de algemene vergadering*

Het bestuursorgaan kan eisen dat teneinde aan de algemene vergadering te kunnen deelnemen:

- de eigenaars van aandelen op naam, ten minste vijf werkdagen vóór de datum van de algemene vergadering, het bestuursorgaan schriftelijk dienen in te lichten van hun intentie aan de vergadering deel te nemen, alsook van het aantal aandelen waarmee zij aan de stemming wensen deel te nemen.

- de eigenaars van gedematerialiseerde aandelen, ten minste vijf werkdagen vóór de datum van de algemene vergadering, op de zetel van de vennootschap op de plaatsen aangegeven in de oproeping een door de erkende rekeninghouder of door de vereffeningsinstelling opgesteld attest dienen neer te leggen, waarbij de onbeschikbaarheid van de gedematerialiseerde aandelen tot op de datum van de algemene vergadering wordt vastgesteld.

Bestuurders en commissarissen zijn vrijgesteld van deze formaliteit.

*Stemrecht*

Elk aandeel geeft recht op één stem.

*Buitengewone algemene vergadering - Statutenwijziging*

De buitengewone algemene vergadering moet worden gehouden ten overstaan van een notaris. Zij kan over een voorgestelde statutenwijziging slechts dan op rechtsgeldige wijze beraadslagen en besluiten, wanneer de aanwezige of vertegenwoordigde aandeelhouders ten minste de helft van het kapitaal vertegenwoordigen.

Is de laatste voorwaarde niet nageleefd, dan is een tweede bijeenroeping nodig en de nieuwe vergadering beraadslaagt en besluit op geldige wijze, ongeacht het door de aanwezige of vertegenwoordigde aandeelhouders vertegenwoordigde deel van het kapitaal.

Een wijziging is alleen dan aangenomen, wanneer zij drie/vierde van de uitgebrachte stemmen heeft verkregen, waarbij onthoudingen in de teller noch in de noemer worden meegerekend.

*Notulen van de algemene vergadering*

De notulen van een algemene vergadering worden ondertekend door de leden van het bureau en door de aandeelhouders die erom verzoeken; kopieën voor derden worden ondertekend door één of meer vertegenwoordigingsbevoegde leden van het bestuursorgaan.

**BOEKJAAR**

Het boekjaar van de vennootschap gaat in op *1 januari en eindigt op 31 december* van het zelfde jaar.

**BESTEMMING VAN DE WINST**

Jaarlijks houdt de algemene vergadering een bedrag in van ten minste een twintigste van de nettowinst voor de vorming van een reservefonds; de verplichting tot deze afneming houdt op wanneer het reservefonds een tiende van het kapitaal heeft bereikt.

---

*Op de laatste blz. van Luik B vermelden :*     *Voorkant* : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
                                                  bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

                                                  *Achterkant* : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0637

Exhibit 8 Part 4 Mod PDF 19.01

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B**    - vervolg

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

Het saldo staat ter beschikking van de algemene vergadering, die ieder jaar over zijn aanwending zal
beslissen.
**ONTBINDING - VEREFFENING**
*Verliezen*
Wanneer ten gevolge van geleden verlies het netto-actief gedaald is tot minder dan de helft van het
kapitaal, moet het bestuursorgaan de algemene vergadering oproepen tot een vergadering, te
houden binnen twee maanden nadat het verlies is vastgesteld, of krachtens wettelijke of statutaire
bepalingen had moeten worden vastgesteld, om te beraadslagen en te besluiten over de ontbinding
van de vennootschap of over in de agenda aangekondigde maatregelen om de continuïteit van de
vennootschap te vrijwaren. Tenzij het bestuursorgaan de ontbinding van de vennootschap voorstelt,
zet het in een bijzonder verslag uiteen welke maatregelen het voorstelt om de continuïteit van de
vennootschap te vrijwaren. Dat verslag wordt in de agenda vermeld en vijftien dagen vóór de
algemene vergadering op de zetel van de vennootschap ter beschikking van de aandeelhouders
gesteld.

Op dezelfde wijze wordt gehandeld wanneer het netto-actief ten gevolge van geleden verlies gedaald
is tot minder dan een/vierde van het kapitaal, met dien verstande dat de ontbinding plaatsheeft
wanneer zij wordt goedgekeurd door een vierde van de uitgebrachte stemmen, waarbij onthoudingen
in teller noch in de noemer worden meegerekend.

Wanneer het netto-actief is gedaald tot beneden eenenzestigduizend vijfhonderd euro (€ 61.500,00),
kan iedere belanghebbende of het openbaar ministerie de ontbinding van de vennootschap voor de
rechtbank vorderen. In voorkomend geval kan de bevoegde ondernemingsrechtbank aan de
vennootschap een bindende termijn toestaan om haar toestand te regulariseren.
*Ontbinding*
De vennootschap kan op elk moment ontbonden worden door beslissing van de algemene
vergadering, met inachtneming van de vereisten voor statutenwijziging.
*Onmiddellijke sluiting van de vereffening*
Een ontbinding en de sluiting van de vereffening in één akte zijn mogelijk onder de voorwaarden van
artikel 2:80 WVV.
*Benoeming van vereffenaars*
Zijn er geen vereffenaars benoemd of aangewezen, dan worden de bestuurders die op het tijdstip
van de ontbinding in functie zijn, ten aanzien van derden van rechtswege als vereffenaars
beschouwd. De algemene vergadering van de ontbonden vennootschap kan te allen tijde en bij
gewone meerderheid van stemmen, één of meer vereffenaars benoemen, of ontslaan.
Enkel indien uit de staat van actief en passief opgemaakt overeenkomstig artikel 2:71, § 2, tweede lid
WVV, blijkt dat niet alle schuldeisers volledig kunnen worden terugbetaald, moet de benoeming van
de vereffenaars in de statuten of door de algemene vergadering aan de voorzitter van de bevoegde
ondernemingsrechtbank ter bevestiging worden voorgelegd. Deze bevestiging is evenwel niet vereist
indien uit die staat van actief en passief blijkt dat de vennootschap enkel schulden heeft ten aanzien
van haar aandeelhouders en alle aandeelhouders die schuldeiser zijn van de vennootschap
schriftelijk bevestigen akkoord te gaan met de benoeming.
*Verdeling netto-actief*
Onverminderd de rechten van de bevoorrechte schuldeisers, betaalt de vereffenaar alle schulden
naar evenredigheid en zonder onderscheid tussen opeisbare en niet opeisbare schulden, onder
aftrek, wat deze betreft, van het disconto.
Indien uit de rekeningen blijkt dat niet alle schuldeisers integraal kunnen worden terugbetaald, legt de
vereffenaar vooraleer de vereffening wordt gesloten, bij eenzijdig verzoekschrift overeenkomstig de
artikelen 1025 en volgende van het Gerechtelijk Wetboek het plan voor de verdeling van de activa
onder de verschillende categorieën schuldeisers ter goedkeuring voor aan bevoegde
ondernemingsrechtbank.
Deze verplichting tot het ter goedkeuring voorleggen van het plan van verdeling aan de rechtbank
geldt niet wanneer de schuldeisers die niet integraal werden terugbetaald, aandeelhouders van de
vennootschap zijn en al deze aandeelhouders schriftelijk akkoord gaan met het plan van verdeling en
afstand doen van het voorleggen van het plan van verdeling.
Na betaling van de schulden en van alle kosten van de vereffening, of consignatie van de nodige
gelden om die te voldoen, en, indien er aandelen zijn die niet zijn volgestort, na herstelling van het
evenwicht tussen de aandelen, hetzij door bijkomende volstorting te eisen lastens de niet voldoende
volgestorte aandelen, hetzij door voorafgaandelijke terugbetalingen te doen in voordeel van die
aandelen die in een grotere verhouding zijn volgestort, verdeelt de vereffenaar onder de
aandeelhouders de gelden of waarden die gelijk verdeeld kunnen worden; hij overhandigt hun de
goederen die hij voor nadere verdeling heeft moeten overhouden. Het te verdelen actief wordt
verdeeld onder alle aandeelhouders naar verhouding van het aantal aandelen dat zij bezitten en de
goederen die nog in natura voorhanden zijn worden op dezelfde wijze verdeeld.
IV. De algemene vergadering besluit de opdracht te geven aan de ondergetekende notaris om de

*Op de laatste blz. van Luik B vermelden :*    **Voorkant** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
**Achterkant** : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0638

Exhibit 8 Part 4 Mod PDF 19.01

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B**   - vervolg

coördinatie van de statuten op te maken en te ondertekenen, in overeenstemming met het vorige
besluit, en de neerlegging daarvan in het vennootschapsdossier te verzorgen.
**V**. De algemene vergadering verklaart dat het adres van de zetel is gevestigd te *2018 Antwerpen,
Jacob Jacobsstraat 58.*
**VI**. De algemene vergadering besluit de bestuurder, hierna vermeld, ontslag te geven uit zijn functie:
de besloten vennootschap **WORLD WIDE CONSULTING**, met zetel te 2018 Antwerpen, Jacob
Jacobsstraat 56, vertegenwoordigd door haar vaste vertegenwoordiger de heer Goetz Sylvain.
De vergadering verleent, door een bijzondere stemming, volledige en algehele kwijting aan de
ontslagnemende bestuurder voor het mandaat uitgeoefend in het maatschappelijk jaar begonnen op
1 januari 2020 tot op heden.
VOOR ONTLEDEND UITTREKSEL (get.) notaris Paul Wellens
Tegelijk hiermee neergelegd:
Afschrift van het proces-verbaal
Gecoördineerde statuten

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

Op de laatste blz. van Luik B vermelden :

*Voorkant* : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
*Achterkant* : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0639

Exhibit 8 Part 4

# Annex
# P

DRC-34996 0640

# Exhibit 8 Part 4

TELEGRAMS "ADMINISTER"
DIRECT LINES
  MINISTER'S OFFICE    041-343301
  SOLICITOR GENERAL'S OFFICE  041-343941
  UNDER SECRETARY'S OFFICE  041-342261
  AG DIRECTOR CIVIL LITIGATION  041-2317866
GENERAL LINES    041-230538 9
Fax    041-254029
Fax  Civil Litigation  041-345400

In any correspondence on ADM7/212/01



THE REPUBLIC OF UGANDA

**ATTORNEY GENERAL'S CHAMBERS**
**P O BOX 7183,**
**Kampala, Uganda**

26th March, 2019

The Commandant,
Police Minerals Protection Unit,
P.O. Box 7183
Entebbe.

## RE: PRELIMINARY REPORT ON THE ALLEGED SUSPECTED SMUGGLED GOLD BY AFRICAN GOLD REFINERY (AGR) VIDE GEF 01/2019.

Reference is made to your letter dated 21st March, 2019 in which you forwarded to me a preliminary investigation report dated 19th March, 2019 in relation to the above subject matter, for my advice as per H.E the President's directive on 20th March, 2019 at Kyankwazi on the above matter.

As instructed by H.E the President on 25th March, 2019, at State House Entebbe, I advise you as follows;

I gather from your report that you received intelligence information about suspected gold smuggled into Uganda from Venezuela by African Gold Refinery Ltd (AGR), which is alleged to have occurred between 2nd and 4th March, 2019.

African Gold Refinery Ltd operates as a bonded ware house with License No. WO408 under the East African Customs Management Act, 2004 (EACMA). Under section 48 of the EACMA, bonded warehouses may be exempted from payment of duty on first importation into the bonded warehouse. Pursuant to the Directive of H.E the President dated 26th April 2017 Reference P0/1, communicated to Ministry of Energy and Mineral Development and the letter from Uganda Revenue Authority (URA) to AGR dated 5th June 2018, Reference CUST/T/3/16, Government granted AGR bonded facility exemption from import duty in accordance with section 164 Part XIII of the East African Community Customs Management Act, 2004.

Accordingly, URA granted clearance of the two consignments on 1st March 2019 ad 4th March 2019 respectively in line with the exemption already granted by Government and also issued release orders for the

DRC-34996 0641

# Exhibit 8 Part 4

consignments. This is also in line with section 117(2) of the Mining Act 2003 that requires an importer of minerals to make a declaration to a customs officer of minerals imported into the country. This, in my opinion dispels the suspicion of smuggling.

In light of the above, you are directed to withdraw your officers deployed at AGR premises and release any gold that may have been seized or impounded during this investigation.

Concerning the current sanctions imposed by the United States Government on Venezuela, in view of the principle of comity, by copy of this letter, AGR is instructed henceforth, save for the gold comprising of the consignments that have been the subject of investigation, cease and desist from any further importation of gold from Venezuela, until further notice.

William Byaruhanga, SC
**ATTORNEY GENERAL**

Cc: The Principal Private Secretary to H.E the President (for onward transmission to H.E the President)

Cc: The Hon. Deputy Attorney General

Cc: The Inspector General of Police

Cc: The Chief Executive Officer, African Gold Refinery Ltd

DRC-34996 0642

Exhibit 8 Part 5

# Annex
# N

DRC-34996 0643

# Exhibit 8 Part 5

| | |
|---|---|
| **Memorandum Of Association Of Limited Liability Company FOR** **Goetz Gold LLC** | عقد تأسيس شركة ذات مسئولية محدودة لــ جويتز للذهب (ش.ذ.م.م) |

This Memorandum is entered into on the day of / /2013, between the parties as follows:

ابرم هذا العقد في هذا اليوم الموافق / / ٢٠١٣ م فيما بين الأطراف التالية:-

1. **Mr. Omar Hassan Ali AlAttar**, a UAE national holding passport no. ███ Address: Dubai, UAE (the **"First Party"**).

١. السيد / عمر حسن علي العطار، إماراتي الجنسية ويحمل جواز سفر رقم ███ وعنوانه : دبي، إ.ع.م. ("الطرف الأول").

