Exhibit 8 Part 5

Bijlagen bij het Belgisch Staatsblad -12/10/2007- Annexes du Moniteur belge

Het netto provenu van de vereffening wordt verdeeld onder de maatschappelijke aandelen; indien bewijzen van deelgerechtigheid bestaan komen deze in aanmerking voor hun deel in de te verdelen massa samen met de kapitaalaandelen, doch slechts nadat deze laatsten hun inbreng kregen terugbetaald.

Het aantal bestuurders wordt bepaald op twee en tot dit ambt worden benoemd voor een periode van zes jaar :

1) mevrouw WEYLER Sandra Christiane Henn, wonende te 2900 Schoten, Erikadreef 2A.

2) de voornoemde besloten vennootschap met beperkte aansprakelijkheid "BERKENRODE", met als vaste vertegenwoordiger voornoemde mevrouw WEYLER Sandra.

3) de voornoemde naamloze vennootschap naar Luxemburgs recht "ARGOR INTERNATIONALe, met als vaste vertegenwoordiger de heer GOETZ Alain, wonende te 1520 Luxembourg (Groot Hertogdom Luxemburg), rue Adolphe Fischer 10/12.

Deze mandaten zullen onbezoldigd zijn zolang de algemene vergadering hierover niet anders beslist

Overeenkomstig de mogelijkheid voorzien in artikel 21 van de statuten wordt er geen commissaris benoemd.

Tot gedelegeerd bestuurder wordt benoemd . voornoemde mevrouw WEYLER Sandra, voornoemd.

Dit mandaat is onbezoldigd

Bijzondere volmacht

Ondergetekende notaris wordt gemachtigd om zorg te dragen voor de formaliteiten van openbaarmaking en inschrijving van de vennootschap in het rechtspersonenregister. Tevens wordt bijzondere volmacht verleend aan mevrouw Inge VAN ROY, wonende te 2830 Blaasveld, Bezelaerstraat 27, om alle huidige en latere formaliteiten te vervullen in naam en voor rekening van de vennootschap bij de ondernemingsloketten, BTW-administratie, en alle overige fiscale en administratieve besturen.

VOOR ONTLEDEND UITTREKSEL
NOTARIS Frederik Jorissen

Tegelijk hiermee neergelegd : afschrift en volmacht.

DRC-34996 0679

# Exhibit 8 Part 5

**In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

„1'

|||||| |||| |||| |||| |||| ||||| | | | | | | | | | | | | | | | |
*13023665*

| **COMPANY NO. NAME,** | **0892.592.761 OROFINO** |
|---|---|
| LEGAL FORM . | PUBLIC LIMITED COMPANY |
| ADDRESS · | JACOB JACOBSSTRMT 56 TE 2018 ANTWERPEN |

Subject of Act: **RESIGNATION AND APPOINTMENT OF DIRECTORS AND MANAGING DIRECTORS**

The Extraordinary General Meeting of Shareholders of 15 November 2012 unanimously resolves to to resign from the board of directors, namely to:

Mrs. WEYLER SANDRA, residing in Dubai (United Arab Emirates), Villa GH A40, The Palm Jumeirah, Postbox 65919;

Mr GOETZ ALAIN, residing in Dubai (United Arab Emirates), Villa GH A40, The Palm Jumeirah, Postbox 65919;

BVBA ALAXY, known under company number 0478.862.274, with registered office in 2018 Antwerp, Jacob Jacobsstraat 56, and with Mrs Weyler Sandra as permanent representative, aforementioned.

New directors are appointed .

1.Mr GOETZ ALAIN, aforesaid;

2. The company ALAXY B.V.B.A., aforementioned, with permanent representative Mr Goetz Alain, aforementioned.

They accept their mandate.

The Board of Directors of November 15, 2012 unanimously decides to appoint Mr. GOETZ ALAIN, aforesaid as managing director and he accepts his mandate.

All mandates mentioned are unpaid and are for a term of six years.

Goetz Alan
managing director

DRC-34996 0680

# Exhibit 8 Part 5

**In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**



| Voor-behouden aan het Belgisch Staatsblad |
|---|



*13023665*

van Koophandel te Antwerpen, op

2 8 JAN 2013

Griffie

Ondernemingsnr : **0892.529.761**

**Benaming**

(voluit) . **OROFINO**

(verkort) :

Rechtsvorm : **NAAMLOZE VENNOOTSCHAP**

Zetel . JACOB JACOBSSTRAAT 56   2018 ANTWERPEN

(volledig adres)

Onderwerp akte : **ONTSLAG EN BENOEMING BESTUURDERS EN GEDELEGEERD BESTUURDER**

De Bijzondere Algemene Vergadering der Aandeelhouders van 15 november 2012 beslist unaniem om ontslag te geven aan de raad van bestuur, te weten aan :

Mevrouw WEYLER SANDRA, wonende te Dubai (Verenigde Arabische Emiraten), Villa GH  A40, The Palm Jumeirah, Postbox 66919;
de heer GOETZ ALAIN, wonende te Dubai (Verenigde Arabische Emiraten), Villa GH  A40, The Palm Jumeirah, Postbox 66919;
de BVBA ALAXY, gekend onder ondernemingsnummer 0476.662.274,met maatschappelijke zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, en met als vaste vertegenwoordiger mevrouw Weyler Sandra, voornoemd.

Tot nieuwe bestuurders worden benoemd .

1.De heer GOETZ ALAIN, voornoemd;
2.De vennootschap ALAXY  B.V.B.A., voornoemd, met als vaste vertegenwoordiger de heer Goetz Alain, voornoemd.
Zij aanvaarden hun mandaat.

De Raad van bestuur van 15 november 2012 beslist unaniem om de de heer GOETZ ALAIN, voornoemd, te benoemen tot gedelegeerd bestuurder en hij aanvaardt zijn mandaat.
Alle vermelde mandaten zijn onbezoldigd en gelden voor de duur van zes jaar.

Goetz Alain
Gedelegeerd bestuurder

Bijlagen bij het Belgisch Staatsblad - 07/02/2013 - Annexes du Moniteur belge

Op de laatste blz  van Luik B vermelden : <u>Recto</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Verso</u>  Naam en handtekening

DRC-34996 0681

Exhibit 8 Part 5

# Annex
# Q

DRC-34996 0682

# Exhibit 8 Part 5

Mod 2.0

 **Luik B**

**In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

Voor-behouden aan het Belgisch Staatsblad

*09305214*



Submitted
04-12-2009

Griffie

Bijlagen bij het Belgisch Staatsblad - 08/12/2009 - Annexes du Moniteur belge

Company No. : **0821135682**

Name

(Full) : **WWG DIAMONDS**

Legal Form : Private company with limited liability

Address : 2018 Antwerpen, Jacob Jacobsstraat 56

Subject of Act : **Incorporation**

A deed executed before notary public Frederik Jorissen in Antwerp on the second of December two thousand and nine, in his office, shows that a company was established with the following characteristics:

LEGAL FORM AND NAME: Private company with limited liability named "WWG DIAMONDS".

REGISTERED OFFICE: 2018 Antwerp, Jacob Jacobsstraat 56; RPR Antwerp. DURATION: The company is established for an unlimited duration. FOUNDERS:

1. Mr GOETZ Sylvain, residing at Alfons Servaislei 96, 2900 Schoten.

2. Mr GOETZ Alain François Viviane, residing at 2340 Luxembourg (city) (Grand Duchy of Luxembourg), Rue Philippe II 1.

CAPITAL: twenty thousand euros (EUR 20,000), fully paid into a special account with KBC Bank. CAPITAL COMPOSITION: represented by 200 shares without nominal value, subscribed by the aforementioned founders, each up to one half.

Compliance with the legal requirements for placement and payment of the capital has been confirmed by the undersigned notary.

FINANCIAL YEAR: begins on January 1 and ends on December thirty-one; first financial year to the thirty-first of December two thousand and ten.

EQUIPMENT OF RESERVES/PROFIT APPROPRIATION: Five percent of the net profit is taken in advance for the formation of the legal reserve fund, until it reaches one/tenth of the share capital.

The balance is used according to the decision of the general meeting.

APPROPRIATE LIQUIDATION BALANCE: The company's assets will first be used to pay the creditors and to cover the costs of the liquidation; the plan of this distribution for this purpose must be approved in advance by the competent commercial court.

The net asset of the liquidation is then distributed among the shares, taking into account, where appropriate, the unequal payment of the shares.

MANAGEMENT/AUTHORITY: The company is managed by one or more managers, who may or may not be a partner.

The managers are authorized to perform all acts of internal management that are necessary or useful for the realization of the company's purpose, with the exception of those acts for which only the general meeting is authorized by law. If there are several business managers, they can divide the management tasks among themselves. Such division of duties cannot be enforced against or by third parties.

Each manager represents the company vis-à-vis third parties and in court.

The business managers can appoint agents of the company. Only special and limited powers of attorney for certain or a series of certain legal acts are permitted. The proxies commit the company within the limits of the power of attorney granted to them.

The mandate of the manager is unpaid. The following non-statutory managers have been appointed:

1. Mr. GOETZ Sylvain, aforementioned.

2. Mr GOETZ Alain, aforementioned.

bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

Verso : Naam en handtekening

DRC-34996 0683

# Exhibit 8 Part 5



Voor-
behouden
aan het
Belgisch
Staatblad

AUDITOR: The founders have decided not to appoint an auditor in application of article 141 of the Companies Code.

PURPOSE: The company aims to :

Diamond trading: buying and selling, importing and exporting, estimating, processing and cutting of diamonds, as well as precious stones and all items of jewelery and art jewellery.

The company acts for its own account, on commission, as an intermediary or as a representative.

It can participate in all kinds of companies, enterprises, groups or organizations.

It may mortgage its immovable property and pledge all its other property, including the business fund, and may grant aval for all loans, credit lines and other commitments both to itself and to all third parties, provided that it has an interest therein. has at.

It may also exercise the functions of director, manager or liquidator of other companies, where appropriate subject to the appointment of a permanent representative, natural person, for this purpose.

In general, the company will be allowed to carry out all financial, commercial and industrial transactions

which are related to its purpose or which are simply designed to promote its achievement, both at home and abroad.

ORDINARY GENERAL ASSEMBLY: The Ordinary General Assembly must be convened each year on the third Friday of the month of June at 4:00 pm; if that day is a legal holiday, the meeting will be held on the next working day. The first ordinary general meeting will be held in 2011.

Ordinary general meetings are held at the registered office of the company or at the place in the municipality where the registered office of the company is located, as indicated in the notice convening the meeting.

CONDITIONS OF ADMISSION/VOTING RIGHTS: Without prejudice to the rules regarding legal representation and in particular the mutual representation of married couples, each partner may be represented at the meeting by a proxy, partner or not.

Each share entitles the holder to one vote.

The partners can vote in writing. To this end, the ballot paper drawn up by the management body, containing all items on the agenda, dated and signed, must reach the company no later than two days before the meeting, and the writing must clearly indicate in which sense the partner wishes to vote. The partner will also state on the ballot paper his surname, first names, or company name and legal form, as well as his place of residence or registered office, and the number of shares with which he participates in the vote.

With the exception of decisions that must be passed by authentic deed, the partners can unanimously and in writing take all decisions that fall within the competence of the general meeting.

SPECIAL POWER OF AUTHORITY: The undersigned notary is authorized to take care of the formalities of publication and registration of the company in the register of legal entities.

The following is also appointed as special proxy holder: Mrs. Inge Van Roy, residing at Bezelaerstraat 27, 2830 Willebroek, to fulfill the necessary formalities and to represent the company at the enterprise counter, the VAT administration, the Crossroads Bank for Enterprises, and other tax and administrative control.

For dissecting extract Notary Frederik Jorissen

bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
Verso : Naam en handtekening

Exhibit 8 Part 5

Op de laatste blz. van <u>Luik B</u> vermelden : <u>Recto</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en)

bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

<u>Verso</u> : Naam en handtekening

DRC-34996 0685

# Exhibit 8 Part 5

Mod 2.0

**Luik B**    In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie
na neerlegging ter griffie van de akte

Voor-
behouden
aan het
Belgisch
Staatsblad

\*09305214\*



Neergelegd

04-12-2009

**Griffie**

Ondernemingsnr : 0821135682
**Benaming**
(voluit) : **WWG DIAMONDS**

Rechtsvorm : Besloten vennootschap met beperkte aansprakelijkheid

Zetel : 2018 Antwerpen, Jacob Jacobsstraat 56

**Onderwerp akte : Oprichting**

Uit een akte verleden voor notaris Frederik Jorissen te Antwerpen op twee december tweeduizend negen, in zijn kantoor, blijkt dat een vennootschap werd opgericht met volgende kenmerken:
RECHTSVORM EN NAAM: Besloten vennootschap met beperkte aansprakelijkheid met de naam "WWG DIAMONDS".
ZETEL: 2018 Antwerpen, Jacob Jacobsstraat 56; RPR Antwerpen.
DUUR: De vennootschap is opgericht voor een onbeperkte duur.
OPRICHTERS:
1. De heer GOETZ Sylvain, wonende te 2900 Schoten, Alfons Servaislei 96.
2. De heer GOETZ Alain François Viviane, wonende te 2340 Luxemburg (stad) (Groot-Hertogdom Luxemburg), Rue Philippe II 1.
KAPITAAL: twintigduizend euro (20.000 EUR), volledig volstort op een bijzondere rekening bij KBC Bank.
SAMENSTELLING KAPITAAL: vertegenwoordigd door 200 aandelen zonder nominale waarde, waarop werd ingetekend door voornoemde oprichters, ieder tot beloop van de helft.
De naleving van de wettelijke vereisten voor plaatsing en storting van het kapitaal werden door ondergetekende notaris bevestigd.
BOEKJAAR: vangt aan op één januari en eindigt op eenendertig december; eerste boekjaar tot eenendertig december tweeduizend tien.
AANLEG RESERVES/WINSTVERDELING: Van de nettowinst wordt vijf procent vooraf genomen voor de vorming van het wettelijke reservefonds, totdat die één/tiende van het maatschappelijk kapitaal bedraagt.
Het saldo wordt aangewend volgens de beslissing van de algemene vergadering.
BESTEMMING LIQUIDATIESALDO: Het vennootschapsvermogen zal eerst dienen om de schuldeisers te voldoen, en de kosten van de vereffening te dekken; het plan van deze verdeling daartoe moet vooraf door de bevoegde rechtbank van koophandel worden goedgekeurd.
Het netto actief van de vereffening wordt vervolgens verdeeld onder de maatschappelijke aandelen, in voorkomend geval rekening houdend met de ongelijke volstorting van de aandelen.
BESTUUR/BEVOEGDHEID: De vennootschap wordt bestuurd door één of meer zaakvoerders, al dan niet vennoot.
De zaakvoerders zijn bevoegd om alle handelingen van intern bestuur te verrichten die nodig of dienstig zijn tot verwezenlijking van het doel van de vennootschap, met uitzondering van die handelingen waarvoor volgens de wet alleen de algemene vergadering bevoegd is. Indien er verscheidene zaakvoerders zijn kunnen zij de bestuurstaken onder elkaar verdelen. Zodanige verdeling van taken kan aan of door derden niet worden tegengeworpen.
Iedere zaakvoerder vertegenwoordigt de vennootschap jegens derden en in rechte.
De zaakvoerders kunnen lasthebbers van de vennootschap aanstellen. Alleen bijzondere en beperkte volmachten voor bepaalde of een reeks bepaalde rechtshandelingen zijn geoorloofd. De lasthebbers verbinden de vennootschap binnen de perken van de hun verleende volmacht.
Het mandaat van de zaakvoerder is onbezoldigd.
Tot niet statutaire zaakvoerders werden benoemd:
1. De heer GOETZ Sylvain, voornoemd.
2. De heer GOETZ Alain, voornoemd.
COMMISSARIS: De oprichters hebben beslist bij toepassing van artikel 141 van het Wetboek van vennootschappen geen commissaris te benoemen.
DOEL: De vennootschap heeft als doel :
Diamanthandel: aan- en verkoop, in- en uitvoer, schatting, verwerking en slijpen van
diamanten, alsook edelstenen en alle voorwerpen van juwelen en kunstsieraden.
De vennootschap handelt voor eigen rekening, in commissie, als tussenpersoon of als vertegenwoordiger.

Op de laatste blz. van **Luik B** vermelden : **Recto** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
**Verso** : Naam en handtekening.

DRC-34996 0686

# Exhibit 8 Part 5



Voor-
behouden
aan het
Belgisch
Staatsblad

Bijlagen bij het Belgisch Staatsblad - 08/12/2009 - Annexes du Moniteur belge

Zij kan deelnemen in allerhande vennootschappen, ondernemingen, groeperingen of organisaties.

Zij mag haar onroerende goederen in hypotheek stellen en al haar andere goederen, met inbegrip van het handelsfonds, in pand stellen en mag aval verlenen voor alle leningen, kredietopeningen en andere verbintenissen zowel voor haarzelf als voor alle derden, op voorwaarde dat zij er zelf belang bij heeft.

Zij kan ook functies van bestuurder, zaakvoerder of vereffenaar van andere vennootschappen uitoefenen, in voorkomend geval mits aanstelling van een vaste vertegenwoordiger, natuurlijke persoon, daartoe.

In het algemeen zal de vennootschap alle financiële, commerciële en industriële verrichtingen mogen doen welke in verband staan met haar doel of welke eenvoudig van aard zijn om de verwezenlijking ervan te bevorderen, en dit zowel in het binnen- als in het buitenland.

GEWONE ALGEMENE VERGADERING: De gewone algemene vergadering moet ieder jaar worden bijeengeroepen op de derde vrijdag van de maand juni om zestien uur; indien die dag een wettelijke feestdag is, wordt de vergadering gehouden op de eerstvolgende werkdag. De eerste gewone algemene vergadering wordt gehouden in 2011.

De gewone algemene vergaderingen worden gehouden in de zetel van de vennootschap of in de in de oproeping aangewezen plaats in de gemeente waar de zetel van de vennootschap gevestigd is.

TOELATINGSVOORWAARDEN/STEMRECHT: Onverminderd de regels betreffende de wettelijke vertegenwoordiging en met name van de wederzijdse vertegenwoordiging van gehuwden, kan elke vennoot op de vergadering vertegenwoordigd worden door een lasthebber, al dan niet vennoot.

Elke aandeel geeft recht op één stem.

De vennoten kunnen hun stem schriftelijk uitbrengen. Daartoe moet de door het bestuursorgaan vastgestelde stembrief die alle punten van de agenda bevat, gedateerd en ondertekend, de vennootschap bereiken, uiterlijk twee dagen vóór de vergadering, en uit het geschrift moet duidelijk blijken in welke zin de vennoot wenst te stemmen. De vennoot zal tevens op de stembrief, zijn naam, voornamen, of maatschappelijke naam en rechtsvorm vermelden, alsook zijn woonplaats of zetel, en het aantal aandelen waarmee hij aan de stemming deelneemt.

Met uitzondering van de beslissingen die bij authentieke akte moeten worden verleden, kunnen de vennoten eenparig en schriftelijk alle besluiten nemen die tot de bevoegdheid van de algemene vergadering behoren.

BIJZONDERE VOLMACHT: Ondergetekende notaris wordt gemachtigd om zorg te dragen voor de formaliteiten van openbaarmaking en inschrijving van de vennootschap in het rechtspersonenregister.

Tevens wordt tot bijzondere volmachtdrager aangesteld: mevrouw Inge Van Roy, wonende te Bezelaerstraat 27, 2830 Willebroek, om de nodige formaliteiten te vervullen en de vennootschap te vertegenwoordigen bij het ondernemingsloket, de BTW-administratie, de Kruispuntbank voor Ondernemingen, en overige fiscale en administratieve besturen.


Voor ontledend uittreksel
Notaris Frederik Jorissen

Op de laatste blz. van Luik B vermelden : **Recto** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en)
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
**Verso** : Naam en handtekening

DRC-34996 0587

Exhibit 8 Part 6

# Annex
# R

DRC-34996 0688

Exhibit 8 Part 6



حكـــومــــة دبـــــــي
**Government of Dubai**



# INCORPORATION CERTIFICATE
## شـــهـــادة تـــأســـيــس

In accordance with the Offshore companies regulations of Jebel Ali Free Zone of 2003

و فقا لنظام شركات الافشور المنطقة الحرة لجبل علي لسنة ٢٠٠٣

The Registrar of Free Zone Company , Hereby Certifies that all the requirements of the regulations of formation of offshore companies at Jebel Ali Free Zone Authority are satisfied and that on the

يشهد مسجل شركات المنطقة الحرة أن كل متطلبات أنظمة تأسيس شركات الافشور في سلطة المنطقة الحرة لجبل علي قد تم استيفاؤها وأنه بتاريخ

22/04/2012

٢٠١٢/٠٤/٢٢

## ALDABRA LIMITED

الديرا ليمتد

Is formed at Jebel Ali Free Zone under our perception and the seal of the Jebel Ali Free Zone Authority as an Offshore Company with a Limited Liability under No. 151605

قد تأسست في المنطقة الحرة لجبل علي بمعرفتنا و تحت ختم سلطة المنطقة الحرة لجبل علي كشركة افشور ذات مسؤولية محدودة
تحت الرقم ١٥١٦٠٥

**v Registrar**
JEBEL ALI FREE ZONE AUTHORIT
REGISTRATION NO 151605

المسجل
سلطة المنطقة الحرة لجبل علي
رقم التسجيل ١٥١٦٠٥

DRC-34996 0689

Member of Economic Zones World



Exhibit 8 Part 6





عقد تأسيس شركة
الدبرة المحدودة
("الشركة")

١- اسم الشركة

اسم الشركة هو "شركة الدبرة المحدودة".

٢- المكتب المسجل.

يقع المكتب المسجل لمقر الشركة في برج رولكس، الدور السادس والعشرين، شارع الشيخ زايد، صندوق بريد ٣٣٦٧٥، دبي، دولة الإمارات العربية المتحدة.

٣- الوكيل المسجل.

الوكيل المسجل للشركة هو شركة "تايلور ويسبينج (الشرق الأوسط)".

٤- الأهداف.

٤-١ أهداف تأسيس "الشركة" هي كالآتي:

(أ) حيازة أو شراء الأسهم أو الحصص في أي شركة و/أو كيان و/أو مشروع بأي مكان حول العالم (سواء إذا كانت الشركة أو الكيان أو المشروع مسجلا في سوق الأوراق المالية أو غير مسجل)، وشراء الممتلكات المعتمدة من قبل "سلطة المنطقة الحرة بجبل علي".

(ب) ممارسة أي نشاط تجاري حسبما تجيز لوائح الشركات الأجنبية المعمول بها لدى سلطة المنطقة الحرة بجبل علي.

٤-٢ لا يجوز للشركة القيام بأي مما يلي:

(أ) مزاولة العمل مع أشخاص مقيمين في دولة الإمارات العربية المتحدة.

(ب) تملك حصة في أي عقار بدولة الإمارات العربية المتحدة، باستثناء الإيجار على النحو المنصوص عليه في اللائحة ١٥(٢) أو حسبما تجيز السلطة.

(ج) ممارسة الأعمال المصرفية.

(د) مزاولة العمل كشركة تأمين أو إعادة تأمين أو وكيل تأمين أو وسيط تأمين.

(هـ) مباشرة أي عمل آخر تحظره السلطة بموجب اللوائح المعمول بها من قبل السلطة.

٤-٣ لا يجوز اعتبار "الشركة" على أنها تباشر العمل مع أشخاص مقيمين في دولة الإمارات العربية المتحدة فقط جراء قيامها بأي مما يلي:



أشهد أنا الموقع على هذا المستند، بصفتي مترجما قانونيا مرخصا ومحلفا من قبل وزارة العدل، من اللغة العربية إلى اللغة الإنجليزية وبالعكس، بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي

I, the signatory to this document, as legal translator duly licensed and sworn by the Ministry of Justice, from Arabic to English and vice versa, do hereby certify that the enclosed translation is correct and identical to the original text

DRC-34996.0590

Exhibit 8 Part 6



مؤسسة التواصل للترجمة القانونية
Communication Legal Translation Est.

ص.ب ٢٢٣٩٢، دبي، الإمارات العربية المتحدة، هاتف: ٢٦٦٣٥١٧ ٤ ٩٧١+ فاكس: ٢٦٨٩٦١٥ ٤ ٩٧١+
بريد الكتروني: comm123@emirates.net.ae انترنت: www.communicationdubai.com
P.O. Box 22392, Dubai, United Arab Emirates Tel: +971 4 2663517 Fax: +971 4 2689615
E-mail: comm123@emirates.net.ae Website: www.communicationdubai.com

(أ)    إجراء أو مواصلة الاتصالات مع المتخصصين أمثلة المستشارين القانونيين أو
المحاسبين أو شركات الإدارة أو أي أشخاص آخرين بنفس الصفة يمارسون
العمل داخل دولة الإمارات العربية المتحدة.

(ب)    إعداد الدفاتر والسجلات والاحتفاظ بها داخل دولة الإمارات العربية المتحدة.

(جـ)    عقد اجتماعات مع مديريها أو أعضائها داخل دولة الإمارات العربية المتحدة.

(د)    إيجار عقار بغرض استغلاله كمكتب مسجل أو تملك عقار في جزر النخيل أو
جزر الجميرا أو أي عقارات مملوكة لدى شركة نخيل العقارية أو عالم دبي أو
مجموعة دبي القابضة أو شركة إعمار العقارية أو أي عقار آخر معتمد من قبل
السلطة.

(هـ)    امتلاك حساب مصرفي في أحد مصارف دولة الإمارات العربية المتحدة بغرض
تيسير المعاملات المادية الروتينية.

٤-٤    إذا كانت "الشركة ترغب في ممارسة النشاط التجاري أو أي عمل آخر في "المنطقة" أو
في أي مكان آخر بدولة الإمارات العربية المتحدة، فيلزم عليها الحصول على الترخيص
المناسب لممارسة النشاط التجاري أو أي عمل آخر من السلطات المختصة.

٥- رأس المال المرخّص

يبلغ رأس المال المرخّص "للشركة" ثلاثمائة ألف درهم إماراتي ٣٠٠,٠٠٠,٠٠ درهم
إماراتي) موزعة على ثلاثمائة ألف (٣٠٠,٠٠٠) سهم بقيمة اسمية تبلغ درهماً اماراتياً
واحداً لكل سهم. على أن جميع الأسهم الصادرة عن "الشركة" يجب أن تكون من نفس
الفئة.

٦- مواد تأسيس الشركة المعمول بها ("المواد")

وفقاً للأحكام المذكورة في "لوائح الشركات الأجنبية" المعمول بها لدى "سلطة المنطقة
الحرة بجبل علي"، فإن "المواد"، والتعهدات المتضمنة من جانب "الشركة" وكل عضو
بشأن مراعاة كافة الأحكام التي تنص عليها المواد، حالما يتم تسجيلها، تصير ملزمة
"للشركة" وأعضائها إلى نفس الحد كما لو تم توقيعها على التوالي من قبل "الشركة"
ومن قبل كل عضو.

٧- تعديل "المواد"

٧-١    طبقاً للأحكام التي تنص عليها "لوائح الشركات الأجنبية" المعمول بها لدى "سلطة
المنطقة الحرة بجبل علي"، يجوز "للشركة" تعديل "المواد" الخاصة بها بما يتفق مع
اللوائح.



أشهد أنا الموقع على هذا المستند، بصفتي مترجماً قانونياً مرخصاً ومحلفاً من قبل وزارة العدل من اللغة العربية إلى اللغة الإنجليزية وبالعكس، بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي

I, the signatory to this document, as legal translator duly licensed and sworn by the Ministry of Justice, from Arabic to English and vice versa, do hereby certify that the enclosed translation is correct and identical to the original text

DRC-34996.001

Exhibit 8 Part 6



**مؤسسة التواصل للترجمة القانونية**
**Communication Legal Translation Est.**

ص.ب ٢٢٣٩٢، دبي، الإمارات العربية المتحدة. هاتف: ٢٦٦٣٥١٧ ٤ ٩٧١+ فاكس: ٢٦٨٩٦١٥ ٤ ٩٧١+
بريد إلكتروني: comm123@emirates.net.ae إنترنت: www.communicationdubai.com
P.O. Box 22392, Dubai, United Arab Emirates  Tel: +971 4 2663517  Fax: +971 4 2689615
E-mail: comm123@emirates.net.ae  Website: www.communicationdubai.com

٧-٢  بالرغم من أي قواعد منصوص عليها في"المواد"، فإنه ليس على أي عضو "بالشركة" أن يكون ملزمًا بأي تعديل تم إجراؤه في "المواد" عقب تاريخ تعيينه كعضوه إذا، وطالما أن هذا التعديل:

(أ)   يتطلب منه الحصول على أو الاكتتاب من أجل الحصول على المزيد من الأسهم مقارنة بعدد الأسهم التي توجد بحيازته في تاريخ إجراء التعديل؛ أو

(ب)  يزيد، بأي صورة من الصور، المسؤولية الواقعة عليه في ذلك التاريخ بشأن المساهمة في أسهم رأس مال "الشركة الأجنبية" أو غير ذلك مما يقتضي بدفعه المال إلى "الشركة الأجنبية"؛

ما لم يوافق كتابة على أن يكون ملزمًا بذلك، إما قبل أو بعد إجراء التعديل.

٨-  تتمتع "الشركة" بصلاحيات وحقوق وامتيازات الشخص الطبيعي.

٩-  صلاحيات الشركة غير مقيدة بأي من القواعد المذكورة في "المواد" وبأي تصرف يصدر من قبل أي من أعضائها.

