Exhibit 8 Part 7

# Republic of Seychelles

**INTERNATIONAL BUSINESS COMPANIES ACT, 2016**
**(Act 15 of 2016)**

**Certificate of Good Standing**

## AGR International Ltd.

**Company Number 200304**

**Incorporated On: 6th December 2017**

This is to certify that:

1. The above company has been duly incorporated under the International Business Companies Act, 2016.

2. The name of the company is still on the Register of the International Business Companies and the Company has paid all fees, license fees and penalties due and payable under the provisions of the International Business Companies Act, 2016.

3. The Company has not submitted, to the Registrar, Articles of Merger or Consolidation that have not yet become effective.

4. The Company has not submitted, to the Registrar, Articles of Arrangement that have not yet become effective.

5. The Company is not in the process of being wound-up or dissolved.

6. No proceedings have been instituted to strike the name of the company off the said Register.

7. In so far as is evidenced by the documents filed with the Registrar, the Company is in good legal standing.

**Given at Victoria, Seychelles on this 7th day of July 2021**

REGISTRAR OF INTERNATIONAL BUSINESS COMPANIES

C-34996 0795



# Exhibit 8 Part 7

**Date:** 7th June 2021

**To:**

Whom It May Concern
AAA International Services Limited
Victoria Seychelles

RE: RESIGNATION LETTER

Dear Sir / Madam,

Following the transfer of all my shares that I previously held in AGR International Ltd ("the Company") to Mr. Puthen Purayil Thampan Shinu Cheekulathu and therefore having ceased to have any share or ownership in the Company, this is to formally inform you that I have decided to and do hereby resign as Director of AGR International Ltd effective the 7th day of June 2021.

All powers and responsibilities to run the company are now acquired by the continuing directors and therefore with effect from the date of this resignation I shall not be responsible for any undertakings, duties, liabilities, responsibilities whatsoever and howsoever relating to AGR.

I acknowledge that I have no claim whatsoever against the company (and or any of its subsidiaries) but to the extent that any such claim exists or may exist I irrevocably waive such claim and release the company (and or any of its subsidiaries) from liability whatsoever in any respect.

It was great serving as a director and I sincerely wish the company continuing success in the days ahead.

Kind Regards,

..................................................

Alain Goetz

DRC-34996 0796

# Exhibit 8 Part 7

## Declaration of Beneficial Ownership

TO: AGR INTERNATIONAL LTD

Dated: 07 JUNE 2021

**RE: Declaration of Beneficial Ownership**

I, the undersigned, hereby confirm that I have become a beneficial owner (the "BO") as defined in the Beneficial Ownership Act, 2020 in respect of the above legal person or legal arrangement.

Therefore, I hereby provide you with the below particulars as required under section 10(1) of the Act, which I confirm to be true and correct:

1. Name: PUTHEN PURAYIL THAMPAN SHINU CHEEKULATHU
2. Residential address: FLAT 511 SBK BLDG, MUHAISNAH 4 FT511 56D ST. PO BOX 47888, DUBAI, UAE
3. Service address: FLAT 511 SBK BLDG, MUHAISNAH 4 FT511 56D ST. PO BOX 47888, DUBAI, UAE
4. Nationality: INDIAN
6. Date of birth: [redacted]
7. Date on which the person became the BO: 07 JUNE 2021
8. Particulars of the BO's beneficial interest (tick at least one point):

■ Number and class of shares held (>10%): «Share Total» registered shares, or

☐ Exercise (directly or indirectly) ultimate control over more than 10% of total voting rights of members in the legal person, or

☐ Is entitled (directly or indirectly) to appoint or remove a majority (>10%) of the directors of the legal person, or

☐ Is otherwise entitled to exercise or actually exercise control over the legal person or legal arrangement or its management.

☐ Others: (Specify type or nature of the interest held, numerical value of interest held or management position held) ____________________

____________________

Details (name, residential address, service address, date of birth and nationality) of any person holding the interest on behalf of the beneficial owner and the particulars and details of the interest held by each nominee:

____________________

____________________

I, PUTHEN PURAYIL THAMPAN SHINU CHEEKULATHU, am cognizant that enforcement actions that may be taken against me pursuant to section 10 (7) of the Beneficial Ownership Act, 2020, if it is found that I provided false or misleading information in this declaration.

Yours sincerely,

[signature]
Signature with date 07 June 2021
PUTHEN PURAYIL THAMPAN SHINU CHEEKULATHU

Exhibit 8 Part 7

# Annex
# EE

DRC-34996 0798



Exhibit 8, Part 7

عقد بيع حصص وملحق تعديل عقد التأسيس

**Share Transfer Agreement and Amendment to the Memorandum of Association**

**Legal form: Limited Liability Company(LLC)**

الشكل القانوني : ذات مسئولية محدودة

**Trade Name: P G R GOLD TRADING L.L.C**

الإسم التجاري : بي جي ار لتجارة الذهب ش.ذ.م.م

**License No.: 689308, issued on 23/05/2013**

رقم الرخصة: 689308 والصادرة بتاريخ 23/05/2013

**This contract has been concluded on Thursday 07/05/2020 by and between the following referred hereinafter parties:**

حرر هذا العقد في يوم الخميس الموافق 07/05/2020 من قبل :

> UV< WUXP YXZZX[ X\]^ _`abcd XVef ghaVebci `ebaj`ek ljkdcV jm neiinjVb [j< OJPQIRHGE fjV` j`2 DEFGHFEI Vciadc`b a` opfea^_`abcdXVef ghaVebci

!"# #$% &'() *+,-( . /#0+1' 2 3-%4)5' . #0675' 89: ;%, #+: <=. 3-?#75' /#0+@' A?= .AB !-C+ DEFGHFEIJD =K-+5' L-#0M N T=,M+5'

> Ui < UX UgP t\ UW[uX t X ZgvXO_P]^ Olakanna` `ebaj`ek^ ljkdcV jm neiinjVb [j< nGRsDRJJ fjV` j` 2 GHFEGFEIRG^ Vciadc`b a` opfeabcdXVef ghaVebci

!"# #$% &'() *+,-( . ;-?9$5' 2 3-%4)5' . q#(?0r-% 0-0)4(+ *-+ T+M+5' 3-?#75' /#0+@' A?= .AB !-C+ GHFEGFEIRG =K-+5' L-

> UVX\X][ xPX[vW]Z y]y]X[g uW gz{ ^| cl aph `ebj`ek ljkdcV jm neiinjVb [j< gOIRQGR fjV` j`2 DsFGsFEIJ Vciadc`b a` opfea^_`abcdXVef ghaVebci

!"# #$% &'() *+,-( . 0r-)9? 2 3-%4)5' . &M-() ;0-$-B w-(r4'#B ;1 T+M+5' 3-?#75' /#0+@' A?= .AB !-C+ DsFGsFEIJQ =K-+5' L-#0M

**Preamble**

مقدمة العقد

Whereas e kahabcdiability company lei fcc` cibefkailcd p`dcV blc bVedc`ehc O u P uW\o zPXo][u \ <\v a` accordance with blc hchjVe`dph jm association, duly ebbcibcdby blc Notary Public p`dcV [j DGEIFEFGRHsEebc DDFGQFDGEI

تأسست شركة بي جي ار لتجارة الذهب ش.ذ.م.م بموجب عقد التأسيس المصدق م ; الكاتب العدل برقم : 2019/1/108341 بتاريخ: 22/05/2019

>The parties wish to Xdd OeVb`cV

- يرغب الأطراف في اضافة شريك

- The parties wish to Remove Partner

- يرغب الأطراف في انسحاب شريك

- The parties wish to Change Manager/Wfficer

- يرغب الأطراف في تغيير المدير

Accordingly blc OeVbachave e}Vccd j` blc following bcVhi and conditions:

إتفق الأطراف على الاحكام و الشروط التالية

**Article (1):** OVcehfkc
zlc previous nVcehfkc ilekk fc considered ei e` a`bc}Ve part of this annexure.

المادة (1): تمهيد
يعتبر هذا التمهيد جزء لا يتجزأ من هذا الملحق.

DRC-34996 0799 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)





GOVERNMENT OF DUBAI

Exhibit 8 Part 7
DUBAI ECONOMY

**Article (2): OeVbaci**

المادة (2): الأطراف

Sold, dropped, and relinquished:

باع و أسقط و تنازل كل من:

> UVXIX][ xPX[vW]Z y]y]X[g uW gz{^| cl} ph `ebj `eK ljkdcV jm neiinjVb [j< gOIRQGR fjV` j`2 DsFGsFEIJ Vciadc`b a` opfea^_`abcdXVef ghaVebci

!"# #$% &'() *+,-( . 0r-)9? 2 3-%4)5' . &M-() ;0-$-B w-(r4'#B ;1 T=,M+5' 3-?#75' /'#0+@' A?= .AB !-C+ DsFGsFEIJQ =K-+5' L-#0

lei ijkd^ bVe`imcVVcd`d eiia}`cd ekfheVbjm lai FlcVFa ileVci xpkk^VcnVcic`ba`} (49)% jm blc company capital mj' the total amount of (AED 147000 )

عن كل من حصته (49)% بقيمة (147000) درهم

zlc above hc`baj`cd OeVb`cWhereby declares bleblc fatbei received ekklai dpci^ Va}lbi e`d dividends Vc}eVda`} blc above hc`baj`cd ijkd ileVci e`d lai ia}`ebpVc a` blai e}Vcchc`b will fc considered confirmation jm acceptance without any other receipt voucher therefore.

يقر بأنه إستلم كافة حقوقه ونصيبه من الأرباح عن الحصص المباعة ويعتبر توقيعه على العقد بمثابة اقرار منه بالقبض و عوضا عن اي ايصال اخر

zo the new party2

إلى الطرف الجديد :

> Ui < UX UgP t\ UW[uX t X ZgvXO_P}^ Olakanna`c `ebj`ek^ ljkdcV jm neiinjVb [j< nGRsDRJJe fjV` j` 2 GHFEGFEIRG^ Vciadc`b a` opfeabcdXVef ghaVebci

!"# #$% &'() *+,-( . ;-?9$5' 2 3-%4)5' . q#(?0r-% 0-0)4(+ *-# T=M+5' 3-?#75' /'#0+@' A?= .AB !-C+ GHFEGFEIRG =K-+5' L-

Shares percentage (49)%

نسبة الحصص (49)%

zlc new acquiring OeVb`cWekk replace blc ickka`} party a` blc capital ileVc jm blc company bj blc extent jm blc acquiring ileVci< zlc iehc ilekk fc ennkacdei well mjVab Va}lbi e`d jfka}ebaj`i a` blc company within blc kahabjm blc ijkd ileVci<

يحل الطرف الجديد محله في نصيبه من رأس المال بالقدر الذي بيع إليه وفي جميع حقوقه و إلتزاماته في الشركة في حدود الحصص المباعة

**Article (3):** The Share Capital of the Company

المادة (3): رأس المال

zlc capital jm blc Company ehjp`bi bj oaVlehi NoYZ HGGGGGoaVlehi only, divided a`bj NHGGGileVci a` cash, blc value jmeach ileVc fca`} oaVlehi ehjp`bi bj NoYZ EGGG zlc capital jmblc Company ai divided ehj`} blc OeVb`cVa` the following manner:

حدد رأس مال الشركة بمبلغ (300000) درهم موزعة على (300) حصة، قيمة كل حصة (1000) درهم وجميعها حصص (نقدية)، موزعة بين الشركاء على النحو التالي:

> UV< NWUXP YXZZX[ X\] S NEQSileVci ^ ehjp`ba`} bj (153000), which represent (51%) of the share capital

- السيد. (عمر حسن على العطار)، (153) حصة بقيمة (153000) درهم بنسبة (%51) من رأس المال*

> Ui <NUX UgP t\ UW[uX t X ZgvXO_P] S (147SileVci ' ehjp`ba`} bj (147000)^which VcnVcic`b(49%) jmblc ileVc capital

- السيدة. (ماماريل مونجايا سيكابورى)، (147) حصة بقيمة (147000) درهم بنسبة (%49) من رأس المال*

zlc value jmblc ileVci lei fcc` fully neadpn a` cash, e`d has been deposited in the bank account of the Company

ان قيمة الحصص النقدية قد دفعت بالكامل وقد تم إيداعها في حساب الشركة لدى المصرف.


حكومة دبي
GOVERNMENT OF DUBAI

Exhibit & Part 7
DUBAI ECONOMY

**Article (4): OPWx]zZ X[o \WZZgZ o]ZzP]|_z]W[ N\<\<v·**

المادة (4): توزيع الأرباح و الخسائر (شركة ذات مسؤولية محدودة)

zlc nVjmabe`d kjiici ilekk fc daibVafpbcdbetween blc Partners in the following proportion:

يتم توزيع الأرباح و الخسائر بين الشركاء حسب النسبة التالية:

> Ui<UX UgP t\ UW[uX t X ZgvXO_P] 80%

- السيدة. ماماريل مونجايا سيكابورى 80%

> UV₩UXP YXZZX[ X\] 20%

- السيد. حمر حسن على العطار 20%

**Article (5): Management of the Company**

المادة (5): إدارة الشركة

Company Managers :

مدراء الشركة :

> Ui<UX UgP t\ UW[uX t X ZgvXO_P]

q#(?0r-% 0-0)4(+ *-#-0+0+ <T

zlc OeVb`cVi have e}Vccd bleb blc he`e}chc`b jm blc Company shall be entrusted to:

إتفق الشركاء على:

> Xdd Ue`e}cV Ui< UX UgP t\ UW[uX t X ZgvXO_P] ' Nationality2 Olakanna`di e`d OeiinjVb NnGRsDRJ8oebc jm |aVbl GHFEGFEIRGchfcV opfea <O JQIEI _`abcd XVef ghaVebci

- إضافة المدير السيدة. ماماريل مونجايا سيكابورى ، الجنسية : الفلبين ، ويحمل جواز ص.ب .ي?= AB !-C+ GHFEGFEIRG =K-+5' L-#0M NnGRsDR T=,M+5' 3-?#75' /#0+@' JC

> Remove he`e}cV UV< X\X][ xPX[vW]Z y]y]X[g uWgz{^ |ck}aph `ebaj`ek e`d ljkdcV jm OeiinjVb [j · gOIRQGRJ^fjV` j` DsFGsFEIJQ/ciadc`bjm opfea^ XddVcii2 P.O. Box No. 48800, _`abcdXVef ghaVebci

- حذف المدير السيد. الان فرانكويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز 48800 ص.ب .ي?= AB !-C+ DsFGsFEIJQ =K-+5' L-#0M NgOIRC T=,M+5' 3-?#75' /

zlc ennja`bhc`b jm blc Ue`e}cV RUe`e}cVi ilekk fc mjVe period of 5 year(s) ibeVba`} mVjh blc debc jMc}aibVebajmblc Company a` blc Commercial Pc}aibcV^bj fc automatically renewable mjViahakeVhcVajdi p`kcii otherwise ai e}Vccd pnj` < zlc Ue`e}cV RUe`e}cVi whose bc`pVc lei expired may fc Vcennja`bcd<zlc Ue`e}cVi ilekk fc subject bj daihaiiek a` accordance with blc Commercial vjhne`aci Law jV by e decision jm blc uc`cVek Assembly according bj the above mentioned majority.

يكون تعيين المدير/المديرين، لمدة 5 سنة/سنوات تبدأ من تاريخ تسجيل الشركة في السجل التجاري. تجدد تلقائيا لمدد مماثلة ما لم يتفق على خلف ذلك. ويجوز إعادة تعيين المدير / المديرين الذين انتهت مدة تعيينهم ويكون المديرون خاضعين للعزل طبقا لقانون الشركات التجارية أو بقرار من الجمعية العمومية حسب الغلبية المذكورة.

zlc Ue`e}cV RUe`e}cVi ilekk have ekkblc necessary powers bj he`e}c e`d ia}` a` blc `ehc jm blc Company e`d j` ab fclekm bj carry jpb ekkblc work required by abi npVnjici · Such powers ilekk fc subject e`d kahabcbj powers }Ve`bcd by Law, by blai hchjVe`dph jm association jV by blc Vcijkpbaj`i jm blc uc`cVek Assembly of the Company<

يكون للمدير/المديرين، كافة الصلحيات الضرورية لإدارة الشركة والتوقيع نيابة عنها والقيام بجميع العمال التي تقتضيها أغراضها ول يحد من هذه السلطة إل ما نص عليه القانون أو هذا العقد أو قرارات الجمعية العمومية للشركة.

The powers of the Manager include:

تتضمن سلطات المدير ما يلي:

**Contract Number** EGJRRDQ **Print Date** 07/05/2020 تاريخ الطباعة Oe}c H jm J

DRC-34996 0801 Sتعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)


حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 8 Part 7
DUBAI ECONOMY

| | |
|---|---|
| >zj VcnVcic'b blc Company fcmjVc blc Government ocneVbhc'bi^ including blc ocneVbhc'b jm Economic Development^ Municipalities^ gbaiekeb op^ Electricity e'd WebcV XpbljVabaci^ \e'd ocneVbhc'b^ vlehfcVi jm Commerce e'd Industry, Ministry jm Yphe' Resources e'd Emiratization^ uc'cVek Directorate jm Residency e'd xjVca}'cVi XmeaVi^Vefic ocneVbhc'b^ Pjed e'd zVe'injVb Authority^ Police^ vjpVbi^ Ojibek^ XaVnjVbi^OjVbi^ ZcenjVbi^ vpibjhi^ Public Persecution, e'd ekkjblcV icha jmficial Government ocneVbhc'bi^ ha'aibVace'd a'ibabpbaj'ie'd bj ia}' ekkdocuments, nencVi e'd contracts with jV fcmjVc blc abovementioned authorities. | - يقوم بتمثيل الشركة أمام الدوائر الحكومية، دائرة التنمية الاقتصادية، البلديات، اتصالات، دو، هيئات الكهرباء والماء، دائرة الأراضي والأملاك، غرف T#O والصناعة، وزارة الموارد البشرية والتوطين، الادارة العامة للإقامة وشؤون الأجانب، دائرة المرور، هيئة الطرق والمواصلات، الشرطة، المحاكم، البريد، المطارات، الموانئ، الموانئ البحرية، الجمارك، النيابة العامة، كافة الدوائر الشبه الحكومية الأخرى، الوزارات، المؤسسات، والتوقيع على كافة المستندات والأوراق والعقود مع أو أمام الجهات المذكورة. |
| >zj ennja'b e'd remove lawyers e'd bj makjV dcmc'd any ipabi fcmjVc ekk AE courts at all levels. | - أن يقوم بتعيين أو إلغاء المحامين وأن يرافعوا أو يدافعوا أمام محاكم دولة الإمارات العربية المتحدة بمختلف درجاتها وأية دعاوى أمام المحاكم بكافة المستوQ/> |
| >zj ennja'b e'd remove employees e'd consultants e'd fix blcaV dpbaci e'd Vchp'cVebaj'i< | - يقوم بتعيين أو إنهاء خدمة المستخدمين والمستشارين وأن يحدد واجباتهم ومكافآتهم. |
| >zj ia}' ekkbc'dcVi^ contracts^ documents j' fclekm jm blc company. | - أن يقوم بالتوقيع على كافة العطاءات والعقود والمستندات نيابة عن الشركة. |
| >zj authorize e'd sanction ekkvouchers jmfjj§i jm account and payment of all expenses. | - أن يعتمد ويصادق على السندات للدفاتر الحسابية ولدفع كافة المصروفات. |
| >zlc iekc e'd purchase jm cars e'd blc Vc}aibVebaje'd renewal jm cars a' blc 'ehc jm blc cibefkailhc'b e'd blc disposal of any car owned | - القيام ببيع وشراء السيارات وتسجيل السيارات وتجديدها باسم المنشاة والتصرف بأي سيارة مملوكة لها بدولة الامارات العربية المتحدة بكافة اوجه التصرف والبيع وحق الاتفاق على الثمن وقبضه وتجديد ملكيتها وقيادتها داخل وخارج الدولة وتوليها بالصيانة وتأمينها وانهاء اجراءاتها الجمركية وسداد الرسوم والغرامات وتسفيرها وتوكيل الغير للشحن والقيادة وتسجيل وبيع وشراء ارقام السيارات وعمل ما يلزم في هذا الخصوص، وتراخيص سيارات المنشأة ودفع الرسوم المقررة وصرف بواقيها وعمل ما يلزم في هذا الخصوص. |
| >zo register the value added tax and to provide VctpV i bj b c xcdcVekzax Authority e'd bj be§c^dcbcVha'ce'd apply blc company's policy | - القيام بتسجيل ضريبة القيمة المضافة وتقديم العوائد لدى الهيئة الإتحادية للضرائب و إتخاذ و تحديد و تطبيق سياسة الشركة |
| >Incorporation e'd VcnVcic'bebaj' jm blc company ei e neVb'c'ki' blc cibefkailhc'b jm any company e'd ia}'a'} blc UchjVe'dph jmAssociation mjVcibefkaila'} ekktypes jmnew companies e'd contracts jm blc service e}c'bi a' ek Economic ocneVbhc'bi jV notary public jV specialized epbljVabaci a'iadc e'd jpbiadc blc _Xg< | - إدراج وتمثيل الشركة كشريك في تأسيس أي شركة والتوقيع على عقود تأسيس شركات جديدة أو فروع جديدة بجميع أنواعها وعقود وكيل الخدمات لدى جميع الدوا#! الاقتصادية أو الكاتب العدل او أمام الجهات المختصة وذات العلاقة في دولة الإمارات العربية المتحدة أو خارجها. |
| >zlc Va}lbbj ickk e'd fjV eiia}' any ileVci owned by blc company a' any jblcV company, whether bj ickk abbj blaV neVbacjV bj blc company abickre'd receive blc payment YcRlc lei blc Va}lbbj buy j' fclekm jm blc company any ileVci owned by jblcV company, whether blcic ileVci eV owned by blc company abickjiV blc property jm blaVdneVbac zlc uc'cVek Ue'e}cV ekij lei blc Va}lbbj increase e'd reduce blc capital jm blc company e'd blc companies a' which blc company ai e ileVcljkdcV which ai ennkacda' ek Economic ocneVbhc'bi jV notary public jV specialized epbljVabaci a'iadc e'd jpbiadc blc _Xg< | - له الحق في البيع والتنازل عن أي أسهم أو فروع مملوكة للشركة في أي شركة سواء البيع للغير أو الشركة وقبض الثمن. وله الحق في شراء باسم الشركة لأي أسهم في أي شركة سواء كانت هذه الأسهم ملك الشركة أو ملك الغير وله الحق في زيادة وتخفيض رأس المال للشركة والشركات التي تكون للشركة أسهم فيها وذلك لدى جميع الدوائر الاقتصادية أو الكاتب العدل او أمام الجهات المختصة وذات العلاقة في دولة الامارات العربية المتحدة أو خارجها. |

**Contract Number** EGJRRDQ **Print Date** 07/05/2020 تاريخ الطباعة Oe)c s jm J

DRC-34996 0802 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية S

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)



GOVERNMENT OF DUBAI

Exhibit 8, Part 7
DUBAI ECONOMY

>zlc }c`cVek he`e}cV lei blc Va}lb bj Vcia}` mVjh blc company e`d blc companies a` which blc company ai e ileVcljkdcV e`d bj ia}` blc procedures mj\blc cancelation jr blc zVedc License e`d blc procedures jm liquidation with various government dcneVbhc`bi including blc notary public using the name of the cj h ne` y j Ve` y i pf i ala Vy cj h ne` y a ekkEconomic ocneVbhc`bi jV notary public jV specialized epbljVabaci a`iadc e`d jpbiadc blc _Xg<

- له الحق في الخروج من الشركة والشركات التي تكون للشركة أسهم فيها والتوقيع على إجراءات الحل والتصفية مع مختلف الدوائر الحكومية والكاتب العدل مستخدما اسم الشركة أو شركة تتبعها وذلك لدى جميع الدوائر الاقتصادية أو الكاتب العدل أو أمام الجهات المختصة وذات العلاقة في دولة الامارات العربية المتحدة أو خارجها.

>zj bVe`imcVblc iekeVacijm workers e`d emplyees bj blc fe`§i

- تحويل رواتب العمال والموظفين على البنوك والمصارف والتحويلات لدى كافة البنوك العاملة بالدولة

>zj nkcd}c^ charge^eiia}` ^hjVb}e}c jV otherwise bVe`imc hypothesis jV deliver ei security any jm blc company`i movable or immovable property.

- رهن أي من الممتلكات المنقولة أو غير المنقولة للشركة وارتهانها أو التنازل عنها أو نقلها أو تكبيلها بالقيود أو تسليمها بأي صورة أخرى كضمان؛

>zj VcneVcic`b blc compnay fcmjVc ekkcourts e`d quasi > Judicial XpbljVabacia` blc _`abcd XVef ghaVebci cablcVei e dcmc`de`b jV ei e nkae`bamwith mpkauthority bj ennja`b advocate jV kc}ekcounsel a` blc _`abcdXVef ghaVebcimj\blc npVnjic jm protecting blc a`bVcibi jm blc company e`d bj revoke such appointment

- القيام بتمثيل الشركة أمام كافة المحاكم والسلطات شبه القضائية في دولة الإمارات العربية المتحدة سواء كمدعى عليها أو مدعية مع كامل الصلاحية في تعيين أي محام أو مستشار قانوني في الإمارات العربية المتحدة لغرض حماية مصالح الشركة وإلغاء ذلك ;--7M5'

>zj ennja`b blc eVfabVebjV case jm any dainpbci with including fpb `jb kahabcdbj clients, consultants^ customers ipnnkaci e`d ekkblaVdparty e`d bj commit blc company bj eVfabVebaj ia}` e}Vcchc`bi including eVfabVebajclauses/ appint arbitrators and in general represent the company

- تعيين محكم في حالة وجود أي نزاعات على سبيل المثال لا الحصر مع العملاء والمستشارين والعملاء الموردين وجميع الأطراف الأخرى وإلزام الشركة بالتحكيم وتوقيع الاتفاقيات بما في ذلك مواد التحكيم وتعيين المحكمين وبصورة عامة تمثيل الشركة في كافة أمور التحكيم ذات الصلة.

The Director's Powers Related to Banking zransactions2

الصلاحيات البنكية:

zj 2

أن يقوم:

>UX UgP t\ UW[uX t X ZgvXO_P] NUe`e}cVS

N#-=+S q#(?0r-% 0-0)4(+ *-#-

can jnc` e`d close fe`§ accounts a` blc `ehc jm blc company e`d bj jncVebc such fe`§ accounts e`d ia}` cheques.

بفتح وإقفال الحسابات البنكية باسم الشركة وأن يقوم بتشغيل وإدارة هذه الحسابات وتوقيع الشيكات/>

XkkjblcV provisions jmblc UchjVe`dph jmAssociation ilekk Vchea` unchanged e`d ilekk apply bj blc extent blebthey dj not contravene the provisions of this Annex

تبقى باقي مواد وأحكام وشروط عقد التأسيس كما هي دون تعديل ويسري العمل بها بين المتعاقدين الى المدى الذي لا يخالف أحكام هذا العقد>

>zlc Ue`e}cV ai jfka}cd bj c`bcV blai ehc`dhc`b a` blc commercial register at the competent authority.

- على مدير الشركة قيد هذا التعديل في السجل التجاري لدى السلطة المختصة.

>zlai contract ilekk fc bVcebcdVcede`d construed ei e` integral part of the memorandum of association.