2. **Mr. Alain Francois Viviane Goetz**, a **Belgium** national holding passport no. ███ Address : Dubai, UAE (the "Second Party").

٢. السيد/ الان فرانكويس فيفيان جويتز، بلجيكي الجنسية ويحمل جواز سفر رقم ███ وعنوانه : دبي، إ.ع.م. ("الطرف الثاني").

## PREAMBLE:

The abovementioned parties agreed to establish a Limited Liability Company in the Emirate of Dubai under the provisions of UAE Federal Law No. (8) of 1984 concerning Commercial Companies and its amendments and in accordance to the following provisions and terms:

## مقدمة:

اتفق الطرفان المذكوران أعلاه على تأسيس شركة ذات مسئولية محدودة فيما بينهم في إمارة دبي طبقاً لقانون الشركات التجارية رقم (٨) لسنة ١٩٨٤ م بشأن الشركات التجارية والقوانين المعدلة له وذلك وفقاً للأحكام والشروط التالية:

## ARTICLE (1): DEFINITIONS

1. In this Memorandum, the word shall have the following meanings:

1-1. **"THE COMPANY"** shall mean the Company formed pursuant to this Memorandum.

1-2 **"THE COMMERCIAL REGISTER"** shall mean the commercial register at the Department of Economic Development.

## المادة (١) "تعريفات"

١- يكون للكلمات التالية في هذا العقد المعاني التالية

١-١ " الشركة": تعني الشركة التي تأسست بموجب هذا العقد.

١-٢ "السجل التجاري": تعني السجل التجاري لدى دائرة التنمية الاقتصادية

DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

المسرة لخدمات الطبع والنسخ
AL NASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM LEGAL TRANSLATOR (ARABIC-ENGLISH)

١

Exhibit 8 Part 5

1-3 "**THE COMMERCIAL COMPANIES LAW**" means the Federal Law No. 8 of 1984 concerning commercial companies and its amendments.

١-٣ " **قانون الشركات التجارية**": يعني القانون الاتحادي رقم (٨) لسنة ١٩٨٤م في شأن الشركات التجارية والقوانين المعدل له.

1-4 "**DIRECTOR(S)**" means the director or the directors of the company appointed pursuant to this memorandum.

١-٤ " **مدير/ مديرون**": تعني مدير أو مديرون الشركة المعينين بموجب هذا العقد.

1-5 "**THE DEPARTMENT OF ECONOMIC DEVELOPMENT**" shall mean the Department of Economic Development of the Emirate of Dubai .

١-٥ " **دائرة التنمية الاقتصادية**": تعني دائرة التنمية الاقتصادية لإمارة دبي.

1-6 "**THE MINISTRY**" shall mean the ministry of Economy and Commerce in the Emirate of Dubai .

١-٦ " **الوزارة**" : تعني وزارة الاقتصاد والتجارة في إمارة دبي.

1-7 "**THE PARTNER(S)**" shall mean the parties to this memorandum and any person or legal entity which becomes the holder of a share in the capital of the company in accordance with the terms of this memorandum.

١-٧ " **الشريك/ الشركاء**" : تعني اطراف هذا العقد واي شخص طبيعي او اعتباري يصبح مالكا لأي حصة من رأس مال الشركة وفقا لشروط هذا العقد.

## ARTICLE (2): NAME OF THE COMPANY

2. The name of the Company is:

المادة (٢): " اسم الشركة" :

١- اسم الشركة هو : -

## " Goetz Gold L.L.C"

**(Limited Liability Company)**

" جويتز للذهب ش.ذ.م.م"

(شركة ذات مسئولية محدودة)

## ARTICLE (3) : OBJECTS OF THE COMPANY

3.1 The objective of the company is carrying on the trade of:

- **Gold & Precious metals Trading**
- **Watches & Clocks & Spare Parts Trading**
- **Diamond, Diamonds Jewellery & Precious Stones Trading**

Which includes the carrying on of all activities as are related ancillary thereto.

المادة (٣) : " أغراض الشركة":

٣-١ أغراض الشركة هي

- تجارة الذهب والمعادن الثمينة
- تجارة الساعات وقطع غيارها
- تجارة الالماس والمجوهرات الماسية والأحجار الثمينة.

وتشتمل مزاولة كافة الأنشطة التعلقة بهذه الاغراض أو المتصله بها.

محاكم دبي
DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مراد ابراهيم / مترجم قانوني (عربي/انطليزي وبالعكس)
MARWAN EBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)

٢

# Exhibit 8 Part 5

3.2. The company shall not carry on the business of insurance banking or investment of funds for the account of third parties.

٣-٢ لا يجوز للشركة أن تمارس أعمال التأمين والمصارف او استثمار الأموال لحساب الغير.

## ARTICLE (4): HEAD OFFICE OF THE COMPANY

4. The Head Office of the Company shall be in Emirate of Dubai . It shall be permissible for the Company to establish branches offices and/or agencies in the United Arab Emirates and abroad.

## المادة (٤): " مركز الشركة الرئيسي"

٤- يكون مركز الشركة الرئيسي في امارة دبي، ويجوز للشركة ان تنشي لها فروعاً أو مكاتب أو توكيلات داخل الدولة وخارجها.

## ARTICLE (5): DURATION OF THE COMPANY

5. The duration of the Company shall be ten (10) Gregorian Year's, commencing on the date of registration of the Company in the Commercial Register. Such period will be renewable automatically for similar periods except if one party informed either party in writing of his wish to terminate this contract before three months at least of expire date.

## المادة (٥): " مدة الشركة"

٥- مدة الشركة (١٠) عشر سنوات ميلادية، تبدأ من تاريخ تسجيل الشركة في السجل التجاري وتجدد تلقائياً لمدد مماثله الا إذا قام أحد الأطراف بإعلام الطرف الأخر خطياً برغبته بإنهاء العقد وذلك قبل ثلاثة اشهر على الأقل من تاريخ الإنتهاء العقد.

## ARTICLE (6): THE CAPITAL OF THE COMPANY

6.1 The capital of the Company in Dirhams is Three Hundred Thousand only (300,000/-) divided into Three Hundred Equal Cash Shares (300). the value of each share is Dhs. One Thousand (Dirhams 1,000) only.

6.2 The capital of the Company is divided among partners in the following manner:

## المادة (٦): " راس مال الشركة"

٦-١ حدد راس مال الشركة بمبلغ ثلاثمائة ألف درهم (/-٣٠٠,٠٠٠) فقط مقسم على ثلاثمائة حصة نقدية متساوية (٣٠٠) قيمة كل حصة ألف (١٠٠٠) درهم.

٦-٢ قسم رأس مال الشركة بين الشركاء كالتالي: -

| Name of Partner | SHARES IN CASH | | | الحصص النقدية | | | الاسم الشركاء |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | No of shares | Value | % | % | القيمة | عدد الحصص | |
| 1.  First Party | 153 | 153,000 | 51% | ٥١% | ١٥٣,٠٠٠ | ١٥٣ | ١.  الطرف الأول |
| 2.  Second Party | 147 | 147,000 | 49% | ٤٩% | ١٤٧,٠٠٠ | ١٤٧ | ٢.  الطرف الثاني |
| Total | 300 | 300,000 | 100% | ١٠٠% | ٣٠٠,٠٠٠ | ٣٠٠ | المجموع |

6.3 The partners declare that the value of cash shares has been fully paid and, has been deposited in the Company Account.

٦-٣ ويقر الشركاء بأن قيمة الحصص النقدية قد دفعت بالكامل وتم ايداعها في حساب الشركة.

محاكم دبي
DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
فروض ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAH IBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)

٣

# Exhibit 8 Part 5

## ARTICLE (7): TRANSFER OF SHARES

7.1 Any Partner may transfer his shares in the Company to one or more partners or to a third party by way of a written instrument notarize by the concerned authorities.

7.2 If one of the partners intends to transfer his shares with or without a price to a person who is not a partner, he must notify the other Partners through the Company's Director about the terms of transfer and If one of the partners intends to transfer his shares with or without a price to a person who is not a partner, he must notify the other Partners through the Company's Director about the terms of transfer and the Company's Director must notify the rest of Partners soon to his receiving of such transfer notice. Any partner may apply to acquire the shares at the agreed price, in the event of a disagreement on the price, Article 231 of the Commercial Company Law shall be applied

7.3 If within thirty days from the date of the notice, none of the partners exercise their rights to acquire the shares, the partner shall be free to dispose his shares.

7.4 If more than one of the partners exercise their rights to acquire the shares under transfer question, this shares shall be divided between them in proportion to the share which each of them holds in the capital subject to provisions of Article 227 of the Commercial Companies Law.

7.5 No transfer shall be valid as against the Company or third party until it is recorded in the Register of Partners and Commercial Register. The company, may not refuse to record transfer in the Register of partners unless it contravenes the provisions of this Memorandum.

## ARTICLE (8): REGISTER OF PARTNERS

8.1 A special Register of Partners shall be prepared by the Company and kept at its main office which should include the following:

المادة (٧) : " التنازل عن الحصص"

٧-١ يجوز لأي شريك التنازل عن حصصه في الشركة إلى واحد أو أكثر من باقي الشركاء أو بمقتضى محرر موثقا من الجهة الرسمية المختصة.

٧-٢ إذا اعتزم أحد الشركاء التنازل عن حصته أو حصصه في الشركة بعوض أو بغير عوض لشخص من غير الشركاء، وجب عليه أن يخطر باقي الشركاء عن طريق مدير الشركة بشروط التنازل وعلى مدير الشركة أخطار باقي الشركاء بمجرد وصول الإخطار إليه، ويجوز لكل شريك أن يطلب استرداد الحصص بالثمن الذي يتفق عليه وفي حالة الاختلاف على الثمن تطبق المادة (٢٣١) من قانون الشركات التجارية.

٧-٣ إذا انقضى ثلاثون يوماً من تاريخ الإخطار دون أن يستعمل احد الشركاء حق الاسترداد كان الشريك حراً في التصرف في حصصه.

٧-٤ إذا استعمل حق الاسترداد اكثر من شريك قسمت الحصص المبيعة بينهم بنسبة حصة كل منهم في رأس المال مع مراعاة احكام المادة (٢٢٧) من قانون الشركات التجارية.

٧-٥ لا يعتد بأي تنازل في مواجهة الشركة أو غير إلا من تاريخ قيده في سجل الشركة وفي السجل التجاري، ولا يجوز للشركة الامتناع عن قيد التنازل في السجل الا إذا خالف ما نص عليه في هذا العقد.

المادة (٨): "سجل الشركاء"

٨-١ تقوم الشركة بإعداد سجل خاص بالشركاء يحتفظ به في مركزها الرئيسي يشمل على ما يلي:

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم | مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM | LEGAL TRANSLATOR (ARABIC-ENGLISH)
DBC 349955847

محاكم دبي
DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

4

Exhibit 8 Part 5

a) Full name of each partner

b) Nationality

c) Profession

d) Domicile

e) Address

f) Number and value of the shares by each of them

g) Details of all dealings carried out with regard to the shares, together with the dates thereof

8.2 The Director shall be jointly liable for maintaining the register and for accuracy of its content, the partners and any interested party shall have the right to review such register.

8.3 The Company shall provide both the Ministry and the Department of Economic Development in January of each year with the particulars recorded in the register referred to the above and amendments thereto.

## ARTICLE (9): MANAGEMENT OF THE COMPANY

1-9 The Partners agreed to Appoint Mr. **Alain Francois Viviane Goetz, Belgium** National, as the Manager of the company for unlimited period.

With full executive power of the Company in all respects, including all managerial, financial and commercial matters.

9.2 The Manager shall be appointed for a period of one year (Gregorian) commencing from the date of signed this agreement. It shall be automatically renewal for similar period unless otherwise agreed and it shall be permissible to reappoint the director whose period of appointment has or have expired. The director's shall be subject to removal in accordance with the Commercial Companies Law or in such manner as the partners shall agree at a General Assembly.

(أ) اسم ولقب الشريك

(ب) الجنسية

(ج) المهنة

(د) الموطن

(ه) العنوان

(و) عدد وقيمة الحصص التي يملكها كل شريك

(ز) تفاصيل وكافة التصرفات التي اجريت على الحصص وتواريخها.

٨-٢ ويكون مدير الشركة مسئول بالتضامن عن هذا السجل وصحة بياناته ويكون للشركاء ولكل ذي مصلحة حق الاطلاع على هذا السجل

٨-٣ ترسل الشركة إلى كل من الوزارة ودائرة التنمية الاقتصادية في شهر يناير من كل سنة البيانات الثابتة من السجل المشار إليه أعلاه والتغيرات التي طرأت عليه.

## المادة (٩) : " إدارة الشركة"

٩-١ اتفق الشركاء على أن يكون السيد/ الآن فرانكويس فيفيان جويتز – بلجيكي الجنسية، هو المدير المدخل في إدارة الشركة ولفترة غير محددة.

ويكون مدير الشركة مع كافة السلطات التنفيذية لإدارة الشركة من جميع النواحي الإدارية والمالية والتجارية.

٩-٢ يكون تعيين المدير لمدة سنة ميلادية واحدة تبدأ اعتباراً من تاريخ توقيع هذه الاتفاقية وتجدد تلقائيا لمدد مماثلة ما لم يتفق على خلاف ذلك ويجوز اعادة تعيين المدير الذي انتهت مدة تعيينهم له بموجب قرار من الجمعية العمومية ويكون المدير ملزماً للعزل طبقاً لقانون الشركات التجارية أو بالاغلبية التي يتفق عليها الشركاء الجمعية العمومية.

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان إبراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM I LEGAL TRANSLATOR (ARABIC-ENGLISH)

محاكم دبي
DUBAI COURTS
9 – MAY 2013
الكاتب العدل
Notary Public

٥

# Exhibit 8 Part 5

(a) To Purchase any business asset or goods on credit.