١٠-  أنا، الموقع أدناه، باسمه وعنوانه وصفته الموقع عليها أدناه، أرغب في تأسيس "شركة أجنبية" وفقًا "لعقد التأسيس هذا"، وأقر بموافقتي على حيازة عدد الأسهم المذكورة أمام اسمي في رأس مال "الشركة". ومن ثُم، فقد تم إبرام هذا العقد في تاريخ ١١ من أبريل ٢٠١٢.

كما إنني أقر بموافقتي كذلك على أن رأس مال الشركة هو ثلاثمائة ألف درهم إماراتي (٣٠٠،٠٠٠.٠٠ درهم إماراتي) موزعةً على النحو التالي:

| قيمة الأسهم | عدد الأسهم | اسم المساهم |
|---|---|---|
| ٣٠٠،٠٠٠.٠٠ درهم إماراتي | ٣٠٠،٠٠٠ | ألين إف. في. جويتز |

تم التوقيع هذا العقد في تاريخ ١١ من إبريل ٢٠١٢ من قبل

ماري بوري
لصالح وبالنيابة عن
ألين إف. في. جويتز



نتعهد أنا الموقع على هذا للمستند، بصفتي مترجما قانونيا مرخصا ومحلفا من قبل وزارة العدل من اللغة العربية إلى اللغة الإنجليزية وبالعكس بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي

DRC-... the signatory to this document, as legal translator duly licensed and sworn by the Ministry of Justice, from Arabic to English and vice versa, do hereby certify that the enclosed translation is correct and identical to the original text

# Exhibit 8 Part 6



MEMORANDUM OF ASSOCIATION OF

ALDABRA LIMITED
(THE "COMPANY")

1.    Name of the Company

The Name of the Company is ALDABRA LIMITED.

2.    The Registered Office

The registered Office of the Company is located at Roier Tower, 26th floor, Sheikh Zayed Road, P.O. Box 33875, Dubai, UAE.

3.    The Registered Agent

The Registered Agent of the Company is Taylor Wessing (Middle East) LLP.

4.    Objects

4.1    The objects for which the Company is established are: –

   (a)    to acquire, purchase shares or interests in any company, entity and/or undertaking anywhere in the world (whether such company, entity or undertaking is listed on any stock exchange or not) and to purchase properties approved by the Jebel Ali Free Zone Authority; and

   (b)    to carry out any commercial activity as may be permissible by the Jebel Ali Free Zone Authority Offshore Companies Regulation.

4.2    The company shall not: –

   (a)    carry on business with persons resident in the United Arab Emirates;

   (b)    own an interest in any real property located in the United Arab Emirates, other than a lease referred to in Regulation 15(2) or as approved by the Authority;

   (c)    carry on banking business;

   (d)    carry on business as an insurance or re-insurance company, insurance agent or insurance broker; or

   (e)    carry on any other business which may, by regulations made by the Authority, be prohibited by the Authority.

4.3    The Company shall not be treated as carrying out business with persons resident in the United Arab Emirates by reason only that: –

   (a)    it makes or maintains professional contact with legal consultants, accountants, management companies or other similar persons carrying on business within the United Arab Emirates;

   (b)    it prepares and maintains books and records within the United Arab Emirates;

   (c)    it holds within the United Arab Emirates meetings of its directors or members;

   (d)    it holds a lease of property for use as a registered office or owns real property on the Palm Islands or Jumeirah Islands or any properties owned by Nakheel Company LLC, Dubai World, Dubai Holdings, Emaar Properties or any other real property approved by the Authority; or

   (e)    it holds an account in a bank in the United Arab Emirates for the purpose of conducting its routine operational transactions.

4.4    If the company wishes to conduct trade or other business in the Zone or also here in the United Arab Emirates, it must obtain the appropriate licence to conduct the trade/other business activity from the competent authorities.





# Exhibit 8 Part 6

5.    Authorized Capital

The capital of the Company is three hundred thousand United Arab Emirates Dirhams (AED 300,000.00) divided into three hundred thousand (300,000) shares with a par value of one United Arab Emirates Dirham (AED 1.00) each. All Shares issued by the Company shall be of the same class.

6.    Effect of the Articles of Association of the Company ("Articles")

Subject to the provisions of the Jebel Ali Free Zone Authority Offshore Companies Regulations, the Articles, when registered, shall bind the Company and its members to the same extent as if they respectively had been signed by the Company and by each member, and contained covenants on behalf of the Company and each member to observe all the provisions of the Articles.

7.    Alteration of the Articles

7.1    Subject to the provisions of the Jebel Ali Free Zone Authority Offshore Companies Regulations, the Company may by Resolution alter its Articles.

7.2    Notwithstanding anything in the Articles no member of the Company is bound by any alteration made in the Articles after the date on which it became a member, if and so far as the alteration: -

(a)    requires him to take or subscribe for more shares than the number held by him at the date on which the alteration is made; or

(b)    in any way increases his liability at that date to contribute to the Offshore Company's share capital or otherwise to pay money to the Offshore Company,

Unless he agrees in writing, either before or after the alteration is made, to be bound by it.

8.    The Company has the capacity and rights and privileges of a natural person.

9.    The capacity of the Company is not limited by anything in its Articles or by any act of its members.

10.    I, the undersigned, whose name, address and description are subscribed hereto, am desirous of incorporating an Offshore Company pursuant to this Memorandum of Association, and I agree to take the number of shares in the capital of the Company set opposite my name. Therefore, this Memorandum is entered into on the 11th day of April 2012.

I further agree that the capital of the Company is three hundred thousand United Arab Emirates Dirhams (AED 300,000.00) and divided in the following manner: -

| Name of Subscriber | No. of Shares | Value of Shares |
|---|---|---|
| ALAIN F. V. GOETZ | 300,000 | AED 300,000.00 |

Signed on this 11th day of April 2012 by

Marie Borye
For and on behalf of
ALAIN F. V. GOETZ

Exhibit 8 Part 6

# Annex
# S

DRC-34996 0695

# Exhibit 8 Part 6

Societe commerciales et agricoles - Annexe au *Moniteur Belge* du 13 mai 1999

Handels- en landbouwvennootschappen - Annex of Belgian Offical Gazette dated 13 May 19999

**99**

6i MANDA'Jm ZLJN KrS'1ELCXE EN CIIAN IN CP 15 JULI 1993. SAMEN ME.T HET MAMIAAT V DE I-ER ERIC LAEJIIEN EN LCXPI' TOI' IE JAARVmGAlERrn'IE t-D>- tl:N IN HET JAAA 2C04.IE r.w-IDA'lm 1 , I..Q'I'UN . - VOOR·CE.LJK\OMIG . AtinLnlEN. 3) MAARI' 1939

(Get.) E. Laenen,
gedelegeerd bestuurder.

Neergelegd, 5 mei 1999.

| 1 | 1 915 | BTW 21 % | 402 | 2 317 |
|---|-------|----------|-----|-------|

(49742)

N. 990513 - 184

*L 'HERHITAGE*

*Naamloze Vennootschdp*

*Britselei 4*
*2000  Antwerpen*

*Antwerpen nummer 290.318*

*NN 434.061.340*

Uit de natulen van de buitengewone vergadering van aandeelhauders gehauden op 28 mei 1999 blijkt dat werden herbenoesd als bestuurde:l voor een per lode van zes jaar: de heer Lodewijk Uauters. nevzouw Ronique Vranckx en de heer Philippe uauters.

(Get.) M. Vranckx,
gedelegeerd bestuurder.

Neergelegd, 5 mei 1999.

| 1 | 1 915 | BTW 21 % | 402 | 2317 |
|---|-------|----------|-----|------|

(49743)

N. 990513 - 185

'"BBAAstnJm"

Naamloze Vennootschap

te 2030 Antwerpen, Noorderlaan, j09

Handelsregister van Antwerpen, nummer 287.352

**B.T.W. nummer: BE 446.094.882.**

DRC-34996 0696

---

**KAPITAAL**VERHOGING IN SPECIEN

**STATUTENWIJZIGING**

Er blijkt ut een- akte verleden voor Meester Denis DECKERS, Notaris te Brussel op zesLen april negenUenhonderd negenennegentig, dragende aan het slot de melding:

"Geregistreerd lwee bladen een renvooi op het Ide Registratiekantoor van VoiSt op 21 april 1999, boek 5118 blad 39 vak 9. Ontvangen vijftig duizond frank (50.000,-F)  De ontvanger, **a.i.** (getekend) Wautel'S Agnes.•

Oat de buitengewone algemene vergadering van de aandeelhoudel'S van de naamloze vennootschap "BBA AstnJm", waarvan de zetel gevestigd is te 2030 Antwerpen, Noorderlaan, 109, volgende beslissingen genomen heelt:-

1• Wijziging van de maatschappelijke benaming van de vennootschap in "AstnJm", en wijliging van **artikel 1** van de statuten als volgt:

"De vennootschap heeit de rechtsvorm van een naamloze vennootschap. Zij draagt de benaming "Astrum".".

2• Kapitaalverhoging met lien miljoen (10.000.000,-) frank. om het le brenger•t op vierentwinlig miljoen vierhonderdvierennegenligduizend (24.494.000,-) frank.

Oeze kapitaalverhoging wen:t verwezenlijkt door mbreng in geld en dat zij gepaan:t ging met de uitgilte van vijfduizend (5.000) kapitaalaandelen van dezelfde aard en die dezelfde rechten en voordelen bieden als de bestaande kapitaalaandelen, en die in die winslen delen pro rata temporis vanaf de inschnjving  Er werd onmiddellijk tegen part in geld ingeschreven op de nieuwe kapitaalaandelen, tegen de pnjs van Iweeduizend (2.000,-) frank per kapitaalaandeel en ieder kapitaalaandeel werd onmiddellijk volgestort tot beloop van honderd (100 %) procent

3• Vervanging van **artikel 5** van de statuten door de volgende tekst:

"Het kapitaal is vastgesteld op vierentwinlig miljoen vierhonden:1- vierennegentigduizend (24.494.000,-) frank, vefdeeld in twaalfduizend achthonderd (12.800) aandelen zonder nominale waarde. Het kapitaal is volledig volgestort.•

**VOLMACHT**

Volmacht werd verleend aan de besloten vennootschap met beperkte aansprakelijkheid "J. JOROENS", -met zetel le 1210 Brussel, Middaglijnstraat, 32. evenals aan haar bedienden, aangestelden en lasthebbers. met mogelijkheid tot indeplaatsstelling, teneinde de verwDing van de formaliteiten bij het het handelstegister en, dosgevallend, bij de Administralie van de Belasting 011er de Toegevoegde Waarde, te verzekeren.

Voor gelijkvormig analytisch uittreksel:

(Get.) Derlis Deckers,
notaris.

Werden gelijktijolg neergelegd': een uitgifte van de aide, drie volmachten, het bankattest en de geco6rdineerde tekst der statuten.

Neergelegd, 5 mei 1999.

| 2 | 3 830 | BTW 21 % | 804 | 4 634 |
|---|-------|----------|-----|-------|

(49744)

N. 990513 - 186

**"N.V. TONY GOETZ & ZONEN S.A."**
**In French "S.A. TONY GOETZ & FILS N.V."**

**Public Limited Company**

**2018 Antwerpi, Schupstraat 9-11**

**Antwerp : 243.994**

426 598 575

# Exhibit 8 Part 6

Socit!t!ls commerciales et agricoles -  Annexe au *Moniteur belge* du 13 mai 1999
Handels.. en landbouwvennootschappen -  Bijlage tot bet *Belgisch Staatsblad* van 13 mei 1999

RELOCATION OF THE ANNUAL GENERAL MEETING - CONVERSION OF
REGISTERED SHARES NI BEARER SHARES CAPITAL INCREASE - AMENDMENT
OF ARTICLE 17 OF THE ARTICLES OF ASSOCIATION.

WUZIRICATION OF POWERS OF REPRESENTATION - ADAPTATION TO THE LAW
OF APRIL 13, 1995 - RESIGNATION AND APPOINTMENT - AMENDMENT OF THE
ARTICLES OF ASSOCIATION.

The minutes of the extraordinary general meeting of shareholders drawn up by Frederik
Jorissen, notary public of Antwerp on April 28, 1999, "registered in Antwerp,
REGISTRATION S. of 29.04.99, Bock 144 sheel 39 box S.Received; 8,357frank,The
Receiver(gel)de ea Inspector wnJ.BORREMANS", that following resolutions were taken:

* T h e d a t u m o f t h e y e a r l y g e n e r a l r e g u l a t i o n w o r d i v e r p l a n t s f r
o m t h a c e r a t e Friday of the month of March at seventeen thirty to the cer liel Friday
of the month of May at seventeen thirty and this to be counted fromal 28 April1999.

* The shares in nominal value will be converted into shares in nominal value from 28
April 1999.

- The capital is increased with 1.271.244 francs or 31.513.J1 eurour bringing 1.250.000
francs or 30.986,69 euro to 2.521-244 Crank or 62.500 curo by contribution nl cash
amounting to 1.271.244 francs or 31.513.31 euro and without creation and issuance of
new shares.

- Article 17 of the articles of association is amended by replacing the text of the current
article 17

replaced by the following text:

The board of directors is authorized to perform all acts necessary or useful for the

necessary or useful for the realization of the purpose of the company, except those for
which only the general meeting of shareholders is authorized by law."

- The company will be validly represented by its Managing Director as from April 28,
1999.

- The general meeting ratifies all the actions taken by the directors after the expiration of
their mandate, for the period from January 2, 1998 to April 28, 1999.

Mr GOETZ Sylvain, clerk, reslding at 2980 Zoersel, Epiclalaan69, was discharged from
his duties as a director of the company.

Aari Mr. GOETZ Alain François, manager, residing at 18 Avenue Beau Site, Bujumbura
(Burundi), is discharged from his duties as a director of the company.

M e m b e r s l a T h e r e s l a P o o t e r s , b e s t w o r k , w o n e n d e r t h e 2 9 0 0
S c h o t e n . P a t a p p e l . t o w e n w e g 4 3 , is discharged as a director and managing
director of the company; she is discharged of her mandates.

- Adoption of new statutes and compliance with the law of April 13, 1995.

- The number of directors is set at three, appointed for a period of six years.

1. Mr. GOETZ Antoine François, business manager, residing at Bujumbura Burunds),
Avenuc Sceu Site 16:

2. Mr Sylvein Goetz, nominee;

J. Mr Alain Gootz, nominated.

Appointed Chairman of the Board of Directors and Chief Executive Officer

Mr Antoine Goetz, nominated.

All mandates are unpaid.

-The board of directors. still united, composed as stated above, declares that it has
formed an executive committee in accordance with article 18 of the articles of
association.

This executive committee si composed as follows:

- Mr. Antoine Goetz, aforementioned, is appointed Director and m a gin g the l i t e of Director,

- Ms. Chantal An JohnCORNAND, employee, residing at 2930 Brasschaat, Vuurkruisenicl 6I, is
appointed Deputy Director and may take the title of Assistant Director.

All mandates are unpaid.

The Board of Directors, convened as stated, resolved with effect from 28 April 1,999 that Mrs.
Comand, assistant director, be appointed and diluted for the period of six years from today 28
April 1000

- The purchase and sale of all goods and their financial reselling.

- Daily exchange of letters. Entering into, concluding and authorizing all contracts relating to
insurance and commitments relating to the settlement of claims. Collecting and receiving all
letters, documents, even registered and insured ones, and giving clearance for them.

Represent the company before all public and private administrations, the post office, all banks,
the telephone and telegraph companies, customs, railroad companies and all transport
companies.

## APPOINTMENT AS PROXY FOR THE TRADE REGISTRY AND TAX BOARDS,

Be appointed special proxy with a view to completing all agreements with the trade
register and with all tax authorities, to complete all formalities for the registration of this
company, any amendments thersto and the cancellation thereof and to complete all
formalities with all postal authorities: Mrs. Jenny Van Camp, residing in Liezele, Hofler
Bollen 45.

FOR THE EXCERPT THE NOTARY

(Get.) Frederik Jorissen, notary

Submitted, 5 May 1999

| | 2 | | 3830 | | | BTW 21% | 804 4634 |
| | | | | | | | (49745) |

N,  990513 -   187

Catalyst Investments (Belgium) nv

Na.unloze vennootschap

Desguinlei *SO* bus 6, 2018 AnlWerpen

Antwerpen 324.721

NN 461.356.64S

Uiarelcsel uit bet verslag van de bijzoodere algemeoe
vergadering dd. 3.1l Q.1997, uiu:cksel uit bet verslag van de
bijzondere algemene vergadering dd. 15.01.1999. uiarcksel
uit bet verslag van de bijzoodert: algemeoe vergadering van
01.04.1999.
Ontslagen en benoemingen.

Robert Pennone wenl eervol ontslag 10egekend als
besruurder op datum van 31.10.1997. Bernard Sabrier werd
met ingang van 31.10.1997 benoemd als bestuurder.
Rolf Soiron werd eervol ontslag lOCgekend als bestuurder op
datum 15.01.1999. Marie-Rose Kahane wenl met ingang
van 15.01.1999 benoemd als besruurder.
De algemene vergadering besliste met ingang van 1.04.1999
eervol ontslag toe te k.ennco a.an volgendc besruurders :
· Ren Braginslev;
· Maurice Dwek;
· Robin Hacke-Furbi;
· Bernard Sabrier:
· John Scully;
· Ruth Zilkha:
· Ezra Marcos;

- Marie-Rose Kabane.

# Exhibit 8 Part 6

Werden met inga.ng van 1.04.1999 benoemd als niellwe
bestuurders :
• Ringzieht av;
-TWIDelzicbt  nv.

DRC-34996 0698

Case 1:22-cv-01204-JEB     Document 40-7     Filed 01/17/25     Page 21 of 116

Exhibit 8 Part 6

Sociétés commerciales et agricoles — Annexe au Moniteur belge du 13 mai 1999
Handels- en landbouwvennootschappen — Bijlage tot het Belgisch Staatsblad van 13 mei 1999

99

BE MANDATEN ZIJN KOSTELOOS EN GAAN IN OP 15 JULI 1998, SAMEN MET HET MANDAAT VAN DE HEER ERIC LAENEN EN LOOPT TOT DE JAARVERGADERING TE HOUDEN IN HET JAAR 2004.DE MANDATEN WORDEN AANVAARD. VOOR GELIJKVORMIG AFSCHRIFT, ANTWERPEN, 30 MAART 1999

(Get.) E. Laenen,
gedelegeerd bestuurder.

Neergelegd, 5 mei 1999.

| 1 | 1915 | BTW 21 % | 402 | 2 317 |
|---|------|----------|-----|-------|
|   |      |          |     | (49742) |

---

N. 990513 — 184

**L'HERMITAGE**

**Naamloze Vennootschap**

**Britselei 4**
**2000     Antwerpen**

Antwerpen nummer 290.318

NN 434.061.340

**HERBENOEMING BESTUURDERS**

Uit de notulen van de buitengewone algemene vergadering van aandeelhouders gehouden op 28 mei 1993 blijkt dat werden herbenoemd als bestuurders voor een periode van zes jaar: de heer Lodewijk Wauters, mevrouw Monique Vranckx en de heer Philippe Wauters.

(Get.) M. Vranckx,
gedelegeerd bestuurder.

Neergelegd, 5 mei 1999.

| 1 | 1915 | BTW 21 % | 402 | 2 317 |
|---|------|----------|-----|-------|
|   |      |          |     | (49743) |

---

N. 990513 — 185

**"BBA Astrum"**

Naamloze Vennootschap

te 2030 Antwerpen, Noorderlaan, 109

Handelsregister van Antwerpen, nummer 287.352

B.T.W. nummer: BE 446.094.882.

---

**KAPITAALVERHOGING IN SPECIEN**

**STATUTENWIJZIGING**

Er blijkt uit een akte verleden voor Meester Denis DECKERS, Notaris te Brussel op zestien april negentienhonderd negenennegentig, dragende aan het slot de melding:
"Geregistreerd twee bladen een renvooi op het 1de Registratiekantoor van Vorst op 21 april 1999, boek 5/18 blad 89 vak 9. Ontvangen vijftig duizend frank (50.000.-F). De ontvanger, a.i. (getekend) Wauters Agnes."

Dat de buitengewone algemene vergadering van de aandeelhouders van de naamloze vennootschap "BBA Astrum", waarvan de zetel gevestigd is te 2030 Antwerpen, Noorderlaan, 109, volgende beslissingen genomen heeft:

1° Wijziging van de maatschappelijke benaming van de vennootschap in "Astrum", en wijziging van artikel 1 van de statuten als volgt:
"De vennootschap heeft de rechtsvorm van een naamloze vennootschap. Zij draagt de benaming "Astrum".".

2° Kapitaalverhoging met tien miljoen (10.000.000,-) frank, om het te brengen op vierentwintig miljoen vierhonderdvierennegentigduizend (24.494.000,-) frank.

Deze kapitaalverhoging werd verwezenlijkt door inbreng in geld en dat zij gepaard ging met de uitgifte van vijfduizend (5.000) kapitaalaandelen van dezelfde aard en die dezelfde rechten en voordelen bieden als de bestaande kapitaalaandelen, en die in de winsten delen pro rata temporis vanaf de inschrijving. Er werd onmiddellijk tegen pari in geld ingeschreven op de nieuwe kapitaalaandelen, tegen de prijs van tweeduizend (2.000,-) frank per kapitaalaandeel en ieder kapitaalaandeel werd onmiddellijk volgestort tot beloop van honderd (100 %) procent.

3° Vervanging van artikel 5 van de statuten door de volgende tekst:
"Het kapitaal is vastgesteld op vierentwintig miljoen vierhonderdvierennegentigduizend (24.494.000,-) frank, verdeeld in twaalfduizend achthonderd (12.800) aandelen zonder nominale waarde. Het kapitaal is volledig volgestort.".

**VOLMACHT**

Volmacht werd verleend aan de besloten vennootschap met beperkte aansprakelijkheid "J. JORDENS", met zetel te 1210 Brussel, Middaglijnstraat, 32, evenals aan haar bedienden, aangestelden en lasthebbers, met mogelijkheid tot indeplaatsstelling, teneinde de vervulling van de formaliteiten bij het het handelsregister en, desgevallend, bij de Administratie van de Belasting over de Toegevoegde Waarde, te verzekeren.

Voor gelijkvormig analytisch uittreksel :

(Get.) Denis Deckers,
notaris.

Werden gelijktijdig neergelegd : een uitgifte van de akte, drie volmachten, het bankattest en de gecoördineerde tekst der statuten.

Neergelegd, 5 mei 1999.

| 2 | 3 830 | BTW 21 % | 804 | 4 634 |
|---|-------|----------|-----|-------|
|   |       |          |     | (49744) |

---

N. 990513 — 186

**"N.V. TONY GOETZ & ZONEN S.A."**
in het frans "S.A. TONY GOETZ & FILS N.V."

Naamloze Vennootschap

2018 Antwerpen, Schupstraat 9-11

Antwerpen : 243.994

426.598.575

# Exhibit 8, Part 6

Sociétés commerciales et agricoles — Annexe au *Moniteur belge* du 13 mai 1999
Handels- en landbouwvennootschappen — Bijlage tot het *Belgisch Staatsblad* van 13 mei 1999

VERPLAATSING DATUM JAARLIJKSE ALGEMENE VERGADERING -
OMZETTING AANDELEN OP NAAM IN AANDELEN AAN TOONDER
KAPITAALVERHOGING - WIJZIGING ARTIKEL 17 VAN DE STATUTEN -
WIJZIGING VERTEGENWOORDIGINGSBEVOEGDHEID - AANPASSING
AAN DE WET VAN 13 APRIL 1995 - ONTSLAG EN BENOEMINGEN -
STATUTENWIJZIGING

Het blijkt uit een proces-verbaal van de buitengewone algemene vergadering van
de aandeelhouders, opgemaakt door notaris Frederik Jorissen te Antwerpen op 28
april 1999, "geregistreerd te Antwerpen, REGISTRATIE 5, de 29.04.99. Boek
144 blad 39 vak 5. Ontvangen: 6.357 frank. De ontvanger (get) de en Inspecteur
van J.BORREMANS", dat volgende beslissingen werden genomen :
* De datum van de jaarlijkse algemene vergadering wordt verplaatst van de eerste
vrijdag van de maand maart te zeventien uur dertig naar de eerste vrijdag van de
maand mei te zeventien uur dertig en dit te rekenen vanaf 28 april 1999.
* De aandelen op naam worden omgezet in aandelen aan toonder en dit te
rekenen vanaf 28 april 1999.
* Het kapitaal wordt verhoogd met 1.271.244 frank of 31.513,31 euro om het te
brengen van 1.250.000 frank of 30.986,69 euro op 2.521.244 frank of 62.500
euro door inbreng in speciën ten belope van 1.271.244 frank of 31.513,31 euro
en zonder creatie en uitgifte van nieuwe aandelen.
* Artikel 17 van de statuten wordt gewijzigd door de tekst van huidig artikel 17
te vervangen door volgende tekst :
"De raad van bestuur is bevoegd om alle handelingen te verrichten die nodig of
dienstig zijn tot de verwezenlijking van het doel van de vennootschap, behoudens
die waarvoor volgens de wet alleen de algemene vergadering van de aandeel-
houders bevoegd is."
* De vennootschap zal vanaf 28 april 1999 ten aanzien van derden rechtsgeldig
vertegenwoordigd worden door haar gedelegeerd bestuurder.
* De algemene vergadering bekrachtigt alle door de bestuurders gestelde
handelingen nadat hun mandaat vervallen was en dit voor de periode vanaf 1
januari 1998 te rekenen tot 28 april 1999.
Aan de heer GOETZ Sylvain, bediende, wonende te 2980 Zoersel, Epicelalaan 69,
wordt ontslag verleend als bestuurder van de vennootschap; hij bekomt decharge
over zijn mandaat.
Aan de heer GOETZ Alain François, zaakvoerder, wonende te Bujumbura
(Burundi), Avenue Beau Site 16, wordt ontslag verleend als bestuurder van de
vennootschap; hij bekomt decharge over zijn mandaat.
Aan mevrouw Theresia Pooters, bezuurder, wonende te 2900 Schoten, Patappel-
torenweg 43 wordt ontslag verleend respectievelijk als bestuurder en gedelegeerd
bestuurder van de vennootschap; zij bekomt décharge over haar mandaten.
* Vaststelling nieuwe statuten en aanpassing aan de wet van 13 april 1995.
* Het aantal bestuurders wordt bepaald op drie en tot dit ambt worden benoemd
voor een periode van zes jaar :

1. De heer GOETZ Antoine François, zaakvoerder, wonende te Bujumbura
(Burundi), Avenue Beau Site 16;
2. De heer Sylvain Goetz, voornoemd;
3. De heer Alain Goetz, voornoemd.
Tot voorzitter van de raad van bestuur en tot gedelegeerd bestuurder wordt
benoemd : de heer Antoine Goetz, voornoemd.
Alle mandaten zijn onbezoldigd.

* De raad van bestuur, nog steeds verenigd, samengesteld zoals vermeld,
verklaart een directiecomité samen te stellen overeenkomstig artikel 18 van de
statuten.
Dit directiecomité is als volgt samengesteld:
- de heer Antoine Goetz, voornoemd, wordt benoemd tot directeur en mag de
titel voeren van Director.
- mevrouw Chantal An John CORNAND, bediende, wonende te 2930 Brasschaat,
Vuurkruisenlei 61, wordt benoemd tot adjunct directeur en mag de titel voeren
van Assistant Director.
Alle mandaten zijn onbezoldigd.
De raad van bestuur, samengesteld zoals vermeld, beslist met ingang vanaf 28
april 1999 dat mevrouw Cornand, assistent director, volgende machten worden
toegekend en dit voor een periode van zes jaar te rekenen vanaf heden 28 april
1999

- de aan- en verkoop en inontvangstname van alle goederen, en de financiële
regeling ervan.
- Dagelijkse briefwisseling. Het aangaan, afsluiten en toestaan van alle contracten
met betrekking op verzekeringen en verbintenissen betreffende afwikkeling van
claims of schadegevallen. Alle brieven, stukken, zelfs aangetekende en
verzekerde afhalen en ontvangen en het geven van kwijting hiervan.
De vennootschap vertegenwoordigen ten overstaan van alle openbare en private
administraties, de post, alle banken, de regie van telefoon en telegraaf, douane,
spoorwegmaatschappijen en alle transportondernemingen.

AANSTELLING TOT VOLMACHTDRAGERS VOOR HET HANDELSREGIS-
TER EN FISCALE BESTUREN.
Wordt tot bijzondere volmachtdrager aangesteld, en einde bij het handelsregister
en bij alle fiscale besturen alle akkoorden te treffen, alle formaliteiten te
vervullen voor inschrijving en onderschrijving van de vennootschap, de eventuele wijziging
hiervan en de doorhaling ervan en om bij alle postbesturen alle formaliteiten te
vervullen : mevrouw Jenny Van Camp, wonende te Liezele, Hof ter Bollen 45.
VOOR ONTLEDEND UITTREKSEL
DE NOTARIS

Voor ontledend uittreksel :

(Get.) Frederik Jorissen,
notaris.

Tegelijk hiermee neergelegd : afschrift, drie volmachten en bankkostext.

Neergelegd, 5 mei 1999.

|   |   |   |   |   |
|---|---|---|---|---|
| 2 | 3 830 | BTW 21 % | 804 | 4 634 |
|   |   |   |   | (49745) |

---

N. 990513 — 187

Catalyst Investments (Belgium) nv

Naamloze vennootschap

Desguinlei 50 bus 6, 2018 Antwerpen

Antwerpen 324.721

NN 461.356.645

Uittreksel uit het verslag van de bijzondere algemene
vergadering dd. 31.10.1997, uittreksel uit het verslag van de
bijzondere algemene vergadering dd. 15.01.1999, uittreksel
uit het verslag van de bijzondere algemene vergadering van
01.04.1999.
Ontslagen en benoemingen.