- يعتبر هذا العقد جزءا لا يتجزأ من عقد التأسيس ومكملا له ويقرأ ويفسر معه

][ WITNESS WHEREOF, blc OeVbacihave ia}`cd blai UchjVe`dph j` Thursday07/05/2020

وإشهادا على ما تقدم وقع الأطراف على هذا العقد في يوم الخميس الموافق 07/05/2020

**Contract Number** EGJRRDQ **Print Date** 07/05/2020 تاريخ الطباعة Oe}c Q jm J

DRC-34996 0803 Sتعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)



GOVERNMENT OF DUBAI

Exhibit 8, Part 7
DUBAI ECONOMY

> UV¥WUXP YXZZX[ X\] #0675' 89: ;%, #+: <=-%5'

> Ui<UX UgP t\ UW[uX t X ZgvXO_P] q#(?0r-% 0-0)4(+ *-#-0+0+ <T=

> UV< X\X][ xPX[vW]Z y]y]X[g uWgz{ &M-() ;0-$-B w-(r4'#B ;1' <=-%

**Parties Signature** توقيع الأطراف

> X\X][ xPX[vW]Z y]y]X[g uWgz{ &M-() ;0-$-B w-(r4'#B>;1

>WUXP YXZZX[ X\] #0675' 89: ;%, #+>

>UX UgP t\ UW[uX t X ZgvXO_P] q#(?0r-% 0-0)4(+ *-#>0+

**Contract Number** EGJRRDQ **Print Date** 07/05/2020 تاريخ الطباعة Oe}c J jm J

DRC-34996 0804 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)

Exhibit 8 Part 7

# Annex FF

DRC-34996 0805





حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 8 Part 7
اقتصادية دبي
DUBAI ECONOMY

عقد بيع حصص وملحق تعديل عقد التأسيس

**Share Transfer Agreement and Amendment to the Memorandum of Association**

| | |
|---|---|
| **Legal form: Limited Liability Company(LLC)** | الشكل القانوني : ذات مسئولية محدودة |
| **Trade Name: PREMIER GOLD REFINERY L.L.C** | الإسم التجاري : بريمير لتصفية الذهب ش.ذ.م.م |
| **License No.: 716708, issued on 07/09/2014** | رقم الرخصة: 716708 والصادرة بتاريخ 07/09/2014 |
| **This contract has been concluded on Thursday 07/05/2020 by and between the following referred hereinafter parties:** | حرر هذا العقد في يوم الخميس الموافق 07/05/2020 من قبل : |
| - Mr. OMAR HASSAN ALI, United Arab Emirates national, holder of passport No. P6R598301, born on: 21/03/1962, resident in Dubai, United Arab Emirates | - السيد. عمر حسن على العطار ، الجنسية : الامارات ، ويحمل جواز سفر رقم (P6R598301) تاريخ الميلاد 21/03/1962 مقيم في، دبي الإمارات العربية المتحدة |
| - Ms. MA MERYL MONGAYA SECAPURI, Philippines national, holder of passport No. p0842866a, born on: 03/10/1980, resident in Dubai, United Arab Emirates | - السيدة. ماميريل مونجايا سيكابورى ، الجنسية : الفلبين ، ويحمل جواز سفر رقم (p0842866a) تاريخ الميلاد 03/10/1980 مقيم في، دبي الإمارات العربية المتحدة |
| - Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national, holder of passport No. EP985086, born on: 24/04/1965, resident in Dubai, United Arab Emirates | - السيد. الان فرانكويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز سفر رقم (EP985086) تاريخ الميلاد 24/04/1965 مقيم في، دبي الإمارات العربية المتحدة |
| **Preamble** | مقدمة العقد |
| Whereas a limited liability company has been established under the trade name PREMIER GOLD REFINERY L.L.C in accordance with the memorandum of association, duly attested by the Notary Public under No 2017/1/135500 date 13/06/2017 | تأسست شركة بريمير لتصفية الذهب ش.ذ.م.م بموجب عقد التأسيس المصدق من الكاتب العدل برقم : 2017/1/135500 بتاريخ: 13/06/2017 |
| - The parties wish to Add Partner | - يرغب الأطراف في اضافة شريك |
| - The parties wish to Remove Partner | - يرغب الأطراف في انسحاب شريك |
| - The parties wish to Change Manager/Officer | - يرغب الأطراف في تغيير المدير |
| Accordingly the Parties have agreed on the following terms and conditions: | إتفق الأطراف على الاحكام و الشروط التالية |
| **Article (1):** Preamble<br>The previous preamble shall be considered as an integral part of this annexure. | المادة (1): تمهيد<br>يعتبر هذا التمهيد جزء لا يتجزأ من هذا الملحق. |





| Article (2): Parties | المادة (2): الأطراف |
|---|---|
| Sold, dropped, and relinquished: | باع و أسقط و تنازل كل من: |
| - Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national, holder of passport No. [REDACTED] born on: [REDACTED] resident in Dubai, United Arab Emirates | - السيد. الان فرانكويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز سفر رقم [REDACTED] تاريخ الميلاد [REDACTED] مقيم في، دبي الإمارات العربية المتحدة |
| has sold, transferred and assigned all/part of his/her/its shares Full, representing (49)% of the company capital for the total amount of (AED 147000 ) | عن كل من حصته (49)% بقيمة (147000) در هم |
| The above mentioned Partner hereby declares that he/it has received all his dues, rights and dividends regarding the above mentioned sold shares and his signature in this agreement will be considered confirmation of acceptance without any other receipt voucher therefore. | يقر بأنه إستلم كافة حقوقه ونصيبه من الأرباح عن الحصص المباعة ويعتبر توقيعه على العقد بمثابة اقرار منه بالقبض وعوضا عن اي ايصال اخر. |
| To the new party: | إلى الطرف الجديد : |
| - Ms. MA MERYL MONGAYA SECAPURI, Philippines national, holder of passport No. [REDACTED] born on: [REDACTED] resident in Dubai, United Arab Emirates | - السيدة. ماميريل مونجايا سيكابوري ، الجنسية : الفلبين ، ويحمل جواز سفر رقم [REDACTED] تاريخ الميلاد [REDACTED] مقيم في، دبي الإمارات العربية المتحدة |
| Shares percentage (49)% | نسبة الحصص (49)% |
| The new acquiring Partner shall replace the selling party in the capital share of the company to the extent of the acquiring shares. The same shall be applied as well for its rights and obligations in the company within the limits of the sold shares. | يحل الطرف الجديد محله في نصيبه من رأس المال بالقدر الذي بيع إليه وفي جميع حقوقه و إلتزاماته في الشركة في حدود الحصص المباعة |
| Article (3): The Share Capital of the Company | المادة (3): رأس المال |
| The capital of the Company amounts to Dirhams (DHS 300000) Dirhams only, divided into (300) shares in cash, the value of each share being Dirhams amounts to (DHS 1000 ). The capital of the Company is divided among the Partners in the following manner: | حدد رأس مال الشركة بمبلغ (300000) در هم موز عة على (300) حصة، قيمة كل حصة (1000) در هم وجميعها حصص (نقدية)، موز عة بين الشركاء على النحو التالي: |
| - Mr. (OMAR HASSAN ALI), (153) shares , amounting to (153000), which represent (51%) of the share capital | - السيد. (عمر حسن على العطار)، (153) حصة بقيمة (153000) در هم بنسبة (51%) من رأس المال |
| - Ms. (MA MERYL MONGAYA SECAPURI), (147) shares , amounting to (147000), which represent (49%) of the share capital | - السيدة. (ماميريل مونجايا سيكابوري)، (147) حصة بقيمة (147000) در هم بنسبة (49%) من رأس المال |
| The value of the shares has been fully paid up in cash, and has been deposited in the bank account of the Company | أن قيمة الحصص النقدية قد دفعت بالكامل وقد تم إيداعها في حساب الشركة لدى المصرف. |



حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 8 Part 7
DUBAI ECONOMY

**Article (4): PROFITS AND LOSSES DISTRIBUTION (L.L.C.)**

**المادة (4): توزيع الأرباح و الخسائر (شركة ذات مسؤولية محدودة)**

The profits and losses shall be distributed between the Partners in the following proportion:

يتم توزيع الأرباح و الخسائر بين الشركاء حسب النسبة التالية:

- Ms. MA MERYL MONGAYA SECAPURI 80%

- السيدة. ماماريل مونجايا سيكابورى 80%

- Mr. OMAR HASSAN ALI 20%

- السيد. عمر حسن على العطار 20%

**Article (5): Management of the Company**

**المادة (5): إدارة الشركة**

Company Managers :

مدراء الشركة :

- Ms. MA MERYL MONGAYA SECAPURI

- السيدة. ماماريل مونجايا سيكابورى

The Partners have agreed that the management of the Company shall be entrusted to:

إتفق الشركاء على:

- Add Manager Ms. MA MERYL MONGAYA SECAPURI, Nationality: Philippines, and Passport [redacted] Date of Birth [redacted] Member Dubai .P 65919 United Arab Emirates

- إضافة المدير السيدة. ماماريل مونجايا سيكابورى ، الجنسية : الفلبين ، ويحمل جواز سفر ر[redacted] تاريخ الميلاد [redacted] مقيم في دبي .ص.ب 65919 الإمارات العربية المتحدة

- Remove manager Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national and holder of Passport No. [redacted], born on [redacted] resident of Dubai, Address: P.O. Box No. 48800, United Arab Emirates

- حذف المدير السيد. الان فرانكويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز سفر رقم [redacted] تاريخ الميلاد [redacted] مقيم في دبي .ص.ب 48800 الإمارات العربية المتحدة

The appointment of the Manager/Managers shall be for a period of 5 year(s) starting from the date of registration of the Company in the Commercial Register, to be automatically renewable for similar periods unless otherwise is agreed upon. The Manager/Managers whose tenure has expired may be reappointed. The Managers shall be subject to dismissal in accordance with the Commercial Companies Law or by a decision of the General Assembly according to the above mentioned majority.

يكون تعيين المدير /المديرين، لمده 5 سنة/سنوات تبدأ من تاريخ تسجيل الشركة في السجل التجاري. تجدد تلقائيا لمدد مماثلة ما لم يتفق على خلف ذلك. ويجوز إعادة تعيين المدير / المديرين الذين انتهت مدة تعيينهم ويكون المديرون خاضعين للعزل طبقًا لقانون الشركات التجارية أو بقرار من الجمعية العمومية حسب الغلبية المذكورة.

The Manager/Managers shall have all the necessary powers to manage and sign in the name of the Company and on its behalf; to carry out all the work required by its purposes. Such powers shall be subject to and limited to powers granted by Law, by this memorandum of association or by the resolutions of the General Assembly of the Company.

يكون للمدير /المديرين، كافة الصلحيات الضرورية لإدارة الشركة والتوقيع نيابة عنها والقيام بجميع العمال التي تقتضيها أغراضها ول يحد من هذه السلطة إل ما نص عليه القانون أو هذا العقد أو قرارات الجمعية العمومية للشركة.

The powers of the Manager include:

تتضمن سلطات المدير ما يلي:

DRC-34996 0808 (تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)

 

حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 8 Part 7
DUBAI ECONOMY

- To represent the Company before the Government Departments, including the Department of Economic Development, Municipalities, Etisalat, Du, Electricity and Water Authorities, Land Department, Chambers of Commerce and Industry, Ministry of Human Resources and Emiratization, General Directorate of Residency and Foreigners Affairs, Traffic Department, Road and Transport Authority, Police, Courts, Postal, Airports, Ports, Seaports, Customs, Public Persecution, and all other semi-official Government Departments, ministries and institutions, and to sign all documents, papers and contracts with or before the abovementioned authorities.

- يقوم بتمثيل الشركة أمام الدوائر الحكومية، دائرة التنمية الاقتصادية، البلديات، اتصالات، دو، هيئات الكهرباء والماء، دائرة الأراضي والأملاك، غرف التجارة والصناعة، وزارة الموارد البشرية والتوطين، الادارة العامة للإقامة وشؤون الأجانب، دائرة المرور، هيئة الطرق والمواصلات، الشرطة، المحاكم، البريد، المطارات، الموانئ، الموانئ البحرية، الجمارك، النيابة العامة، كافة الدوائر الشبه الحكومية الأخرى، الوزارات، المؤسسات، والتوقيع على كافة المستندات والأوراق والعقود مع أو أمام الجهات المذكورة.

- To appoint and remove lawyers and to file or defend any suits before all UAE courts at all levels.

- أن يقوم بتعيين أو إلغاء المحامين وأن يرافعوا أو يدافعوا أمام محاكم دولة الإمارات العربية المتحدة بمختلف درجاتها وأية دعاوى أمام المحاكم بكافة المستويات.

- To appoint and remove employees and consultants and fix their duties and remunerations.

- يقوم بتعيين أو إنهاء خدمة المستخدمين والمستشارين وأن يحدد واجباتهم ومكافآتهم.

- To sign all tenders, contracts, documents on behalf of the company.

- أن يقوم بالتوقيع على كافة العطاءات والعقود والمستندات نيابة عن الشركة.

- To authorize and sanction all vouchers of books of account and payment of all expenses.

- أن يعتمد ويصادق على السندات للدفاتر الحسابية ولدفع كافة المصروفات.

- The sale and purchase of cars and the registration and renewal of cars in the name of the establishment and the disposal of any car owned

- القيام ببيع وشراء السيارات وتسجيل السيارات وتجديدها باسم المنشأة والتصرف بأي سيارة مملوكة لها بدولة الامارات العربية المتحده بكافة اوجه التصرف والبيع وحق الاتفاق على الثمن وقبضه وتجديد ملكيتها وقيادتها داخل وخارج الدولة وتوليها بالصيانة وتأمينها وانهاء اجراءاتها الجمركية وسداد الرسوم والغرامات وتسفيرها وتوكيل الغير للشحن والقيادة وتسجيل وبيع وشراء ارقام السيارات وعمل ما يلزم في هذا الخصوص، وتراخيص سيارات المنشأة ودفع الرسوم المقررة وصرف بواقيها وعمل ما يلزم في هذا الخصوص.

- To register the value added tax and to provide returns tothe Federal Tax Authority and to take, determine and apply the company's policy

- القيام بتسجيل ضريبة القيمة المضافة وتقديم العوائد لدى الهيئة الإتحادية للضرائب و إتخاذ و تحديد وتطبيق سياسة الشركة

- Incorporation and representation of the company as a partner in the establishment of any company and signing the Memorandum of Association for establishing all types of new companies and contracts of the service agents in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

- إدراج وتمثيل الشركة كشريك في تأسيس أي شركة والتوقيع على عقود تأسيس شركات جديده أو فروع جديده بجميع انواعها وعقود وكيل الخدمات لدى جميع الدوائر الاقتصادية أو الكاتب العدل او أمام الجهات المختصة وذات العلاقة في دولة الإمارات العربية المتحده أو خارجها.

- The right to sell and/or assign any shares owned by the company in any other company, whether to sell it to third parties or to the company itself and receive the payment. He/she has the right to buy on behalf of the company any shares owned by other company, whether these shares are owned by the company itself or the property of third parties. The General Manager also has the right to increase and reduce the capital of the company and the companies in which the company is a shareholder which is applied in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

- له الحق في البيع والتنازل عن أي أسهم أو فروع مملوكة للشركة في أي شركة سواء البيع للغير أو الشركة وقبض الثمن. وله الحق في شراء باسم الشركة لأي أسهم في أي شركة سواء كانت هذه الأسهم ملك الشركة أو ملك الغير وله الحق في زيادة وتخفيض راس المال للشركة والشركات التي تكون للشركة أسهم فيها وذلك لدى جميع الدوائر الاقتصادية او الكاتب العدل او أمام الجهات المختصة وذات العلاقة في دولة الامارات العربية المتحده أو خارجها.

(تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)



حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 8, Part 7
DUBAI ECONOMY

- The general manager has the right to resign from the company and the companies in which the company is a shareholder and to sign the procedures for the cancelation of the Trade License and the procedures of liquidation with various government departments including the notary public using the name of the company or any subsidiary company in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

- له الحق في الخروج من الشركة والشركات التي تكون للشركة أسهم فيها والتوقيع على إجراءات الحل والتصفية مع مختلف الدوائر الحكومية والكاتب العدل مستخدما اسم الشركة أو شركة تتبعها وذلك لدى جميع الدوائر الاقتصادية أو الكاتب العدل او أمام الجهات المختصة وذات العلاقة في دولة الامارات العربية المتحدة أو خارجها.

- To transfer the salaries of workers and emplyees to the banks

- تحويل رواتب العمال والموظفين على البنوك والمصارف والتحويلات لدى كافة البنوك العاملة بالدولة

- To pledge, charge, assign, mortgage or otherwise transfer, hypothesis or deliver as security any of the company's movable or immovable property.

- رهن اي من الممتلكات المنقولة او غير المنقولة للشركة وارتهانها أو التنازل عنها أو نقلها أو تكبيلها بالقيود أو تسليمها بأي صورة أخرى كضمان

- To reperesent the compnay before all courts and quasi -- Judicial Authorities in the United Arab Emirates either as a defendant or as a pliantiff with full authority to appoint advocate or legal counsel in the United Arab Emirates for the purpose of protecting the intrests of the company and to revoke such appointment

- القيام بتمثيل الشركة أمام كافة المحاكم والسلطات شبه القضائية في دولة الإمارات العربية المتحدة سواء كمدعى عليها أو مدعية مع كامل الصلاحية في تعيين أي محام أو مستشار قانوني في الإمارات العربية المتحدة لغرض حماية مصالح الشركة وإلغاء ذلك التعيين

- To appoint the arbitrator in case of any disputes with including but not limited to clients, consultants, customers supplies and all third party and to commit the company to arbitration, sign agreements including arbitration clauses, appint arbitrators and in general represent the company

- تعيين محكم في حالة وجود أي نزاعات على سبيل المثال لا الحصر مع العملاء والمستشارين والعملاء الموردين وجميع الأطراف الأخرى وإلزام الشركة بالتحكيم وتوقيع الاتفاقيات بما في ذلك مواد التحكيم وتعيين المحكمين وبصورة عامة تمثيل الشركة في كافة أمور التحكيم ذات الصلة.

The Director's Powers Related to Banking Transactions:

الصلاحيات البنكية:

To:

ان يقوم:

- MA MERYL MONGAYA SECAPURI (Manager)

- ماماريل مونجايا سيكابوري (مدير)

can open and close bank accounts in the name of the company and to operate such bank accounts and sign cheques.

بفتح وإقفال الحسابات البنكية باسم الشركة وأن يقوم بتشغيل وإدارة هذه الحسابات وتوقيع الشيكات.

All other provisions of the Memorandum of Association shall remain unchanged and shall apply to the extent that they do not contravene the provisions of this Annex

تبقى باقي مواد وأحكام وشروط عقد التأسيس كما هي دون تعديل ويسري العمل بها بين المتعاقدين الى المدى الذي لا يخالف أحكام هذا العقد.

- The Manager is obliged to enter this amendment in the commercial register at the competent authority.

- على مدير الشركة قيد هذا التعديل في السجل التجاري لدى السلطة المختصة.

- This contract shall be treated, read and construed as an integral part of the memorandum of association.

- يعتبر هذا العقد جزءا لا يتجزأ من عقد التأسيس ومكملا له ويقرأ ويفسر معه

IN WITNESS WHEREOF, the Parties have signed this Memorandum on Thursday07/05/2020

وإشهادا على ما تقدم وقع الأطراف على هذا العقد في يوم الخميس الموافق 07/05/2020

(تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)



حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 8, Part 7
اقتصادية دبي
DUBAI ECONOMY

- Mr. OMAR HASSAN ALI — السيد. عمر حسن على العطار

- Ms. MA MERYL MONGAYA SECAPURI — السيدة. ماماريل مونجايا سيكابورى

- Mr. ALAIN FRANCOIS VIVIANE GOETZ — السيد. الان فرانكويس فيفيان جويتز

**Parties Signature** — **توقيع الأطراف**

- ALAIN FRANCOIS VIVIANE GOETZ — الان فرانكويس فيفيان جويتز

- MA MERYL MONGAYA SECAPURI — ماماريل مونجايا سيكابورى

- OMAR HASSAN ALI — عمر حسن على العطار

**Contract Number** 1069152 **Print Date** 07/05/2020 تاريخ الطباعة **Page 6 of 6**

DRC-34996 0811 (تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

(This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary)

Exhibit 8 Part 7

# Annex GG

DRC-34996 0812



Exhibit 8 Part 7

NAME. **TONY GOETZ & ZONEN**

LEGAL FORM PUBLIC LIMITED COMPANY

ADDRESS SCHUPSTRAAT 9-11 TE 2018 ANTWERPEN

COMPANY NO.. 426598575

Subject of Act : **RESIGNATION, APPOINTMENT AND REAPPOINTMENT OF DIRECTORS AND MANAGING DIRECTORS,**

The Extraordinary General Meeting of Shareholders of 30 June 2004 unanimously decided to reappoint

- directors for a period of six years: B V BA. BERKENRODE, with'

registered office at JACOB JACOBSSTRAAT 56 in 2018 ANTWERPEN, the B.V.B.A. WORLDWIDE

CONSULTING, having its registered office at JACOB JACOBSSTRAAT 56 in 2018 ANTWERPEN; Mr GOETZ SYLVAIN, residing at 2980 Zoersel, Epicialaan 69. It was also decided to dismiss Mr GOETZ ALAIN from his duties as a director and to appoint Ms WEYLER SANDRA, residing at 2900 Schoten, Erikadreef 2/A, as a director with effect from 1 June 2004. Ms Weyler Sandra is also appointed permanent representative of BERKENRODE B.V.B.A. in place of Mr Goeiz Alain- The permanent representative of WORLDWIDE CONSULTING B.V.B.A. remains unchanged, namely Mr Goetz Sylvain. The Board of Directors appoints Ms. WEYLER SANDRA as Managing Director effective July 1, 2004 and also reappoints Mr. GOETZ SYLVAIN, aforementioned, as Managing Director for a period of six YEARS. She accept their mandates, which are unpaid.

WEYLER SANDRA
Managing Director

DRC-34996 0813

# Exhibit 8 Part 7

Luik B **In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

*04125976*

Neergelegd ter griffie van de Rechtbank van Koophandel te Antwerpen op 24 AUG. 2004 Griffie

Bijlagen bij het Belgisch Staatsblad - 01/09/2004 - Annexes du Moniteur belge

**Benaming :** **TONY GOETZ & ZONEN**

Rechtsvorm NAAMLOZE VENNOOTSCHAP

Zetel SCHUPSTRAAT 9-11 TE 2018 ANTWERPEN

Ondernemingsnr. 426598575

**Voorwerp akte :** **ONTSLAG, BENOEMING en HERBENOEMING BESTUURDERS EN GEDELEGEERD BESTUURDERS**

De Bijzondere Algemene Vergadering der Aandeelhouders van 30 juni 2004 beslist unaniem om volgende bestuurders te herbenoemen voor een periode van zes jaar : de BVBA BERKENRODE, met maatschappelijke zetel te JACOB JACOBSSTRAAT 56 te 2018 ANTWERPEN, de B.V.B.A. WORLDWIDE CONSULTING, met maatschappelijke zetel te JACOB JACOBSSTRAAT 56 te 2018 ANTWERPEN ; de heer GOETZ SYLVAIN, wonende te 2980 Zoersel, Epicialaan 69. Tevens wordt beslist om de heer GOETZ ALAIN te ontslaan in zijn mandaat van bestuurder en om mevrouw WEYLER SANDRA, wonende te 2900 Schoten, Erikadreef 2/A, met ingang van 1 juli 2004 tot bestuurder te benoemen. Mevrouw Weyler Sandra wordt tevens aangesteld tot vaste vertegenwoordiger van BERKENRODE B.V.B.A., ter vervanging van de heer Goetz Alain De vaste vertegenwoordiger van WORLDWIDE CONSULTING B.V.B.A. blijft ongewijzigd, meer bepaald de heer Goetz Sylvain. De Raad van Bestuur benoemt mevrouw WEYLER SANDRA met ingang van 1 juli 2004 tot gedelegeerd bestuurder en herbenoemt tevens de heer GOETZ SYLVAIN, voornoemd, als gedelegeerd bestuurder voor een periode van zes jaar. Zij aanvaarden hun mandaat, dat onbezoldigd wordt uitgeoefend.

WEYLER SANDRA
Gedelegeerd bestuurder

Op de laatste blz. van Luik B vermelden : Recto Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

DRC-34996 0814 Verso Naam en handtekening

Exhibit 8 Part 7

# Annex HH

DRC-34996 0815

na neerlegging ter griffie van de akte Exhibit 8 Part 7

fh.1iJriztiJf,3 ti.ff v1 fi're van i$u
ii'e.r.ht&J.mk van Koo lmn.Jn! li &ntvmrls'fl
2'4 A\Ju.-200fl_:."il:;,;,;;;--
Griffie qT"m.

B,
St<

*04125984*

**NAME, BELGIAN PRECIOUS METALS INDUSTRIES**

LEGAL FORM . PUBLIC LIMITED COMPANY

Address JACOB JACOBSSTRAAT 56 TE 2018 ANTWERPEN

Company No. 477567325

Subject of act: **RESIGNATION, APPOINTMENT en AND REAPPOINTMENT OF DIRECTORS AND MANAGING DIRECTORS**

The Extraordinary General Meeting of Shareholders of 30 June 2004 unanimously decided to reappoint the following directors for a period of six years: B.V.B.A. BERKENRODE, with corporate office at JACOB JACOBSSTRMT 56, 2018 ANTWERPEN; B.V.BA WORLDWIDE CONSULTJNG, with registered office at JACOB JACOBSTRAAT 56, 2018 ANTWERPEN , Mr GOETZ SYLVAIN, residing at 2980 Zoersel, Epicialaan 69. It was also decided to dismiss Mr. GOETZ ALAIN from his duties as director and to appoint Ms. WEYLER SANDRA, residing at 2900 Schoten, Erikadreef 2/A, as director with effect from July 1, 2004. Ms. Weyler Sandra is also appointed permanent representative of BERKENRODE B.V.B A and Mr. Goetz Sylvain as permanent representative of WORLDWIDE CONSULTING B.V.B.A. The Board of Directors appoints Ms. WEYLER SANDRA as Managing Director with effect from July 1, 2004, and also reappoints Mr. GOETZ SYLVAIN, aforementioned, as Managing Director for a period of six years. They accept their mandate, which is exercised without restriction.

WEYLER SANDRA
Gedelegeerd bestuurder

Op de ltiabte bl; v8n L_ult_ [l vcrmcldcn . Recto Naam en hocdamgtw1d van de instruinenterende notans, hel£1J van de pcrso(o)n(en) bevoetJd de rechtspersoon ten aanz1cn van dcrden to vcrtcgenwoord1gen
- Na<1m en handtekcning

DRC-34996 0816

# Exhibit 8 Part 7

Luik B

**In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

*04125984*

Neergelegd ter griffie van de Rechtbank van Koophandel te Antwerpen

24 AUG. 2004

De Griffier

Griffie

**Benaming : BELGIAN PRECIOUS METALS INDUSTRIES**

Rechtsvorm : NAAMLOZE VENNOOTSCHAP

Zetel : JACOB JACOBSSTRAAT 56 TE 2018 ANTWERPEN

Ondernemingsnr : 477567325

**Voorwerp akte : ONTSLAG, BENOEMING en HERBENOEMING BESTUURDERS EN GEDELEGEERD BESTUURDERS**

De Bijzondere Algemene Vergadering der Aandeelhouders van 30 juni 2004 beslist unaniem om volgende bestuurders te herbenoemen voor een periode van zes jaar : de B V.B.A. BERKENRODE, met maatschappelijke zetel te JACOB JACOBSSTRAAT 56 te 2018 ANTWERPEN; de B.V.B.A. WORLDWIDE CONSULTING, met maatschappelijke zetel te JACOB JACOBSSTRAAT 56 te 2018 ANTWERPEN , de heer GOETZ SYLVAIN, wonende te 2980 Zoersel, Epiclalaan 69. Tevens wordt beslist om de heer GOETZ ALAIN te ontslaan in zijn mandaat van bestuurder en om mevrouw WEYLER SANDRA, wonende te 2900 Schoten, Erikadreef 2/A, met ingang van 1 juli 2004 tot bestuurder te benoemen. Mevrouw Weyler Sandra wordt tevens aangesteld tot vaste vertegenwoordiger van BERKENRODE B.V.B A en de heer Goetz Sylvain tot vaste vertegenwoordiger van WORLDWIDE CONSULTING B.V.B.A. De Raad van Bestuur benoemt mevrouw WEYLER SANDRA met ingang van 1 juli 2004 tot gedelegeerd bestuurder en herbenoemt tevens de heer GOETZ SYLVAIN, voornoemd, als gedelegeerd bestuurder voor een periode van zes jaar. Zij aanvaarden hun mandaat, dat onbezoldigd wordt uitgeoefend

WEYLER SANDRA
Gedelegeerd bestuurder

Bijlagen bij het Belgisch Staatsblad - 01/09/2004- Annexes du Moniteur belge

Op de laatste blz van Luik B vermelden : **Recto** Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

**Verso** : Naam en handtekening

DRC-34996 0817

Exhibit 8 Part 7

# EXHIBIT II

DRC-34996 0818

# Exhibit 8 Part 7

**In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

„1'

*04125985*

| | |
|---|---|
| **NAME,** | **EUROPEES GARANTIE AGENTSCHAP INTERNATIONAAL** |
| LEGAL FORM . | PUBLIC LIMITED COMPANY |
| ADDRESS · | JACOB JACOBSSTRMT 56 TE 2018 ANTWERPEN |
| COMPANY NO. | 474727502 |

Subject of Act: **RESIGNATION, APPOINTMENT AND REAPPOINTMENT OF DIRECTORS AND MANAGING DIRECTORS**

The Extraordinary General Meeting of Shareholders of June 30, 2004 resolved unanimously to reappoint the following directors for a period of six years the B VB.A. BERKENRODE, with registered office at JACOB JACOBSSTRAAT 56, 2018 ANTWERPEN; the B VB.A. WORLDWIDE CONSULTING, with registered office at JACOB JACOBSSTRAAT 56, 2018 ANTWERPEN; Mr. GOETZ SYLVAIN, residing at 2980 Zoersel, Epicialaan 69. It was also decided to dismiss Mr. GOETZ ALAIN from his duties as director and to appoint Ms. WEYLER SANDRA, residing at 2900 Schoten, Erikadreef 2/A, as director with effect from July 1, 2004. Mrs. Weyler Sandra is also appointed permanent representative of BERKENRODE B VB.A., replacing Mr. Goetz Alain. The permanent representative of WORLDWIDE CONSULTING B V.B.A. remains unchanged, namely Mr. Goetz Sylvain. The Board of Directors appoints Ms. WEYLER SANDRA as Managing Director with effect from 1 juh 2004 and also reappoints Mr. GOETZ SYLVAIN, aforementioned, as Managing Director for a period of six years. They accept their mandates, which are unpaid.

WEYLER SANDRA

Managing Director



# Exhibit 8 Part 7

Luik B In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte

*04125985*

Neergelegd ter griffie van de
Rechtbank van Koophandel te Antwerpen
op 24 AUG. 2004
Griffie
De Griffier

Bijlagen bij het Belgisch Staatsblad - 01/09/2004 - Annexes du Moniteur belge

Benaming : **EUROPEES GARANTIE AGENTSCHAP INTERNATIONAAL**

Rechtsvorm : NAAMLOZE VENNOOTSCHAP

Zetel : JACOB JACOBSSTRAAT 56 TE 2018 ANTWERPEN

Ondernemingsnr : 474727502

Voorwerp akte : **ONTSLAG, BENOEMING en HERBENOEMING BESTUURDERS EN GEDELEGEERD BESTUURDERS**

De Bijzondere Algemene Vergadering der Aandeelhouders van 30 juni 2004 beslist unaniem om volgende bestuurders te herbenoemen voor een periode van zes jaar de B V B.A. BERKENRODE, met maatschappelijke zetel te JACOB JACOBSSTRAAT 56 te 2018 ANTWERPEN; de B V B.A. WORLDWIDE CONSULTING, met maatschappelijke zetel te JACOB JACOBSSTRAAT 56 te 2018 ANTWERPEN ; de heer GOETZ SYLVAIN, wonende te 2980 Zoersel, Epicialaan 69. Tevens wordt beslist om de heer GOETZ ALAIN te ontslaan in zijn mandaat van bestuurder en om mevrouw WEYLER SANDRA, wonende te 2900 Schoten, Erikadreef 2/A, met ingang van 1 juli 2004 tot bestuurder te benoemen. Mevrouw Weyler Sandra wordt tevens aangesteld tot vaste vertegenwoordiger van BERKENRODE B V B.A., ter vervanging van de heer Goetz Alain. De vaste vertegenwoordiger van WORLDWIDE CONSULTING B V.B.A. blijft ongewijzigd, meer bepaald de heer Goetz Sylvain. De Raad van Bestuur benoemt mevrouw WEYLER SANDRA met ingang van 1 juli 2004 tot gedelegeerd bestuurder en herbenoemt tevens de heer GOETZ SYLVAIN, voornoemd, als gedelegeerd bestuurder voor een periode van zes jaar Zij aanvaarden hun mandaat, dat onbezoldigd wordt uitgeoefend.

WEYLER SANDRA
Gedelegeerd bestuurder

Op de laatste blz van Luik B vermelden : Recto Naam en hoedanigheid van de instrumenterende notaris hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
Verso Naam en handtekening.