(أ) ان يقوم بشراء اية اعمال تجارية أو اصول أو بضائع على الحساب.

(b) To appoint or remove advocates, lawyers and to file or defend any suits before all U.A.E. courts at all levels.

(ب) أن يقوم بتعيين أو اعفاء المحامين وان يرفع أو يدفع أية دعاوي امام كافة محاكم دولة الإمارات العربية المتحدة.

(c) To appoint and remove employees and consultants and fix their duties and remuneration as per U.A.E. Labor Law's.

(ج) ان يقوم بتعيين أو انهاء المستخدمين والمستشارين وان يحدد واجباتهم ومكافأتهم وفقاً لقانون العمل الاتحادي في دولة الإمارات العربية المتحدة.

(d) To sub-delegate all or any of these powers to any other person.

(د) أن يحيل كل أو أي من هذه السلطات إلى اي شخص اخر.

9.3 Receive the rights, financial & in kind dues. credits, rents, deposits. compensations. inherited amounts, pensions, debits, and pay the values. rights of third parties. rents, wages. salaries. fees, taxes, deposits. compensations, allowances, and penalties.

٩-٣ قبض الحقوق والاستحقاقات المالية والعينية والأثمان والإيجارات والتأمينات والتعويضات والأموال والموروثة والمعاشات والديون رضاء أو قضاء والوفاء بالمقابل بالإثمان وحقوق الغير والإجارات والأجور والمرتبات والرسوم والضرائب والتأمينات والتعويضات والبدلات والغرامات.

9.4 Represent us before all persons, general persons, corporate persons, ministries, authorities, committees, boards, bodies. governmental & civil departments, chambers of commerce & industry, authorities of interior, borders, ports, customs, traffic, public prosecution, courts, notary public. insurance companies, finance institutions, Land Department, open notifications, waive the same, submit the pleadings, applications, appoint advocates, file cases, follow up litigation before all kinds of courts of all degrees, first instance, appeal, cassation, and defend in the same, hand and receive memos, documents, notices, waivers, expert's reports, notifications, litigation papers. and to acknowledge the claimed rights, waive the same, settle. refer to arbitration, deny, discharge, waive, delete. waive the dispute,

٩-٤ تمثيل الشركة نيابة عنا لدى عموم الأشخاص الطبيعيين والاعتباريين والوزارات والهيئات واللجان والمجالس والمراجع والدوائر الحكومية والمدنية وغرف التجارة والصناعة ووزارة العمل والشؤون الاجتماعية وإدارة الجنسية والإقامة وسلطات الداخلية والحدود والموانئ والجمارك والمرور والنيابات العامة وقيادات الشرطة والمحاكم والكتاب العدول وشركات التأمين والتمويل ودائرة الأراضي و الأملاك ، وفتح البلاغات والتنازل عنها وفي تقديم العرائض والطلبات وإقامة الدعاوى بكافة أنواعها ومتابعة إجراءات التقاضي أمام جميع المحاكم بمختلف درجاتها ابتدائي واستئناف ونقض(أو تمييز) والدفاع فيها وتسلم وتسلم المذكرات والمستندات والإنذارات والإعذارات وتقارير الخبراء والإعلانات وأوراق القضائية وفي الإقرار بالحق المدعى به والتنازل عنه والصلح

المسرة لخدمات الطبع والنسخ
AL NASARRA TYPING & PHOTOCOPYING SERVICES
مراجع ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAH IBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)

9 - MAY 2013

الكاتب العدل
Notary Public

# Exhibit 8 Part 5

apply for appointing experts, arbitrators, select the same, receive their reports, apply for oath, accept or reject the same, claim forgery, object to the judges, experts, arbitrators, leave deposits but the debts remain effective, take the precautionary procedures, file interlocutory cases, waive the same, take all possible means of cassation in the judgments & resolutions by way of appeal, petition to re-view the same, issue judgment of cassation, objection, complaint, waive the judgments wholly or partially, waive the same by any way of cassation, submit the actual offer, accept the same, withdraw the executive copies of the judgments, execute the same, apply for precautionary & executive attachment, lift the same, take the executive procedures and withdraw the same.

9.5 Make and sign contract, agreement, powers of attorneys of all kinds and subjects according to the conditions considered appropriate by him, make and sign the appendixes, medication procedures, termination, separation, applications, instruments, correspondences, receipts, clearing, payment vouchers, official forms, declarations, notices, judicial notifications, receive and reply the same

9.6 Open all kinds of accounts with any bank in the name of Company or in the name of the shops, establishments, commercial, civil, or industrial companies established for the principal by the attorney under his knowledge, manage the said accounts by deposit, cash withdraw, or by cheques, transfers, obtain the credits from the same, apply for credit facilities, guarantees, bonds, open letters of credit, link deposits, liquefy the same, receive cheques, transfers, endorse and pay the same, and all the banking transactions including leasing the safe boxes, use the same, cancel investment, close the banking accounts

والتحكيم فيه والإنكار والإبراء والإسقاط والشطب وترك الخصومة وفي طلب تعيين الخبراء والمحكمين واختيارهم واستلام تقاريرهم وطلب توجيه اليمين وقبولها وردها والادعاء بالتزوير وفي رد القضاء والخبراء والمحكمين وفي ترك التأمينات مع بقاء الدين واتخاذ الإجراءات الاحتياطية وفي إقامة الدعوى المتقابلة والتنازل عنها ومباشرة كافة الطرق المقررة للطعن في الأحكام والقرارات بطريق الاستئناف والتماس إعادة النظر والتقرير بالنقض(أو التمييز) و المعارضة والتظلم والتنازل عن أي طريق من طرق الطعن فيها وتقديم العرض الحقيقي وقبوله وفي سحب الصور التنفيذية وفي طلب الحجز التحفظي والتنفيذي ورفعه واتخاذ الإجراءات التنفيذية والرجوع عنها.

٥-٩ تحرير وتوقيع العقود والاتفاقات والتوكيلات على اختلاف مواضيعها ومضامينها وبالشروط التي تراها وتقبل بها وكذلك تحرير وتوقيع الملاحق وإجراءات التعديل والفسخ والتخارج والطلبات والمحررات والمراسلات والإيصالات والمخالصات وسندات الصرف والقبض والنماذج الرسمية والإقرارات والإشكالات والإخطارات والإنذارات العدلية وتلقيها والرد عليها.

٦-٩ فتح الحسابات على أنواعها لدى المصارف باسم الشركة أو بأسماء المحال والمؤسسات والشركات التجارية والمدنية والصناعية وإدارة هذه الحسابات القائمة من قبل سواء الشخصية أو حسابات الشركات والمؤسسات بالإيداع والسحب النقدي أو بموجب الشيكات والحوالات والحصول على الائتمان والقروض من خلالها على هيئة تسهيلات وضمانات وكفالات وكذلك في فتح الاعتمادات وربط الودائع وتسييلها وفي استلام وقبض الشيكات والحوالات وتظهيرها وصرفها وطلب الشيكات وتوقيعها وفي شتى وسائر المعاملات المصرفية بما في ذلك استئجار الخزائن الحديدية واستخدامها وإلغاء الاستثمار وغلق الحسابات وإقفالها.

9 - MAY 2013

الكاتب العدل
Notary Public

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان إبراهيم / مترجم قانوني (عربي انجليزي وبالعكس)
MARWAN IBRAHIM LEGAL TRANSLATOR (ARABIC-ENGLISH)

# Exhibit 8 Part 5

9.7 Make the accounting. exchange. settlements. delivery. receive. reconciliation. performance. waive. and transfer with or without consideration.

٩-٧ إجراءات المحاسبة والبدل والمقايضــة والتسوية والتسليم والاستلام والصلح والأداء والإسقاط والتنــازل بعوض أو بغير عوض.

9.8 The Manager are fully responsible for the company's act and management and they are the legal representative before the law.

٩-٨ يكون للمدير مسئول مسئولية كاملة عن اعمال الشركة وادارتها وهو المسئول القانوني لها امام القضاء.

9.9 The Manager shall have all of the powers necessary for the management of the Company. representing the company and signing on its behalf and carrying out all acts required by its objects.

٩-٩ يكون للمدير كافة الصلاحيات الضرورية لإدارة الشركة والتوقيع نيابة عنها والقيام بجميع الاعمال التي تقتضيها اغراضها.

9.10 Director full commitment laws of the United Arab Emirates and especially the Ministry of Labour does not use any worker not to ensure that the Company or to leave the workers or employees who are to ensure the company's work in another company without a certified between the two companies and the Director shall be fully responsible if they do not comply with these laws before the government agencies

٩-١٠ على المدير الالتزام الكامل بقوانين دولة الامارات العربية المتحدة وخاصة وزارة العمل ولا يستخدم اي عامل ليس على كفالة الشركة او ان يترك العمال او الموظفين الذين على كفالة الشركة للعمل في شركة اخرى بدون عقد مصدق بين الشركتين ويكون المدير مسؤول مسؤولية كاملة اذا لم يلتزم بهذه القوانين امام الجهات الحكومية.

## ARTICLE (10): FINANCIAL MANAGEMENT

### المادة ( ١٠ ) : " الإدارة المالية "

10.1 The Company's Director's shall prepare the Company's balance sheet each three month and profit and loss account. He shall also prepare an annual report of the Company's activities. its financial position and the proposal for the distribution of profits. All the above should be completed within three months of from the end of the Company's financial year.

١٠-١ يقوم مدراء الشركة بإعداد الميزانية كل ثلاثة أشهر وحساب الربح والخسارة، ويقوم ايضاً باعداد تقرير سنوي عن نشاطات الشركة وعن وضعها المالي واقتراح توزيع الارباح، كل ما تقدم يجب ان يتم في خلال ثلاثة اشهر من تاريخ نهاية السنة المالية للشركة.

10.2 The balance sheet and the profit and loss account shall be submitted to the annual General Assembly for approval.

١٠-٢ يجب تقديم الميزانية وحساب الارباح والخسائر إلى الجمعية العمومية السنوية لاعتمادها.

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي /انجليزي وبالعكس)
MARWAN IBRAHIM LEGAL TRANSLATOR (ARABIC-ENGLISH)
DRC-34886 0851

مـحـاكـم دبــي
DUBAI COURTS

9 - MAY 2013

الكاتـب الـعـدل
Notary Public

٨

# Exhibit 8 Part 5

## ARTICLE (11): THE GENERAL ASSEMBLY

11.1 The Company shall have a General Assembly composed of all the partners. The General Assembly shall be convined at the invitation of the director at least once yearly on the date and the place to be determined by the director during the four months following the end of financial year.

11.2 Invitation to attend the General Assembly if so required by the board of supervision, if any or number of Partners holding not less than one quarter of the capital. Invitations to attend the General Assembly shall be sent by registered mail with acknowledgement of receipt addressed to each Partner at least twenty one days before the date of the meeting. The invitations must include the particulars of the agenda and place, date and time of the meeting.

11.3 Every Partner shall have the right to attend a General Assembly irrespective of the number of shares he owns. A partner may, by proxy, delegate another partner other than the director to represent him in a general assembly. Each Partner shall have a number of votes equal to the number of shares he owns or represents.

11.4 The agenda for the Annual General Assembly must include the following matters:

a) Review of the report of the director on the Company's activities and financial position during the year, the report of the board of Supervision, if any and the auditor's report.

b) Discussion and adoption of the balance sheet and profit and loss account.

c) Determination of the share in the profits to be distributed among the partners.

d) Appointment of the Director's or member's determination of their remuneration.

المادة (١١) : " الجمعية العمومية "

١١-١ تكون للشركة جمعية عمومية تتكون من جميع الشركاء وتنعقد الجمعية العمومية بدعوة من المدير مرة على الأقل في السنة في المكان والزمان الذي يحدده المدير خلال الاشهر الأربعة التالية لنهاية السنة المالية.

١١-٢ توجه الدعوة إلى الجمعية العمومية من مدير الشركة ويجب على المدير دعوة الجمعية العمومية للانعقاد إذا طلب ذلك مجلس الرقابة، أن وجد أن أحد أو عدد من الشركاء يملك ما لا يقل عن ربع راس المال توجه الدعوة للجمعية العمومية بالبريد المسجل بعلم الوصول على عنوان كل من الشركاء قبل احد وعشرون يوما من تاريخ الانعقاد ويجب أن يوضح في الدعوة كل من الاعضاء وجدول الاعمال ومكان وموعد الانعقاد.

١١-٣ لكل شريك حق حضور الجمعية العمومية مهما كان عدد الحصص التي يملكها وللشريك ان ينيب عنه بتفويض خاص شريكا اخر من غير المديرين لتمثيله في الجمعية ويكون لكل شريك عدد من الاصوات بقدر ما يملكه أو يمثله من حصص.

١١-٤ يجب أن يشتمل جدول اعمال الجمعية العمومية في اجتماعها السنوي على المسائل التالية:

أ) سماع تقرير المدير عن انشطة الشركة ومركزها المالي خلال السنة وتقرير مجلس الرقابة، أن وجد وتقرير مدقق الحسابات.

ب) مناقشة الميزانية وحساب الارباح والخسائر والتصديق عليهما.

ج) تحديد حصص الارباح التي توزع على الشركاء

د) تعيين المدير أو اعضاء مجلس الرقابة، ان وجد وتحديد مكافأتهم.

المسرة لخدمات الطبع والنسخ
AL NASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي، انجليزي وبالعكس)
MARWAN IBRAHIM/LEGAL TRANSLATOR (ARABIC-ENGLISH)

محاكم دبي
DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

٩

# Exhibit 8 Part 5

e) Any other matter within its competence in accordance with the provisions of the Commercial Companies Law or this Memorandum.