Robert Pennone werd eervol ontslag toegekend als
bestuurder op datum van 31.10.1997. Bernard Sabrier werd
met ingang van 31.10.1997 benoemd als bestuurder.
Rolf Soiron werd eervol ontslag toegekend als bestuurder op
datum 15.01.1999. Marie-Rose Kahane werd met ingang
van 15.01.1999 benoemd als bestuurder.
De algemene vergadering besliste met ingang van 1.04.1999
eervol ontslag toe te kennen aan volgende bestuurders :
- René Braginsky;
- Maurice Dwek;
- Robin Hacke-Farbi;
- Bernard Sabrier;
- John Seully;
- Ruth Zilkha;
- Ezra Marcos;
- Marie-Rose Kahane.

Werden met ingang van 1.04.1999 benoemd als nieuwe
bestuurders :
- Ringzicht nv;
- Tunnelzicht nv.

Case 1:22-cv-01204-JEB    Document 40-7    Filed 01/17/25    Page 23 of 116

Exhibit 8 Part 6

Handels• en landbouwvennootschappen – Annex to Belgian Official Gazette of February 13, 2002
Societes commerciales et agricoles -   Annexe au *Moniteur belge* du 13 fe_vrier 2002

82

gemachtigde die geen vennool moet zijn en die de bij de
stemming bepaalde formaliteiten heeft vervuld om deel te nemen
aan de vergadering.

**Bestuur - Controle.**

De vennootschap wordt bestuurd door Mn of meer natuurlijke
personen, al dan niet bezoldigd en al dan niet vennoten.
Iedere zaakvoerder kan alle handelingen verrichten die nodig of
dienstig zijn tot verwezenlijking van het doel van de
vennootschap, behoudens die handelingen waarvoor volgens de
wet alleen de algemene vergadering bevoegd is.
Iedere zaakvoerder vertegenwoordigt de vennootschap jegens
derden en in rechte als eiser orals verweerder.
De vennootschap wordt bovendien geldig vertegenwoordigd door
de bijzondere volmachtdragers binnen de grenzen *van* hun
volmacht.
Behoudens andersluidende beslissing van de algemene
vergadering is het mandaat van de zaakvoerder onbezoldigd.

(Gct.) J. Coppens,
notaris.

Tegelijk hiermee neergelegd: uitgifte van de akte en
lijst publicaticdata

Neergelegd, 30 januari 2002.

3      151,95    BTW 21 %    31,.91.    183,86   EUR

(30385)

N. 20020213 -  131

Grondwerkcn Bosch NV

Naarloze vennootschap

Kantonbaan 4 -2520 RANST-OELEGEM

HR Antwerpen 30800 I

BE 454.377.989

ALGEMENE vergadering dd. **31:"2.2001**

De algemene vergadering keurt de jaarrekening
goed en beslist tevens tot omzetting van het
kapitaal naar euro-equivalent. Het kapitaal zal
worden aangcpast van 2.500.000,- bef naar 62.000
euro, de verhoging gebeurt door incorporatie van
reserves.

Aldus unaniem goedgekeurd en opgemaak.t op
01.06.2001.

(Gct.) Bosch, Luc,
gedelegeerd bestuurder.

Tegelijk hiermee neergelegd : 1-verslag; t coordinatie.
Neergelegd, 30 januari 2002.

(Kosteloos)

(30366)

**DRC-34996 0701**

N. 20020213 -  132

"N.V. TONY GOETZ & ZONEN S.A". in French "S.A. TONY
GOETZ & Fils **N.v.**•

Public Limited Company

2018 Antwerpen, Schupstraat 9-11

Antwerpen: 243.994

426.598.575

Appointment Director

UIT notulen van de raad van bestuur van de naamloze
vennootschap "N.V.Tony Goetz & Zonen S.A." in
French
"S.A. Tony Goetz & fils N.V." with registered address in
2018 Antwerpen, Schupstraat 9-11, company no.
Antwerpen: 243.994, BIW nr 426.598.575 the following
appears : the entire board of directors is present and
decides unanimously that Mr. Sylvain GOETZ, residing at
2980 Zoersel, Epicialaan 69, and Mr. Alain Francois
GOETZ, residing at 2110 Wijnegem, Ruiterstaan 25, be
appointed as managing director. They accept their
mandate. Antwerp, 17/01/2002.

(Get.) Sylvain Goetz, managing
director.

Submitted, 30 January 2002.

1      50,65    BTW 21 %   10,64     61,29   EUR

(30367)

N. 20020213–   133

DE LANGE B.V.B.A.

Besloten Vennootschap met Beperkte Aansprakelijkheid

2000 Antwerpen, Godefriduskaai 26 bus 32

Antwerpen • nr. 316.513

457.958.477

VERVROEGDE ONTBINDING – BENOEMING VEREFFENAAR
MACHTEN VAN DE VEREFFENAAR

Het blijkt uit een akte, verleden voor Notaris Fran-
cis De Bourgne, te Kalmthout, op voortien januari
tweeduizend en twee, geregistreerd, houdende de
buitengewone algemene vergadering van de besloten

Exhibit 8 Part 6

gemachtigde die geen vennoot moet zijn en die de bij de stemming bepaalde formaliteiten heeft vervuld om deel te nemen aan de vergadering.

**Bestuur - Controle.**

De vennootschap wordt bestuurd door één of meer natuurlijke personen, al dan niet bezoldigd en al dan niet vennoten.

ledere zaakvoerder kan alle handelingen verrichten die nodig of dienstig zijn tot verwezenlijking van het doel van de vennootschap, behoudens die handelingen waarvoor volgens de wet alleen de algemene vergadering bevoegd is.

ledere zaakvoerder vertegenwoordigt de vennootschap jegens derden en in rechte als eiser of als verweerder.

De vennootschap wordt bovendien geldig vertegenwoordigd door de bijzondere volmachtdragers binnen de grenzen van hun volmacht.

Behoudens andersluidende beslissing van de algemene vergadering is het mandaat van de zaakvoerder onbezoldigd.

(Get.) J. Coppens,
notaris.

Tegelijk hiermee neergelegd : uitgifte van de akte en lijst publicatiedata

Neergelegd, 30 januari 2002.

| 3 | 151,95 | BTW 21 % | 31,91 | 183,86 | EUR |
|---|---|---|---|---|---|

(30385)

---

**N. 20020213 — 131**

Grondwerken Bosch NV ...

Naamloze vennootschap

Kantonbaan 4 – 2520 RANST-OELEGEM

HR Antwerpen 308001

BE 454.377.989

**ALGEMENE vergadering dd. 31.12.2001**

De algemene vergadering keurt de jaarrekening goed en beslist tevens tot omzetting van het kapitaal naar euro-equivalent. Het kapitaal zal worden aangepast van 2.500.000,- bef naar 62.000 euro, de verhoging gebeurt door incorporatie van reserves.

Aldus unaniem goedgekeurd en opgemaakt op 01.06.2001.

(Get.) Bosch, Luc,
gedelegeerd bestuurder.

Tegelijk hiermee neergelegd : 1 verslag; 1 coördinatie.

Neergelegd, 30 januari 2002.

(Kosteloos)

. (30366)

DRC-34996 0702

---

**N. 20020213 — 132**

"N.V. TONY GOETZ & ZONEN S.A". In het Frans "S.A. TONY GOETZ & Fils N.V."

Naamloze vennootschap

2018 Antwerpen, Schupstraat 9-11

Antwerpen: 243.994

426.598.575

Benoeming bestuurder

UIT notulen van de raad van bestuur van de naamloze vennootschap "N.V.Tony Goetz & Zonen S.A." in het frans "S.A. Tony Goetz & fils N.V." met zetel te 2018 Antwerpen, Schupstraat 9-11, handelsregister Antwerpen: 243.994, BTW nr 426.598.575 blijkt het volgende : de volledige raad van bestuur is aanwezig en beslist met unanimiteit dat de heer Sylvain GOETZ, wonende te 2980 Zoersel, Epicialaan 69, en de heer Alain François GOETZ, wonende te 2110 Wijnegem, Ruiterslaan 25, te benoemen tot gedelegeerd bestuurder. Zij aanvaarden hun mandaat. Antwerpen, 17/01/2002.

(Get.) Sylvain Goetz,
afgevaardigd bestuurder.

Neergelegd, 30 januari 2002.

| 1 | 50,65 | BTW 21 % | 10,64 | 61,29 | EUR |
|---|---|---|---|---|---|

(30367)

---

**N. 20020213 — 133**

DE LANGE B.V.B.A.

Besloten Vennootschap met Beperkte Aansprakelijkheid

2000 Antwerpen, Godefriduskaai 26 bus 32

Antwerpen - nr. 316.513

457.958.477

VERVROEGDE ONTBINDING - BENOEMING VEREFFENAAR MACHTEN VAN DE VEREFFENAAR

Het blijkt uit een akte, verleden voor Notaris Francis De Bourgne, te Kalmthout, op veertien januari tweeduizend en twee, geregistreerd, houdende de buitengewone algemene vergadering van de besloten

Exhibit 8 Part 6

# Annex
# T

DRC-34996 0703

# Exhibit 8 Part 6 <sub>Mod PDF 19.01</sub>



| Luik B | In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging van de akte ter griffie |

Voor-
behouden
aan het
Belgisch
Staatsblad

**\*20335982\***

**Submitted
30-07-2020**

Griffie

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

Company No. : **0426598575**
Name
(Full) : **TONY GOETZ**
(Short) : **TG**

Legal Form : **Public Limited Company**

Address **Jacob Jacobsstraat 58**
: **2018 Antwerpen**

Subject of the act:   APPOINTMENT, RESIGNATION, STATUTES

Extract delivered for registration to be deposited at the registry of the Commercial Court of Antwerp, Antwerp Division.

From a record drawn up before Meester Paul Wellens, notary public, with registered office in Mortsel, on July 8, 2020, it appears that an extraordinary general meeting of "TONY GOETZ" limited liability company, with its registered office in 2018 Antwerp, Jacob Jacobsstraat 58, registered in the Register of Legal Entities in Antwerp, Antwerp Division under the number BE 0426.598.575, was held, and that the following resolutions, among others, were passed:

I. The meeting decides to change the name of the company to Industrial Refining Company, abbreviated "IRC".

Consequently, the meeting resolves to replace the first sentence of Article 1: with the following text: "The Company shall take the form of a limited liability company. Its name shall be: Industrial Refining Company, abbreviated "IRC".

II.    In application of Article 39, §1, paragraphs 1 and 3 of the Act of March 23, 2019 introducing the WVV and containing miscellaneous provisions (1), the general meeting decides to amend the Articles of Association in accordance with the provisions of the WVV.

III.    As a result of the foregoing decision, the general meeting decides to adopt completely new bylaws, which are in accordance with the WVV, without, however, changing its object.

The general meeting declares and decides that the text of the new statutes shall read as follows:
**NAME AND LEGAL FORM**
The company shall take the form of a limited liability company. Its name shall be: Industrial Refining Company, abbreviated "IRC".

This name must always appear - on all deeds, invoices, announcements, notices, letters, orders, websites and other documents, whether in electronic form or not, emanating from the company - as well as the words "public limited company", in French "société anonyme", or the acronym "NV", in French "SA".
**REGISTERED OFFICE**
The registered office is located in the Flemish Region.
The company may, by decision of its governing body, establish or abolish administrative offices, agencies, workshops, warehouses and annexes whenever and wherever it deems necessary, both in Belgium and abroad.
**OBJECT OF THE COMPANY**
The object of the company is:
Wholesale trade in goldsmithing and jewelry, various recovery products, more particularly old jewelry, retail trade in gold and silverware and jewelry, old clothes and second-hand goods: more particularly old jewelry.
Wholesale and retail sale of precious metals and related goods. Wholesale and retail sale of monetary gold

Op de laatste blz. van Luik B vermelden :    <u>Voorkant</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

<u>Achterkant</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 07D4

# Exhibit 8 Part 6 <sub>Mod PDF 19.01</sub>

Voor-
behouden
aan het
Belgisch
Staatsblad

⬇

**Luik B    - vervolg**

The company may carry out all commercial, financial, industrial, movable and immovable
transactions that contribute directly or indirectly to the achievement of its object.

It may participate, by means of subscription, contribution, merger, absorption, cooperation, financial
intervention or agreement, in all other Belgian or foreign companies, institutions or businesses,
without distinction, whether incorporated or still to be incorporated, whose object is similar, related,
connected or analogous to its own or whose participation or cooperation may contribute to the
achievement of its object. It may guarantee in favor of the same companies or grant its aval, act as
its agent or representative, grant advances, credits, mortgage or other securities.

**DURATION**

The company is incorporated for an indefinite term. CAPITAL OF THE COMPANY

The capital is twenty million euros (EUR 20,000,000), divided into one hundred twenty-five (125)
shares with fractional value.

**MANAGEMENT AND REPRESENTATION**

*Composition of the governing body.*

The company is managed by one or more directors, natural or legal persons, whether shareholders
or not, appointed for a maximum of six years by the general meeting of shareholders. If they are
appointed in the articles of association, they have the capacity of statutory directors and their
mandate is of indefinite duration.

The directors are expected to carry out their mandate unpaid unless otherwise stipulated in the
decision of appointment by the general meeting of shareholders.

The director whose mandate has ended, if the number of directors falls below the minimum provided
by the applicable legal provisions, shall remain in office until such time as the general meeting, for
whatever reason, does not provide for his replacement.

The board of directors may appoint a chairman from among its members. In the absence of
appointment or in the absence of the chairman, the chairmanship shall be assumed by the director
designated among the directors present by the board of directors.

*Governing Body*

The governing body is vested with the most extensive power to perform all acts necessary or useful
for achieving the objects of the company, except those acts reserved to the general meeting by law

In case there are two directors, they will run the board jointly.

If there are three or more directors, they will form a board, which will appoint a chairman and
otherwise act like a board meeting.

The governing body may delegate the day-to-day management of the company to one or more
(legal) persons, whether or not shareholders. If a director is entrusted with the daily management, he
bears the title of "delegated director." If a non-director is entrusted with day-to-day management, he
bears the title of director or managing director or any other title by which he/she is designated in the
appointment resolution.

*Power of representation of the governing body.*

The governing body, as well as the proxies for the daily management within the framework of this
board, may also grant specific powers to one or more persons of their choice.

Power of representation of the governing body.

The managing body represents the company vis-à-vis third parties and in court as plaintiff or
defendant. The company shall also be validly represented towards third parties and in court as
plaintiff or defendant, by each director, acting individually.

Within the framework of the daily management, the company is also validly represented by (an)
attorney(s) to this management.

Moreover, within the framework of their mandate, the company is validly joined by special proxies.

Moreover, the company may be represented abroad by any person expressly appointed for this
purpose by the board of directors.

**GENERAL MEETING**

The ordinary general meeting of shareholders, called the annual meeting, must be convened every
year on the third Friday of the month of June at sixteen (4 p.m.) .

If that day is a legal holiday, the meeting shall be held on the next business day.

At any time, a special general meeting may be convened to deliberate and decide on all matters
within its competence that do not involve an amendment to the Articles of Association.

An extraordinary general meeting may also be convened at any time to deliberate and decide on an
amendment to the Articles of Association.

Ordinary, special and extraordinary general meetings are held at the company's registered office, or
at another place designated in the notice of meeting.

Op de laatste blz. van Luik B vermelden :    **Voorkant** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

**Achterkant** : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0705

**Exhibit 8 Part 6**

may not delegate them. The resolutions of the sole shareholder acting as general meeting are the statutes. They are obliged to call the general meeting within three weeks when shareholders represent one-tenth of the number of issued shares request it, with at least the agenda items proposed by the shareholders concerned.

Notices convening a general meeting shall state the agend

If the company has only one shareholder, he exercises the powers granted to a general meeting. He cannot delegate them. The resolutions of the sole shareholder acting as a general meeting are recorded in a register kept at the company's headquarters.

*Convening - Power - Obligation*
The governing body and, where appropriate, the auditor may convene either an ordinary general meeting or a special or extraordinary general meeting. They must convene the annual meeting on the day determined by the statutes. They are obliged to call the general meeting within three weeks when shareholders representing one-tenth of the number of issued shares request it, with at least the agenda items proposed by the shareholders concerned.

Notices convening a general meeting shall state the agenda and shall be made by means of an announcement published at least fifteen days before the meeting in the Belgian Official Gazette and in a nationally distributed newspaper. If a new notice is required and the date of the second meeting was mentioned in the first notice, the notice for the second meeting must be published in the Belgian Official Gazette and in a nationally distributed newspaper at least seventeen days before the meeting. However, if the agenda of the ordinary general meeting is limited to the examination of the annual accounts, the annual report and, if applicable, the report of the statutory auditor, and the vote on the discharge to be granted to the directors and, if applicable, to the statutory auditor(s), no announcement in a national newspaper is required. To be admitted to the meeting, holders of bearer shares must deposit their shares at the company's registered office no later than five days before the date of the meeting.

An attendance list is kept at each general meeting

*Admission to the general meeting*
The managing body may require that in order to participate in the general meeting:
- the owners of registered shares, at least five working days before the date of the general meeting, must inform the governing body in writing of their intention to participate in the meeting and of the number of shares with which they wish to participate in the vote.
- the owners of dematerialized shares must, at least five working days before the date of the general meeting, deposit at the registered office of the company, at the places indicated in the notice, a certificate drawn up by the authorized account holder or by the settlement institution certifying the unavailability of the dematerialized shares until the date of the general meeting.
Directors and auditors are exempt from this formality

*Voting rights*
Each share entitles the holder to one vote.

*Extraordinary general meeting - amendment of the articles of association.*
The extraordinary general meeting must be held in the presence of a notary public. It can validly deliberate and decide on a proposed amendment to the articles of association only if the shareholders present or represented represent at least half of the capital.

If the latter condition is not met, a second meeting must be convened and the new meeting validly deliberates and decides, regardless of the proportion of capital represented by the shareholders present or represented.

An amendment is adopted only if it has obtained three-fourths of the votes cast, abstentions being counted neither in the numerator nor in the denominator.

*Minutes of the general meeting*
The minutes of a general meeting shall be signed by the members of the bureau and by shareholders who request them; copies for third parties shall be signed by one or more members of the governing body with power of representation.

**BOOK YEAR**
The company's fiscal year begins on January 1 and ends on December 31 of the same year.

**PROFIT**
Annually, the general meeting retains an amount of at least one-twentieth of the net profit for the establishment of a reserve fund; the obligation to make this deduction ceases when the reserve fund has reached one-tenth of the capital. The balance is at the disposal of the general meeting, which will decide on its use each year.

Op de laatste blz. van Luik B vermelden :

<u>Voorkant</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Achterkant</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0706

# Exhibit 8 Part 6 Mod PDF 19.01

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B** - vervolg

## DISSOLUTION - LIQUIDATION
Losses
When, as a result of losses incurred, the net assets have fallen to less than half of the capital, the governing body must call the general meeting to a meeting, to be held within two months after the loss has been determined, or should have been determined pursuant to legal or statutory provisions, to deliberate and decide on the dissolution of the company or on measures announced in the agenda to safeguard the continuity of the company. Unless the governing body proposes the dissolution of the company, it shall set forth in a special report the measures it proposes to safeguard the continuity of the company. That report shall be included in the agenda and made available to shareholders at the company's registered office fifteen days before the general meeting.

The same procedure shall be followed when the net assets have fallen to less than one-fourth of the capital as a result of losses incurred, it being understood that the dissolution shall take place when it is approved by one-fourth of the votes cast, abstentions not being counted in either numerator or denominator.

When the net assets have fallen below sixty-one thousand five hundred euros (€61,500.00), any interested party or the public prosecutor may demand the dissolution of the company before the court. Where appropriate, the competent corporate court may grant the company a binding period of time to regularize its situation.

Dissolution
The company may be dissolved at any time by decision of the general meeting, subject to the requirements for amendment of the articles of association.

Immediate closure of the liquidation
A dissolution and the closure of the liquidation in one deed are possible under the conditions of Article 2:80 WVV.

Appointment of liquidators
If no liquidators have been appointed or designated, the directors in office at the time of dissolution shall be considered liquidators by operation of law in respect of third parties. The general meeting of the dissolved company may at any time appoint or dismiss one or more liquidators by a simple majority vote.

Only if it appears from the statement of assets and liabilities drawn up in accordance with Article 2:71, § 2, second paragraph of the Companies Code that not all creditors can be repaid in full, the appointment of the liquidators must be submitted for confirmation in the articles of association or by the general meeting to the president of the competent company court. However, this confirmation is not required if that statement of assets and liabilities shows that the company has debts only towards its shareholders and all shareholders who are creditors of the company confirm in writing their agreement to the appointment

***Distribution of net assets***
Without prejudice to the rights of preferential creditors, the liquidator shall pay all debts proportionately and without distinction between debts due and debts not due, deducting, with respect to them, the discount.

If the accounts show that not all creditors can be repaid in full, the liquidator shall, before the liquidation is concluded, submit for approval by unilateral petition in accordance with Articles 1025 et seq. of the Judicial Code the plan for the distribution of assets among the various categories of creditors to the competent corporate court.

This obligation to submit the plan of distribution to the court for approval does not apply when the creditors who were not repaid in full are shareholders of the company and all such shareholders agree in writing to the plan of distribution and waive the submission of the plan of distribution.

After payment of the debts and all the expenses of the liquidation, or consignment of the necessary funds to pay them, and, if there are shares which have not been paid up in full, after restoring the balance between the shares, either by requiring additional payment on behalf of the shares which have not been paid up in full, or by making prior repayments in favor of those shares which have been paid up in a greater proportion, the liquidator shall distribute among the shareholders the funds or values which can be equally distributed; he shall hand over to them the assets which he has had to retain for further distribution. The assets to be distributed shall be divided among all the shareholders in proportion to the number of shares they own, and the goods remaining in kind shall be distributed in the same manner

Op de laatste blz. van Luik B vermelden :    <u>Voorkant</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Achterkant</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0707

# Exhibit 8 Part 6 <sub>bled PDF 18.01</sub>

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B** - vervolg

IV. The general meeting resolves to commission the undersigned notary public to draw up and sign the coordination of the Articles of Association, in accordance with the previous resolution, and to arrange for their deposit in the company file.

V. The general meeting declares that the address of the registered office is located at 2018 Antwerp, Jacob Jacobsstraat 58.

VI. The general meeting decides to dismiss the director, mentioned below, from his position: the limited liability company WORLD WIDE CONSULTING, with registered office at 2018 Antwerp, Jacob Jacobsstraat 56, represented by its permanent representative Mr. Goetz Sylvain.

The meeting grants, by special vote, full and complete discharge to the resigning director for the mandate exercised in the corporate year started on January 1, 2020 to date.

FOR DISCHARGE EXECUTION (witnessed) notary Paul Wellens Simultaneously herewith resigned:
Copy of the minutes
Coordinated articles of association

Op de laatste blz. van Luik B vermelden :     <u>Voorkant</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Achterkant</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0708

# Exhibit 8 Part 6



**Luik B**    In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie
na neerlegging van de akte ter griffie



Voor-
behouden
aan het
Belgisch
Staatsblad

*20335982*

Neergelegd
30-07-2020

Griffie

| | |
|---|---|
| Ondernemingsnr | : 0426598575 |
| **Naam** | |
| (voluit) | **TONY GOETZ** |
| (verkort) | **TG** |
| Rechtsvorm | : Naamloze vennootschap |
| Volledig adres v.d. zetel | Jacob Jacobsstraat 58 |
| | : 2018 Antwerpen |

<u>Onderwerp akte :</u>    BENAMING, ONTSLAGEN, BENOEMINGEN, STATUTEN
(VERTALING, COORDINATIE, OVERIGE WIJZIGINGEN)

Uittreksel afgeleverd vr registratie om neer te leggen ter griffie van de Ondernemingsrechtbank te Antwerpen, afdeling Antwerpen.
Uit een proces-verbaal verleden voor Meester Paul Wellens, notaris, met zetel te Mortsel, op 8 juli 2020, blijkt dat werd gehouden een buitengewone algemene vergadering van "TONY GOETZ" naamloze vennootschap, gevestigd te 2018 Antwerpen, Jacob Jacobsstraat 58, ingeschreven in het rechtspersonenregister te Antwerpen, afdeling Antwerpen onder het nummer BE 0426.598.575, en dat onder meer volgende besluiten werden genomen:
I. De vergadering beslist de naam van de vennootschap te wijzigen in **Industrial Refining Company**, afgekort "**IRC**"
Bijgevolg beslist de vergadering beslist om de eerste zin van Artikel 1: te vervangen door de volgende tekst:
"De vennootschap heeft de vorm van een naamloze vennootschap.
Haar naam luidt: **Industrial Refining Company**, afgekort "**IRC**".
II. In toepassing van artikel 39, §1, eerste en derde lid van de wet van 23 maart 2019 tot invoering van het WVV en houdende diverse bepalingen (1), besluit de algemene vergadering om de statuten aan te passen aan de bepalingen van het WVV.
III. Als gevolg van de voorgaande besluit, besluit de algemene vergadering volledig nieuwe statuten aan te nemen, die in overeenstemming zijn met het WVV, zonder evenwel een wijziging aan te brengen in haar voorwerp.
De algemene vergadering verklaart en besluit dat de tekst van de nieuwe statuten als volgt luidt:
**NAAM EN RECHTSVORM**
De vennootschap heeft de vorm van een naamloze vennootschap.
Haar naam luidt: **Industrial Refining Company**, afgekort "**IRC**".
Deze naam moet steeds – op alle akten, facturen, aankondigingen, bekendmakingen, brieven, orders, websites en andere stukken al dan niet in elektronische vorm, uitgaande van de vennootschap – vermeld worden, evenals de woorden 'naamloze vennootschap', in het Frans 'société anonyme', of het letterwoord 'NV', in het Frans 'SA'.
**ZETEL**
De zetel is gevestigd in het Vlaamse Gewest.
De vennootschap mag, bij besluit van haar bestuursorgaan, administratieve zetels, agentschappen, ateliers, opslagplaatsen en bijhuizen oprichten of opheffen wanneer en waar zij het nodig acht, zowel in België als in het buitenland.
**VOORWERP VAN DE VENNOOTSCHAP**
De vennootschap heeft tot voorwerp:
De groothandel in goudsmeedwerk en juwelen, diverse recuperatieproducten, meer bepaald oude juwelen, kleinhandel in goud- en zilverwerk en juwelen, oude kleren en tweedehandse goederen: meer bepaald oude juwelen.
Groothandel en kleinhandel in edele metalen en aanverwanten.
Groothandel en kleinhandel in monetair goud.

Op de laatste blz. van Luik B vermelden :    <u>Voorkant</u> : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
<u>Achterkant</u> : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0709

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

# Exhibit 8 Part 6

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B** - vervolg

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

De vennootschap kan alle handels-, financiële, industriële, roerende en onroerende verrichtingen doen die de verwezenlijking van het maatschappelijk voorwerp rechtstreeks of onrechtstreeks in de hand werken.

Zij kan door middel van inschrijving, inbreng, fusie, opslorping, samenwerking, financiële tussenkomst of afspraak deelnemen in alle andere Belgische of buitenlandse vennootschappen, instellingen of ondernemingen, zonder onderscheid, ongeacht of zij opgericht zijn of nog moeten opgericht worden, wier maatschappelijk voorwerp gelijk is, verwant, verknocht of analoog aan het hare of waarvan de deelname of samenwerking kan bijdragen tot de verwezenlijking van haar doel.
Zij kan zich ten gunste van dezelfde vennootschappen borgstellen of haar aval verlenen, optreden als haar agent of vertegenwoordiger, voorschotten toestaan, kredieten verlenen, hypothecaire of andere zekerheden verstrekken.

**DUUR**

De vennootschap is opgericht voor een onbepaalde duur.

**KAPITAAL VAN DE VENNOOTSCHAP**

Het kapitaal bedraagt twintig miljoen euro (20.000.000 EUR), verdeeld in honderd vijfentwintig (125) aandelen met fractiewaarde.

**BESTUUR EN VERTEGENWOORDIGING**

*Samenstelling van het bestuursorgaan*

De vennootschap wordt bestuurd door één of meer bestuurders, natuurlijke personen of rechtspersonen, al dan niet aandeelhouder, benoemd voor ten hoogste zes jaar door de algemene vergadering van aandeelhouders. Indien zij worden benoemd in de statuten, hebben zij de hoedanigheid van statutair bestuurder en is hun mandaat van onbepaalde duur.

De bestuurders worden geacht hun mandaat onbezoldigd uit te oefenen tenzij anders bepaald in de benoemingsbeslissing van de algemene aandeelhoudersvergadering.

De bestuurder wiens mandaat een einde heeft genomen, blijft, als het aantal bestuurders daalt onder het bij de toepasselijke wettelijke bepalingen voorziene minimum, in functie tot zolang de algemene vergadering, om welke reden ook, niet in zijn vervanging voorziet.

De raad van bestuur kan onder zijn leden een voorzitter benoemen. Bij ontstentenis van benoeming of bij afwezigheid van de voorzitter wordt het voorzitterschap waargenomen door de bestuurder aangeduid onder de aanwezige bestuurders door de raad van bestuur.

*Bestuursbevoegdheid*

Het bestuursorgaan is bekleed met de meest uitgebreide macht om alle handelingen te verrichten die nodig of dienstig zijn voor het bereiken van het voorwerp van de vennootschap, met uitzondering van die handelingen aan de algemene vergadering voorbehouden door de wet.