DRC-34996 0820

Exhibit 8 Part 7

# EXHIBIT JJ

DRC-34996 0821



Références de dépôt

**B127356** - L150187672 - déposé le 16/10/2015

Helpdesk RCSL : (+352) 26 428-1 / helpdesk@rcsl.lu

# Modification non statutaire

**Etablissement principal**

**ASTECO S.A.**
**B127356**

*Société anonyme*

7a, Rue des Glacis
L - 1628 Luxembourg

**Données à modifier**

- ☐ Dénomination ou raison sociale
- ☐ Enseigne(s) commerciale(s)
- ☐ Siège social
- ☐ Capital social / Fonds social
- ☐ Exercice social
- ☑ Administrateur(s) / Gérant(s) — page 2
- ☐ Délégué(s) à la gestion journalière
- ☐ Personne(s) chargée(s) du contrôle des comptes
- ☐ Fusion / Scission
- ☐ Liquidation volontaire

En application de l'article 21 paragraphe 2 de la loi modifiée du 19 décembre 2002 concernant le registre de commerce et des sociétés ainsi que la comptabilité et les comptes annuels des entreprises et l'article 21 du règlement grand-ducal modifié du 23 janvier 2003 portant exécution de la loi du 19 décembre 2002, le présent formulaire reprend au moins la situation à jour des données communiquées au registre de commerce et des sociétés jusqu'à trois jours avant la date d'émission dudit formulaire. Si une modification a été notifiée au registre de commerce et des sociétés entre temps, il se peut qu'elle n'ait pas été prise en compte lors de l'émission de ce formulaire.

## Administrateur(s) / Gérant(s)

Régime de signature statutaire (indication)

Vis-à-vis des tiers la société est engagée en toutes circonstances, en cas d'administrateur unique, par la signature individuelle de cet administrateur, et en cas de pluralité d'administrateurs, par la signature conjointe de deux administrateurs ou par la signature individuelle d'un administrateur-délégué.

| | | | Modifier | Rayer |
|---|---|---|---|---|
| 1 | ~~GOETZ Alain~~ | page 3 | ☐ | ☑ |
| 2 | Nouvel administrateur / gérant : FISCHMANN Johanna | page 4 | | |

**1** **GOETZ Alain**

Modifier ☐ Rayer ☑

## Personne physique

| Nom | Prénom(s) |
|---|---|
| GOETZ | Alain |

| Date de naissance | Lieu de naissance | Pays de naissance |
|---|---|---|
| 24/04/1965 | Deurne | Belgique |

### Adresse privée ou professionnelle

| Numéro | Rue |
|---|---|
| A40 | Villa Palm Jumeirah |

| Bâtiment | Etage |
|---|---|
| | |

| Code postal | Localité | Pays |
|---|---|---|
| 65919 | Dubai | Emirats Arabes Unis |

### Type de mandat

| Organe | Fonction |
|---|---|
| Conseil d'administration | Administrateur |

Pouvoir de signature (indication)

### Durée du mandat

| Date de nomination | Durée du mandat |
|---|---|
| 27/09/2013 | Déterminée |

Date d'expiration du mandat: ou Jusqu'à l'assemblée générale qui se tiendra en l'année: 2018

## 2 Nouvel administrateur / gérant :

**FISCHMANN Johanna**

Type de personne
Personne physique

### Personne physique

| Nom | Prénom(s) |
|---|---|
| FISCHMANN | Johanna |

| Date de naissance | Lieu de naissance | Pays de naissance |
|---|---|---|
| 07/11/1953 | Paris | France |

**Adresse privée ou professionnelle**

| Numéro | Rue |
|---|---|
| 7a | rue des Glacis |

| Bâtiment | Etage |
|---|---|
| | |

| Code postal | Localité | Pays |
|---|---|---|
| 1628 | Luxembourg | Luxembourg |

**Type de mandat**

| Organe | Fonction |
|---|---|
| Conseil d'administration | Administrateur |

Pouvoir de signature (indication)

**Durée du mandat**

| Date de nomination | Durée du mandat |
|---|---|
| 25/09/2015 | Déterminée |

| Date d'expiration du mandat | | jusqu'à l'assemblée générale qui se tiendra en l'année |
|---|---|---|
| JJ/MM/AAAA | ou | 2018 |

Document émis électroniquement

Registre de Commerce et des Sociétés
**B127356** - L150187672
enregistré et déposé le 16/10/2015

**ASTECO S.A.**
Société Anonyme
7a, rue des Glacis
L-1628 Luxembourg
R.C.S. Luxembourg B 127356

PROCES-VERBAL DE LA REUNION DE L'ASSEMBLEE GENERALE
DU 25 SEPTEMBRE 2015

# EXTRAIT

## TROISIEME RESOLUTION

L'Assemblée Générale nomme en remplacement de Monsieur Alain GOETZ , administrateur, Madame Johanna FISCHMANN (née le 7 novembre 1953 à Paris, France, demeurant professionnellement à 7a rue des Glacis, L-1628 Luxembourg), administrateur, pour une durée qui prendre fin lors de l'Assemblée Générale tenue dans l'année 2018

CETTE RESOLUTION EST ADOPTEE A L'UNANIMITE

Pour la société

Un mandataire

Exhibit 8 Part 7

# EXHIBIT KK

DRC-34996 0827

Exhibit 8 Part 7

Monsieur Alain GOETZ
Frond N, Villa 39,
Palm Jumeirah, P.O. Box 64701,
Dubai, United Arab Emirates

ARGOR INTERNATIONAL S.A.
296-298, route de Longwy
L – 1940 Luxembourg

**Courrier Recommandé**

Dubai, le 31 octobre 2018

**A l'attention** : du Conseil d'Administration

Mesdames, Messieurs,

J'ai l'honneur de vous informer que pour des raisons de convenances personnelles, je ne puis continuer à assumer les fonctions d'administrateur dans votre société.

Je vous prie en conséquence de bien vouloir accepter ma démission avec effet immédiat et de m'accorder pleine et entière décharge pour l'exercice de mon mandat.

Veuillez agréer, Mesdames, Messieurs, l'expression de mes meilleurs sentiments.

Exhibit 8 Part 7

# EXHIBIT LL

DRC-34996 0829

Exhibit 8 Part 7

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (the "Agreement") is made and entered into by and between:

**AFRICAN GOLD REFINERY LTD.**, a limited liability company incorporated under the laws of the Republic of Uganda with principal office address at Sebugwawo Road, Entebbe, P.O. Box 37574 Kampala, Uganda (hereinafter referred to as the "Company");

and

**ALAIN GOETZ**, national of Belgium, residing at Palm Jumeirah, Dubai, United Arab Emirates (hereinafter referred to as the "Consultant").

The Company and the Consultant are hereinafter individually referred to as a "Party" and collectively referred to as the "Parties".

WHEREAS

A. The Company is a well reputed gold and metal processing company, who is familiar and experiences in gold and metal processing (hereinafter referred to as the "Relevant Business");

B. The Consultant has experience in doing business in the African Region, in particular in the Republic of Uganda (hereinafter referred to as the "Territory"). The Consultant represents to have knowledge of the local circumstances and market conditions and to have good and interesting contacts within the different institutions regarding the Relevant Business in the Territory;

C. The Company is desirous of appointing the Consultant as its Promoter for the purposes of promoting and developing the Relevant Business in the Territory and to assist the Company in safeguarding and furthering its business interests with regard to compliance standards of the Relevant Business in the Territory;

D. The Consultant is desirous of acting as the Promoter of the Company for the purposes of promoting and developing the Relevant Business in the Territory and to assist the Company in safeguarding and furthering its interests with regard to compliance standards of the Relevant Business in the Territory.

NOW, IT IS HEREBY AGREED AS FOLLOWS:

**1. RECITALS**

The above Recitals shall be deemed an integral part of this Agreement.

**2. APPOINTMENT AND DURATION**

2.1. Subject to and upon the terms and conditions of this Agreement, the Company hereby appoints the Consultant as its Promoter to assist the

Company in safeguarding and furthering its interests with regard to compliance standards of the Relevant Business in the Territory.

2.2. The Agreement shall commence on **10th of November 2018** (hereinafter referred to as the "Commencement Date") and subject to Clause 8, shall be effective and in force for an initial period of five (5) years (hereinafter referred to as the "Initial Period").

## 3. OBJECT OF THE AGREEMENT AND PROMOTER'S DUTIES

Pursuant to its obligation to provide assistance to the Company under Clause 2 and always subject to Clause 4, the Consultant shall:

3.1. Develop, manage, coordinate, network, implement and monitor a public relations and communications strategy and associated products and activities with various audiences, with objective of promoting awareness and understanding of AGR and its activities including regulatory compliance.

3.2. Inform the Company on the gold market situation and evolutions in the Territory as well as on new legislation and regulations bearing significant influence to tendering and/or execution of operations in the Territory.

3.3. Inform in timely manner the Company of all and any relevant issues, data and information relating to the Relevant Business enabling the Company to evaluate the same.

3.4. Provide the Company with such advice, information and guidance as the Company may require in relation to tendering for and the processing and award of contracts for Relevant Business in the Territory (hereinafter referred to as a "Contract").

3.5. Introduce any natural person and/or companies to the Company as may be of assistance in award of a Contract.

3.6. Assist and advice the Company generally, when required, on all aspects of its negotiations for the award of a Contract.

3.7. After the award of such Contract as aforesaid, assist the Company as it may reasonably require to ensure the smooth operation thereof.

3.8. At all times, use its best endeavours generally to promote the business of the Company and foster relationships and connections which may benefit the Company in its business and affairs in the Territory.

3.9. Suggest to or upon request of the Company, prepare and assist visits for quality contacts in relation to the Relevant Business.

3.10. Assist and advice the Company in relation to obtaining or renewing any required registration in the Territory and regulatory compliance of the Company as per international standards.

Exhibit 8 Part 7

3.11. Assist and advice the Company in relation to its dealings with government of any tier, ministries, departments, municipalities and other offices and agencies thereof or allied thereto in the Territory.

3.12. Advice the Company generally as required in connection with local maters in relation to the Relevant Business in the Territory.

**4. RESTRICTIONS AND LIMITATIONS ON THE PROMOTER'S DUTIES**

4.1. It is the intention that the Relevant Business accepted by the Company in the Territory shall be contractually awarded to the Company as principal unless the Company in any particular case in its absolute discretion decides otherwise and the Consultant in the performance of its duties hereunder shall have due regard therefore and shall raise no objection thereto.

4.2. The Consultant is not entitled to oblige the Company to bid for tenders or to accept an order, a letter of intent, a letter of award or alike from a client introduced to it by the Consultant.

4.3. The Consultant shall not, without the express prior written authority of the Company, have any power or authority under the Agreement (and shall not hold himself out as having power or authority):

4.3.1. To sign the Contract or accept orders, a letter of intent, a letter of award, or alike, to settle Company's entitlement to debts, or to accept money on behalf of the Company;

4.3.2. To give any guarantees or warranties to clients or potential clients;

4.3.3. To commit the Company to any binding obligations;

4.3.4. To commit the Company otherwise in any way.

**5. REMUNERATION AND REIMBURSEMENT OF INCIDENTAL EXPENSES**

5.1. As remuneration for the provision of the services by the Consultant, the Company shall pay to the Consultant a fee calculated as provided in the Schedule hereto. Such fee shall be deemed to cover all of the Consultant's operating expenses relative to the provision of its services under the Agreement and the Consultant shall, as a rule, not be entitled to any further or other remuneration or compensation whatsoever, be it reimbursement of expenses, fees, costs or otherwise in respect of its performance under the Agreement, except if and to the extent mutually agreed upon, beforehand and in writing between both Parties.

**6. EXCLUSIVITY**

6.1. The relationship contemplated by the Agreement regarding the Relevant Business has an exclusive character and the Consultant undertakes not to establish a similar association with any other person or Company in the

Territory in respect of the Relevant Business while the Agreement continue in full force and effect.

6.2. The Consultant shall not, directly or indirectly, in part or in whole, alone or together with any third party, prepare or submit or take par in the preparation or submission of a tender proposal or any other offer in relation to the Contract other than in accordance with the stipulations of the Agreement.

6.3. The Consultant shall not act, either individually or as a prospective, former or actual member of the Company to participate or take any action which could conflict, or materially hinder the performance of its responsibilities under the Agreement.

6.4. The Consultant represents and warrants that by entering into this Agreement it shall not be in breach of or default under any agreement to which it is a party, or which is binding on it.

6.5. Nothing herein shall affect or restrict, however, the Company's freedom of action in respect of any business undertaken or sought by the Company outside the Territory, or any other business other than the Relevant Business undertake or sought by the Company inside the Territory.

**7. CONFIDENTIALITY**

7.1. All information acquired by a Party from the other Party, including prices and commercial or technical information, shall be treated as confidential by the recipient and shall not be used other than for the purpose contemplated by the Agreement without the prior consent in writing of such other Party unless such information:

7.1.1. Is or later becomes public knowledge other than by a breach of the foregoing paragraph, or;

7.1.2. Is in the possession of the recipient with the right to disclose prior to receiving it from the other Party;

7.1.3. Is independently received by the recipient from a third party having the right to disclose.

7.2. These confidentiality obligations shall survive the expiry or termination of the Agreement.

**8. TERMINATION**

8.1. Notwithstanding anything to the contrary expressed or implied elsewhere herein, the Agreement may be terminated forthwith (without prejudice to the accrued rights and/or remedies of the Parties):

8.1.1. By either Party in the event of a material breach by the other of the terms and conditions of the Agreement provided that, if such breach

Exhibit 8 Part 7

is capable or remedy, then the same shall take effect until the Party not in breach shall have given 14 days' notice to the other requiring the breach to be remedied and that the other shall not have remedied the same within that period;

8.1.2. By either Party by giving notice in writing to the other in the event that the other becomes insolvent, bankrupt or goes into liquidation for the purpose of amalgamation or reconstruction), or enters into an arrangement or composition with its creditors;

8.1.3. By the Company in the event that the Consultant ceases to be empowered or able to perform its services under the Agreement in the Territory.

8.2. This Agreement may also be terminated upon mutual written agreement of the Parties.

**9. EXTENT OF COMPANY'S LIABILITY**

9.1. The obligations of the Company under this Agreement shall be limited to the payment of fees in respect of relevant Contracts as provided in Clause 5 and the Schedule hereto.

9.2. The Consultant shall have no right to claim a commission, as described in Clause 5, or any other compensation whatsoever in the event:

9.2.1. The Company decided not to bid or to accept such introduced to it by the Consultant which the Company may decline for any reason, or

9.2.2. For any reason whatsoever a Contract is not awarded to the Company or not paid to the Company.

9.3. Nor shall any compensation be payable by virtue of the termination of this Agreement in accordance with Clause 8 hereof.

**10. ASSIGNMENT**

10.1. Neither of the Parties shall without the written consent of the other Party assign, charge, subcontract or otherwise encumber the Agreement or any of its rights or obligations as hereunder.

10.2. The Company shall have the right to assign this Agreement in whole or in part to any of its holding, associated, affiliated or subsidiary companies.

**11. NOTICES**

11.1. Any communication by either Party shall be in writing and shall be deemed to have been sufficiently made:

11.1.1. On the next business day after the same shall have been delivered by hand to the respective Party at the address hereinafter specified; or

11.1.2. Five business days after being posted by registered airmail post to the address hereto specified; or

11.1.3. On the next business day after the same shall have been transmitted by mail or email to the respective Party at the address herein specified.

11.2. For the purposes of this clause, a "business day" shall be a day on which banks are open for business in the country which the relevant communication is addressed.

**12. MISCELLANEOUS**

12.1. The headings used in this Agreement are for convenience only and shall not be used to interpret the meaning or construction of the Agreement or any party thereof.

12.2. All references to times or dates herein shall be construed with reference to the Gregorian calendar.

12.3. This Agreement supersedes any previous agreements, arrangements or understandings between the Parties relating to the Relevant Business in the Territory.

12.4. The relationship established hereby shall extend only to the Territory and shall be applicable only to the Relevant Business.

12.5. Nothing herein shall be construed as creating a partnership between the Parties or as establishing an agency relationship and the Consultant specifically undertakes not to make representations to the contrary. For the avoidance of doubt, nothing herein shall be deemed to constitute a contract of employment.

12.6. Nothing contemplated in this Agreement shall be construed as in any way limiting or restricting the freedom of action of any holding subsidiary, associated or affiliated company of the Company to establish separately in the Territory.

12.7. The Parties shall at all times comply with the laws, decrees and regulations of the Territory.

12.8. The Parties shall, in relation to this Agreement, act towards each other in the utmost good faith.

12.9. In the event that the Company considers that the Relevant Business could, to its advantage, be developed by a close or modified association with the Consultant, then at the request of the Company both Parties will meet to attempt to work out a mutually acceptable revised basis for their cooperation and if successful in this regard the arrangements herein contained will thereupon be modified accordingly by formal written agreement signed by the Parties.

Exhibit 8 Part 7

12.10. If the Agreement is to be translated into any other language, the English language version of the Agreement shall always prevail.

**13. GOVERNING LAW AND DISPUTE RESOLUTION**

13.1. This Agreement shall be governed and interpreted in accordance with the English laws.

13.2. Parties shall use their best efforts to settle amicably any dispute arising out of or in connection with the interpretation, breach or enforcement of the Agreement.

13.3. In the event a Party is of the opinion that an amicable settlement cannot be reached, the despite shall be finally settled under the Rules of the London Court International Arbitration (LCIA) by three (3) arbitrators appointed in accordance with said Rules. The venue of arbitration shall be in DIFC-LCIA. The arbitration shall be conducted in the English language.

The Parties have caused the Agreement to be executed in two (2) parts by their duly authorized representatives this 5th day of November 2018. Each Party recognizes having reached one (1) original.

Agreed and Signed
For and on behalf of the Company

**African Gold Refinery**

AFRICAN GOLD REFINERY LIMITED AGR P.O.BOX 37574 KAMPALA ENTEBBE, UGANDA

Agreed and Signed
For and on behalf of the Consultant

**Alain Goetz**

DRC-34996 0836

Exhibit 8 Part 7

# EXHIBIT MM

DRC-34996 0837



Exhibit 8 Part 7

No. of Certificate: 2

# AGR International Ltd.

Incorporated in Republic of Seychelles
under the International Business Companies Act, 2016

No. of shares: 150,000

**THIS IS TO CERTIFY** that *MR. PUTHEN PURAYIL THAMPAN SHINU CHEEKKULATHU* of *FT 511 SBK Blg @ Muhaisnah 4 Ft 511 56D Street, P.O. Box 47888, Dubai* is the Registered Proprietor of *One Hundred and Fifty Thousand (150,000)* Shares of *US$1.00* each in the above-named Company subject to the Memorandum and Articles of Association thereof.

Dated this *7th day of June 2021.*

**MR. PUTHEN PURAYIL THAMPAN SHINU CHEEKKULATHU**
Director
**AGR International Ltd.**

Exhibit 9 Part 1

655 15th St, NW
Suite 420
Washington, D.C. 20005
Tel. 202-280-6370
Fax. 877-448-4885

May 19, 2023

**SENT VIA EMAIL (OFAC.Reconsideration@treasury.gov)**

Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Ave., NW
Freedman's Bank Building
Washington, D.C. 20220

**Re:** **Response to OFAC's April 25, 2023 Questionnaire**[1]
*Alain Goetz—Case ID DRC-31659*

Dear OFAC Reconsideration:

On April 25, 2023, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued a second questionnaire to Alain Goetz ("Petitioner") in response to his petition seeking removal of his designation under Executive Order ("E.O.") 13413, as amended. Petitioner provides his response to that questionnaire below in accordance with the case processing schedule that OFAC and Petitioner agreed to in *Goetz v. Gacki et al.*, No. 1:22-cv-01204-JEB before the United States District Court for the District of Columbia, and as extended via email on May 9, 2023, and accepted by the Court on May 10, 2023.[2]

## I. Procedural Background

On March 17, 2022, Petitioner submitted a request to OFAC to stay any sanctions action under consideration targeting him. Later that day, OFAC announced its designation of Petitioner under E.O. 13413, as amended. Specifically, OFAC designated Petitioner for:

---

[1] Because this submission contains business information and/or other information of a sensitive nature, undersigned counsel requests that OFAC treat this correspondence as confidential. If OFAC believes that it is required to release this document or information contained in it to the public pursuant to the Freedom of Information Act or any other law, please notify undersigned counsel as soon as possible.

[2] *Goetz v. Gacki et al.*, No. 1:22-cv-01204-JEB, DN 15, Order on Unopposed Motion for Scheduling Order Amendment (D.D.C. May 10, 2023).

Exhibit 9 Part 1

1) being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the Democratic Republic of the Congo ("DRC") or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC;

2) being a leader of African Gold Refinery Limited ("AGR"); and

3) having acted or purported to act for or on behalf of, directly or indirectly, AGR.[3]

On April 29, 2022, Petitioner filed a lawsuit challenging OFAC's decision to designate him under E.O. 13413, as amended, due to OFAC's failure to consider Petitioner's March 17, 2022 submission prior to designating him.[4] On December 6, 2022, OFAC notified undersigned counsel that it would treat Petitioner's March 17, 2022 submission as a delisting request under 31 C.F.R. § 501.807, rather than a request for stay of designation.

On January 31, 2023, OFAC disclosed the unclassified version of the administrative record compiled in support of Petitioner's designation under E.O. 13413, as amended. In response, Petitioner provided a submission on February 28, 2023 which supplemented his request for a stay of designation with arguments and information supporting that request, and which directly addressed information contained in the disclosed administrative record. On March 21, 2023, OFAC sent a questionnaire to Petitioner seeking additional, clarifying, and corroborating information with respect to the arguments and information contained in Petitioner's request and supplemental submission, to which he responded on April 11, 2023. On April 25, 2023, OFAC issued a second questionnaire to Petitioner, to which he responds below.

---

[3] Press Release, U.S. Dep't of the Treasury, *Treasury Sanctions Alain Goetz and a Network of Companies Involved in the Illicit Gold Trade* (Mar. 17, 2022), https://home.treasury.gov/news/press-releases/jy0664; Notice of OFAC Sanctions Actions, 87 Fed. Reg. 16552 (Mar. 23, 2022).

[4] *Goetz v. Gacki et al.*, No. 1:22-cv-01204-JEB (D.D.C.).

Exhibit 9 Part 1

## II. Responses to OFAC's April 25, 2023 Questionnaire

1. On page 4 of your April 11, 2023 questionnaire response, you state that Mr. Goetz owns and/or controls five companies. Please provide supporting documentation indicating Mr. Goetz's current share ownership and any role (including director status) in Aldabra Limited, Aldbra Limited, WWG Diamonds, and Belgian Precious Metals Industries.

   **RESPONSE**: Please find attached the following annexes regarding Petitioner's ownership and role in the aforementioned companies:

   - Annex A for Aldabra Limited;
   - Annex B for Aldbra Limited;
   - Annex C for WWG Diamonds; and
   - Annex D for Belgian Precious Metals Industries ("BPMI"). Please note, however, that Petitioner is no longer a director of BPMI.

2. On page 10 of your April 11, 2023 questionnaire response, you state that Mr. Goetz is not currently engaged in consulting activities at AGR Limited. Please describe specific instances and dates of activities that Mr. Goetz conducted as a consultant for AGR Limited. Additionally, please indicate when Mr. Goetz stopped serving as a consultant for AGR Limited and provide supporting documentation.

   **RESPONSE**: Petitioner notes that while he was appointed as a consultant for AGR Limited, he never ended up providing any services to that entity. That said, following the allegations that were made against the company, Petitioner participated in communicating publicly with respect to those allegations, as he felt a sense of duty to the company to rebut the allegations even though he was not providing any operational or managerial role with respect to it. That participation continued even after Petitioner's separation from AGR Limited in June 2021.[5]

3. Please explain the relationship between AGR Limited and AGR International Ltd. from February 2018 – when, according to page 7 of your February 28, 2023 delisting petition, Mr. Goetz divested from AGR Limited – to June 2021, when, also according to page 7 of your February 28, 2023 delisting petition, Mr. Goetz divested from AGR International Ltd.

[5] Annex E-AGR Limited Termination Letter.

Exhibit 9 Part 1

**RESPONSE**: Between February 2018 and June 2021, AGR International Ltd. was the majority shareholder of AGR Limited.

4. On page 5 of your April 11, 2023 questionnaire response, you state that "Mr. Goetz was a shareholder in CG-Vastgoed Invest from 2008-2022 and sold his share to Sylvain Goetz." Please provide supporting documentation showing Mr. Goetz's sale of his shares in CG-Vastgoed Invest to Sylvain Goetz.

   **RESPONSE**: Please see Annex F for documentation of the sale of Petitioner's shares in CG-Vastgoed Invest to Sylvain Goetz.

5. On page 6 of your April 11, 2023 questionnaire response, you state that "Mr. Goetz previously held 49% of the shares in Goetz Gold LLC from 2013 until May 7, 2020, at which time he sold his shares to Meryl Mongaya Secapuri." Please provide supporting documentation showing Mr. Goetz's sale of his shares in Goetz Gold LLC to Meryl Mongaya Secapuri.

   **RESPONSE**: Please see Annex G for documentation concerning the sale of Petitioner's shares in Goetz Gold LLC—which had changed its name P G R Gold Trading L.L.C.––to Meryl Mongaya Secapuri.

6. On page 6 of your April 11, 2023 questionnaire response, you state that "Mr. Goetz previously held 49% of the shares of the Premier Gold Refinery LLC from 2017 until May 7, 2020, when he sold his shares to Meryl Mongaya Secapuri." Please provide supporting documentation showing Mr. Goetz's sale of his shares in Premier Gold Refinery LLC to Meryl Mongaya Secapuri.

   **RESPONSE**: Please see Annex H for documentation concerning the sale of Petitioner's shares in Premier Gold Refinery LLC to Meryl Mongaya Secapuri.

7. On page 8 of your April 11, 2023 questionnaire response, you state that "Mr. Goetz was previously a shareholder and director of Argor International SA until October 2018." Please provide supporting documentation showing Mr. Goetz's sale of his shares in Argor International SA and cessation of his activities as a director.

   **RESPONSE**: Please see Annex I for documentation concerning the sale of Petitioner's shares in Argor International SA, and cessation of his activities as a director.

Exhibit 9 Part 1

8. On page 5 of your April 11, 2023 questionnaire response, you indicate that Alaxy BVBA and Orofino BV are undergoing liquidation and provide shareholder declarations of these liquidations in Exhibits G and H, respectively. Please provide supporting documentations issued by official authorities confirming the liquidation of Alaxy BVBA and Orofino BV.

**RESPONSE**: The companies' appointed liquidator has been unable to obtain the requested documents from official authorities despite numerous requests.

9. A February 17, 2022 The Intercept article[6] reports that Sylvain Goetz maintains a 25 percent stake in the North Star refinery in Brazil. Please detail Mr. Goetz's connections to the North Star refinery in Brazil.

**RESPONSE**: Petitioner objects to this question insofar as it seeks information that is irrelevant to the bases of delisting that he has presented, and the information that he has supplied, in this matter. Indeed, this question does not seek information that is additional, clarifying, or corroborative to the arguments and information that he has presented in his prior submissions.

Further, Petitioner objects to this question as being vague insofar as it does not identify what OFAC considers to be a "connection," such that Petitioner can understand and formulate a fully responsive answer to this question.

10. Please detail Mr. Goetz's business activities in the following jurisdictions over the past five years:

    a. Turkey

**RESPONSE**: Petitioner objects to this question insofar as it seeks information that is irrelevant to the bases of delisting that he has presented, and the information that he has supplied, in this matter. Indeed, this question does not seek information that is additional, clarifying, or corroborative with respect to the arguments and information that Petitioner has provided in support of his delisting.

    b. United Arab Emirates

[6] Hyury Potter, "A Secretive Belgian Tycoon is a key Investor in a Major New Gold Refinery in Brazil's Amazon", *The Intercept*, (Feb. 17, 2022) available at https://theintercept.com/2022/02/17/brazil-amazon-gold-refinery-investor-sylvain-goetz/.

Exhibit 9 Part 1

**RESPONSE**: Petitioner has engaged in the business activities in the UAE over the past five years through several companies. Specifically, from 2013 to 2020, Petitioner was a shareholder of Goetz Gold LLC, a non-manufactured precious metal trading company. Between 2017 and 2020, Petitioner was a shareholder in Premier Gold Refinery, a gold refinery company. From 2007 to 2022, Petitioner served as a shareholder and Managing Director of AGOR DMCC, a non-manufactured precious metal trading company that was liquidated. Since 2012, Petitioner is a shareholder and director of Aldabra Limited.

c. Brazil

**RESPONSE**: Petitioner objects to this question insofar as it seeks information that is irrelevant to the bases of delisting that he has presented, and the information that he has supplied, in this matter. Indeed, this question does not seek information that is additional, clarifying, or corroborative with respect to the arguments and information that Petitioner has provided in support of his delisting.

d. Venezuela

**RESPONSE**: Petitioner objects to this question insofar as it seeks information that is irrelevant to the bases of delisting that he has presented, and the information that he has supplied, in this matter. Indeed, this question does not seek information that is additional, clarifying, or corroborative with respect to the arguments and information that Petitioner has provided in support of his delisting.

e. Rwanda

**RESPONSE**: In early 2017, the Office of the President of the Republic of Rwanda contacted Petitioner regarding the establishment of a gold refining facility in Rwanda. On February 23, 2017, Ngali Mining (a state-owned entity) and Aldabra Limited entered into a Shareholder's Agreement under which they each own 50% of the shares of Aldango Limited, a gold refinery located in Kigali, Rwanda. Thus, Petitioner is an indirect shareholder of Aldango Limited.

f. Uganda

**RESPONSE**: As OFAC is aware, Petitioner was a shareholder of AGR Limited from 2015 to February 2018; and served as a director of the company from 2015 to January

Exhibit 9 Part 1

2019. In November 2018, Petitioner was appointed as a consultant of AGR Limited. Since 2014, Petitioner has been a shareholder and director of Aldbra Limited.

g. Belgium

**RESPONSE**: Petitioner notes that he has engaged in business activities in Belgium through his involvement in several Belgian companies over the past five years. For instance, Petitioner is a shareholder and director of WWG Diamonds; Alaxy BVBA (in the process of liquidation); and Orofino NV (in the process of liquidation). Further, Petitioner has held shares in CG-Vastgoed Invest; European Guarantee Agency International; and Argor International SA. Petitioner has served as a director of Asteco SA and Argor International SA.

11. According to press reporting[7], the Rwandan government suspended Aldango's license to export gold from Rwanda in January 2021 and a Rwandan court ordered the sale of Aldango's properties to pay owed taxes. Please describe Aldango's current operating status and status of the court-ordered sale of Aldango's assets.

**RESPONSE**: Petitioner objects to this question as it seeks information in the possession or control of a third-party. Specifically, this question seeks information regarding the status of an entity for which Petitioner is not the custodian of records.