11.5 The General Assembly may not deliberate matters not included in the agenda unless serious issues are disclosed at the meeting which require discussion. Should any one of the Partners request the inclusion of a specific matter on the agenda, the Director must do so, but if he fails to do so, the partner has the right to appeal to the General Assembly.

11.6 Every Partner shall have the right to discuss matters included in the agenda. The Director is obliged to replay to any Partner's question, provided that, it is not detrimental to the Company's interest. Should one of the partners consider the reply of the Director to be insufficient, he may appeal to the General Assembly, whose resolution shall be binding.

11.7 Resolution of the General Assembly shall not be valid unless adopted by a number of partners representing at least three fourth (3/4) of the capital of the Company. If such majority is not achieved during the first meeting, a second meeting shall be convinced within the twenty one days following the first meeting. Resolution at this meeting shall be adopted by three fourth (3/4) of the votes represented thereat.

11.8 The Director may not participate in voting in on resolutions relating to discharge of his responsibility for the management.

11.9 Minutes adequately summarizing the discussions of the General Assembly should be prepared. The minutes and resolutions of the General Assembly should be recorded in a special register kept at the company's head office. Any of the partners may review the register personally or though an attorney. They may also review company's balance sheet, profit and loss account and annual report.

م) اية مسائل اخرى تدخل ضمن اختصاصها بموجب احكام قانون الشركات التجارية أو هذا العقد.

١١-٥ لا يجوز للجمعية العمومية ان تتداول في غير المسائل الواردة في جدول الاعمال الا اذا تكشفت اثناء الاجتماع وقائع خطيرة تقتضي المداولة فيها، واذا طلب احد الشركاء ادراج مسألة معينة على جدول الاعمال وجب على المدير اجابة الطلب، واذا فشل في ادارج طلبه، فإن الشريك له الحق أن يحتكم الجمعية العمومية.

١١-٦ لكل شريك حق مناقشة الموضوعات المدرجة في جدول الاعمال ويكون المدير ملزما بالاجابة على الشركاء بشرط الا يعرض ذلك مصالح الشركة للضرر فإذا رأى احد الشركاء ان رد المدير سؤالة غير كاف احتكم إلى الجمعية العمومية وكان قرارها بهذا الخصوص واجب التنفيذ.

١١-٧ لا تكون قرارات الجمعية العمومية صحيحة إلا إذا صدرت بموافقة عدد من الشركاء يمثل ما لايقل عن ٣/٤ رأس مال الشركة، فإذا لم تتوفر هذه الاغلبية في الاجتماع الاول وجب دعوة الشركاء لاجتماع ثان يعقد في خلال الواحد والعشرين يوما التالية للاجتماع، الحلول في هذا الاجتمع توفق على نسبة ٣/٤ الاصوات الممثل فيه.

١١-٨ لا يجوز للمدير بالاشتراك في التصويت على القرارات الخاصة بابراء ذمته من المسئولية عن الإدارة.

١١-٩ يحرر محضر بخلاصة وافية لمناقشات الجمعية العمومية وتدون المحاضر قرارات الجمعية العمومية في سجل خاص يودع بمركز الشركة الرئيسي ويكون لاي من الشركاء حق الاطلاع على الميزانية وحساب الأرباح والخسائر والتقرير السنوي.

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)
ORC-34996 0653

محاكم دبي
DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

١٠

# Exhibit 8 Part 5

11.10 Without prejudice to the rights of the third parties acting in good faith, a resolution adopted at a general assembly in violation of the provisions of the Commercial Companies Law or this Memorandum, benefiting certain Partners or causing damage to other partners without due consideration to the Company, shall be void. In this event, only the partners who had objected to adoption of the said resolution or those were unable to object thereto for acceptable reasons, may request the nullification of the resolution. Nullification resolution of the resolution. A nullification resolution. A nullification resolution shall be considered as void for all partners.

11.11 A resolution of General Assembly to dismiss a Director shall be valid only if passed by a number of partners representing at least 75% of the shares in the Company.

## ARTICLE (12): GUARANTEE

12. If any partner or director provides any personal guarantees to banks, creditors or financial institutions in connections with the business/credit facilities required by the Company, such partner or director shall be Entitled to such guarantees commission as may be approved by the resolutions of the General Assembly.

## ARTICLE (13): THE FINANCIAL YEAR

13. The financial year of the Company shall commence in 31st December each year, with the exception of the first year, which shall commence on the date of the registration of the Company in the Commercial Register and end on 31st December of the same year.

## ARTICLE (14): PROFITS AND LOSES

14.1 The Company shall allocate (10%) of its net profit each year to create a statuary reserve. The Partners is the General Assembly may allocate additional reserves as they see fit. The partners may resolve that allocation of net profits be allocation of net profits be discontinued when the reserve reaches half of the capital.

١١-١٠ مـع عدم الاخلال بحقوق الغير حسني النية، القرار الذي تصدره الجمعية العمومية ويكون مخالفاً لأحكام قانون الشركات التجارية واحكام هذا العقد، أو الذي يؤدي إلى أن يربح شركاء معينين أو يؤدي إلى خسارة شركاء معينين دون أي اعتبار للشركة، يعتبر قـرارا بـاطلاً، فـي هـذه الحالـة، لا يجـوز أن يطالـب ببطلان القرار إلا الشركاء الذين اعترضوا عليه أو الذين من الاعتراض عليه لأسباب مقبولة ويترتب علي الحكم بـالبطلان اعتبـار القـرار كـان لـم يكن بالنسبة لجميع الشركاء.

١١-١١ لا يكون قرار الجمعية العمومية بعزل المدير صحيحاً إلا إذا أقره عدد من الشركاء يمثلون ما لا يقل عن ٧٥% من الحصص في الشركة.

## المادة (١٢) الضمانات

١٢- إذا قدم أي شريك أو عضو من أعضاء مجلس الإدارة أي ضمانات شخصية للبنوك أو الدائنين أو البيوت المالية في شأن العمل التجاري أو التسهيلات الائتمانية من قبل الشركة، فإن هذا الشريك أو عضو مجلس الإدارة سوف يستحق عمولة الضمان والتي يقرها اجتماع الجمعية العمومية للمساهمين.

## المادة (١٣) السنة المالية

١٣- تبدأ السنة المالية في الشركة في الأول من يناير من كل عام فيما عدا السنة الأولى والتي تبدأ من تاريخ تسجيل الشركة في السجل التجاري وتنتهي في الحادي والثلاثين من ديسمبر من نفس السنة.

## المادة (١٤) توزيع الأرباح والخسائر:

١٤-١ تخصص نسبة لا تقل عن ١٠% من صافي أرباح الشركة كل سنة لتكون احتياطي قانوني، للشركاء في الجمعية العمومية أن يضعوا احتياطي قانوني عندما يترائى لهم ذلك للشركاء أن يقرروا وقف الاحتياطي من صافي الأرباح عندما يصل المخزون الاحتياطي نصف رأس المال.

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)
DRC-3499920554

محاكم دبي
DUBAI COURTS

9 - MAY 2013

الكاتب العدل
Notary Public

١١

14.2 The Profit shall be distributed between the partners as follows:

| Full name of partner | Percentage of Profits | نسبة الارباح | الإسم واللقب |
|---|---|---|---|
| 1. First Party | 20% | ٢٠% | ١. الطرف الأول |
| 2. Second Party | 80% | ٨٠% | ٢. الطرف الثاني |
| Total | 100% | ١٠٠% | المجموع |

٢-١٤- يتم توزيع الأرباح بين الشركاء وفق النسب التالية:

### ARTICLE (15): THE AUDITOR

15. The Company shall have one or more Auditors registered in U.A.E to be selected by the Manager. The Auditor shall be subject to the same provisions concerning to Auditors of Joint Stock Companies.

### المادة (١٥) مدققوا الحسابات

١٥- يكون للشركة مدقق حسابات أو أكثر من المرخصين في الإمارات يختارهم المدير وتسري عليهم نفس الأحكام المتعلقة بالمدققين في الشركات المساهمة.

### ARTICLE (16): VARIATION ON THIS MEMORANDUM

16. It shall not be permissible to amend this Memorandum nor to increase or reduce the capital in the Company unless it is approved by a number of Partners holding 75% of the Capital of the Company. nor shall it be permissible to increase the obligations of the Partners save by their unanimous consent. A resolution to reduce the capital of the Company shall not be valid unless it is approved by the Department of Economic Development. The Director(s) of the Company must serve and deposit the legal documents relating to the above and any amendments thereto with the Commercial Registry.

### المادة (١٦) تعديل عقد التأسيس

١٦- لا يجوز تعديل هذا العقد ولا زيادة رأس مال الشركة أو تخفيضه إلا بموافقة عدد من الشركاء يملكون ٧٥% من رأس المال، كما لا يجوز زيادة التزامات الشركاء إلا بموافقتهم الجماعية، ولا يسري قرار تخفيض رأس مالك الشركة إلا بعد موافقة دائرة التنمية الاقتصادية ويتعين على مدير/ مديري الشركة إيداع المستندات المتعلقة بما جاء أعلاه وأية تعديلات تجري عليها لدى السجل التجاري.

### ARTICLE (17): DISSOLUTION OF THE COMPANY

17. The Company shall be dissolved for any of the following reasons:

a) The expire of the period specified in this Memorandum unless this period is renewed.
b) Fulfillment of the objects for which the Company was established.
c) Amalgamation of the Company.
d) The Partners holding more than the three fourth (3/4) of the capital of the Company deciding to terminate the duration of the Company.

### المادة (١٧) حل الشركة

١٧- تحل الشركة لأي من الأسباب التالية:

أ- انتهاء المدة المحددة للشركة في هذا العقد ما لم يتفق على تجديدها.
ب- انتهاء الأغراض التي أسست من أجلها الشركة.
ج- اندماج الشركة في شركة أخرى.
د- اتفاق الشركاء الذين يملكون أكثر من ٣/٤ من رأس مال الشركة على انتهاء مدة الشركة.

9 - MAY 2013

الكاتب العدل
Notary Public

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)

١٢

# Exhibit 8 Part 5

e) The depletion of all or most of the assets of the Company making beneficial investment of the reminder of the assets, if any, impracticable.

f) If the number of partners of the Company becomes less than two.

g) Upon the rendering of the decision from the court to dissolve the Company.

## ARTICLE (18): LIQUIDATION OF THE COMPANY

18. One or more liquidates shall be appointed by the partners at a General Assembly and in accordance with the provisions of the Commercial Companies Law, unless the partners agree, otherwise, upon the dissolution of the Company. If the liquidation is by decision of the court, the court shall determine the manner of the liquidation and powers of the director shall cease when the liquidator is appointed.

## ARTICLE (19): NOTICES

19. Notices sent by the Company to the Partners shall be in the form of registered recorded delivery letters to the address of each Partner as shown in this Memorandum, and recorded in the register of partners.

## ARTICLE (20): COPIES

20. This Memorandum has been made and signed by the parties, and the other copies for registration purposes as required by the Commercial Companies Law.

## ARTICLE (21): MISCELLANEOUS

21.1 The Company shall not have been a corporate personality and shall not be allowed to perform its until it is registered in the Commercial Register Individuals shall be jointly liable for all acts or transactions performed on behalf of the Company by them prior to its registration.

هـ - هلاك جميع أو معظم أموال الشركة بحيث يكون العائد الاستثماري من الباقي من رأس المال، إن وجد عديم الجدوى.

و- إذا أصبح عدد الشركاء أقل من اثنين.

ز- بناء على صدور قرار من المحكمة ينص على حل الشركة.

## المادة (١٨) : تصفية الشركة

١٨-تقوم الجمعية العمومية بتعيين مصفي قانوني أو أكثر ويتبع في تصفية الشركة الأحكام الواردة في قانون الشركات التجارية ما لم يتم حل الشركة بناء على موافقة الشركاء،وإذا كانت التصفية بناء على حكم المحكمة , فسوف تعين المحكمة طريقة التصفية وتنتهي صلاحيات المدير بتعيين المحكمة للمصفي القضائي.

## المادة (١٩) : التبليغات

١٩-تكون التبليغات الموجهة من الشركة إلى الشركاء بواسطة خطابات مسجلة بعلم الوصول على عنوان كل شريك كما هو مبين في هذا العقد وكما هو مسجل في سجل الشركاء.

## المادة (٢٠):النسخ

٢٠- حرر هذا العقد وتم توقيعه من قبل أطراف وأعطي كل طرف نسخة منه وتكون النسخ الأخرى لاغراض التسجيل وفقا لما يقتضيه قانون الشركات.

## المادة (٢١) أحكام متفرقة

٢١-١ لا يكون للشركة شخصية اعتبارية ولا يجوز لها أنتبدأ أعمالها إلا بعد قيدها في السجل التجاري ,وسوف يتعرض للمسائلة القانونية بسبب كل من الاعمال أو المعاملات التي قاموا بها من جانبهم وباسم الشركة قبل تسجيل الشركة.

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان ابراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM / LEGAL TRANSLATOR (ARABIC-ENGLISH)

DUBAI COURTS
9 - MAY 2011
Notary

# Exhibit 8 Part 5

21.2 Matters not provided for in this memorandum shall be subject to the provision of the Commercial Companies Law and its amendments and ministerial decisions made in implementation therefore.

21.3 This Memorandum and any amendments thereto shall be written in Arabic Language . English Language and  notarized by the concerned authority, otherwise the memorandum and any amendments thereto shall be void. Should there be any amendment. such amendments must be annexed hereto.

21.4 second party Authorizes first party If he left the Country more than six months and/or if the license is not renewed for (2) two months from the date of expiry of the license. then the First Party singly has the right to dispose with the Second Party shares including his share selling to himself or others or to make any changes in license including company name and activity change, adding and withdrawal of partners, or to dissolve and to cancel the license and to refund bank guarantees of partners of the company and employees from department of immigration. Ministry of Labor . Tourism Department, Water and electricity authority of Dubai , Customs and all ports of U.A.E and to refund other guarantees from banks or any other party.