Ingeval er twee bestuurders zijn zullen zij gezamenlijk het bestuur voeren.

Indien er drie of meer bestuurders zijn, vormen deze een college, dat een voorzitter aanstelt en verder handelt zoals een raadsvergadering.

Het bestuursorgaan mag het dagelijks bestuur van de vennootschap delegeren aan één of meer (rechts)personen, al dan niet aandeelhouders. Wordt een bestuurder belast met het dagelijks bestuur dan draagt hij de titel van "gedelegeerd-bestuurder". Wordt een niet-bestuurder belast met het dagelijks bestuur dan draagt hij de titel van directeur of algemeen directeur of elke andere titel waarmee hij/zij in het benoemingsbesluit wordt aangeduid.

Het bestuursorgaan, evenals de gevolmachtigden voor het dagelijks bestuur binnen het kader van dit bestuur, mogen eveneens specifieke bevoegdheden aan één of meer personen van hun keus toekennen.

*Vertegenwoordigingsbevoegdheid van het bestuursorgaan*

Het bestuursorgaan vertegenwoordigt de vennootschap jegens derden en in rechte als eiser of als verweerder. De vennootschap wordt jegens derden en in rechte als eiser of als verweerder tevens geldig vertegenwoordigd, door elke bestuurder, afzonderlijk handelend.

Binnen het kader van het dagelijks bestuur, is de vennootschap tevens geldig vertegenwoordigd door (een) gevolmachtigde(n) tot dit bestuur.

De vennootschap is bovendien, binnen het kader van hun mandaat, geldig verbonden door bijzondere gevolmachtigden.

Bovendien kan de vennootschap in het buitenland vertegenwoordigd worden door iedere persoon uitdrukkelijk daartoe aangesteld door de raad van bestuur.

**ALGEMENE VERGADERING**

De gewone algemene vergadering van aandeelhouders, jaarvergadering genoemd, moet ieder jaar worden bijeengeroepen op de *derde vrijdag van de maand juni om zestien (16.00) uur* .

Indien die dag een wettelijke feestdag is, wordt de vergadering op de eerstvolgende werkdag gehouden.

Te allen tijde kan een bijzondere algemene vergadering worden bijeengeroepen om te beraadslagen en te besluiten over alle aangelegenheden die tot haar bevoegdheid behoren en die geen wijziging van de statuten inhouden.

*Op de laatste blz. van Luik B vermelden :*        *Voorkant* : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
                                                                        bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
                                                        *Achterkant* : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0710

# Exhibit 8 Part 6 <sub>Mod PDF 19.01</sub>

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B** - vervolg

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

Te allen tijde kan ook een buitengewone algemene vergadering worden bijeengeroepen, om over een wijziging van de statuten te beraadslagen en te besluiten.

De gewone, de bijzondere en de buitengewone algemene vergaderingen worden gehouden in de zetel van de vennootschap, of op een andere plaats aangewezen in de oproeping.

Telt de vennootschap slechts één aandeelhouder, dan oefent hij de bevoegdheden uit die een algemene vergadering zijn toegekend. Hij kan deze niet overdragen. De beslissingen van de enige aandeelhouder die handelt als algemene vergadering worden vermeld in een register dat op de zetel van de vennootschap wordt bijgehouden.

*Bijeenroeping - Bevoegdheid - Verplichting*

Het bestuursorgaan en, in voorkomend geval, de commissaris kunnen zowel een gewone algemene vergadering als een bijzondere of een buitengewone algemene vergadering bijeenroepen. Zij moeten de jaarvergadering bijeenroepen op de bij de statuten bepaalde dag. Zij zijn verplicht de algemene vergadering binnen de drie weken bijeen te roepen wanneer aandeelhouders die een tiende van het aantal uitgegeven aandelen vertegenwoordigen, dat vragen, met ten minste de door de betrokken aandeelhouders voorgestelde agendapunten.

De oproepingen tot een algemene vergadering vermelden de agenda en geschieden door middel van een aankondiging die ten minste vijftien dagen voor de vergadering geplaatst wordt in het Belgisch Staatsblad en in een nationaal verspreid blad. Ingeval een nieuwe oproeping nodig is en de datum van de tweede vergadering werd vermeld in de eerste oproeping, moet de aankondiging voor de tweede vergadering ten minste zeventien dagen voor de vergadering geplaatst worden in het Belgisch Staatsblad en in een nationaal verspreid blad. Indien de agenda van de gewone algemene vergadering zich beperkt tot de behandeling van de jaarrekening, het jaarverslag en, in voorkomend geval, het verslag van de commissaris en de stemming over de kwijting te verlenen aan de bestuurders en, in voorkomend geval, aan de commissaris(sen), is evenwel geen aankondiging in een nationaal verspreid blad vereist. Om tot de vergadering toegelaten te worden, moeten de houders van aandelen aan toonder, uiterlijk vijf dagen voor de datum van de vergadering hun aandelen deponeren op de zetel van de vennootschap.

Op elke algemene vergadering wordt een aanwezigheidslijst bijgehouden.

*Toelating tot de algemene vergadering*

Het bestuursorgaan kan eisen dat teneinde aan de algemene vergadering te kunnen deelnemen:
- de eigenaars van aandelen op naam, ten minste vijf werkdagen vóór de datum van de algemene vergadering, het bestuursorgaan schriftelijk dienen in te lichten van hun intentie aan de vergadering deel te nemen, alsook van het aantal aandelen waarmee zij aan de stemming wensen deel te nemen.
- de eigenaars van gedematerialiseerde aandelen, ten minste vijf werkdagen vóór de datum van de algemene vergadering, op de zetel van de vennootschap op de plaatsen aangegeven in de oproeping een door de erkende rekeninghouder of door de vereffeningsinstelling opgesteld attest dienen neer te leggen, waarbij de onbeschikbaarheid van de gedematerialiseerde aandelen tot op de datum van de algemene vergadering wordt vastgesteld.

Bestuurders en commissarissen zijn vrijgesteld van deze formaliteit.

*Stemrecht*

Elk aandeel geeft recht op één stem.

*Buitengewone algemene vergadering - Statutenwijziging*

De buitengewone algemene vergadering moet worden gehouden ten overstaan van een notaris. Zij kan over een voorgestelde statutenwijziging slechts dan op rechtsgeldige wijze beraadslagen en besluiten, wanneer de aanwezige of vertegenwoordigde aandeelhouders ten minste de helft van het kapitaal vertegenwoordigen.

Is de laatste voorwaarde niet nageleefd, dan is een tweede bijeenroeping nodig en de nieuwe vergadering beraadslaagt en besluit op geldige wijze, ongeacht het door de aanwezige of vertegenwoordigde aandeelhouders vertegenwoordigde deel van het kapitaal.

Een wijziging is alleen dan aangenomen, wanneer zij drie/vierde van de uitgebrachte stemmen heeft verkregen, waarbij onthoudingen in de teller noch in de noemer worden meegerekend.

*Notulen van de algemene vergadering*

De notulen van een algemene vergadering worden ondertekend door de leden van het bureau en door de aandeelhouders die erom verzoeken; kopieën voor derden worden ondertekend door één of meer vertegenwoordigingsbevoegde leden van het bestuursorgaan.

**BOEKJAAR**

Het boekjaar van de vennootschap gaat in op *1 januari en eindigt op 31 december* van het zelfde jaar.

**BESTEMMING VAN DE WINST**

Jaarlijks houdt de algemene vergadering een bedrag in van ten minste een twintigste van de nettowinst voor de vorming van een reservefonds; de verplichting tot deze afneming houdt op wanneer het reservefonds een tiende van het kapitaal heeft bereikt.

*Op de laatste blz. van Luik B vermelden :*    **Voorkant** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
**Achterkant** : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0711

# Exhibit 8 Part 6 Mod PDF 19.01

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B** - vervolg

Het saldo staat ter beschikking van de algemene vergadering, die ieder jaar over zijn aanwending zal
beslissen.
**ONTBINDING - VEREFFENING**
*Verliezen*
Wanneer ten gevolge van geleden verlies het netto-actief gedaald is tot minder dan de helft van het
kapitaal, moet het bestuursorgaan de algemene vergadering oproepen tot een vergadering, te
houden binnen twee maanden nadat het verlies is vastgesteld, of krachtens wettelijke of statutaire
bepalingen had moeten worden vastgesteld, om te beraadslagen en te besluiten over de ontbinding
van de vennootschap of over in de agenda aangekondigde maatregelen om de continuïteit van de
vennootschap te vrijwaren. Tenzij het bestuursorgaan de ontbinding van de vennootschap voorstelt,
zet het in een bijzonder verslag uiteen welke maatregelen het voorstelt om de continuïteit van de
vennootschap te vrijwaren. Dat verslag wordt in de agenda vermeld en vijftien dagen vóór de
algemene vergadering op de zetel van de vennootschap ter beschikking van de aandeelhouders
gesteld.
Op dezelfde wijze wordt gehandeld wanneer het netto-actief ten gevolge van geleden verlies gedaald
is tot minder dan een/vierde van het kapitaal, met dien verstande dat de ontbinding plaatsheeft
wanneer zij wordt goedgekeurd door een vierde van de uitgebrachte stemmen, waarbij onthoudingen
in teller noch in de noemer worden meegerekend.
Wanneer het netto-actief is gedaald tot beneden eenenzestigduizend vijfhonderd euro (€ 61.500,00),
kan iedere belanghebbende of het openbaar ministerie de ontbinding van de vennootschap voor de
rechtbank vorderen. In voorkomend geval kan de bevoegde ondernemingsrechtbank aan de
vennootschap een bindende termijn toestaan om haar toestand te regulariseren.
*Ontbinding*
De vennootschap kan op elk moment ontbonden worden door beslissing van de algemene
vergadering, met inachtneming van de vereisten voor statutenwijziging.
*Onmiddellijke sluiting van de vereffening*
Een ontbinding en de sluiting van de vereffening in één akte zijn mogelijk onder de voorwaarden van
artikel 2:80 WVV.
*Benoeming van vereffenaars*
Zijn er geen vereffenaars benoemd of aangewezen, dan worden de bestuurders die op het tijdstip
van de ontbinding in functie zijn, ten aanzien van derden van rechtswege als vereffenaars
beschouwd. De algemene vergadering van de ontbonden vennootschap kan te allen tijde en bij
gewone meerderheid van stemmen, één of meer vereffenaars benoemen, of ontslaan.
Enkel indien uit de staat van actief en passief opgemaakt overeenkomstig artikel 2:71, § 2, tweede lid
WVV, blijkt dat niet alle schuldeisers volledig kunnen worden terugbetaald, moet de benoeming van
de vereffenaars in de statuten of door de algemene vergadering aan de voorzitter van de bevoegde
ondernemingsrechtbank ter bevestiging worden voorgelegd. Deze bevestiging is evenwel niet vereist
indien uit de staat van actief en passief blijkt dat de vennootschap enkel schulden heeft ten aanzien
van haar aandeelhouders en alle aandeelhouders die schuldeiser zijn van de vennootschap
schriftelijk bevestigen akkoord te gaan met de benoeming.
*Verdeling netto-actief*
Onverminderd de rechten van de bevoorrechte schuldeisers, betaalt de vereffenaar alle schulden
naar evenredigheid en zonder onderscheid tussen opeisbare en niet opeisbare schulden, onder
aftrek, wat deze betreft, van het disconto.
Indien uit de rekeningen blijkt dat niet alle schuldeisers integraal kunnen worden terugbetaald, legt de
vereffenaar vooraleer de vereffening wordt gesloten, bij eenzijdig verzoekschrift overeenkomstig de
artikelen 1025 en volgende van het Gerechtelijk Wetboek het plan voor de verdeling van de activa
onder de verschillende categorieën schuldeisers ter goedkeuring voor aan bevoegde
ondernemingsrechtbank.
Deze verplichting tot het ter goedkeuring voorleggen van het plan van verdeling aan de rechtbank
geldt niet wanneer de schuldeisers die het integraal werden terugbetaald, aandeelhouders van de
vennootschap zijn en al deze aandeelhouders schriftelijk akkoord gaan met het plan van verdeling en
afstand doen van het voorleggen van het plan van verdeling.
Na betaling van de schulden en van alle kosten van de vereffening, of consignatie van de nodige
gelden om die te voldoen, en, indien er aandelen zijn die niet zijn volgestort, na herstelling van het
evenwicht tussen de aandelen, hetzij door bijkomende volstorting te eisen lastens de niet voldoende
volgestorte aandelen, hetzij door voorafgaandelijke terugbetalingen te doen in voordeel van die
aandelen die in een grotere verhouding zijn volgestort, verdeelt de vereffenaar onder de
aandeelhouders de gelden of waarden die gelijk verdeeld kunnen worden; hij overhandigt hun de
goederen die hij voor nadere verdeling heeft moeten overhouden. Het te verdelen actief wordt
verdeeld onder alle aandeelhouders naar verhouding van het aantal aandelen dat zij bezitten en de
goederen die nog in natura voorhanden zijn worden op dezelfde wijze verdeeld.
IV. De algemene vergadering besluit de opdracht te geven aan de ondergetekende notaris om de

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

Op de laatste blz. van Luik B vermelden :

**Voorkant** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

**Achterkant** : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0712

# Exhibit 8 Part 6 Mod PDF 19.01

Voor-
behouden
aan het
Belgisch
Staatsblad

**Luik B**    - vervolg

coördinatie van de statuten op te maken en te ondertekenen, in overeenstemming met het vorige
besluit, en de neerlegging daarvan in het vennootschapsdossier te verzorgen.
**V.** De algemene vergadering verklaart dat het adres van de zetel is gevestigd te *2018 Antwerpen,
Jacob Jacobsstraat 58.*
**VI.** De algemene vergadering besluit de bestuurder, hierna vermeld, ontslag te geven uit zijn functie:
de besloten vennootschap **WORLD WIDE CONSULTING**, met zetel te 2018 Antwerpen, Jacob
Jacobsstraat 56, vertegenwoordigd door haar vaste vertegenwoordiger de heer Goetz Sylvain.
De vergadering verleent, door een bijzondere stemming, volledige en algehele kwijting aan de
ontslagnemende bestuurder voor het mandaat uitgeoefend in het maatschappelijk jaar begonnen op
1 januari 2020 tot op heden.
VOOR ONTLEDEND UITTREKSEL (get.) notaris Paul Wellens
Tegelijk hiermee neergelegd:
Afschrift van het proces-verbaal
Gecoördineerde statuten

Bijlagen bij het Belgisch Staatsblad - 03/08/2020 - Annexes du Moniteur belge

Op de laatste blz. van Luik B vermelden :    **Voorkant** : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n
bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
**Achterkant** : Naam en handtekening (dit geldt niet voor akten van het type "Mededelingen").

DRC-34996 0713

Exhibit 8 Part 6

# Annex
# U

DRC-34996 0714

# Exhibit 8 Part 6

 **RDB** | RWANDA DEVELOPMENT BOARD    **ORG** Office of the Registrar General    

*Date of issuance:* **04/04/2017**

*Company Code:* **107046254**

## Full Registration Information of Domestic Company

| | |
|---|---|
| *Registration date:* | 03/04/2017 |
| *Last amendment date:* | |
| *Company name:* | ALDANGO Ltd |
| *Category:* | Private |
| *Type:* | Limited by shares |

**Registered Office Address:**

| | |
|---|---|
| *Address:* | Kimihurura, Gasabo, Umujyi wa Kigali, RWANDA |
| *Phone number :* | +250739168900 |
| *Email:* | william.ntambara@ngali.com |

**Management details:**

**Managing Director :**

| | |
|---|---|
| *Name :* | William  NTAMBARA |
| *ID Document :* | NID  Card No.: ▮▮▮▮▮ |
| *Address* | Allemangne , Europe, Diaspora - A, RWANDA |
| *Phone Number :* | ▮▮▮▮▮ |

**Members of the Board:**

**Chair Person :**

| | |
|---|---|
| *Name :* | ALAIN V FRANCOIS |
| *ID Document :* | PASSPORT  Card No.: ▮▮▮▮ |
| *Address* | DUBAI,UAE, ROLEX TOWER, UNITED ARAB EMIRATES |
| *Phone Number :* | ▮▮▮▮ |

**Member:**

| | |
|---|---|
| *Name :* | Iyakaremye Serge  KAJABO |
| *ID Document :* | NID  Card No.: ▮▮▮▮ |
| *Address* | Afrique Du Sud , Afrique, Diaspora - A, RWANDA |
| *Phone Number :* | ▮▮▮▮ |

*Serial No:*  **405780**

*Page No:* **1 / 2**

DRC-34996 0715

# Exhibit 8 Part 6

 **ORG** Office of the Registrar General 

## Capital Information:

| Share capital: | 1000000 |
| --- | --- |

## Share Groups:

| No.of shares: | 2000 |
| --- | --- |
| pervalue per share: | 500 |
| Total capital: | 1000000 |

Total Guarantee:

## Founding Shareholders Details:

| No. | Shareholder name | Shareholder ID/Passport | Share group | Number of shares | Share capital |
| --- | --- | --- | --- | --- | --- |
| 1 | NGALI MINING LTD | | Ordinary Share | 1000 | 500000 |
| 2 | ALDABRA LTD | | Ordinary Share | 1000 | 500000 |

## Main Business Activity:

| No. | Code | Description | Date |
| --- | --- | --- | --- |
| 1 | B0899 | Other mining and quarrying n.e.c. | 03/04/2017 |

## Other Business Activities:

| No. | Code | Description | Date |
| --- | --- | --- | --- |
| 1 | B0510 | Mining of hard coal | 03/04/2017 |
| 2 | B0520 | Mining of lignite | 03/04/2017 |
| 3 | B0610 | Extraction of crude petroleum | 03/04/2017 |
| 4 | B0620 | Extraction of natural gas | 03/04/2017 |
| 5 | B0710 | Mining of iron ores | 03/04/2017 |
| 6 | B0721 | Mining of uranium and thorium ores | 03/04/2017 |
| 7 | B0810 | Quarrying of stone, sand and clay | 03/04/2017 |
| 8 | B0891 | Mining of chemical and fertilizer minerals | 03/04/2017 |
| 9 | B0990 | Support activities for other mining and quarrying | 03/04/2017 |

*Check the validity of the certificate by visiting the link http://www.rdb.rw/ using the serial number.*

DRC-34996 0716

Exhibit 8 Part 6

 **RDB** | RWANDA DEVELOPMENT BOARD

**ORG**
Office of the Registrar General



*Date of Issuance:* **04/04/2017**

*Company Code:* **107046254**

## CERTIFICATE OF DOMESTIC COMPANY REGISTRATION

*(Article 16 of law No 07/2009 of 27/04/2009 relating to companies)*

| | |
|---|---|
| *Registration date:* | 03/04/2017 |
| *Company Name:* | ALDANGO Ltd |
| *Category:* | Private |
| *Type:* | Limited by shares |

**Registered Office Address:**

| | |
|---|---|
| *Address:* | Kimihurura, Gasabo, Umujyi wa Kigali, RWANDA |
| *Phone number :* | +250739168900 |
| *Email:* | william.ntambara@ngali.com |

**Management details:**

**Managing Director :**

| | |
|---|---|
| *Name :* | William  NTAMBARA |
| *ID Document :* | NID  Card No.:▬▬▬▬ |

**Main Business Activity:**

| No. | Code | Description | Date |
|---|---|---|---|
| 1 | B0899 | Other mining and quarrying n.e.c. | 03/04/2017 |

**Other Business Activities:**

| No. | Code | Description | Date |
|---|---|---|---|
| 1 | B0510 | Mining of hard coal | 03/04/2017 |
| 2 | B0520 | Mining of lignite | 03/04/2017 |
| 3 | B0610 | Extraction of crude petroleum | 03/04/2017 |
| 4 | B0620 | Extraction of natural gas | 03/04/2017 |
| 5 | B0710 | Mining of iron ores | 03/04/2017 |
| 6 | B0721 | Mining of uranium and thorium ores | 03/04/2017 |
| 7 | B0810 | Quarrying of stone, sand and clay | 03/04/2017 |
| 8 | B0891 | Mining of chemical and fertilizer minerals | 03/04/2017 |
| 9 | B0990 | Support activities for other mining and quarrying | 03/04/2017 |

Louise Kanyonga

Registrar General

*Serial No:* **405780**

Page No: 1 / 1

DRC-34996 0717

*Check the validity of the certificate by visiting the link http://www.rdb.rw/ using the serial number.*

# Exhibit 8 Part 6

**Statutory Tax filing due dates**

| | Tax type | Filing due date |
|---|---|---|
| 1 | Profit Income tax | January 1st -31st March of the following year of registration |
| 2 | Quarterly Income tax prepayment | First quarter (April 1st – 30th June), second quarter (July 1st – 30th Sept) Third quarter (October 1st – 31st December) |
| 3 | VAT Monthly | 1st – 15th of the following month after the VAT monthly tax period |
| 4 | VAT Quarterly | 1st – 15th of the following month after the VAT quarterly tax period |
| 5 | PAYE (Pay As You Earn) | 1st – 15th of the following month after the PAYE monthly tax period |
| 6 | PAYE Quarterly | 1st – 15th of the following month after the PAYE quarterly tax period |

**Note :**

1. Once you are registered for business, Profit Income tax and Quarterly Income Tax prepayment Tax Accounts are automatically generated  and you have obligation to make their declaration and payments where applicable in their respective due dates.

2. Other types of taxes mentioned in the table above and others not mentioned are being registered  for during the course of business as they become mandatory except from VAT which is either    mandatory when you reach on an annual turnover of 20M Frw or 5MFrw million on quarterly basis,  then Voluntary VAT registration when your annual turnover is bellow 20mFrw.

3. The first Quarterly Income Prepayment is made after the first profit Income Tax has been declared.

| Article 219 | Any company, other than a small private company shall have one or more employee whose duties shall be as indicated in this article in the companies' Act |
|---|---|
| Article 220 | The Company shall within (30) days notify to the Registrar General whether the appointed employee resigned or was removed from office, the office of that employee shall not be left vacant for 3 months. |
| Article 233 | The change of the registered office shall be notified to the Registrar General for registration by the Board of Directors. The change of the registered of the registered office shall take effect the date contained in the notice |
| Article 238 | A company shall at each annual meeting appoint an auditor. The Registrar General shall have the powers to have the company appoint its auditor within thirty (30) days, if the post goes vacant for a month. |
| Article 253 | The board of directors of every company shall ensure that within three (3) months following the end of financial statement, the audit is made and signed by at least one of the representative of the company. Such an audit shall be submitted to the Registrar General. |
| Article 258 | Every company other than small private company shall ensure that, within thirty (30) days after the financial statement of the company and any group financial statements are required to be signed. Copies of those statements together with the auditor's report on those statements are filed with the Registrar General for registration |
| Article 259 | A small private company shall file with the Registrar General a financial summary for registration |
| Article260 | A company shall have a balance sheet date in each calendar year. A company may not have a balance sheet date in calendar year in which it is incorporated where its first financial statement date is in following calendar year and is not later than eighteen (18) months after the date of its formation or incorporation. |
| Article 330 | A foreign company shall, within three (3) months of its annual meeting of shareholders, file with the Registrar General, and fulfill what is mentioned in this article. |
| Article 332 | A foreign company shall, in addition to balance sheet and other documents required to be filed, comply with International Accounting Standards, fairly showing the assets employed in, and liabilities arising out of, and its profit and loss arising out of operations conducted in or from Rwanda. |
| Article 333 | A foreign company shall file with the Registrar General in each year at the time a copy of its balance sheet is filed, a notice containing the particulars with respect to the business being carried out by the company in Rwanda. |

DRC-34996 0718

Exhibit 8 Part 6

# Annex
# V

DRC-34996 0719

**FORMULIER IV**

Exhibit 8 Part Cano

Neergelegd ter griffie

van koophsndel

te ........... O:3 "03· 20lfl

op................................. .. .

BESTEMO VOOR DE RECHTBIINK VAN KDOPHANDEL

I IIIIIIIIIIIIIIIIIIIIIIII IIIIII IIIIIIIIIIIIIIIIIIIIIIIIII
*03029686*

BESTEMD VDOR HEY BELGISCH StAATSBLAD

To publish ACTS and EXTRACTIONS from ACTS in the Annexes to the Moniteur
Belge. To deposit together with a copy at the Registry

I          TYPED TEXT

1. Registration :

Register of the European Economic Cooperation
— ------------------------->  ►  nr.
O Register of the Economic cooperation
------------------------->  ►   nr.
. O  Register of the agriculture enterprises

Register van de burgerlijke vennootschappen met
handelsvorm
------------------------->  ►  nr.
O Register van de buitenlandse vennootschappen die
met vallell ender het voorschrift ven de artikelen 81
en 82 van het Wetboek van vennootschappen
------------------------->  ►  nr.

BELGIAN PRECIOUS METALS INDUSTRIES, in
het kort B P M I ofBPMI

2. Name of the company or of the partnership
; it appears in the statutes)

3. Legal form  (fully written)

4. Address (street, number, postal code, municipality)

Naamloze vennootschap

▷ Dupréstraat 77 bus 2
1090        Brussel

[▷ BRUSSEL 659 080- ANTWERPEN 349 953

5. VAT number  or registration number of the legal
persons (not subject to VAT)

6. Subject of the act

Text of the act or extract from an act to be
published in the annexes to the Belgian Official
Gazette.
Nothing in the text may have been deleted or
corrected; the text itself may not go outside the
printed frame; if necessary, use one or more
sheets of plain paper and prepare the text in
colons of 94 mm width, according to the model
available at the Registry of the Commercial
Courts.

▷ BE 477 567 325

**Appointment of directors and managing directors – Change of
registered address bestuurders en gcdelegeerd**

The Extraordinary General Meeting of Shareholders of
February 25, 2003 decided unanimously to appoint four
additional directors, namely the company
BERKENRODE BVBA, with registered address at 2018
Antwerp, Jacob Jacobsstraat 56, the company
WORLDWIDE CONSULTING BVBA, with registered
address at 2018 Antwerp, Jacob Jacobstraat 56, Mr.
GOETZ Alain, residing at 2110 Wijnegem, Ruiterslaan
25, and Mr. GOETZ Sylvain, residing at 2980 Zoersel
Epicialaan 69.
The mandate of the other three directors is confirmed,
namely Mr. CORNELIS JOSSE, residing at 8301
Knokke-Heist, Sint-Antoniusstraat 52, the company ART
NV, with registered address at 1090 Jette, Kardinaal
Mercierplein 30, bus 1, and Mrs. Struyf Patricia, residing
at 2050 Antwerp, Esmoreitlaan 51 bus 1. Their mandate
is unpaid.

Signature + Name and capacity

DRC-34996 0720

**Exhibit 8 Part 6**

The meeting also unanimously decided to transfer the registered office as well as the operating offices of the company to 2018 ANTWERPEN, SIMONSSTRAAT 42-14, and this with with effect from today

On February 25, 2003, the Board of Directors unanimously decided to appoint as Managing Directors Mr. GOETZ ALAIN, Mr. GOETZ SYLVAIN and Mr. CORNELLS Josse, all three above-mentioned. Their mandate will be carried out without remuneration

Power of attorney is granted to VAN ROY INGE, residing at 2830 Willebroek, Bezelaerstraat 27, with right of substitution, to modify the registration in the commercial register in Antwerp and to fulfil all formalities with the VAT administration

CORNELIS JOSSE
Managing Director

DRC-34996 0721

FORMULIER IV

# Exhibit 8 Part 6

Neergelegd ter griffie van de rechtbank van koophandel

te .................................... **03-03-2003**

op ....................................

BESTEMD VOOR DE RECHTBANK VAN KOOPHANDEL

*03029686*

BESTEMD VOOR HET BELGISCH STAATSBLAD

## AKTEN en UITTREKSELS uit AKTEN bekend te maken in de bijlagen tot het Belgisch Staatsblad. Samen met een afschrift ter griffie neer te leggen

GETYPTE OF GEDRUKTE TEKST

**1. Inschrijving :**

☐ Register van de Europese economische samen-
werkingsverbanden
⟶ nr.

☐ Register van de economische samenwerkings-
verbanden
⟶ nr.

☐ Register van de landbouwvennootschappen
⟶ nr.

☐ Register van de burgerlijke vennootschappen met
handelsvorm
⟶ nr.

☐ Register van de buitenlandse vennootschappen die
niet vallen onder het voorschrift van de artikelen 81
en 82 van het Wetboek van vennootschappen
⟶ nr.

**2. Naam van de vennootschap of van het samen-
werkingsverband (zoals deze uit de statuten blijkt)** ▷

BELGIAN PRECIOUS METALS INDUSTRIES, in
het kort B P M I of BPMI

**3. Rechtsvorm (voluit geschreven)** ▷

Naamloze vennootschap

**4. Zetel (straat, nummer, postnummer, gemeente)** ▷

Dupréstraat 77 bus 2
1090    Brussel

**5. Handelsregister (zetel van de rechtbank + nr.)** ▷

BRUSSEL 659 080 -- ANTWERPEN 349 953

**6. B.T.W.-nummer of nummer bij het Rijksregister
van de rechtspersonen (niet B.T.W.-plichtig)** ▷

BE 477 567 325

**7. Onderwerp van de akte** ▷

Benoeming bestuurders en gedelegeerd
bestuurders - Verplaatsing maatschappelijke zetel

De Bijzondere Algemene Vergadering der
Aandeelhouders van 25 februari 2003 beslist unaniem
om vanaf heden vier bijkomende bestuurders te
benoemen, te weten de vennootschap BERKENRODE
B V B A, met maatschappelijke zetel te 2018
Antwerpen, Jacob Jacobsstraat 56, de vennootschap
WORLDWIDE CONSULTING B V B A, met
maatschappelijke zetel te 2018 Antwerpen, Jacob
Jacobsstraat 56, de heer GOETZ ALAIN, wonende te
2110 Wijnegem, Ruiterslaan 25, en de heer GOETZ
SYLVAIN, wonende te 2980 Zoersel, Epicialaan 69
Het mandaat van de overige drie bestuurders wordt
bevestigd, te weten de heer CORNELIS JOSSE,
wonende te 8301 Knokke-Heist, Sint-Antoniusstraat
52, de vennootschap A.R.T N V, met
maatschappelijke zetel te 1090 Jette, Kardinaal
Mercierplein 30 bus 1, en mevrouw Struyf Patricia,
wonende te 2050 Antwerpen, Esmoreitlaan 51 bus 1.
Hun mandaat wordt onbezoldigd uitgeoefend.