To the extent a response is required, it is Petitioner's understanding that Aldango is currently operational, under the name Gasabo Gold Refinery Ltd. Petitioner is unaware of the status of the sale of Aldango's assets.

12. On page 10 of your April 11, 2023 questionnaire response, you state that Cherry Ann Dacdac Mandia is Mr. Goetz's former employee. Please detail the capacity in which Cherry Ann Dacdac Mandia served as Mr. Goetz's employee, along with the dates of service. Additionally, please detail any other business relationships that Mr. Goetz and Cherry Ann Dacdac Mandia were involved in.

**RESPONSE**: Cherry Ann Dacdac Mandia was AGR Limited's Office Manager and held an administrative role there from January 2017 until the time Petitioner left the company. Ms. Mandia currently serves as a director of Aldbra Limited, and is primarily responsible for administrative duties in that role.

[7] "Rwanda's First Gold Refinery Faces Hitches," *IGIHE Network*, (March 10, 2022), available at https://en.igihe.com/news/article/rwanda-s-first-gold-refinery-faces-hitches.

Exhibit 9 Part 1

13. On page 10 of your April 11, 2023 questionnaire response, you state that Mr. Goetz and Sylvain Goetz were previously business partners. Please describe the nature of the business partnership(s). In your response, please indicate the dates of their partnership, names of any entities in which Mr. Goetz and Sylvain Goetz had a mutual business interest and describe the activities of those entities.

    **RESPONSE**: Petitioner serves as a shareholder and/or director in WWG Diamonds and BPMI, two companies in which Sylvain Goetz also was a shareholder and/or director. In the past, Petitioner served as a shareholder and/or director in the following companies in which Sylvain Goetz served (or serves) as a shareholder and/or director:

    1) Tony Goetz NV (Industrial Refining Company);

    2) CG Vastgoed Invest: Petitioner was a shareholder in this company from September 2008 to October 2022;

    3) European Guarantee Agency International: Petitioner was a shareholder in this company from May 2001 to October 2022, and a director from May 2001 to August 2004; and

    4) Argor International: Petitioner was a shareholder and director in this company through October 2018. Petitioner understands that Sylvain Goetz is a shareholder and director of this company.

    Please see Annex J for documentation responsive to this question.

14. Please detail Mr. Goetz's current or past business relationships with the below individuals. In your response, please provide the dates of and an overview of these relationships:

    a. Moses Sadoori

    **RESPONSE**: Petitioner and Moses Sadoori were both shareholders of AGR Ltd. Specifically, Moses Sadoori maintained one share in AGR Limited from the time of its incorporation in March 2014 until Petitioner sold his shares.

    b. Sharon Tem

Exhibit 9 Part 1

**RESPONSE**: Sharon Tem was AGR Limited's Corporate Secretary from 2016 until Petitioner left the company. To Petitioner's knowledge, Ms. Tem currently serves as Aldbra Limited's Corporate Secretary.

c. Omar Hassan Ali Al Attar

**RESPONSE**: Petitioner and Omar Hassan Ali Al Attar were shareholders of Goetz Gold LLC and Premier Gold Refinery. Omar Hassan Ali Al Attar was a majority shareholder of Goetz Gold LLC from May 2013 until Petitioner sold his shares in May 2020; and was also a shareholder of Premier Gold Refinery in 2017 until Petitioner sold his shares in May 2020.

d. Shahid Andul Qadar

**RESPONSE**: Shahid Andul Qadar was formerly a shareholder of Premier Gold Refinery who sold his shares to Petitioner in June 2017.

e. Ma Meryl Mongaya Secapuri

**RESPONSE**: In May 2020, Petitioner sold his ownership interest in Premier Gold Refinery LLC and Goetz Gold LLC to Ma Meryl Mongaya Secapuri. She also replaced Petitioner as Manager in both companies.

15. Please detail Mr. Goetz's current or past relationship with AAA International Services Ltd.

**RESPONSE**: AAA International Services Ltd served as AGR International's Registered Agent. Mr. Goetz's relationship with AAA International Services was through that role.

16. Please provide an English language translation of Exhibit KK.

**RESPONSE**: Please see Annex K for an English translation of Exhibit KK.

## III. Conclusion

Petitioner respectfully requests that OFAC rescind his E.O. 13413, as amended, designation and remove his name from the SDN List. As demonstrated in his submissions to OFAC, there is an insufficient basis for his designation, and the alleged circumstances underlying

Exhibit 9 Part 1

his designation no longer apply. In any event, Petitioner has proposed remedial measures that would negate the basis of his designation and provide OFAC with assurances that he is not engaged in sanctionable conduct in the future.

Please forward all correspondence regarding this questionnaire response to:

Erich C. Ferrari
Ferrari & Associates
655 15th St., N.W.
Suite 420
Washington, D.C. 20005
Email: ferrari@falawpc.com

Petitioner thanks OFAC for its consideration and looks forward to its response.

Sincerely,

Erich C. Ferrari

Exhibit 9 Part 1

# Annex

# A

DRC-34996 0849


Exhibit 9 Part 1

مؤسسة التواصل للترجمة القانونية
Communication Legal Translation Est.

ص.ب ٢٢٣٩٢، دبي، الإمارات العربية المتحدة، هاتف: ٢٦٦٣٥١٧ ٤ ٩٧١+ فاكس: ٢٦٨٩٦١٥ ٤ ٩٧١+
بريد إلكتروني: comm123@emirates.net.ae إنترنت: www.communicationdubai.com
P.O. Box 22392, Dubai, United Arab Emirates Tel: +971 4 2663517 Fax: +971 4 2689615
E-mail: comm123@emirates.net.ae Website: www.communicationdubai.com

United Arab Emirates
Ministry of Justice
الإمارات العربية المتحدة
وزارة العدل
14/05/2012

**عقد تأسيس شركة**
**الدبرة المحدودة**
**("الشركة")**

١- اسم الشركة

اسم الشركة هو "شركة الدبرة المحدودة".

٢- المكتب المسجل.

يقع المكتب المسجل لمقر الشركة في برج رولكس، الدور السادس والعشرين، شارع الشيخ زايد، صندوق بريد ٣٣٦٧٥، دبي، دولة الإمارات العربية المتحدة.

٣- الوكيل المسجل.

الوكيل المسجل للشركة هو شركة "تايلور ويسينج (الشرق الأوسط)".

٤- الأهداف.

٤-١ أهداف تأسيس "الشركة" هي كالآتي:

(أ) حيازة أو شراء الأسهم أو الحصص في أي شركة و/أو كيان و/أو مشروع بأي مكان حول العالم (سواء إذا كانت الشركة أو الكيان أو المشروع مسجلا في سوق الأوراق المالية أو غير مسجل)، وشراء الممتلكات المعتمدة من قبل "سلطة المنطقة الحرة بجبل علي".
(ب) ممارسة أي نشاط تجاري حسبما تجيز لوائح الشركات الأجنبية المعمول بها لدى سلطة المنطقة الحرة بجبل علي.

٤-٢ لا يجوز للشركة القيام بأي مما يلي:

(أ) مزاولة العمل مع أشخاص مقيمين في دولة الإمارات العربية المتحدة.
(ب) تملك حصة في أي عقار بدولة الإمارات العربية المتحدة؛ باستثناء الإيجار على النحو المنصوص عليه في اللائحة ١٥(٢) أو حسبما تجيز السلطة.
(جـ) ممارسة الأعمال المصرفية.
(د) مزاولة العمل كشركة تأمين أو إعادة تأمين أو وكيل تأمين أو وسيط تأمين.
(هـ) باشرة أي عمل آخر تحظره السلطة بموجب اللوائح المعمول بها من قبل السلطة.

٤-٣ لا يجوز اعتبار "الشركة" على أنها تباشر العمل مع أشخاص مقيمين في دولة الإمارات العربية المتحدة فقط جراء قيامها بأي مما يلي:

نشهد أنا الموقع على هذا المستند، بصفتي مترجما قانونيا مرخصا ومحلفا من قبل وزارة العدل من اللغة العربية إلى اللغة الإنجليزية وبالعكس، بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي
I, the signatory to this document, as legal translator duly licensed and sworn by the Ministry of Justice, from Arabic to English and vice versa, do hereby certify that the enclosed translation is correct and identical to the original text

DRC-34996.0850

Exhibit 9 Part 1

مؤسسة التواصل للترجمة القانونية
Communication Legal Translation Est.
ص.ب ٢٢٣٩٢، دبي، الإمارات العربية المتحدة، هاتف: ٢٦٦٣٥١٧ ٤ ٩٧١+ فاكس: ٢٦٨٩٦١٥ ٤ ٩٧١+
بريد إلكتروني: comm123@emirates.net.ae إنترنت: www.communicationdubai.com
P.O. Box 22392, Dubai, United Arab Emirates Tel: +971 4 2663517 Fax: +971 4 2689615
E-mail: comm123@emirates.net.ae Website: www.communicationdubai.com

(أ) إجراء أو مواصلة الاتصالات مع المتخصصين أمثلة المستشارين القانونيين أو المحاسبين أو شركات الإدارة أو أي أشخاص آخرين بنفس الصفة يمارسون العمل داخل دولة الإمارات العربية المتحدة.
(ب) إعداد الدفاتر والسجلات والاحتفاظ بها داخل دولة الإمارات العربية المتحدة.
(جـ) عقد اجتماعات مع مديريها أو أعضائها داخل دولة الإمارات العربية المتحدة.
(د) إيجار عقار بغرض استغلاله كمكتب مسجل أو تملك عقار في جزر النخيل أو جزر الجميرا أو أي عقارات مملوكة لدى شركة نخيل العقارية أو عالم دبي أو مجموعة دبي القابضة أو شركة إعمار العقارية أو أي عقار آخر معتمد من قبل السلطة.
(هـ) امتلاك حساب مصرفي في أحد مصارف دولة الإمارات العربية المتحدة بغرض تيسير المعاملات المادية الروتينية.

٤-٤ إذا كانت :الشركة ترغب في ممارسة النشاط التجاري أو أي عمل آخر في "المنطقة" أو في أي مكان آخر بدولة الإمارات العربية المتحدة، فيلزم عليها الحصول على الترخيص المناسب لممارسة النشاط التجاري أو أي عمل آخر من السلطات المختصة.

**٥- رأس المال المرّخص**

يبلغ رأس المال المرّخص "للشركة" ثلاثمائة ألف درهم إماراتي (٣٠٠,٠٠٠.٠٠ درهم إماراتي) موزعة على ثلاثمائة ألف (٣٠٠,٠٠٠) سهم بقيمة اسمية تبلغ درهمًا إماراتيًا واحدًا لكل سهم. على أن جميع الأسهم الصادرة عن "الشركة" يجب أن تكون من نفس الفئة.

**٦- مواد تأسيس الشركة المعمول بها (''المواد'')**

وفقا للأحكام المذكورة في "لوائح الشركات الأجنبية" المعمول بها لدى "سلطة المنطقة الحرة بجبل علي"، فإن "المواد"، والتعهدات المتضمنة من جانب "الشركة" وكل عضو بشأن مراعاة كافة الأحكام التي تنص عليها المواد، حالما يتم تسجيلها، تصير ملزمة "للشركة" وأعضائها إلى نفس الحد كما لو تم توقيعها على التوالي من قبل "الشركة" ومن قبل كل عضو.

**٧- تعديل ''المواد''**

١-٧ طبقًا للأحكام التي تنص عليها "لوائح الشركات الأجنبية" المعمول بها لدى "سلطة المنطقة الحرة بجبل علي"، يجوز "للشركة" تعديل "المواد" الخاصة بها بما يتفق مع اللوائح.

أشهد أنا الموقع على هذا المستند، بصفتي مترجما قانونيا مرخصا ومحلفا من قبل وزارة العدل من اللغة العربية إلى اللغة الإنجليزية وبالعكس، بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي
I, the signatory to this document, as legal translator duly licensed and sworn by the Ministry of Justice, from Arabic to English and vice versa, do hereby certify that the enclosed translation is correct and identical to the original text



Exhibit 9 Part 1

ص.ب ٢٢٣٩٢، دبي، الإمارات العربية المتحدة، هاتف: ٢٦٦٣٥١٧ ٤ ٩٧١+ فاكس: ٢٦٨٩٦١٥ ٤ ٩٧١+
بريد إلكتروني: comm123@emirates.net.ae إنترنت: www.communicationdubai.com
P.O. Box 22392, Dubai, United Arab Emirates Tel: +971 4 2663517 Fax: +971 4 2689615
E-mail: comm123@emirates.net.ae Website: www.communicationdubai.com

٢-٧ بالرغم من أي قواعد منصوص عليها في"المواد"، فإنه ليس على أي عضو "بالشركة" أن يكون ملزمًا بأي تعديل تم إجراؤه في "المواد" عقب تاريخ تعيينه كعضو إذا، وطالما أن هذا التعديل:

(أ) يتطلب منه الحصول على أو الاكتتاب من أجل الحصول على المزيد من الأسهم مقارنة بعدد الأسهم التي توجد بحيازته في تاريخ إجراء التعديل؛ أو

(ب) يزيد، بأي صورة من الصور، المسئولية الواقعة عليه في ذلك التاريخ بشأن المساهمة في أسهم رأس مال "الشركة الأجنبية" أو غير ذلك مما يقتضي بدفعه المال إلى "الشركة الأجنبية"؛

ما لم يوافق كتابة على أن يكون ملزمًا بذلك، إما قبل أو بعد إجراء التعديل.

٨- تتمتع "الشركة" بصلاحيات وحقوق وامتيازات الشخص الطبيعي.

٩- صلاحيات الشركة غير مقيدة بأي من القواعد المذكورة في "المواد" وبأي تصرف يصدر من قبل أي من أعضائها.

١٠- أنا، الموقع أدناه، باسمه وعنوانه وصفته الموقع عليها أدناه، أرغب في تأسيس "شركة أجنبية" وفقا "لعقد التأسيس هذا"، وأقر بموافقتي على حيازة عدد الأسهم المذكورة أمام اسمي في رأس مال "الشركة". ومن ثم، فقد تم إبرام هذا العقد في تاريخ ١١ من أبريل ٢٠١٢.

كما إنني أقر بموافقتي كذلك على أن رأس مال الشركة هو ثلاثمائة ألف درهم إماراتي (٣٠٠,٠٠٠.٠٠ درهم إماراتي) موزعة على النحو التالي:

| اسم المساهم | عدد الأسهم | قيمة الأسهم |
|---|---|---|
| ألين إف. في. جويتز | ٣٠٠,٠٠٠ | ٣٠٠,٠٠٠.٠٠ درهم إماراتي |

تم التوقيع هذا العقد في تاريخ ١١ من إبريل ٢٠١٢ من قبل

ماري بوري
لصالح وبالنيابة عن
ألين إف. في. جويتز

أشهد أنا الموقع على هذا المستند، بصفتي مترجما قانونيا مرخصا ومحلفا من قبل وزارة العدل من اللغة العربية إلى اللغة الإنجليزية وبالعكس، بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي

I, the signatory to this document, as legal translator duly licensed and sworn by the Ministry of Justice, from Arabic to English and vice versa, do hereby certify that the enclosed translation is correct and identical to the original text

Exhibit 9 Part 1

MEMORANDUM OF ASSOCIATION OF

ALDABRA LIMITED
(THE "COMPANY")

1. Name of the Company.

The Name of the Company is ALDABRA LIMITED.

2. The Registered Office

The registered Office of the Company is located at Rolex Tower, 26th floor, Sheikh Zayed Road P.O. Box 33675 Dubai, UAE.

3. The Registered Agent.

The Registered Agent of the Company is Taylor Wessing (Middle East) LLP

4. Objects

4.1 The objects for which the Company is established are -

(a) to acquire, purchase shares or interests in any company, entity and/or undertaking anywhere in the world (whether such company, entity or undertaking is listed on any stock exchange or not) and to purchase properties approved by the Jebel Ali Free Zone Authority; and

(b) to carry out any commercial activity as may be permissible by the Jebel Ali Free Zone Authority Offshore Companies Regulation.

4.2 The company shall not -

(a) carry on business with persons resident in the United Arab Emirates;

(b) own an interest in any real property located in the United Arab Emirates, other than a lease referred to in Regulation 15(2) or as approved by the Authority.

(c) carry on banking business;

(d) carry on business as an insurance or re-insurance company, insurance agent or insurance broker; or

(e) carry on any other business which may, by regulations made by the Authority, be prohibited by the Authority.

4.3 The Company shall not be treated as carrying out business with persons resident in the United Arab Emirates by reason only that -

(a) it makes or maintains professional contact with legal consultants, accountants, management companies or other similar persons carrying on business within the United Arab Emirates,

(b) it prepares and maintains books and records within the United Arab Emirates,

(c) it holds within the United Arab Emirates meetings of its directors or members;

(d) it holds a lease of property for use as a registered office or owns real property on the Palm Islands or Jumeirah Islands or any properties owned by Nakheel Company LLC, Dubai World, Dubai Holdings, Emaar Properties or any other real property approved by the Authority; or

(e) it holds an account in a bank in the United Arab Emirates for the purpose of conducting its routine operational transactions.

4.4 If the company wishes to conduct trade or other business in the Zone or elsewhere in the United Arab Emirates, it must obtain the appropriate licence to conduct the trade or other business activity from the competent authorities.

DRC-34996 0853

Exhibit 9 Part 1

5. Authorized Capital

The capital of the Company is three hundred thousand United Arab Emirates Dirhams (AED 300,000.00) divided into three hundred thousand (300 000) shares with a par value of one United Arab Emirates Dirham (AED 1.00) each. All Shares issued by the Company shall be of the same class.

6. Effect of the Articles of Association of the Company ("Articles")

Subject to the provisions of the Jebel Ali Free Zone Authority Offshore Companies Regulations, the Articles, when registered, shall bind the Company and its members to the same extent as if they respectively had been signed by the Company and by each member, and contained covenants on behalf of the Company and each member to observe all the provisions of the Articles.

7. Alteration of the Articles

7.1 Subject to the provisions of the Jebel Ali Free Zone Authority Offshore Companies Regulations, the Company may by Resolution alter its Articles.

7.2 Notwithstanding anything in the Articles, no member of the Company is bound by any alteration made in the Articles after the date on which it became a member, if and so far as the alteration: -

(a) requires him to take or subscribe for more shares than the number held by him at the date on which the alteration is made; or

(b) in any way increases his liability as at that date to contribute to the Offshore Company's share capital or otherwise to pay money to the Offshore Company,

Unless he agrees in writing, either before or after the alteration is made, to be bound by it.

8. The Company has the capacity and rights and privileges of a natural person.

9. The capacity of the Company is not limited by anything in its Articles or by any act of its members.

10. I the undersigned, whose name, address and description are subscribed hereto, am desirous of incorporating an Offshore Company pursuant to this Memorandum of Association, and I agree to take the number of shares in the capital of the Company set opposite my name. Therefore, this Memorandum is entered into on the 11th day of April 2012.

I further agree that the capital of the Company is three hundred thousand United Arab Emirates Dirhams (AED 300,000.00) and divided in the following manner:-

| Name of Subscriber | No. of Shares | Value of Shares |
|---|---|---|
| ALAIN F. V. GOETZ | 300 000 | AED 300,000.00 |

Signed on this 11th day of April 2012 by

Marie Borye
For and on behalf of
ALAIN F. V. GOETZ

Communication Legal Translation
Salah Al Zein
Legal Translator

Exhibit 9 Part 1

# Annex

# B

DRC-34996 0855

Exhibit 9 Part 1

**THE REPUBLIC OF UGANDA**

**THE COMPANIES ACT 2012**

CERTIFIED TRUE COPY

**COMPANY LIMITED BY SHARES**

ABALO LILIAN

# MEMORANDUM

REGISTRAR OF COMPANIES
KAMPALA

# AND

# ARTICLES OF ASSOCIATION

OF

# ALDBRA LIMITED

**INCORPORATED THIS ____ DAY OF _______ 2014**

**DRAWN BY:**
SEBALU & LULE ADVOCATES
P.O. BOX 2255
KAMPALA

189501

THE REPUBLIC OF UGANDA

# Certificate of Incorporation

(Under section 18(3) of the companies Act 2012)

I CERTIFY that ALDBRA LIMITED

has this day been incorporated with Limited Liability.

Dated at Kampala, this 18TH day

of SEPTEMBER the year 2014

ABALO LILIAN

ASST. Registrar of Companies

Printed by Uganda Printing and Publishing Corporation

Exhibit 9 Part 1

THE COMPANIES ACT 2012

************

COMPANY LIMITED BY SHARES

************

MEMORANDUM OF ASSOCIATION

OF

ALDBRA LIMITED

************

A. The name of the Company is **"ALDBRA LIMITED"**.

B. The Registered office of the Company will be situate in Uganda.

C. The objects for which the Company is formed are:

1. To set up and establish a gold refinery.

2. To undertake the business of selling and exporting gold.

3. To establish, purchase or otherwise acquire warehouses, depots, go-downs, cold storage facilities, stores, offices, buildings, premises, property, fixed or moveable to be used in or about the business of refinery and exporting of gold.

4. Generally to carry on business and act as commission agents, manufacturers representatives or any other kind of agency or in any capacity.

5. To carry on the business of property and development financing and other related businesses and to act as trustees and estate managers.

6. To carry on the business and to act as manufacturers, development consultants, sub-contractors, traders and commission agents.

7. To acquire and undertake the whole or any part of the business, property and liabilities of any person or company carrying on any business which the Company is authorized to carry on, or possessed of property suitable for the purpose of the Company.

8. To erect, construct, lay down, purchase or otherwise acquire, houses, offices, works, workshops, buildings and premises and any fixed and moveable machinery, tools, engines, boilers, plant, implements, patterns, stock-in-trade, patent rights or other property of any description necessary or convenient for the Company's business.

9. To sell, mortgage, assign, convey, let on lease or otherwise dispose from time to time all or any of the concessions, rights, interests, lands, roads and premises, plant, machinery or apparatus, merchandise, stock-in-trade and other property of the Company, or such part or parts thereof as may be considered expedient.

10. To grant leases, privileges, concessions or rights whatever over, in, upon or affecting any property of the Company.

11. To acquire, take on lease or in exchange, hire or otherwise purchase estates, or plantations, and to carry on the business of planters, growers and producers of maize, millet, rice, cassava, wheat, barley and other grains, groundnuts, simsim and other oil seeds, flax, sisal, cotton, coffee, tobacco, tea, sugar and natural products of all kinds.

12. To rear and keep poultry and farm animals of all types and to carry on trade in poultry and farm animals, farm animal products and poultry and farm animal feed stuff.

13. To borrow or raise, or secure the payment of money for the purposes of the Company in such manner and on such terms as may seem expedient, and in particular by the issue of debentures or otherwise and charged or not charged upon the whole or any part of the property of the Company, both present and future, including its uncalled capital.

14. To apply for purchase or otherwise acquire, any patents licenses and the like, conferring an exclusive or non-exclusive or limited right to use any secret or other information as to any invention which may seem capable of being used for any of the purposes of the Company, or

the acquisition of which may seem calculated directly or indirectly to benefit the Company, and to use, exercise, develop, grant licenses in respect of, or otherwise turn to account the rights and information so acquired.

15. To purchase, subscribe for or otherwise acquire and to hold the shares, stock or obligations of any company in Uganda or elsewhere, and upon a distribution of assets or divisions of profits to distribute any such shares, stock or obligations amongst the members of the Company in specie.

16. To issue, place, underwrite, or guarantee the subscription of, or concur, or assist in the issuing or placing, underwriting or guaranteeing the subscription of shares, debentures, debenture stock, bonds, shares, stocks and securities of any company, whether limited or unlimited, by Act or otherwise, at such times and upon such terms and conditions as to remuneration and otherwise as may be agreed upon.

17. To invest money at interest on the security of land of any tenure, buildings, farming stock, shares, securities, merchandise, and any other property, and generally to lend and advance money to any person, firms or companies, with or without security, and upon such terms and subject to such conditions as may be deemed expedient.

18. To take part in the management, supervision or control of the business, or operations of any company or undertaking, and for that purpose to appoint and remunerate any directors, accountants, or other experts or agents.

19. To employ experts, to investigate and examine into the conditions, prospects, value, character, and circumstances of any business concerns and undertakings, and generally of any assets, property or rights.

20. To constitute any trusts with a view to the issue of preferred or deferred, or any other special stocks or securities based on or representing any shares, stock or other assets specifically appropriated for the purpose of any such trust, and to settle and regulate and if thought fit, to undertake and execute any such trusts and to issue, dispose of or hold any such preferred, deferred, or other special stocks or securities.

21. To transact or carry on all kinds of agency business, and in particular in relation to the investment of money, the sale of property, and the collection and receipt of money, and the floating of companies and the issue of loans.

22. To give any guarantee in relation to the payment of any debentures, debenture stock, bonds, obligations, share stocks or securities, or the interest or dividends thereon.

23. To enter into any arrangement with any Government or other authority, municipal, local or otherwise, and to obtain from any such Government or authority all rights, concessions, and privileges which may seem conducive to the Company's objects or any of them, or to obtain or endeavor to obtain any Act or Parliament for the purpose of the Company or any other company.

24. To enter into partnership or into any arrangement for sharing of profits, union of interest, reciprocal concession, joint adventure, amalgamation or co-operation with any person or company carrying on or engaged in or about to carryon or engage in any business transaction capable of being conducted so as directly or indirectly to benefit this Company.

25. Generally to purchase, take on lease or in exchange, hire or otherwise acquire, any real or personal property, and any other undertakings, and any rights and privileges which the Company may think necessary or convenient with reference to any of these objects the acquisition of which may seem calculated directly or indirectly to facilitate the realization of any debenture, debenture stock or other securities owned by the Company, or to prevent or diminish any apprehended loss or liability, or which may seem otherwise, and in particular any land, buildings, merchandise, stock-in-trades, policies, patents, licenses, business concerns and undertakings, concessions, shares, stock, book debts and other assets.

26. To grant pensions, allowances, gratuities and bonuses to officers, ex-officers, employees or ex-employees of the Company or its predecessors in business or the dependants or connections of such persons, to establish and maintain or concur in establishing and maintaining trusts, funds or schemes, (whether contributory or non-contributory) with a view to providing pensions or other benefits for any such persons as aforesaid as their

dependants or connections, and to support or subscribe to any charitable funds or institutions, the support of which may, in the opinion of the director, be calculated directly or indirectly to benefit the Company or its employees, and to institute and maintain any club or other establishment or profit-sharing scheme calculated to advance the interest of the Company or its officers.

27. To sell or dispose of the undertaking of the company, or any part thereof, or to amalgamate with any other company for such consideration as the Company may think fit, and in particular for shares (whether fully or partly paid up), debentures or debenture stock, or securities of any other company having similar objects altogether or in part similar to those of this Company. To form and promote any other company or companies for the purpose of acquiring all or any of the property, rights and liabilities of this Company, or for any other purpose which may seem directly or indirectly calculated to benefit this Company.

28. To invest and deal with the moneys of the Company not immediately required upon such stocks, shares and securities, and in such manner as may from time to time be determined.

29. To pay the costs, charges and expenses, preliminary and incidental to the formation, establishment and registration of the Company, or of any other company and to remunerate any persons or company for services rendered in relation to the formation and establishment of the Company, or the conduct of its business, or placing or assisting to place or guaranteeing the placing of or taking any shares in the Company's capital or any debenture stock, shares stock, or securities, whether issued by the Company or not.

30. To draw, accept, endorse, negotiate, execute and issue promissory notes, bills of exchange, scrip and other transferable or negotiable instruments.

31. To distribute among the Members in specie any property of the Company, or any proceeds of sale or disposition of any property of the Company, and for such purpose to distinguish and separate capital from profits, but so that no distribution amounting to a reduction of capital be made except with the sanction (if any) for the time being required by law.

32. To do all or any of the above things in any part of the world and either as principals, agents, trustees, contractors or otherwise, and either alone or in connection with others, and either by or through agents, sub-contractors, trustees or otherwise.

33. To do such things as are incidental or conducive to the attainment of the above objects or are usually carried on in connection therewith, and so that the word "Company" in this clause shall be deemed to include any partnership or other body of persons, whether incorporated or not incorporated and whether domiciled in Uganda or elsewhere and the intention is that the construction of this clause, the objects set forth in each of the foregoing paragraphs, shall, except where otherwise expressed in the same paragraph, be in no way limited by reference to or inference from the terms of any other paragraph of this clause or the name of the Company.

D. The liability of the members is limited.

CERTIFIED TRUE COPY

E. The authorized capital of the Company is Shs.10,000,000 (Shillings Ten Million) divided into 100 (One Hundred) Ordinary Shares of Shs.100,000 (Shillings One Hundred Thousand) each. The Company has the power from time to time to increase or reduce the authorized capital and to divide the same into several classes or otherwise and to attach thereto respectively any preferential or deferred, qualified or special rights, privileges or conditions.

ABALO LILIAN

REGISTRAR OF COMPANIES
KAMPALA

Exhibit 9 Part 1

WE, the several persons whose names and addresses are subscribed, are desirous of being formed into a Company in pursuance of this Memorandum of Association and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAME, DESCRIPTION AND ADDRESS | NUMBER OF SHARES TAKEN BY EACH SUBSCRIBER | SIGNATURE |
|---|---|---|
| 1. ALDBRA LIMITED JEBELALI FREE ZONE, DUBAI | 50% | |
| 2. ALAIN GOETZ[illegible] JEBELALI FREE ZO[illegible] DUBAI | 50% | |

CERTIFIED TRUE COPY
FOR BANK PURPOSES
ALDBRA LIMITED
18 SEP 2014
P. O. BOX 2255, KAMPALA
ABALO LILIAN
REGISTRAR OF COMPANIES
KAMPALA

Dated at Kampala this 17 day of SEPT, 2014

**WITNESS** to the above signatures:

Signature :

Name in Full :

Occupation :

Address :

Exhibit 9 Part 1

THE COMPANIES ACT 2012

CERTIFIED TRUE COPY

************

COMPANY LIMITED BY SHARES

************

ARTICLES OF ASSOCIATION

OF

ALOBRA LIMITED

************

REGISTRAR OF COMPANIES KAMPALA

**Preliminary Table A**

1. The regulations contained in Table A in the First Schedule to the Companies Act (such Table being hereinafter called "A") shall apply to the Company save in so far as the same are excluded or varied hereby in which case the following shall be the regulations of the Company in lieu of the corresponding articles in Table "A".