## **ARTICLE (22): DISPUTES**

22. In the event that any differences arise between the partners in respect of the liquidation of the company or about any article or clause of this Memorandum of Association. it shall be settled amicable. if no agreement is reached, then U.A.E Courts Department shall have jurisdiction to dispose of such difference.

٢١-٢ المسائل التي لم يرد ذكرها في هذا العقد سوف تخضع لاحكام قانون الشركات التجارية وتعديلاته والقرارات الوزارية الصادرة له.

٢١-٣ هذا العقد وأي تعديلات تجري عليه سوف تكتب باللغة العربية ، باللغة الانجليزية وتوثق من قبل السلطات المختصة , والا كان هذا العقد أو التعديلات التي تطرأ عليه باطلة ,وإذا دعت الحاجة إلى وجود تعديلات ,يجب ارفاق مثل هذه التعديلات مع هذاالعقد.

٢١-٤ يفوض الطرف الثاني الطرف الاول انه في حالة مغادرته للدولة اكثر من ٦ شهور و/او عدم تجديدة للرخصة مدة شهرين من تاريخ انتهاء الرخصة بحق للطرف الأول منفردا التصرف بحصة الطرف الثاني في البيع لنفسه او للغير ولجميع التعديلات في الرخصة ، بما فيها تغيير اسم الشركة ونشاطها، وادخال واخراج شركاء او حل و تصفية الشركة و الغاء الرخصة و استرجاع الضمانات البنكية المودعة باسم الشركاء الشركة وعمالها من الادارة العامة للاقامة وشؤون الاجانب ووزارة العمل و دائرة السياحة و هيئة دبي للكهرباء والمياه والجمارك الموانئ واسترجاع ضمانات أخرى من بنوك او اي جهة أخرى .

## المادة (٢٢): " المنازعات"

٢٢- في حالة نشوب أي اختلاف بين الشركاء بشأن تصفية الشركة أو حول أي بند من البنود في هذا العقد فأنه يصار إلى حلها ودياً ، وفي حال عدم الاتفاق يكون الفصل فيه من اختصاص دائرة ومحاكم الإمارات العربية المتحدة .

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES
مروان إبراهيم / مترجم قانوني (عربي/انجليزي وبالعكس)
MARWAN IBRAHIM / LEGAL TRANSLATOR (ARABIC/ENGLISH)

DRC-34996 0657

محاكم دبي
DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

١٤

### ARTICLE (23): BANKRUPT OR DEATH OF A PARTY (PARTNER)

**23.1** In case of death of a shareholder's title to his shares be transferred to his heirs or legatees according to his personal law. The heirs or legatees shall be representative in all dealings with the company.

**23.2** In case a shareholder becomes legally incompetent due to lunacy, physical disability, insolvency, bankruptcy, winding up or any other cause, his legal representative shall carry on his rights and obligations in the company.

**23.3** In the event of bankruptcy or death of any party, its representative and creditors shall not be entitled in any event to apply for selling or dividing the property of the company, nor shall they interfere in its management. The Company shall continue between the remaining parties and the representatives of the bankrupt or deceased party until the end of duration of the company and the rights of such representatives shall be to the profits accruing to the deceased bankrupt party and/or in all dealings with the company.

**IN WITNESS WHEREOF,** the parties hereto signed this Memorandum of Association, on the day, month and year herein above mentioned.

المادة (٢٣): " افلاس أو وفاة طرف (شريك)"

٢٣ـ١ في حالة وفاة أياً من الشركاء فإن الحصص العائدة له يتم تحويلها إلى الموصى عليه حسب شروط الشخص ويكون على الورثة اختيار واحد منهم ليكون مندوباً عنهم في معاملات الشركة.

٢٣ـ٢ إذا صبح احد الشركاء معاقاً عاجزا بسبب الجنون أو مرض الشيخوخة أو العجز الجسماني أو العجز عن الوفاء أو الافلاس سبب آخر فإن على ممثلة القانوني استلام حقوقه والتزاماته في الشركة.

٢٣ـ٣ في حالة افلاس أو وفاة أي طرف فلا يحق لممثليه ودائنيه طلب اغلاق الشركة أو تقسيم ممتلكاته، كما لا يحق لهم التدخل في ادارتها وتستمر الشركة في اعمالها بين بقية الشركاء وممثلي الطرف المفلس أو المتوفي ولغاية نهاية مدة الشركة، وستبقى حقوق هؤلاء المندوبين أو الورثة بالارباح المستحقة للطرف المتوفي أو من شهر فلاسه في جميع التعاملات مع الشركة.

واشهادا على ذلك وقع الاطراف المذكورين اعلاه عقد التأسيس هذا في اليوم والشهر والسنة المذكورين أعلاه.



توقيع الطرف الأول
**Signature First Party**

توقيع الطرف الثاني
**Signature Second Party**

DUBAI COURTS
9 - MAY 2013
الكاتب العدل
Notary Public

المسرة لخدمات الطبع والنسخ
AL MASARRA TYPING & PHOTOCOPYING SERVICES

١٥

# Exhibit 8 Part 5





بتاريخ ٢٠١٣-٠٥-٠٩ حضر امامي السد / عمر حسن علي العطار والسد/
الآن فرانكويس فيفيان حويتر وبعد التعرف عليهم وقعوا على المستد
بحضوري حسب الأصول.

رقم الإيصال    ١٦١٢٥٠

رقم المحرر    ٧٢٠١٣/١/٨٦٠٤٧

البرشاء    -    ٣٢٠٨٧

سالم جمعة المهيني

الكاتب العدل

مـحـاكـم دبـي
**DUBAI COURTS**

9 ~ MAY 2013

الكاتب العدل
**Notary Public**

www.dc.gov.ae

DRC-34996 0659

Exhibit 8 Part 5

## Contract of Amendment to the Memorandum of Association

ملحق بتعديل عقد شركة ذات مسئولية
محدودة

This Agreement is made between:

أبرم هذا العقد بين:

### First Party:

Mr. **Omar Hassan Ali Alattar**, U.A.E Nationality, holder of Passport No: ▮▮▮▮▮ Date of birth: ▮▮▮▮▮. Tel: ▮▮▮▮▮, Address: Al Barsha Second , Villa No. 3 - Dubai – U.A.E .

الطرف الأول:

السيد/ عمر حسن علي العطار، إماراتي الجنسية، يحمل جواز سفر رقم ▮▮▮▮▮ تاريخ الميـلاد: ▮▮▮▮▮ – رقـــم التلفـــون: ▮▮▮▮▮ العنوان: البرشاء الثانية ، فيلا رقم 3 - دبي – الإمارات العربية المتحدة.

Represented by signature Mr. **Syed Aun Abbas Naqvi Syed Abbas**, **Pakistan** National, by attested POA From Dubai under No. 247049/1/2015, date : 06/12/2015

ويمثله بالتوقيع السيد/ سيد عون عباس نقوى سيد عباس، باكستاني الجنسية، بموجب وكالة مصدقة بدبي تحت رقم محرر (2015/1/247049) بتاريخ (2015/12/06)

### Second Party:

Mr. **Alain Francois V Goetz**, **Belgium** Nationality, holder of passport No:▮▮▮▮▮ Date of birth: ▮▮▮▮▮ Address: Dubai – U.A.E

الطرف الثاني:

السيد/ الان فرانكـويس فيفيـان جـويتز، بلجيكـى الجنسية، يحمل جواز سفر رقم ▮▮▮▮▮ ، تـاريخ المـيلاد: ▮▮▮▮▮ العنوان: دبي – الإمارات العربية المتحدة.

The said parties confirmed their legal status to contract agreed as follows:

أقر الأطراف بأهليتهم للتعاقد واتفقوا على مايلي:

### Preamble:

Whereas a limited liability company established under the trade name (Goetz Gold – L.L.C). (Limited Liability Company) Authenticated by Dubai notary Public under serial No: 2016/1/230637 in Date 03/11/2016, and make amendment under serial No: 106761/1/2017 in Date 09/05/2017, hereinafter referred for which a trade license No: **689308**.

مقدمة:

تأسسـت شـركة ذات مسـئولية محـدودة بالإسـم التجاري (جويتز للذهب - ش ذ م م) بموجب عقد تأسـيس مصـدق تحـت رقـم 230637/1/2016 بتـاريخ 2016/11/03، وبموجب ملحق مصدقة تحـت رقـم المحـرر 106761/1/2017 بتـاريخ 2017/05/09 ، وبموجب تـرخيص صـادر عـن دائرة التنمية الاقتصادية بدبي برقم: **689308**.

All the partner decided to change the trade name of the company, and get permission from economic development department.

ورغب الأطراف علـى تغيير اسم الشـركة وقد إستحصلوا على الموافقة على ذلك من دائرة التنمية الاقتصادية.

DUBAI COURT
31 MAR 2019
Notary Public

Fadal Omar Aljossam
Sworn Legal Translator / Ministry of Justice
Arabic English Arabic
DUBAI

Exhibit 8 Part 5

**First:**

The previous preamble shall be considered as an integral part of this contract.

**Second: Amendment of the introduction:**

Change Article Name of the company from contract, to be Came:

From

(Goetz Gold - L.L.C)

To

(P G R Gold Trading L.L.C)

**Third:**

The other article, terms and conditions of the Article of Association shall remain then same without any amendment.

**Fourth:**

This contract shall consider as an integral part of the article of association, to be read and interpreted with it.

This contract has been red to its parties who understood and accepted its provisions and accordingly signed.

**First Party:**

**Signature:**

**Second Party:**

**Signature:**

أولا:
يعتبر التمهيد السابق جزء لا يتجزأ من هذا العقد.

ثانيا: تعديل الديباجة:
تعديل المادة الخاصة بأسم الشركة من عقد التأسيس لتصبح:

من

(جويتز للذهب - ش ذ م م)

الى

(بي جي ار لتجارة الذهب ش.ذ.م.م)

ثالثا:
تبقى باقي بنود وأحكام وشروط عقد التأسيس كما هي بدون تعديل.

رابعا:
يعتبر هذا العقد والملحق جزء لا يتجزأ من عقد التأسيس وملاحقة ومكملا ويقرأ ويفسر معهم.

تلي هذا العقد على أطرافه وتفهموا أحكامه وقبلوها وعليه وقعوا.

الطرف الأول:

التوقيع:

الطرف الثاني:

التوقيع:

Fadel Omor Allossem
Sware Legal Translator / Ministry of Justice
Arabic English Arabic
Mob.: 00971504460931
DUBAI

DUBAI COURT
3 1 MAR 2019
الكاتـب العـدل
Notary Public

DRC-34996 0661

## Exhibit 8 Part 5

GOVERNMENT OF DUBAI

محـاكم دبــي
DUBAI COURT

3 1 MAR 2019

الكاتـب العـدل
Notary Public



بتاريخ ٢٠١٩-٠٢-٣١ حضر امامى السيد/ الاب فرانكوبس فيعيان حوسر والسيد
/ سيد عوض عباس نقوى سيد عباس بصفته المذكوره وبعد التعرف عليهم
وقعوا على المسند بحضورى حسب الأصول.

رقم الإيصال ١٨ / ٢٠١٩ / ١٢٨٧٢٣ وقيمه (٦٢٠)
رقم المحــرر ٢٠١٩/١/٦٨٨٢٩
لبرشاء     -     ٢١٩٦١

منال حسين آل علي

الكاتـب العـدل

www.dc.gov.ae



YEAR OF ZAYED

DRC-34996 0662

Exhibit 8 Part 5

# Annex
# O

DRC-34996 0663

Exhibit 8 Part 5

## Contract of Shares Selling and Amendment to the Memorandum of Association

عقد بيع حصص وملحق بتعديل

عقد شركة ذات مسئولية محدودة

This Agreement is made between:

تم الإتفاق بين:

### 1- First Party:

Mr. **Omar Hassan Ali Alattar**, U.A.E Nationality, holding Passport No. ███████
Date of birth:███████

Tel: ███████

Address: Al Barsha 2, Villa No. 3 - Dubai – U.A.E.
Represented By Signature by Mr. **Syed Aun Abbas Naqui Syed Abbas, Pakistan** National, holder of passport No. ███████ by attested Power of Attorney from Dubai under No. 247049/1/2015, date: 06/12/2015.

### 1- الطرف الأول:

السيد/ عمر حسن علي العطار، إماراتي الجنسية يحمل جواز رقم: ███████
تاريخ الميلاد: ███████
رقم التلفون: ███████
العنوان: البرشاء 2، فيلا رقم 3 - دبي – الإمارات العربية المتحدة.
يمثله بالتوقيع السيد/ سيد عون عباس نقوي سيد عباس، باكستاني الجنسية، يحمل جواز سفر رقم ███████، بموجب وكالة مصدقة بدبي تحت رقم محرر (2015/1/247049) بتاريخ (2015/12/06).

### 2- Second Party:

Mr. **Shahid Abdul Qadar, Pakistan** Nationality, holding passport No. ███████
Date of birth: ███████

Tel: ███████

Address: Al Qusais Industerial, Area 5, Dubai Properties Bldg, Shop No. 1 - Dubai – U.A.E.

### 2- الطرف الثاني:

السيد/ شاهد عبد القادر، باكستاني الجنسية، يحمل جواز سفر رقم: ███████
تاريخ الميلاد: ███████
رقم التلفون: ███████
العنوان: القصيص الصناعية 5، بناية مؤسسة دبي العقارية، محل رقم : 1 - دبي – الإمارات العربية المتحدة.