Tekst van de akte of het uittreksel uit een akte die in
de bijlagen tot het Belgisch Staatsblad moet worden
bekendgemaakt

In de tekst mag niets zijn geschrapt noch verbeterd;
de tekst zelf mag niet buiten het gedrukte kader
komen; zo nodig één of meer bladen gewoon papier
gebruiken en de tekst in kolonnen van 94 mm breed-
te opmaken, naar het model dat verkrijgbaar is ter
griffie van de rechtbanken van koophandel

Voorbeeld minimum tekstgrootte :

Bestuur Belgisch Staatsblad
Leuvenseweg 40-42
1000 Brussel

Nummer van de cheque of assignatie ' ... ..

Nummer bankrekening 9722

Handtekeningen + Naam en hoedanigheid
Op het einde van de tekst in geval de akte of het uittreksel
meer dan één pagina telt

Bijlagen bij het Belgisch Staatsblad - 11/03/2003 - Annexes du Moniteur belge

Mod. 269 (7000)

# Exhibit 8 Part 6

Bijlagen bij het Belgisch Staatsblad - 11/03/2003 - Annexes du Moniteur belge

Tevens beslist de vergadering unaniem om de maatschappelijke zetel evenals de uitbatingszetel van de vennootschap te vorplaatsen naar 2018 ANTWERPEN, SIMONSSTRAAT 42-44, en dit met ingang vanaf heden

De Raad van Bestuur van 25 februari 2003 beslist unaniem om tot afgevaardigde bestuurders te benoemen de heer GOETZ ALAIN, de heer GOETZ SYLVAIN en de heer CORNELIS Josse, alledrie voornoemd Hun mandaat wordt onbezoldigd uitgeoefend

Volmacht wordt verleend aan VAN ROY INGE, wonende te 2830 Willebroek, Bezelaerstraat 27, met recht tot indeplaatsstelling, om de inschrijving in het handelsregister te Antwerpen te wijzigen en om alle formaliteiten te vervullen bij de administratie der BTW

CORNELIS JOSSE
Afgevaardigd Bestuurder



DRC-34996 0723

Exhibit 8 Part 6

# Annex
# W

DRC-34996 0724

Exhibit 8 Part 6



189501

THE REPUBLIC OF UGANDA

# Certificate of Incorporation

(Under section 18(3) of the companies Act 2012)

*I CERTIFY that* ......... ALDBRA LIMITED ...................................................................................

.................................................................................................................................................

*has this day been incorporated with Limited Liability.*

*Dated at Kampala, this* ................................... 18TH ............................... *day*

*of* ..... SEPTEMBER ........ *the year* .............. 20.14 ........................................................

ABALO LILIAN

ASST.                    Registrar of Companies

Printed by Uganda Printing and Publishing Corporation

DRC-34996 0725

Exhibit 8 Part 6

**THE REPUBLIC OF UGANDA**

**THE COMPANIES ACT 2012**

CERTIFIED TRUE COPY

**COMPANY LIMITED BY SHARES**

ABALO LILIAN

**MEMORANDUM**

**AND**

REGISTRAR OF COMPANIES
KAMPALA

**ARTICLES OF ASSOCIATION**

OF

**ALDBRA LIMITED**

**INCORPORATED THIS ____ DAY OF _____ 2014**

**DRAWN BY:**
SEBALU & LULE ADVOCATES
P.O. BOX 2255
KAMPALA

DRC-34996 0726

# Exhibit 8 Part 6



THE REPUBLIC OF UGANDA

189501

# Certificate of Incorporation

(Under section 18(2) of the Companies Act 2012)

I CERTIFY that .......... ALDBRA LIMITED ...............................................................................

................................................................................................................................................

has this day been incorporated with Limited Liability.

Dated at Kampala, this ............................................................... 18TH ............... day

of ...... SEPTEMBER ........ the year ............... 20.14 ..........

ABALO LILIAN

A SST.                    Registrar of Companies

Printed by Uganda Printing and Publishing Corporation

DRC-34996 0727

# Exhibit 8 Part 6



FILED THIS 8 DAY OF 9 24
FEES PAID ... RECEIPT No. 2100000 584 357

18 9 **CERTIFIED TRUE COPY**
ABALO LILIAN

**THE COMPANIES ACT 20...**

ABALO LILIAN ******

**COMPANY LIMITED BY SHARES**
***********

**MEMORANDUM OF ASSOCIATION**

OF

**ALDBRA LIMITED**
***********

REGISTRAR OF COMPANIES
KAMPALA

REGISTRAR OF COMPANIE
KAMPALA

A.   The name of the Company is **"ALDBRA LIMITED"**.

B.   The Registered office of the Company will be situate in Uganda.

C.   The objects for which the Company is formed are:

1.   To set up and establish a gold refinery.

2.   To undertake the business of selling and exporting gold.

3.   To establish, purchase or otherwise acquire warehouses, depots, go-downs, cold storage facilities, stores, offices, buildings, premises, property, fixed or moveable to be used in or about the business of refinery and exporting of gold.

4.   Generally to carry on business and act as commission agents, manufacturers representatives or any other kind of agency or in any capacity.

5.   To carry on the business of property and development financing and other related businesses and to act as trustees and estate managers.

6.   To carry on the business and to act as manufacturers, development consultants, sub-contractors, traders and commission agents.

DRC-34996 0728

# Exhibit 8 Part 6

2

7.   To acquire and undertake the whole or any part of the business, property and liabilities of any person or company carrying on any business which the Company is authorized to carry on, or possessed of property suitable for the purpose of the Company.

8.   To erect, construct, lay down, purchase or otherwise acquire, houses, offices, works, workshops, buildings and premises and any fixed and moveable machinery, tools, engines, boilers, plant, implements, patterns, stock-in-trade, patent rights or other property of any description necessary or convenient for the Company's business.

9.   To sell, mortgage, assign, convey, let on lease or otherwise dispose from time to time all or any of the concessions, rights, interests, lands, roads and premises, plant, machinery or apparatus, merchandise, stock-in-trade and other property of the Company, or such part or parts thereof as may be considered expedient.

10.  To grant leases, privileges, concessions or rights whatever over, in, upon or affecting any property of the Company.

11.  To acquire, take on lease or in exchange, hire or otherwise purchase estates, or plantations, and to carry on the business of planters, growers and producers of maize, millet, rice, cassava, wheat, barley and other grains, groundnuts, simsim and other oil seeds, flax, sisal, cotton, coffee, tobacco, tea, sugar and natural products of all kinds.

12.  To rear and keep poultry and farm animals of all types and to carry on trade in poultry and farm animals, farm animal products and poultry and farm animal feed stuff.

13.  To borrow or raise, or secure the payment of money for the purposes of the Company in such manner and on such terms as may seem expedient, and in particular by the issue of debentures or otherwise and charged or not charged upon the whole or any part of the property of the Company, both present and future, including its uncalled capital.

14.  To apply for purchase or otherwise acquire, any patents licenses and the like, conferring an exclusive or non-exclusive or limited right to use any secret or other information as to any invention which may seem capable of being used for any of the purposes of the Company, or

# Exhibit 8 Part 6

3

the acquisition of which may seem calculated directly or indirectly to benefit the Company, and to use, exercise, develop, grant licenses in respect of, or otherwise turn to account the rights and information so acquired.

15.  To purchase, subscribe for or otherwise acquire and to hold the shares, stock or obligations of any company in Uganda or elsewhere, and upon a distribution of assets or divisions of profits to distribute any such shares, stock or obligations amongst the members of the Company in specie.

16.  To issue, place, underwrite, or guarantee the subscription of, or concur, or assist in the issuing or placing, underwriting or guaranteeing the subscription of shares, debentures, debenture stock, bonds, shares, stocks and securities of any company, whether limited or unlimited, by Act or otherwise, at such times and upon such terms and conditions as to remuneration and otherwise as may be agreed upon.

17.  To invest money at interest on the security of land of any tenure, buildings, farming stock, shares, securities, merchandise, and any other property, and generally to lend and advance money to any person, firms or companies, with or without security, and upon such terms and subject to such conditions as may be deemed expedient.

18.  To take part in the management, supervision or control of the business, or operations of any company or undertaking, and for that purpose to appoint and remunerate any directors, accountants, or other experts or agents.

19.  To employ experts, to investigate and examine into the conditions, prospects, value, character, and circumstances of any business concerns and undertakings, and generally of any assets, property or rights.

20.  To constitute any trusts with a view to the issue of preferred or deferred, or any other special stocks or securities based on or representing any shares, stock or other assets specifically appropriated for the purpose of any such trust, and to settle and regulate and if thought fit, to undertake and execute any such trusts and to issue, dispose of or hold any such preferred, deferred, or other special stocks or securities.

DRC-34996 0730

# Exhibit 8 Part 6

4

21.  To transact or carry on all kinds of agency business, and in particular in relation to the investment of money, the sale of property, and the collection and receipt of money, and the floating of companies and the issue of loans.

22.  To give any guarantee in relation to the payment of any debentures, debenture stock, bonds, obligations, share stocks or securities, or the interest or dividends thereon.

23.  To enter into any arrangement with any Government or other authority, municipal, local or otherwise, and to obtain from any such Government or authority all rights, concessions, and privileges which may seem conducive to the Company's objects or any of them, or to obtain or endeavor to obtain any Act or Parliament for the purpose of the Company or any other company.

24.  To enter into partnership or into any arrangement for sharing of profits, union of interest, reciprocal concession, joint adventure, amalgamation or co-operation with any person or company carrying on or engaged in or about to carryon or engage in any business transaction capable of being conducted so as directly or indirectly to benefit this Company.

25.  Generally to purchase, take on lease or in exchange, hire or otherwise acquire, any real or personal property, and any other undertakings, and any rights and privileges which the Company may think necessary or convenient with reference to any of these objects the acquisition of which may seem calculated directly or indirectly to facilitate the realization of any debenture, debenture stock or other securities owned by the Company, or to prevent or diminish any apprehended loss or liability, or which may seem otherwise, and in particular any land, buildings, merchandise, stock-in-trades, policies, patents, licenses, business concerns and undertakings, concessions, shares, stock, book debts and other assets.

26.  To grant pensions, allowances, gratuities and bonuses to officers, ex-officers, employees or ex-employees of the Company or its predecessors in business or the dependants or connections of such persons, to establish and maintain or concur in establishing and maintaining trusts, funds or schemes, (whether contributory or non-contributory) with a view to providing pensions or other benefits for any such persons as aforesaid as their

# Exhibit 8 Part 6

5

dependants or connections, and to support or subscribe to any charitable funds or institutions, the support of which may, in the opinion of the director, be calculated directly or indirectly to benefit the Company or its employees, and to institute and maintain any club or other establishment or profit-sharing scheme calculated to advance the interest of the Company or its officers.

27. To sell or dispose of the undertaking of the company, or any part thereof, or to amalgamate with any other company for such consideration as the Company may think fit, and in particular for shares (whether fully or partly paid up), debentures or debenture stock, or securities of any other company having similar objects altogether or in part similar to those of this Company. To form and promote any other company or companies for the purpose of acquiring all or any of the property, rights and liabilities of this Company, or for any other purpose which may seem directly or indirectly calculated to benefit this Company.

28. To invest and deal with the moneys of the Company not immediately required upon such stocks, shares and securities, and in such manner as may from time to time be determined.

29. To pay the costs, charges and expenses, preliminary and incidental to the formation, establishment and registration of the Company, or of any other company and to remunerate any persons or company for services rendered in relation to the formation and establishment of the Company, or the conduct of its business, or placing or assisting to place or guaranteeing the placing of or taking any shares in the Company's capital or any debenture stock, shares stock, or securities, whether issued by the Company or not.

30. To draw, accept, endorse, negotiate, execute and issue promissory notes, bills of exchange, scrip and other transferable or negotiable instruments.

31. To distribute among the Members in specie any property of the Company, or any proceeds of sale or disposition of any property of the Company, and for such purpose to distinguish and separate capital from profits, but so that no distribution amounting to a reduction of capital be made except with the sanction (if any) for the time being required by law.

DRC-34996 0732

Exhibit 8 Part 6

6

32. To do all or any of the above things in any part of the world and either as principals, agents, trustees, contractors or otherwise, and either alone or in connection with others, and either by or through agents, sub-contractors, trustees or otherwise.

33. To do such things as are incidental or conducive to the attainment of the above objects or are usually carried on in connection therewith, and so that the word "Company" in this clause shall be deemed to include any partnership or other body of persons, whether incorporated or not incorporated and whether domiciled in Uganda or elsewhere and the intention is that the construction of this clause, the objects set forth in each of the foregoing paragraphs, shall, except where otherwise expressed in the same paragraph, be in no way limited by reference to or inference from the terms of any other paragraph of this clause or the name of the Company.

D. The liability of the members is limited.

E. The authorized capital of the Company is Shs.10,000,000 (Shillings Ten Million) divided into 100 (One Hundred) Ordinary Shares of Shs.100,000 (Shillings One Hundred Thousand) each. The Company has the power from time to time to increase or reduce the authorized capital and to divide the same into several classes or otherwise and to attach thereto respectively any preferential or deferred, qualified or special rights, privileges or conditions.

CERTIFIED TRUE COPY

ABAL

REGISTRAR OF COMPANIES
KAMPALA

DRC-34996 0733

# Exhibit 8 Part 6

7

WE, the several persons whose names and addresses are subscribed, are desirous of being formed into a Company in pursuance of this Memorandum of Association and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.



| NAME, DESCRIPTION AND ADDRESS | SHARES TAKEN BY EACH SUBSCRIBER | SIGNATURE |
|---|---|---|
| 1. ALDBRA LIMITED JEBELALI FREE ZONE, DUBAI | 50% | |
| 2. ALAIN GOETZ JEBELALI FREE ZONE DUBAI | 50% | |

CERTIFIED TRUE COPY
(FOR BANK PURPOSES)

ALDBRA LIMITED
18 SEP 2014
P. O. BOX 2255, KAMPALA

ABALO LILIAN

REGISTRAR OF COMPANIES
KAMPALA

Dated at Kampala this ___17___ day of ___SEPT___, 2014

**WITNESS** to the above signatures:

Signature    :

Name in Full :

Occupation   :

Address      :

DRC-34996 0734

# Exhibit 8 Part 6



FILED THIS... 18 DAY OF 9.264

01S00000s£4357

FEES PAID...



**THE COMPANIES ACT 2012** 18·9·44 CERTIFIED TRUE COPY

\*\*\*\*\*\*\*\*\*\*\*\*
COMPANY LIMITED BY SHARES    ABALO LILIAN
\*\*\*\*\*\*\*\*\*\*\*\*

**ARTICLES OF ASSOCIATION**

**OF**

REGISTRAR OF COMPANIES    REGISTRAR OF COMPANIES
KAMPALA **LABRA LIMITED** KAMPALA
\*\*\*\*\*\*\*\*\*\*\*\*

### Preliminary Table A

1.  The regulations contained in Table A in the First Schedule to the Companies Act (such Table being hereinafter called "A") shall apply to the Company save in so far as the same are excluded or varied hereby in which case the following shall be the regulations of the Company in lieu of the corresponding articles in Table "A".

### INTERPRETATION

2.  In these Articles the words standing in the first column of the table next hereinafter contained shall bear the meaning set opposite to them respectively in the second column thereof, if not inconsistent with the subject or context.

| Words | Meaning |
|---|---|
| The Act ..... | The Companies Act 2012 |
| The Statutes ...... | The Companies Act and every other Act for the time being in force concerning joint stock companies and affecting the Company. |
| That Articles ... | The Articles of Association and the regulations of the Company for the time being in force. |
| The Register .... | The Register of Members of the Company. |

# Exhibit 8 Part 6

9

| | |
|---|---|
| The Office ...... | The Registered Office of the Company. |
| The Seal ...... | The Common Seal of the Company. |
| Month ..... | Calendar Month. |
| Paid up ....... | Includes credit as paid up. |
| Dividends ....... | Includes bonus. |
| In writing ....... | Written or printed or produced by any substitute for writing or printing. |
| The Board ........ | The Board of Director for the time being of the Company. |

Words importing the singular number only shall include the plural number, and vice versa.

Words importing the masculine gender only shall include feminine gender.

Words importing persons shall include corporations.

Subject as aforesaid, any words or expression define din the Statutes shall, if not consistent with the subject or context, bear the same meanings in these Articles.

## BUSINESS

3.  The Company is a Private Company within the meaning of Section 30 of the Act and accordingly:

    a)  No invitation shall be issued to the public to subscribe for any shares or debentures of the Company.

    b)  The number of members of the Company (not including persons who are in the employment of the Company and persons who, having been formerly in the employment of the Company, were while in that employment and have continued after the determination of that employment to be members of the Company), shall be limited to fifty, provided that, for the purposes of this provision where two or more persons hold one or more shares in the Company jointly, they shall be treated as a single member; and

# Exhibit 8 Part 6

10

c)  The right to transfer the shares of the Company is restricted in manner and to the extent hereinafter appearing.

4.  No part of the funds of the Company shall be employed in the purchase of or in loans upon the security of the Company's shares, save so far as may be authorized by the Statutes.

5.  Any branch or kind of business which the Company is either expressly or by implication authorized to undertake may be undertaken by the Company at such time or times as the Board shall think fit, and further may be suffered by the Board to be in obeyance, whether such branch or kind of business may have been actually commenced or not, so long as the Board may deem it expedient not to commence or proceed with such branch or kind of business.

6.  The office shall be at such place as the Board shall from time to time appoint.

## SHARE CAPITAL AND SHARES

7.  The Company's Authorized Share Capital is Shs.10,000,000 (Shillings Ten Million) divided into 100 (One Hundred) Ordinary Shares of Shs.100,000 (Shillings One Hundred Thousand) each.

8.  The Company (or Directors on behalf of the Company) may exercise the powers of paying commission conferred by the Act provided that the rate per cent or the amount of the Commission paid or agreed to be paid shall not exceed the rate of 10 per cent of the issue price of the shares in respect whereof the same is paid or any amount equal to 10 per cent of such issue price, as the case may be. Such commission may, subject to Article 2, be satisfied by the allotment of fully or partly paid shares.

9.  The Directors may from time to time make such calls as they think fit upon the Members in respect of any moneys unpaid on the shares held by them respectively (whether on account of the amount of the shares or by way of premium) and not, by the conditions of allotment thereof, made payable at fixed times, and each member shall (subject to the Company giving him at least fourteen days' notice specifying the time or times and place so specified) pay the amount called on his shares.

A call may be made payable by instalments and shall be deemed to have been made at the time when the resolution of the Directors authorizing the call was passed. Clause 15 of Table "A" shall not apply.

# Exhibit 8 Part 6

11

10. All shares shall be at the disposal of the Directors, who may allot, grant options over or otherwise dispose of them to such persons, at such times, and for such consideration and upon such terms and conditions as the Directors may determine, but so that no shares shall be issued at a discount except in accordance with Section 59 of the Act.

11. The Directors may, in their absolute and uncontrolled discretion and without assigning any reason, refuse to register a transfer of share to any person whom it shall in their opinion be undesirable in the interests of the Company to admit to membership.

12. Any share may be transferred by a member to any child or other issue, son-in-law, daughter-in-law, father, mother, brother, sister, nephew, niece, wife or husband of such member, and any share of a deceased member may be transferred by his executors or administrators to any child or other issue, son-in-law, daughter-in-law, father, mother, brother, sister, nephew, niece, widow or widower of such deceased member to whom such member may have specifically bequeathed the same and shares standing in the name of the trustees of the Will of any deceased member may be transferred upon any change of trustees or the trustee for the time being of such Will.

13. Except where the transfer is made pursuant to Clause 9 or 14 hereof, the person proposing the transfer of any share (hereinafter called "the proposing transferor") shall give notice in writing (hereinafter called "the transfer notice") to the Company that he desires to transfer the same. Such notice shall specify the sum he fixes as the fair value and shall constitute the Company as his agent for the sale of the shares (hereinafter called "the Purchasing Member") at the price so fixed, or at the option of the purchasing member, at the fair value to be fixed by the Auditor in accordance with Clause 12 hereof.

A transfer notice may include several shares and in such case shall operate as if it were a separate notice in respect of each. A transfer notice shall be revocable with the sanction of the Directors.

14. If the Company shall, within the space of sixty days after being served with a transfer notice, find a purchasing member, and shall give notice thereof to the proposing transferor, he shall be bound upon payment of the fair value as fixed in accordance with Clauses 10 and 12 hereof to transfer the same to the purchasing member.

DRC-34996 0738

# Exhibit 8 Part 6

12

15. In case any difference arises between the proposing transfer and the purchasing member as to the fair value of a share, the Auditor shall, on the application of either party, certify in writing the sum which, in his opinion, is the fair value, and in so certifying the Auditor shall be considered to be acting as an expert, and not as an arbitrator, accordingly the Arbitration Act shall not apply.

16. If in case the proposing transferor after having become bound as aforesaid, makes default in transferring the share, the Company may receive the purchase money, and the proposing transferor shall be deemed to have appointed any one Director or the Secretary of the Company as his agent to execute a transfer of the share to the purchasing member, and upon the execution of such transfer the Company shall hold the purchase money in trust for the proposing transferor. The receipt of the Company for the purchase money shall be a good discharge to the purchasing member, and after his name has been entered in the Register in purported exercise of the aforesaid power, the validity of the proceedings shall not be questioned by any person.

17. If the Company shall not, within the space of sixty days after being served with a transfer notice, find a purchasing member and give notice in manner aforesaid, the proposing transferor shall at any time within three months afterwards be at liberty, subject to Clause 8 hereof, to sell and transfer the share (or where there are more shares than one) those not place to any person and at any price.

## LIEN AND FORFEITURE OF SHARES

18. Table "A" shall apply except that (1) the forfeiture of a share shall include all dividends declared in respect of the forfeited shares and not actually paid before the forfeiture, and (2) the liability of a person whose shares have been forfeited shall continue notwithstanding that the Company may have received payment in full of the nominal amount of the shares.

19. An entry in the Minute Book of the Company of the forfeiture of any shares or that any shares have been sold to satisfy a lien of the company shall be sufficient evidence as against all persons entitled to such shares that the shares were properly forfeited or sold, and such entry, and the receipt of the Company for the price of such shares, shall constitute good title to such shares, and the name of the purchaser shall be entered in the Register a member of the Company, and he shall be entitled to a certificate of title to the shares, and shall not be bound to see to the application of the purchase money.

# Exhibit 8 Part 6

13

The remedy (if any) of any former holder of such shares or of any person claiming under or through him shall be against the Company and in damages only.

20. When any share shall have been forfeited an entry shall forthwith be made in the Register of Members of the Company stating the forfeiture and the date thereof and so soon as the share so forfeited shall have been disposed of an entry shall also be made of the manner and date of the disposal thereof.

21. The lien conferred by Clause 11 of Table "A" shall attach to fully paid shares and to all shares registered in the name of any person indebted or under liability of the Company, whether he shall be the sole registered holder or shall be one of two or more joint holders.

## GENERAL MEETING

22. A General Meeting shall be held once in every calendar year at such time (not being more than fifteen months after the holding of the last preceding General Meeting) and place as may be determined by the Directors, and all General Meetings shall be held in Uganda.

23. No business shall be transacted at any General Meeting unless a quorum of Members is present at the time the meeting proceeds to business.  Two members present in person shall be a quorum for all purposes,  Clause 53 of Table "A" shall not apply.

24. Fourteen clear days' notice at least (exclusive of the day on which the notice is served or deemed to be served but inclusive of the day for which the notice is given) in respect of all General Meetings shall be given to the Members specifying the place, the day and hour of meting and in case of special business the general nature of such business either by advertisement or by notice sent by post or otherwise served as hereinafter provided, but with the consent in writing of all the Members, a meeting may be convened in such a way as the Directors think expedient. Clause 50 of Table "A" shall not apply.

25. It shall not be necessary to give nay notice of an adjourned meeting, or the business to be transacted at an adjourned meeting.  Clause 57 of Table "A" shall be amended accordingly.

26. A poll may be demanded by any Member present in person or by proxy.  Clause 58 of Table "A" shall be amended accordingly. The Chairman shall have no casting vote.

DRC-34996 0740

Exhibit 8 Part 6

14

27.  If any votes shall be counted which ought not to have been counted, or might have been rejected, the error shall not vitiate the resolution unless it be pointed out at the same meeting, and not in that case unless it shall, in the opinion of the Chairman of the meeting, be of sufficient magnitude to vitiate the resolution.

28.  Where a company registered under the Act or otherwise incorporated is a member of the Company a person duly appointed by resolution of the Board to represent such company at a meeting of the Company in accordance with the provisions of the Act shall not be deemed to be a proxy, and the production at a meeting of a copy of such resolution duly signed by one Director of such company and by the Secretary (if any), and certified by him or them as being a true copy of the resolution, shall be accepted by the Company as sufficient evidence of the validity of his appointment.

**DIRECTORS**

29.  The First Directors of the Company shall be appointed at the first General Meeting of the Company.

The said First Directors and subscribers to this Memorandum and Articles of Association shall appoint the other Directors in writing, if need be.

30.  The number of Directors shall not be less than two nor more than six.

31.  The Company may from time to time in general meetings increase or reduce the number of Directors and may by Extraordinary Resolution remove any Director and may appoint another person in his stead (provided that this power shall not apply to the First Directors mentioned in Regulation 29 of these Articles unless they relinquish their shares in the Company and/or wish to leave the company).

32.  Any casual vacancy occurring in the Board of Directors may be filled by the Directors, who shall have power at anytime and from time to time to appoint a person as additional Director.

33.  Any Director shall, in addition to their ordinary remuneration be entitled to be paid all travelling and any other reasonable expenses incurred in or about the Company's business.

# Exhibit 8 Part 6

15

## ALTERNATE DIRECTORS

34. A Director who is absent or is about to leave Uganda or who for any reason is unable to attend any meeting or meetings of the Directors may appoint by an instrument in writing under the hand of the appointer any member of the Company or any other person approved by the Board to be Alternate Director and such appointment shall have effect and such appointee while he holds office shall be entitled to notice of meetings of Directors and to attend and vote thereat accordingly and generally to exercise all the rights and functions of such absent Director subject to any limitations or restrictions in the instrument appointing him; but he shall not require any qualification and he shall ipso facto vacate office if and when his appointer returns to Uganda, attends at a Board Meeting or vacates office as a Director. Such Alternate Director may be one of the other Directors of the Company in which case he shall be entitled to vote in both capacities.

## POWER AND DUTIES OF DIRECTOR

35. A Director may hold any office in the Company in conjunction with the office of Director, except that of Auditor and, if he be the sole Director of the Company, the office of Secretary.

36. The Directors may from time to time at their discretion raise or borrow any sum or sums of money for the purposes of the Company, and may secure the repayment of such sums in such manner and upon such terms and conditions as they think fit, and in particular by the issue of debenture or debenture stock, or both to such extent as they may think expedient. Such debentures or debenture stock may be secured on the whole or any part of the property and undertaking of the Company (both present and future) including its uncalled capital for the time being, and by way of floating security or otherwise, in such manner and with such power and remedies as the Directors may determine. Clause 79 of Table "A" shall not apply to the Company. Any powers and duties conferred upon the Directors under this Clause 34, will only be operative with the written consent of the other fellow Directors and upon Board Resolutions.

37. The office of a Director shall be vacated:

    a) If he resigns his office by notice in writing to the Company; or

Exhibit 8 Part 6

16

b) If he is removed from office by an ordinary resolution of the Company of which special notice has been given in accordance with Section 142 of the Act, provided that this shall not apply to the First Directors of the Company; or

c) If he becomes a lunatic or of unsound mind, or the Board shall resolve that he is incapable of performing the function of a Director; or

d) In the case of a Director nominated by the debenture holders of the Company, upon the Company receiving notice from the debenture holder to terminate his appointment; or

e) If he becomes bankrupt or makes any arrangement or composition with his creditors generally or becomes prohibited from being a Director by any order under Section 189 of the Act.

And in like manner any person or a Director of any Company concerned in the promotion of this Company or interested in this Company may be a Director of this Company and shall not be accountable for any profits or benefits so obtained. A general notice that a Director is a member or Director of a specified firm or company and is to be regarded as interested in any transaction with any such firm or company shall be sufficient disclosure under this Article, and special notice relating to any particular transaction with such firm or company as aforesaid.

A Director shall be entitled to vote as Director in respect of any contract or other arrangement in which he is interested and sub-paragraphs (2) and (4) of Clause 84 of Table "A" are varied accordingly.

### PROCEEDINGS OF DIRECTORS

38. The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall, except when one Director only is in office, be three. When one Director only is in office he shall have and may exercise all the powers and authorities in and over the affairs of the Company as by the regulations of the Company are conferred on the Board of Directors and Clause 99 of the Table "A" shall be modified accordingly.