**INTERPRETATION**

2. In these Articles the words standing in the first column of the table next hereinafter contained shall bear the meaning set opposite to them respectively in the second column thereof, if not inconsistent with the subject or context.

| Words | Meaning |
|---|---|
| The Act ..... | The Companies Act 2012 |
| The Statutes ...... | The Companies Act and every other Act for the time being in force concerning joint stock companies and affecting the Company. |
| That Articles ... | The Articles of Association and the regulations of the Company for the time being in force. |
| The Register .... | The Register of Members of the Company. |

| | |
|---|---|
| The Office ...... | The Registered Office of the Company. |
| The Seal ...... | The Common Seal of the Company. |
| Month ..... | Calendar Month. |
| Paid up ....... | Includes credit as paid up. |
| Dividends ....... | Includes bonus. |
| In writing ....... | Written or printed or produced by any substitute for writing or printing. |
| The Board ........ | The Board of Director for the time being of the Company. |

Words importing the singular number only shall include the plural number, and vice versa.

Words importing the masculine gender only shall include feminine gender.

Words importing persons shall include corporations.

Subject as aforesaid, any words or expression define din the Statutes shall, if not consistent with the subject or context, bear the same meanings in these Articles.

**BUSINESS**

3. The Company is a Private Company within the meaning of Section 30 of the Act and accordingly:

   a) No invitation shall be issued to the public to subscribe for any shares or debentures of the Company.

   b) The number of members of the Company (not including persons who are in the employment of the Company and persons who, having been formerly in the employment of the Company, were while in that employment and have continued after the determination of that employment to be members of the Company), shall be limited to fifty, provided that, for the purposes of this provision where two or more persons hold one or more shares in the Company jointly, they shall be treated as a single member; and

c) The right to transfer the shares of the Company is restricted in manner and to the extent hereinafter appearing.

4. No part of the funds of the Company shall be employed in the purchase of or in loans upon the security of the Company's shares, save so far as may be authorized by the Statutes.

5. Any branch or kind of business which the Company is either expressly or by implication authorized to undertake may be undertaken by the Company at such time or times as the Board shall think fit, and further may be suffered by the Board to be in obeyance, whether such branch or kind of business may have been actually commenced or not, so long as the Board may deem it expedient not to commence or proceed with such branch or kind of business.

6. The office shall be at such place as the Board shall from time to time appoint.

**SHARE CAPITAL AND SHARES**

7. The Company's Authorized Share Capital is Shs.10,000,000 (Shillings Ten Million) divided into 100 (One Hundred) Ordinary Shares of Shs.100,000 (Shillings One Hundred Thousand) each.

8. The Company (or Directors on behalf of the Company) may exercise the powers of paying commission conferred by the Act provided that the rate per cent or the amount of the Commission paid or agreed to be paid shall not exceed the rate of 10 per cent of the issue price of the shares in respect whereof the same is paid or any amount equal to 10 per cent of such issue price, as the case may be. Such commission may, subject to Article 2, be satisfied by the allotment of fully or partly paid shares.

9. The Directors may from time to time make such calls as they think fit upon the Members in respect of any moneys unpaid on the shares held by them respectively (whether on account of the amount of the shares or by way of premium) and not, by the conditions of allotment thereof, made payable at fixed times, and each member shall (subject to the Company giving him at least fourteen days' notice specifying the time or times and place so specified) pay the amount called on his shares.

A call may be made payable by instalments and shall be deemed to have been made at the time when the resolution of the Directors authorizing the call was passed. Clause 15 of Table "A" shall not apply.

Exhibit 9 Part 1

10. All shares shall be at the disposal of the Directors, who may allot, grant options over or otherwise dispose of them to such persons, at such times, and for such consideration and upon such terms and conditions as the Directors may determine, but so that no shares shall be issued at a discount except in accordance with Section 59 of the Act.

11. The Directors may, in their absolute and uncontrolled discretion and without assigning any reason, refuse to register a transfer of share to any person whom it shall in their opinion be undesirable in the interests of the Company to admit to membership.

12. Any share may be transferred by a member to any child or other issue, son-in-law, daughter-in-law, father, mother, brother, sister, nephew, niece, wife or husband of such member, and any share of a deceased member may be transferred by his executors or administrators to any child or other issue, son-in-law, daughter-in-law, father, mother, brother, sister, nephew, niece, widow or widower of such deceased member to whom such member may have specifically bequeathed the same and shares standing in the name of the trustees of the Will of any deceased member may be transferred upon any change of trustees or the trustee for the time being of such Will.

13. Except where the transfer is made pursuant to Clause 9 or 14 hereof, the person proposing the transfer of any share (hereinafter called "the proposing transferor") shall give notice in writing (hereinafter called "the transfer notice") to the Company that he desires to transfer the same. Such notice shall specify the sum he fixes as the fair value and shall constitute the Company as his agent for the sale of the shares (hereinafter called "the Purchasing Member") at the price so fixed, or at the option of the purchasing member, at the fair value to be fixed by the Auditor in accordance with Clause 12 hereof.

A transfer notice may include several shares and in such case shall operate as if it were a separate notice in respect of each. A transfer notice shall be revocable with the sanction of the Directors.

14. If the Company shall, within the space of sixty days after being served with a transfer notice, find a purchasing member, and shall give notice thereof to the proposing transferor, he shall be bound upon payment of the fair value as fixed in accordance with Clauses 10 and 12 hereof to transfer the same to the purchasing member.

15. In case any difference arises between the proposing transfer and the purchasing member as to the fair value of a share, the Auditor shall, on the application of either party, certify in writing the sum which, in his opinion, is the fair value, and in so certifying the Auditor shall be considered to be acting as an expert, and not as an arbitrator, accordingly the Arbitration Act shall not apply.

16. If in case the proposing transferor after having become bound as aforesaid, makes default in transferring the share, the Company may receive the purchase money, and the proposing transferor shall be deemed to have appointed any one Director or the Secretary of the Company as his agent to execute a transfer of the share to the purchasing member, and upon the execution of such transfer the Company shall hold the purchase money in trust for the proposing transferor. The receipt of the Company for the purchase money shall be a good discharge to the purchasing member, and after his name has been entered in the Register in purported exercise of the aforesaid power, the validity of the proceedings shall not be questioned by any person.

17. If the Company shall not, within the space of sixty days after being served with a transfer notice, find a purchasing member and give notice in manner aforesaid, the proposing transferor shall at any time within three months afterwards be at liberty, subject to Clause 8 hereof, to sell and transfer the share (or where there are more shares than one) those not place to any person and at any price.

**LIEN AND FORFEITURE OF SHARES**

18. Table "A" shall apply except that (1) the forfeiture of a share shall include all dividends declared in respect of the forfeited shares and not actually paid before the forfeiture, and (2) the liability of a person whose shares have been forfeited shall continue notwithstanding that the Company may have received payment in full of the nominal amount of the shares.

19. An entry in the Minute Book of the Company of the forfeiture of any shares or that any shares have been sold to satisfy a lien of the company shall be sufficient evidence as against all persons entitled to such shares that the shares were properly forfeited or sold, and such entry, and the receipt of the Company for the price of such shares, shall constitute good title to such shares, and the name of the purchaser shall be entered in the Register a member of the Company, and he shall be entitled to a certificate of title to the shares, and shall not be bound to see to the application of the purchase money.

The remedy (if any) of any former holder of such shares or of any person claiming under or through him shall be against the Company and in damages only.

20. When any share shall have been forfeited an entry shall forthwith be made in the Register of Members of the Company stating the forfeiture and the date thereof and so soon as the share so forfeited shall have been disposed of an entry shall also be made of the manner and date of the disposal thereof.

21. The lien conferred by Clause 11 of Table "A" shall attach to fully paid shares and to all shares registered in the name of any person indebted or under liability of the Company, whether he shall be the sole registered holder or shall be one of two or more joint holders.

**GENERAL MEETING**

22. A General Meeting shall be held once in every calendar year at such time (not being more than fifteen months after the holding of the last preceding General Meeting) and place as may be determined by the Directors, and all General Meetings shall be held in Uganda.

23. No business shall be transacted at any General Meeting unless a quorum of Members is present at the time the meeting proceeds to business. Two members present in person shall be a quorum for all purposes, Clause 53 of Table "A" shall not apply.

24. Fourteen clear days' notice at least (exclusive of the day on which the notice is served or deemed to be served but inclusive of the day for which the notice is given) in respect of all General Meetings shall be given to the Members specifying the place, the day and hour of meting and in case of special business the general nature of such business either by advertisement or by notice sent by post or otherwise served as hereinafter provided, but with the consent in writing of all the Members, a meeting may be convened in such a way as the Directors think expedient. Clause 50 of Table "A" shall not apply.

25. It shall not be necessary to give nay notice of an adjourned meeting, or the business to be transacted at an adjourned meeting. Clause 57 of Table "A" shall be amended accordingly.

26. A poll may be demanded by any Member present in person or by proxy. Clause 58 of Table "A" shall be amended accordingly. The Chairman shall have no casting vote.

27. If any votes shall be counted which ought not to have been counted, or might have been rejected, the error shall not vitiate the resolution unless it be pointed out at the same meeting, and not in that case unless it shall, in the opinion of the Chairman of the meeting, be of sufficient magnitude to vitiate the resolution.

28. Where a company registered under the Act or otherwise incorporated is a member of the Company a person duly appointed by resolution of the Board to represent such company at a meeting of the Company in accordance with the provisions of the Act shall not be deemed to be a proxy, and the production at a meeting of a copy of such resolution duly signed by one Director of such company and by the Secretary (if any), and certified by him or them as being a true copy of the resolution, shall be accepted by the Company as sufficient evidence of the validity of his appointment.

**DIRECTORS**

29. The First Directors of the Company shall be appointed at the first General Meeting of the Company.

The said First Directors and subscribers to this Memorandum and Articles of Association shall appoint the other Directors in writing, if need be.

30. The number of Directors shall not be less than two nor more than six.

31. The Company may from time to time in general meetings increase or reduce the number of Directors and may by Extraordinary Resolution remove any Director and may appoint another person in his stead (provided that this power shall not apply to the First Directors mentioned in Regulation 29 of these Articles unless they relinquish their shares in the Company and/or wish to leave the company).

32. Any casual vacancy occurring in the Board of Directors may be filled by the Directors, who shall have power at anytime and from time to time to appoint a person as additional Director.

33. Any Director shall, in addition to their ordinary remuneration be entitled to be paid all travelling and any other reasonable expenses incurred in or about the Company's business.

## ALTERNATE DIRECTORS

34. A Director who is absent or is about to leave Uganda or who for any reason is unable to attend any meeting or meetings of the Directors may appoint by an instrument in writing under the hand of the appointer any member of the Company or any other person approved by the Board to be Alternate Director and such appointment shall have effect and such appointee while he holds office shall be entitled to notice of meetings of Directors and to attend and vote thereat accordingly and generally to exercise all the rights and functions of such absent Director subject to any limitations or restrictions in the instrument appointing him; but he shall not require any qualification and he shall ipso facto vacate office if and when his appointer returns to Uganda, attends at a Board Meeting or vacates office as a Director. Such Alternate Director may be one of the other Directors of the Company in which case he shall be entitled to vote in both capacities.

## POWER AND DUTIES OF DIRECTOR

35. A Director may hold any office in the Company in conjunction with the office of Director, except that of Auditor and, if he be the sole Director of the Company, the office of Secretary.

36. The Directors may from time to time at their discretion raise or borrow any sum or sums of money for the purposes of the Company, and may secure the repayment of such sums in such manner and upon such terms and conditions as they think fit, and in particular by the issue of debenture or debenture stock, or both to such extent as they may think expedient. Such debentures or debenture stock may be secured on the whole or any part of the property and undertaking of the Company (both present and future) including its uncalled capital for the time being, and by way of floating security or otherwise, in such manner and with such power and remedies as the Directors may determine. Clause 79 of Table "A" shall not apply to the Company. Any powers and duties conferred upon the Directors under this Clause 34, will only be operative with the written consent of the other fellow Directors and upon Board Resolutions.

37. The office of a Director shall be vacated:

    a) If he resigns his office by notice in writing to the Company; or

b) If he is removed from office by an ordinary resolution of the Company of which special notice has been given in accordance with Section 142 of the Act, provided that this shall not apply to the First Directors of the Company; or

c) If he becomes a lunatic or of unsound mind, or the Board shall resolve that he is incapable of performing the function of a Director; or

d) In the case of a Director nominated by the debenture holders of the Company, upon the Company receiving notice from the debenture holder to terminate his appointment; or

e) If he becomes bankrupt or makes any arrangement or composition with his creditors generally or becomes prohibited from being a Director by any order under Section 189 of the Act.

And in like manner any person or a Director of any Company concerned in the promotion of this Company or interested in this Company may be a Director of this Company and shall not be accountable for any profits or benefits so obtained. A general notice that a Director is a member or Director of a specified firm or company and is to be regarded as interested in any transaction with any such firm or company shall be sufficient disclosure under this Article, and special notice relating to any particular transaction with such firm or company as aforesaid.

A Director shall be entitled to vote as Director in respect of any contract or other arrangement in which he is interested and sub-paragraphs (2) and (4) of Clause 84 of Table "A" are varied accordingly.

**PROCEEDINGS OF DIRECTORS**

38. The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall, except when one Director only is in office, be three. When one Director only is in office he shall have and may exercise all the powers and authorities in and over the affairs of the Company as by the regulations of the Company are conferred on the Board of Directors and Clause 99 of the Table "A" shall be modified accordingly.

39. A Meeting of the Directors at which quorum is present shall be competent to exercise all or any of the powers, authorities and discretions by or under the regulations of the Company for the

time vested in the Directors. A resolution in writing signed by all the Directors shall be valid and effectual as if it had been passed at a Meeting of the Directors duly called and constituted.

**THE SEAL**

40. The Seal of the Company shall not be affixed to any instrument except by the authority of a resolution of the Board of Directors and in the presence of a Director and of the Secretary or any two Directors or such other person as the Directors may appoint for the purpose, and that the Director and the Secretary or any two Directors or other person aforesaid shall sign every instrument to which the Seal of the Company is so affixed in their presence.

**DIVIDENDS AND RESERVES**

41. All dividends shall be declared and paid according to the amounts paid or credited as paid on the share in respect whereof the dividend is paid, but no amount paid on a share in advance of calls shall, while carrying interest, be treated for the purpose of this Article as paid on the share. All dividends shall be apportioned and paid pro rata according to the amount paid or credited as paid on the shares during any portion or portions of the period in respect of which the division is paid, but if any share be issued to terms providing that it shall rank for dividend as from a particular date, such share shall rank for dividend accordingly. Clause 118 of Table "A" shall not apply.

42. Any General Meeting declaring a dividend may direct payment of such dividend wholly or in part by the distribution of specific assets, and in particular of paid-up shares of any other company or in any one or more of such ways, and the Directors shall give effect to such resolution.

43. The Company in General Meeting may from time to time and at any time pass a resolution to the effect that it is desirable to capitalize any part of the amount standing to the credit of the Company's reserve funds or to the credit of the profit and loss account or otherwise available for distribution and that accordingly such sum be set free for distribution amongst the Members or any class of members who would be entitled to such amount if distributed by way of dividend and in the same proportion, on the footing that the same be not paid in cash but be applied in payment up in full, of shares, debentures, or other securities of the Company, and that such shares, debentures, or other securities be distributed amongst such Members and the Directors shall give effect to such resolution.

44. Where any difficulty arises in regard to any distribution under either the two last preceding Articles, the Directors may settle the same as they think expedient, and in particular may provide for the case of fractions altogether, and may fix the value for distribution of such specific assets or any part thereof and may determine that cash shall be made to any Members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees upon such trusts for the persons as may seem expedient to the Directors. Where requisite, a proper contract shall be filed in accordance with Section 54 of the Act, and the Directors may appoint any person to sign such a contract on behalf of the persons entitled to the dividend or to such appropriation and distribution, and any contract so entered into shall be binding and effective.

45. The Directors may, without placing the same to reserve, carry over any profits which they think it prudent not to divide.

46. Any notice or document may be served by the Company on any Member either personally or by sending it through the post in a prepaid letter addressed to such Member at its registered address as appearing in the Register of Members.

47. Where a notice is sent by post it shall be deemed to have been served at the expiration of forty-eight hours after it was posted if addressed within Uganda and seven days if addressed outside Uganda and in the latter case shall be dispatched by Air Mail and Clause 131 of Table "A" shall be modified accordingly.

**WINDING-UP**

48. If the Company shall be wound-up, the liquidator may, with the sanction of an Extraordinary Resolution of the contributories divide amongst the contributories in specie, the whole or any part of the assets of the Company and may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the Liquidators, with like sanction, shall think fit.

## INDEMNITY

49. Every Director, Managing Director, Manager, Officer and Auditor of the Company shall be indemnified out of the funds of the Company against all liability incurred by him as such Director, Manager or Auditor in defending any proceedings whether civil or criminal, in which judgment is given in his favour or in which he is acquitted, or in connection with any application under Section 398 of the Act in which relief is granted by the Court.

## ARBITRATION

50. If and whenever any difference shall arise between the Company and any members or their respective representatives, touching the construction of any of the articles herein contained or any act or thing made or done, or to be made or done, or omitted or in regard to the rights and liabilities arising hereunder, or arising out of the relation existing between the parties by reason of these presents or of the Act such difference shall forthwith be referred to a single Arbitrator if the parties to the difference or deadlock shall agree upon whose decision shall be final and of the same effect as a resolution passed by all the members of the Company.

Exhibit 9 Part 1

| Name, Occupation and Postal Address of Subscribers | Signatures of Subscribers |
|---|---|
| 1. ALDBRA LIMITED<br>JEBELALI FREE ZONE,<br>DUBAI | |
| 2. ALAIN GOETZ<br>JEBELALI FREE ZONE,<br>DUBAI | |

Dated at Kampala this 17 day of SEPT 2014.

**WITNESS** to the above signatures:

Signature : ..........................................

Name in Full : ..........................................

Occupation : ..........................................

Address : ..........................................

BARNABAS K. TUMUSINGIZE ★ ADVOCATE AND COMMISSIONER FOR OATHS ★ P.O. BOX 1233, KAMPALA

**DRAWN BY:**
SEBALU & LULE ADVOCATES
EADB BUILDING
PLOT 4 NILE AVENUE
P.O. BOX 2255
KAMPALA

Exhibit 9 Part 1

**Company Form 20**

THE REPUBLIC OF UGANDA

CERTIFIED TRUE COPY

THE COMPANIES ACT 2012

URSB
13 JUN 2019
REGISTRAR

**NOTICE OF APPOINTMENT OF DIRECTORS AND SECRETARY OF COMPANY**

*(Under section 192(4) of the Act).*

Name of Company: ALDBRA LIMITED

Presented by: TEM ADVOCATES & SOLICITORS

**TO: THE REGISTRAR OF COMPANIES**

**TAKE NOTE** that the person/persons whose particulars are provided below has/have been appointed as director/directors/ secretary of the above named company with effect from the 29TH day of MAY the year 2019

**(a) PARTICULARS OF DIRECTORS -INDIVIDUALS**

| Names (first name and surname) | Date of birth | Address | Nationality | Occupation | Other Directorship |
|---|---|---|---|---|---|
| ALAIN FRANCOIS GOETZ | [redacted] | P.O.BOX 37574 | BELGIAN | BUSINESS EXECUTIVE | |
| | | | | | |
| CHERRY ANN DACDAC MANDIA | [redacted] | P.O.BOX 37574 | FILIPINO | BUSINESS EXECUTIVE | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**PARTICULARS OF CORPORATE DIRECTORS**

| Corporate Name | Registered or principal office | Postal address |
|---|---|---|
| | | |
| | | |
| | | |

Exhibit 9 Part 1

(b) PARTICULARS OF THE PERSON (S) WHO IS SECRETARY
PARTICULARS OF INDIVIDUAL SECRETARY

| Names (first name and surname) | Residential and postal address |
|---|---|
| | |
| SHARON TEM | P.O.BOX 6800,KAMPALA |

PARTICULARS OF CORPORATE SECRETARY

| Corporate Name | Registered office |
|---|---|
| | |
| | |

Dated the ......29TH...... day of ......MAY...... the year ......2019......

Signed ........................ Director

Signed ........................ Secretary

Exhibit 9 Part 1

# Annex

# C

DRC-34996 0880

Exhibit 9 Part 1

Mod 2.0

**Luik B** **In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

Voor-behouden aan het Belgisch Staatsblad

*09305214*

Submitted 04-12-2009

Griffie

Bijlagen bij het Belgisch Staatsblad - 08/12/2009 - Annexes du Moniteur belge

Company No. : 0821135682

Name (Full) : **WWG DIAMONDS**

Legal Form : Private company with limited liability

Address : 2018 Antwerpen, Jacob Jacobsstraat 56

Subject of Act: **Incorporation**

**A deed executed before notary public Frederik Jorissen in Antwerp on the second of December two thousand and nine, in his office, shows that a company was established with the following characteristics:**

**LEGAL FORM AND NAME: Private company with limited liability named "WWG DIAMONDS".**

**REGISTERED OFFICE: 2018 Antwerp, Jacob Jacobsstraat 56; RPR Antwerp. DURATION: The company is established for an unlimited duration. FOUNDERS:**

**1. Mr GOETZ Sylvain, residing at Alfons Servaislei 96, 2900 Schoten.**

**2. Mr GOETZ Alain François Viviane, residing at 2340 Luxembourg (city) (Grand Duchy of Luxembourg), Rue Philippe II 1.**

**CAPITAL: twenty thousand euros (EUR 20,000), fully paid into a special account with KBC Bank. CAPITAL COMPOSITION: represented by 200 shares without nominal value, subscribed by the aforementioned founders, each up to one half.**

**Compliance with the legal requirements for placement and payment of the capital has been confirmed by the undersigned notary.**

**FINANCIAL YEAR: begins on January 1 and ends on December thirty-one; first financial year to the thirty-first of December two thousand and ten.**

**EQUIPMENT OF RESERVES/PROFIT APPROPRIATION: Five percent of the net profit is taken in advance for the formation of the legal reserve fund, until it reaches one/tenth of the share capital.**

**The balance is used according to the decision of the general meeting.**

**APPROPRIATE LIQUIDATION BALANCE: The company's assets will first be used to pay the creditors and to cover the costs of the liquidation; the plan of this distribution for this purpose must be approved in advance by the competent commercial court.**

**The net asset of the liquidation is then distributed among the shares, taking into account, where appropriate, the unequal payment of the shares.**

**MANAGEMENT/AUTHORITY: The company is managed by one or more managers, who may or may not be a partner.**

**The managers are authorized to perform all acts of internal management that are necessary or useful for the realization of the company's purpose, with the exception of those acts for which only the general meeting is authorized by law. If there are several business managers, they can divide the management tasks among themselves. Such division of duties cannot be enforced against or by third parties.**

**Each manager represents the company vis-à-vis third parties and in court.**

**The business managers can appoint agents of the company. Only special and limited powers of attorney for certain or a series of certain legal acts are permitted. The proxies commit the company within the limits of the power of attorney granted to them.**

**The mandate of the manager is unpaid. The following non-statutory managers have been appointed:**

**1. Mr. GOETZ Sylvain, aforementioned.**

**2. Mr GOETZ Alain, aforementioned.**

Exhibit 9 Part 1

Voor-behouden aan het Belgisch Staatblad

AUDITOR: The founders have decided not to appoint an auditor in application of article 141 of the Companies Code.

PURPOSE: The company aims to :

Diamond trading: buying and selling, importing and exporting, estimating, processing and cutting of diamonds, as well as precious stones and all items of jewelery and art jewellery.

The company acts for its own account, on commission, as an intermediary or as a representative.

It can participate in all kinds of companies, enterprises, groups or organizations.

It may mortgage its immovable property and pledge all its other property, including the business fund, and may grant aval for all loans, credit lines and other commitments both to itself and to all third parties, provided that it has an interest therein. has at.

It may also exercise the functions of director, manager or liquidator of other companies, where appropriate subject to the appointment of a permanent representative, natural person, for this purpose.

In general, the company will be allowed to carry out all financial, commercial and industrial transactions

which are related to its purpose or which are simply designed to promote its achievement, both at home and abroad.

ORDINARY GENERAL ASSEMBLY: The Ordinary General Assembly must be convened each year on the third Friday of the month of June at 4:00 pm; if that day is a legal holiday, the meeting will be held on the next working day. The first ordinary general meeting will be held in 2011.

Ordinary general meetings are held at the registered office of the company or at the place in the municipality where the registered office of the company is located, as indicated in the notice convening the meeting.

CONDITIONS OF ADMISSION/VOTING RIGHTS: Without prejudice to the rules regarding legal representation and in particular the mutual representation of married couples, each partner may be represented at the meeting by a proxy, partner or not.

Each share entitles the holder to one vote.

The partners can vote in writing. To this end, the ballot paper drawn up by the management body, containing all items on the agenda, dated and signed, must reach the company no later than two days before the meeting, and the writing must clearly indicate in which sense the partner wishes to vote. The partner will also state on the ballot paper his surname, first names, or company name and legal form, as well as his place of residence or registered office, and the number of shares with which he participates in the vote.

With the exception of decisions that must be passed by authentic deed, the partners can unanimously and in writing take all decisions that fall within the competence of the general meeting.

SPECIAL POWER OF AUTHORITY: The undersigned notary is authorized to take care of the formalities of publication and registration of the company in the register of legal entities.

The following is also appointed as special proxy holder: Mrs. Inge Van Roy, residing at Bezelaerstraat 27, 2830 Willebroek, to fulfill the necessary formalities and to represent the company at the enterprise counter, the VAT administration, the Crossroads Bank for Enterprises, and other tax and administrative control.

For dissecting extract Notary Frederik Jorissen

Exhibit 9 Part 1

Op de laatste blz. van Luik B vermelden : Recto : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

Verso : Naam en handtekening

Exhibit 9 Part 1

Mod 2.0

**Luik B** **In de bijlagen bij het Belgisch Staatsblad bekend te maken kopie na neerlegging ter griffie van de akte**

Voor-
behouden
aan het
Belgisch
Staatsblad
*09305214*

Neergelegd
04-12-2009

Griffie

Bijlagen bij het Belgisch Staatsblad - 08/12/2009 - Annexes du Moniteur belge

Ondernemingsnr : 0821135682
**Benaming**
(voluit) : **WWG DIAMONDS**

Rechtsvorm : Besloten vennootschap met beperkte aansprakelijkheid

Zetel : 2018 Antwerpen, Jacob Jacobsstraat 56

**Onderwerp akte : Oprichting**

Uit een akte verleden voor notaris Frederik Jorissen te Antwerpen op twee december tweeduizend negen, in zijn kantoor, blijkt dat een vennootschap werd opgericht met volgende kenmerken:
RECHTSVORM EN NAAM: Besloten vennootschap met beperkte aansprakelijkheid met de naam "WWG DIAMONDS".
ZETEL: 2018 Antwerpen, Jacob Jacobsstraat 56; RPR Antwerpen.
DUUR: De vennootschap is opgericht voor een onbeperkte duur.
OPRICHTERS:
1. De heer GOETZ Sylvain, wonende te 2900 Schoten, Alfons Servaislei 96.
2. De heer GOETZ Alain François Viviane, wonende te 2340 Luxemburg (stad) (Groot-Hertogdom Luxemburg), Rue Philippe II 1.
KAPITAAL: twintigduizend euro (20.000 EUR), volledig volstort op een bijzondere rekening bij KBC Bank.
SAMENSTELLING KAPITAAL: vertegenwoordigd door 200 aandelen zonder nominale waarde, waarop werd ingetekend door voornoemde oprichters, ieder tot beloop van de helft.
De naleving van de wettelijke vereisten voor plaatsing en storting van het kapitaal werden door ondergetekende notaris bevestigd.
BOEKJAAR: vangt aan op één januari en eindigt op eenendertig december; eerste boekjaar tot eenendertig december tweeduizend tien.
AANLEG RESERVES/WINSTVERDELING: Van de nettowinst wordt vijf procent vooraf genomen voor de vorming van het wettelijke reservefonds, totdat die één/tiende van het maatschappelijk kapitaal bedraagt.
Het saldo wordt aangewend volgens de beslissing van de algemene vergadering.
BESTEMMING LIQUIDATIESALDO: Het vennootschapsvermogen zal eerst dienen om de schuldeisers te voldoen, en de kosten van de vereffening te dekken; het plan van deze verdeling daartoe moet vooraf door de bevoegde rechtbank van koophandel worden goedgekeurd.
Het netto actief van de vereffening wordt vervolgens verdeeld onder de maatschappelijke aandelen, in voorkomend geval rekening houdend met de ongelijke volstorting van de aandelen.
BESTUUR/BEVOEGDHEID: De vennootschap wordt bestuurd door één of meer zaakvoerders, al dan niet vennoot.
De zaakvoerders zijn bevoegd om alle handelingen van intern bestuur te verrichten die nodig of dienstig zijn tot verwezenlijking van het doel van de vennootschap, met uitzondering van die handelingen waarvoor volgens de wet alleen de algemene vergadering bevoegd is. Indien er verscheidene zaakvoerders zijn kunnen zij de bestuurstaken onder elkaar verdelen. Zodanige verdeling van taken kan aan of door derden niet worden tegengeworpen.
Iedere zaakvoerder vertegenwoordigt de vennootschap jegens derden en in rechte.
De zaakvoerders kunnen lasthebbers van de vennootschap aanstellen. Alleen bijzondere en beperkte volmachten voor bepaalde of een reeks bepaalde rechtshandelingen zijn geoorloofd. De lasthebbers verbinden de vennootschap binnen de perken van de hun verleende volmacht.
Het mandaat van de zaakvoerder is onbezoldigd.
Tot niet statutaire zaakvoerders werden benoemd:
1. De heer GOETZ Sylvain, voornoemd.
2. De heer GOETZ Alain, voornoemd.
COMMISSARIS: De oprichters hebben beslist bij toepassing van artikel 141 van het Wetboek van vennootschappen geen commissaris te benoemen.
DOEL: De vennootschap heeft als doel :
Diamanthandel: aan- en verkoop, in- en uitvoer, schatting, verwerking en slijpen van diamanten, alsook edelstenen en alle voorwerpen van juwelen en kunstsieraden.
De vennootschap handelt voor eigen rekening, in commissie, als tussenpersoon of als vertegenwoordiger.

Op de laatste blz. van Luik B vermelden : Recto : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen
Verso : Naam en handtekening.

DRC-34996 0884

Exhibit 9 Part 1

Voor-behouden aan het Belgisch Staatsblad

Zij kan deelnemen in allerhande vennootschappen, ondernemingen, groeperingen of organisaties.