### 3- Third Party:

Mrs. **Ma Meryl Mongaya Secapuri, Filipino** Nationality, holding Passport No: ███████
Date of birth: ███████
Tel: ███████

Address: Al Qusais Industerial, Area 5, Dubai Properties Bldg, Shop No. 1 - Dubai – U.A.E.

### 3- الطرف الثالث:

السيدة/ مامايريل مونجايا سيكابوري، فلبينية الجنسية، تحمل جواز سفر رقم: ███████
تاريخ الميلاد: ███████
رقم التلفون: ███████
العنوان: القصيص الصناعية 5، بناية مؤسسة دبي العقارية ، محل رقم : 1 - دبي – الإمارات العربية المتحدة.

DUBAI COURT

1 1 JUN 2017

Notary Public

Exhibit 8 Part 5

**4- Fourth Party:**

Mr. Alain Francois V Goetz, Belgium
Nationality, holding Passport No ██████
Date of birth: ██████
Tel: ██████

Address: Deira, Al Ras, Govel Center, Area 4,
Floor No. F162, - Dubai – U.A.E

The said parties confirmed their legal status to
contract agreed as follows:

**Preamble:**
Whereas a limited liability company established
under the trade name (**Premier Gold Refinery
L.L.C**) (Limited Liability Company)
Authenticated by Dubai Notary Public under
serial No: 162484/1/2014 on Date 20/08/2014,
and made amendment attested under serial No:
247016/1/2014 on Date 18/12/2014, and made
amendment attested under serial No:
694/1/2017 on Date 02/01/2017, hereinafter
referred for which a trade license from Dubai
Economic Department. And make amendment
under No. **716708.**

And whereas the **Second & Third party**
desires to sell and transfer all them shares of the
Company to the **Fourth party.**

accordingly they have agreed as per the
following terms and conditions:

**First :**
The previous preamble shall be considered as
an integral part of this contract.

4- **الطرف الرابع:**

السيـد/ الان فرانكـويس فيليـان جـويتز، بلجيكـى
الجنسيـة، يحمـل جـواز سـفر رقـم: ██████

تاريخ الميلاد: ██████

رقم التلفون: ██████

العنـوان: ديـره، الـراس، سـنتر جوبـل، المنطقـة
4، طـابق رقـم: F162 - دبـي – الإمـارات
العربية المتحدة.

أقر الأطراف بأهليتهم للتعاقد واتفقوا على مايلي:

**مقدمة:**
تأسسـت شـركة ذات مسـئولية محـدودة بالإسـم
التجـاري (بريميـر لتصـفية الـذهب - ش.ذ.م.م)
بموجب عقـد تأسـيس مصـدق بـرقم المحـرر
162484/1/2014 بتـاريخ 2014/08/20،
وأعقبـوه بملحـق عقـد تأسـيس مصـدق بـرقم
المحـرر 247016/1/2014بتـاريخ
2014/12/18، وأعقبـوه ملحـق عقـد تأسـيس
مصـدق بـرقم المحـرر 694/1/2017 بتـاريخ
2017/01/02، وبموجب تـرخيص صـادر مـن
دائـرة التنميـة الاقتصـادية بـدبي تحـت الـرقم
716708.

ورغـب الطـرف الثـاني والثـالث فـي بيـع كامـل
حصـتهم فـي الشـركة ووجـدت الرغبـة لـدى
الطرف الرابع في شرائها.

لذا فقد اتفقوا على الأحكام والشروط التالية:

**أولا:**
يعتبـر التمهيـد السـابق جـزءا لايتجـزأ مـن هـذا
العقـد.

DUBAI COURT

1 1 JUN 2017

الكاتـب العـدل
Notary Public

DRC-34896 0665

Exhibit 8 Part 5

**Second:**

a) The **Second Party** sold, transferred and assigned all of his shares represents **(22%)** of the company's capital to the **Fourth Party** who accepted the same for total amount Dhs. **66,000/-**

B) The Fourth Party accepted to purchase the shares from the Second Party and paid its value on signing this agreement, according the withdrawal party will be clear from any previous or future claims or obligation.

C) The **Third Party** sold, transferred and assigned all of his shares represents **(27%)** of the company's capital to the **Fourth Party** who accepted the same for total amount Dhs. **81,000/-**

D) The Fourth Party accepted to purchase the shares from the Third Party and paid its value on signing this agreement, according the withdrawal party will be clear from any previous or future claims or obligation.

There for parties hereby agreed to amend the memorandum of Association on the following terms and conditions:-

**First: Amendment of the introduction:**

The introduction of memorandum of Association to be amended by remove **Second & Third Party** name and add **Fourth Party** in which the partners name is mentioned in the contract.

**Amendment of Article (6) Capital of the Company:**

The Capital of the Company shall be Dhs. **300,000/-** **(Dirhams Three Hundred Thousand)**, divided into **300 (Three Hundred)** shares, the value of each share shall be Dhs. **1000/- (Dirhams One Thousands)** all are cash shares divided between the partners as following:

ثانيا:

أ) باع وأسقط وتنازل الطرف الثاني كامل حصته في الشركة للطرف الرابع القابل لذلك والتي تمثل (22%) من رأسمال الشركة وذلك لقاء مبلغ 66,000 درهم.

ب) قبل الطرف الرابع شراء الحصص من الطرف الثاني وقام بدفع ثمنها عند توقيع هذه الإتفاقية وهذه بمثابة مخالصة للطرف المنسحب حيث لا يترتب عليه أية مطالبات سابقة أو لاحقة بعد التوقيع على هذا العقد.

ج) باع وأسقط وتنازل الطرف الثالث كامل حصته في الشركة للطرف الرابع القابل لذلك والتي تمثل (27%) من رأسمال الشركة وذلك لقاء مبلغ 81,000 درهم.

د) قبل الطرف الرابع شراء الحصص من الطرف الثالث وقام بدفع ثمنها عند توقيع هذه الإتفاقية وهذه بمثابة مخالصة للطرف المنسحب حيث لا يترتب عليه أية مطالبات سابقة أو لاحقة بعد التوقيع على هذا العقد.

بناء عليه اتفق الأطراف على تعديل عقد التأسيس المشار إليه وفقا للأحكام والشروط التالية:-

أولا: تعديل الديباجة:

تعديل ديباجة عقد التأسيس بحذف إسم الطرف الثاني والثالث وإضافة إسم الطرف الرابع في الديباجة وفي أي مكان آخر ورد فيه أسماء الشركاء.

تعديل المادة (6) الخاصة برأس مال الشركة:

حدد رأسمال الشركة بمبلغ وقدره 300,000 درهم (ثلاثمائة ألف درهم فقط) مقسمة إلى 300 حصة قيمة كل حصة 1000 درهم (ألف درهم) موزعة بين الشركاء على النحو التالي:

DRG-34996 0666

DUBAI COURT

1 1 JUN 2017

## Exhibit 8 Part 5

| Partners | No Of Share | Value Of Share | Percentage Of Share |
|---|---|---|---|
| First Party | 153 | 153,000 | 51% |
| Fourth Party | 147 | 147,000 | 49% |
| Total | 300 | 300,000 | 100% |

### Amendment of article of Distribution of profits and losses:

The profits and losses stated in Article (14) of the memorandum of Association shall be re-distributed as follows:

1- First party    :    20%

2- Fourth party :    80%

### Second:

The other article, terms and conditions of the Article of Association shall remain then same without any amendment.

### Third:

This contract shall considered as an integral part of the article of association, to be read and interpreted with it.

This contract has been read to its parties who understood and accepted its provisions and accordingly signed.

**Signature of First party:**

**Signature of Second Party:**

**Signature of Third Party:**

**Signature of Fourth Party:**

DRC-34996 0667

| الشريك | عدد الحصص | قيمة الحصص | % الحصص |
|---|---|---|---|
| الطرف الاول | 153 | 153,000 | 51% |
| الطرف الرابع | 147 | 147,000 | 49% |
| المجموع | 300 | 300,000 | 100% |

تعديل المادة الخاصة بتوزيع الأرباح والخسائر:

يعــــاد توزيـــع الأربـــاح والخســـائر الـــوارد بالمادة من عقد التأسيس لتصبح كما يلي:

1- الطرف الاول :  20%

2- الطرف الرابع :  80%

ثانيا:

تبقـــي بـــاقي بنـــود وأحكـــام وشـــروط عقـــد التأسيس كما هي بدون تعديل.

ثالثا:

يعتبـــر هـــذا العقـــد والملحـــق جـــزه لا يتجـــزأ مـــن عقـــد التأســـيس وملاحقـــة ومكمـــلا ويقـــرا ويفسر معهم.

تلـــي هـــذا العقـــد علـــى أطرافــــه وتفهمـــوا أحكامه وقبلوها وعليه وقعوا.

توقيع الطرف الأول:

توقيع الطرف الثاني:

توقيع الطرف الثالث:

توقيع الطرف الرابع:

DUBAI COURT

1 1 JUN 2017

الكـاتب بـعدل
Notary Public

# Exhibit 8 Part 5



**محاكم دبي**
**DUBAI COURTS**



GOVERNMENT OF DUBAI

بتاريخ ١١-٠٦-٢٠١٧ حضر امامي السيد/ شاهد عبدالقادر والسيد/ الان
فرانكويس فيفيان جوبتر والسيد / السيد / سيد عون عباس نقوى سيد عباس بصفته
المذكورة والسيدة/ ماماريل مونجايا سيكابوري وبعد التعرف عليهم وفعوا
على المستند بحضوري حسب الأصول.

رقم الإيصـال  ١٨ / ٢٠١٧ / ٣٦٠٢٢٠ وقيمته (١١٥٥)

رقم المحـــرر  ٢٠١٧/١/١٣٣٠٩٥

البرشاء  -  ٤٤١١٦

حسين عبدالله حسين

الكاتـب العـــدل

www.dc.gov.ae



DUBAI COURT
1 1 JUN 2017
Notary Public

DRC-34996 0668

Exhibit 8 Part 5

# Annex
# P

DRC-34996 0869

Exhibit 8 Part 5

In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie
na neerlegging ter griffie van de akte

be

B
St    I    |||||| ||||| ||||| ||||| ||||| ||||||||||||||||||||||||
          *07149054*

                                                            Griffie

DRC-34996 0670

# Exhibit 8 Part 5

Company No.
Name
(Full)    **OROFINO**

Legal Form,    Public Limited Company

Address:  2018 Antwerpen, Lange Herentalsestraat 20-26

<u>Subject of Act</u> :  **Incorporation**

, It appears from a deed executed before notary Frederik Jorissen in Antwerp on September 20, 2007,: "registered in Antwerp, REGISTRATIE 5, the 21 SEP. 2007. Baek 170 b!ad 27 box 9. Received: € 25,0o: The receiver (get) the ea Inspecteurwn J.BORREMANS", that.

1) The private limited liability company "BERKENRODE" with its registered office at 2018:
- Antwerp, Jacob Jacobsstraat 56, registered in the Register of Legal Entities at the Registry of the Commercial Court of Antwerp with unmember number 0478 862 274, established by deed executed before notary public, Koen De Raeymaecker in Antwerp on the twenty-second of November two thousand and two, published in the appendices to the Belgian Official Gazette of the third of December thereafter, under number 02144787.

2) The limited liability company under Luxembourg law "SA ARGOR INTERNATIONAL" with its registered office at 1420 Luxembourg (Grand Duchy of Luxembourg), 222c Avenue Gaston D1dench, registered in the Luxembourg Trade Register under number 119953 with VAT number 2006 2225 018.

Have incorporated a limited liability company under the name "OROFINO", with registered office at 2018 Antwerp, Lange Herentalsestraat 20-26, for the purpose of : '

Investing in, subscribing for, permanently underwriting, placing, buying, selling and negotiating shares; units, bonds, warrants, certificates, claims, monies and other transferable securities, issued by Belgian or foreign companies, whether or not in the form of: commercial companies, administrative offices, institutions and associations, whether or not with a (semi-) public legal status.

)public law status,

Management of deposits and participations in subsidiaries, acting as: directors, providing advice, management and other services to or in accordance with: the company's own activities. These services may be provided pursuant to contractual: or statutory appointments and in the capacity of external counsel or body of the client;

Providing loans and advances under any form or duration, to any affiliated!

- companies or enterprises in which it holds a participation, as well as guaranteeing all;

: commitments of the same enterprises.

This enumeration is not llm1tat1ef and the terms asset management or advice mentioned in these articles of association are: activities other than those referred to in the Law of April six, nineteen hundred and ninety-five concerning the secondary markets, the status and supervision of investment companies, intermediaries and: investment advisors.

To that end, the company may cooperate with, participate in, or in any way, directly or indirectly, take interests in other companies.

The company may act as surety both for its own commitments and for the commitments of: third parties, including by mortgaging or pledging its assets, including its own: business. '

The company may also act as director, proxy, agent or liquidator in: other companies or enterprises.

In general, the company may perform any commercial, industrial, financial, movable or immovable act directly or indirectly related to its corporate purpose or which is likely to facilitate the achievement thereof wholly or in part.

The company's purpose, in Belgium and abroad, is to operate a real estate company. The acquisition, sale and exchange of immovable property, the subdivision of building land, the renting, leasing, construction and renovation, the management of immovable and movable property! for its own account. Acting as construction promoter and coordinator. Building, remodeling, subdivision,: construction promotie and proJect development in the real estate sector. In general, the company may perform all commercial, industrial, financial, movable and immovable acts that relate directly or indirectly to its rnational purpose, or that are of a nature to facilitate or extend its achievement, and that are necessary, useful or even conducive thereto. Moreover, the company may take an interest, through participation, contribution or any other way, in all companies, partnerships, economic collaborations, professional associations or groupings, existing or to be incorporated, both in Belgium and abroad, that pursue a similar, complementary or similar purpose, or that are of a nature to promote the development of its business. The company is authorized to participate, in any form, in the creation, expansion. conversion, merger, absorption, management and control of companies having similar, related or complementary activities. It may also provide any assistance to companies in which it has an interest, particularly in the form of loans, advances or guarantees, as well as assistance with management and/or administration. The company may therefore, with or without remuneration, act as director, proxy holder, mandatary or liquidator in other companies, act as guarantor for third parties, managers and partners, as well as grant them loans, advances and credits, with or without collateral and/or personal guarantees, subject to the legal restrictions in this area.