39. A Meeting of the Directors at which quorum is present shall be competent to exercise all or any of the powers, authorities and discretions by or under the regulations of the Company for the

# Exhibit 8 Part 6

17

time vested in the Directors. A resolution in writing signed by all the Directors shall be valid and effectual as if it had been passed at a Meeting of the Directors duly called and constituted.

## THE SEAL

40.   The Seal of the Company shall not be affixed to any instrument except by the authority of a resolution of the Board of Directors and in the presence of a Director and of the Secretary or any two Directors or such other person as the Directors may appoint for the purpose, and that the Director and the Secretary or any two Directors or other person aforesaid shall sign every instrument to which the Seal of the Company is so affixed in their presence.

## DIVIDENDS AND RESERVES

41.   All dividends shall be declared and paid according to the amounts paid or credited as paid on the share in respect whereof the dividend is paid, but no amount paid on a share in advance of calls shall, while carrying interest, be treated for the purpose of this Article as paid on the share.   All dividends shall be apportioned and paid pro rata according to the amount paid or credited as paid on the shares during any portion or portions of the period in respect of which the division is paid, but if any share be issued to terms providing that it shall rank for dividend as from a particular date, such share shall rank for dividend accordingly.   Clause 118 of Table "A" shall not apply.

42.   Any General Meeting declaring a dividend may direct payment of such dividend wholly or in part by the distribution of specific assets, and in particular of paid-up shares of any other company or in any one or more of such ways, and the Directors shall give effect to such resolution.

43.   The Company in General Meeting may from time to time and at any time pass a resolution to the effect that it is desirable to capitalize any part of the amount standing to the credit of the Company's reserve funds or to the credit of the profit and loss account or otherwise available for distribution and that accordingly such sum be set free for distribution amongst the Members or any class of members who would be entitled to such amount if distributed by way of dividend and in the same proportion, on the footing that the same be not paid in cash but be applied in payment up in full, of shares, debentures, or other securities of the Company, and that such shares, debentures, or other securities be distributed amongst such Members and the Directors shall give effect to such resolution.

# Exhibit 8 Part 6

18

44.   Where any difficulty arises in regard to any distribution under either the two last preceding Articles, the Directors may settle the same as they think expedient, and in particular may provide for the case of fractions altogether, and may fix the value for distribution of such specific assets or any part thereof and may determine that cash shall be made to any Members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees upon such trusts for the persons as may seem expedient to the Directors.  Where requisite, a proper contract shall be filed in accordance with Section 54 of the Act, and the Directors may appoint any person to sign such a contract on behalf of the persons entitled to the dividend or to such appropriation and distribution, and any contract so entered into shall be binding and effective.

45.   The Directors may, without placing the same to reserve, carry over any profits which they think it prudent not to divide.

46.   Any notice or document may be served by the Company on any Member either personally or by sending it through the post in a prepaid letter addressed to such Member at its registered address as appearing in the Register of Members.

47.   Where a notice is sent by post it shall be deemed to have been served at the expiration of forty-eight hours after it was posted if addressed within Uganda and seven days if addressed outside Uganda and in the latter case shall be dispatched by Air Mail and Clause 131 of Table "A" shall be modified accordingly.

## WINDING-UP

48.   If the Company shall be wound-up, the liquidator may, with the sanction of an Extraordinary Resolution of the contributories divide amongst the contributories in specie, the whole or any part of the assets of the Company and may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the Liquidators, with like sanction, shall think fit.

DRC-34996 0745

# Exhibit 8 Part 6

19

## INDEMNITY

49. Every Director, Managing Director, Manager, Officer and Auditor of the Company shall be indemnified out of the funds of the Company against all liability incurred by him as such Director, Manager or Auditor in defending any proceedings whether civil or criminal, in which judgment is given in his favour or in which he is acquitted, or in connection with any application under Section 398 of the Act in which relief is granted by the Court.

## ARBITRATION

50. If and whenever any difference shall arise between the Company and any members or their respective representatives, touching the construction of any of the articles herein contained or any act or thing made or done, or to be made or done, or omitted or in regard to the rights and liabilities arising hereunder, or arising out of the relation existing between the parties by reason of these presents or of the Act such difference shall forthwith be referred to a single Arbitrator if the parties to the difference or deadlock shall agree upon whose decision shall be final and of the same effect as a resolution passed by all the members of the Company.

# Exhibit 8 Part 6

20



| Name, Occupation and Postal Address of Subscribers | Signatures of Subscribers |
|---|---|
| 1. ALDBRA LIMITED<br>JEBELALI FREE ZONE,<br>DUBAI | |
| 2. ALAIN GOETZ<br>JEBELALI FREE ZONE,<br>DUBAI | |

Dated at Kampala this ___17___ day of ___SEPT___ 2014.

**WITNESS** to the above signatures:

Signature    :
Name in Full :
Occupation   :
Address      :

**DRAWN BY**:
SEBALU & LULE ADVOCATES
EADB BUILDING
PLOT 4 NILE AVENUE
P.O. BOX 2255
KAMPALA

DRC-34996 0747

# Exhibit 8 Part 6

**Company Form 20**

THE REPUBLIC OF UGANDA

**CERTIFIED TRUE COPY**

**THE COMPANIES ACT 2012**

## NOTICE OF APPOINTMENT OF DIRECTORS AND SECRETARY OF COMPANY

*(Under section 192(4) of the Act).*

**URSB**

Uganda Registration Services Bureau

**1 3 JUN 2019**

FOR ..........
**Kampiine Anita**
**REGISTRAR**

Name of Company: ............ ALDBRA LIMITED ...................................................

Presented by: ............ TEM ADVOCATES & SOLICITORS .....................................

## TO:    THE REGISTRAR OF COMPANIES

TAKE NOTE that the person/persons whose particulars are provided below has/have been appointed as director/directors/ secretary of the above named company with effect from the ............ 29TH ............ day of ............ MAY ............ the year ....2019..............

## (a) PARTICULARS OF DIRECTORS -INDIVIDUALS

| Names (first name and surname) | Date of birth | Address | Nationality | Occupation | Other Directorship |
|---|---|---|---|---|---|
| ALAIN FRANCOIS GOETZ | ▮ | P.O.BOX 37574 | BELGIAN | BUSINESS EXECUTIVE | |
| | | | | | |
| CHERRY ANN DACDAC MANDIA | ▮ | P.O.BOX 37574 | FILIPINO | BUSINESS EXECUTIVE | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## PARTICULARS OF CORPORATE DIRECTORS

| Corporate Name | Registered or principal office | Postal address |
|---|---|---|
| | | |
| | | |
| | | |

DRC-34996 0748

# Exhibit 8 Part 6

## (b) PARTICULARS OF THE PERSON (S) WHO IS SECRETARY
## PARTICULARS OF INDIVIDUAL SECRETARY

| Names (first name and surname) | Residential and postal address |
|---|---|
| | |
| SHARON TEM | P.O. BOX 6800, KAMPALA |
| | |

## PARTICULARS OF CORPORATE SECRETARY

| Corporate Name | Registered office |
|---|---|
| | |
| | |

Dated the ........... 29TH ........... day of ........... MAY ........... the year ........ 2019 ...........

Signed ........................... Director

Signed ........................... Secretary

DRC-34996 0749

Exhibit 8 Part 6

# Annex X

DRC-34996 0750

**Exhibit 8 Part 6**

Sociétes commerciales et agricoles -  Annexe au *Moniteur belge* du 15 mai 2001
Handels- en landbouwvennootschappen —  Annex tot he Official Gazette of Belgium of 15 May 2001

107

---

**N. 20010515 -  161**

Wils & Borowski

Besloten Vennootschap met Beperkte Aansprakelijkheid

D".U"Sdreef 24 te 2970 Schilde

Antwerpen, 276.873

BE.440.609.038

Benoeming zaakvoerder

Uit de bijzonden: algemene vergadering d d. JO april II.
blijkt dat als derde zaakvoerder wordt aangesteld
de heer Man: Cloodts wonende Drabstraat 64 te
2550 Kontich

(Get.) Marc Cloodts,
zaakvoerder.

Neergelegd, 3 mei 2001.

| | 1 | 2000 | BTW 21 % | 420 | 2420 |
|---|---|---|---|---|---|
| | | | | | (47771) |

---

**N . 20010515 -  162**

SUPERBROCHETFE

BESLOTEN VENNOOTSCHAP MET BP:PERJHE MNSPRAVELIJKHEID

PELGRIMSTRAAT  26
3918    -ANTWRPCN

1R ANTWERPEN    325.999

BTW  BE  461 452 160

SLUITING VAI-1 OPI VEREFFENING

Uitrekmel uit hot procem-verb4al va.n dm Buiten;lewane
aloo-na vervaderlNil va.n aandeolhoudera gehouden op
1 ondag II  deel1mber  ᵐ

Da voorzltter l:ot vooraerᵐt utnen dat do bu1rengevone
Illgemone vergadering gohouden op 2 december 2000 na
hot voraᵐg van de verstronas r ro bohboo aanhoord, do
Hoor S111ᵐverl, bodriflᵐrovisᵐor, k.antoochcudond te Aalᵐt
alᵐ colllllᵐDarta voor de vorific:atie hooft benoomd on
con twoedo vergadorInQ haoft beloQd op hodon die hot
verallIQ van de correnlᵐa.srᵐ voor do verificianie 1111.1
aanhoren. kwijting sal verlenen aan du vereHenaar on
vorioo I.sa.kvcerderᵐ an die do ᵐluiting van de
afrekoning r al bovelon.

DRC-34996 0751

---

Oe-re vliig4dering wllrd aldu·`bijellingi1lroepl1n c·i. re
beraadligen over de volgende agilndl punten:
‾ v11lᵐilli g.vas de vlreᵐmal1.r en van de caBllllllᵐ1111 rᵐ voor
de veririeatie.
· kwijting aan de vareitennaar en de vorige r.zaakvoᵐrderᵐ
· ·luiting vande atrokening

Na daﺌﻪ uitecnzetting neeiilt de vergaderin: achtᵐᵐﻤᵐen-
volgonᵐ volgende be1lluitenl

**EERSTE BESLUIT**

De comeJ.llarh voor de verificati·· vande verettening
van de vllinnoodlchl:p brengt vl1rllng uit over het bohnᵐr
van de veretfenaar. In r.ijn beᵐluitᵐn· uanvuardt dit
vorelag de rekenin.q van de vereffening r011.lᵐ deze door
de veretfenaar warden opgemᵐteld. H·t·beᵐluit wordt met
ttnp,arigheid van Heillllllﺌlin goᵐdﻪokaurd.

**TWEEDE BESLUIT**

Na b11r11adllaging keurt de alcl:1ene vergadering do
rekeningen van de vormitening goᵐd en gaelt .ronder eni:
voorbehoud kwijiting aan de Mevrouw Appelᵐᵐ Nicola,
womrad te  2140 Antweren Borgerhout – Oodenk0v11ni1rant
20, voor haar behoer alᵐ veretfenaar van de
vonnooᵐchap. Tevonᵐ werdt kwijtin9.9ᵐgov11n a.an de
vorige ul.akv0orderl Nicole kppeltans on Anita, Seyrnᵐ
voor him beheer. Dit r.ruit werdr met 66npⱥrigheid van
ᵐterm en goedgekeurd.

**GEROF BESLUIT**

De algei:wᵐe vergaderinQ ᵐᵐᵐh v1llt dat de alrokening
van de voreiteninᵐ9 van de vennooᵐchap algl1ll1loten lᵐ en
dat bijgevolg de vennooᵐch.ap d11initioᵐ op911houden
hoclt te basitaa.n De verᵐadering beᵐlUᵐt dat de bockon
on heᵐchenden van de vennooᵐch.ap l1ullen worden
neorgelagd on bewaa rd gedurende ten minsite viji jaar te
rekenen v.anaf de bekend.caking van de ᵐluiting van de
vereitoning, te 2140 Antwerpen Borgerhoot –
Oodenskov11nᵐraar 20. Dit beᵐluit werdt 1111t 66np11righeid
van ᵐiellllllan goedgekeurd.

(Get.) Appeltans, Nicole,
Vereffenanr.

**Submitted, 3 May 2001.**

| | 2 | 4000 | BTW 21% | 840 | 4 840 |
|---|---|---|---|---|---|
| | | | | | (47772) |

---

**N. 20010515 -  163**

**-EUROPEES GARANTIE AGENTSCHAP INTERNATIONAAL,
EUROPEAN GUARANTEE AGENCY INTERNATIONAL,
AGENCE EUROPEEN N NE INTERNATIONALE DE GARANTIE,,
SHORT E.G.A.I.**

**Public limited company**

**2018 Antwerp, ·Simonstraat 42-46**

**INCORPORATION, APPOINTMENTS**

There appears to be a deed executed before Master
Koen De Raeymaecker, notary public with seat in Antwerp on
April 20, 2001, registered seven sheets no renvoi in Antwerp,
ninth office registration on April 23, 2001, book 181, sheet 4,box
2.
Received
14,119.-fr. The First-Present Inspector a.j. (get) D. De Meyer,
dai was opgericht denaamloze vennootschap EUROPEES
GARANTIE AGENTSCHAP INTERNATIONAL, EUROPEAN
GUARANTEE    AGENCY    INTERNATIONAL,    AGENCE
EUROPÉENNE    INTERNATIONALE    DE    GARANTIE
ABBREVIATED E.G.A.J.. The company is incorporated for an
indefinite period. The date of commencement of the company's
company is the date of deposit of an extract

Exhibit 8 Part 6

from the deed of incorporation at the Registry of the Commercial Court. The company is located at 2018 Antwerp, Simonsstraat 42-46. The objects of the company are:

- the analysis, certifying, estimation and consultancy of and for precious metals and precious stones (EM & S); - Education and training of experts in the field of precious metals and precious stones;- rental of machines and tools, buildings and installations, among other things for the analysis and processing of precious metals and precious stones;- a l l e commercial activities directly and indirectly related to purchase. sale and processing of precious metals and precious stones;-

project development relating to real estate and, more specifically, to hotels, apartment buildings and complexes, villa parks, car parks and other constructions; - the management of both its own real estate and that of third parties; - acting as contractor for the construction and renovation of real estate; - import, export and trading in the broadest sense. The company may carry out all commercial, industrial, financial, movable and immovable transactions that may contribute to the achievement or facilitation of its objectives.

- achieve or facilitate the achievement of the company's objectives, take out and grant loans and credits

guarantee for third parties, mortgage or pledge its assets, including its own business, and participate directly or indirectly in other companies. The fully subscribed share capital amounts to 70,000 €, paid up in full, and is divided into 70 shares without declaration of value. These shares are subscribed as follows: 1) Mr. GOETZ Antoine François, born in Berchem on September 27, 1942, residing in Bujumbura (Burundi). Avenue Beau Site 18BP 6; 2) Mr. GOETZ Alain François Viviane, born in Deunre on April 24, 1965, residing in 2110Winegem, avenue Ruiterslaan 25; 3) Mr. GOETZ Sylvain, born in Deune on May 20, 1964, residing in Zoersel, avenue Epicialaan 69. Mr Antoine GOETZ. aforementioned sub1 is considered as the founder, whereas Mr Sylvain GOETZ and Mr Alain GOETZ. aforementioned, are considered as ordinary subscribers. The company is managed by a board of directors composed of at least three directors, who may or may not be shareholders of the company.

Without prejudice to the general powers of representation of the board of directors as a college, the company is validly bound towards third parties by the signature of a delegated. director acting alone. The annual meeting m o t be convened every year on the first Friday of the month of May and for the first time in 2002. Notice of the general meeting is given by means of a notice published in the Belgian Official Gazette at least eight days before the meeting, and then twice at least eight days apart, and the second time at least eight days before the meeting, in a national newspaper and in a newspaper that is white in the region where the company has its registered office. The holders of registered shares are invited by registered letter 15 days before the meeting. Each share gives the right to one vote. The company's financial year begins on January 1 and ends on December 31. The first financial year runs until December 31, 2001. At least one-twentieth of the net profit is deducted in advance to constitute the legal reserve until it reaches one-tenth of the share capital. The General Meeting decides on the use of the balance. The net proceeds of the liquidation are distributed among the company shares. The following are hereby appointed as directors for a period of six years:1) Mr GOETZ Antoine, 2) Mr GOETZ Alain, 3) Mr GOETZ Sylvain, all of whom are referred to above, and they accept their mandates.

A special power of attorney is granted to Mrs. Jenny Van Camp, residing in Liezele, 45 Hof ter Bollen, with the right of substitution. represent bi the fiscal administrations, both direct

(Get.) Koen De Raeymaecker,
public notary.

aand indirect taxes, and bi the services of the Trade Register.

Neergelegd te Antwerpen, 3 mei 2001 (A/67675).

| 2 | 4000 | BTW 21 % | 840 | 4 840 |
|---|------|----------|-----|-------|
| | | | | (47774) |

N . 20010515 -  164

Les 4 Coins

Societe cooperative // responsabilite illimitee et solidaire

Avenue Albert Giraud 61
1030 Bruxelles

RCB 571 706

BE- 450 404 652

Transfert du siege social et modification de l'objet

ASSEMBLEE GE ERALE EXTRAORDINAIRE
DU 2-103/01

L assemblee generale a d.:cid.: :11"1111ani11fi1c

l. Transfon du sil':g..-: social au 27. rnc G. Biol :i 105U Bnll;clks .'1 partli r1l1 01111 'Ol.
2 La socicle aura cgal.:l11el11 pour obj..:t k tr.111spon d.: marchandisc pour son propr.: co111pl.:: ct pour compt..-: tle licrs inlcrnatio11al 011 national par tons mo cns d :: transpon inf ri.:ur ;1 511 l l l.g Elk ponra cgah:111.:;11 l achlvr r.:mire fl: cmuun111i.:al iol l l.'kphonicp1..:s el o.ploil.::r d.: c:ibin.::, t kphonicluos

(Si nc) Benomar, F.,
geranle.

Depose, 3 mai 2001.

| l | 2000 | T.V.A. 21 % | 420 |
|---|------|-------------|-----|

N. 20010515 -  165

Baetens

Besloten  Vennootschap met Beperkte Aansprakelijkhei

Sociétés commerciales et agricoles — Annexe au *Moniteur belge* du 15 mai 2001
Handels- en landbouwvennootschappen — Bijlage tot het *Belgisch Staatsblad* van 15 mei 2001

107

Exhibit 8 Part 6

**N. 20010515 — 161**

Wils & Borowski

Besloten Vennootschap met Beperkte Aansprakelijkheid

Dwarsdreef 24 te 2970 Schilde

Antwerpen, 276.873

BE.440.609.038

Benoeming zaakvoerder

Uit de bijzondere algemene vergadering d.d. 30 april ll.
blijkt dat als derde zaakvoerder wordt aangesteld
de heer Marc Cloodts wonende Drabstraat 64 te
2550 Kontich

(Get.) Marc Cloodts,
zaakvoerder.

Neergelegd, 3 mei 2001.

| | | | | |
|---|---|---|---|---|
| 1 | 2 000 | BTW 21 % | 420 | 2 420 |

(47771)

---

**N. 20010515 — 162**

SUPERBROCHETTE

BESLOTEN VENNOOTSCHAP MET BEPERKTE AANSPRAKELIJKHEID

PELGRIMSTRAAT 26
2018   ANTWERPEN

HR ANTWERPEN   325.999

BTW BE 461.452.160

SLUITING VAN DE VEREFFENING

Uittreksel uit het proces-verbaal van de Buitengewone
algemene vergadering van aandeelhouders gehouden op
zondag 31 december 2000

De voorzitter zet vooreerst uiteen dat de buitengewone
algemene vergadering gehouden op 29 december 2000 na
het verslag van de vereffenaar te hebben aanhoord, de
Heer Smeyers, bedrijfsrevisor, kantoorhoudend te Aalst
als commissaris voor de verificatie heeft benoemd en
een tweede vergadering heeft belegd op heden die het
verslag van de commissaris voor de verificatie zal
aanhoren, kwijting zal verlenen aan de vereffenaar en
vorige zaakvoerders en die de sluiting van de
afrekening zal bevelen.

Deze vergadering werd aldus bijeengeroepen om te
beraadslagen over de volgende agendapunten:
* verslag van de vereffenaar en van de commissaris voor
de verificatie.
* kwijting aan de vereffenaar en de vorige zaakvoerders
* sluiting van de afrekening

Na deze uiteenzetting neemt de vergadering achtereen-
volgens volgende besluiten:

EERSTE BESLUIT

De commissaris voor de verificatie van de vereffening
van de vennootschap brengt verslag uit over het beheer
van de vereffenaar. In zijn besluiten aanvaardt dit
verslag de rekening van de vereffening zoals deze door
de vereffenaar werden opgesteld. Het besluit wordt met
éénparigheid van stemmen goedgekeurd.

TWEEDE BESLUIT

Na beraadslaging keurt de algemene vergadering de
rekeningen van de vereffening goed en geeft zonder enig
voorbehoud kwijting aan de Mevrouw Appeltans Nicole,
wonend te 2140 Antwerpen Borgerhout - Gedenkovenstraat
20, voor haar beheer als vereffenaar van de
vennootschap. Tevens wordt kwijting gegeven aan de
vorige zaakvoerders Nicole Appeltans en Anita Seymus
voor hun beheer. Dit besluit wordt met éénparigheid van
stemmen goedgekeurd.

DERDE BESLUIT

De algemene vergadering stelt vast dat de afrekening
van de vereffening van de vennootschap afgesloten is en
dat bijgevolg de vennootschap definitief opgehouden
heeft te bestaan. De vergadering beslist dat de boeken
en bescheiden van de vennootschap zullen worden
neergelegd en bewaard gedurende ten minste vijf jaar te
rekenen vanaf de bekendmaking van de sluiting van de
vereffening, te 2140 Antwerpen Borgerhout -
Gedenkovenstraat 20. Dit besluit wordt met éénparigheid
van stemmen goedgekeurd.

(Get.) Appeltans, Nicole,
vereffenaar.

Neergelegd, 3 mei 2001.

| | | | | |
|---|---|---|---|---|
| 2 | 4 000 | BTW 21 % | 840 | 4 840 |

(47772)

---

**N. 20010515 — 163**

EUROPEES GARANTIE AGENTSCHAP INTERNATIONAAL,
EUROPEAN GUARANTEE AGENCY INTERNATIONAL,
AGENCE EUROPÉENNE INTERNATIONALE DE GARANTIE,
AFGEKORT E.G.A.I.

naamloze vennootschap

2018 Antwerpen, Simonsstraat 42-46

OPRICHTING - BENOEMINGEN

ER BLIJKT UIT een akte verleden voor Meester Koen De
Reeymaecker, notaris met standplaats te Antwerpen op 20 april
2001, geregistreerd zeven bladen geen renvooien te
Antwerpen, negende kantoor der registratie op 23 april 2001,
boek 181, blad 4,vak 2. Ontvangen : 14.119.-fr. De
Eerstaanwezend Inspecteur a.i. (get) D. De Meyer, dat werd
opgericht de naamloze vennootschap EUROPEES GARANTIE
AGENTSCHAP INTERNATIONAAL, EUROPEAN
GUARANTEE AGENCY INTERNATIONAL, AGENCE
EUROPÉENNE INTERNATIONALE DE GARANTIE,
AFGEKORT E.G.A.I. De vennootschap is opgericht voor
onbepaalde duur. Het aanvangstijdstip der bedrijvigheid van de
vennootschap is de datum van neerlegging van een uittreksel

DRC-34996 0753

Exhibit 8 Part 6

106
Sociétés commerciales et agricoles — Annexe au *Moniteur belge* du 15 mai 2001
Handels- en landbouwvennootschappen — Bijlage tot het *Belgisch Staatsblad* van 15 mei 2001

uit de oprichtingsakte op de griffie van de rechtbank van koophandel. De vennootschap is gevestigd te 2018 Antwerpen, Simonsstraat 42-46. De vennootschap heeft tot doel: - de analyse, het certifiëren, de schatting en advies van en voor edele metalen en edelstenen (EM & S); - Vorming en training van experts in het domein van edele metalen en edelstenen; - verhuur van machines en gereedschappen, gebouwen en installaties, onder andere voor het analyseren en verwerken van edele metalen en edelstenen; - alle commerciële activiteiten die direct en indirect verband houden met aankoop, verkoop en verwerken van edele metalen en edelstenen; - projectontwikkeling met betrekking tot onroerende goederen en meerbepaald voor hotels, appartementsgebouwen en -complexen, villaparken, parkings en andere constructies; - het beheer van zowel eigen onroerende goederen als onroerende goederen van derden; - het optreden als aannemer voor het bouwen en verbouwen van onroerende goederen; - import-export en trading in de meest ruime zin. De vennootschap mag alle commerciële, industriële, financiële, roerende en onroerende verrichtingen doen die kunnen bijdragen tot het verwezenlijken of het vergemakkelijken van het maatschappelijk doel, kredieten en leningen aangaan en toestaan, zich voor derden borg stellen, haar goederen in hypotheek of in pand geven, inclusief de eigen handelszaak, rechtstreeks of onrechtstreeks deelnemen in andere ondernemingen. Het geheel geplaatste maatschappelijk kapitaal bedraagt 70.000 €, volledig volgestort, en is verdeeld in 70 aandelen zonder vermelding van waarde. Op deze aandelen werd ingeschreven als volgt: 1) De heer GOETZ Antoine François, geboren te Berchem op 27 september 1942, wonende te Bujumbura (Burundi), Avenue Beau Site 16BP 6; 2) De heer GOETZ Alain François Viviane, geboren te Deurne op 24 april 1965, wonende te 2110 Wijnegem, Ruiterslaan 25; 3) De heer GOETZ Sylvain, geboren te Deurne op 20 mei 1964, wonende te Zoersel, Epicslaan 69. De heer Antoine GOETZ, voornoemd sub1 wordt als oprichter beschouwd, terwijl de heer Sylvain GOETZ en de heer Alain GOETZ, voornoemd, als gewone inschrijvers worden beschouwd. De vennootschap wordt bestuurd door een raad van bestuur samengesteld uit ten minste drie bestuurders, al dan niet aandeelhouders van de vennootschap. Onverminderd de algemene vertegenwoordigingsmacht van de raad van bestuur als college, wordt de vennootschap ten aanzien van derden rechtsgeldig verbonden door door de handtekening van een gedelegeerd-bestuurder alleen optredend. De jaarvergadering moet ieder jaar worden bijeengeroepen op de eerste vrijdag van de maand mei en voor de eerste maal in 2002. De oproepingen tot de algemene vergadering geschieden door middel van een aankondiging die ten minste 8 dagen voor de vergadering wordt opgenomen in het Belgisch Staatsblad en dan tweemaal met een tussentijd van ten minste 8 dagen en de 2ᵈᵉ maal ten minste 8 dagen voor de vergadering in een nationaal verspreid blad en in een blad uit de streek waar de vennootschap haar zetel heeft. De houders van aandelen op naam worden per aangetekende brief 15 dagen voor de vergadering uitgenodigd. Elk aandeel geeft recht op 1 stem. Het boekjaar van de vennootschap gaat in op één januari en eindigt op één en dertig december. Het eerste boekjaar loopt tot 31 december 2001. Van de nettowinst wordt ten minste een/twintigste voorafgenomen om de wettelijke reserve te vormen totdat deze een tiende van het maatschappelijk kapitaal bedraagt. De algemene vergadering beslist over de aanwending van het saldo. Het netto provenu van de vereffening wordt verdeeld onder de maatschappelijke aandelen. Worden als eerste bestuurders benoemd voor de duur van zes jaar:1) de heer GOETZ Antoine, 2) de heer GOETZ Alain, 3) de heer GOETZ Sylvain, allen voornoemd, zij aanvaarden hun mandaat.De mandaten zijn onbezoldigd.
Bijzondere volmacht wordt verleend aan mevrouw Jenny Van Camp, wonende te Liezele, Hof ter Bollen 45, met macht van indeplaatsstelling, om alle formaliteiten in verband met het aanvragen en het wijzigen in de toekomst van een BTW- en handelsregisternummer en de vennootschap te vertegenwoordigen bij de fiscale administraties, zowel directe als indirecte belastingen, als bij de diensten van het Handelsregister.

Voor ontledend uittreksel :

(Get.) Koen De Raeymaecker, notaris.

DRC-34996 0754

Uitgifte met bankattest.

**Neergelegd te Antwerpen, 3 mei 2001 (A/67675).**

| 2 | 4 000 | BTW 21 % | 840 | 4 840 |

(47774)

N. 20010515 — 164

Les 4 Coins

Société coopérative à responsabilité illimitée et solidaire

Avenue Albert Giraud 61
1030 Bruxelles

RCB 571 708

BE- 450 404 652

Transfert du siège social et modification de l'objet

ASSEMBLEE GENERALE EXTRAORDINAIRE
DU 24/03/01

L'assemblée générale a décidé à l'unanimité :

1. Transfert du siège social au 27, rue G. Biot à 1050 Bruxelles à partir du 01/04/01.
2. La société aura également pour objet le transport de marchandise pour son propre compte et pour compte de tiers international ou national par tous moyens de transport inférieur à 500 kg. Elle pourra également acheter vendre des communication téléphoniques et exploiter des cabines téléphoniques

(Signé) Benomar, F., gérante.