Zij mag haar onroerende goederen in hypotheek stellen en al haar andere goederen, met inbegrip van het handelsfonds, in pand stellen en mag aval verlenen voor alle leningen, kredietopeningen en andere verbintenissen zowel voor haarzelf als voor alle derden, op voorwaarde dat zij er zelf belang bij heeft.

Zij kan ook functies van bestuurder, zaakvoerder of vereffenaar van andere vennootschappen uitoefenen, in voorkomend geval mits aanstelling van een vaste vertegenwoordiger, natuurlijke persoon, daartoe.

In het algemeen zal de vennootschap alle financiële, commerciële en industriële verrichtingen mogen doen welke in verband staan met haar doel of welke eenvoudig van aard zijn om de verwezenlijking ervan te bevorderen, en dit zowel in het binnen- als in het buitenland.

GEWONE ALGEMENE VERGADERING: De gewone algemene vergadering moet ieder jaar worden bijeengeroepen op de derde vrijdag van de maand juni om zestien uur; indien die dag een wettelijke feestdag is, wordt de vergadering gehouden op de eerstvolgende werkdag. De eerste gewone algemene vergadering wordt gehouden in 2011.

De gewone algemene vergaderingen worden gehouden in de zetel van de vennootschap of in de in de oproeping aangewezen plaats in de gemeente waar de zetel van de vennootschap gevestigd is.

TOELATINGSVOORWAARDEN/STEMRECHT: Onverminderd de regels betreffende de wettelijke vertegenwoordiging en met name van de wederzijdse vertegenwoordiging van gehuwden, kan elke vennoot op de vergadering vertegenwoordigd worden door een lasthebber, al dan niet vennoot.

Elke aandeel geeft recht op één stem.

De vennoten kunnen hun stem schriftelijk uitbrengen. Daartoe moet de door het bestuursorgaan vastgestelde stembrief die alle punten van de agenda bevat, gedateerd en ondertekend, de vennootschap bereiken, uiterlijk twee dagen vóór de vergadering, en uit het geschrift moet duidelijk blijken in welke zin de vennoot wenst te stemmen. De vennoot zal tevens op de stembrief, zijn naam, voornamen, of maatschappelijke naam en rechtsvorm vermelden, alsook zijn woonplaats of zetel, en het aantal aandelen waarmee hij aan de stemming deelneemt.

Met uitzondering van de beslissingen die bij authentieke akte moeten worden verleden, kunnen de vennoten eenparig en schriftelijk alle besluiten nemen die tot de bevoegdheid van de algemene vergadering behoren.

BIJZONDERE VOLMACHT: Ondergetekende notaris wordt gemachtigd om zorg te dragen voor de formaliteiten van openbaarmaking en inschrijving van de vennootschap in het rechtspersonenregister.

Tevens wordt tot bijzondere volmachtdrager aangesteld: mevrouw Inge Van Roy, wonende te Bezelaerstraat 27, 2830 Willebroek, om de nodige formaliteiten te vervullen en de vennootschap te vertegenwoordigen bij het ondernemingsloket, de BTW-administratie, de Kruispuntbank voor Ondernemingen, en overige fiscale en administratieve besturen.

Voor ontledend uittreksel
Notaris Frederik Jorissen

Bijlagen bij het Belgisch Staatsblad - 08/12/2009 - Annexes du Moniteur belge

Op de laatste blz. van Luik B vermelden : Recto : Naam en hoedanigheid van de instrumenterende notaris, hetzij van de perso(o)n(en) bevoegd de rechtspersoon ten aanzien van derden te vertegenwoordigen

Verso : Naam en handtekening

DRC-34996 0885

Exhibit 9 Part 1

# Annex

# D

DRC-34996 0886

FORMULIER IV

Exhibit 9 Part 2

Neergelegd ter griffie van koophandel

te ........ 03 "03· 20l

op.............................

I *03029686*

BESTEMD VDOR HEY BELGISCH StAATSBLAD

BESTEMO VOOR DE RECHTBIINK VAN KDOPHANDEL

To publish ACTS and EXTRACTIONS from ACTS in the Annexes to the Moniteur Belge. To deposit together with a copy at the Registry

I TYPED TEXT

1. Registration :

Register of the European Economic Cooperation ------------------------> nr.

O Register of the Economic cooperation ------------------------> nr.

O Register of the agriculture enterprises

Register van de burgerlijke vennootschappen met handelsvorm ------------------------> nr.

O Register van de buitenlandse vennootschappen die met vallell ender het voorschrift ven de artikelen 81 en 82 van het Wetboek van vennootschappen ------------------------> nr.

2. Name of the company or of the partnership (as it appears in the statutes) ▷ BELGIAN PRECIOUS METALS INDUSTRIES, in het kort B P M I ofBPMI

3. Legal form (fully written) ▷ Naamloze vennootschap

4. Address (street, number, postal code, municipality) ▷ Dupréstraat 77 bus 2 1090 Brussel

▷ BRUSSEL 659 080- ANTWERPEN 349 953

5. VAT number or registration number of the legal persons (not subject to VAT) ▷ BE 477 567 325

6. Subject of the act

**Appointment of directors and managing directors – Change of registered address bestuurders en gedelegeerd**

Text of the act or extract from an act to be published in the annexes to the Belgian Official Gazette.

Nothing in the text may have been deleted or corrected; the text itself may not go outside the printed frame; if necessary, use one or more sheets of plain paper and prepare the text in colons of 94 mm width, according to the model available at the Registry of the Commercial Courts.

The Extraordinary General Meeting of Shareholders of February 25, 2003 decided unanimously to appoint four additional directors, namely the company BERKENRODE BVBA, with registered address at 2018 Antwerp, Jacob Jacobsstraat 56, the company WORLDWIDE CONSULTING BVBA, with registered address at 2018 Antwerp, Jacob Jacobstraat 56, Mr. GOETZ Alain, residing at 2110 Wijnegem, Ruiterslaan 25, and Mr. GOETZ Sylvain, residing at 2980 Zoersel Epicialaan 69.
The mandate of the other three directors is confirmed, namely Mr. CORNELIS JOSSE, residing at 8301 Knokke-Heist, Sint-Antoniusstraat 52, the company ART NV, with registered address at 1090 Jette, Kardinaal Mercierplein 30, bus 1, and Mrs. Struyf Patricia, residing at 2050 Antwerp, Esmoreitlaan 51 bus 1. Their mandate is unpaid.

Signature + Name and capacity

The meeting also unanimously [illegible] office as well as the operating office of the company to 2018 ANTWERPEN, SIMONSSTRAAT 42-14, and this with with effect from today

On February 25, 2003, the Board of Directors unanimously decided to appoint as Managing Directors Mr. GOETZ ALAIN, Mr. GOETZ SYLVAIN and Mr. CORNELLS Josse, all three above-mentioned. Their mandate will be carried out without remuneration

Power of attorney is granted to VAN ROY INGE, residing at 2830 Willebroek, Bezelaerstraat 27, with right of substitution, to modify the registration in the commercial register in Antwerp and to fulfil all formalities with the VAT administration

CORNELIS JOSSE
Managing Director

FORMULIER IV

Exhibit 9 Part 1

*03029686*

BESTEMD VOOR HET BELGISCH STAATSBLAD

Neergelegd ter griffie van de rechtbank van koophandel

te Brussel

op 03-03-2003

BESTEMD VOOR DE RECHTBANK VAN KOOPHANDEL

**AKTEN en UITTREKSELS uit AKTEN** bekend te maken in de bijlagen tot het Belgisch Staatsblad. Samen met een afschrift ter griffie neer te leggen

GETYPTE OF GEDRUKTE TEKST

**1. Inschrijving :**

☐ Register van de Europese economische samenwerkingsverbanden → nr.

☐ Register van de economische samenwerkingsverbanden → nr.

☐ Register van de landbouwvennootschappen → nr

☐ Register van de burgerlijke vennootschappen met handelsvorm → nr.

☐ Register van de buitenlandse vennootschappen die niet vallen onder het voorschrift van de artikelen 81 en 82 van het Wetboek van vennootschappen → nr.

**2. Naam van de vennootschap of van het samenwerkingsverband (zoals deze uit de statuten blijkt)** ▷ BELGIAN PRECIOUS METALS INDUSTRIES, in het kort B P M I of BPMI

**3. Rechtsvorm (voluit geschreven)** ▷ Naamloze vennootschap

**4. Zetel (straat, nummer, postnummer, gemeente)** ▷ Dupréstraat 77 bus 2, 1090 Brussel

**5. Handelsregister (zetel van de rechtbank + nr.)** ▷ BRUSSEL 659 080 – ANTWERPEN 349 953

**6. B.T.W.-nummer of nummer bij het Rijksregister van de rechtspersonen (niet B.T.W.-plichtig)** ▷ BE 477 567 325

**7. Onderwerp van de akta** ▷ <u>Benoeming bestuurders en gedelegeerd bestuurders - Verplaatsing maatschappelijke zetel</u>

Tekst van de akte of het uittreksel uit een akte die in de bijlagen tot het Belgisch Staatsblad moet worden bekendgemaakt

In de tekst mag niets zijn geschrapt noch verbeterd; de tekst zelf mag niet buiten het gedrukte kader komen; zo nodig één of meer bladen gewoon papier gebruiken en de tekst in kolonnen van 94 mm breedte opmaken, naar het model dat verkrijgbaar is ter griffie van de rechtbanken van koophandel

De Bijzondere Algemene Vergadering der Aandeelhouders van 25 februari 2003 beslist unaniem om vanaf heden vier bijkomende bestuurders te benoemen, te weten de vennootschap BERKENRODE B V B.A , met maatschappelijke zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, de vennootschap WORLDWIDE CONSULTING B V B A , met maatschappelijke zetel te 2018 Antwerpen, Jacob Jacobsstraat 56, de heer GOETZ ALAIN, wonende te 2110 Wijnegem, Ruiterslaan 25, en de heer GOETZ SYLVAIN, wonende te 2980 Zoersel, Epicialaan 69 Het mandaat van de overige drie bestuurders wordt bevestigd, te weten de heer CORNELIS JOSSE, wonende te 8301 Knokke-Heist, Sint-Antoniusstraat 52, de vennootschap A.R.T N V , met maatschappelijke zetel te 1090 Jette, Kardinaal Mercierplein 30 bus 1, en mevrouw Struyf Patricia, wonende te 2050 Antwerpen, Esmoreitlaan 51 bus 1. Hun mandaat wordt onbezoldigd uitgeoefend.

**Voorbeeld minimum tekstgrootte :**

Bestuur Belgisch Staatsblad
Leuvenseweg 40-42
1000 Brussel

Nummer van de cheque of assignatie ...

Nummer bankrekening BRG-9899-8889

Handtekeningen + Naam en hoedanigheid
Op het einde van de tekst in geval de akte of het uittreksel meer dan één pagina telt

Mod 288 (7000)

Bijlagen bij het Belgisch Staatsblad - 11/03/2003 - Annexes du Moniteur belge

# Exhibit 9 Part 1

Bijlagen bij het Belgisch Staatsblad - 11/03/2003 - Annexes du Moniteur belge

Tevens beslist de vergadering unaniem om de maatschappelijke zetel evenals de uitbatingszetel van de vennootschap te verplaatsen naar 2018 ANTWERPEN, SIMONSSTRAAT 42-44, en dit met ingang vanaf heden
De Raad van Bestuur van 25 februari 2003 beslist unaniem om tot afgevaardigde bestuurders te benoemen de heer GOETZ ALAIN, de heer GOETZ SYLVAIN en de heer CORNELIS Josse, alledrie voornoemd Hun mandaat wordt onbezoldigd uitgeoefend
Volmacht wordt verleend aan VAN ROY INGE, wonende te 2830 Willebroek, Bezelaerstraat 27, met recht tot indeplaatsstelling, om de inschrijving in het handelsregister te Antwerpen te wijzigen en om alle formaliteiten te vervullen bij de administratie der BTW

CORNELIS JOSSE
Afgevaardigd Bestuurder

Exhibit 8 Part 1

BCE Banque Carrefour des Entreprises

# Public Search

Accueil | Nouveautés | Info Public Search | Info BCE | Disclaimer | Contact

Nouvelle recherche par numéro | Nouvelle recherche par nom | Nouvelle recherche par activité | Nouvelle recherche par autorisation | Nouvelle recherche par adresse

## Données de l'entité enregistrée

| Généralités | |
|---|---|
| Numéro d'entreprise: | 0477.567.326 |
| Statut: | Actif |
| Situation juridique: | Situation normale<br>Depuis le 21 mai 2002 |
| Date de début: | 21 mai 2002 |
| Dénomination: | BELGIAN PRECIOUS METALS INDUSTRIES<br>Dénomination en néerlandais, depuis le 15 mai 2002 |
| Abréviation: | BPMI of B.P.M.I.<br>Dénomination en néerlandais, depuis le 15 mai 2002 |
| Adresse du siège: | Simonsstraat 42<br>2018 Antwerpen<br>Depuis le 7 avril 2017 |
| Numéro de téléphone: | Pas de données reprises dans la BCE. |
| Numéro de fax: | Pas de données reprises dans la BCE. |
| E-mail: | Pas de données reprises dans la BCE. |
| Adresse web: | Pas de données reprises dans la BCE. |
| Type d'entité: | Personne morale |
| Forme légale: | Société anonyme<br>Depuis le 15 mai 2002 |
| Nombre d'unités d'établissement (UE): | 1 Données et Activités par UE |

| Fonctions | | |
|---|---|---|
| Administrateur | Goetz , Sylvain | Depuis le 16 décembre 2021 |
| Administrateur | Hillmann , Ann | Depuis le 16 décembre 2021 |
| Administrateur délégué | Goetz , Sylvain | Depuis le 16 décembre 2021 |

### Capacités entrepreneuriales - ambulant - exploitant forain

Pas de données reprises dans la BCE.

### Qualités

Assujetti à la TVA
Depuis le 12 septembre 2002

Entreprise soumise à inscription
Depuis le 1 novembre 2018

### Autorisations

Pas de données reprises dans la BCE.

### Activités TVA Code Nacebel version 2008[1]

TVA 2008 46.720 - Commerce de gros de minerais et de métaux
Depuis le 29 octobre 2014

Montrez les activités Code Nacebel version 2003.

| Données financières | |
|---|---|
| Capital | 62.040,00 EUR |
| Assemblée générale | mai |
| Date de fin de l'année comptable | 31 décembre |

### Liens entre entités

Pas de données reprises dans la BCE.

### Liens externes

Publications au Moniteur belge
Publications des comptes annuels à la BNB
Base de données des statuts et des pouvoirs de représentation (actes notariés)

[1] Le 1/1/2008, la classification CE des codes Nacebel a été modifiée. Public search affiche tant les activités existantes d'après l'ancien code Nacebel 2003, valable jusqu'au 31/12/2007, que le nouveau code (et définition) 2008, valable depuis le 1/1/2008. Il s'agit donc d'une conversion purement administrative, et non d'un changement d'activités de l'entité ou de l'unité d'établissement.

Vers le haut de la page Retour

DRC-34908 0891

Situation dans la banque de données BCE au 03/05/2023
Version: 11.0.4-3408-28/10/2022

Exhibit 9 Part 2

# Annex

# E

DRC-34996 0892

Exhibit 9 Part 2

AFRICAN GOLD REFINERY LIMITED

Ref No,: AGR-062021-028

Date: 07 June 2021

To:
Mr. Alain Goetz
Dubai, United Arab Emirates

**Subject:** **TERMINATION OF MEMORANDUM OF AGREEMENT**

Dear Mr. Alain Goetz,

We refer to the above subject and advise that due to your failure to fulfill your obligations and deliver the services expected of you under the Memorandum of Agreement (the Agreement) which we executed with you on 5th November 2018, it is with regrets that African Gold Refinery LTD (the Company) is terminating the Agreement effective immediately. Following this termination, you are hereby directed to refrain from acting pursuant to the Agreement or otherwise, for and/or on behalf of the Company.

By issuance of this letter, the terms of the Agreement will be deemed to be nullified, thus relieving the parties of their responsibilities, effective 7th of June 2021.

For and on behalf of

African Gold Refinery Limited

AFRICAN GOLD REFINERY LTD. 07 JUN 2021 P. O. BOX 37574, KAMPALA

AFRICAN GOLD REFINERY LIMITED
+256 392 174 808 | P.O.Box 37574, No. M103/M106,
Sebugwawo Road, Entebbe Kampala, Uganda, | admin@agr-afr.com
www.gold.africa

*Highly Responsible Sourcing of Gold*

Exhibit 9 Part 2

# Annex

# F

DRC-34996 0894

# Exhibit 9 Part 2

**PURCHASE AGREEMENT SHARES NV E.G.A.I. & NV CG VASTGOED INVEST**

This purchase agreement concerning the shares in NV E.G.A.I. & NV CG-VASTGOED INVEST (hereinafter: "the "Agreement") is concluded on 29/10/2022 [*date*] (hereinafter referred to as the "Date of the Agreement").

**BETWEEN THE UNDERSIGNED:**

(1) **Mr. Alain GOETZ**, born on [redacted] in Deurne and residing in Dubai, Frond N39, Palm Jumeirah, PB Box 65919 (DUBAI), (RRN: [redacted]

Hereinafter referred to as the "**Seller**";

**AND**

(2) **Mr. Sylvain GOETZ**, born on [redacted] in Deurne and residing at 2970 Schilde, Boerendreef 16 (RRN: [redacted]);

Hereinafter referred to as: the "**Buyer**";

The parties (1) to (2) mentioned above are hereinafter individually called "Party" or jointly "Parties".

**IS SET FORTH AS FOLLOWS:**

(A) The Company EUROPEAN GUARANTEE AGENCY INTERNATIONAL, EUROPEAN GUARANTEE AGENCY INTERNATIONAL, AGENCE EUROPEENNE INTERNATIONALE DE GARANTIE, registered in the Crossroads Bank for Enterprises under the number 0474.727.502, with its registered office located in 2018 Antwerp, Jacob Jacobsstraat 56 (hereinafter referred to as: "**E.G.A.I**"), consists of 1,400 (one thousand four hundred) shares (hereinafter referred to as: the "**Shares E.G.A.I**"), distributed as follows:

(i) The Seller 1,372 Shares E.G.A.I.

(ii) The Buyer 28 Shares of E.G.A.I.

# Exhibit 9 Part 2

(B) The Company CG-VASTGOED INVEST, registered in the Crossroads Bank for Enterprises under the number 0806.408.906, with its registered office located in 2018 Antwerp, Jacob Jacobsstraat 56 (hereinafter referred to as "CG-VASTGOED"), consists of 150 (one hundred and fifty) Shares (hereinafter referred to as: the "CG-Vastgoed Shares"), distributed as follows:

(i) The Seller 75 Shares of CG Real Estate

(ii) The Purchaser 75 Shares of CG Real Estate

(C) The parties have agreed that the Seller will transfer 1,365 (one thousand three hundred sixty-five) Shares of E.G.A.I. and 75 (seventy-five) Shares of CG Real Estate to the Buyer, who accepts, under the terms set forth in this Agreement. As a result, the Buyer will hold all 1,400 (one thousand four hundred) Shares of E.G.A.I and all 150 (one hundred and fifty) Shares of CG Real Estate

**IS AGREED AS FOLLOWS:**

**ARTICLE 1 OBJECT**

The Seller transfers to the Buyer:

(i) 1,372 (one thousand three hundred and seventy-two) Shares of E.G.A.I., and

(ii) 75 (seventy-five) Shares of CG Real Estate,

(iii)

(hereinafter referred to as the "**Transferred Shares**")

**ARTICLE 2 PRICE + PAYMENT**

**2.1** For the Transferred Shares, the Buyer owes the Seller an amount of EUR 3,125,000.00 (three million one hundred and seventy thousand euros) in aggregate (hereinafter referred to as the "Price").

**2.2** The Price shall be paid by the Buyer evenly over 10 (ten) years as follows:

| | |
|---|---|
| - Date of Agreement. | 312,500.00 EUR |
| - 1st anniversary after Date of Agreement | 312,500.00 EUR |
| - 2nd anniversary after Date of Agreement | 312,500.00 EUR |
| - 3rd anniversary after Date of Agreement | 312,500.00 EUR |
| - 4th anniversary after Date of Agreement | 312,500.00 EUR |

Exhibit 9 Part 2

| | |
|---|---|
| - 5th birthday after Date of Agreement | 312,500.00 EUR |
| - 6th birthday after Date of Agreement | 312,500.00 EUR |
| - 7th birthday after Date of Agreement | 312,500.00 EUR |
| - 8th birthday after Date of Agreement | 312,500.00 EUR |
| - 9th Anniversary after Date of Agreement | 312,500.00 EUR |

The buyer has the option to redeem the Price more quickly.

The outstanding balance of the Price is subject to 5% interest on an annual basis.

All or part of the Prize may be redeemed in kind in accordance with the arrangements to be agreed between the Parties.

**2.3** Payments in Euro must be made by bank transfer to the Vendor's account number which the Vendor shall communicate.

**ARTICLE 3 TRANSFER OF OWNERSHIP + RESOLUTIVE CONDITION**

**3.1** Ownership of the Transferred Shares shall pass on the Date of the Agreement (hereinafter referred to as the "**Date of Transfer**").

**3.2** The Buyer and Seller declare that after Date of Transfer they will immediately take the necessary steps to materialize the transfer of ownership by registering it in the register of shares of E.G.A.I and CG-VASTGOED.

**3.3** Furthermore, the Parties shall in good faith take those actions and sign those documents which they may reasonably believe to be necessary for the transfer of ownership of the Transferred Shares to the Buyer and their opposability to third parties and the Company and the proper performance of the Agreement.

**3.4. The sale is concluded under the resolutive condition that within 14 business days counting from today no adequate security is provided for the payment of the full sales price consisting of a pledge on 50% of the Shares of E.G.A.I. and pledge on 50% of the Shares of CG Real Estate, in combination with a call option on 50% of these Shares of**

Exhibit 9 Part 2

**E.G.A.I. and CG Real Estate. These securities shall be granted by the Purchaser and/or one or two of its children.**

**ARTICLE 4 AUDIT**

**4.1** The Buyer has been given the opportunity to conduct a sufficiently operational accounting, tax and financial audit of the Company prior to this Agreement.

The necessary and all requested information has been made available to the Buyer and the Seller has fully cooperated in order to provide additional information.

**4.2** The Buyer represents that it has now been fully informed of all data and information reasonably required to form a proper opinion regarding the sale and purchase price and, in general, regarding the scope of this Agreement.

**4.3** Seller represents that it has transmitted to Buyer, even if not requested to do so, all data and information reasonably required to make a proper evaluation of the sale and purchase price and, in general, of the scope of this Agreement.

**4.4** The Parties agree to each bear 50% of the risk relating to the possible consequences of the existence and termination of the building rights granted by CG Real Estate Invest, among others (deed executed on June 7, 2011 before Notary F. JORISSEN, Notary in Antwerp).

**ARTICLE 5 SELLER DECLARATIONS**

The Seller declares the following:

5.1 With respect to the E.G.A.I and CG-VASTGOED:

**5.1.1** E.G.A.I and CG-VASTGOED (hereinafter referred to as the "**Companies**") have maintained all corporate documents, accounting records and other documents in accordance with legal deadlines and filed or published in accordance with the Articles of Association and all relevant obligations imposed by tax, accounting and corporate law and regulations.

**5.1.2** The Companies have not been dissolved and their dissolution has not been requested. The Companies have not at any time stopped or suspended payment of their

Exhibit 9 Part 2

debts and are not in a situation of cessation of payments or possible declaration of bankruptcy.

**5.1.3** All accounts, books and other records of any kind of the Companies are available at the registered office of the Companies. They have always been kept complete, correct and accurate. They therefore give a true and fair view of the situation of the Companies, its assets and liabilities.

**5.2 With respect to the annual accounts**

That the latest filed financial statements of E.G.A.I as of December 31, 2020 and the latest filed financial statements of CG Real Estate as of December 31, 2021 fully and fairly reflect the condition of the assets and liabilities of the Company, and consequently the financial situation of the Company as of the aforementioned date in accordance with the legislation on accounting and financial statements applicable to this Company.

**5.3 With respect to the real estate of the Companies**

**5.3.1** E.G.A.I. is the full owner of real estate known by the Parties (hereinafter referred to as "**E.G.A.I. real estate**").

**5.3.2** CG-VASTGOED is full owner of real estate known by Parties (hereinafter called: the "**CG-VASTGOED Real Estate**").

5.3.3 With respect to the E.G.A.I Property and the CG-VASTGOED-real estate(collectively referred to as the "**Real Estate**"), the Seller declares the following:

(i) The Seller confirms that the Companies are the exclusive owners of the Real Estate;

(ii) The Seller warrants that the Property is not encumbered in any way as of the Date of Transfer;

(iii) The Seller confirms that no activities have been conducted in or under the Real Estate that may have contaminated its soil. There has never been any activity or caused any contamination that could give rise to a full or partial soil remediation (whether mandatory or not).

(iv) Except for normal wear and tear, the Real Estate is in good operational condition and fit for the purpose and activities for which it is used.

Exhibit 9 Part 2

(v) The Company has complied with all its contractual commitments and all legal requirements relating to the Real Estate and its destination and use, including (but not limited to) the legal requirements relating to urban planning permit, fire prevention, safety, soil decree and zoning.

**5.4 With respect to the Shares of the Companies.**

**5.4.1** The Shares of the Companies have not been pledged.

**5.4.2** The Shares are free from any security, option, right of pre-emption or other restriction or right of third parties.

**5.4.3** There are no shareholders' agreements that may prevent the free transfer of the Shares.

**5.5 With respect to the legal obligations of the Companies**

**5.5.1** The Companies have always fulfilled their social law obligations correctly and on time.

**5.5.2** The Companies have always fulfilled their tax obligations correctly and on time.

**5.5.3** The Companies have always fulfilled their statutory and company law (including accounting law) obligations correctly and on time.

**5.5.4** The Companies are not engaged, either as plaintiff or defendant, in any legal proceedings with potentially adverse financial consequences for the Companies, and have no knowledge of any impending or potential similar proceedings.

**5.6 With respect to insurance**

All legally required insurances were properly taken out by the Company and the expired premiums were timely paid at their due dates.

**ARTICLE 6 INDEMNIFICATIONS**

**6.1** If any of the statements contained in this Agreement are not complied with (or are erroneous), resulting in damage, the Seller shall indemnify the Buyer, through a claim for damages or otherwise.

Exhibit 9 Part 2

For the calculation of damages, the net amount of damages suffered shall apply, taking into account tax compensation in this context. The parties clarify that an increase in tax losses or an adjustment of the tax reserves (which can later be reversed) also results in the net damages being calculated taking into account the deferred tax benefit.

The Seller shall not be liable for any compensation for damages related to any debt or obligation:

**6.1.1** to the extent and extent that Buyer fails in its reasonable duty to mitigate damages; or

**6.1.2** arising solely as a result of acts of the Buyer which could reasonably have been avoided; or

**6.1.3** arising solely as a result of any change in law after the Date of the Contract.

If the same event, fact or circumstance may give rise to a claim under several warranties, Buyer may be indemnified only once. However, the Buyer may, at its sole discretion, choose the provision on which it wishes to base its claim, it being understood that the claim for damages may never result in damages greater than the actual damages suffered, and without in any way affecting the limitations on damages under the other provisions of this Agreement.

**6.2** The Seller shall not be liable for damages if the Buyer has not notified the Seller of its claim for damages within 12 (twelve) months from the Date of the Agreement.

**6.3** Where a third party is liable for the loss, or the loss is insured, the amount of loss to which the Seller may be liable shall be reduced by the amount of any indemnities or damages which the Buyer or the Company receives or
will receive with certainty from the third party liable or from the insurance company.

**6.4** If the matters, facts or circumstances giving rise to a claim for indemnity originating from the Buyer are the consequence of or relate to a claim due to a liability to a third party, the defense against such third party claim shall be conducted by the Seller. In no event shall Seller be liable under this Agreement.

Exhibit 9 Part 2

**ARTICLE 7 RESALE**

**7.1** The Buyer shall not, for a period of 12 (twelve) months from the Date of Transfer, transfer the Shares to a foreign legal entity mentioned in art. 227, 2° or 3° of the Income Tax Code 1992 (hereinafter referred to as W.I.B. 1992) which is located outside the European Economic Area (application art. 90, 9° jo 94 and 95 W.I.B. 1992).

**7.2** If, notwithstanding the foregoing, the Buyer transfers the Shares within 12 (twelve) months from the Date of Transfer to a foreign legal entity referred to in art. 90, 9° jo. 227, 2° and 3° and established outside the European Economic Area, the Buyer shall compensate the Seller for any capital gains tax, tax increases, interest and penalties.

**7.3** If the Buyer transfers the Shares during this 12 (twelve) month period to taxpayers other than foreign legal entities referred to in art. 90, 9° and 227, 2° and 3° W.I.B. 1992 established outside the European Economic Area, it shall obtain from the new buyer an identical guarantee in favor of the Seller. If this does not occur, or if the new buyer fails to fulfill its commitment to indemnify the Buyer, the Buyer shall be liable for the damages referred to in the Article 7.2 of the Agreement.

**ARTICLE 8 VALIDITY OF THE AGREEMENT**

**8.1** This Agreement contains the full agreement between the Parties with respect to the subject matter thereof and supersedes any previous agreements between the Parties in this regard.

**8.2** The invalidity, nullity or unenforceability of any provision or clause of the present Agreement shall not result in the invalidity, nullity or unenforceability of the relevant clause or this Agreement as a whole, respectively. If the validity or enforceability of any provision or clause of this Agreement is compromised, or seriously threatened, the Parties shall take all measures reasonably necessary or desirable so that such provision or clause may remain lawfully in force or to replace the provision or clause in question with another provision or clause which, economically speaking, has substantially the same effects for all the Parties, unless such invalidity or unenforceability of the provision or clause would destroy the cause or balance of the Agreement.

**ARTICLE 9 APPLICABLE LAW AND COMPETENT COURT**

**9.1** The legal relationship between the Parties shall be governed by Belgian law.

Exhibit 9 Part 2

**9.2** The courts of the judicial district of Antwerp, Antwerp division, shall have exclusive jurisdiction over any disputes arising from this Agreement.

***

Drawn up in 2 (two) original copies at Antwerp [*place*] on 29/10/2022 [*date*], of which each Party acknowledges having received one original signed copy.

The Seller

______________

Mr. Alain Goetz

The Buyer

______________

Mr. Sylvain Goetz

Exhibit 9 Part 2

**KOOPOVEREENKOMST AANDELEN NV E.G.A.I. & NV CG-VASTGOED INVEST**

Deze koopovereenkomst betreffende de aandelen in NV E.G.A.I. & NV CG-VASTGOED INVEST (hierna genoemd: de "**Overeenkomst**") is gesloten op 29/10/2022 [*datum*] (hierna genoemd: de "**Datum van de Overeenkomst**").