- enterprises or companies in which it holds a participation, as well as the guaranteeing of all;

: commitments of the same companies.

This enumeration is not llm1tat1ef and the terms asset management or advice mentioned in these articles of association are: activities other than those referred to by the Law of April six, nineteen hundred and ninety-five concerning the secondary markets, the status and supervision of investment companies, intermediaries and: investment advisors.

To this end, the company may cooperate with, participate in, or in any way, directly or indirectly, take

interests in other companies.

# Exhibit 8 Part 5

The company may act as surety both for its own commitments and for the commitments of: third parties, including by mortgaging or pledging its assets, including its own: business.

The company may also act as director, proxy, agent or liquidator in: other companies or enterprises.

In general, the company may engage in any commercial, industrial, financial, movable or immovable transaction directly or indirectly related to its corporate purpose or which is likely to facilitate the achievement thereof in whole or in part.

The company's purpose, in Belgium and abroad, is to operate a real estate company. The acquisition, sale and exchange of immovable property, the subdivision of building land, the renting, leasing, construction and renovation, the management of immovable and movable property! for its own account. Acting as construction promoter and coordinator. Building, remodeling, subdivision,: construction promotle and proJect development in the real estate sector. In general, the company may perform all commercial, industrial, financial, movable and immovable acts that relate directly or indirectly to its mational purpose, or that are of a nature to facilitate or extend its achievement, and that are necessary, useful or even conducive thereto. Moreover, the company may take an interest, through participation, contribution or any other way, in all companies, partnerships, economic collaborations, professional associations or groupings, existing or to be incorporated, both in Belgium and abroad, that pursue a similar, complementary or similar purpose, or that are of a nature to promote the development of its business. The company is authorized to participate, in any form, in the creation, expansion, conversion, merger, absorption, management and control of companies having similar, related or complementary activities. It may also provide any assistance to companies in which it has an interest, particularly in the form of loans, advances or guarantees, as well as assistance with management and/or administration. Consequently, the company may, with or without remuneration, act as director, proxy holder, mandatary or liquidator in other companies, act as guarantor for third parties, managers and partners, as well as grant them loans, advances and credits, with or without collateral and/or personal guarantees, subject to the legal restrictions in this respect.

The above enumeration is only indicative and by no means exhaustive. The general meeting of shareholders may interpret, explain and extend the purpose of the company, subject to compliance with the relevant legal rules.

To this end, the company may cooperate with, participate in or in any way, directly or indirectly, take interests in other companies.

The company may act as surety both for its own obligations and for the obligations of third parties, in particular by mortgaging or pledging its assets, including its own business.

In general, the company may conduct all commercial, industrial, financial, movable or immovable trades that are directly or indirectly related to its corporate purpose or that are likely to facilitate its achievement in whole or in part.

The company is incorporated for an unlimited duration as from the filing of the deed of incorporation.

Barring a court decision, the company may only be dissolved by an extraordinary general meeting in accordance with the requirements for amendment of the articles of association.

The entire issued capital of the company amounts to 500,000 Euro and is represented by 500 shares without nominal value, each representing 1/500th of the capital, paid up in full.

All bearer shares must be signed or name-stamped by at least two directors A register is kept for any registered shares, profit certificates, warrants and bonds. Upon registration in such register, a certificate evidencing such registration is delivered to the shareholder or holder of the security. All securities shall bear a serial number.

The board of directors may issue cumulative securities representing several shares with consecutive numbers.

No authorized capital is provided.

The capital may only be increased by decision of the Extraordinary General Meeting in the presence of a notary and subject to the provisions of the following article. Each share that is subscribed to in cash must be paid up in full by one-fourth; in the case of premium on new

shares must be fully paid up at the time of subscription.

In the case of a two-stage capital increase, two notarial deeds must be drawn up.

The company is managed by a board of directors consisting of at least one director.

However, where the company is formed by two persons or where it is determined at a general meeting of shareholders of the company that the company has no more than two shareholders, the board of directors may consist of only two members until the day of the ordinary general meeting following the determination, by any means, that there are more than two shareholders.

The directors are shareholders or not.

If a legal entity is appointed director, it appoints from among its shareholders or partners, its directors or managers, or its employees, a permanent representative, natural person, who is charged with carrying out the assignment in the name of and on behalf of the legal entity, pursuant to article 61, §2 of the Companies Code.

The directors are appointed by the general meeting for a maximum period of six years; their mandate ends at the end of the ordinary general meeting.

Retiring directors may be re-elected at any time.

If a directorship becomes vacant due to death, resignation or for any other reason, the other directors may temporarily fill the vacancy.

A director appointed to replace a director whose mandate has not been completed shall terminate that mandate.

The board of directors elects a chairman from among its members. The board of directors meets at the invitation of the chairman as often as the interests of the company require it and moreover within fourteen days of a request to do so by two directors.

DRC-34

The board is chaired by the chairman or, in his absence, by the oldest director present

# Exhibit 8 Part 5

The meeting is held at the registered office of the company or at any other place in the municipality where the registered office is located, designated in the notice of meeting.

The board of directors is authorized to perform all acts of internal management that are necessary or useful for the realization of the purpose of the company, with the exception of those acts for which, by law, only the general meeting is authorized.

In exceptional cases, when the necessity and the interest of the company so require, the decisions of the board of directors may be taken by the unanimous written agreement of the directors. However, this procedure is excluded for the adoption of the annual accounts and for the use of the authorized capital.

Without prejudice to the general representative powers of the Board of Directors as a college, the company shall be validly represented vis-à-vis third parties by the Managing Director.

The body representing the company in accordance with this article may appoint proxies. Only special and limited powers of attorney for specific or a series of specific legal acts are permitted.

Without prejudice to the general powers of representation conferred on certain members of the board of directors by virtue of the preceding paragraphs, the board of directors may delegate day-to-day management as well as the representation thereof to one or more persons who shall act individually, collectively or as a college

The ordinary general meeting of shareholders must be convened each year on the last Thursday of May at 6 p.m.; if that day is a legal holiday, the meeting will be held on the next business day.

The first ordinary general meeting will be held in 2009.

A special general meeting may be convened at any time to deliberate and decide on any matter within its competence which does not involve amendment of the articles of association.

An extraordinary general meeting may also be convened at any time to deliberate and decide on any amendment to the articles of association.

Regarding the conditions for admission to the meeting and for exercising voting rights, the articles of association stipulate as follows: -

The duly constituted general meeting represents all shareholders.

As long as the duly requested and payable payments have not been made, the exercise of voting rights on shares on which such payments have not been made is suspended. Resolutions adopted by the general meeting' are binding on all, including shareholders who were absent or voted against.

To be admitted to the meeting, holders of bearer shares must deposit their shares at the company's registered office no later than five days before the date of the meeting. Within the same period, holders of registered shares must give notice of their intention to attend the meeting by ordinary letter to be sent to the company's registered office. '

Each shareholder may be represented at the meeting by a proxy, provided the proxy is himself a shareholder.

If a share is encumbered with a usufruct, 'the voting right attached to this share shall be exercised by the usufructuary, except in the case of votes relating to amendments to the Articles of Association, where the voting right shall belong to the bare owner.

Each fiscal year begins on January 1 and ends on December 31 of each year, except for the first fiscal year which begins on September 20, 2007 and ends on December 31, 2008.

At the end of each financial year, the books and records are closed and the board of directors draws up the inventory, the annual accounts and the annual report (to the extent required by law), all in accordance with Article 92 of the Companies Code.

Concerning the creation of reserves, the distribution of profits and the appropriation of the balance after liquidation, the Articles of Association stipulate the following:

Five percent of the net profit shall be appropriated to the legal reserve until it reaches one-tenth of the share capital.

No distribution may be made if, on the date of closure of the last financial year, the net assets, as shown by the annual accounts, have fallen or, as a result of the distribution, would fall below the amount of the paid-up capital, or, if this is higher, of the called-up capital, plus all reserves that may not be distributed according to the law or the articles of association, and furthermore, in accordance with the provisions of article 617 of the Companies Code.

Moreover, the general meeting may decide that all or part of the profits shall be allocated to the repayment of capital as provided for in article 10 of the articles of association. If the company has redeemed capital shares that have been replaced by certificates of entitlement, then, upon a decision to distribute dividends, a first dividend of ten percent, calculated on the capital redeemed, shall be allocated to the holders of non-redeemed shares.

The general meeting decides every year on the allocation of any remuneration.

The board of directors is authorized, in accordance with the conditions laid down by law, to pay an interim dividend on the result of the current financial year.

The net proceeds of the liquidation shall be distributed among the company shares; if there are certificates of shareholding, these shall be eligible for their share in the mass to be distributed together with the capital shares, but only after the latter have been reimbursed.

The number of directors is set at two and they are appointed for a period of six years:

1) Ms. WEYLER Sandra Christiane Henn, residing at 2900 Schoten, Erikadreef 2A.

2) the aforementioned private limited liability company "BERKENRODE", with its permanent representative Mrs. WEYLER Sandra.

3) the aforementioned limited liability company under Luxembourg law "ARGOR INTERNATIONAL", permanently represented by Mr. GOETZ Alain, residing at 10/12 rue Adolphe Fischer, 1520 Luxembourg (Grand Duchy of Luxembourg).

In accordance with the possibility provided for in Article 21 of the Articles of Association, no commissioner has been appointed. Ms WEYLER Sandra, nominated above, is appointed Managing Director.

This mandate is not remunerated.

The undersigned notary is authorized to carry out the formalities of publication and registration of the company in the Register of Legal Entities. Special authorization is also granted to Mrs Inge VAN ROY, residing at 2830

Blaasveld, Bezelaerstraat 27, to carry out all present and future formalities in the name and on behalf of the company with the enterprise offices, BIW administration, and all other fiscal and administrative authorities.

FOR DISSECTION EXTRACT
NOTARY Frederik Jorissen

Herewith deposited: signature and power of attorney

DRC-34996 0674

Exhibit 8 Part 5

DRC-34996 0675



Luik B

# Exhibit 8 Part 5

In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie
na neerlegging ter griffie van de akte



*07149054*

Neergel...      ...tr... r'e Rechtbank
var Xoo......... ... fu  Ankapen  op

Griffie      1 OKT. 2007

Ondememingsnr    :92.529.781
Benaming
(voluit)    **OROFINO**

Rechtsvorm · Naamloze Vennootschap

Zetel : 2018 Antwerpen, Lange Herentalsestraat 20-26

**Onderwerp akte : OPRICHTING**

Het blijkt uit een akte verleden voor notaris Frederik Jorissen te Antwerpen op 20 september 2007, geregistreerd te Antwerpen, REGISTRATIE 5, de 21 SEP. 2007. Boek 170 blad 27 vak 9. Ontvangen: € 25,00. De ontvanger (get) de ea inspecteur wn J.BORREMANS", dat .

1) De besloten vennootschap met beperkte aansprakelijkheid "BERKENRODE" met zetel te 2018 Antwerpen, Jacob Jacobstraat 56, ingeschreven in het rechtspersonenregister ter griffie van de rechtbank van koophandel te Antwerpen met ondememingsnummer 0478 862 274, opgericht bij akte verleden voor notaris Koen De Raeymaecker te Antwerpen op tweeëntwintig november tweeduizend en twee, gepubliceerd in de bijlagen bij het Belgisch Staatsblad van drie december daarna, onder nummer 02144787.

2) De naamloze vennootschap naar Luxemburgs recht "S.A. ARGOR INTERNATIONAL" met zetel te 1420 Luxembourg (Groot Hertogdom Luxemburg), 222c Avenue Gaston Dideñch, ingeschreven in het handelsregister te Luxembourg onder nummer 119953 met BTW nummer 2006 2225 018.

Een naamloze vennootschap hebben opgericht onder de naam "OROFINO", met zetel te 2018 Antwerpen, Lange Herentalsestraat 20-26, hebbende als doel:

Het beleggen, het intekenen op, vast overnemen, plaatsen, kopen, verkopen en verhandelen van aandelen, deelbewijzen, obligaties, warrants, certificaten, schuldvorderingen, gelden en andere roerende waarden, uitgegeven door Belgische of buitenlandse ondememingen al dan niet onder de vorm van handelsvennootschappen, administratiekantoren, instellingen en verenigingen, al dan niet met een (semi-)publiekrechterlijk statuut;

Het beheren van beleggingen en van participaties in dochtervennootschappen, het waarnemen van bestuurdersfuncties, het verlenen van advies, management en andere diensten aan of in overeenstemming met de activiteiten die de vennootschap zelf voert. Deze diensten kunnen worden geleverd krachtens contractuele of statutaire benoemingen en in de hoedanigheid van externe raadgever of organen van de cliënt;

Het verstrekken van leningen en voorschotten onder eender welke vorm of duur, aan alle verbonden ondememingen of ondememingen waarin ze een participatie bezit, alsmede het waarborgen van alle verbintenissen van zelfde ondememingen.

Deze opsomming is niet limitatief en de termen vermogensbeheer of advies in deze statuten vermeld zijn activiteiten andere dan deze bedoeld door de Wet van zes april negentienhonderd vijfennegentig inzake de secundaire markten, het statuut van en het toezicht op de beleggingsondememingen, de bemiddelaars en de beleggingsadviseurs.