Déposé, 3 mai 2001.

| 1 | 2 000 | T.V.A. 21 % | 420 | 2 420 |

(47499)

N. 20010515 — 165

Boetens

Besloten Vennootschap met Beperkte Aansprakelijkheid

Donklaan 138
9290 Berlare

Dendermonde 38686

426.675.779

Exhibit 8 Part 6

# Annex
# Y

DRC-34996 0755

# Exhibit 8 Part 6

N. 970103 — 245

## "GOLD & SILVER SYSTEMS"

naamloze vennootschap

2650     EDEGEM
Mechelsesteenweg  224

### OPRICHTING

Het blijkt uit een akte verleden voor Meester Erik ADRIAENSSENS, Notaris te Edegem op achttien december negentienhonderd zesennegentig door

1. De Heer Antoine François GOETZ, bestuurder van vennootschappen, wonende te Bujumbura (Burundi), Beau Site 16

2. De Heer Sylvain GOETZ, bediende, wonende te 2980 Zoersel, Epicialaan 69,

3. De Heer Sven GOETZ, zaakvoerder, wonende te 2150 Borsbeek, Schanslaan 138, werd overgegaan tot de oprichting van een naamloze vennootschap.

Volgende bepalingen van de statuten geven aanleiding tot publicatie:

Naam

De vennootschap is een naamloze vennootschap en draagt de benaming "GOLD & SILVER SYSTEMS", afgekort " G.S.S.".

De oprichters verklaren deze benamingen te willen beschermen.

Zetel

De zetel is gevestigd te 2650 Edegem, Mechelsesteenweg 224.

Doel

De vennootschap zal tot doel hebben, zowel in binnen- als buitenland:

- de fabricatie van en de handel in toestellen en apparatuur voor verguldings- en galvanisatietechnieken. De invoer, uitvoer, groot- en kleinhandel hiervan. Het werken met deze toestellen voor eigen rekening of in onderaanneming. Het ontwikkelen en promoten van deze technieken en deze apparatuur.

- De groot- en kleinhandel in goudsmeedwerk en juwelen, diverse recuperatieprodukten, meer bepaald oude juwelen, goud en zilverwerk en juwelen, horloges en alle edele metalen en aanverwanten.

- Het verwerken van afvallen van alle edele metalen en aanverwanten.

Het affineren van goud, oud goud, juwelen, zilver, oud zilver en van alle edele metalen en aanverwanten.

- De groot- en kleinhandel in monetair goud.

- Het fabriceren van en handelen in juwelen.

- De invoer en uitvoer en de handel in alle soorten materialen.

- Het verhandelen in het groot of in het klein, aan- en verkopen, in- en uitvoeren van, en consigneren van diamant en alle soorten edelstenen ruw en geslepen.

- Het vervaardigen of laten vervaardigen en het vervoeren van alle voormelde produkten, materialen en materieel.

- De vennootschap mag alle bewerkingen doen van commerciële, industriële en financiële, roerende of onroerende aard, die kunnen bijdragen tot de verwezenlijking, de uitbreiding of de vergemakkelijking van haar doel. Zij mag rechtstreeks of onrechtstreeks deelnemen in alle ondernemingen die een gelijkaardig doel of verwant doel nastreven.

Duur

De vennootschap bestaat voor onbepaalde duur.

Kapitaal

Het kapitaal is vastgesteld op veertien miljoen frank, vertegenwoordigd door honderd veertig aandelen zonder aanduiding van waarde, die elk één/honderd veertigste van het kapitaal vertegenwoordigen.

Het kapitaal is blijkens de oprichtingsakte volledig onderschreven en volstort.

Samenstelling van de raad van bestuur.

De vennootschap wordt bestuurd door een raad bestaande uit ten minste drie leden, aandeelhouders of niet, benoemd door de algemene vergadering, en die te allen tijde door haar afzetbaar zijn.

Indien echter op een algemene vergadering van de aandeelhouders is vastgesteld dat de vennootschap slechts twee aandeelhouders heeft, mag de raad van bestuur uit twee leden bestaan, dit tot op de dag van de gewone algemene vergadering die volgt op de vaststelling, door alle middelen, dat er meer dan twee aandeelhouders zijn.

De termijn van hun mandaat mag ze zes jaar niet te boven gaan. De uittredende bestuurders zijn herbenoembaar.

Bijeenkomsten.

De raad komt bijeen op uitnodiging van zijn voorzitter, telkenmale het belang van de vennootschap het vereist.

Hij moet bijeengeroepen worden op aanvraag van twee bestuurders. De oproepingen vermelden de agenda, de plaats en het uur; de oproepingen geschieden per brief, minstens drie dagen voor de vergadering, behalve in spoedgeval.

Beraadslagingen.

De raad van bestuur kan slechts geldig beraadslagen en beslissen omtrent aangelegenheden die op de agenda vermeld zijn en slechts op voorwaarde dat de meerderheid van zijn leden aanwezig of vertegenwoordigd is en op voorwaarde dat de afgevaardigde bestuurder aanwezig is.

Over aangelegenheden die niet op de agenda vermeld staan kan de raad van bestuur geldig beraadslagen en beslissen indien alle leden van de raad van bestuur aanwezig zijn of vertegenwoordigd zijn en allen akkoord gaan.

Ieder bestuurder mag schriftelijk, per telex, telefax of telegrafisch aan één zijner collega's opdracht geven hem te vertegenwoordigen om een welbepaalde vergadering van de raad van bestuur en voor hem an in zijn plaats stemmen.

De opdrachtgever wordt in deze omstandigheden als aanwezig aangerekend.

Een bestuurder mag tevens zijn oordeel per brief, telex, telefax of telegram kenbaar maken en zijn stemmingen duidelijk uitdrukken.

De beslissingen van de raad van bestuur worden genomen bij meerderheid van stemmen; de afgevaardigde-bestuurder heeft echter een veto-recht en kan aldus alle beslissingen die zonder zijn toestemming zijn genomen, laten ontbinden.

Indien de raad van bestuur slechts uit twee leden bestaat, kan een besluit slechts worden genomen met unanimiteit.

Bij staking van stemmen is het voorstel verworpen. Een beslissing ondertekend door alle bestuurders in functie op dat ogenblik zal dezelfde waarde hebben alsof zij getroffen werd in de raad van bestuur.

Dagelijks Bestuur, Directiecomité, volmachten.

DRC-34996 0756

Case 1:22-cv-01204-JEB    Document 40-7    Filed 01/17/25    Page 79 of 116

Sociétés commerciales et agricoles — Annexe au *Moniteur belge* du 8 janvier 1997
Handels- en landbouwvennootschappen — Bijlage tot het *Belgisch Staatsblad* van 8 januari 1997

Exhibit 8, Part 6    163

De raad van bestuur kan aan perso-
nen, gekozen in of buiten zijn midden, het
dagelijks bestuur opdragen of bijzondere
volmachten toekennen.

Hij zal aldus toegekende machten
mogen herroepen en zal de vergoedingen
kunnen vaststellen die aan deze bijzondere
functies verbonden zijn.

De raad van bestuur kan onder zijn
leden één of meerdere afgevaardigde be-
stuurders alsook één of meerdere direc-
teurs aanduiden en hun machten bepalen.

De raad van bestuur zal een direc-
tiecomité mogen oprichten dat zal bestaan
uit tenminste twee leden, binnen of buiten
de raad van bestuur gekozen, en waarvan de
besluiten in college zullen genomen worden
binnen het kader van de volmachten ver-
leend door de raad van bestuur.

Rechtsgedingen.

De vennootschap zal in rechte verte-
genwoordigd worden, als verweerder en als
eiser, door een afgevaardigde bestuurder
alleen optredend of door het gezamenlijk
optreden van de afgevaardigde bestuurder
en één der bestuurders.

Externe vertegenwoordigingsmacht.

Behoudens bijzondere machtsafvaardi-
ging is de vennootschap geldig tegenover
derden en in rechte vertegenwoordigd door
een afgevaardigde bestuurder alleen optre-
dend of door het gezamenlijk optreden van
de afgevaardigde bestuurder en één der
bestuurders.

Indien slechts twee bestuurders
werden benoemd, wordt de vennootschap ten
aanzien van derden en in rechte, als eiser
of als verweerder, rechtsgeldig vertegen-
woordigd, hetzij door beide bestuurders,
gezamenlijk handelend, hetzij door de
afgevaardigde bestuurder.

Bijeenkomst van de algemene vergade-
ring.

De gewone algemene vergadering,
jaarvergadering genoemd, wordt gehouden op
de tweede dinsdag van de maand mei, om
zeventien uur.

Toelating tot de vergadering.

Om toegelaten te worden op de verga-
dering moeten de houders van aandelen
tenminste vijf dagen voor de vergadering
hun aandelen neerleggen op de wijze door
de raad van bestuur in de oproeping be-
paald.

Vertegenwoordiging.

Iedere eigenaar van aandelen mag
zich op de algemene vergadering laten
vertegenwoordigen door een volmachtdrager
die zelf aandeelhouder is.

De minderjarigen, ontzetten en ande-
re onbekwamen mogen vertegenwoordigd zijn
door hun wettelijke vertegenwoordiger;
rechtspersonen door hun wettelijke of
statutaire organen.

De raad van bestuur mag de bewoor-
dingen van de volmachten vaststellen en
eisen dat deze minstens vijf dagen voor de
vergadering zouden neergelegd worden op de
door hem aangeduide plaats.

Stemrecht.

Ieder aandeel geeft recht op één
stem.

Het aan het aandeel verbonden stem-
recht komt de vruchtgebruiker toe.
Voor besluiten tot statutenwijziging komt
het echter toe aan de blote eigenaar.

Bij in pand gegeven effecten wordt
het stemrecht door de eigenaars uitgeoe-
fend. Hiertoe deponeert de pandhouder op
verzoek van de eigenaar de aandelen vijf
dagen voor de vergadering bij een door de
vennootschap aangewezen bank.

Boekjaar

Het boekjaar van de vennootschap
gaat in op een januari en eindigt op een-
endertig december van elk jaar.

Bestemming van de winst.

Het batig saldo van de balans, na
aftrek van de algemene kosten en alle
aard, van de lasten, de noodzakelijke
afschrijvingen, alsmede van een provisie
voldoende geacht tot het dekken van de
belastingen op winsten ten laste van de
vennootschap, vormt de nettowinst.

Op deze nettowinst wordt vijf pro-
cent voorafgenomen voor de wettelijke
reserve: deze voorafneming is niet meer
verplicht wanneer de wettelijke reserve
één tiende van het kapitaal bereikt; zij
moet echter hernomen worden wanneer de
wettelijke reserve dit peil niet meer
bereikt.

Het saldo staat ter beschikking van
de algemene vergadering die, op voorstel
van de raad van bestuur over zijn aanwen-
ding zal beslissen.

Verdeling.

Na betaling van alle schulden en
lasten van de vennootschap zal het over-
blijvend saldo vooreerst aangewend worden
om de aandelen terug te betalen tot beloop
van hun afbetaald bedrag. Het saldo zal in
gelijke delen tussen al de aandelen ver-
deeld worden.

TIJDELIJKE BEPALINGEN.

1. Het eerste maatschappelijk jaar
neemt aanvang op heden en eindigt op een-
endertig december negentienhonderd zeven-
ennegentig.

2. De eerste jaarvergadering zal
gehouden worden in het jaar negentienhon-
derd achtennegentig.

3. De vennootschap zal beginnen te
werken vanaf de neerlegging van een uit-
treksel uit de oprichtingsakte ter griffie
van de rechtbank van koophandel van het
ressort waarbinnen de vennootschap haar
zetel gevestigd heeft, overeenkomstig
artikel 2, lid 2 van de Vennootschappen-
wet.

BENOEMING VAN DE BESTUURDERS DOOR DE
OPRICHTERS

De oprichters nemen volgende besli-
singen, met eenparigheid van stemmen,
overeenkomstig artikel 55, derde lid Venn.
Wet:

– benoeming van bestuurders:
1. De Heer Antoine GOETZ, voornoemd.
2. De Heer Sylvain GOETZ, voornoemd.
3. De Heer Sven GOETZ, voornoemd.
– bepaling van de duurtijd van hun
mandaat en van hun
vergadering.

Hun mandaat zal eindigen onmiddel-
lijk na de gewone jaarlijkse vergadering
van het jaar tweeduizend en twee.
De mandaten zullen niet bezoldigd
zijn.

Voor ontledend uittreksel :

(Get.) E. Adriaenssens,
notaris.

Mededeling neergelegde stukken:
afschrift met bankattest.

Neergelegd te Antwerpen, 20 december 1996 (A/51157).

6      9 600      BTW 21 %      2 016      11 616

(1044)

# Exhibit 8 Part 6

**N. 970103 — 246**

**VAN TILBURG - WILLEMSE & Cᵒ .**

Gewone Commanditaire Vennootschap

Kalmthoutsesteenweg 31
2950 Kapellen.

Antwerpen - In Aanvraag·

## OPRICHTING

**Tussen ondergetekenden :**
1° De Heer Frank VAN TILBURG, geboren op 24/9/1954 en wonende te Kalmthoutsesteenweg 31, 2950 Kapellen.
Hoofdelijk, voor onbepaalde tijd en voor het geheel aansprakelijke en beherende vennoot; sub. 1 en
2° De Heer Wim WILLEMSE geboren op 3/9/1958 en wonende te Deemweg 116, 8200 Wichelen.
Beherende vennoot; subs. 2 en
3° Mevrouw Myriam VERSTREPEN geboren op 27/3/1956 en wonende te Kalmthoutsesteenweg 31, 2950 Kapellen.
Stille vennoot; subs. 3.
wordt een Gewone Commanditaire Vennootschap (G.C.V.) opgericht onder de benaming : "VAN TILBURG - WILLEMSE & Cᵒ"en onder volgende voorwaarden :

### 1. BENAMING
De vennootschap neemt de benaming "VAN TILBURG - WILLEMSE & Cᵒ" aan.
In alle akten, fakturen, aankondigingen, bekendmatingen, brieven, orders en andere documenten van de vennootschap dient deze benaming te worden voorafgegaan of gevolgd door de vermelding "Gewone Commanditaire Vennootschap" of door de initialen "G.C.V.", door de aanduiding van het inschrijvingsformulier in het Handelsregister en door het BTW-nummer.

### 2. MAATSCHAPPELIJKE ZETEL
De maatschappelijke zetel is gevestigd te 2950 Kapellen, Kalmthoutsesteenweg 31. Hij kan worden verplaatst naar om het even welke andere plaats binnen hetzelfde taalgebied van België door een éénvoudige beslissing vanwege het beheer en mits publicatie in de Bijlagen bij het Belgisch Staatsblad.

### 3. DOEL
De vennootschap heeft tot doel:
1. Het uitvoeren van binnen- en buitenschilderwerken, decoratiewerken van alle aard, het voeren van groot- en kleinhandel met inbegrip van danbreegen en- of plaatsen van verf- en aanverwante waren, onderhoudsprodukten en binnenhuis sierprodukten, Verkoop- en plaatsing van gordijnen, draperiéen, stores, vloerbekleding en tapijten, de groot- en kleinhandel van verven, vernissen en toebehoren en al wat hiermee verband staat met woninrichting. De vennootschap mag alle roerende, onroerende, financiéle, commerciéle en industriéle verrichtingen stellen die rechtstreeks of onrechtstreeks verband houden met haar maatschappelijk doel. Zij mag tevens op om het even welke wijze participeren in om het even welke andere vennootschap, onderneming of vereniging waarvan het maatschappelijk doel gelijkaardig is aan of verband houdt met het hare, of van aard is om de verwezenlijking van haar eigen doel te bevorderen.

### 4. DUUR
De vennootschap wordt opgericht voor onbepaalde tijd, met ingang vanaf 16 november 1996.

### 5. MAATSCHAPPELIJK KAPITAAL
Het maatschappelijk kapitaal van de vennootschap bij de oprichting bedraagt 60.000 bfr (zestigduizend frank) vertegenwoordigd door 60 aandelen die ieder 1/60ste van het kapitaal vertegenwoordigen.
1) Inschrijvingen in geld :
Door de Heer Frank Van Tilburg, oprichter sub 1 : 25.000 bfr. Als vergoeding voor deze inbreng worden 25 volgestorte aandelen met een nominale waarde van duizend frank toegekend.
Door de Heer Wim Willemse, oprichter sub 2.: 25.000 bfr. Als vergoeding voor deze inbreng worden 25 volgestorte aandelen met een nominale waarde van duizend frank toegekend.
Door Mevrouw Myriam Verstrepen, oprichter sub 3.: 10.000 bfr. Als vergoeding voor deze inbreng worden 10 volgestorte aandelen met een nominale waarde van duizend frank toegekend.

### 6. BEHEER
Als zaakvoerders worden aangesteld de Heer Frank VAN TILBURG en de Heer Wim WILLEMSE, onder voorbehoud van ene delegatie en met uitsluiting van de stille vennoten. Deze mandaten zijn bezoldigd.

### 7. REKENINGEN EN VERDELING VAN DE WINST
Elk jaar wordt op de eerste maandag van de maand september een inventaris en een balans van het aktief en passief van de vennootschap opgemaakt, overeenkomstig de bepalingen van toepassing op de rekeningen van ondernemingen. De winst zal worden verdeeld onder de vennoten volgens hun respectief aandeelsbezit.

### 8. OVERLIJDEN
Het overlijden van één der vennoten geeft geen aanleiding tot het ontbinden van de vennootschap doch het verderzetting van de overleden vennoot met gezamenlijke goedkeuring vanwege alle vennoten.
Hetzelfde geldt in geval van onbekwaamheid of verhindering om welke reden ook. De erfgenamen van de overleden kunnen niet de zegels laten leggen noch overgaan tot een gerechtelijke boedelbeschrijving, noch op enige wijze de werking van de vennootschap in de weg staan. Zij hebben slechts recht op het opvorderen van het gedeelte dat hun rechtsvoorganger blijkens de meest recente balans in de vennootschap toekomt.

### 9. OVERDRACHT VAN AANDELEN
Buiten de toestemming van de medevennoten mag geen enkele vennoot zijn rechten in de vennootschap geheel of gedeeltelijk overdragen en mits het naleven van de bepalingen voorzien in artikel 1690 van het Burgerlijk Wetboek.

### 10. ONTBINDING EN VEREFFENING
Buiten de mogelijkheid van de gerechtelijke ontbinding voltrokken overeenkomstig de Vennootschappenwet, kunnen de ontbinding en vereffening van de vennootschap worden toegestaan op verzoek van een vennoot, indien de winst voor strat van betaling binnen de twee jaar volgens de jaarbalans niet de som van 80.000 bfr bereikt.

### 11. ARBITRAGE
Elke betwisting in verband met de interpretatie of de uitvoering van onderhavige overeenkomst wordt beslecht door een scheidsrechter aangesteld in gemeen overleg tussen de partijen, of bij gebreke hieraan, door de bevoegde Instanties van de stad of de Middenstand. De scheidsrechter zal in laatste aanleg die beslissingen oordelen binnen de twee maanden volgend op de datum waarop hij de bij de betwisting betrokken partijen heeft aangemaand, hen hun schriftelijke argumentatie over te maken. Zijn beslissing moet de modaliteiten preciseren volgens dewelke zijn kosten zouden worden gedragen.

### 12. OVERGANGSBEPALINGEN
Het boekjaar loopt van 1 april tot 31 maart van elk jaar. Het eerste boekjaar loopt vanaf 16 november 1996 en zal eindigen op 31 maart 1998.

### 13. TOEPASSING VAN HET GEMEEN RECHT
Alles wat niet in onderhavige statuten werd geprecideerd, zal worden bepaald overeenkomstig of naar analogie met de principes tot uitdrukking gebracht in de Vennootschappenwet, welke worden geacht, bij deze integraal te zijn overgenomen.

Opgemaakt te Kapellen op 2 december 1996 in vier exemplaren waarvan 3 exemplaren bestand voor ondergetekenden,

(Get.) F. Van Tilburg,
beherend vennoot.

(Get.) W. Willemse,
beherend vennoot.

(Get.) M. Verstrepen,
stille vennoot.

Neergelegd te Antwerpen, 20 december 1996 (A/51158).

| | | | | |
|---|---|---|---|---|
| 3 | 4 800 | BTW 21 % | 1 008 | 5 808 |
| | | | | (1045) |

---

**N. 970103 — 247**

**Groep Somers-Lauriks**

**Naamloze Vennootschap**

Clemenshoek 34, Reet

## Oprichting

Uit een akte verleden voor ondergetekende notaris Hans VAN OVERLOOP, met standplaats te Wilrijk (Stad Antwerpen) op negentien december negentienhonderd zesennegentig, blijkt wat volgt :

**EEN AANHEEN :**
1. De heer WAUTERS Boran Madeleine Edward, verzekeringsmakelaar, geboren te Wilrijk op twaalf augustus negentienhonderd negenenzestig, wonende te Aartselaar, Lijsterlaan 4, gehuwd met mevrouw Mollens Horsa, zonder kontrakt;

Exhibit 8 Part 6

# Annex
# Z

DRC-34996 0759



# ARGOR INTERNATIONAL S.A.
## Société Anonyme
### SIÈGE SOCIAL: 7a, rue des Glacis
### L-1628 Luxembourg
### R.C.S. Luxembourg B 119 953

La société a été constituée pour une durée indéterminée le 26 septembre 2006 suivant acte reçu par le notaire Gérard LECUIT de résidence à Luxembourg, acte publié au Mémorial du Grand Duché de Luxembourg, Recueil Spécial des Sociétés et Associations, C n° 2146 du 16 novembre 2006.

-----

CAPITAL SOCIAL: 22.150.000 (vingt deux millions cent cinquante mille) euros représenté par 221.500 (deux cent vingt et un mille cinq cents) actions sans désignation de valeur nominale, libérées pour partie en numéraire et pour partie en nature.

-----

## CERTIFICAT : ACTIONS AU PORTEUR

### N°-001-

donnant droit à 50.000 (cinquante mille) actions numérotées de 1 à 50.000.

-----

L'assemblée générale annuelle se réunit de plein droit le premier jour du mois de juin à 15.00 heures à Luxembourg au siège social ou à tout autre endroit à désigner par les convocations.

Luxembourg, le 4 février 2012.

**ADMINISTRATEUR**                    **ADMINISTRATEUR**

Valor Buch Services S A

Exhibit 8 Part 6

# Annex
# AA

DRC-34996 0761

# Exhibit 8 Part 6

| COMPANY | GOETZ'S CURRENT RELATIONSHIP | GOETZ PAST RELATIONSHIP | LAST KNOWN SHAREHOLDER(S) | LAST KNOWN DIRECTOR(S) | REMARKS |
|---|---|---|---|---|---|
| AGOR DMCC | None | Shareholder: 18.02.2007-14.09.2022 Director: 18.02.2007-14.09.2022 Managing Director | / | / | Liquidated 14.09.2022 |
| AGR LIMITED | None | Shareholder: 28.11.2015-09.02.2018 Director: 2015-10.01.2019 | AGR International Ltd Moses SADOORI | Majd MOHAMMED ABDULAZIZ MOUSA Naser IBRAHIM MOUSA AL HINDI | |
| AGR INTERNATIONAL LTD | None | Shareholder: 06.12.2017-07.06.2021 Director: 06.12.2017-07.06.2021 | Puthen Purayil Thampan Shinu CHEEKULATHU | Puthen Purayil Thampan Shinu CHEEKULATHU | |
| ALAXY BVBA | Shareholder Director | | Alain GOETZ Sandra WEYLER | Alain GOETZ Sandra WEYLER | Liquidation initiated |
| CG-VASTGOED INVEST | None | Shareholder: 17.09.2008-29.10.2022 | Sylvain GOETZ | Sylvain GOETZ Ann HILKMANN | |
| GOETZ GOLD LLC | None | Shareholder: 23.05.2013-07.05.2020 | Omar HASSAN ALI Meryl Mongaya SECAPURI | | |
| PREMIER GOLD REFINERY LLC | None | Shareholder: 2017 -07.05.2020 | Omar HASSAN ALI Meryl Mongaya SECAPURI | | |
| OROFINO NV | Shareholder Director | | Alaxy Alain GOETZ | Alain GOETZ Sandra WEYLER | Liquidation initiated |
| WWG DIAMONDS | Shareholder Director | | Alain GOETZ Sylvain GOETZ | Alain GOETZ Nasir JAMAL | |
| ALDABRA LIMITED | Shareholder Director | | Alain GOETZ | Alain GOETZ Sandra WEYLER | |
| TONY GOETZ NV INDUSTRIAL REFINING COMPANY | None | Director: 13.05.1999-24.08.2004 Managing Director: 17.01.2002-24.08.2004 | | Sylvain GOETZ | |
| ALDANGO LIMITED | Indirect shareholder | | Aldabra Limited Ngali Mining Ltd | William NTAMBARA | |
| BELGIAN PRECIOUS METALS INDUSTRIES | Shareholder Director | Director: 03.03.2003-24.08.2004 | Alain GOETZ Sylvain GOETZ | Sylvain GOETZ Ann HILKMANN | |

DRC-34996 0782

Exhibit 8 Part 6

| ALDBRA LIMITED | Shareholder Director | | Aldabra Limited Alain GOETZ | Cherry Ann DACDAC Alain GOETZ | |
|---|---|---|---|---|---|
| EUROPEAN GUARANTEE AGENCY INTERNATIONAL | None | Shareholder: 15.05.2001-29.10.2022 Director: 15.05.2001-24.08.2004 | Sylvain GOETZ | | |
| GSS NV | None | Shareholder Director | | | |
| ASTECO SA | None | Director: until 2018 | | | |
| WORLDWIDE CONSULTING | None | None | | | |
| ARGOR INTERNATIONAL SA | None | Shareholder: until 30.10.2018 Director: until 31.10.2018 | Sylvain GOETZ | | |

DRC-34996 0763

Exhibit 8 Part 6

# Annex
# BB

DRC-34996 0764



**GOVERNMENT OF DUBAI**



Exhibit 8 Part 6

**13/02/2023**

**AGOR DMCC**
Dubai
United Arab Emirates

**Subject: Dissolution of Company**

Please be advised that **AGOR DMCC,** which is registered with Dubai Multi
Commodities Centre Authority bearing registration number **DMCC0885,** has
been dissolved, with effect from **14/09/2022.**

Regards,

DMCC AUTHORITY

Document reference no: 532327S13168
This document has been electronically generated by DMCC Authority. To verify the content and authenticity of this document go to
www.dmcc.ae/document_verification and enter the unique document reference number.

Almas Tower
Jumeirah Lakes Towers
P.O. Box 48800, Dubai, UAE
DMCC +9714000 0100 9600
dmcc.ae



MADE
FOR
TRADE

Exhibit 8 Part 7

# Annex
# CC

DRC-34996 0766

# Exhibit 8 Part 7

CERTIFIED TRUE COPY

## THE COMPANIES ACT 2012

FILED THIS...23-2-18...DAY OF.........20....

FEES PAID ............RECIEPT No...... 3126980

## COMPANY LIMITED BY SHARES

*******

## AMENDED

NALUBOULA DIANA

REGISTRAR OF COMPANIES
KAMPALA

# MEMORANDUM AND ARTICLES OF ASSOCIATION

## OF

# AFRICAN GOLD REFINERY LIMITED

********

Amended this.......…......... day of FEBRAURY  2018

**Drawn By:**
**Tem Advocates & Solicitors**
**Plot 3 Parliament Avenue**
**1ˢᵗ floor Raja Chambers**
**P. O. Box 6800**
**Kampala.**

DRC-34996 0767

# Exhibit 8 Part 7

machinery, plant and other effect which the company may consider useful for any of its purposes.

f) To employ and pay mining experts, agents, and other persons, partnerships, companies or corporation, and to organize, equip and dispatch expedition for prospecting, exploring, reporting on, surveying, working and developing land and properties, whether owned by this company or not, and to make advances to and pay for or contribute to the expenses of, and otherwise assist persons or companies prospecting, acquiring, settling on, farming, building on, mining, or otherwise developing any lands and properties, or desirous of so doing.

g) To search for minerals, mines and grant licenses for mining in or over any land in which the company may be interested, and to lease any such land works and to construct or contribute to the construction of piers, wharves docks, railways and roads.

h) To carry on the business of mining, smelting and refining company, and to purchase or hire vessels and vehicles, to acquire or erect building and works and to construct or contribute to the construction of piers, wharves, docks, railways and roads.

i) To purchase or otherwise acquire real or personal property of all kinds in Uganda and elsewhere, and in particular land, oil wells, gold mine refineries,  mines, mining and drilling right,minerals,orer,buildings,machinery,plant,stores,patent,licen ces,concessions,rights of way, light or water, and any rights or privileges which it may seem convenient to obtain for the purposes of or in connection with business of the company, and to manage, develop, sell, exchange ,lease, mortgage, or otherwise deal with the whole or any part of such property or rights.

j) To carry on business as land and mine owners, miners, metallurgists, metalworkers, builders and contractors, engineers, manufacturers, farmers, vehicle and equipment

DRC-34996 0768

# Exhibit 8 Part 7

**THE COMPANIES ACT 2012**

**COMPANY LIMITED BY SHARES**

**AMENDED MEMORANDUM OF ASSOCIATION**
**Of**
**AFRICAN GOLD REFINERY LIMITED**

1. The name of the Company is **"AFRICAN GOLD REFINERY LIMITED"**.

2. The registered office of the Company will be situated in the Republic of Uganda.

3. The objects for which the Company is established are:

    a) To establish and operate an industrial plant and refinery to process minerals and metals of all types including but limited to; gold, diamonds, iron, silver, Colton and others.

    b) To establish and operate a state of the art gold refinery and an investment company in strategic minerals.

    c) To prospect, explore, develop and work claims or mines, drill and sink shafts or wells and raise, pump, dig and quarry for gold, silver, minerals, ores, diamonds and precious stones, Oil, Petroleum, natural gas, coal, earth, and other substances.

    d) To prospect, explore, develop, maintain and work all or any lands, wells, mines or mining rights, minerals, ores, works or other properties from time to time in the possession of the company; to erect all necessary or convenient refineries, mills, machinery, laboratories, workshops, dwelling-houses for workmen and others, and other building and installations, and to aid in or subscribe towards or subsidies any such objects.

    e) To purchase, take on lease or in exchange, or acquire by mining set or license, concession, grant or otherwise any land, mineral rights, buildings, easements, rights and privileges,

2 | Page

DRC-34996 0769

# Exhibit 8 Part 7

proprietors, traders, ship owners, ship brokers, importers and exporters, and to buy, sell and del in property of all kind.

k) To purchase or otherwise acquire any freehold or leasehold property for any estate or interest whosever, and any privileges or easements over or in respect of any property.

l) To carry out the works of general contractors, construction, renovations, road repairs and construction, compound designing and landscaping, clearing of premises, fumigation and general maintenance of buildings/properties.

m) To purchase or otherwise acquire and to manufacture and deal in bricks, stone and other building materials of any kind, and all implements, machinery, vehicles, scaffolding and other equipments and articles used by builders and constructor

n) To engage 1 the business of import and export of all commodities e.g. hardware, cement and industrial machinery.

o) To purchase or otherwise acquire lands, houses, offices, workshops, buildings and premises for the purpose of that business.

p) To carry on business of logistics management and haulage.

q) To carry on all or any of the business of manufacturers and workers in cement, concrete, lime plaster, clay, gravel, sand, minerals and artificial stone, and aggregates and builders' requisites of all kinds, and of engineers, ship, barge, lighter and truck owners, quarry owners, builders, general contractors and carriers.

r) To carry on the business of plumbing, mechanical engineers and manufactures, workers and dealers in plumbing and plumbing apparatus or goods to which plumbing or any other service in applied.