**TUSSEN DE ONDERGETEKENDEN:**

(1) **De heer Alain GOETZ**, geboren op [redacted] te Deurne en wonende te Dubai, Frond N39, Palm Jumeirah, PB Box 65919 (DUBAI), (RRN: [redacted]

Hierna genoemd: de "**Verkoper**";

**EN**

(2) **De heer Sylvain GOETZ**, geboren op [redacted] te Deurne en wonende te 2970 Schilde, Boerendreef 16. (RRN: [redacted]

Hierna genoemd: de "**Koper**";

De partijen **(1)** tot en met **(2)** vermeld hierboven worden hierna afzonderlijk "**Partij**" of gezamenlijk "**Partijen**" genoemd.

**WORDT UITEENGEZET ALS VOLGT:**

**(A)** De Vennootschap EUROPEES GARANTIE AGENTSCHAP INTERNATIONAAL, EUROPEAN GUARANTEE AGENCY INTERNATIONAL, AGENCE EUROPEENNE INTERNATIONALE DE GARANTIE, ingeschreven in de Kruispuntbank der Ondernemingen onder het nummer 0474.727.502, met maatschappelijke zetel gevestigd te 2018 Antwerpen, Jacob Jacobsstraat 56 (hierna genoemd: "**E.G.A.I**"), bestaat uit 1.400 (duizend vierhonderd) aandelen (hierna genoemd: de "**Aandelen E.G.A.I**"), verdeeld als volgt:

(i) De Verkoper 1.372 Aandelen E.G.A.I.
(ii) De Koper 28 Aandelen E.G.A.I.

**(B)** De Vennootschap CG-VASTGOED INVEST, ingeschreven in de Kruispuntbank der Ondernemingen onder het nummer 0806.408.906, met maatschappelijke zetel gevestigd te 2018 Antwerpen, Jacob Jacobsstraat 56 (hierna genoemd: "**CG-VASTGOED**"), bestaat uit 150 (honderdvijftig) aandelen (hierna genoemd: de "**Aandelen CG-Vastgoed**"), verdeeld als volgt:

(i) De Verkoper 75 Aandelen CG-Vastgoed
(ii) De Koper 75 Aandelen CG-Vastgoed

(C) Partijen zijn overeengekomen dat de Verkoper 1.365 (duizend driehonderdvijfenzestig) Aandelen E.G.A.I. en 75 (vijfenzeventig) Aandelen CG-Vastgoed aan de Koper overdraagt, die dit aanvaardt, onder de modaliteiten uiteengezet in deze Overeenkomst. Als gevolg daarvan zal de Koper in het bezit zijn van alle 1.400 (duizend vierhonderd) Aandelen E.G.A.I en alle 150 (honderdvijftig) Aandelen CG-Vastgoed.

**WORDT OVEREENGEKOMEN ALS VOLGT:**

## ARTIKEL 1 VOORWERP

De Verkoper draagt over aan de Koper:

(i) 1.372 (duizend driehonderdtweeënzeventig) Aandelen E.G.A.I., en

(ii) 75 (vijfenzeventig) Aandelen CG-Vastgoed,

(hierna genoemd: de "**Overgedragen Aandelen**")

## ARTIKEL 2 PRIJS + BETALING

2.1 Voor de Overgedragen Aandelen is de Koper aan de Verkoper een bedrag verschuldigd van **3.125.000,00 EUR** (drie miljoen honderdvijventwintig duizend euro) in het totaal (hierna genoemd: de "**Prijs**").

2.2 De Prijs wordt door de Koper gelijk gespreid over 10 (tien) jaar betaald, en dit als volgt:

| | | |
|---|---|---|
| - | Datum van de Overeenkomst | 312.500,00 EUR |
| - | 1ste verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 2de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 3de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 4de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 5de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 6de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 7de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 8ste verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |
| - | 9de verjaardag na Datum van de Overeenkomst | 312.500,00 EUR |

De koper heeft de mogelijkheid de Prijs sneller af te lossen.

Op het openstaande saldo van de Prijs wordt 5 % interest op jaarbasis aangerekend.

De Prijs of een gedeelte ervan kan worden afgelost in natura, overeenkomstig de modaliteiten welke Partijen nog zullen overeenkomen.

2.3 Betalingen in euro dienen te gebeuren via overschrijving op het rekeningnummer van de Verkoper dat hij verder zal doorgeven.

**ARTIKEL 3 EIGENDOMSOVERDRACHT + ONTBINDENDE VOORWAARDE**

3.1 De eigendom van de Overgedragen Aandelen gaat over op Datum van de Overeenkomst (hierna genoemd: de "**Datum van Overdracht**").

3.2 De Koper en Verkoper verklaren na Datum van Overdracht onmiddellijk het nodige te zullen doen om de eigendomsoverdracht te concretiseren door inschrijving ervan in het register van aandelen van E.G.A.I en CG-VASTGOED.

3.3 Voorts zullen Partijen te goeder trouw die handelingen stellen en die stukken tekenen waarvan zij redelijkerwijze mogen aannemen dat zij nodig zijn voor de eigendomsoverdracht van de Overgedragen Aandelen aan de Koper en de tegenstelbaarheid ervan aan derden en de Vennootschap en de behoorlijke uitvoering van de Overeenkomst.

**3.4. De koop wordt gesloten onder de ontbindende voorwaarde dat binnen de 14 werkdagen te rekenen vanaf heden geen voldoende zekerheid wordt gegeven voor de betaling van de integrale verkoopprijs bestaande uit een pandrecht op 50 % van de Aandelen E.G.A.I. en pandrecht op 50 % van de Aandelen CG-Vastgoed, in combinatie met een call-optie op 50 % van deze Aandelen van E.G.A.I. en CG-Vastgoed. Deze zekerheden worden verleend door de Koper en/of één of twee van zijn kinderen.**

**ARTIKEL 4 AUDIT**

4.1 De Koper is in de mogelijkheid gesteld geweest een voldoende operationele boekhoudkundige, fiscale en financiële audit van de Vennootschap voorafgaandelijk aan deze Overeenkomst uit te voeren.

De nodige en alle bevraagde informatie werd aan de Koper ter beschikking gesteld en de Verkoper heeft zijn volledige medewerking verleend ten einde bijkomende informatie te verschaffen.

4.2 De Koper verklaart op heden volledig in kennis te zijn gesteld van alle gegevens en inlichtingen die redelijkerwijze vereist zijn om zich een juist oordeel te vormen omtrent de koop en de koopprijs en, in het algemeen, omtrent de draagwijdte van de onderhavige Overeenkomst.

4.3 De Verkoper verklaart dat alle gegevens en inlichtingen die redelijkerwijze vereist zijn om zich een juist oordeel te vormen omtrent de koop en de koopprijs en, in het algemeen, omtrent de draagwijdte van de onderhavige Overeenkomst, heeft overgemaakt aan de Koper, zelfs indien de Verkoper hier niet om bevraagd werd.

4.4 De Partijen zijn bereid elk voor 50 % het risico te dragen m.b.t. de eventuele gevolgen van het bestaan en de beëindiging van het recht van opstal verleend door o.a. CG- Vastgoed Invest (akte verleden op 7 juni 2011 voor Notaris F. JORISSEN, Notaris te Antwerpen).

**ARTIKEL 5 VERKLARINGEN VERKOPER**

De Verkoper verklaart het volgende:

**5.1 Met betrekking tot de E.G.A.I en CG-VASTGOED**

5.1.1 E.G.A.I en CG-VASTGOED (hierna genoemd: de "**Vennootschappen**") hebben alle vennootschapsdocumenten, boekhoudkundige stukken en andere documenten bijgehouden overeenkomstig de wettelijke termijnen en neergelegd of gepubliceerd in overeenstemming met de statuten en alle relevante verplichtingen opgelegd door het belastings-, boekhoudkundig- en vennootschapsrecht en regelgeving.

5.1.2 De Vennootschappen zijn niet ontbonden en er wordt niet om hun ontbinding verzocht. De Vennootschappen hebben op geen enkel moment de betaling van hun schulden stopgezet of opgeschort en bevinden zich niet in een situatie van staking van betalingen of mogelijke faillietverklaring.

5.1.3 Alle rekeningen, boeken en andere bij te houden bescheiden van welke aard ook van de Vennootschappen zijn beschikbaar op de maatschappelijke zetel van de Vennootschappen. Zij werden steeds volledig, correct en nauwkeurig bijgehouden. Zij geven daarom een juist en getrouw beeld van de situatie van de Vennootschappen, haar activa en passiva.

**5.2 Met betrekking tot de jaarrekening**

Dat de laatst neergelegde jaarrekening van E.G.A.I per 31 december 2020 en de laatst neergelegde jaarrekening van CG-Vastgoed per 31 december 2021 op volledige en getrouwe wijze de toestand weergeeft van het actief en passief van de Vennootschap, en bijgevolg de financiële situatie is van de Vennootschap op voormelde datum conform de wetgeving op de boekhouding en de jaarrekening, toepasselijk op deze Vennootschap.

**5.3 Met betrekking tot het vastgoed van de Vennootschappen**

5.3.1 E.G.A.I is volle eigenaar van vastgoed gekend door Partijen (hierna genoemd: het "**E.G.A.I-vastgoed**").

5.3.2 CG-VASTGOED is volle eigenaar van vastgoed gekend door Partijen (hierna genoemd: het "**CG-VASTGOED-vastgoed**").

5.3.3 Met betrekking tot het E.G.A.I-vastgoed en het CG-VASTGOED-vastgoed (hier gezamenlijk genoemd: het "**Vastgoed**"), verklaart de Verkoper het hiernavolgende:

(i) De Verkoper bevestigt dat de Vennootschappen exclusief eigenaar zijn van het Vastgoed;

(ii) De Verkoper garandeert dat het Vastgoed op geen enkele manier bezwaard is op Datum van Overdracht;

(iii) De Verkoper bevestigt dat er in of onder het Vastgoed geen activiteiten werden uitgeoefend die de bodem ervan kunnen vervuild hebben. Er is nooit enige activiteit geweest of een vervuiling veroorzaakt die aanleiding zou kunnen geven tot een gehele of gedeeltelijke (al dan niet verplichte) bodemsanering.

(iv) Behoudens normale slijtage is het Vastgoed in goede operationele staat en geschikt voor de bestemming en de activiteiten waarvoor het wordt gebruikt.

Exhibit 9 Part 2

(v) De Vennootschap heeft al haar contractuele verbintenissen en alle wettelijke voorschriften aangaande het Vastgoed en de bestemming en het gebruik ervan gerespecteerd, met inbegrip van (maar niet uitsluitend) de wettelijke voorschriften inzake stedenbouwkundige vergunning, brandpreventie, veiligheid, bodemdecreet en ruimtelijke ordening.

**5.4 Met betrekking tot de Aandelen van de Vennootschappen**

**5.4.1** De Aandelen van de Vennootschappen werden niet in pand gegeven.

**5.4.2** De Aandelen zijn vrij van enige zekerheid, optie, voorkooprecht of andere beperking of recht van derden.

**5.4.3** Er zijn geen aandeelhoudersovereenkomsten die de vrije overdracht van de aandelen kunnen belemmeren.

**5.5 Met betrekking tot de wettelijke verplichtingen van de Vennootschappen**

**5.5.1** De Vennootschap zijn steeds hun sociaalrechtelijke verbintenissen correct en tijdig nagekomen.

**5.5.2** De Vennootschappen zijn steeds hun fiscale verplichtingen correct en tijdig nagekomen.

**5.5.3** De Vennootschapen zijn steeds hun statutaire en vennootschapsrechtelijke (inclusief boekhoudrechtelijke) verplichtingen correct en tijdig nagekomen.

**5.5.4** De Vennootschappen zijn noch als eiser, noch als verweerder verwikkeld in enige gerechtelijke procedure met potentieel nadelige financiële gevolgen voor de Vennootschappen, en hebben geen kennis van enige nakende of potentiële gelijkaardige procedures.

**5.6 Met betrekking tot de verzekeringen**

Alle wettelijk verplichte verzekeringen werden correct afgesloten door de Vennootschap en de vervallen premies werden tijdig betaald op hun vervaldag.

**ARTIKEL 6 VRIJWARINGEN**

**6.1** Indien één van de in deze Overeenkomst opgenomen verklaringen niet wordt nageleefd (of foutief is), waardoor schade ontstaat, zal de Verkoper de Koper schadeloos stellen, middels een vordering tot schadevergoeding of anderszins.

Voor de berekening van de schade geldt het netto bedrag van de geleden schade, rekening houdend met fiscale compensatie in deze context. Partijen verduidelijken dat een verhoging van fiscale verliezen of een aanpassing van de fiscale reserves (die later kan worden teruggenomen) eveneens ertoe leidt dat de netto schade wordt berekend rekening houdend met het latente belastingvoordeel.

De Verkoper is tot geen enkele vergoeding gehouden voor schade die betrekking heeft op enige schuld of verplichting:

6.1.1 voor zover én in de mate dat de Koper te kort komt aan zijn redelijke schadebeperkingsplicht; of

6.1.2 die zich enkel heeft voorgedaan ten gevolge van handelingen gesteld door de Koper welke redelijkerwijs hadden kunnen vermeden worden; of

6.1.3 die zich enkel heeft voorgedaan ten gevolge van enige verandering in de wetgeving na de Datum van de Overeenkomst.

Indien eenzelfde gebeurtenis, feit of omstandigheid aanleiding kan geven tot een vordering tot schadevergoeding onder verschillende garanties, kan de Koper slechts éénmaal schadeloos worden gesteld. De Koper mag evenwel naar eigen goeddunken de bepaling kiezen waarop hij zijn vordering wenst te baseren, met dien verstande dat de vordering tot schadevergoeding nooit kan leiden tot een schadevergoeding die groter is dan de werkelijk geleden schade, en zonder op enige wijze afbreuk te doen aan de beperkingen aan de schadevergoeding volgens de andere bepalingen van onderhavige Overeenkomst.

6.2 De Verkoper is niet gehouden tot schadevergoeding indien de Koper de Verkoper niet binnen de 12 (twaalf) maanden na de Datum van de Overeenkomst in kennis heeft gesteld van zijn vordering tot schadevergoeding.

6.3 Wanneer een derde aansprakelijk is voor de schade, of de schade is verzekerd, zal het bedrag van de schade waartoe de Verkoper kan gehouden zijn, verminderd worden met het bedrag van de schadeloosstellingen of schadevergoedingen die de Koper of de Vennootschap ontvangt of met zekerheid zullen ontvangen van de derde aansprakelijke of van de verzekeringsmaatschappij.

6.4 Indien de aangelegenheden, feiten of omstandigheden die aanleiding geven tot een vordering tot schadevergoeding uitgaande van de Koper het gevolg zijn van of betrekking hebben op een vordering vanwege een aansprakelijkheid ten aanzien van een derde, zal de verdediging tegen deze vordering van een derde gevoerd worden door de Verkoper. In ontkennend geval zal de Verkoper niet gehouden zijn tot aansprakelijkheid onder deze Overeenkomst.

**ARTIKEL 7 DOORVERKOOP**

7.1 De Koper zal de Aandelen gedurende een tijdvak van 12 (twaalf) maanden vanaf de Datum van Overdracht niet overdragen aan een in art. 227, 2° of 3° van het Wetboek van Inkomstenbelastingen 1992 (hierna genoemd W.I.B. 1992) vermelde buitenlandse rechtspersoon die gevestigd is buiten de Europese Economische Ruimte (toepassing art. 90, 9° jo 94 en 95 W.I.B. 1992).

7.2 Indien de Koper in weerwil van het voorgaande de Aandelen binnen de 12 (twaalf) maanden vanaf de Datum van Overdracht toch overdraagt aan een in art. 90, 9° jo. 227, 2° en 3° bedoelde buitenlandse rechtspersoon die gevestigd is buiten de Europese Economische Ruimte, zal de Koper de Verkoper vergoeden voor de eventuele belasting op de meerwaarde, belastingverhogingen, interesten en boetes.

7.3 Indien de Koper de Aandelen tijdens deze periode van 12 (twaalf) maanden overdraagt aan andere belastingplichtigen dan in art. 90, 9° en 227, 2° en 3° W.I.B. 1992 bedoelde buitenlandse rechtspersonen die gevestigd zijn buiten de Europese Economische Ruimte, zal zij van de nieuwe koper een identieke garantie bekomen in het voordeel van de Verkoper. Indien dit niet gebeurt,

Exhibit 9 Part 2

of indien de nieuwe koper zijn verbintenis om de Koper te vrijwaren niet naleeft, is de Koper de in het artikel 7.2 van de Overeenkomst bedoelde schadevergoeding verschuldigd.

**ARTIKEL 8 GELDIGHEID VAN DE OVEREENKOMST**

**8.1** Deze Overeenkomst bevat het volledig akkoord tussen Partijen met betrekking tot het voorwerp ervan en vervangt de eventuele voorgaande afspraken tussen Partijen hieromtrent.

**8.2** De ongeldigheid, nietigheid of onafdwingbaarheid van eender welke bepaling of eender welk beding van de huidige Overeenkomst zal niet leiden tot de ongeldigheid, nietigheid of onafdwingbaarheid van respectievelijk het betreffende beding of deze Overeenkomst in zijn/haar geheel. Indien de geldigheid of de afdwingbaarheid van een bepaling of een beding van deze Overeenkomst in het gedrang komt, of ernstig wordt bedreigd, zullen Partijen alle maatregelen nemen die redelijkerwijze noodzakelijk of wenselijk zijn opdat deze bepalingen of bedingen op wettige wijze van kracht kunnen blijven of om de betrokken bepaling of het betrokken beding te vervangen door een andere bepaling of een ander beding die/dat, economisch gezien, substantieel dezelfde effecten heeft voor alle Partijen, tenzij deze ongeldigheid of onafdwingbaarheid van de bepaling of clausule de oorzaak of het evenwicht van de Overeenkomst zou tenietdoen.

**ARTIKEL 9 TOEPASSELIJK RECHT EN BEVOEGDE RECHTBANK**

**9.1** Op de rechtsverhouding tussen Partijen is het Belgisch recht van toepassing.

**9.2** De rechtbanken van het gerechtelijk arrondissement Antwerpen, afdeling Antwerpen, zijn exclusief bevoegd voor eventuele geschillen voortvloeiende uit deze Overeenkomst.

***

Opgemaakt in 2 (twee) originele exemplaren te Antwerpen [*plaats*] op 29/10/2022 [*datum*], waarvan elke Partij erkent één origineel ondertekend exemplaar te hebben ontvangen.

**De Verkoper**

De heer Alain Goetz

**De Koper**

De heer Sylvain Goetz

Exhibit 9 Part 2

Annex

6

Pagina | 8 van 8

DRC-34996 0911

Exhibit 9 Part 2

# Annex

# G

DRC-34996 0912





Exhibit 9 Part 2

DUBAI ECONOMY

GOVERNMENT OF DUBAI





عقد بيع حصص وملحق تعديل عقد التأسيس

## Share Transfer Agreement and Amendment to the Memorandum of Association

**Legal form: Limited Liability Company(LLC)**

الشكل القانوني : ذات مسئولية محدودة

**Trade Name: P G R GOLD TRADING L.L.C**

الإسم التجاري : بي جي ار لتجارة الذهب ش.ذ.م.م

**License No.: 689308, issued on 23/05/2013**

رقم الرخصة: 689308 والصادرة بتاريخ 23/05/2013

**This contract has been concluded on Thursday 07/05/2020 by and between the following referred hereinafter parties:**

حرر هذا العقد في يوم الخميس الموافق 07/05/2020 من قبل :

- Mr. OMAR HASSAN ALI, United Arab Emirates national, holder of passport No. ██████████, born on: ████████, resident in Dubai, United Arab Emirates

. عمر حسن علي الخطار بالجنسية عضو بالإمارات ، ويحمل جواز سفر رقم (P6R59████) تاريخ الميلاد ████ مقيم في دبي، دولة الإمارات العربية المتحدة

- Ms. MA MERYL MONGAYA SECAPURI, Philippines national, holder of passport No. ██████████, born on: ████████, resident in Dubai, United Arab Emirates

ما ميريل مونغايا سيكابوري ، الجنسية : الفلبيين ، ويحمل جواز سفر رقم (P█) تاريخ الميلاد ████ مقيم في دبي، دولة الإمارات العربية المتحدة

- Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national, holder of passport No. ██████████ born on: ████████, resident in Dubai, United Arab Emirates

آلان فرانسوا فيفيان جويتز ، الجنسية: بلجيكا ، ويحمل جواز سفر رقم (EP█) تاريخ الميلاد ████ مقيم في دبي، دولة الإمارات العربية المتحدة

**Preamble**

مقدمة العقد

**Whereas a limited liability company has been established under the trade name P G R GOLD TRADING L.L.C in accordance with the memorandum of association, duly attested by the Notary Public under No 2019/1/108341 date 22/05/2019**

حيث أنه بي جي ار لتجارة الذهب ش.ذ.م.م بموجب عقد التأسيس المصدق من قبل العدل برقم : 2019/1/108341 بتاريخ: 22/05/2019

- The parties wish to Add Partner

يرغب الطراف في اضافة شريك

- The parties wish to Remove Partner

يرغب الطراف في انسحاب شريك

- The parties wish to Change Manager/Officer

رغب الطراف في تغيير المدير

**Accordingly the Parties have agreed on the following terms and conditions:**

ن الطراف على الحكام و الشروط التالية

**Article (1): Preamble**
**The previous preamble shall be considered as an integral part of this annexure.**

المادة (1):تمهيد
بر هذا التمهيد جزء ل يتجزا من هذا الملحق.

تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الماتب العدل بدائرة التنمية القتصادية(

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(



Exhibit 9 Part 2



GOVERNMENT OF DUBAI

DUBAI ECONOMY




**Article (2): Parties**

المادة (2): الطرف

Sold, dropped, and relinquished:

باع و أسقط و تنازل لكل من:

- Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national, holder of passport No. ~~████~~ born on: ~~████~~EP ~~████~~ resident in Dubai, United Arab Emirates

- وبب فـينـيـان جوتز ، الجنسية : بلجيكي ، رقـم سـفـر جوبه ~~████~~EP( تاريخ الميلاد ~~████~~ يقيم فـي، دبي الـمارات الـعربية الـمـتـحدة

has sold, transferred and assigned all/part of his/her/its shares Full, representing )49(% of the company capital for the total amount of )AED 147000 (

عن كل من حصته )49(% بقيمة )147000( درهم

The above mentioned Partner hereby declares that he/it has received all his dues, rights and dividends regarding the above mentioned sold shares and his signature in this agreement will be considered confirmation of acceptance without any other receipt voucher therefore.

فوقه ونصيبه من الأرباح عن الحصص المباعة ويعتبر توقيعه على هـ اقرار منه بالقبض وعوضا عن اي ايصال اخر .

To the new party:

إلى الطرف الجديد :

- Ms. MA MERYL MONGAYA SECAPURI, Philippines national, holder of passport No. ~~████~~ born on: ~~████~~ resident in Dubai, United Arab Emirates

- نجايا سيكابوري ، الجنسية : الـفلـبيـن ، رقـم سـفـر جوبه ~~████~~EP( تاريخ الميلاد ~~████~~ يقيم فـي، دبي الـمارات الـعربية الـمـتـحدة

Shares percentage )49(%

نسبة الحصص )49(%

The new acquiring Partner shall replace the selling party in the capital share of the company to the extent of the acquiring shares. The same shall be applied as well for its rights and obligations in the company within the limits of the sold shares.

ديـ محلـه فـي نصيبهمـ من رأس الـمال بالـقدر الذي يبيع إليه وفـي جميع إلـ بزاماته فـي الشركة فـي حدود الحصص المباعة

**Article (3): The Share Capital of the Company**

المادة (3):رأس المال

The capital of the Company amounts to Dirhams )DHS 300000( Dirhams only, divided into )300( shares in cash, the value of each share being Dirhams amounts to )DHS 1000 (. The capital of the Company is divided among the Partners in the following manner:

رأس مال الشركة بمبلغ )300000( درهم موزع على )300( حصة، قيمة كل 10 درهم ويجميعها حصص )نقدي(و موزع بين الشركاء على الـنحو الـتالي:

- Mr. )OMAR HASSAN ALI(, )153( shares , amounting to )153000(, which represent )51% of the share capital

. )عمر حسن على الـعطار( )153( حصة بقيمة )153000( درهم بنسبة )51%( من رأس المال

- Ms. )MA MERYL MONGAYA SECAPURI(, )147( shares , amounting to )147000(, which represent )49%( of the share capital

)ماميريل مونجايا سيكابوري( )147( حصة بقيمة )147000( درهم بنسبة )49%( من رأس المال

The value of the shares has been fully paid up in cash, and has been deposited in the bank account of the Company

من النقدي. و قد دفعت بالكامل وقد تم ايداعها فـي حساب الشركة لدى البصرف.

تعـتـبر هذه الـوثـيقة موثـقة ومصدق الـكـترونـي من الـعـتـمد الـعدل بدائرة الـتـنمية الـقـتـصادي(

)This document shall be deemed executed and  electronically notarized by the Department of Economic Development eNotary(



Exhibit 9 Part 2

**Article (4):** PROFITS AND LOSSES DISTRIBUTION )L.L.C.(

المادة (4) الرباح و الخسائر )شركة ذات مسؤولية محدودة(

The profits and losses shall be distributed between the Partners in the following proportion:

باح و الخسائر بين الشركاء حسب النسبة التالية:

- Ms. MA MERYL MONGAYA SECAPURI 80%

يدة. ماماي ريل مونجايا سيكابوري 80%

- Mr. OMAR HASSAN ALI 20%

السيد. عمر حسن على العطار 20%

**Article (5):** Management of the Company

المادة (5)إدارة الشركة

Company Managers :

مدراء الشركة :

- Ms. MA MERYL MONGAYA SECAPURI

يدة. ماماي ريل مونجايا سيكابوري

The Partners have agreed that the management of the Company shall be entrusted to:

ق الشركاء على:

- Add Manager Ms. MA MERYL MONGAYA SECAPURI, Nationality: Philippines, and Passport [REDACTED] Date of Birth [REDACTED] Member Dubai .P 65919 United Arab Emirates

السيدة. ماماي ريل مونجايا سيكابوري، الجنسية : الفلبين ، ويحمل جواز قم [REDACTED] تاريخ الميلاد [REDACTED] مقيم في دبي .ص.ب 65919 الامارات العربية المتحدة

- Remove manager Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national and holder of Passport No. [REDACTED], born on [REDACTED] resident of Dubai, Address: P.O. Box No. 48800, United Arab Emirates

لين فرانكويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز [REDACTED] تاريخ الميلاد [REDACTED] مقيم في دبي .ص.ب 48800 ت العربية المتحدة

The appointment of the Manager/Managers shall be for a period of 5 year)s( starting from the date of registration of the Company in the Commercial Register, to be automatically renewable for similar periods unless otherwise is agreed upon. The Manager/Managers whose tenure has expired may be reappointed. The Managers shall be subject to dismissal in accordance with the Commercial Companies Law or by a decision of the General Assembly according to the above mentioned majority.

ر /المديرين، لمدة 5 سنة/سنوات تبدأ من تاريخ تسجيل الشركة في جدد تلقائيا لمدد مماثلة ما لم يتفق على خلاف ذلك. ويجوز إعادة تعيين ذين انتهت مدة تعيينهم ويكون المديرون خاضعين للعزل طبقا لقانون تجارية أو بقرار من الجمعية العمومية حسب الغلبية المذكورة.

The Manager/Managers shall have all the necessary powers to manage and sign in the name of the Company and on its behalf; to carry out all the work required by its purposes. Such powers shall be subject and limited to powers granted by Law, by this memorandum of association or by the resolutions of the General Assembly of the Company.

يرين، كافة الصلاحيات الضرورية لإدارة الشركة والتوقيع نيابة عنها ع الأعمال التي تقتضيها أغراضها ول يحد من هذه السلطة إل ما نص عليه نون أو هذا العقد أو قرارات الجمعية العمومية للشركة.

The powers of the Manager include:

ضمن سلطات المدير ما يلي:

DRC-34996 0915 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(





GOVERNMENT OF DUBAI

Exhibit 9, Part 2

- To represent the Company before the Government Departments, including the Department of Economic Development, Municipalities, Etisalat, Du, Electricity and Water Authorities, Land Department, Chambers of Commerce and Industry, Ministry of Human Resources and Emiratization, General Directorate of Residency and Foreigners Affairs, Traffic Department, Road and Transport Authority, Police, Courts, Postal, Airports, Ports, Seaports, Customs, Public Persecution, and all other semi-official Government Departments, ministries and institutions, and to sign all documents, papers and contracts with or before the abovementioned authorities.

كة امام الدوائر الحكومية، دائرة التنمية الاقتصادية، البلديات، ، دو، هيئات الكهرباء والماء، دائرة الاراضي والاملاك، غرف التجارة زارة الموارد البشرية والتوطين، الادارة العامة للاقامة وشؤون الاجانب، ، هيئة الطرق والمواصلات، الشرطة، المحاكم، البريد، المطارات، الموانئ، ، الجمارك، النيابة العامة، كافة الدوائر الشبه الحكومية الاخرى، سات، والتوقيع على كافة المستندات والاوراق والعقود مع او امام جهات المذكورة.

- To appoint and remove lawyers and to file or defend any suits before all UAE courts at all levels.

حامين او إلغاء المحامين وأن يترافعوا أو يدافعوا أمام محاكم دولة الامارات حدة بمختلف درجاتها وأية دعاوى أمام المحاكم بكافة المستويات.

- To appoint and remove employees and consultants and fix their duties and remunerations.

ن او إنهاء خدمة المستخدمين والمستشارين وأن يحدد واجباتهم ومكافآتهم.

- To sign all tenders, contracts, documents on behalf of the company.

وقيع على كافة العطاءات والعقود والمستندات نيابة عن الشركة.

- To authorize and sanction all vouchers of books of account and payment of all expenses.

ادق على السندات للدفاتر الحسابية ولدفع كافة المصروفات.

- The sale and purchase of cars and the registration and renewal of cars in the name of the establishment and the disposal of any car owned

سيارات وتسجيل السيارات وتجديدها باسم المنشأة والتصرف بأي بدولة الامارات العربية المتحدة بكافة اوجه التصرف والبيع وحق حضه وتجديد ملكيتها وقيادتها داخل وخارج الدولة وتوليها بالصيانة اماتها الجمركية وسداد الرسوم والغرامات وتصفيرها وتوكيل الغير تسجيل وبيع وشراء ارقام السيارات وعمل ما يلزم في هذا الخصوص ، ات المنشأة ودفع الرسوم المقررة وصرف بواقيها وعمل ما يلزم في هذا الخصوص.