Daartoe kan de vennootschap samenwerken met, deelnemen in, of op gelijk welke wijze, rechtstreeks of onrechtstreeks, belangen nemen in andere ondememingen.

De vennootschap kan zowel tot waarborg van eigen verbintenissen als tot waarborg van verbintenissen van derden borg stellen, onder meer door haar goederen in hypotheek of in pand te geven, inclusief de eigen handelszaak.

De vennootschap kan eveneens optreden als bestuurder, volmachtdrager, mandataris of vereffenaar in andere vennootschappen of ondememingen.

De vennootschap kan in het algemeen alle commerciële, industriële, financiële, roerende of onroerende handelingen verrichten in rechtstreeks of onrechtstreeks verband met haar maatschappelijk doel of welke van aard zouden zijn de verwezenlijking ervan geheel of ten dele te vergemakkelijken.

De vennootschap heeft tot doel, in België en in het buitenland de uitbating van een maatschappij voor onroerende goederen. Het aankopen, verkopen, ruilen van onroerende goederen, het verkavelen van bouwgronden, het huren, verhuren, bouwen en verbouwen, het beheren van onroerende- en roerende goederen voor eigen rekening. Het optreden als bouwpromotor en coördinator. Het bouwen, verbouwen, het verkavelen, de bouwpromotie en de projectontwikkeling in de onroerende sector. De vennootschap zal in het algemeen alle commerciële, industriële, financiële, roerende en onroerende handelingen mogen verrichten die rechtstreeks of onrechtstreeks verband houden met haar maatschappelijk doel, of die van aard zijn de verwezenlijking ervan te

Bijlagen bij het Belgisch Staatsblad -12/10/2007 - Annexes du Moniteur belge

Op de laatste blz van **Luik B** vermelden : **Recto**  Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

**Verso**  Naam en handtekening

DRC-34996 0676

Exhibit 8 Part 5

vergemakkelijken of uit te breiden, en die daartoe noodzakelijk, nuttig of zelfs maar bevorderend zijn. De vennootschap mag daarenboven belangen nemen hetzij door deelneming, inbreng of welke andere wijze, in alle vennootschappen, ondernemingen, economische samenwerkingsverbanden, beroepsverenigingen of groeperingen, bestaande of op te richten, zo in Belgie als in het buitenland, die een gelijkluidend, aanvullend of soortgelijk doel nastreven, of die van aard zijn de ontwikkeling van haar onderneming te bevorderen. De vennootschap is bevoegd deel te nemen onder gelijk welke vorm aan de oprichting, uitbreiding, omzetting, fusie, opslorping, het bestuur en de controle van ondernemingen met gelijkaardige, aanverwante of aanvullende activiteiten. Ze kan verder alle hulp verlenen aan ondernemingen waarin ze belang stelt onder meer in de vorm van leningen, voorschotten of borgstellingen, alsook bij wijze van bijstand inzake bestuur en of administratie. De vennootschap mag bijgevolg en al dan niet mits vergoeding optreden als bestuurder, volmachtdrager, mandataris of vereffenaar in andere vennootschappen, zich borg stellen voor derden, zaakvoerders en vennoten, evenals hun leningen, voorschotten en kredieten toestaan, met of zonder zakelijke en/of persoonlijke zekerheden, behoudens de wettelijke beperkingen ter zake.

Voornoemde opsomming is alleen aanhalend en geenszins limitatief. De algemene vergadering der vennoten kan het doel van de vennootschap uitleggen, verklaren en uitbreiden, mits zich te schikken naar de wettelijk regels ter zake.

Daartoe kan de vennootschap samenwerken met, deelnemen in, of op gelijk welke wijze, rechtstreeks of onrechtstreeks, belangen nemen in andere ondernemingen.

De vennootschap kan zowel tot waarborg van eigen verbintenissen als tot waarborg van verbintenissen van derden borg stellen, onder meer door haar goederen in hypotheek of in pand te geven, inclusief de eigen handelszaak

De vennootschap kan in het algemeen alle commerciële, industriële, financiële, roerende of onroerende handelingen verrichten in rechtstreeks of onrechtstreeks verband met haar maatschappelijk doel of welke van aard zouden zijn de verwezenlijking ervan geheel of gedeeltelijk te vergemakkelijken.

De vennootschap wordt opgericht voor onbepaalde duur te rekenen vanaf de neerlegging van de oprichtingsakte.

Behoudens door de rechter kan de vennootschap slechts worden ontbonden door de buitengewone algemene vergadering met inachtneming van de vereisten voor statutenwijziging

Het geheel geplaatst kapitaal van de vennootschap bedraagt 500.000 euro en is vertegenwoordigd door 500 aandelen zonder vermelding van waarde, die ieder 1/500ste van het kapitaal vertegenwoordigen, volledig volstort

Alle effecten aan toonder moeten door ten minste twee bestuurders worden ondertekend of van hun naamstempels worden voorzien Een register wordt gehouden voor eventuele aandelen op naam, winstbewijzen, warrants en obligaties. Naar aanleiding van de inschrijving in zulk register, wordt aan de aandeelhouder of houder van het effect een certificaat tot bewijs hiervan overhandigd Alle effecten dragen een volgnummer.

Er kunnen door de raad van bestuur verzameleffecten worden uitgegeven, die verscheidene aandelen met achtereenvolgende nummers vertegenwoordigen.

Er is geen toegestaan kapitaal voorzien.

Tot verhoging van het kapitaal kan slechts worden besloten door de buitengewone algemene vergadering ten overstaan van een notaris en met inachtneming van de in het volgend artikel opgenomen bepalingen. Op elk aandeel waarop in geld wordt ingeschreven moet één/vierde worden volgestort; in geval van agio op nieuwe aandelen moet dat volledig worden volstort bij de inschrijvingen.

Bij een kapitaalverhoging in twee fasen, dienen twee notariële akten te worden opgesteld.

De vennootschap wordt bestuurd door een raad van bestuur, ten minste bestaande uit drie bestuurders.

Wanneer de vennootschap evenwel is opgericht door twee personen of wanneer op een algemene vergadering van aandeelhouders van de vennootschap is vastgesteld dat de vennootschap niet meer dan twee aandeelhouders heeft, mag de raad van bestuur uit slechts twee leden bestaan tot de dag van de gewone algemene vergadering die volgt op de vaststelling, door alle middelen, dat er meer dan twee aandeelhouders zijn.

De bestuurders zijn al dan niet aandeelhouders

Indien een rechtspersoon wordt aangewezen tot bestuurder, benoemt deze onder zijn aandeelhouders of vennoten, zijn bestuurders of zaakvoerders, of zijn werknemers een vaste vertegenwoordiger, natuurlijke persoon, die belast wordt met de uitvoering van de opdracht in naam en voor rekening van de rechtspersoon, bij toepassing van artikel 61, § 2 van het Wetboek van vennootschappen

De bestuurders worden benoemd door de algemene vergadering voor een periode van maximum zes jaar; hun opdracht eindigt bij de sluiting van de gewone algemene vergadering.

Aftredende bestuurders zijn steeds herbenoembaar.

Indien een plaats van bestuurder openvalt wegens overlijden, ontslag of om een andere oorzaak, kunnen de overige bestuurders voorlopig in de vacature voorzien.

Een bestuurder die wordt benoemd ter vervanging van een bestuurder wiens mandaat niet was voltooid, beeindigt dit mandaat.

De raad van bestuur kiest onder zijn leden een voorzitter. De raad van bestuur vergadert na oproeping door de voorzitter zo dikwijls als het belang van de vennootschap het vereist en bovendien binnen veertien dagen na een daartoe strekkend verzoek van twee bestuurders.

De raad wordt voorgezeten door de voorzitter of, bij diens afwezigheid, door de oudste in jaren van de aanwezige bestuurders.

Exhibit 8 Part 5

Bijlagen bij het Belgisch Staatsblad - 12/10/2007 - Annexes du Moniteur belge

De vergadering wordt gehouden in de zetel van de vennootschap of in enige andere plaats van de gemeente waar de zetel is gevestigd, aangewezen in de oproepingsbrief.

De raad van bestuur is bevoegd om alle handelingen van intern bestuur te verrichten die nodig of dienstig zijn tot verwezenlijking van het doel van de vennootschap, met uitzondering van die handelingen waarvoor volgens de wet alleen de algemene vergadering bevoegd is.

In uitzonderlijke gevallen, wanneer de dringende noodzakelijkheid en het belang van de vennootschap het vereisen, kunnen de besluiten van de raad van bestuur, worden genomen bij eenparig schriftelijk akkoord van de bestuurders. Zij worden gedateerd op de dag dat de laatste bestuurder voormeld document ondertekent. Deze procedure is evenwel uitgesloten voor de vaststelling van de jaarrekening, en bij aanwending van het toegestaan kapitaal

Onverminderd de algemene vertegenwoordigingsbevoegdheid van de raad van bestuur als college, wordt de vennootschap ten aanzien van derden rechtsgeldig verbonden door de gedelegeerd bestuurder.

Het orgaan dat overeenkomstig dit artikel de vennootschap vertegenwoordigt, kan lasthebbers aanstellen. Alleen bijzondere en beperkte volmachten voor bepaalde of een reeks bepaalde rechtshandelingen zijn geoorloofd Deze lasthebbers verbinden de vennootschap binnen de perken van de hun verleende volmacht

Onverminderd de algemene vertegenwoordigingsmacht toegekend aan bepaalde leden van de raad van bestuur, krachtens voorgaande alinea's, kan de raad van bestuur het dagelijks bestuur evenals de vertegenwoordiging ervan, opdragen aan één of meer personen die individueel, gezamenlijk dan wel als college moeten optreden

De gewone algemene vergadering van de aandeelhouders moet ieder jaar worden bijeengeroepen op de laatste donderdag van de maand mei om zestien uur; indien die dag een wettelijke feestdag is, wordt de vergadering gehouden op de eerstvolgende werkdag.

De eerste gewone algemene vergadering zal worden gehouden in 2009.

Op ieder ogenblik kan een bijzondere algemene vergadering worden bijeengeroepen om te beraadslagen en te besluiten over enige aangelegenheid die tot haar bevoegdheid behoort en die geen wijziging van de statuten inhoudt.

Te allen tijde kan ook een buitengewone algemene vergadering worden bijeengeroepen om over enige wijziging van de statuten te beraadslagen en te besluiten.

Omtrent de voorwaarden voor de toelating tot de vergadering en voor de uitoefening van het stemrecht bepalen de statuten wat volgt :

De geldig samengestelde algemene vergadering vertegenwoordigt alle aandeelhouders

Zolang de behoorlijk opgevraagde en opeisbare stortingen niet gedaan zijn, wordt de uitoefening van het stemrecht aan de aandelen waarop die stortingen niet zijn geschied, geschorst. De beslissingen, door de algemene vergadering genomen, zijn voor allen bindend, ook voor de aandeelhouders die afwezig waren of tegenstemden.

Om tot de vergadering toegelaten te worden moeten de houders van aandelen aan toonder uiterlijk vijf dagen voor de datum van de vergadering hun aandelen deponeren op de zetel van de vennootschap. Binnen dezelfde termijn moeten de houders van aandelen op naam kennis geven van hun voornemen om aan de vergadering deel te nemen bij gewone brief, te richten aan de zetel van de vennootschap.

Elke aandeelhouder mag zich op de vergadering laten vertegenwoordigen door een gevolmachtigde, op voorwaarde dat deze zelf aandeelhouder is.

Is een aandeel met vruchtgebruik bezwaard, dan wordt het aan dit aandeel verbonden stemrecht uitgeoefend door de vruchtgebruiker, behalve bij stemmingen in verband met statutenwijzigingen, waar het stemrecht aan de blote eigenaar zal toebehoren.

Elk boekjaar begint op 1 januari en eindigt op 31 december van ieder jaar, met uitzondering van het eerste boekjaar dat op 20 september 2007 begint en eindigt op 31 december 2008.

Op het einde van elk boekjaar worden de boeken en bescheiden afgesloten en maakt de raad van bestuur de inventaris op, alsmede de jaarrekening en het jaarverslag (voor zover dit wettelijk verplicht is), het alles overeenkomstig artikel 92 van het Wetboek van vennootschappen.

Omtrent het aanleggen van reserves, de verdeling van de winst en de bestemming van het saldo na vereffening, bepalen de statuten wat volgt :

Van de nettowinst wordt vijf procent voorafgenomen voor de vorming van de wettelijke reserve, totdat die één/tiende van het maatschappelijk kapitaal bedraagt.

Geen uitkering mag geschieden, indien op de datum van afsluiting van het laatste boekjaar het netto-actief, zoals blijkt uit de jaarrekening, is gedaald of ten gevolge van de uitkering zou dalen beneden het bedrag van het gestorte, of indien dit hoger is, van het opgevraagde kapitaal, vermeerderd met alle reserves die volgens de wet of de statuten niet mogen uitgekeerd, en verder dient gehandeld naar het voorschrift van artikel 617 van het Wetboek van vennootschappen.

Overigens zal de algemene vergadering kunnen beslissen dat het geheel of een deel van de winst zal bestemd worden voor de aflossing van het kapitaal zoals voorzien in artikel 10 van de statuten. Indien de vennootschap kapitaalaandelen heeft afgelost, die vervangen zijn door bewijzen van deelgerechtigheid, dan zal bij beslissing tot uitkering van dividenden, een eerste dividend van tien procent, berekend op het afgeloste kapitaal, moeten toegekend worden aan de houders van het afgeloste aandelen.

De algemene vergadering beslist jaarlijks over het toekennen van eventuele bezoldigingen.

De raad van bestuur heeft de bevoegdheid om, overeenkomstig de bij de wet bepaalde voorwaarden, op het resultaat van het lopende boekjaar een interim dividend uit te keren.

DRC-34996 0678