DRC-34996 0770

# Exhibit 8 Part 7

s) To operate motor transport of all kinds, including the leasing or hiring of cars, Lorries, trucks, tractors, and breakdown vehicles.

t) To purchase or otherwise acquire houses, offices, workshop, buildings and premises and any fixed and movable machinery, tools, engines, boilers, plant, implements, patterns, stock-in-trade, patents and patent rights convenient for any of the above activities.

u) To carry on the warehousing, marketing, distribution and procurements.

v) To engage in industrial manufacturing of consumer goods with the company and to lend money upon the security of such goods.

w) To issue warrants    to persons warehousing goods with the company and to lend money upon the security of such goods.

x) To invest any money of the company in such investments and other property as may from time to time be thought fit, and hold, sell or otherwise dispose of any such investment.

y) To give credit to such persons on such terms as may seem expedient and in particular to customer and others having dealings with the company and to give guarantees or become security for any such persons.

z) To borrow or raise money in such manner as the company shall think fit, and in particular by the issue of debentures, stock(perpetual) or otherwise, and to ensure the repayment of any money borrowed, raised or owed by mortgage, lien or charge upon the whole or any companies assets.

aa) To invest any monies of the company not immediately required for the purpose of the business of the company in such investments(other than shares in the company or its holding company, if any)and in such manner as may or otherwise deal with such instruments.

DRC-34996 0771

# Exhibit 8 Part 7

bb) To establish or promote, procure or participate in establishing or promoting any company the establishment or promotion of which shall be considered desirable in the interest of the company and to subscribe for, underwrite purchase or otherwise acquire the shares stocks and securities of any company.

cc) To give any remuneration or other compensation or reward for services rendered or to be rendered in placing or procuring subscription of or otherwise assisting in the issue or any shares, debenture or other securities of the company or in or about the formation of the company or the conduct of its business.

dd) To enter into any arrangements for sharing profits, union of interest, or co-operation, in concern or otherwise with any person, or firm or company or corporation carrying on or engaged in or about to carry on, or engage in any business or transactions which the company may deem capable of being conveniently carried on in connection with the above or calculated directly or enhance the value of or render profitable any of the company property and /or whereby the company would benefit.

ee) To enter into any arrangements with any governments or authorities, (municipal, local or otherwise) or any corporation, companies or person that may seem conductive to the company object or any of them and to obtain from any Government, authority, corporations which the company may think with any such charter, contracts, decrees, rights, privileges and concessions and to present and advocate the view and policies of the company to governments and other authorities.

ff) To act as agents or brokers and as trustees for any person, firm, organization or company and to undertake and perform subcontracts and also to act in any of the business of the company through others.

DRC-34996 0772

# Exhibit 8 Part 7

gg) To support and subscribe to any charitable or public object and any institution society or club which may be for the benefit of the company or its employee or may be connected with any town or place where the company gratuities or charitable aid to any person or persons who may have served the company or to wives, children and other relatives of such persons to make payments towards, insurance and to form and contribute to provident and to benefit funds for the benefit of any persons employed by the company.

hh) To amalgamate with any company having objects altogether or in part similar to those of this company.

ii) To give guarantee and/or become sureties for any person or persons, firm or firms, corporation or corporations whether incorporated for moneys raised and or firm or corporation or for any persons or firm corporation for any purpose whatsoever for the performance, discharge and fulfilment of such obligations and guarantees.

jj) To procure the company to be registered or recognised in any other territory, colony, place and in any foreign country or place.

kk) To do all such other things as may be deemed incidental or conducive to the attainment of the above objects or any of them. And it is hereby declared that the word company in the clause shall be deemed to include any partnership or other body or persons whether incorporated or not incorporated and whether domiciled in Uganda or elsewhere and the intention clause shall except where otherwise expressly stated in such paragraph independent of a main object and shall be in no way limited by any other paragraph

ll) To carry out any legally accepted business in Uganda

DRC-34996 0773

# Exhibit 8 Part 7

1. The liability of the Members is limited.

2. The share capital of the Company is Uganda Shillings Three Billion Five hundred Fifty Eight Million Nine Hundred and Eighty Thousand Shillings (UGX .3,558,980,000) divided into One Thousand (1,000) ordinary shares of Uganda Shillings Three Million Five Hundred fifty eight thousand Nine hundred eighty thousand (UGX.3,558,980) each, with powers of the Company to increase or reduce such capital and divide any shares in its capital for the time being into several classes and to attach thereto respectively any preferential, deferred, qualified or other rights, privileges, restrictions or conditions and to issue all or any part of such original, increased or reduced capital with or subject to such preferential, deferred, qualified or other rights, privileges, restrictions or conditions

We, the several persons whose names, addresses and descriptions are hereunto subscribed are desirous of being formed into a Company in pursuance of the Memorandum of Association and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAME, POSTAL ADRESS AND OCCUPATION OF SUBSCRIBER | NUMBER OF SHARES TAKEN BY EACH SUBSCRIBER | SIGNATURES OF SUBSCRIBER |
|---|---|---|
| AGR INTERNATIONAL LIMITED GLOBAL GATEWAY 8, RUE DE LA PERLE, PROVIDENCE MAHE, SEYCHELLES BUSINESS EXECUTIVE | 999 | |
| MOSES SADOORI P.O. BOX 8520 KAMPALA BUSINESS EXECUTIVE | 1 | |

DRC-34996 0774

# Exhibit 8 Part 7

Dated at Kampala this ___9___ Day of February 2018

## WITNESS TO THE ABOVE SIGNATURES:

Signature:

Name in Full:

**Sharon Tem**
ADVOCATE &
COMMISSIONER FOR OATHS
P. O. Box 6800, Kampala

Postal Address:

Occupation:

DRC-34996 0775

# Exhibit 8 Part 7

## THE COMPANIES ACT 2012

## COMPANY LIMITED BY SHARES

## AMENDED ARTICLES OF ASSOCIATION

### Of

## AFRICAN GOLD REFINERY LIMITED

The company is a PRIVATE COMPANY and accordingly;-

(a) The right to transfer shares is restricted in the manner hereinafter prescribed.

(b) Words importing the singular number only shall include the plural number, and vice versa.

## PRELIMINARY

1. The regulations contained in table "A" of the First Schedule to the Companies Act, shall apply to this Company in so far as they are applicable to a private company subject to the modifications and special provisions herein contained.

2. In these Articles, if not inconsistent with the subject or context:

   (a) **"Act"** shall mean the Companies Act 1/2012;

   (b) **"Articles"** shall mean these Articles of Association as now framed or as from time to time altered by Special Resolution;

   (c) **"Board"** shall mean the Board of Directors of the Company or the Directors present at a duly convened meeting of the Directors at which a quorum is present;

   (d) **"Company"** shall mean **AFRICAN GOLD REFINERY LIMITED**;

   (e) **"Debenture"** shall include debenture stock;

   (f) **"Director"** shall include an alternate director;

   (g) **"Uganda"** shall mean the Republic of Uganda;

   (h) **"Member"** shall mean a shareholder in the Company;

   (i) **"Month"** shall mean a calendar month;

   (j) **"Paid up"** shall mean paid up or credited as paid up;

DRC-34996 0776

# Exhibit 8 Part 7

(k)  **"Seal"** shall mean the common seal of the Company;

(l)  **"Secretary"** shall mean any person appointed by the Board to perform any of the duties of the Secretary;

(m)  **"Shillings"** and **"UGX"** shall mean Uganda shillings;

(n)  the expression **"In writing"** or **"written"** shall include words written, printed, lithographed or represented or reproduced in any other mode in visible form;

(o)  words signifying the singular number only shall include the plural number and vice versa;

(p)  words signifying the masculine gender only shall include the feminine gender;

(q)  words importing persons shall include corporations;

(r)  Reference to any provision of the Act shall be construed as a reference to such provision as modified or re-enacted by any act for the time being in force.

3.  Subject to the last preceding Article, any words or expressions defined in the Act shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

## PRIVATE COMPANY

1.  The Company is a Private Company and accordingly:

(a) No invitation shall be issued to the public to subscribe for any shares, debentures or debenture-stock or other securities of the Company;

(b) The number of members for the time being of the Company (exclusive of the employees of the Company) shall not exceed one hundred provided however for the purpose of this provision where two or more persons hold one or more shares in the Company jointly they shall be treated as a single member.

(c) The right to transfer the shares of the Company shall be restricted as herein after provided.

## SHARES

2.  No part of the funds of the Company shall directly or indirectly be employed in the purchase of or in loans upon the security of the Company's shares, but nothing in this regulation shall

DRC-34996 0777

# Exhibit 8 Part 7

prohibit transactions mentioned in the provision to section 63of the Companies Act.

3. Subject to the provisions of the above mentioned article the shares shall be under the control of the directors who may allot or otherwise dispose of the same to such persons and on such terms and conditions as they think fit.

4. Every person whose name is entered as a member in the register of members shall without payment, be entitled to a certificate under the seal of the Company specifying the share or shares held by the member and the amount paid up provided that in respect of a share or shares held jointly by several persons, the Company shall not be bound to issue more than one certificate and delivery of a certificate to one of several joint holders shall be sufficient delivery to all.

5. Every certificate shall specify the number of the shares in respect of which it is issued and the amount paid by the person named on the certificate.

### LIEN

6. The Company shall have a first and paramount lien upon the shares not being fully paid up shares for all monies, whether immediately payable or not called or payable at a fixed time in respect of that share and articles 11 to 14 of Table "A" shall apply to all shares on which the Company has a lien.

7. Subject to any special condition on the allotment of shares, all calls on shares shall be made by and at the discretion of the Directors and shall be payable at such time and place and by instalments or otherwise as the Directors may appoint and articles 15 to 21 of Table "A" shall apply.

### TRANSFER OF SHARES

8. The transfer of any share in the Company shall require the approval of the Board.

9. Every shareholder or trustee in bankruptcy or other legal representative of a shareholder who may desire to sell or transfer any shares of the Company shall give notice in writing to the Directors that he desires to make such sale or transfer;

DRC-34996 0778

# Exhibit 8 Part 7

such notice shall constitute the Board his agent for the sale of such shares to any member or members of the Company at a price to be agreed upon between the party giving such notice and the Board.

10. In the event that the shareholder and directors fail to agree on the price of the shares, then the matter shall be submitted to two independent arbitrators one to be appointed by the shareholder and the other by the Directors under the laws of arbitration for the time being in force in Uganda and the decision of the two arbitrators shall be final and binding.

11. Upon the determination of the price for such shares in accordance with Articles 9 or 10 above, the Board shall forthwith give notice to all of the shareholders of the company (other than the selling member) stating the number and price of such shares and inviting the interested shareholders to state in writing, within twenty one days from the date of such notice, their interest to purchase any of the shares, and the number of shares.

12. At the expiration of such twenty one days, the Board shall apportion such shares amongst the shareholder(s)who shall have expressed their desire to purchase the same and as far as may be necessary, may apportion the shares on a pro-rata basis according to the number of shares already held by the respective shareholders or if only one shareholder expresses the desire to purchase shares, then the whole of such shares shall be sold to the shareholder, provided that no shareholder shall be obliged to take more than the maximum number of such shares stated in their answer to the said notice. The selling shareholder, upon such apportionment by the Board and the payment of the agreed price by the purchasing shareholder(s) shall be bound to transfer the shares to the respective purchasing shareholders or to the single shareholder as the case may be.

13. In the event of failure by the selling shareholder to transfer such shares, the Directors may execute a transfer on behalf of the selling shareholder and may give a good receipt for the purchase price of such shares and may register the purchasing shareholder(s)as holders thereof and issue to them certificate(s)for the same and thereupon the purchasing

DRC-34996 0779

# Exhibit 8 Part 7

shareholder(s) shall become indefeasibly entitled thereto. The selling shareholder shall in such case be bound to deliver up his certificate or certificates for the said shares and on delivery shall be entitled to receive the said purchase price without interest.

14. In the event of the whole or any part of such shares offered for sale to the members by the selling shareholder remaining unsubscribed under the preceding Articles for a period of 60 days from the date of the notice referred to in Article 10 hereof, the selling member shall be at liberty to transfer the shares or the balance not so sold to persons who are not shareholders provided that he shall not sell them for a price less than the sum at which the same shares have been offered for sale to the members aforesaid.

15. The Directors may refuse to register any transfer of a share:

    (a) Where the Company has a lien on the shares;

    (b) Where the Directors are not of the opinion that it is desirable to admit the proposed transferee to membership. The Directors shall not be bound to give any reason for such refusal. However the Directors shall not unreasonably withhold their approval.

    Sub-article (b) above shall not apply where the proposed transferee is already a member.

16. The company shall not, except as ordered by a Court of competent jurisdiction or as required by statute be bound by or be compelled in any way to recognize any trust or any other right in respect of a share than an absolute right thereto in the registered holder thereof for the time being, or of other rights such as the right to transmission conferred by articles 29 to 32 of Table "A".

17. Save as aforesaid articles 22, 23, 25, to 28 of Table "A" shall apply.

DRC-34996 0780

# Exhibit 8 Part 7

## TRANSMISSION OF SHARES

18. Subject to article 2 (d) hereof, articles 29 to 32 (both inclusive) of Table "A" shall apply.

## FORFEITURE OF SHARES

19. Articles 33 to 39 of Table "A" shall apply except that:

(a) The forfeiture of a share shall include all dividends declare in respect of the forfeited shares and not actually paid before, the forfeiture; and

## ALTERATION OF CAPITAL

Article 44 to 46 of table "A" shall apply. The Directors may also subject to the provisions of the Company accept surrender of shares

## GENERAL MEETINGS

20. A general meeting shall be held once at least in every calendar year at such time (not being more than fifteen months after holding the last preceding general meeting) and at such place as may be determined by the Directors. Such general meetings shall be called "ordinary meeting" and all other meetings of the Company shall be called "extra ordinary meetings".

Subject to the provisions of the Act relating to special resolutions, twenty one days' notice at least (exclusive of the day on which the notice is served or deemed to be served but inclusive of the day for which notice is given) specifying the place the day and the hour of meeting and in the case of special business the general nature of that business shall be given in a manner as may be prescribed by the Company in general meeting to such persons as are under the regulations of the Company, entitled to receive such notices from the Company.

21. The Directors shall in accordance with section 139 of the Companies Act convene an extra ordinary meeting.

DRC-34996 0781

# Exhibit 8 Part 7

A resolution adopted and executed in writing under the hands of all the members and/or shareholders of the Company though not passed at a general or extra ordinary meeting, shall be valid and have the same force as if it had been duly passed at a general or extra ordinary meeting as the case may be duly provided in all cases that all members sign the resolution.

22.    Articles 52 to 57 of Table "A" shall apply but so that:

(a)    A general meeting shall be called in accordance with section 140 of the Companies Act

(b)    Two members present personally or by proxy shall form a quorum.

(c)    The chairman of all meetings of the members whether general or extra ordinary shall be the chairman of the board of directors or such other person appointed by the Board of Directors.

23.    At any general meeting a resolution put to vote of the meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

(a)    By the chairman, or

(b)    By at least two members present in person or by proxy entitled to vote; or

(c)    By any member or members present in person or by proxy and representing not less one tenth of the total voting rights of all the members having paid up equal to not less than one tenth of the total sum paid up on all the shares conferring that right.

(d)    By a member or members holding shares in the Company conferring a right to vote at the meeting being shares on which an aggregate sum has been

16 | P a g e

# Exhibit 8 Part 7

paid up equal to not less than one tenth of the total sum paid up on all the shares conferring that right.

## VOTING OF MEMBERS

**24.** Articles 62 to 73 of table "A" shall apply save that an instrument of proxy may be in the usual standard form or in any other form approved or accepted by the Directors.

## CORPORATION ACTING BY REPRESENTATIVES AT MEETINGS

**25.** Any corporation which is a member of the Company may by resolution of its Directors or other governing body authorize such person as it thinks fit to act as its representative at any meeting of the Company or of class or members of the Company, and the person so authorized shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the Company.

## DIRECTORS

**30**   (a)   unless and until otherwise determined by the Company in a general meeting, the number of Directors shall not be less than two (2) or more than Nine (9).

(b)   So long as the number of Directors does not exceed four, the quorum necessary for the transaction of the business of the Directors shall be two and in all other cases it shall be three.

**31.**   (a)   Unless and until determined by the Company in general Meeting, a Director is not required to hold any share or shares in the Company i.e. no share qualification is required for appointment of a director.

(b)   Each Director shall be paid remuneration at such rate as the Company in general meeting shall direct and each Director shall be entitled to be paid his reasonable travelling expenses incurred by him whilst employed in the business of the Company and any amount fixed by the Board of

DRC-34996 0783

# Exhibit 8 Part 7

Directors according to the circumstances of each case for attending Board Meetings.

## BORROWING POWERS

**32.** The Board of Directors may from time to time at their discretion borrow and secure the payment of any sum or sums of money for the purpose of the Company.

**33.** The Board of Directors may secure the repayment of such moneys in such manner and upon such terms and conditions in all respects as they think fit and in particular subject to article 3 hereof by the issuance of debentures or debenture stock of the Company charged upon all or any part of the property of the Company (both present and future) including the uncalled capital for the time being.

(b)   Article 79 of Table "A" shall apply.

## DISQUALIFICATION OF DIRECTORS

**34.** The office of a Director shall ipso facto be vacated:

(a)   If the director is found to be a lunatic or becomes of unsound mind;

(b)   If the director shall become bankrupt or compound with his creditors;

(c)   If by notice in writing to the Company the director resigns from office;

(d)   If for more than six months, the director is absent without permission of the directors from duly convened meetings of the directors held during that period

## POWERS AND DUTIES OF DIRECTORS

**35.** The powers and duties of directors shall be as described and in accordance with Articles 80 to 87 of Table A..

## ROTATION OF DIRECTORS

**36.** Articles 89 to 97 of Table "A" shall apply

DRC-34996 0784

# Exhibit 8 Part 7

## *PROCEEDINGS OF DIRECTORS*

**37.**  (a)  Article 98 to 106 (both inclusive) of Table "A" shall Apply however a resolution determined without any meeting of Directors but signed and executed by all Directors shall be as valid and effectual as a resolution duly passed at a meeting of the Directors.

(b)  The last sentence of Regulation 98 of part 1 of Table "A" shall not apply to the Company.

## *MANAGING DIRECTOR*

**38.**  Articles 107 to 109 of Table A shall apply.

**39.**  The managing Director shall preside as chairman of any meeting in the absence of a Chairman being appointed by the Board of Directors.

**40.**  Unless otherwise directed by the Board of Directors:

(a)  The day to day management of the business of the Company shall be the responsibility of the Managing Director of the Company who shall have power and authority on behalf of the Company to make all purchases and sales, and enter into all contracts and do all other things usual, necessary or desirable in the management of the affairs and business of the Company or otherwise and from time to time remove or suspend such employees as he shall think proper.;

(b)  All bills of exchange, promissory notes, cheques and negotiable instruments and receipts and discharges and other papers requisite in the ordinary course of business shall be drawn, endorsed, accepted, signed and executed by the Managing Director or by any one or two Directors of the Company appointed for such purpose either by the Managing director or by the Board of Directors as may be the case and the receipts so signed in the usual course of business of the Company or for any moneys, goods or property lent to or payable or belonging to the Company

DRC-34996 0785

# Exhibit 8 Part 7

for the moneys, funds or property which in such receipts shall be acknowledged to be received.; and

(c)    Subject to approval by the Board, the Managing Director is authorized to sub delegate all or any of the powers, authority and discretion bestowed under these Articles.

## CAPITALIZATION OF PROFITS

**44.**    Articles 128(1), 128(2) and 129(1) of Table A shall apply.

## SECRETARY

**45.**    The Secretary shall be appointed by the Directors for such term, at such remuneration and upon such conditions as they may think fit; and any Secretary so appointed may be removed by them.

## SEAL

**46.**    The Directors shall provide for the safe custody of the seal, which shall only be used by the authority of the Directors and every instrument to which the seal shall be affixed shall be signed by a Director and shall be countersigned by the Secretary or by a second Director or by some other person appointed by the Directors for the purpose.

## DIVIDENDS AND RESERVE

**47.**    Articles 114 to 122 of Table "A" shall apply.

## ACCOUNTS

**48.**    Articles 123 to 126 of Table "A" shall apply.

## AUDIT

**49.**    Once at least in every year the accounts of the Company shall be examined and the correctness of the profit and loss account and balance sheet ascertained by an auditor.

**50.**    The Company at each ordinary meeting shall appoint an auditor to hold office until the next ordinary meeting and his

DRC-34998 0786

Exhibit 8 Part 7

appointment, remuneration, rights and duties shall be regulated as provided in section 167 to 170 of the Companies Act.

## NOTICES

51. A notice may be served by the Company upon any member either personally or by sending it through the post in a prepaid letter envelope or wrapper addressed to each member at his registered place of address.

52. Each holder of registered shares whose place of address is not in Uganda, may from time to time notify in writing to the Company an address within Uganda which shall be deemed his registered place of address within the meaning of the preceding clause; if he shall not have named such an address he shall not be entitled to any notices.

53. All notices shall with respect to any registered shares which persons are jointly entitled to, be given to whichever of such persons is named first in the register and notice so given shall be sufficient notice to all the holders of such shares.

54. Any notice sent by post shall be deemed to have been served two weeks after the date on which the letter, envelope or wrapper containing the same is posted, and in proving such service it shall be sufficient to prove that the letter, envelope or wrapper containing the notice was properly addressed and put into the post office.

55. In case where a given number of days' notice extending over any other period is required to be given for the day of service shall not but the day upon which the notice shall expire shall be counted in such number of days or other period.

56. (a)  Save as herein before provided notice of every general meeting shall be given to every member of the Company.

(b) All words in Regulation 134 (a) of part 1 of Table "A" except the words "every member" shall apply to the Company.

## WINDING UP

57. If the Company shall be winding up whether voluntarily or otherwise, the liquidator may with the sanction of an extra

21 | P a g e

# Exhibit 8 Part 7

ordinary resolution, divide among the contributors in specie or kind the whole or any part of the assets of the Company and such division may if so decided by special resolution be otherwise than in accordance with the right of the members.

### *INDEMNITY*

**58.** Every director, manager or officer of the Company or person (whether an officer of the Company or not) employed by the Company as Auditor shall be indemnified out of the funds of the Company against all liabilities incurred by him as such Director, Manager, officer or Auditor in defending any proceedings whether civil or criminal in which judgment is given in his favour, or in which he is acquitted, or in connection with any application under section 285 of the Companies Act in which relief is granted to him by Court.

We, the several persons whose names, addresses and descriptions are hereunto subscribed are desirous of being formed into a Company in pursuance of the Articles of Association and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAME, POSTAL ADRESS AND OCCUPATION OF SUBSCRIBER | SIGNATURES OF SUBSCRIBER |
|---|---|
| AGR INTERNATIONAL LIMITED GLOBAL GATEWAY 8, RUE DE LA PERLE, PROVIDENCE MAHE, SEYCHELLES BUSINESS EXECUTIVE | |
| MOSES SADOORI P.O. BOX 8520 KAMPALA BUSINESS EXECUTIVE | |

DRC-34996 0788

# Exhibit 8 Part 7

Dated at Kampala this ___9th___ Day of February 2018

## WITNESS TO THE ABOVE SIGNATURES:

Signature:

Name in Full:

Postal Address:

Occupation:

*Sharon Tem*
ADVOCATE &
COMMISSIONER FOR OATHS
P. O. Box 6800, Kampala

DRC-34996 0789

Exhibit 8 Part 7

CERTIFIED TRUE COPY

**THE REPUBLIC OF UGANDA**

**IN THE MATTER OF THE COMPANIES ACT CAP 1/2012**

**AND**

**IN THE MATTER OF AFRICAN GOLD REFINERY LIMITED**

URSB

MAR 2020

Yumoine Anita
REGISTRAR

**SPECIAL RESOLUTION**

Minutes of the meeting of African Gold Refinery Limited held on 10th day of January, 2019 at the office of the company, wherein the following were present: Alain Goetz and Cherry Ann Dacdac Mandia. And their being requisite quorum the proceedings of the meeting commenced.

I. The meeting commenced with the appointment of new directors in the company, Mr. Majd Mohammed Abdulaziz Mousa and Mr. Nasser Ibrahim Mousa Al Hindi. As such Mr. Alain Goetz ceases to be a director in the company.

II. By unanimous approval it was agreed that his name be deleted to reflect the current directors in the company for the efficient management of the company.

III. There being no other business the meeting was closed with a vote of thanks to the chair.

DATED at Kampala this 10th day of January 2019

**ALAIN GOETZ**
**DIRECTOR**

**CHERRY ANN DACDAC MANDIA**
**DIRECTOR**

Drawn & filed by
Tem Advocates & Solicitors
Plot 11A, Acacia Avenue Kololo
P.O. Box 6800 Kampala.

BRC-34990-0790

Exhibit 8 Part 7

# Annex
# DD

DRC-34996 0791

# Exhibit 8 Part 7

## CERTIFICATE OF AUTHENTICITY

I, the undersigned **Mr. Sammy Freminot** Notary Public by authority of Government duly admitted and sworn and practising at Anse Royale, Mahé, Republic of Seychelles do hereby certify in respect of the attached originals listed below pertaining to the company **AGR International Ltd.**, Certificate Nº: **200304,** as follows:

- ➢ Certificate of Incumbency dated 7th day of July 2021, is signed by Ms. Rea Barreau who is known to me;

- ➢ Certificate of Good Standing dated 7th day of July 2021, issued by the Financial Services Authority;

**IN FAITH AND TESTIMONY WHEREOF** an Act being required, I have granted the same under my hand and seal of office to serve and avail as occasion may require.

**THUS DONE AND PASSED** at Victoria on this 19th day of July 2021.

. Sammy Freminot
**DTARY PUBLIC**

4996 0792

Exhibit 8 Part 7

## APOSTILLE

### (Convention de la Haye du 5 Octobre 1961)

1.  Country:    **REPUBLIC OF SEYCHELLES**

    **This public document**

2.  has been signed by    **S. FREMINOT**

3.  acting in the capacity of    **NOTARY**

4.  bears the seal/stamp of    **SAMMY A FREMINOT**

    **NOTARY PUBLIC, MAHE, REPUBLIC OF SEYCHELLES**

### Certified

5.  at    **VICTORIA**        6.    **19TH JULY 2021**

7.  by    **J. ESTICOT, REGISTRAR, SUPREME COURT**

8.  No.   **9567  OF 2021**

9.  Seal/Stamp        10. Signature

DRC-34996 0793

# Exhibit 8 Part 7

## CERTIFICATE OF INCUMBENCY

## AGR International Ltd.

Company Number 200304

### AAA International Services Ltd, hereby certifies that:

1. The above company has been duly incorporated under the International Business Companies Act 2016 on the 6th day of December 2017.

2. The Registered Agent of the company is AAA International Services Limited with effect from 6th day of December 2017.

3. The Registered Office of the company is situated at House of Francis, Room 303, Ile Du Port, Mahe, Seychelles.

4. The Authorised Capital of the Company is US$150,000.00 divided into 150,000 shares of US$1.00 each.

5. We keep the registers of the company at our offices at House of Francis, Room 303, Ile Du Port, Mahe, Seychelles.

6. The following person was appointed Director of the company by Resolution of Subscriber in Writing dated the 7th day of June 2021:

    **MR. PUTHEN PURAYIL THAMPAN SHINU CHEEKKULATHU**
    Address:  Bldg. 295, Road 5708, Bap Albahrain Avenue, Central Manama 0304, Capital Governorate, Bahrain

7. We have no records whatsoever in our office which show any further appointments or changes in the Board of Directors.

8. The shareholder named below was issued Registered Shares by Resolution of Director in Writing dated the 7th day of June 2021:

    **Certificate No. 2**    for 150,000 shares of US$1.00 each issued to
    **MR. PUTHEN PURAYIL THAMPAN SHINU CHEEKKULATHU**

9. In so far as is evidenced by the documents filed with the Registrar, the Company is in good legal standing.

*Given at Victoria, Seychelles on this 7th day of July 2021.*

**AAA International Services Ltd**
herein represented by Ms. Rea Barreau
Authorised Signatory

DRC-34996 0794