- To register the value added tax and to provide returns tothe Federal Tax Authority and to take, determine and apply the company's policy

يبة القيمة المضافة وتقديم العوائد لدى الهيئة الاتحادية للضرائب و تحديد وتطبيق سياسة الشركة

- Incorporation and representation of the company as a partner in the establishment of any company and signing the Memorandum of Association for establishing all types of new companies and contracts of the service agents in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

شركة كشريك في تأسيس اي شركة والتوقيع على عقود تأسيس يدة او فروع جديدة بجميع أنواعها وعقود وكيل الخدمات لدى جميع الدوائر ية أو الكاتب العدل او امام الجهات المختصة وذات العلاقة في دولة الامارات عربية المتحدة أو خارجها.

- The right to sell and/or assign any shares owned by the company in any other company, whether to sell it to third parties or to the company itself and receive the payment. He/she has the right to buy on behalf of the company any shares owned by other company, whether these shares are owned by the company itself or the property of third parties. The General Manager also has the right to increase and reduce the capital of the company and the companies in which the company is a shareholder which is applied in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

البيع والتنازل عن اي اسهم أو فروع مملوكة للشركة في اي شركة سواء الشركة وقبض الثمن. وله الحق في شراء باسم الشركة لي أسهم في أي كانت هذه الاسهم ملك الشركة أو ملك الغير وله الحق في زيادة وتخفيض زلة والشركات التي تكون للشركة أسهم فيها وذلك لدى جميع الدوائر ية أو الكاتب العدل او أمام الجهات المختصة وذات العلاقة في دولة الامارات عربية المتحدة أو خارجها.





حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 9, Part 2
DUBAI ECONOMY

- The general manager has the right to resign from the company and the companies in which the company is a shareholder and to sign the procedures for the cancelation of the Trade License and the procedures of liquidation with various government departments including the notary public using the name of the company or any subsidiary company in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

ح من الشركة والشركات التي تكون للشركة أسهم فيها والتوقيع على صفية مع مختلف الدوائر الحكومية والكاتب العدل مستخدما اسم تتبعها وذلك لدى جميع الدوائر الاقتصادية أو الكاتب العدل أو أمام تخصصة وذات العلاقة في دولة الامارات العربية المتحدة أو خارجها.

- To transfer the salaries of workers and emplyees to the banks

تب العمال والموظفين على البنوك والمصارف والتحويلات لدى كافة بنوك العاملة بالدولة

- To pledge, charge, assign, mortgage or otherwise transfer, hypothesis or deliver as security any of the company's movable or immovable property.

الممتلكات المنقولة أو غير المنقولة للشركة وارتهانها او التنازل عنها او بيعها بالقيود أو تسليمها بأي صورة أخرى كضمان

- To reperesent the compnay before all courts and quasi -- Judicial Authorities in the United Arab Emirates either as a defendant or as a pliantiff with full authority to appoint advocate or legal counsel in the United Arab Emirates for the purpose of protecting the intrests of the company and to revoke such appointment

ل الشركة أمام كافة المحاكم والسلطات شبه القضائية في دولة الامارات تحدة سواء كمدعى عليها أو مدعية مع كامل الصلاحية في تعيين أي محام او ني في الامارات العربية المتحدة لغرض حماية مصالح الشركة وإلغاء ذلك لتعيين

- To appoint the arbitrator in case of any disputes with including but not limited to clients, consultants, customers supplies and all third party and to commit the company to arbitration, sign agreements including arbitration clauses, appint arbitrators and in general represent the company

محكم في حالة وجود أي نزاعات على سبيل المثال لا الحصر مع العملاء ين والعملاء الموردين وجميع الاطراف الاخرى وإلزام الشركة بالتحكيم بما في ذلك مواد التحكيم وتعيين المحكمين وبصورة عامة تمثيل في كافة أمور التحكيم ذات الصلة.

The Director's Powers Related to Banking Transactions:

صلاحيات البنكية:

To:

ن يقوم:

- MA MERYL MONGAYA SECAPURI )Manager(

ماري ميريل مونجايا سيكابوري )مدير(

can open and close bank accounts in the name of the company and to operate such bank accounts and sign cheques.

بنكية باسم الشركة وأن يقوم بتشغيل وإدارة هذه الحسابات وتوقيع يكات.

All other provisions of the Memorandum of Association shall remain unchanged and shall apply to the extent that they do not contravene the provisions of this Annex

اد وأحكام وشروط عقد التأسيس كما هي دون تعديل ويسري العمل بها بين قدين الى المدى الذي لا يخالف أحكام هذا العقد.

- The Manager is obliged to enter this amendment in the commercial register at the competent authority.

شركة قيد هذا التعديل في السجل التجاري لدى السلطة المختصة.

- This contract shall be treated, read and construed as an integral part of the memorandum of association.

العقد جزءا لا يتجزأ من عقد التأسيس ومكمل له ويقرأ ويفسر معه

IN WITNESS WHEREOF, the Parties have signed this Memorandum on Thursday07/05/2020

ى ما تقدم وقع الاطراف على هذا العقد في يوم الخميس الموافق 07/05/2020

Contract Number 1068825 Print Date 07/05/2020 تاريخ الطباعة Page 5 of 6

DRC-34996 0917 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(



GOVERNMENT OF DUBAI

Exhibit 9, Part 2
DUBAI ECONOMY

- Mr. OMAR HASSAN ALI — السيد. عمر حسن علي العطار

- Ms. MA MERYL MONGAYA SECAPURI — السيدة. ماميريل مونجايا سيكابوري

- Mr. ALAIN FRANCOIS VIVIANE GOETZ — السيد. الن فرانكويس فيفيان جويتز

**Parties Signature** — توقيع الأطراف

- ALAIN FRANCOIS VIVIANE GOETZ — الن فرانكويس فيفيان جويتز

- OMAR HASSAN ALI — عمر حسن علي العطار

- MA MERYL MONGAYA SECAPURI — ماميريل مونجايا سيكابوري

تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(

Exhibit 9 Part 2

# Annex
# H

DRC-34996 0919

 

حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 9 Part 2
اقتصادية دبي
DUBAI ECONOMY

عقد بيع حصص وملحق تعديل عقد التأسيس

**Share Transfer Agreement and Amendment to the Memorandum of Association**

**Legal form: Limited Liability Company(LLC)**

الشكل القانوني : ذات مسئولية محدودة

**Trade Name: PREMIER GOLD REFINERY L.L.C**

الإسم التجاري : بريمير لتصفية الذهب ش.ذ.م.م

**License No.: 716708, issued on 07/09/2014**

رقم الرخصة: 716708 والصادرة بتاريخ 07/09/2014

**This contract has been concluded on Thursday 07/05/2020 by and between the following referred hereinafter parties:**

حرر هذا العقد في يوم الخميس الموافق 07/05/2020 من قبل :

- Mr. OMAR HASSAN ALI, United Arab Emirates national, holder of passport No. [REDACTED] born on: [REDACTED] resident in Dubai, United Arab Emirates

. عمر حسن علي العطار ، الجنسية : الامارات ، ويحمل جواز سفر رقم [REDACTED] تاريخ الميلاد [REDACTED] مقيم في، دبي الامارات العربية المتحدة

- Ms. MA MERYL MONGAYA SECAPURI, Philippines national, holder of passport No. [REDACTED] born on: [REDACTED] resident in Dubai, United Arab Emirates

نجايا سيكابوري ، الجنسية : الفلبين ، ويحمل جواز سفر رقم ) تاريخ الميلاد [REDACTED] مقيم في، دبي الامارات العربية المتحدة

- Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national, holder of passport No. [REDACTED] born on: [REDACTED] resident in Dubai, United Arab Emirates

ويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز سفر رقم EP( تاريخ الميلاد [REDACTED] مقيم في، دبي الامارات العربية المتحدة

**Preamble**

مقدمة العقد

Whereas a limited liability company has been established under the trade name PREMIER GOLD REFINERY L.L.C in accordance with the memorandum of association, duly attested by the Notary Public under No 2017/1/135500 date 13/06/2017

ير لتصفية الذهب ش.ذ.م.م بموجب عقد التاسيس المصدق من الكاتب برقم : 2017/1/135500 بتاريخ: 13/06/2017

- The parties wish to Add Partner

يرغب الطراف في اضافة شريك

- The parties wish to Remove Partner

يرغب الطراف في انسحاب شريك

- The parties wish to Change Manager/Officer

رغب الطراف في تغيير المدير

Accordingly the Parties have agreed on the following terms and conditions:

ل الطراف على الحكام و الشروط التالية

**Article (1):** Preamble

The previous preamble shall be considered as an integral part of this annexure.

المادة (1)تمهيد

بر هذا التمهيد جزء ل يتجزأ من هذا الملحق.

DRC-34996 0920

تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(


GOVERNMENT OF DUBAI

Exhibit 9 Part 2

DUBAI ECONOMY

 

**Article (2): Parties**

المادة (2): الطراف

Sold, dropped, and relinquished:

باع و أسقط و تنازل لكل من:

- Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national, holder of passport No. ▇▇▇ born on: ▇▇▇ EPS( تاريخ الميلاد ▇▇▇ مقيم في، دبي، الامارات العربية المتحدة resident in Dubai, United Arab Emirates

السيد/ فيفيان فرانسوا جويتز ، بلجيكي الجنسية ، ويحمل جواز سفر رقم

has sold, transferred and assigned all/part of his/her/its shares Full, representing )49(% of the company capital for the total amount of )AED 147000 (

عن كل من حصته )49(% بقيمة )147000( درم

The above mentioned Partner hereby declares that he/it has received all his dues, rights and dividends regarding the above mentioned sold shares and his signature in this agreement will be considered confirmation of acceptance without any other receipt voucher therefore.

وحقوق ونصيبه من الرباح عن الحصص المباعة ويعتبر توقيعه على هذا اقرار منه بالقبض وعوضا عن اي ايصال اخر.

To the new party:

إلى الطرف الجديد :

- Ms. MA MERYL MONGAYA SECAPURI, Philippines national, holder of passport No. ▇▇▇ born on: ▇▇▇ مقيم في، دبي، الامارات العربية المتحدة resident in Dubai, United Arab Emirates

السيدة/ ميريل مونجايا سيكابوري ، الفلبين الجنسية ، ويحمل جواز سفر رقم ع[ تاريخ الميلاد ▇▇▇

Shares percentage )49(%

نسبة الحصص )49(%

The new acquiring Partner shall replace the selling party in the capital share of the company to the extent of the acquiring shares. The same shall be applied as well for its rights and obligations in the company within the limits of the sold shares.

يحل محله في نصيبه من رأس المال بالقدر الذي يبيع إليه وفي جميع إلتزاماته في الشركة في حدود الحصص المباعة

**Article (3): The Share Capital of the Company**

المادة (3): رأس المال

The capital of the Company amounts to Dirhams )DHS 300000( Dirhams only, divided into )300( shares in cash, the value of each share being Dirhams amounts to )DHS 1000 (. The capital of the Company is divided among the Partners in the following manner:

رأس مال الشركة بمبلغ )300000( درم موزعة على )300( حصة، قيمة لكل 10 درم وجميعها )حصص( ، يوزع بين الشركاء على النحو التالي:

- Mr. )OMAR HASSAN ALI(, )153( shares , amounting to )153000(, which represent )51(% of the share capital

.. )عمر حسن علي العطار،( )153( حصة بقيمة )153000( درم بنسبة )51(% من رأس المال

- Ms. )MA MERYL MONGAYA SECAPURI(, )147( shares , amounting to )147000(, which represent )49(% of the share capital

.. )ميريل مونجايا سيكابوري،( )147( حصة بقيمة )147000( درم بنسبة )49(% من رأس المال

The value of the shares has been fully paid up in cash, and has been deposited in the bank account of the Company

س النقدية قد دفعت بالكامل وقد تم إيداعها في حساب الشركة المصرف.

تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من المكتب العدل بدائرة التنمية القتصادية)ب

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(



حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 9, Part 2
اقتصادية دبي
DUBAI ECONOMY

**Article (4): PROFITS AND LOSSES DISTRIBUTION )L.L.C.(**

المادة (4): الأرباح و الخسائر )شركة ذات مسؤولية محدودة(

The profits and losses shall be distributed between the Partners in the following proportion:

…باح و الخسائر بين الشركاء حسب النسبة التالية:

- Ms. MA MERYL MONGAYA SECAPURI 80%

…يدة. ماماي ريل مونجايا سيكابوري 80%

- Mr. OMAR HASSAN ALI 20%

السيد. عمر حسن على العطار 20%

**Article (5): Management of the Company**

المادة (5)إدارة الشركة

Company Managers :

…دراء الشركة :

- Ms. MA MERYL MONGAYA SECAPURI

…يدة. ماماي ريل مونجايا سيكابوري

The Partners have agreed that the management of the Company shall be entrusted to:

…فق الشركاء على:

- Add Manager Ms. MA MERYL MONGAYA SECAPURI, Nationality: Philippines, and Passport [REDACTED] Date of Birth [REDACTED] Member Dubai .P 65919 United Arab Emirates

سيدة. ماماي ريل مونجايا سيكابوري ، الجنسية : الفلبين ، ويحمل جواز [REDACTED] تاريخ الميلاد [REDACTED] يقيم في دبي .ص.ب 65919 الإمارات العربية المتحدة

- Remove manager Mr. ALAIN FRANCOIS VIVIANE GOETZ, Belgium national and holder of Passport No. [REDACTED] born on [REDACTED] resident of Dubai, Address: P.O. Box No. 48800, United Arab Emirates

…لين فرانكويس فيفيان جويتز ، الجنسية : بلجيكا ، ويحمل جواز [REDACTED] تاريخ الميلاد [REDACTED] يقيم في دبي .ص.ب 48800 …ت العربية المتحدة

The appointment of the Manager/Managers shall be for a period of 5 year)s( starting from the date of registration of the Company in the Commercial Register, to be automatically renewable for similar periods unless otherwise is agreed upon. The Manager/Managers whose tenure has expired may be reappointed. The Managers shall be subject to dismissal in accordance with the Commercial Companies Law or by a decision of the General Assembly according to the above mentioned majority.

…ر/المديرين، لمدة 5 سنة/سنوات تبدأ من تاريخ تسجيل الشركة في …جدد تلقائيا لمدد مماثلة ما لم يتفق على خلاف ذلك. ويجوز إعادة تعيين …لذين انتهت مدة تعيينهم ويكون المديرون خاضعين للعزل طبقا لقانون …تجارية أو بقرار من الجمعية العمومية حسب الأغلبية المذكورة.

The Manager/Managers shall have all the necessary powers to manage and sign in the name of the Company and on its behalf; to carry out all the work required by its purposes. Such powers shall be subject and limited to powers granted by Law, by this memorandum of association or by the resolutions of the General Assembly of the Company.

…يرين، كافة الصلاحيات الضرورية لإدارة الشركة والتوقيع نيابة عنها …ع الأعمال التي تقتضيها أغراضها ولا يحد من هذه السلطة إلا ما نص عليه …نون أو هذا العقد أو قرارات الجمعية العمومية للشركة.

The powers of the Manager include:

…ضمن سلطات المدير ما يلي:

تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية(

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(



GOVERNMENT OF DUBAI

Exhibit 9 Part 2

اقتصادي دبي
DUBAI ECONOMY

- To represent the Company before the Government Departments, including the Department of Economic Development, Municipalities, Etisalat, Du, Electricity and Water Authorities, Land Department, Chambers of Commerce and Industry, Ministry of Human Resources and Emiratization, General Directorate of Residency and Foreigners Affairs, Traffic Department, Road and Transport Authority, Police, Courts, Postal, Airports, Ports, Seaports, Customs, Public Persecution, and all other semi-official Government Departments, ministries and institutions, and to sign all documents, papers and contracts with or before the abovementioned authorities.

كة امام الدوائر الحكومية، دائرة التنمية الاقتصادية، البلديات، ، دو، هيئات الكهرباء والماء، دائرة الاراضي والاملاك، غرف التجارة زارة الموارد البشرية والتوطين، الادارة العامة للاقامة وشؤون الاجانب، ، هيئة الطرق والمواصلات، الشرطة، المحاكم، البريد، المطارات، الموانئ، ، الجمارك، النيابة العامة، كافة الدوائر الشبه الحكومية الاخرى، ـسات، والتوقيع على كافة المستندات والاوراق والعقود مع او امام جهات المذكورة.

- To appoint and remove lawyers and to file or defend any suits before all UAE courts at all levels.

ـتعيين أو إلغاء المحامين وان يرافعوا او يدافعوا امام محاكم دولة الامارات ـحدة بمختلف درجاتها وأية دعاوى امام المحاكم بكافة المستويات.

- To appoint and remove employees and consultants and fix their duties and remunerations.

ن او إنهاء خدمة المستخدمين والمستشارين وان يحدد واجباتهم ومكافأتهم.

- To sign all tenders, contracts, documents on behalf of the company.

ـقيع على كافة العطاءات والعقود والمستندات نيابة عن الشركة.

- To authorize and sanction all vouchers of books of account and payment of all expenses.

ـاقة على السندات للدفاتر الحسابية ولدفع كافة المصروفات.

- The sale and purchase of cars and the registration and renewal of cars in the name of the establishment and the disposal of any car owned

ـسيارات وتسجيل السيارات وتجديدها باسم المنشأه والتصرف باي ـدولة الامارات العربية المتحدة بكافة اوجه التصرف والبيع وحق ـحضه وتجديد ملكيتها وقيادتها داخل وخارج الدولة وتوليها بالصيانة ـاءاتها الجمركية وسداد الرسوم والغرامات وتسفيرها وتوكيل الغير ـتسجيل وبيع وشراء ارقام السيارات وعمل ما يلزم في هذا الخصوص ، ات المنشأه ودفع الرسوم المقررة وصرف بواقيها وعمل ما يلزم في هذا ـخصوص.

- To register the value added tax and to provide returns tothe Federal Tax Authority and to take, determine and apply the company's policy

ـريبة القيمة المضافة وتقديم العوائد لدى الهيئة الاتحادية للضرائب و ـتحديد وتطبيق سياسة الشركة

- Incorporation and representation of the company as a partner in the establishment of any company and signing the Memorandum of Association for establishing all types of new companies and contracts of the service agents in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

ـشركة كشريك في تأسيس اي شركة والتوقيع على عقود تأسيس ـيدة او فروع جديدة بجميع أنواعها وعقود وكيل الخدمات لدى جميع الدوائر ـية او الكاتب العدل او امام الجهات المختصة وذات العلاقة في دولة الامارات ـعربية المتحدة أو خارجها.

- The right to sell and/or assign any shares owned by the company in any other company, whether to sell it to third parties or to the company itself and receive the payment. He/she has the right to buy on behalf of the company any shares owned by other company, whether these shares are owned by the company itself or the property of third parties. The General Manager also has the right to increase and reduce the capital of the company and the companies in which the company is a shareholder which is applied in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

ـ البيع والتنازل عن اي اسهم او فروع مملوكة للشركة في اي شركة سواء الشركة وقبض الثمن. وله الحق في شراء باسم الشركة اي اسهم في اي كانت هذه الاسهم ملك الشركة او ملك الغير وله الحق في زيادة وتخفيض ـركة والشركات التي تكون للشركة اسهم فيها وذلك لدى جميع الدوائر ـية او الكاتب العدل او امام الجهات المختصة وذات العلاقة في دولة الامارات ـعربية المتحدة أو خارجها.





حكومة دبي
GOVERNMENT OF DUBAI

Exhibit 9 Part 2
اقتصادية دبي
DUBAI ECONOMY

- The general manager has the right to resign from the company and the companies in which the company is a shareholder and to sign the procedures for the cancelation of the Trade License and the procedures of liquidation with various government departments including the notary public using the name of the company or any subsidiary company in all Economic Departments or notary public or specialized authorities inside and outside the UAE.

ح من الشركة والشركات التي تكون للشركة أسهم فيها والتوقيع على
صفية مع مختلف الدوائر الحكومية والكاتب العدل مستخدما اسم
تتبعها وذلك لدى جميع الدوائر الاقتصادية أو الكاتب العدل أو أمام
متصة وذات العلاقة في دولة الامارات العربية المتحدة أو خارجها.

- To transfer the salaries of workers and emplyees to the banks

تب العمال والموظفين على البنوك والمصارف والتحويلات لدى كافة
نوك العاملة بالدولة

- To pledge, charge, assign, mortgage or otherwise transfer, hypothesis or deliver as security any of the company's movable or immovable property.

الممتلكات المنقولة أو غير المنقولة للشركة وارتهانها أو التنازل عنها أو
بيعها بالقيود أو تسليمها بأي صورة اخرى كضمان

- To reperesent the compnay before all courts and quasi – Judicial Authorities in the United Arab Emirates either as a defendant or as a plaintiff with full authority to appoint advocate or legal counsel in the United Arab Emirates for the purpose of protecting the intrests of the company and to revoke such appointment

ل الشركة أمام كافة المحاكم والسلطات شبه القضائية في دولة الامارات
تحدة سواء كمدعى عليها أو مدعية مع كامل الصلاحية في تعيين أي محام أو
ني في الامارات العربية المتحدة لغرض حماية مصالح الشركة وإلغاء ذلك
لتعيين

- To appoint the arbitrator in case of any disputes with including but not limited to clients, consultants, customers supplies and all third party and to commit the company to arbitration, sign agreements including arbitration clauses, appint arbitrators and in general represent the company

محكم في حالة وجود أي نزاعات على سبيل المثال لا الحصر مع العملاء
ين والعملاء الموردين وجميع الاطراف الاخرى وإلزام الشركة بالتحكيم
. بما في ذلك مواد التحكيم وتعيين المحكمين وبصورة عامة تمثيل
ة في كافة أمور التحكيم ذات الصلة.

The Director's Powers Related to Banking Transactions:

صلاحيات البنكية:

To:

ن يقوم:

- MA MERYL MONGAYA SECAPURI )Manager(

ايريل مونجايا سيكابوري )مدير(

can open and close bank accounts in the name of the company and to operate such bank accounts and sign cheques.

بنكية باسم الشركة وأن يقوم بتشغيل وإدارة هذه الحسابات وتوقيع
يكات.

All other provisions of the Memorandum of Association shall remain unchanged and shall apply to the extent that they do not contravene the provisions of this Annex

اد وأحكام وشروط عقد التأسيس كما هي دون تعديل ويسري العمل بها بين
قدين الى المدى الذي لا يخالف أحكام هذا العقد.

- The Manager is obliged to enter this amendment in the commercial register at the competent authority.

شركة قيد هذا التعديل في السجل التجاري لدى السلطة المختصة.

- This contract shall be treated, read and construed as an integral part of the memorandum of association.

العقد جزءا لا يتجزأ من عقد التأسيس ومكمل له ويقرأ ويفسر معه

IN WITNESS WHEREOF, the Parties have signed this Memorandum on Thursday07/05/2020

ى ما تقدم وقع الاطراف على هذا العقد في يوم الخميس الموافق
07/05/2020

Contract Number 1069152 Print Date 07/05/2020 تاريخ الطباعة Page 5 of 6

DRC-34996 0924 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)
)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(



Exhibit 9 Part 2
DUBAI ECONOMY

| | |
|---|---|
| - Mr. OMAR HASSAN ALI | السيد. عمر حسن على العطار |
| - Ms. MA MERYL MONGAYA SECAPURI | السيدة. ماميريل مونجايا سيكابوري |
| - Mr. ALAIN FRANCOIS VIVIANE GOETZ | الن فرانكويس فيفيان جويتز |

**Parties Signature** **توقيع الأطراف**

- ALAIN FRANCOIS VIVIANE GOETZ — ران كويس فيفيان جويتز

- MA MERYL MONGAYA SECAPURI — ايريل مونجايا سيكابوري

- OMAR HASSAN ALI — عمر حسن على العطار

DRC-34996 0925 تعتبر هذه الوثيقة موثقة ومصدقة الكترونيا من الكاتب العدل بدائرة التنمية الاقتصادية)

)This document shall be deemed executed and electronically notarized by the Department of Economic Development eNotary(

Exhibit 9 Part 2

# Annex
# I

DRC-34996 0926

Exhibit 9 Part 2

Monsieur Alain GOETZ
Frond N, Villa 39,
Palm Jumeirah, P.O. Box 64701,
Dubai, United Arab Emirates

ARGOR INTERNATIONAL S.A.
296-298, route de Longwy
L – 1940 Luxembourg

**Courrier Recommandé**

Dubai, le 31 octobre 2018

**A l'attention** : du Conseil d'Administration

Mesdames, Messieurs,

J'ai l'honneur de vous informer que pour des raisons de convenances personnelles, je ne puis continuer à assumer les fonctions d'administrateur dans votre société.

Je vous prie en conséquence de bien vouloir accepter ma démission avec effet immédiat et de m'accorder pleine et entière décharge pour l'exercice de mon mandat.

Veuillez agréer, Mesdames, Messieurs, l'expression de mes meilleurs sentiments.

Exhibit 9 Part 2

**Share Sale and Purchase Agreement**

between

Mr Alain Goetz

and

Mr Sylvain Goetz

Exhibit 9 Part 2

***THIS SHARE SALE AND PURCHASE AGREEMENT*** (this "***Agreement***") is entered into and shall be effective on the Closing Date:

*between*

(1) **Mr. Sylvain Goetz** . Belgium national. having his residential address at 16 Boerendreef. 2970 Schilde. Belgium (the "**Buyer**").

(2) **Mr. Alain Goetz.** Belgium national. having his residential address at Frond N. villa 39. Palm Jumeirah. PO Box 64701. Dubai (the "**Seller**").

(individually a "***Party***" and together the "***Parties***").

**RECITALS**

*Whereas.*

a) **ARGOR INTERNATIONAL S.A** (the Company) is a private limited company incorporated in and organized under the laws of the Grand Duchy of Luxembourg having its corporate address at 296-298 Route de Longwy L 1940 Luxembourg. with a share capital of EUR 22.150.000 divided into 221.500 ordinary shares without a par value. the 221.500 ordinary shares are fully paid-up.

b) The Seller owns 198.932 of the issued shares (**89%** of the shares) of the Company.

c) The Buyer owns 22.568 of the issued shares (11% of the shares) of the Company.

d) The Seller wishes to sell to the Buyer. and the Buyer wishes to purchase from the Seller. **88,182** shares (the "**Shares**") out of the 198.932 shares owned by the Seller. upon the terms and conditions set forth in this Agreement.

Now. therefore. in consideration of the mutual covenants and undertakings contained herein. the receipt and sufficiency of which the Parties to this Agreement hereby acknowledge and subject to the terms and conditions herein set forth. and with the intent to be legally bound by the terms hereof. the Parties hereto agree as follows:

## 1. DEFINITIONS AND INTERPRETATION

1.1 Unless otherwise indicated. the following terms in this Agreement shall have the meanings set forth below:

| | |
|---|---|
| **"Accounting Policies"** | means the accounting practices carried out. in all material aspects. in accordance with accepted accounting principles as applicable in the United Arab Emirates. |
| **"Agreement"** | means this agreement. as varied. amended or supplemented from time to time by the parties: |
| **"Business Day"** | means a day excluding Fridays. Saturdays. and public holidays (including announced public holidays). on which banking and financial institutions are open for business in United Arab Emirates for transaction of business of the nature required or contemplated by this Agreement: |
| **"Buyer"** | shall have the meaning set forth in the Recitals to this Agreement. |
| **"Claim"** | means any claim arising under or in connection with this Agreement (or any related document). |
| **"Closing"** | shall have the meaning set forth in Section 4.1. |
| **"Closing Date"** | shall have the meaning set forth in Section 4.1. |

Exhibit 9 Part 2

| | |
|---|---|
| **"Company"** | means **ARGOR INTERNATIONAL SA** (Company No. **B 119.953**, a private limited company incorporated in Luxembourg and having its registered office at 296-298 Route de Longwy, L-1940 Luxembourg; |
| **"Depository of the shares** | means Ms. Marjorie GOLINVAUX, residing professionally at 296-298 Route de Longwy 1940 Luxembourg |
| **"EUR"** | means the currency of Euro |
| **"Encumbrance"** | means any interest or equity of any person (including any right to acquire, option or right of pre-emption) or any mortgage, charge, pledge, lien, assignment, hypothecation, security interest, title retention or any other security agreement or arrangement. |
| **"GMT"** | means the Greenwich Mean Time. |
| **"Governmental Authority"** | means any government or political subdivision, whether federal, state, local or foreign, or any agency, commission, instrumentality or other authority of any such government or political subdivision, or any federal, state, local or foreign court or arbitrator. |
| **"MOA"** | means the Articles of Association of the Company that has been lodged with the Luxembourg Business of the Grand Duchy of Luxembourg; |
| **"Parties" or "Party"** | means the parties or any party to this Agreement, their heirs, estates, personal representatives, successors in title and permitted assigns: |
| **"Seller"** | shall have the meaning set forth in the Recitals to this Agreement. |
| **"Shares"** | shall have the meaning set forth in the Recitals to this Agreement. |
| **"Share Purchase Price"** | shall have the meaning set forth in Section 3.1. |
| **"Transfer Terms"** | means that all the Option Shares shall be transferred free from any encumbrances or any restriction in dealings together with all title, rights, benefits and interests attaching thereto as at the Exercise Date. |

1.2 Words and expressions denoting the singular include the plural and vice versa.

1.3 Words and expressions denoting the whole include any part.

1.4 Words and expressions denoting any gender include all genders.

1.5 Words and expressions applicable to a natural person include any person.

1.6 A person includes its estate, heirs, personal representatives, successors in title and any other person for the time being deriving title under it.

1.7 A day, month or year means a day, month or year, as the case may be, reckoned according to the Gregorian calendar.

1.8 A statute or statutory provision includes a reference to:-

a) (a) that statute or statutory provision: and

b) (b) all statutory instruments or orders made pursuant to it:

as from time to time amended, extended, re-enacted or consolidated.

1.9 Any word or expression used in this Agreement which is defined in the Act shall have the meaning ascribed to them in the said Act.

1.10 A document includes the same as from time to time varied in any manner or respect whatsoever or howsoever and any document from time to time issued or executed supplemental, in addition or in substitution to or for it.

1.11 Headings and sub-headings are inserted for convenience only and have no legal effect.

1.12 Unless prohibited by law, no rule of construction applies to the disadvantage of the Party responsible for the preparation of this Agreement.