

**DEPARTMENT OF THE TREASURY**

WASHINGTON, D.C. 20220

DRC-34969

March 1, 2024

Erich C. Ferrari
Ferrari & Associates
655 15th St., N.W.
Suite 240
Washington, DC 20005

Dear Mr. Ferrari:

As you are aware, on March 17, 2022, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated your client, Alain Francois Viviane Goetz, pursuant to Executive Order (E.O.) 13413 of October 27, 2006, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," as amended by E.O. 13671 of July 8, 2014, "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo" ("E.O. 13413, as amended," or "the Order") for: (1) being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the Democratic Republic of the Congo ("DRC") or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; (2) being a leader of African Gold Refinery Limited ("AGR"); and (3) having acted or purported to act for or on behalf of, directly or indirectly, AGR. Accordingly, OFAC placed Mr. Goetz on OFAC's Specially Designated Nationals and Blocked Persons List (SDN List).

Pursuant to 31 C.F.R. § 501.807 and OFAC's guidance on "Filing a Petition for Removal from an OFAC List," a person may seek administrative reconsideration of their designation by submitting arguments or evidence that the person believes establishes that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply. Designated persons may also propose remedial steps, such as corporate reorganization, resignation from positions in a blocked entity, or similar steps that the person believes would negate the basis for designation.

In his letter dated March 17, 2022, which OFAC received after the designation decision described above, Mr. Goetz requested a stay of any potential OFAC designation or other related action against him. In a letter dated December 6, 2022, OFAC informed you that OFAC had determined to treat your March 17, 2022 submission as a request for delisting pursuant to 31 C.F.R. § 501.807. On February 28, 2023, you submitted a delisting petition supplement. On June 30, 2023, OFAC responded with a denial letter. On July 21, 2023, your client responded with a letter proposing additional remedial measures. OFAC sent a questionnaire to you on August 28, 2023 and received your responses on November 26, 2023.

After reviewing all information available to OFAC, including evidence in the record regarding your client's designation and the material you submitted, and foreign policy guidance provided by the U.S. Department of State (State), OFAC has determined that your client has not provided

credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in your client's designation no longer apply.

In the aforementioned June 30, 2023 letter, OFAC acknowledged that Mr. Goetz no longer meets the criteria for designation for being a leader of AGR, but noted that the other grounds for which Mr. Goetz was designated remain valid.  Specifically, OFAC noted that Mr. Goetz meets the criteria for designation pursuant to the Order for having acted or purported to act for or on behalf of, directly or indirectly, AGR, an entity whose property and interests in property are blocked pursuant to the Order.  OFAC also explained its determination that Mr. Goetz meets the criteria for designation pursuant to the Order for being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine the DRC's democratic processes or institutions through the illicit trade in natural resources.  Neither the proposed remedial measures nor the other arguments in your July and November 2023 submissions contradict OFAC's determinations or demonstrate that the circumstances resulting in your designation no longer apply.  Accordingly, OFAC continues to find that Mr. Goetz meets two of the three bases for his designation.

In your November 26, 2023 letter, you assert that the foreign policy guidance provided by State, which informed OFAC's June 30, 2023 denial, impermissibly expanded the requirements of 31 C.F.R. § 501.807, including by "requir[ing] an admission of sanctionable conduct."[1]  You also asserted that "many parties [] have been removed from the SDN List without admitting involvement in sanctionable conduct, sharing information about the activities of others, or contributing to positive change."  However, OFAC previously found that two of the three bases for Mr. Goetz's designation remain valid.  Your argument does not present any information to contradict that finding and also does not take into consideration the unique circumstances giving rise to Mr. Goetz's designation.  In addition, to be clear, OFAC does not "require[] an admission of sanctionable conduct" as a prerequisite to delisting in general, although in some cases, acceptance of responsibility for past acts could be evidence of changed circumstances, depending on the totality of the circumstances.  Here, there is no evidence that Mr. Goetz has accepted responsibility for past acts.

In your letter dated July 21, 2023, you proposed, as a remedial measure, that Mr. Goetz make a public statement clarifying his previous statements regarding conflict minerals and acknowledging current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold.  In your November 26, 2023 letter, you provided additional information regarding that proposed statement.  You also argued that Mr. Goetz has demonstrated a change in the circumstances underlying his designation because he had publicly denounced trading in conflict gold and had previously voiced his commitment to improving the gold sector in the region.  That letter contains, as annexes thereto, several statements that Mr. Goetz allegedly made on X.  State has provided foreign policy guidance indicating that Mr. Goetz's proposed statements, and the statements Mr. Goetz has allegedly already made, are insufficient to ameliorate State's foreign policy concerns with respect to delisting Mr. Goetz.

---

[1] Your November 26, 2023 submission contains, as an annex thereto, what purports to be a partially redacted copy of State's foreign policy guidance memorandum.  OFAC notes that it did not release that document to you, and OFAC's understanding is that State also did not release that document to you.

DRC-37986 0002

OFAC assesses that such statements and proposed statements do not constitute a change in circumstances warranting Mr. Goetz's delisting.

In your July 21, 2023 letter, you also proposed that Mr. Goetz provide a donation to a charity or non-profit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the Democratic Republic of Congo or the Government of Uganda. Your November 26, 2023 letter, however, retracts Mr. Goetz's offer to make such a donation, pointing to his past philanthropic activities and indicating that his financial situation had deteriorated and he no longer has the means to make a meaningful donation, but is hopeful that he will reestablish himself financially following his delisting and will be able to provide such a donation in the future.

In your July 21, 2023 letter, you also proposed that Mr. Goetz undertake efforts in the future to promote and support advocacy initiatives related to supply chain transparency.  In your letter dated November 26, 2023, you provided additional information, including regarding Mr. Goetz's intent to join collaborative partnerships, participate in and promote certain awareness campaigns, and to launch certain awareness campaigns.  OFAC assesses, however, that Mr. Goetz's proposals lack sufficient specificity to constitute a change in circumstances warranting delisting.

Mr. Goetz previously proposed a Terms of Removal Agreement (TOR), which OFAC took into consideration in issuing its June 30, 2023 denial letter.  Insofar as Mr. Goetz's additional proposed remedial measures, to the extent they have not been retracted, are intended to form part of such TOR, based on the totality of the information provided in your July 21, 2023 letter to OFAC and November 26, 2023 questionnaire responses, OFAC has reason to believe that such measures would not provide credible assurance that your client will not engage in the activities that resulted in his designation pursuant to the Order and would not negate the basis for his designation.  In addition, OFAC finds that Mr. Goetz's past obfuscation undermine his credibility and that OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States.

Consequently, your client's request is denied, and Mr. Goetz's name will remain on OFAC's SDN List pursuant to the Order.

If, in the future, your client decides to pursue the reconsideration process again, your client will need to submit a new request, and provide OFAC new evidence as well as any other information that OFAC may request to process your client's request.  For expediency purposes, please direct all questions and correspondence to OFAC via the following email: OFAC.Reconsideration@treasury.gov.

DRC-37986 0003

You may also call (202) 622-2420 or write OFAC at the following:

U.S. Department of the Treasury
Office of Foreign Assets Control
ATTN: Office of Global Targeting
1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
Washington, DC, 20220

Thank you for your cooperation.

Sincerely,

Bradley T. Smith
Digitally signed by Bradley T. Smith
Date: 2024.03.01 18:46:24 -05'00'

Bradley T. Smith
Director
Office of Foreign Assets Control

DRC-37986 0004

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

DRC-34969

## OFFICE OF FOREIGN ASSETS CONTROL

## EVIDENTIARY MEMORANDUM

MEMORANDUM FOR: Bradley T. Smith
Director
Office of Foreign Assets Control

THROUGH:        Gregory T. Gatjanis
Associate Director
Office of Global Targeting

████████████████████

Assistant Director
Narcotics, Africa, and Western Hemisphere Division

████████████████████

Section Chief
Africa and Western Hemisphere Section

FROM:           ████████████████████

Sanctions Investigator
Africa and Western Hemisphere Section

SUBJECT: (U) Basis to deny the petition for removal of one individual from the Specially
Designated Nationals and Blocked Persons List

## I.   (U) <u>INTRODUCTION</u>

(U//~~FOUO~~) This memorandum provides a basis to deny the second delisting petition of **ALAIN FRANCOIS VIVIANE GOETZ\***[1] (**GOETZ\***) from the Specially Designated Nationals and Blocked Persons List (SDN List).  On March 17, 2022, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated **GOETZ\*** pursuant to Executive Order (E.O.) 13413, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo" (E.O. 13413) [Exhibit 1], as amended by E.O. 13671, "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of Congo" (E.O. 13671) [Exhibit 2] (as so amended, "the Order") for (1) being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or

---

[1] (U) The names of persons proposed for denial will appear in **BOLD CAPITAL** letters followed by a bold asterisk (\*).  Names in ALL CAPS followed by an asterisk denotes a person whose property and interests in property are blocked.

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

stability of the Democratic Republic of the Congo (DRC) or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC; (2) being a leader of AFRICAN GOLD REFINERY LIMITED*[2] (AGR*) an entity whose property and interests in property are blocked pursuant to the Order; and (3) having acted or purported to act for or on behalf of, directly or indirectly, AGR*, an entity whose property and interests in property are blocked pursuant to the Order. [Exhibit 3, p. 2]. The original evidentiary memorandum DRC-17840 is attached. [Exhibit 13] A brief classified addendum to the original evidentiary memorandum has been sent to you separately.

(U) **GOETZ*** appears on the SDN List as follows:



> GOETZ, Alain Francois Viviane (a.k.a. GOETZ, Alain; a.k.a. GOZ, Alen), The Palm Jumeirah 0-35, 65919, Dubai, United Arab Emirates; Villa 39, Frond N, The Palm Jumeirah, Dubai, United Arab Emirates; DOB ▮▮▮▮▮▮; alt. DOB ▮▮▮▮▮▮; POB Antwerp, Belgium; nationality Belgium; citizen Turkey; Gender Male; Passport ▮▮▮▮▮▮; alt. Passport ▮▮▮▮▮▮; Identification Number ▮▮▮▮▮▮ (United Arab Emirates) (individual) [DRCONGO] (Linked To: AFRICAN GOLD REFINERY LIMITED). [Exhibit 10, p. 2]

(U) Counsel for **GOETZ*** submitted a letter to OFAC, dated March 17, 2022, requesting a stay of any potential designation of, or other related action targeting, **GOETZ*** by OFAC. [Exhibit 12] Counsel for **GOETZ*** sent OFAC a summons dated May 3, 2022, attaching a complaint dated April 29, 2022 in the U.S. District Court for the District of Columbia (the "Court") challenging OFAC's designation of **GOETZ***. [Exhibit 14]

(U//~~FOUO~~) OFAC and **GOETZ*** initially attempted to reach a settlement but were ultimately unable to finalize their agreement. On December 6, 2022, OFAC sent a letter to counsel for **GOETZ***, informing him that OFAC did not receive his March 17, 2022 submission until after OFAC's Director had already designated **GOETZ*** and that OFAC, in an exercise of its administrative discretion, had determined to treat **GOETZ***'s March 17, 2022, submission as a petition for delisting. OFAC also invited **GOETZ*** to submit additional material in support of **GOETZ***'s delisting. [Exhibit 15, pp. 1–2]

(U//~~FOUO~~) In accordance with the Court's subsequent scheduling order and amendments thereto, **GOETZ*** submitted supplemental information in support of his delisting petition on February 28, 2023 (such supplement, together with the March 17, 2022 submission, the "Previous Submissions"), [Exhibit 11] and OFAC issued a denial letter on June 30, 2023 (such denial, the "June 2023 Denial"). [Exhibit 4] The June 2023 Denial acknowledged that **GOETZ*** no longer meets the criteria for designation for being a leader of AGR*, while noting that the remaining designation criteria still apply. The June 2023 Denial was based in part on a foreign policy guidance (FPG) memorandum (the "June 2023 FPG") from the Department of

---

[2] (U) On March 17, 2022, OFAC designated AGR* pursuant to the Order. [Exhibit 3, p. 2]

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

State (State).  The classified evidentiary memorandum with respect to the June 30, 2023 denial, DRC-31659, has been sent to you separately ("June 2023 Evidentiary").

(U) On July 21, 2023, **GOETZ\***'s counsel responded to OFAC's June 2023 Denial with a letter proposing additional remedial measures (the "July 2023 Submission").  [Exhibit 5]  On August 28, 2023, OFAC sent **GOETZ\***'s counsel a questionnaire requesting additional information.  [Exhibit 10]  On November 26, 2023, **GOETZ\***'s counsel responded to this questionnaire (the "November 2023 Submission" and, together with the July 2023 Submission, the "Subsequent Submissions").  [Exhibit 6]

(U//~~FOUO~~) Following a thorough investigation and careful consideration of the information and arguments submitted by **GOETZ\***, as well as additional information available to OFAC, this evidentiary memorandum provides a basis for denying his petition for removal from the SDN List.  **GOETZ\*** has failed to establish that OFAC lacked a sufficient basis for OFAC's March 17, 2022 designation of **GOETZ\*** pursuant to E.O. 13413, as amended, or that circumstances resulting in the designation no longer apply.  In reaching this determination, OFAC has taken into account the foreign policy guidance provided by State, as memorialized in a February 28, 2024 memorandum (the "February 2024 FPG").  [Exhibit 7]

(U//~~FOUO~~) Below is a summary of OFAC's basis for designating **GOETZ\*** followed by information available to OFAC that supports a determination that **GOETZ\***'s second delisting petition should not be approved.

## II.  (U) BASES FOR DESIGNATION

(U) The evidence supporting OFAC's designation of **GOETZ\*** is set forth in detail in the evidentiary memorandum available in Exhibit 13 and summarized in the June 2023 Evidentiary. A brief summary of that evidence includes the following:

- (U) **GOETZ\*** is responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the Democratic Republic of the Congo (DRC) or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC.

(U//~~FOUO~~) **GOETZ\*** established AGR\* in 2014, had directly or indirectly owned AGR\* since then, was director and/or chief executive officer (CEO) of AGR\* until at least November 2018, and was involved in AGR\*'s gold trading activities until at least 2017.  [Exhibit 13, p. 15]

(U) AGR\* engaged in the illicit trade in gold of the DRC since at least 2016, and **GOETZ\*** was involved in AGR\*'s activities.  [Exhibit 13, p. 17]

(U//~~FOUO~~)

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

DRC-37986 0007

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

[Exhibit 13, pp. 11–12, 21]

(U//~~SBU~~)

[Exhibit 13, pp. 22–23]

(U) Through his involvement in AGR\*, **GOETZ\*** is responsible for or complicit in, or has engaged in, directly or indirectly, support to armed groups in the DRC that are involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. [Exhibit 13, pp. 15–23]

- (U) **GOETZ\*** has acted or purported to act for or on behalf of, directly or indirectly, AGR\*, an entity whose property and interests in property are blocked pursuant to the Order.

(U//~~FOUO~~)

[Exhibit 13, p. 25]

(U)
[Exhibit 13, p. 25]

(U//~~SBU~~)

[Exhibit 13, p. 25]

- **GOETZ\*** was a leader of AGR\*, an entity whose property and interests in property are blocked pursuant to the Order.



(U//~~FOUO~~)

[Exhibit 13, p. 24]

(U//~~SBU~~)
[Exhibit 13, pp. 24–25]

(U)
[Exhibit 13, p. 25]

---

[3] (U) ⬛⬛⬛ [Exhibit 3, p. 2]

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

DRC-37986 0008

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

III. (U) **PETITION REQUEST**

   1.  (U) **Summary of Communications**

(U) As described above, OFAC received the Previous Submissions on March 17, 2022 and February 28, 2023 [Exhibit 11] [Exhibit 12] OFAC sent questionnaires to **GOETZ\***'s counsel on March 21, 2023 and April 25, 2023, and received responses on April 11, 2023 and May 19, 2023 [Exhibit 22] [Exhibit 23] [Exhibit 17] [Exhibit 16]. **GOETZ\***'s counsel also sent a petition supplement on June 9, 2023. [Exhibit 9]

(U) On June 30, 2023, OFAC issued the June 2023 Denial. [Exhibit 4]

(U) As noted above, the June 2023 Denial acknowledged that **GOETZ\*** no longer meets the criteria for designation for being a leader of AGR\*, while noting that the remaining designation criteria still apply. Specifically, OFAC noted that it is undisputed that AGR\* is an entity whose property and interests in property are blocked pursuant to the Order, and therefore **GOETZ\*** meets the criteria for designation pursuant to the Order for having acted or purported to act for or on behalf of, directly or indirectly, AGR\*. OFAC referenced, for example, that in a March 2014 conditions letter to the Ugandan President, **GOETZ\*** requested that "gold traders who do not have official documents should be allowed to sell gold to this refinery [AGR\*], but be made to pay a penalty fee." OFAC also referenced the fact that, in a November 2017 meeting with a U.S. Embassy Kampala economic officer, **GOETZ\*** represented AGR\* as its CEO. [Exhibit 4, p. 2]

(U) In the June 2023 Denial, OFAC also noted that AGR\* has sourced illicit gold from mines in regions of DRC that are controlled by armed groups, including the Mai-Mai Yakutumba and Raia Mutomboki, that are involved in destabilizing activities in South Kivu, DRC. OFAC explained that **GOETZ\***, including through direct or indirect ownership or control of AGR\* during the relevant periods, having held leadership positions in AGR\* when this activity occurred, and his prior involvement in AGR\*'s gold trading activities, meets the criteria for designation pursuant to the Order for being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC.

(U) In response to **GOETZ\***'s arguments that **GOETZ\***'s links to refining conflict gold at AGR\* are the result of unfounded media allegations [Exhibit 12, pp. 3–4] and that OFAC used outdated information in its designation of **GOETZ\*** [Exhibit 11, pp. 6–7], OFAC explained that, after a thorough review of available evidence, OFAC assessed that allegations of **GOETZ\***'s links to refining conflict gold at AGR\* are credible and relied on information that is more recent than that of 2017 while assessing his petition for delisting. [Exhibit 4, p. 2]

(U) OFAC also noted that **GOETZ\*** has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR\* and other entities. OFAC further assessed that **GOETZ\*** currently owns and controls companies that may enable him to continue engaging in the illicit gold trade. In addition, OFAC assessed that **GOETZ\*** has not

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

5

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

taken any responsibility for his past actions with respect to his involvement in the conflict gold trade, which casts doubt that **GOETZ\*** has undergone a change in circumstances with respect to his original designation.  [Exhibit 4, p. 2]  In addition, OFAC noted that it had received the June 2023 FPG recommending that OFAC deny Mr. Goetz's petition for delisting. [Exhibit 4, pp. 2–3]

(U) In the June 2023 Denial, OFAC acknowledged that **GOETZ\*** had proposed a Terms of Removal Agreement (TOR) that includes provisions relating to compliance procedures, reporting requirements, periodic audits, and other provisions.  OFAC explained, however, that any additional insight offered to OFAC through the implementation of these proposed steps would not undermine the criteria for designation.  Furthermore, OFAC noted that **GOETZ\***'s past obfuscation undermines his credibility and OFAC's trust in the materials that would be provided by **GOETZ\*** under the requirements of a TOR.  OFAC also noted that it may be constrained in its ability to enforce the requirements of a TOR as it relates to entities that are domiciled outside of the United States.  [Exhibit 4, p. 3]

(U) As described above, OFAC received the July 2023 Submission on July 21, 2023.  [Exhibit 5]

(U) On August 28, 2023, OFAC sent **GOETZ\***'s counsel a questionnaire.  [Exhibit 10] **GOETZ\***'s counsel responded to this questionnaire in the November 2023 Submission on November 26, 2023.  [Exhibit 6]

2.  (U) **Summary of Petitioner's Arguments**

(U) In his Subsequent Submissions, **GOETZ\*** does not restate the arguments in his Previous Submissions, but requests that they be considered alongside his previously proposed remedial measures.  [Exhibit 5]  [Exhibit 6]

(U) Instead, in his July 2023 Submission, **GOETZ\*** proposes additional remedial measures as a basis for removal from the SDN List.  These measures include: (1)  proposing to make a public statement clarifying his previous statements regarding conflict minerals and acknowledging current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold; (2) proposing to provide a donation to a charity or non-profit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the Democratic Republic of Congo or the Government of Uganda; and (3) proposing to undertake efforts in the future to promote and support advocacy initiatives related to supply chain transparency.  [Exhibit 5, pp. 2–3]

(U) In his November 2023 Submission, **GOETZ\*** responded to OFAC's August 28, 2023, questionnaire by retracting certain of the remedial measures he proposed in his July 2023 Submission and arguing again that there is an insufficient basis for his continued designation under the Order.  Specifically:

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

DRC-37986 0010

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

- (U) **GOETZ\*** argued that he had already demonstrated a change in the circumstances underlying his designation because he had previously publicly denounced trading in conflict gold and had already voiced his commitment to improving the gold sector in the region. [Exhibit 6, p. 8]

- (U) **GOETZ\*** retracted his proposed donation, indicating that he no longer had the means to donate any of his funds but "is hopeful that he will reestablish him[self] financially following his delisting and will be able to provide such a donation in the future" and would "make donations to organizations combatting illicit gold trade when he has the financial means to do so." [Exhibit 6, pp. 4-5, 9] **GOETZ\*** also pointed to his prior philanthropic activities as indicia of his "commitment to making a positive impact in the community and priority to support humanitarian causes." [Exhibit 6, p. 9]

- (U) **GOETZ\*** noted that he had already "identified tangible commitments to contribute to positive change in the DRC," through "his recent public statements, his willingness to engage in further activities for transparency with respect to the trade in minerals, and his commitment to make donations to organizations combatting illicit gold trade when he has the financial means to do so." [Exhibit 6, p. 8]

(U) **GOETZ\*** argued that there is an insufficient basis for his continued designation under the Order because he is no longer a leader of AGR\* and has severed his relationship with AGR\* by divesting his interests in, and ceasing his role as promoter and consultant with, the company. [Exhibit 6, p. 8]. **GOETZ\*** argued further that (1) the June 2023 FPG (and OFAC's reliance thereon) impermissibly expands the requirements of 31 C.F.R. § 501.807 [Exhibit 6, pp. 7–8]; and (2) the June 2023 Denial fails to explain why other blocked persons seeking delisting were not required to admit involvement in sanctionable conduct. [Exhibit 6, p. 8]

IV. (U) **BASIS FOR DENIAL**

(U) Pursuant to 31 C.F.R. § 501.807, a person may seek administrative reconsideration by OFAC of a designation by submitting arguments or evidence establishing that (1) an "insufficient basis exists for the designation" or (2) the "circumstances resulting in the designation no longer apply." Designated persons may also propose remedial steps, such as corporate reorganization, resignation from positions in a blocked entity, or similar steps, that the person believes would negate the basis for designation.

(U~~//FOUO~~) As detailed below, **GOETZ\*** still meets two of the three original bases for designation pursuant to the Order, namely, **GOETZ\*** (1) is responsible for or complicit in, or has engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the Democratic Republic of the Congo (DRC) or that undermine democratic processes or institution in the DRC, through the illicit trade in natural resources of the DRC, and (2) has acted or purported to act for or on behalf of, directly or indirectly, AGR\*, an entity whose property and interests in property are blocked pursuant to the Order. Finally, OFAC has reason to believe that **GOETZ\***'s claims of changed behavior and proposed remedial measures do not constitute a change in circumstances warranting delisting.

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

(U//~~FOUO~~) In light of this information, OFAC has determined that **GOETZ*** has failed to demonstrate that his removal from the SDN List is warranted. Specifically, **GOETZ*** has failed to demonstrate that the circumstances resulting in his designation no longer apply or that insufficient basis exists for the designation pursuant to 31 C.F.R. § 501.807.

(U) Therefore, OFAC reaffirms its June 30, 2023 decision to deny **GOETZ***'s removal from the SDN List.

1. (U) **Failure to meet Criteria in C.F.R. § 501.807**

(U) **GOETZ*** has failed to establish that OFAC lacked a sufficient basis for OFAC's March 17, 2022 designation of **GOETZ*** pursuant to E.O. 13413, as amended, or that the circumstances resulting in such designation no longer apply. The information presented in the Previous Submissions and Subsequent Submissions, taken together, do not undermine the bases for designation or establish that circumstances resulting in **GOETZ***'s designation no longer apply.

(U//~~FOUO~~) **GOETZ*** had proposed a TOR in the Previous Submissions, and his proposed remedial measures may be intended to form part of that TOR. Under these circumstances, the proposed TOR does not fully address the basis for designation or ameliorate the threat posed by **GOETZ***'s past and future activities. For reasons set forth in the June 2023 Evidentiary, in particular on pages 10, 16, 20, 22, 24–25, OFAC assesses that **GOETZ*** has not shown himself to be trustworthy enough for OFAC to enter into a proposed TOR as a way of negating **GOETZ***'s bases for designation. A TOR may accomplish little without both trust and transparency. Additionally, OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States. Without the full capacity and resources to monitor and enforce compliance, the TOR cannot address OFAC's concerns regarding **GOETZ***.

(U) ***GOETZ* has failed to establish that insufficient basis exists for his March 17, 2022 designation pursuant to the Order.***

(U) In the June 2023 Denial, OFAC informed **GOETZ*** of its determination that **GOETZ*** no longer meets the criteria for designation pursuant to the Order for being a leader of AGR* but that the other grounds for which **GOETZ*** was designated remain valid. Specifically, OFAC determined that **GOETZ*** meets the criteria for designation pursuant to the Order for having acted or purported to act for or on behalf of, directly or indirectly, AGR*, and that **GOETZ*** also meets the criteria for designation pursuant to the Order for being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC. [Exhibit 4, p. 2] OFAC's rationale for making the foregoing determinations is set forth in the June 2023 Evidentiary. Neither the proposed remedial measures nor the other arguments in the Subsequent Submissions present information to

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

DRC-37986 0012

contradict such determinations.  Accordingly, OFAC continues to find that **GOETZ\*** meets two of the three bases for his designation.

(~~SBU~~) In the November 2023 Submission, **GOETZ\*** argues again that there is an insufficient basis for **GOETZ\***'s continued designation under the Order and that the June 2023 FPG impermissibly expands the requirements of 31 C.F.R. § 501.807.[4]  [Exhibit 6, p. 8]  That argument fails to recognize that the relevant language in the June 2023 FPG merely serves to provide background with respect to State's recommendation, on "*foreign policy grounds*" (emphasis added), that OFAC deny **GOETZ\***'s delisting petition.  [Exhibit 6, p. 1]  **GOETZ\***'s apparent disagreement with the factors that State takes into consideration in formulating its foreign policy views is irrelevant to whether there exists sufficient basis for **GOETZ\***'s designation.  Put differently, OFAC previously found that two of the three bases for designation remain valid, and **GOETZ\***'s disagreement with State's foreign policy reasoning does nothing to disturb that finding.

(U) To be clear, OFAC does not "require[] an admission of sanctionable conduct" as a prerequisite to delisting in general, although in some cases, acceptance of responsibility for past acts could be evidence of changed circumstances, depending on the totality of the circumstances.  Here, there is no evidence that **GOETZ\*** has accepted responsibility for past acts.

(U) ***GOETZ\* has failed to establish that circumstances resulting in his designation no longer apply.***

(U) In the June 2023 Denial, OFAC informed **GOETZ\*** of its determination that **GOETZ\***'s Previous Submissions had not provided credible arguments or evidence establishing that all the circumstances resulting in his designation no longer apply.  [Exhibit 4, p. 1]

(U) In the November 2023 Submission, **GOETZ\*** argues that he has demonstrated a change in the circumstances underlying his designation because he had publicly denounced trading in conflict gold and had previously voiced his commitment to improving the gold sector in the region.  [Exhibit 6, p. 8]  The November 2023 Submission identifies and attaches as annexes thereto several statements that **GOETZ\*** allegedly made on X,[5] dated July 12, 2023, October 15, 2023, October 27, 2023, November 8, 2023, and November 22, 2023.
[Exhibit 6, pp. 2–4, 11–25]

(~~SBU~~) The February 2024 FPG indicates that these statements are "vague, high level, and devoid of serious content" and "do not provide any meaningful demonstration of change in behavior."  For example, with respect to a November 8, 2023 post [Exhibit 6, pp. 12–13], the February 2024

---

[4] (U) **GOETZ\***'s November 2023 Submission included, as Annex F thereto, what purports to be a partially redacted copy of the June 2023 FPG.  [Exhibit 6, pp. 26–35]  OFAC did not release the June 2023 FPG to **GOETZ\*** and OFAC's understanding is that State also did not release that document to **GOETZ\***.

[5] (U) According to a Britannica entry updated February 26, 2024, X, formerly Twitter (2006–2023), is an online social media platform and microblogging service that distributes short messages of no more than 280 characters. [Exhibit 20, p. 1]  According to its website, Britannica is a dynamic, continuously updated, rigorously fact-checked information source for students, teachers, and lifelong learners.  [Exhibit 21, p. 1]

FPG indicates that "[**GOETZ***] makes reference … to Valcambi, a refiner facing serious issues related to its supply chain integrity and practices, then makes a generic comment regarding an imperative that the industry operate under the same regulations in order to address conflict gold" and that "[i]n this case, it is unclear whether he is making a negative comment about Valcambi's practices or not, and his overall statement is generic."  [Exhibit 7, p. 3]

(U) **GOETZ*** further asserts that "many parties [] have been removed from the SDN List without admitting involvement in sanctionable conduct, sharing information about the activities of others, or contributing to positive change."  [Exhibit 6, p. 8]  This argument fails to consider the unique circumstances giving rise to **GOETZ***'s designation and the State Department's assessment of his prior statements as set forth in its June 2023 FPG.

~~(SBU)~~ The June 2023 FPG sets forth State's rationale for its expectation that **GOETZ*** acknowledge responsibility and contribute to positive change.  For example, the June 2023 FPG explains that "[**GOETZ***]'s role as a buyer and trader of gold during the DRC's civil wars in the 1990s helped create the ecosystem that exists today where gold is used by numerous armed groups to fund conflicts and violence" and that "[t]his situation has resulted in the death of tens of thousands of people and led to the injury and displacement of millions of others in Eastern DRC and the surrounding region."  [Exhibit 8, pp. 2–3]

(U) The July 2023 Submission indicates that **GOETZ*** proposed to make a public statement clarifying his previous statements regarding conflict minerals and acknowledging current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold.  [Exhibit 5, p. 2]  According to the November 2023 Submission, **GOETZ***'s proposed statement would clarify that he understands that trade in conflict minerals has an adverse impact on local populations, fuels corruption and violence, and leads to environmental degradation.  The proposed public statement would also call upon those in the gold industry to adopt policies and procedures to identify and combat trade in conflict minerals.  According to the November 2023 Submission, **GOETZ***'s proposed clarifications would "address his prior conduct and statements by advocating for transparency, accountability, and continuous improvement with respect to the gold sector, making clear that his prior positions were either misconstrued or are being retracted."  The November 2023 Submission appears to indicate that **GOETZ***'s proposed statement would "underscore" the principles in the X posts described above and "reinforce his position on conflict gold." [Exhibit 6, pp. 2–4]

(U//~~FOUO~~) As set forth in the February 2024 FPG, the State Department has indicated that it "cannot meaningfully assess the content of proposed future statements, especially when the content of such proposed statements is amorphous and vague.  Changes in behavior are demonstrated by tangible actions rather than plans to make statements in the future without having the detail needed to assess the contents of such statements."  [Exhibit 7, p. 2]  Given that **GOETZ***'s proposed statements would be insufficient to ameliorate State's foreign policy concerns with respect to delisting **GOETZ***, OFAC assesses that such proposed statements do not constitute a change in circumstances warranting **GOETZ***'s delisting.  In addition, insofar as **GOETZ***'s proposal to make a future statement is intended to form part of a TOR, OFAC has similar concerns as those expressed in the June 2023 Denial with respect to the TOR proposed in

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

the Previous Submissions.  As explained in the June 2023 Denial, **GOETZ***'s past obfuscation—as established in the June 2023 Evidentiary—undermines his credibility.  In addition, OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States.  Accordingly, we would need to see concrete, tangible, and credible conduct occur *before* delisting under these circumstances, not vague promises of future conduct, particularly from a sanctioned person with a demonstrated pattern of troubling activity and suspect credibility. [Exhibit 4, p. 3]

(U) In the July 2023 Submission, **GOETZ*** proposed to provide a donation to a charity or non-profit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the Democratic Republic of Congo or the Government of Uganda. **GOETZ*** proposes to provide a donation in an amount that he can afford based on his current financial condition.  [Exhibit 5, p. 4]  However, in his November 2023 Submission, **GOETZ*** retracted his offer to make a donation, pointing to his past philanthropic activities and indicating that his financial situation had deteriorated and he no longer has the means to make a meaningful donation but is hopeful that he will reestablish himself financially following his delisting and will be able to provide such a donation in the future.  [Exhibit 6, p. 5]

(U//~~FOUO~~) According to the July 2023 Submission, **GOETZ*** proposes to join collaborative partnerships and participate in and promote supply chain transparency awareness campaigns. Specifically, **GOETZ*** proposes to engage with non-governmental organizations that specialize in responsible sourcing and sustainable mining practices to develop best practices for supply chain transparency.  These organizations include, for example, the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum.  **GOETZ*** also proposed to engage with other relevant stakeholders to promote dialogue, encourage responsible mining practices, and contribute to the socioeconomic development of these regions.  **GOETZ*** suggested that he may launch awareness campaigns to educate stakeholders on the importance of supply chain transparency and implementing guidelines by the International Conference on the Great Lakes Region ("ICGLR") and Organization for Economic Co-operation and Development ("OECD"). These campaigns may include participation in meetings, webinars, and social media campaigns to disseminate knowledge and encourage dialogue among relevant parties.  [Exhibit 6, p. 6] OFAC notes that **GOETZ*** has not provided any further information about the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum, and therefore OFAC is unable to assess the merits of these organization related to **GOETZ***'s request to be delisted from the SDN List.

(U//~~FOUO~~) Although such initiatives would be welcome, proposed possible future actions do not at this point provide a basis for finding changed circumstances.  Based on the fact that **GOETZ*** does not offer any further information about these initiatives nor appeared to have initiated them, OFAC assesses that **GOETZ***'s proposal to join partnerships aimed at promoting supply chain transparency lacks sufficient specificity to constitute a change in circumstances warranting delisting or to serve as component of a TOR.  As set forth in the February 2024 FPG, the State Department noted that "in his [July 2023 Submission], [**GOETZ***] stated that he intended to promote and support advocacy initiatives related to supply chain transparency" but indicated that

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

11

"State is not in a position to assess such amorphous promises as a basis for removal." [Exhibit 7, p. 3]  In addition, insofar as **GOETZ***'s proposal to take these future actions is intended to form part of a TOR, OFAC has similar concerns as those expressed in the June 2023 Denial with respect to the TOR proposed in the Previous Submissions.  As explained in the June 2023 Denial, **GOETZ***'s past obfuscation—as established in the June 2023 Evidentiary—undermines his credibility.  In addition, OFAC may be constrained in its ability to enforce the requirements of a TOR as it relates to persons that are domiciled outside of the United States.  [Exhibit 4, p. 3]

(U) The November 2023 Submission argues that **GOETZ*** has demonstrated a change in the circumstances underlying his designation because **GOETZ*** is no longer a leader of AGR* and has severed his relationship with AGR* by divesting his interests in, and ceasing his role as promoter and consultant with the company.  [Exhibit 6, p. 8]

(U)  In his Previous Submissions, **GOETZ*** had already argued for delisting based on the fact that he had divested and resigned from AGR*.  [Exhibit 12, p. 6] [Exhibit 11, p. 7] [Exhibit 17, p. 5]  As discussed above, OFAC informed **GOETZ*** in its June 2023 Denial that **GOETZ*** no longer meets the criteria for designation pursuant to the Order for being a leader of AGR* but that the other grounds for which **GOETZ*** was designated remain valid.  OFAC also informed **GOETZ*** of its determination that **GOETZ*** had not provided credible arguments or evidence establishing that all the circumstances resulting in **GOETZ***'s designation no longer apply.  OFAC noted that **GOETZ*** has a long history of involvement in the illicit gold trade, and a history of obfuscating his ownership and control of AGR* and other entities, and assessed that **GOETZ*** currently owns and controls companies that may enable him to continue engaging in the illicit gold trade.  [Exhibit 4, pp. 1–2]  **GOETZ*** has provided no information in the Subsequent Submissions that would alter those conclusions.

- *Delisting **GOETZ*** at this time may undermine or complicate international efforts to enforce standards and accountability and could have negative foreign policy consequences.*

(U//~~SBU~~) According to State's FPG, **GOETZ*** remains subject to EU sanctions, which were imposed in December 2022, and is reportedly subject to a range of ongoing investigations in Belgium and other jurisdictions for actions occurring from 2014 to present.  Numerous jurisdictions have taken action against **GOETZ*** and his network of companies.  This includes:

  o  The European Union designated **GOETZ*** on December 8, 2022, for "exploiting the armed conflict, instability, and insecurity in the DRC through the illicit exploitation and trade of natural resources.  [Exhibit 18, p. 10]

  o  The United Arab Emirates Financial Intelligence Unit described the **GOETZ*** case, through an anonymized summary, in its October 2022 "Strategic Analysis Report" for Dealers in Precious Metals and Stones, identifying nine red flags related to his trading practices and indicating the case had been referred to "the relevant police department."  [Exhibit 19, pp. 16–17]

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

- o The Belgian Federal Prosecutor's Office has been reviewing the **GOETZ\*** case for several years, based in part on the 2020 conviction by a Belgian court of **GOETZ\*** and others in a money laundering case unrelated to his activities in the DRC.

- o Though no direct action has been taken by the Security Council to date against **GOETZ\*** or his companies, his associates were sanctioned by the Council in 2007 and the UN Group of Experts has collected information and reported specifically on **GOETZ\*** and his activities since at least 2009 as part of its ongoing focus on the gold trade.

According to the FPG, delisting **GOETZ\*** at this stage may undermine or complicate international efforts to enforce standards and accountability and could have negative foreign policy consequences.

2. (U) **Foreign policy guidance**

~~(SBU)~~ Following a recommendation in June 2023 that the Department of the Treasury's Office of Foreign Assets Control (OFAC) deny Alain Goetz's removal from OFAC's Specially Designated Nationals and Blocked Persons List (SDN List) and in light of subsequent submissions of materials by Mr. Goetz, the Department of State (State) continues to recommend on foreign policy grounds that OFAC deny Alain Goetz's removal. His July and November 2023 submissions do not provide sufficient grounds to believe there has been a change in behavior related to his role in the illicit gold trade in the Democratic Republic of the Congo (DRC) that would warrant his removal. [Exhibit 7, p. 1]

(U) On March 17, 2022, OFAC sanctioned Alain Goetz, the African Gold Refinery (AGR) in Uganda, and a network of companies involved in the illicit movement of gold valued at hundreds of millions of dollars per year from the DRC. The illicit movement of gold provides revenue to numerous armed groups that threaten the peace, security, and stability of the DRC and causes human suffering in the DRC and across the region. The action was taken pursuant to Executive Order (E.O.) 13413, as amended by E.O. 13671, which targets, among other things, individuals and entities involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC. The action demonstrated the U.S. commitment to disrupting the illicit mineral trade and encouraging mining sector transparency as a means of curbing funding to armed groups responsible for acts of violence. [Exhibit 7, pp. 1–2]

~~(SBU)~~ On June 30, 2023, State provided Foreign Policy Guidance (FPG) that set forth a number of reasons why Mr. Goetz's initial request for delisting should be denied, principally that Mr. Goetz has provided no basis to believe his decades-long, documented role in the trade in illicit gold has been acknowledged or changed; the role of illicit gold in financing conflict in the DRC remains a significant foreign policy concern; and the fact that Mr. Goetz remains under investigation by several foreign authorities. [Exhibit 7, p. 2]

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

13

**UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~**

(SBU) In his July and November submissions, Mr. Goetz indicated that he is prepared to make public statements noting that conflict gold has negative impacts on local populations, corruption, and the environment, and calling on the industry to adopt appropriate procedures to combat this trade. With respect to his own role in the trade, he indicates he would address this by advocating for transparency in the sector, promising that these statements will "[make] clear that his prior positions were either misconstrued or are being retracted." [Exhibit 7, p. 2]

(SBU) State cannot meaningfully assess the content of proposed future statements, especially when the content of such proposed statements is amorphous and vague. Changes in behavior are demonstrated by tangible actions rather than plans to make statements in the future without having the detail needed to assess the contents of such statements. In general, State is not inclined to recommend delisting in response to proposed future statements that are amorphous and vague. Once Mr. Goetz has made all the statements that he believes represent his changed views and actions in this area, we would be prepared to conduct a further review. [Exhibit 7, pp. 2–3]

(SBU) Mr. Goetz claims that some of his recent statements indicate he has already begun to make these views clear. If these statements are intended to be representative of what will be issued in the future, State's view is that these would not be sufficient for removal from the SDN List. For example, in Annex A of his November submission, Mr. Goetz makes reference in a tweet to Valcambi, a refiner facing serious issues related to its supply chain integrity and practices, then makes a generic comment regarding an imperative that the industry operate under the same regulations in order to address conflict gold. In this case, it is unclear whether he is making a negative comment about Valcambi's practices or not, and his overall statement is generic. The tweets provided in other annexes are similarly vague, high level, and devoid of serious content, and they do not provide any meaningful demonstration of change in behavior. [Exhibit 7, p. 3]

(SBU) In addition to making additional future statements, in his July 2023 submission, Mr. Goetz referenced ongoing philanthropic activities and proposed further remedial measures in addition to such future statements. Specifically, he proposed to make a donation to a charity or non-profit organization in affected areas in the DRC or to the Government of the DRC or the Government of Uganda; in his November 2023 submission, he retracted that proposal due to alleged financial hardship. State has reviewed Mr. Goetz's presentation of his philanthropic activities and does not assess that they support delisting, given the nature of and basis for his designation. Finally, in his July 2023 submission, Mr. Goetz stated that he intended to promote and support advocacy initiatives related to supply chain transparency. In his November 2023 submission, he continues to identify an array of future activities he intends to take with numerous defined and undefined partners. As above, State is not in a position to assess such amorphous promises as a basis for removal. [Exhibit 7, p. 3]

(SBU) As to Mr. Goetz's other claims in his submission, State reiterates its previous views that Mr. Goetz has not demonstrated changed behavior. For example, he has not even acknowledged his past conduct or demonstrated an ongoing commitment to new behavior. As noted above, commitments to make statements or take actions in the future, especially when they are vague

**UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~**

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

and amorphous, as in the present case, are generally insufficient to justify delisting. [Exhibit 7, p. 4]

~~(SBU)~~ As noted above, in addition to U.S. sanctions, Mr. Goetz remains subject to EU sanctions, which were imposed in December 2022, and is reportedly subject to a range of ongoing investigations in Belgium and other jurisdictions for actions occurring from 2014 to present. We note that many of these investigations have not been made public and may not be known to Mr. Goetz. Delisting at this stage may undermine or complicate international efforts to enforce standards and accountability and could have negative foreign policy consequences. Notwithstanding these actions by partners, as detailed above, State assesses that Mr. Goetz has not shown a sufficient basis for delisting at this time. [Exhibit 7, p. 4]

~~(SBU)~~ State will continue to engage with these foreign partners to monitor their progress and request information as needed. [Exhibit 7, p. 4]

(U) State has reviewed the recent submissions from Mr. Goetz (dated July 21, 2023, and November 26, 2023), and these additional submissions do not alter this recommendation. [Exhibit 7, p. 4]

## V.  (U) **CONCLUSION**

(U//~~FOUO~~) Information provided by **GOETZ***, as well as other information available to OFAC, fails to establish that OFAC lacked a sufficient basis for OFAC's March 17, 2022 designation of **GOETZ*** pursuant to the Order under two of the three bases for which he was designated or that circumstances resulting in the designation of **GOETZ*** no longer apply. As OFAC noted in the June 2023 Denial, the following two of the three bases for designation remain valid:

1. For being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC.
2. For having acted or purported to act for or on behalf of, directly or indirectly, AGR*.

(U) In reaching this conclusion, OFAC has carefully considered the arguments made by **GOETZ*** in the Previous Submission and the Subsequent Submissions, including **GOETZ***'s assertions that:

(U) There is a lack of direct connection between **GOETZ*** and support to armed groups operating in the DRC;

(U) AGR* has not sourced conflict gold due to the combination of **GOETZ***'s advocacy for transparency in the gold supply chain and AGR*'s due diligence measures and audit results;

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

15

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

(U) **GOETZ\***'s links to refining conflict gold at AGR\* are the result of unfounded media allegations;

(U) OFAC has used outdated information in its designation;

(U) The proposed TOR negates the bases for **GOETZ\***'s designation;

(U) **GOETZ\*** has publicly denounced trading in conflict gold and has voiced his commitment to improving the gold sector in the region;

(U) **GOETZ\*** is willing to engage in further activities for transparency with respect to the trade in minerals;

(U) **GOETZ\***'s is no longer a leader of AGR\* and has severed his relationship with AGR\* by divesting his interests in, and ceasing his role as promoter and consultant with, the company;

(U) The June 2023 FPG (and OFAC's reliance thereon) impermissibly expands the requirements of 31 C.F.R. § 501.807; and

(U) The June 2023 Denial fails to explain why other blocked persons seeking delisting were not required to admit involvement in sanctionable conduct.

OFAC has also considered the proposed remedial measures and other information set forth in **GOETZ\***'s Subsequent Submissions.

## VI. <u>**RECOMMENDATION**</u>

(U) Based upon evidence currently available to OFAC, as well as the information and arguments submitted by **GOETZ\***, OFAC has determined that **GOETZ\*** continues to meet the criteria for designation under two bases pursuant to E.O. 13413, as amended, and that **GOETZ\*** has failed to establish that circumstances resulting in his designation no longer apply. Therefore, **GOETZ\***'s request for removal from the SDN List should be denied.

(U) Recommendation:  That you sign the attached letter to the attorney representing **GOETZ\***, informing him of OFAC's decision to deny the request of **GOETZ\*** for reconsideration of removal from the SDN List.

(U) Approve: _____  Disapprove: _____  Let's Discuss: _____

16

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

## (U) <u>LIST OF EXHIBITS</u>

Exhibit 1:    (U) Executive Order 13413 of October 27, 2006, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," 71 Fed. Reg. 64105 (October 31, 2006), Overall classification is U.

Exhibit 2:    (U) Executive Order 13671 of July 8, 2014, "Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo," 79 Fed. Reg. 39949 (July 10, 2014), Overall classification is U.

Exhibit 3:    (U) Designation of Entities Pursuant to Executive Order 13413, 87 Fed. Reg. 4810, March 17, 2022, Overall classification is U.

Exhibit 4:    (U//~~FOUO~~) Letter, OFAC to Alain Goetz, DRC-31659, June 30, 2023, Overall classification is U//~~FOUO.~~

Exhibit 5:    (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, July 21, 2023, Overall classification is U//~~FOUO.~~

Exhibit 6:    (U) Letter, Alain Goetz to OFAC, DRC-34969, November 26, 2023, Overall classification is U//~~FOUO.~~

Exhibit 7:    (U//~~FOUO~~) State Department Memorandum, "Denial of Alain Goetz's Petition for Removal from the SDN List," February 28, 2024, Overall classification is U//~~FOUO.~~

Exhibit 8:    (U//~~FOUO~~) State Department Memorandum, "Denial of Alain Goetz's Petition for Removal from the SDN List," June 30, 2023, Overall classification is U//~~FOUO.~~

Exhibit 9:    (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, June 9, 2023, Overall classification is U//~~FOUO.~~

Exhibit 10:    (U//~~FOUO~~) Letter, OFAC to Alain Goetz, DRC-34969, August 28, 2023, Overall classification is U//~~FOUO.~~

Exhibit 11:    (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-17840, February 28, 2023, Overall classification is U//~~FOUO.~~

Exhibit 12:    (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, March 17, 2022, Overall classification is U//~~FOUO.~~

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

DRC-37986 0021

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

Exhibit 13:        (U//~~FOUO~~) OFAC Evidentiary Memorandum DRC-17840, Overall classification is U//~~FOUO~~.

Exhibit 14:        (U//~~FOUO~~) United States District Court for the District of Columbia Summons in a Civil Action, "Civil Action No. 22-cv-01204-JEB," May 3, 2022, Overall classification is U//~~FOUO~~.

Exhibit 15:        (U//~~FOUO~~) Letter, OFAC to Alain Goetz, DRC-31659, December 6, 2022, Overall classification is U//~~FOUO~~.

Exhibit 16:        (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, May 19, 2023, Overall classification is U//~~FOUO~~.

Exhibit 17:        (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, April 11, 2023, Overall classification is U//~~FOUO~~.

Exhibit 18:        (U) Official Journal of the European Union, "Council Decision (CFSP) 2023/2768," December 8, 2023, available at https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=OJ:L_202302768, Overall classification is U.

Exhibit 19:        (U) United Arab Emirates Financial Intelligence Unit report, "Dealers in Precious Metal and States: Strategic Analysis Report," October 2022, available at https://amluae.com/wp-content/uploads/2022/11/Strategic-Analysis-Report-DPMS-October-2022.pdf, Overall classification is U.

Exhibit 20:        (U) Britannica entry, "X: Microblogging Service," February 26, 2024, available at https://www.britannica.com/topic/Twitter, Overall classification is U.

Exhibit 21:        (U) Website of Britannica, "Explore Britannica," accessed February 26, 2024, available at https://corporate.britannica.com/our-brands/brand-eb, Overall classification is U.

Exhibit 22:        (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, March 21, 2023, Overall classification is U//~~FOUO~~.

Exhibit 23:        (U//~~FOUO~~) Letter, Alain Goetz to OFAC, DRC-31659, April 25, 2023, Overall classification is U//~~FOUO~~.

UNCLASSIFIED//~~FOR OFFICIAL USE ONLY~~

DRC-37986 0022

Exhibit 5



655 15th St, NW
Suite 420
Washington, D.C. 20005
Tel. 202-280-6370
Fax. 877-448-4885

July 21, 2023

**SENT VIA EMAIL (OFAC.Reconsideration@treasury.gov)**

Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Ave., NW
Freedman's Bank Building
Washington, D.C. 20220

Re:    **Letter Proposing Additional Remedial Measures, 31 C.F.R. § 501.807**[1]
       *Alain Goetz—Case ID: DRC-31659*

Dear OFAC Reconsideration:

On June 30, 2023, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") denied Alain Goetz's March 17, 2022 petition for removal. In doing so, OFAC acknowledged that Mr. Goetz no longer met the criteria for designation under E.O. 13413, as amended, for being a leader of AGR,[2] but stated that there were other grounds for which Mr. Goetz should remain designated.

Specifically, OFAC stated that AGR has sourced illicit gold from mines in regions of the DRC that are controlled by certain armed groups involved in destabilizing activities in the DRC. OFAC stated that due to Mr. Goetz's direct or indirect ownership or control of AGR and leadership positions during the relevant periods, as well as his prior involvement in AGR's gold trading activities, he continued to meet the criteria for designation under E.O. 13413, as amended—i.e., for being responsible for or complicit in, or having engaged in, directly or indirectly, support to persons, including armed groups, involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC, through the illicit trade in natural resources of the DRC.

---

[1] Because this submission contains business information and/or other information of a sensitive nature, undersigned counsel requests that OFAC treat this correspondence as confidential. If OFAC believes that it is required to release this document or information contained in it to the public pursuant to the Freedom of Information Act or any other law, please notify undersigned counsel as soon as possible.
[2] E.O. 13413, as amended, § 1(a)(ii)(E).

Exhibit 5

OFAC further stated that Mr. Goetz meets the criteria for designation under E.O. 13413, as amended, for having acted or purported to act for or on behalf of, directly or indirectly, AGR. OFAC based this determination on Mr. Goetz's alleged past conduct on behalf of the company, including, for example, Mr. Goetz's participation in a meeting as AGR's CEO with a U.S. Embassy Kampala economic officer in 2017.

Further, the United States Department of State provided foreign policy guidance to OFAC recommending that it deny Mr. Goetz's delisting petition. Based on that guidance, OFAC stated that "[e]ven if Mr. Goetz purports to have formally distanced himself from AGR, Mr. Goetz's recent statements and submissions continue his previous line of thinking and action continues. Mr. Goetz fails to provide any indications that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him. Mr. Goetz has provided no basis to believe that his views or approach to sourcing gold from high-risk or conflict areas has changed."

## I.    **Additional Proposed Remedial Measures**

To address OFAC's bases for denying his delisting request, Goetz proposes two additional remedial measures for OFAC's consideration. Mr. Goetz respectfully requests that OFAC reopen Case ID DRC-31659 and consider the following remedial measures in tandem with those proposed in his February 28, 2023 submission in Case ID DRC-31659. If OFAC is unwilling to reopen the matter, then Mr. Goetz respectfully requests that OFAC consider these proposed remedial measures along with those proposed in his February 28, 2023 submission in Case ID DRC-31659. These additional proposed remedial measures are as follows:

1. Mr. Goetz agrees to make a public statement clarifying his previous statements regarding conflict minerals and acknowledging current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold.[3] That public statement will clarify that Mr. Goetz understands that trade in conflict minerals has an adverse impact on local populations, fuels corruption and violence, and leads to environmental degradation. Further, the public statement will call upon those in the gold industry to adopt policies and procedures to identify and combat trade in conflict minerals;

---

[3] For OFAC's awareness, Mr. Goetz has recently expressed his position on conflict minerals on Twitter; however, Mr. Goetz agrees to provide a public statement with further clarification on the points identified in this proposed remedial measure.    *See*    Alain    Goetz    (@goetz_alain)    Twitter    (July    12,    2023,    4:14am), https://twitter.com/goetz_alain/status/1679041512821374976 ("Everything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefit rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain. However, we should not forget the vulnerable Artisanal and Small-scale Miners who earn an honest living from mining in order to look after their families. Supporting these numerous small groups is important.").

DRC-37986 0037

2.  Mr. Goetz agrees to provide a donation to a charity or non-profit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the Democratic Republic of Congo or the Government of Uganda. Mr. Goetz agrees to provide a donation in an amount that he can afford based on his current financial condition; and

3.  Mr. Goetz agrees to undertake efforts in the future to promote and support advocacy initiatives related to supply chain transparency.

Mr. Goetz is also willing to consider any additional remedial measures that OFAC believes are necessary to merit the recission of his E.O. 13413, as amended, designation and removal of his name from the SDN List.

## II.    <u>Conclusion</u>

Mr. Goetz respectfully requests that OFAC consider these additional remedial measures alongside those measures proposed in his February 28, 2023 submission in Case ID DRC-31659. In light of these additional remedial measures—which aim to address the U.S. government's concerns in the denial letter—Goetz requests to enter into a Terms of Removal Agreement with OFAC that will lead to the removal of his E.O. 13413, as amended, designation and his name from the SDN List as soon as possible.

Please forward all correspondence regarding this submission to:

Erich C. Ferrari
Ferrari & Associates
655 15th St., NW
Suite 420
Washington, D.C. 20005
Email: ferrari@falawpc.com

Goetz thanks OFAC for its consideration and looks forward to its response.

Sincerely,

Erich C. Ferrari

3

Exhibit 6



655 15th St, NW
Suite 420
Washington, D.C. 20005
Tel. 202-280-6370
Fax. 877-448-4885

November 26, 2023

**SENT VIA EMAIL (OFAC.Reconsideration@treasury.gov)**

Office of Global Targeting
Office of Foreign Assets Control
United States Department of the Treasury
1500 Pennsylvania Ave., NW
Freedman's Bank Building
Washington, D.C. 20220

Re:     **Response to OFAC's August 28, 2023 Questionnaire[1]**
        *Alain Goetz—Case ID DRC-34969; Goetz v. Gacki, No. 1:22-cv-01204-JEB (D.D.C.)*

Dear OFAC Reconsideration:

On August 28, 2023, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued a questionnaire to Alain Goetz ("Petitioner") in response to his July 21, 2023 letter proposing additional remedial measures in response to OFAC's denial of his delisting request in Case ID DRC-31659. Petitioner provides his timely response to that questionnaire below, as well as information and arguments in support of his delisting request.

## I.     **Procedural Background**

On June 30, 2023, OFAC denied Petitioner's March 17, 2022 petition for removal. In doing so, OFAC acknowledged that Petitioner no longer met the criteria for designation under E.O. 13413, as amended, for being a leader of African Gold Refinery Ltd.,[2] but stated that there were other grounds for which Petitioner should remain designated. Thus, Petitioner's name would remain on the Specially Designated Nationals and Blocked Persons List ("SDN List").

To address OFAC's bases for denying his delisting request, Petitioner proposed three additional remedial measures for OFAC's consideration in addition to those proposed in his

---

[1] Because this submission contains business information and/or other information of a sensitive nature, undersigned counsel requests that OFAC treat this correspondence as confidential. If OFAC believes that it is required to release this document or information contained in it to the public pursuant to the Freedom of Information Act or any other law, please notify undersigned counsel as soon as possible.
[2] E.O. 13413, as amended, § 1(a)(ii)(E).

February 28, 2023 submission in Case ID DRC-31659. In response to Petitioner's proposal, OFAC opened a new case for that submission under Case ID DRC-34969 and issued a questionnaire seeking additional, clarifying, or corroborating information. Petitioner responds to that questionnaire below, and provides additional information and arguments in support of his delisting request.

## II.   Responses to OFAC's August 28, 2023 Questionnaire

1.   Public Clarification. As you know, the U.S. Department of State previously recommended that OFAC deny Mr. Goetz's petition for delisting based in part on recent statements he had made which provided no basis to believe that his views or approach to sourcing gold from high-risk or conflict areas had changed. According to your July 21, 2023 letter, Mr. Goetz now proposes to publicly clarify his previous statements regarding conflict minerals and acknowledge current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold.

More information regarding the nature of this proposed clarification would assist OFAC in evaluating whether such statements signify a change in circumstances. This may include additional details regarding:

a.   The substance of Mr. Goetz's proposed public clarifications;

**RESPONSE**: As noted in Petitioner's July 21, 2023 letter, his proposed public statement will clarify that he understands that trade in conflict minerals has an adverse impact on local populations, fuels corruption and violence, and leads to environmental degradation. The public statement will also call upon those in the gold industry to adopt policies and procedures to identify and combat trade in conflict minerals.

Petitioner fully understands and recognizes that there are serious concerns and risks arising from sourcing minerals from high-risk or conflict areas, and that there are immense consequences that arise as a result of illicit trade benefitting the conflict in the DRC and Great Lakes Region.

Indeed, Petitioner has already made several public statements regarding these points and is committed to further addressing the gravity of the situation in the DRC and Great Lakes Region with respect to the sourcing and trade of conflict gold. For example, Petitioner has stated that "[i]t is crucial to establish a level playing field within the precious metals industry, ensuring that all players adhere to the same regulations. These rules should be designed to combat illicit trade in gold and particularly target conflict

2

minerals, preventing their integration into the global system. While Valcambi SA, a prominent gold refiner, asserts the efficacy of its due diligence system in ensuring responsible sourcing, it is imperative that the entire industry operates under the same regulations to effectively address the issue of conflict gold."[3]

Moreover, as highlighted in his July 21 letter, Petitioner has publicly recognized that "[e]verything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefits rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain."[4] Petitioner has also stated that "[i]nvestor tales of seeking precious metals in Africa and falling prey to unscrupulous dealers will persist until initiatives are taken to enhance transparency and traceability in the supply chain. Such stories tarnish the reputation of the precious metals industry, and deter potential investors. It is crucial to foster trade within formal institutions that enable transparent transactions and clear identification of traders. This benefits the country, the market players as well as those officials seeking information for official purposes."[5] Finally, Petitioner has again used posted on X.com to highlight how critical it is for persons operating in the mineral and mining sector to be committed to responsible and transparent practices to build a sustainable and responsible business environment.[6]

Petitioner intends to make an additional public statement that would underscore these principles and reinforce his position on conflict gold.

b.  The timing, venue, and nature of such public clarifications;

**RESPONSE**: Petitioner intends to make the public clarifications through his personal accounts on social media platforms such as X.com (i.e., Twitter) and LinkedIn. Petitioner believes that these platforms would reach a wide audience and thus ensure the broad dissemination of information pertaining to the sourcing of and trade in conflict gold and its effects in the DRC and Great Lakes Region.

---

[3] Annex A-X Post by Alain Goetz (@goetz_alain), X.com (Nov. 8, 2023, 7:39am), https://twitter.com/goetz_alain/status/1722232393527128550?s=48&t=l9FjwFzyXK0M9AByIzOyQQ.
[4] Annex B-X Post by Alain Goetz (@goetz_alain), X.com, (July 12, 2023, 4:14am), https://twitter.com/goetz_alain/status/1679041512821374976.
[5] Annex C-X Post by Alain Goetz (@goetz_alain), X.com, (Oct. 27, 2023, 11:18am), https://twitter.com/goetz_alain/status/1717923695476220085?s=48&t=l9FjwFzyXK0M9AByIzOyQQ.
[6] Annex D-X Post by Alain Goetz (@goetz_alain), X.com, (Nov. 22, 2023, 3:52am), https://twitter.com/goetz_alain/status/1727248691948331464?s=12&t=l9FjwFzyXK0M9AByIzOyQQ.

DRC-37986 0041

c.  Whether and how such clarifications would address Mr. Goetz's prior conduct and
    statements;

**RESPONSE**: Petitioner's proposed clarifications will address his prior conduct and
statements by advocating for transparency, accountability, and continuous
improvement with respect to the gold sector, making clear that his prior positions were
either misconstrued or are being retracted.

d.  Whether Mr. Goetz intends to address the topic of gold trade in the DRC, Uganda,
    the United Arab Emirates, and other places given the scope of his activities.

**RESPONSE**: Petitioner notes that he has previously addressed the topic of gold trade
in Uganda and the UAE. For example, Petitioner has recently stated that:

> "[t]he signing of agreements between the two sovereign states will allow
> more Emirati companies to invest in Uganda, creating jobs and boosting tax
> revenue. This strengthening of ties will create a more transparent supply
> chain system for minerals, something that I strongly support. Entebbe
> International Airport remains a major transit point for traders in the region
> who are primarily involved in the export of unprocessed minerals. Now that
> the UAE is deepening its ties with Uganda, the two states will be able to
> share information to ensure that every mineral that enters into the supply
> chain is free of conflict and potential fraud."[7]

Petitioner is open to further addressing the subject of gold trade in not only Uganda and
the UAE, but other locations of concern including the DRC. Petitioner notes, however,
that the gold industry is large and that his prior involvement in that industry represents
a small fraction of it.

2.  <u>Donation</u>. According to your July 21 letter, Mr. Goetz has offered to provide a donation
    in an amount that he can afford based on his current financial condition to a charity or
    nonprofit organization aimed at promoting transparent minerals trade in the Great
    Lakes Region or alleviating the humanitarian and environmental consequences of the
    conflict in the eastern DRC, or to the Government of the DRC or the Government of
    Uganda.

---

[7] Annex E-X Post by Alain Goetz (@goetz_alain), X.com, (Oct. 15, 2023, 4:40am),
https://twitter.com/goetz_alain/status/1713475016912687212?s=48&t=l9FjwFzyXK0M9AByIzOyQQ.

DRC-37986 0042

More information regarding the nature of Mr. Goetz's financial condition and this proposed donation would assist OFAC in evaluating whether such actions signify a change in circumstances. This may include additional details regarding:

   a. Updates to Mr. Goetz's financial situation since his April 11, 2023 response to OFAC's March 21, 2023 questionnaire;

**RESPONSE**: Since Petitioner's April 11, 2023 response to OFAC's March 21, 2023 questionnaire and July 21 letter, Petitioner's financial situation has worsened due to a counter-party reneging on an investment that Petitioner had made, and from which Petitioner had intended to pay for the donations that he proposed to OFAC. Further, Petitioner's bank accounts have been closed and his health insurance cancelled, and Petitioner has not engaged in any additional business activities nor obtained additional sources of income since the time of those submissions. Indeed, Petitioner is currently being supported on an ad hoc basis from friends and family who provide money to Petitioner to cover his basic expenses.

Thus, at this time, Petitioner no longer has the means to make a meaningful donation, but is hopeful that he will reestablish him financially following his delisting and will be able to provide such a donation in the future.

   b. The amount and frequency of any anticipated donations;

**RESPONSE**: Given the change in Petitioner's financial circumstances since his July 21, 2023 submission, there is no information responsive to this request.

   c. The anticipated recipients of such donations; and

**RESPONSE**: Given that Petitioner's financial circumstances have changed since his July 21, 2023 submission, there is no information responsive to this request.

   d. Whether such donations would be attributed to Mr. Goetz or made anonymously.

**RESPONSE**: Given that Petitioner's financial circumstances have changed since his July 21, 2023 submission, there is no information responsive to this request.

3. <u>Advocacy Initiatives</u>. According to the same July 21 letter, Mr. Goetz proposes to undertake efforts in the future to promote and support advocacy initiatives related to supply chain transparency. Additional information regarding such proposed efforts

would further assist OFAC in evaluating whether there has been a change in your client's circumstances. This may include additional details regarding:

a.   The types of activities Mr. Goetz is willing to pursue;

**RESPONSE**: Petitioner is committed to promoting and supporting advocacy initiatives aimed at enhancing supply chain transparency. In this regard, he intends to join collaborative partnerships and participate in and promote supply chain transparency awareness campaigns. Specifically, Petitioner plans to engage with non-governmental organizations that specialize in responsible sourcing and sustainable mining practices to develop best practices for supply chain transparency. These organizations include, for example, the Mineral Africa Development Initiative and Uganda Chamber of Mines and Petroleum. Petitioner also plans to engage with other relevant stakeholders to promote dialogue, encourage responsible mining practices, and contribute to the socioeconomic development of these regions.

Further, Petitioner intends to launch awareness campaigns to educate stakeholders on the importance of supply chain transparency and implementing guidelines by the International Conference on the Great Lakes Region ("ICGLR") and Organisation for Economic Co-operation and Development ("OECD"). These campaigns may include participation in meetings, webinars, and social media campaigns to disseminate knowledge and encourage dialogue among relevant parties.

b.   Whether any companies that Mr. Goetz owns or controls intend to issue any public reports or take other public actions regarding their sourcing and supply chain practices.

**RESPONSE**: Petitioner is unable to provide information responsive to this question as the companies in which he still maintains an ownership interest are inactive, and indeed did not have any business activities prior to Petitioner's designation. Moreover, while Petitioner is an indirect shareholder in Aldango, he has no control over this company. Indeed, Petitioner is currently in litigation against Aldango with respect to his ownership interest as the company has been nationalized by the Rwandan government.

III.   **Basis for Delisting—Insufficient Basis for Continued Designation**

In addition to the remedial measures that Petitioner proposed in his July 21, 2023 letter and February 28, 2023 submission in Case ID DRC-31659, Petitioner asserts an additional alternative

DRC-37986 0044

basis for his delisting. Specifically, Petitioner asserts that there is an insufficient basis for his continued designation under E.O. 13413, as amended.

First, in denying Petitioner's March 17, 2022 petition for removal, OFAC relied on foreign policy guidance provided by the State Department recommending the denial of Petitioner's delisting petition.[8] That guidance, however, did not provide any basis for Petitioner's continued designation that was connected to the designation criteria of E.O. 13413, as amended, nor to the bases for delisting set forth in 31 C.F.R. § 501.807.

Specifically, the State Department stated that it "recommends on foreign policy grounds that [OFAC] deny Alain Goetz's removal from the [SDN List] given his refusal to acknowledge his role in illicit gold trade in the DRC and because he has failed to demonstrate a change in behavior related to these activities that would warrant his removal."[9] Further, the State Department noted that:

> "[i]n order to demonstrate changed behavior that would justify delisting, Mr. Goetz should first demonstrate full acceptance and acknowledgment of responsibility for his decades-long pattern of past actions and their connection to the conflict in the region, including sharing information about his activities and others involved in the gold trade, and then identify tangible commitments to contributing to positive change in the DRC, as well as the gold sector throughout the region."[10]

As an initial matter, there is no U.S. legal authority that requires an admission of sanctionable conduct to achieve delisting. Indeed, OFAC's Procedures Governing Delisting from the SDN List contemplate three avenues to petition for removal: (1) "submit arguments or evidence that the person believes establishes that [an] insufficient basis exists for the designation"; (2) "assert that the circumstances resulting in the designation no longer apply"; and (3) "propose remedial steps . . . which the person believes would negate the basis for designation."[11] None of these avenues express a requirement that the blocked person admit to the conduct underlying their designation in order to achieve delisting. Likewise, there is no requirement in the Procedures Governing Delisting from the SDN List which would require Petitioner to share information about the activities of others to secure delisting. Nor are there any requirements in those procedures which require a blocked person to identify commitments to contribute to positive changes in a region, sector, or otherwise to secure delisting.

---

[8] Annex F–State Department Memo.
[9] *Id*.
[10] *Id*.
[11] 31 C.F.R. § 501.807.

DRC-37986 0045

Indeed, the Procedures Governing Delisting From the SDN List establish that the changes to be asserted are with respect to the circumstances which gave rise to the designation—i.e., those circumstances being the activities for which Petitioner was determined to have engaged in sanctionable conduct. By requiring admissions, information sharing on the activities of others, and committing to contributing to "positive change"—a term undefined by the State Department—the State Department, and OFAC by its reliance on that guidance, are impermissibly expanding the burden imposed by 31 C.F.R. § 501.807.

Moreover, undersigned counsel is aware of many parties who have been removed from the SDN List without admitting involvement in sanctionable conduct, sharing information about the activities of others, or contributing to positive change. There is no explanation offered by OFAC as to why those similarly situated parties—i.e., blocked persons seeking removal from the SDN List under 31 C.F.R. § 501.807—were not subject to this expanded burden, while Petitioner is.

Second, and as detailed previously, Petitioner has already publicly denounced trading in conflict gold and has voiced his commitment to improving the gold sector in the region. In addition, Petitioner is no longer a leader of AGR, as OFAC has conceded in its denial letter, and Petitioner has severed his relationship with AGR by divesting his interests in, and ceasing his role as promoter and consultant with the company. In other words, Petitioner has demonstrated a change in the circumstances underlying his designation.

The State Department guidance also stated that Petitioner:

"is reportedly subject to ongoing investigations by both Belgian and United Arab Emirates (UAE) authorities (in addition to past investigations of Goetz and his companies by Ugandan and Rwandan authorities). Additionally, his companies have previously been convicted by a Belgian court for money laundering schemes related to the gold trade and in April 2023 he was reportedly required to pay 558 million euros in back taxes." [12]

These alleged investigations likewise do not form a lawful basis to maintain sanctions on Petitioner, as they do not evidence sanctionable conduct nor pertain to the DRC. Notably, that same guidance noted that the money laundering case was "unrelated to [Petitioner's] activities in the DRC."[13] In any event, Petitioner is unaware of any ongoing or pending investigations involving him by authorities in Belgium and/or the UAE with respect to money laundering or any other alleged infraction. Moreover, Petitioner is unaware of any court verdict or judgment involving him

---

[12] Annex F–State Department Memo.

[13] *Id*.

DRC-37986 0046

which requires him to pay 558 million euros, much less any other amount; although he is aware that there has been false reporting alleging such circumstances.

In light of the foregoing, there is an insufficient basis for Petitioner's continued designation under E.O. 13413, as amended to the extent that such continued designation is based on the State Department's Foreign Policy Guidance Memorandum. Specifically, there is no legal requirement for Petitioner to admit to sanctionable conduct, provide information on others, commit to positive change in the region, nor demonstrate "changed behavior," as opposed to a change in circumstances.

Notwithstanding the lack of such legal requirements, Petitioner notes that he has, in fact, demonstrated a change in circumstances by separating himself from those entities OFAC identified as the means through which he engaged in sanctionable conduct. Further, Petitioner has identified tangible commitments to contribute to positive change in the DRC. As noted above, Petitioner has done so through his recent public statements, his willingness to engage in further activities for transparency with respect to the trade in minerals, and his commitment to make donations to organizations combatting illicit gold trade when he has the financial means to do so.

## IV.    Additional Information

Petitioner provides Annex G, which details his philanthropic activities both within and outside of Uganda.[14] These philanthropic activities demonstrate Petitioner's commitment to making a positive impact in the community and priority to support humanitarian causes.

## V.    Conclusion

Petitioner respectfully requests that OFAC rescind his designation under E.O. 13413, as amended, and remove his name from the SDN List. Petitioner has proposed remedial measures in his July 21, 2023 letter and February 28, 2023 submission in Case ID DRC-31659 that would negate the basis of his designation and provide OFAC with assurances that he is not engaged in sanctionable conduct in the future. Finally, Petitioner has asserted an additional alternative basis for delisting which further supports his delisting request.

Please forward all correspondence regarding this questionnaire response to:

Erich C. Ferrari
Ferrari & Associates

---

[14] Annex G–Goetz Philanthropic Efforts.

9

Exhibit 6

655 15th St., N.W.

Suite 420

Washington, D.C. 20005

Email: ferrari@falawpc.com

Petitioner thanks OFAC for its consideration and looks forward to its response.

Sincerely,

Erich C. Ferrari

DRC-37986 0048

Exhibit 6

# Annex

# A

DRC-37986 0049

Exhibit 6

 **Alain Goetz** ✔️
@goetz_alain

It is crucial to establish a level playing field within the precious metals industry, ensuring that all players adhere to the same regulations. These rules should be designed to combat illicit trade in gold and particularly target conflict minerals, preventing their integration into the global system. While Valcambi SA, a prominent gold refiner, asserts the efficacy of its due diligence system in ensuring responsible sourcing, it is imperative that the entire industry operates under the same regulations to effectively address the issue of conflict gold.

bloomberg.com/news/articles/...

7:39 AM · Nov 8, 2023 · **3,293** Views

DRC-37986 0050

Exhibit 6

# Annex

# B

DRC-37986 0051

← **Post**



**Alain Goetz** ✔
@goetz_alain

Everything must be done to end the insecurity in DRC. It is my belief that all mineral extraction that benefit rebel groups should be referred to as conflict minerals and must be banned from the trade supply chain. However, we should not forget the vulnerable Artisanal and Small-scale Miners who earn an honest living from mining in order to look after their families. Supporting these numerous small groups is important.

4:14 AM · Jul 12, 2023 · **2,266** Views

DRC-37986 0052

Exhibit 6

# Annex

# C

DRC-37986 0053

← **Post**



**Alain Goetz** ✔
@goetz_alain

Investor tales of seeking precious metals in Africa and falling prey to unscrupulous dealers will persist until initiatives are taken to enhance transparency and traceability in the supply chain. Such stories tarnish the reputation of the precious metals industry, and deter potential investors.

It is crucial to foster trade within formal institutions that enable transparent transactions and clear identification of traders. This benefits the country, the market players as well as those officials seeking information for official purposes.

monitor.co.ug/uganda/news/na...

11:18 AM · Oct 27, 2023 · **3,448** Views

 12    ⇄ 14     23     3

Exhibit 6

# Annex

# D

DRC-37986 0055

Alain Goetz on X: "It was great to witness the growing discussions within the precious metal industry on responsible sourcing at the 11th edition of the Dubai Precious Metals Conference. It's crucial f...

11/24/23, 9:37 PM

Exhibit 6

← Post

**Alain Goetz** ✓
@goetz_alain

Follow

•••

It was great to witness the growing discussions within the precious metal industry on responsible sourcing at the 11th edition of the Dubai Precious Metals Conference. It's crucial for players to remember that meeting the world's demand for these precious metals must be tagged to responsible and transparent practices. The sector has made significant strides in promoting transparency, and every player must work to build a sustainable and responsible business environment.

**DMCC** ⚙ @DMCCAuthority · Nov 21

DMCC successfully held the 11th edition of the Dubai Precious Metals Conference, in partnership with the UAE Ministry of Economy. Themed "The Future of Precious Metals: Global governance to trade trends,' the event delved into critical industry topics, highlighting responsible...

Show more

       



3:52 AM · Nov 22, 2023 · **3,709** Views

💬 5      🔁 8      ❤️ 23      🔖 1      ⬆️

Post your reply      Reply

**SON OF LOYOLA** ✔️ @FERDINANDIUS · Nov 22
Indeed the sector has made significant strides but this depends on certain jurisdictions. The laws, polices and practices in UAE are different from the ones in the Great Lakes Region. In UAE trade in precious metals is seen as a legitimate trade like any other, in this side, the...
Show more

💬 2      🔁 1      ❤️ 3      📊 280      🔖      ⬆️

**ahmed binsulayem** ✔️ ☐ @ahmedbinsulayem · Nov 22
Thank God @elonmusk @lindayaX are keeping @X above the rest.

@BullionStar "Latest #Swiss #gold import data shows that Switzerland 🇨🇭 imported 13.9 tonnes of gold from #Russia 🇷🇺 during October #2023 "

@malaika_tapper @peterhobson15 @PeterSchiff @V_Ratcliffe @FrankKaneDubai...
Show more

11/24/23, 9:37 PM    Alain Goetz on X: "It was great to witness the growing discussions within the precious metal industry on responsible sourcing at the 11th edition of the Dubai Precious Metals Conference. It's crucial f...

Exhibit 6



**Denis Twijukye** @dtwijukye95 · Nov 22
Transparency will enable accountability in the mining sector and also ensure the traceability of minerals.

↺ 3    ♡ 6    ıllı 5.2K    ⎙    ⤴

**Bevaist** ✅ @BevaistCom    Ad
🎉 Inject fun into your family time with our Magntic Chess Game!
🎊🎆 It's innovative, engaging, and a serious test of concentration and strategy.
🙂 Embrace the challenge and get ready for hours of laughter and intense competition
Shop now: bevaist.com/chess-game

↺ 1    ♡ 2    ıllı 81    ⎙    ⤴

https://twitter.com/goetz_alain/status/1727248691948331464?s=12&t=l9FjwFzyXK0M9ABylzOyQQ

DRC-37986 0058

Alain Goetz on X: "It was great to witness the growing discussions within the precious metal industry on responsible sourcing at the 11th edition of the Dubai Precious Metals Conference. It's crucial f...

Exhibit 6

11/24/23, 9:37 PM

**Rugaya Julius Caesar** 🇺🇬🌍 @JCRugaya · Nov 22
Responsibility & transparency are the only sure ways of cleaning the precious metals industry. With more and more unscrupulous people joining the industry, it is only right that genuine players remain alert to avert any possibility of the industry being cast in further bad light.

442     ♡ 4.7K     ⎈ 6.8M

**Rugaya Julius Caesar** 🇺🇬🌍 @JCRugaya · Nov 22
Dubai is a global hub for precious metals. It was only right that the conference took place there as the DPMC celebrates its 10th anniversary.

The conference was an opportunity for the industry players to get a harmonised position on how to move forward, amidst the challenges.

♡ 2     ⎈ 38

♡ 1     ⎈ 35

**Arthur Boateng** @ArthurBoateng4 · Nov 22

Refreshing and proper for UAE and DMCC .to take the initiative particularly focusing on Responsible Sourcing and UAE setting a benchmark for strong governance. my concern is Tokenisation to democratise.Transparency and traceability in Africa..

♡ 1    ⇄    ♡ 1    ılı 23    ⊡    ↰

Alain Goetz on X: "It was great to witness the growing discussions within the precious metal industry on responsible sourcing at the 11th edition of the Dubai Precious Metals Conference. It's crucial f…

Exhibit 6

          

DRC-37986 0061

Exhibit 6

# Annex

# E

DRC-37986 0062

← **Post**



**Alain Goetz** ✓
@goetz_alain

The signing of agreements between the two sovereign states will allow more Emirati companies to invest in Uganda, creating jobs and boosting tax revenue. This strengthening of ties will create a more transparent supply chain system for minerals, something that I strongly support. Entebbe International Airport remains a major transit point for traders in the region who are primarily involved in the export of unprocessed minerals. Now that the UAE is deepening its ties with Uganda, the two states will be able to share information to ensure that every mineral that enters into the supply chain is free of conflict and potential fraud.

africaintelligence.com/eastern-africa…

4:40 AM · Oct 15, 2023 · **9,383** Views    

💬 6              ↻ 15              ♡ 36              🔖 3              ⬆

DRC-37986 0063

Exhibit 6

# Annex

# F

DRC-37986 0064



**United States Department of State**
*Washington, D.C. 20520*

SENSITIVE BUT UNCLASSIFIED                                    June 30, 2023

**MEMORANDUM**

TO:        Andrea Gacki
           Director
           Office of Foreign Assets Control
           Department of the Treasury

FROM:      ███████████████████
           Director
           Office of Economic Sanctions Policy and Implementation
           Bureau of Economic and Business Affairs

SUBJECT:   **Denial of Alain Goetz's Petition for Removal from the SDN List**

**Recommendation:**

(SBU) The Department of State recommends on foreign policy grounds that
the Department of the Treasury's Office of Foreign Assets Control (OFAC)
**deny** Alain Goetz's removal from the Specially Designated National List (SDN
List) given his refusal to acknowledge his role in illicit gold trade in the DRC
and because he has failed to demonstrate a change in behavior related to
these activities that would warrant his removal.

**Background:**

(SBU) On March 17, 2022, the U.S. Department of the Treasury sanctioned
Alain Goetz, the African Gold Refinery (AGR) in Uganda, and a network of
companies involved in the illicit movement of gold valued at hundreds of
millions of dollars per year from the Democratic Republic of the Congo
(DRC). The illicit movement of gold provides revenue to numerous armed

SENSITIVE BUT UNCLASSIFIED

groups that threaten the peace, security, and stability of the DRC and causes immense human suffering in the DRC and across the region. The action was taken pursuant to Executive Order (E.O.) 13413, as amended by E.O. 13671, which targets, among other things, individuals and entities involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC. The action demonstrated the U.S. commitment to disrupting the illicit mineral trade and encouraging mining sector transparency as a means of curbing funding to armed groups responsible for horrific acts of violence.

(U) On December 8, 2022, the European Union (EU) designated Goetz for "exploiting the armed conflict, instability and insecurity in the DRC through the illicit exploitation and trade of natural resources."[1] In addition to U.S. sanctions, Mr. Goetz remains subject to EU sanctions, which were imposed just six months ago, and is reportedly subject to ongoing investigations by both Belgian and United Arab Emirates (UAE) authorities (in addition to past investigations of Goetz and his companies by Ugandan and Rwandan authorities). Additionally, his companies have previously been convicted by a Belgian court for money laundering schemes related to the gold trade[2] and in April 2023 he was reportedly required to pay 558 million euros in back taxes.[3]

(SBU) ███████████████████████████████████
███████████████████████████████████
State notes that Mr. Goetz has been an integral and essential part of the conflict gold trade in the DRC since the 1990s through the activities of several companies and associates, and his activities have been documented by the UN Group of Experts (GOE) since the late 2000s and early 2010s. His role as a buyer and trader of gold during the DRC's civil wars in the 1990s helped create the ecosystem that exists today where gold is used by

---

[1] See https://eur-lex.europa.eu/legal-content/EN/TXT/HTML/?uri=OJ%3AL%3A2022%3A316I%3AFULL.
[2] Reuters Staff, *Court Convicts Belgian Gold Refinery Tony Goetz of Money Laundering* (Feb 5. 2020), available at: https://www.reuters.com/article/us-gold-refining-tony-goetz-idUSKBN1ZZ2JW.
[3] Antwerp Gold Trader Must Pay Half a Billion Euros in Unpaid Tax, available at: https://www.brusselstimes.com/438461/antwerp-gold-trader-must-pay-half-a-billion-euros-in-unpaid-tax

SENSITIVE BUT UNCLASSIFIED
-3-

numerous armed groups to fund conflicts and violence. This situation has resulted in the death of tens of thousands of people and led to the injury and displacement of millions of others in Eastern DRC and the surrounding region.[4] In an interview with a Belgian newspaper in 2019, Mr. Goetz described his activities in the 1990s engaging with actors, such as Laurent Kabila during his armed rebellion, as "more fun" than gold trading had become in the late 2010s.[5]

(SBU) Mr. Goetz's first employee in the region, Kisoni Kambale, and one of the companies through which the two men worked in the 1990s and 2000s were among a group of individuals and entities sanctioned by the UN Security Council[6] and United States[7] in March 2007 for their role in the conflict gold trade, the first ever sanctions for this type of trade in the DRC. The GOE has been documenting the primary role that gold plays in conflict finance in the DRC since 2005[8], and both the United States and other jurisdictions have developed specific legal and regulatory approaches to attempt to address this trade because of the human toll, with sanctions playing an important role.[9] Gold remains a prominent feature in GOE and other reporting on conflict finance in the DRC as multiple conflicts and

---

[4] Southern Africa Revenue Watch, *Congo's Golden Web*, at pp. 40-41, 67 (May 2014), available at: https://ccsi.global/wp-content/uploads/2019/08/Congo-s-Golden-Web_compressed-1.pdf
[5] Kaspar Goethals, *Gold is a Dirty Business, Even if I Do Say So Myself*, De Standaard (Apr. 20, 2019), available at: https://www.standaard.be/cnt/dmf20190503_04370790
[6] https://press.un.org/en/2007/sc8987.doc.htm
[7] https://ofac.treasury.gov/recent-actions/20070330
[8] *Report of the Group of experts submitted pursuant to resolution 1596* (2005)(July 26, 2025), available at https://documents-dds-ny.un.org/doc/UNDOC/GEN/N05/411/18/PDF/N0541118.pdf?OpenElement
[9] *See, e.g.*, Section 1502 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The Sense of Congress to that provision stated:

> (a) SENSE OF CONGRESS ON EXPLOITATION AND TRADE OF CONFLICT MINERALS ORIGINATING IN THE DEMOCRATIC REPUBLIC OF THE CONGO.—It is the sense of Congress that the exploitation and trade of conflict minerals originating in the Democratic Republic of the Congo is helping to finance conflict characterized by extreme levels of violence in the eastern Democratic Republic of the Congo, particularly sexual- and gender-based violence, and contributing to an emergency humanitarian situation therein, warranting the provisions of section 13(p) of the Securities Exchange Act of 1934, as added by subsection (b).

SENSITIVE BUT UNCLASSIFIED

Exhibit 6

SENSITIVE BUT UNCLASSIFIED

numerous armed groups continue to plague Eastern Congo and destabilize East Africa more generally.[10]

(SBU) The United States is not the only jurisdiction to be concerned with the conflict and DRC's illicit gold trade.  Other jurisdictions have also acted against Mr. Goetz and his network of companies for their role in that trade.  This includes:

- The European Union designating Mr. Goetz on December 8, 2022, for "exploiting the armed conflict, instability and insecurity in the DRC through the illicit exploitation and trade of natural resources."
- The United Arab Emirates Financial Intelligence Unit describing the Goetz case, through an anonymized summary, in its October 2022 "Strategic Analysis Report" for Dealers in Precious Metals and Stones, identifying nine red flags related to his trading practices and indicating that the case had been referred to "the relevant police department."[11]
- The Belgian Federal Prosecutor's office has been reviewing the Goetz case for several years, based in part on the 2020 conviction by a Belgian court of Mr. Goetz and others in a money laundering case unrelated to his activities in the DRC.  In April 2023, the Belgian Special Tax Inspectorate reportedly issued a demand for 558 million euros in unpaid taxes, noted to be an "exceptionally high amount" for that authority.
- Though no direct action has been taken by the UN Security Council Mr. Goetz or his companies, his associates were sanctioned by the Security Council in 2007, and the UN Group of Experts has collected information and reported specifically on Mr. Goetz and his activities since at least 2009 as part of its ongoing focus on the gold trade.

---

[10] *See, e.g., Final report of the Group of Experts submitted in accordance with paragraph 9 of resolution 2641 (2022)*(June 13, 2023), available at: documents-dds-ny.un.org/doc/UNDOC/GEN/N23/123/80/PDF/N2312380.pdf?OpenElement; *DR Congo: Killings, Rapes by Rwanda-Backed M23 Rebels*, Human Rights Watch (June 13, 2023), available at: https://www.hrw.org/news/2023/06/13/dr-congo-killings-rapes-rwanda-backed-m23-rebels;

[11] UAE Financial Intelligence Unit, *Dealers in Precious Metals and Stones: Strategic Analysis Report*, pp. 16-17 (Oct. 2022), available at https://amluae.com/wp-content/uploads/2022/11/Strategic-Analysis-Report-DPMS-October-2022.pdf

SENSITIVE BUT UNCLASSIFIED

Exhibit 6

SENSITIVE BUT UNCLASSIFIED
-5-

(SBU) Foreign policy considerations related to the ongoing conflict in Eastern DRC, other areas in which the United States is acting against the illicit gold trade, and Uganda lead to a recommendation of denial for delisting absent a documented change in behavior ████████████████████. Mr. Goetz's history with the conflict gold trade dates to the 1990s; in many ways, Mr. Goetz helped to create the conflict gold trade through his failures to conduct appropriate levels of due diligence given the heightened risks in the region, which resulted in sourcing gold from various rebel movements in that period. This pattern of trade, specifically willingness to accept gold from sources without regard to risk, helped to establish the illicit routes through which gold would move from the Eastern DRC during the periods of conflict following the rule of the late President Mobutu. Numerous armed groups have exploited this trade and sales to the Goetz network to earn millions of dollars that have been used to carry out horrific armed attacks that have left tens of thousands of innocent people dead, millions injured and displaced, and led to a prolonged period of instability in the region – instability that continues today.

(SBU) The GOE began extensive documentation of the role of gold in funding the myriad armed groups active in the DRC in 2005, and the reporting has continued consistently ever since. The first sanctions imposed by the UN Security Council, matched by OFAC, came in 2007, focusing in part on Mr. Goetz's associates, and sanctions have remained an important tool to address the conflict gold trade. Starting in the 2010s, a range of legal and regulatory measures have been adopted to complement the use of sanctions to address this trade, such as Section 1502 of the Dodd-Frank Wall Street Reform and Consumer Protection Act requiring supply chain assessment of gold and other minerals being sourced from the DRC and its neighbors; the EU has adopted an analogous measure.

(SBU) Unfortunately, the role of gold in the multifaceted conflict in the DRC, and financing of the gold trade continues to result in the deaths of thousands of innocent civilians. The 2022 GOE report provides extensive documentation on the current role of gold in the complex web of conflict in

SENSITIVE BUT UNCLASSIFIED

Exhibit 6

SENSITIVE BUT UNCLASSIFIED
-6-

eastern DRC, continuing to demonstrate that gold is exported to Uganda and elsewhere in the region.[12] INTERPOL reported in 2021 on the structure of the illicit gold trade in the region, focusing in particular on the way that gold moves from mine sites in the DRC to Uganda and Rwanda and then on to the UAE.[13] The State Department's Human Rights Report for the DRC has also consistently referenced the role of gold in conflict in the DRC, including the most recent report released in March 2023.[14]

(SBU) Throughout the decades, Mr. Goetz has denied any awareness of, or refused to accept any responsibility for, such activity. ████████████
████████████████████████  For his part, as noted below, Mr. Goetz has described the decades of brutal and tragic conflict in the DRC as "pockets of violence" exaggerated by NGOs. In addition, in the above-referenced 2018 interview with the Belgian newspaper, Mr. Goetz acknowledged being aware that gold is a "filthy business" and that numerous concerns exist in areas from which his refinery was sourcing gold. He stated that it was not the responsibility of him or his companies to address these concerns. In 2017, Mr. Goetz told a Ugandan newspaper he did not recognize the concept of conflict gold, "I am 30 years in this business. And I am one of the leading experts on gold in this region. I have never seen one gram of conflict gold, and I will not recognize it. If I see one gram of normal gold and one gram of what they call conflict gold, I don't see the difference."[15]

(SBU) ████████████████████████████████████
████████████████████████████████████████
████████████████████████

---

[12] *Final report of the Group of Experts submitted in accordance with paragraph 6 of resolution 2582* (2021)(June 14, 2022), available at: https://documents-dds-ny.un.org/doc/UNDOC/GEN/N22/338/70/PDF/N2233870.pdf?OpenElement
[13] INTERPOL, et al, *Illegal Gold Mining in Central Africa* (May 2021), available at: https://www.interpol.int/News-and-Events/News/2021/Central-Africa-Criminals-are-cashing-in-on-COVID-19-surge-in-gold-prices.
[14] https://www.state.gov/reports/2022-country-reports-on-human-rights-practices/democratic-republic-of-the-congo/
[15] Jeff Mbanga, *Conflict Gold is Just Normal Gold, Says Mineral Expert*, The Observer (March 15, 2017), available at: https://www.observer.ug/business/51777-conflict-gold-is-just-normal-gold-says-mineral-expert.html

SENSITIVE BUT UNCLASSIFIED

Exhibit 6

SENSITIVE BUT UNCLASSIFIED
-7-



Delisting Goetz
without his acknowledgment of his complicity in the consequences of the illicit gold trade and evidence of material changes in his approach and behavior would undermine U.S. foreign policy. Additionally, it would send a clear signal that undermining civil society, the UN GOE, and others reporting on him is an acceptable approach. It would also demonstrate that a decades-long pattern of engagement in high-risk trade with actors connected to armed groups in an area affected by destructive conflict does not need to be fully addressed, or even appropriately recognized, prior to delisting.

(SBU) In order to demonstrate changed behavior that would justify delisting, Mr. Goetz should first demonstrate full acceptance and acknowledgment of responsibility for his decades-long pattern of past actions and their connection to the conflict in the region, including sharing information about his activities and others involved in the gold trade, and then identify tangible commitments to contributing to positive change in the DRC, as well as the gold sector throughout the region. Delisting Mr. Goetz without this level of acknowledgment and changed behavior would undermine actions the United States is taking both in Eastern Congo and other contexts related to

SENSITIVE BUT UNCLASSIFIED

Exhibit 6

SENSITIVE BUT UNCLASSIFIED
-8-

the conflict and illicit gold trade, in particular with respect to the activities of armed groups and criminal networks active across the continent.[16]

(SBU) ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███    Given that he has (a) never acknowledged that this illicit trade exists and (b) that he has been convicted of money laundering, demanded to pay more than half a billion in back taxes, and the subject of investigations by the UAE, Belgian Prosecutor, and multiple jurisdictions in Africa, Mr. Goetz's delisting should only proceed once there is ██████████████████████

███████████████████████████████████████

---

[16] See, e.g., *Africa Gold Advisory*, available at: https://www.state.gov/the-united-states-issues-an-advisory-focused-on-the-gold-sector-across-sub-saharan-africa/; https://home.treasury.gov/news/press-releases/jy1581.

SENSITIVE BUT UNCLASSIFIED





Exhibit 6

# Annex

# G

DRC-37986 0074

**The African Wildlife received continued support from Alain Goetz**

For a long time, the Ngamba Island Chimpanzee Sanctuary - one of the largest homes to chimpanzees in Africa – remains one of Uganda's tourism jewels.  Home to 53 orphaned and rescued chimpanzees, the sanctuary is a rare institution that remains a top benchmark for Africa in how to sustain wildlife.  Tucked away along Lake Victoria, it takes about 30 minutes by speed boat from Entebbe, across the water, to get to Ngamba island. Tourists flock the island easily and pay homage to the chimpanzees. Donors find it easy to sign off cheques to support the sanctuary. Government officials from other countries also visit the place to benchmark. There is so much to admire about the chimpanzee sanctuary. One interesting moment is when the chimpanzees are feeding. The chimpanzees are fed at certain hours. But minutes before the chimpanzees are fed, the mood is calm.

In the kitchen, workers pile up fruits in buckets. Water melon, tomatoes, bananas, and so many foods are then ferried to an enclosed enclave. The cacophony of noise that breaks out is one that elicits excitement in onlookers. Chimpanzees break out from the nearby bushes in a fit of commotion into a central arena, jumping around, making noises, thumping their chests, while some stamp their authority.

The team then throw the foods over a safely mounted fence. It is at this point that one gets to see who, among the chimpanzees, is the Alpha. When the head of the chimpanzees receives food, no other chimpanzee comes close. The rest have to elbow others away. This scene is a beauty to watch.

Covid-19 changed all that and created a challenge for the sanctuary, there was an aura of uncertainty of who would die and who would survive.

The cheques from the donors were not coming in as used to since many people found themselves in financially-constraining positions. Travel restrictions were put in place, which meant tourists could no longer come to see the chimpanzees. Revenues for the sanctuary dropped to a trickle. The sanctuary encountered a considerable challenge, prompting the involvement of Alain Goetz to address the existing gap. Goetz initiated his support for the Chimps sanctuary in 2015, but it was during the arduous period of the Covid-19 pandemic that his dedication to the sanctuary truly emerged.

Alain Goetz's commitment to the chimpanzees on Ngamba Island during the Covid-19 pandemic was remarkable. Currently, the chimpanzees at Ngamba Island Sanctuary thrive in a favorable habitat. The sanctuary's ability to overcome the challenges posed by Covid-19 remains uncertain without the invaluable support received from Alain Goetz. What is certain, though, is that regular food supplies knocked off a huge burden off the sanctuary and up to this day the sanctuary – and the chimpanzees by extension – remain grateful. Ngamba Island chimpanzee SanctuaryChimpanzee Trust

Exhibit 6









Exhibit 6












# CHIMPANZEE TRUST
## CHIMPANZEE SANCTUARY AND WILDLIFE CONSERVATION TRUST

6th September 2022

Mr. Alain Goetz,

Dear Mr. Goetz,

**RE: ANNUAL REPORT 2021**

Greetings from the Chimpanzee Trust!

It is with pleasure that I share with you the Chimpanzee Trust 2021 Annual Report.

The report highlights some of our achievements and progress of our programs in 2021, despite the challenges of COVID -19 and related restrictions, lockdown and economic downturn.

In a special way, we thank you for the support we received in 2020, 2021 and up to May 2022. This support was crucial to sustaining the welfare of the chimpanzees in our care and Ngamba Island, and we have been struggling since it stopped. We hope that you shall be able to continue this support as it is vital for us to sustain the sanctuary operations.

Enjoy the read.

*Partners in the Welfare of Wildlife*

Yours sincerely,

Dr. Joshua Rukundo

**EXECUTIVE DIRECTOR**

Plot 1 Bank Close Entebbe Town, P.O. Box 884, Entebbe Uganda
Tel: +256 414 320 662
Email: info@ngambaisland.org
Website: www.ngambaisland.org
  @Ngambaisland  Chimpanze Trust

**Alain Goetz supports the Entebbe Marathon**

Entebbe, a town known for its stunning scenery along the shores of Lake Victoria, Africa's largest freshwater body, offers a serene residential neighborhood and serves as a primary gateway for travelers. With its captivating natural beauty, Entebbe provides an ideal setting for hosting marathons, allowing participants to immerse themselves in the town's breathtaking surroundings.

The Entebbe Marathon, organized by the municipality, is a lively event that attracts fitness enthusiasts of all kinds, encouraging them to put their athleticism to the test. This marathon brings together individuals from all across Uganda, united by a common cause. The funds raised from the event are dedicated to specific initiatives, often focused on health and education.

Alain has been a prominent sponsor of numerous Entebbe Marathons, ensuring that not only is Entebbe's beauty appreciated by many, but also that the causes supported by these runs achieve success.





**Alain Goetz's continuous commitment to provide support
to orphaned children in Foodstep Uganda**

Kampala, Uganda's capital city, is a busy and dynamic city, renowned for its strong sense of business activities. Pedestrians jostle for space on the sidewalks of Kampala Road, which are usually filled with local people engaging in small businesses, be it selling small consumer goods or services. One common feature on Kampala Road is the presence of street children stationed close to the traffic lights from where they swamp cars, asking for anything that can quench their thirst or solve their hunger. Often times, people snub these children.
Pedestrians switch directions at the sight of these children. It is a tough life for these children. Foodstep Uganda, a non-profitable organisation, offers a perfect home for the orphaned children.

Located in Entebbe, Foodstep is a home for many street and other homeless children. The home has given hope where the situation was hopeless for many children. Food, drinks and shelter is made available for the children – a place where the little ones can have a meaningful life. The children also go to school and receive medical attention whenever there is a need.
Foodstep is not without challenges though. The organisation is overwhelmed by the many numbers of children who want to sign up with it. And yet, the organisation survives on the well-wishers of people to finance its work.
One of those well-wishers is Alain Goetz. Goetz, who is also a father, knows quite well what it means for children to have a future. If there is one thing that he emphasises to his friends, it is the importance of creating a conducive environment for children to achieve their dreams. That is precisely why the founders of Foodstep sought his help. Among the numerous tragic stories, was a six-month-old baby girl who had been abandoned and subjected by her mother's cruelty of burning her. Alain Goetz provided support for her hospitalization for six (6) consecutive months until she made a complete recovery, and she's now six years old enjoying a thriving existence.

Today, Foodstep continues to open its doors for more children. The organisation is listed among one of the most critical interventions for Uganda's homeless children. Foodstep says they would not have achieved all they are doing if it were not for the support of well-wishers such as Alain Goetz, his family and friends. Welcome (foodstepuganda.be)

Exhibit 6





Exhibit 6







## Youths find meaning in Alain Goetz' support

Sport has become a gateway to bigger dreams for many youths around Entebbe. It is now increasingly accepted that education alone is not a sure guarantee to success. That is why many parents in Uganda today are enrolling their children into different sports.

In Entebbe, Masavu football club was known for giving young boys the opportunity at making it big in football. The football club was built around the idea of giving youths around Entebbe the opportunity of playing for the club, and not recruiting other older players from elsewhere. This concept is what convinced Alain Goetz to support the football club, ensuring that the youths in Entebbe got more sports opportunities. Goetz knew very well that local football clubs had challenges of paying the players well or even buying shoes and jerseys for the team. It is for this reason that Alain Goetz also pledged to ensure that any activity that supports the youths and vulnerable communities of the town must be supported.







**Alain Goetz has supported privileged children
at Entebbe Children's Welfare Primary School for over a decade (and counting)**

Even though he left the town several years ago, his support to the people in the area persists. Goetz's philanthropic initiatives have consistently aimed to uplift the community, and his latest endeavor involves the construction of classroom blocks at Entebbe Children's Welfare School. These blocks will serve a crucial purpose by accommodating more children with disabilities, furthering Goetz's commitment to inclusive education.The construction of classroom blocks at Entebbe Children's Welfare School represents just one facet of Goetz's broader vision for community development. Through education, children gain the knowledge, skills, and confidence to shape their own destinies and contribute to the betterment of society.

The municipal council is aware of Goetz's support to the school over the years and has delivered its gratitude to him. "Entebbe Municipal council is grateful for the support from Mr. Alain Goetz as an effort to improve the welfare of the learners at Entebbe Children's Welfare School," the council wrote.

Goetz has been a strong advocate for the well-being and success of disabled children. As a father of a child with special needs, he deeply understands the significance of providing individualized attention and care to these remarkable children.

Goetz has actively raised awareness about his initiatives and has called upon his friends to contribute to this cause. Some of his friends have even visited the school personally and engaging with the children and teachers.





Exhibit 6







Exhibit 6





Exhibit 6







Exhibit 6







**ENTEBBE CHILDREN'S WELFARE**
**PRIMARY SCHOOL FOR SPECIAL NEEDS**
P.O BOX 266, ENTEBBE.
TEL:0414-320933/0712-321543

MR. ALAIN GOETZ

DEAR SIR,

### RE: APPRECIATION OF FOOD STUFF

On behalf of the school management, staff and the children of the above school I wish to express our gratitude and appreciation to you.

Thanks a lot for supporting us with food now for two terms 1st and 2nd term. The children are very happy because they can now eat enough and with a variety which will help them grow well.

May the good Lord bless you and your refinery abundantly so that you get enough to extend a helping hand to less privileged and also fulfill your desires.

Yours,



MUGWANYA CHRISTINE

HEAD MISTRESS



# ENTEBBE CHILDREN'S WELFARE
# PRIMARY SCHOOL FOR SPECIAL NEEDS
### P.O BOX 266, ENTEBBE.
### TEL:0414-320933/0712-321543

ENTEBBE CHILDREN'S WELFARE SCHOOL

P.O BOX 266,

ENTEBBE

25/ 05/ 2017

MR. ALAIN GOETZ

DEAR SIR,

### RE: ACKNOWLEDGEMENT AND APPRECIATION FOR FOOD STUFF

It gives me much pleasure to express the heartfelt gratitude and appreciation of the management, parents, teachers and pupils to you for the support in form of food stuff you gave to the school in first term of 2017.

Its only God who can reward and bless you, thanks a lot.

Yours,



MUGWANYA CHRISTINE

HEAD MISTRESS

 **ENTEBBE CHILDREN'S WELFARE**
**PRIMARY SCHOOL FOR SPECIAL NEEDS.**
P.O BOX 266, ENTEBBE / Tel: 041432093 / 0776-321543

MR. ALAIN GOETZ

DEAR SIR,

### RE: ACKNOWLEDGEMENT AMD APPRECIATION FOR FOOD STUFF

It gives me much pleasure to express the heartfelt gratitude and appreciation of the management, parents, teachers and pupils to you for the support in form of food stuff you gave to the school in first term of 2019.,

Its only God who can reward and bless you, thanks a lot.

Yours,





**MUGWANYA CHRISTINE**

**HEAD MISTRESS**

**Goetz' commitment to
enriching people with determination**

The Dubai Center for Special Needs is an exceptional institution that is committed to providing comprehensive support and care for individuals of determination across all age groups. With a diverse student body that represents various nationalities and a wide range of disabilities, the center offers individualized and multidisciplinary education and rehabilitation programs to meet the unique needs of each student. By focusing on personalized learning plans, the center empowers each individual to achieve their full potential and lead fulfilling lives.

One notable supporter of the Dubai Center for Special Needs is Alain Goetz, who has been dedicatedly contributing to the center since 2013. Goetz's commitment and generosity have made a significant impact on the lives of these students. His continued support has allowed them to access the necessary resources, therapies, and educational materials that have facilitated their progress and advancement.

The Dubai Center for Special Needs serves as a beacon of hope for individuals with disabilities and their families, providing them with a safe space to learn, connect, and flourish. The center's dedication to offering a multidisciplinary approach ensures that students receive comprehensive care, including educational support, therapeutic interventions, and rehabilitation services.

 

Exhibit 6









مركــز دبـــي للرعـاية الخاصـة
**DUBAI CENTER FOR SPECIAL NEEDS**



14 November 2018

Mr & Mrs Alain Goetz
Goetz Gold
PO Box 65919
Dubai
UAE

Dear Mr & Mrs Goetz,

Once again, we write to express our sincere thanks to you for your donation this year, which has been used for the full sponsorship of Mahra Hamad Jabran, and part sponsorship of Aayush Kshirsagar and Nigina Yuldasheva.

It has been a challenging year in terms of sponsorship and fundraising, and to know that we can rely on kind and generous people like yourselves, makes our lives and the lives of our students' families that little bit easier.

We will keep you updated about the progress of these three amazing students during the year and we can assure you that they are all taking full advantage of the opportunity you are providing for them.

For your information, we will be holding our annual Family Winter Fair on Friday 7 December from 12:00pm to 6:00pm.  In that regard, I have enclosed a flyer with this letter for the event which I am sure will be a fabulous day out for everyone.  Please invite your family, friends and colleagues and spend the afternoon with us in the beautiful gardens of DCSN.

Thank you again for your generosity and I look forward to seeing you soon.

Kind regards,

Dr. Mahshid Salehi
Director

Encl. Receipt

ص.ب : ٢٤٩٢١، دبي الأمارات العربية المتحدة     هاتف : ٠٩٦٦ ٣٤٤ ٠٤     فاكس : ١٨٦١ ٣٤٤ ٠٤
P.O.Box : 24921, Dubai, U.A.E.     Tel : 04 344 0966     Fax : 04 344 1861     E-mail : information@dcsneeds.com

مركـز دبـي للرعـاية الخاصـة
**DUBAI CENTER FOR SPECIAL NEEDS**



Ref: DCSN/SC/2020/0125

15 September 2020

Mr & Mrs Alain Goetz
Goetz Gold
PO Box 65919
Dubai, UAE

Dear Mr & Mrs Goetz,

From the bottom of our hearts, we wish to thank you for your selfless generosity again this year.

It has been an extremely hard year for all of us and no-one has been left untouched by this unprecedented global crisis. Your act of kindness has been felt whole-heartedly by all of us not only in receiving your sponsorship, but also to note the additional sponsorship sent in response to our cry for help.

The families of those students who will benefit from your sponsorship will be able to breathe a sigh of relief and be assured that their children will be able to attend the Center for another year to further develop and progress in their studies and therapies. You have truly made a difference to their lives and your generosity is a gift we will always treasure.

Your friendship and support is invaluable to us and I personally cannot express how grateful DCSN is to you both. I am touched beyond words.

Thank you very much from all the students and staff at DCSN.

Kind regards,

Dr Mahshid Salehi
Director

ص.ب : ٢٤٩٢١، دبي الأمارات العربية المتحدة    هاتف : ٠٩٦٦ ٣٤٤ ٠٤    فاكس : ١٨٦١ ٣٤٤ ٠٤
P.O.Box : 24921, Dubai, U.A.E.    Tel : 04 344 0966    Fax : 04 344 1861    E-mail : information@dcsneeds.com

مركـز دبــي للرعـايـة الخاصـة
**DUBAI CENTER FOR SPECIAL NEEDS**



Ref: DCSN/SC/2022/0382

10 October 2022

Mr & Mrs Alain Goetz
Goetz Gold
PO Box 65919
Dubai, UAE

Dear Mr & Mrs Goetz,

Thank you for your recent visit to the Center. It is always a pleasure to see you.

Your friendship and support means a lot to all of us and to the families of those children who will benefit from your generosity again this year.

Four very deserving students have received assistance with their fees from your sponsorship. They are Farheen and Mohammed who you helped last year, along with Aamna and Mohamad whose families have found themselves in financial difficulties this year.

They and their families are all incredibly grateful for the opportunity you have provided for them to continue their studies and to receive the therapy that they so desperately need and deserve.

Your unwavering generosity, support and friendship is something I am forever grateful for.

Thank you very much from all the students and staff at DCSN.

Kind regards,

Dr Mahshid Salehi
Director

ص.ب : ٢٤٩٢١، دبي الأمارات العربية المتحدة    هاتف : ٩٦٦٠ ٣٤٤ ٠٤    فاكس : ١٨٦١ ٣٤٤ ٠٤
P.O.Box : 24921, Dubai, U.A.E.    Tel : 04 344 0966    Fax : 04 344 1861    E-mail : information@dcsneeds.com

**Providing Shade and Hope for Catholic School Students**

With a heart for youth education, Alain Goetz sponsored the replacement of a damaged roof at Mapeera Nursery and Primary School Entebbe in 2019. Recognizing the importance of a conducive learning environment, Goetz contribution ensures that the underprivileged children attending the school will have a proper shaded classroom, allowing them to concentrate on their studies without the worry of leaking roofs and harsh weather conditions.

The students have been dealing with a badly damaged roof for a long time. This condition of the building not only compromised its structural integrity, but also hindered the academic progress of the students and could result in a very serious accident.

Alain Goetz act of kindness goes beyond the replacement of the roof. By enabling the school to provide a proper learning environment. With a comfortable and safe atmosphere where they can concentrate on their studies, the students are now better equipped to overcome the challenges they face and strive for academic excellence.





Exhibit 6

The aforementioned merely scratch the surface of his impactful endeavours. Alain Goetz has made numerous philanthropic contributions across various fields including education, sports, wildlife and tourism. By prioritizing education, he has opened doors for young minds to flourish and pursue their aspirations, empowering them to break the cycle of poverty and disability. Through his support for sports, he has not only promoted physical well-being and teamwork but also instilled discipline and determination in the youth. Furthermore, his contributions to the tourism sector have generated employment opportunities and fostered economic growth, benefiting both individuals and entire communities. Alain Goetz's commitment to preserving Africa's ecosystem includes a steadfast focus on wildlife conservation, recognizing their vital role in the region. Despite the tremendous positive impact of his endeavours, these acts of kindness often go unnoticed while he quietly transforming the lives of those most in need.

-END-



Exhibit 7

United States Department of State

Washington, DC  20520

~~SENSITIVE BUT UNCLASSIFIED~~                  February 28, 2024

**MEMORANDUM**

**TO:**        Bradley T. Smith
               Director
               Office of Foreign Assets Control
               Department of the Treasury

**FROM:**      ▮▮▮▮▮▮▮▮▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
               Director
               Office of Economic Sanctions Policy and Implementation
               Bureau of Economic and Business Affairs

**SUBJECT:**   **Denial of Alain Goetz's Petition for Removal from the SDN List**

**Recommendation**:

~~(SBU)~~ Following a recommendation in June 2023 that the Department of the Treasury's Office of Foreign Assets Control (OFAC) deny Alain Goetz's removal from OFAC's Specially Designated Nationals and Blocked Persons List (SDN List) and in light of subsequent submissions of materials by Mr. Goetz, the Department of State (State) continues to recommend on foreign policy grounds that OFAC **deny** Alain Goetz's removal.  His July and November 2023 submissions do not provide sufficient grounds to believe there has been a change in behavior related to his role in the illicit gold trade in the Democratic Republic of the Congo (DRC) that would warrant his removal.

**Background**:

(U) On March 17, 2022, OFAC sanctioned Alain Goetz, the African Gold Refinery (AGR) in Uganda, and a network of companies involved in the illicit movement of gold valued at hundreds of millions of dollars per year from

Exhibit 7

SENSTIVE BUT UNCLASSIFIED

the DRC.  The illicit movement of gold provides revenue to numerous armed groups that threaten the peace, security, and stability of the DRC and causes human suffering in the DRC and across the region.  The action was taken pursuant to Executive Order (E.O.) 13413, as amended by E.O. 13671, which targets, among other things, individuals and entities involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC.  The action demonstrated the U.S. commitment to disrupting the illicit mineral trade and encouraging mining sector transparency as a means of curbing funding to armed groups responsible for acts of violence.

(SBU) On June 30, 2023, State provided Foreign Policy Guidance (FPG) that set forth a number of reasons why Mr. Goetz's initial request for delisting should be denied, principally that Mr. Goetz has provided no basis to believe his decades-long, documented role in the trade in illicit gold has been acknowledged or changed; the role of illicit gold in financing conflict in the DRC remains a significant foreign policy concern; and the fact that Mr. Goetz remains under investigation by several foreign authorities.

(SBU) In his July and November submissions, Mr. Goetz indicated that he is prepared to make public statements noting that conflict gold has negative impacts on local populations, corruption, and the environment, and calling on the industry to adopt appropriate procedures to combat this trade.  With respect to his own role in the trade, he indicates he would address this by advocating for transparency in the sector, promising that these statements will "[make] clear that his prior positions were either misconstrued or are being retracted."

(SBU) State cannot meaningfully assess the content of proposed future statements, especially when the content of such proposed statements is amorphous and vague.  Changes in behavior are demonstrated by tangible actions rather than plans to make statements in the future without having the detail needed to assess the contents of such statements.  In general, State is not inclined to recommend delisting in response to proposed future

SENSITIVE BUT UNCLASSIFIED

SENSTIVE BUT UNCLASSIFIED

statements that are amorphous and vague.  Once Mr. Goetz has made all of the statements that he believes represent his changed views and actions in this area, we would be prepared to conduct a further review.

(SBU) Mr. Goetz claims that some of his recent statements indicate he has already begun to make these views clear.  If these statements are intended to be representative of what will be issued in the future, State's view is that these would not be sufficient for removal from the SDN List.  For example, in Annex A of his November submission, Mr. Goetz makes reference in a tweet to Valcambi, a refiner facing serious issues related to its supply chain integrity and practices, then makes a generic comment regarding an imperative that the industry operate under the same regulations in order to address conflict gold. In this case, it is unclear whether he is making a negative comment about Valcambi's practices or not, and his overall statement is generic.  The tweets provided in other annexes are similarly vague, high level, and devoid of serious content, and they do not provide any meaningful demonstration of change in behavior.

(SBU) In addition to making additional future statements, in his July 2023 submission, Mr. Goetz referenced ongoing philanthropic activities and proposed further remedial measures in addition to such future statements. Specifically, he proposed to make a donation to a charity or non-profit organization in affected areas in the DRC or to the Government of the DRC or the Government of Uganda; in his November 2023 submission, he retracted that proposal due to alleged financial hardship.  State has reviewed Mr. Goetz's presentation of his philanthropic activities and does not assess that they support delisting, given the nature of and basis for his designation.  Finally, in his July 2023 submission, Mr. Goetz stated that he intended to promote and support advocacy initiatives related to supply chain transparency.  In his November 2023 submission, he continues to identify an array of future activities he intends to take with numerous defined and undefined partners.  As above, State is not in a position to assess such amorphous promises as a basis for removal.

SENSITIVE BUT UNCLASSIFIED

Exhibit 7

SENSITIVE BUT UNCLASSIFIED

(SBU) As to Mr. Goetz's other claims in his submission, State reiterates its previous views that Mr. Goetz has not demonstrated changed behavior.  For example, he has not even acknowledged his past conduct or demonstrated an ongoing commitment to new behavior.  As noted above, commitments to make statements or take actions in the future, especially when they are vague and amorphous, as in the present case, are generally insufficient to justify delisting.

(SBU) As noted above, in addition to U.S. sanctions, Mr. Goetz remains subject to EU sanctions, which were imposed in December 2022, and is reportedly subject to a range of ongoing investigations in Belgium and other jurisdictions for actions occurring from 2014 to present.  We note that many of these investigations have not been made public and may not be known to Mr. Goetz. Delisting at this stage may undermine or complicate international efforts to enforce standards and accountability and could have negative foreign policy consequences.  Notwithstanding these actions by partners, as detailed above, State assesses that Mr. Goetz has not shown a sufficient basis for delisting at this time.

(SBU) State will continue to engage with these foreign partners to monitor their progress and request information as needed.

(U)  State has reviewed the recent submissions from Mr. Goetz (dated July 21, 2023, and November 26, 2023), and these additional submissions do not alter this recommendation.

SENSITIVE BUT UNCLASSIFIED

Exhibit 8



**United States Department of State**
*Washington, D.C. 20520*

~~SENSITIVE BUT UNCLASSIFIED~~                              June 30, 2023

**MEMORANDUM**

**TO:**       Andrea Gacki
              Director
              Office of Foreign Assets Control
              Department of the Treasury

**FROM:**     ████████████
              Director
              Office of Economic Sanctions Policy and Implementation
              Bureau of Economic and Business Affairs

**SUBJECT:**   **Denial of Alain Goetz's Petition for Removal from the SDN List**

**Recommendation:**

~~(SBU)~~ The Department of State recommends on foreign policy grounds that the Department of the Treasury's Office of Foreign Assets Control (OFAC) **deny** Alain Goetz's removal from the Specially Designated National List (SDN List) given his refusal to acknowledge his role in illicit gold trade in the DRC and because he has failed to demonstrate a change in behavior related to these activities that would warrant his removal.

**Background:**

~~(SBU)~~ On March 17, 2022, the U.S. Department of the Treasury sanctioned Alain Goetz, the African Gold Refinery (AGR) in Uganda, and a network of companies involved in the illicit movement of gold valued at hundreds of millions of dollars per year from the Democratic Republic of the Congo (DRC).  The illicit movement of gold provides revenue to numerous armed

Exhibit 8

SENSITIVE BUT UNCLASSIFIED
-2-

groups that threaten the peace, security, and stability of the DRC and causes immense human suffering in the DRC and across the region.  The action was taken pursuant to Executive Order (E.O.) 13413, as amended by E.O. 13671, which targets, among other things, individuals and entities involved in activities that threaten the peace, security, or stability of the DRC or that undermine democratic processes or institutions in the DRC.  The action demonstrated the U.S. commitment to disrupting the illicit mineral trade and encouraging mining sector transparency as a means of curbing funding to armed groups responsible for horrific acts of violence.

(U) On December 8, 2022, the European Union (EU) designated Goetz for "exploiting the armed conflict, instability and insecurity in the DRC through the illicit exploitation and trade of natural resources."[1]  In addition to U.S. sanctions, Mr. Goetz remains subject to EU sanctions, which were imposed just six months ago, and is reportedly subject to ongoing investigations by both Belgian and United Arab Emirates (UAE) authorities (in addition to past investigations of Goetz and his companies by Ugandan and Rwandan authorities).  Additionally, his companies have previously been convicted by a Belgian court for money laundering schemes related to the gold trade[2] and in April 2023 he was reportedly required to pay 558 million euros in back taxes.[3]

(SBU) State understands that Mr. Goetz has presented information to OFAC purporting to show that he is no longer an owner of or affiliated with AGR. State notes that Mr. Goetz has been an integral and essential part of the conflict gold trade in the DRC since the 1990s through the activities of several companies and associates, and his activities have been documented by the UN Group of Experts (GOE) since the late 2000s and early 2010s.  His role as a buyer and trader of gold during the DRC's civil wars in the 1990s helped create the ecosystem that exists today where gold is used by

---

[1] See https://eur-lex.europa.eu/legal-content/EN/TXT/HTML/?uri=OJ%3AL%3A2022%3A3161%3AFULL
[2] Reuters Staff, *Court Convicts Belgian Gold Refinery Tony Goetz of Money Laundering* (Feb 5, 2020), available at: https://www.reuters.com/article/us-gold-refining-tony-goetz-idUSKBN1ZZ2JW.
[3] Antwerp Gold Trader Must Pay Half a Billion Euros in Unpaid Tax, available at: https://www.brusselstimes.com/438461/antwerp-gold-trader-must-pay-half-a-billion-euros-in-unpaid-tax

SENSITIVE BUT UNCLASSIFIED

Exhibit 8

SENSITIVE BUT UNCLASSIFIED
-3-

numerous armed groups to fund conflicts and violence.  This situation has resulted in the death of tens of thousands of people and led to the injury and displacement of millions of others in Eastern DRC and the surrounding region.[4]  In an interview with a Belgian newspaper in 2019, Mr. Goetz described his activities in the 1990s engaging with actors, such as Laurent Kabila during his armed rebellion, as "more fun" than gold trading had become in the late 2010s.[5]

(SBU) Mr. Goetz's first employee in the region, Kisoni Kambale, and one of the companies through which the two men worked in the 1990s and 2000s were among a group of individuals and entities sanctioned by the UN Security Council[6] and United States[7] in March 2007 for their role in the conflict gold trade, the first ever sanctions for this type of trade in the DRC. The GOE has been documenting the primary role that gold plays in conflict finance in the DRC since 2005[8], and both the United States and other jurisdictions have developed specific legal and regulatory approaches to attempt to address this trade because of the human toll, with sanctions playing an important role.[9]  Gold remains a prominent feature in GOE and other reporting on conflict finance in the DRC as multiple conflicts and

---

[4] Southern Africa Revenue Watch, *Congo's Golden Web*, at pp. 40–41, 67 (May 2014), available at: https://ccsi.global/wp-content/uploads/2019/08/Congo-s-Golden-Web_compressed-1.pdf
[5] Kaspar Goethals, *Gold is a Dirty Business, Even if I Do Say So Myself*, De Standaard (Apr. 20, 2019), available at: https://www.standaard.be/cnt/dmf20190503_04370790
[6] https://press.un.org/en/2007/sc8987.doc.htm
[7] https://ofac.treasury.gov/recent-actions/20070330
[8] *Report of the Group of experts submitted pursuant to resolution 1596* (2005)(July 26, 2025), available at https://documents-dds-ny.un.org/doc/UNDOC/GEN/N05/411/18/PDF/N0541118.pdf?OpenElement
[9] *See, e.g.*, Section 1502 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The Sense of Congress to that provision stated:

> (a) SENSE OF CONGRESS ON EXPLOITATION AND TRADE OF CONFLICT MINERALS ORIGINATING IN THE DEMOCRATIC REPUBLIC OF THE CONGO.—It is the sense of Congress that the exploitation and trade of conflict minerals originating in the Democratic Republic of the Congo is helping to finance conflict characterized by extreme levels of violence in the eastern Democratic Republic of the Congo, particularly sexual- and gender-based violence, and contributing to an emergency humanitarian situation therein, warranting the provisions of section 13(p) of the Securities Exchange Act of 1934, as added by subsection (b).

SENSITIVE BUT UNCLASSIFIED

DRC-37986 0106

Exhibit 8

-4-

numerous armed groups continue to plague Eastern Congo and destabilize East Africa more generally.[10]

(SBU) The United States is not the only jurisdiction to be concerned with the conflict and DRC's illicit gold trade.  Other jurisdictions have also acted against Mr. Goetz and his network of companies for their role in that trade. This includes:

- The European Union designating Mr. Goetz on December 8, 2022, for "exploiting the armed conflict, instability and insecurity in the DRC through the illicit exploitation and trade of natural resources."
- The United Arab Emirates Financial Intelligence Unit describing the Goetz case, through an anonymized summary, in its October 2022 "Strategic Analysis Report" for Dealers in Precious Metals and Stones, identifying nine red flags related to his trading practices and indicating that the case had been referred to "the relevant police department."[11]
- The Belgian Federal Prosecutor's office has been reviewing the Goetz case for several years, based in part on the 2020 conviction by a Belgian court of Mr. Goetz and others in a money laundering case unrelated to his activities in the DRC.  In April 2023, the Belgian Special Tax Inspectorate reportedly issued a demand for 558 million euros in unpaid taxes, noted to be an "exceptionally high amount" for that authority.
- Though no direct action has been taken by the UN Security Council Mr. Goetz or his companies, his associates were sanctioned by the Security Council in 2007, and the UN Group of Experts has collected information and reported specifically on Mr. Goetz and his activities since at least 2009 as part of its ongoing focus on the gold trade.

---

[10] See, e.g., Final report of the Group of Experts submitted in accordance with paragraph 9 of resolution 2641 (2022)(June 13, 2023), available at: documents-dds-ny.un.org/doc/UNDOC/GEN/N23/123/80/PDF/N2312380.pdf?OpenElement; DR Congo: Killings, Rapes by Rwanda-Backed M23 Rebels, Human Rights Watch (June 13, 2023), available at: https://www.hrw.org/news/2023/06/13/dr-congo-killings-rapes-rwanda-backed-m23-rebels;

[11] UAE Financial Intelligence Unit, Dealers in Precious Metals and Stones: Strategic Analysis Report, pp. 16-17 (Oct. 2022), available at https://amluae.com/wp-content/uploads/2022/11/Strategic-Analysis-Report-DPMS-October-2022.pdf

DRC-37986 0107

Exhibit 8

(SBU) Foreign policy considerations related to the ongoing conflict in Eastern DRC, other areas in which the United States is acting against the illicit gold trade, and Uganda lead to a recommendation of denial for delisting absent a documented change in behavior beyond what Mr. Goetz has provided to date.   Mr. Goetz's history with the conflict gold trade dates to the 1990s; in many ways, Mr. Goetz helped to create the conflict gold trade through his failures to conduct appropriate levels of due diligence given the heightened risks in the region, which resulted in sourcing gold from various rebel movements in that period.  This pattern of trade, specifically willingness to accept gold from sources without regard to risk, helped to establish the illicit routes through which gold would move from the Eastern DRC during the periods of conflict following the rule of the late President Mobutu. Numerous armed groups have exploited this trade and sales to the Goetz network to earn millions of dollars that have been used to carry out horrific armed attacks that have left tens of thousands of innocent people dead, millions injured and displaced, and led to a prolonged period of instability in the region – instability that continues today.

(SBU) The GOE began extensive documentation of the role of gold in funding the myriad armed groups active in the DRC in 2005, and the reporting has continued consistently ever since.  The first sanctions imposed by the UN Security Council, matched by OFAC, came in 2007, focusing in part on Mr. Goetz's associates, and sanctions have remained an important tool to address the conflict gold trade.  Starting in the 2010s, a range of legal and regulatory measures have been adopted to complement the use of sanctions to address this trade, such as Section 1502 of the Dodd-Frank Wall Street Reform and Consumer Protection Act requiring supply chain assessment of gold and other minerals being sourced from the DRC and its neighbors; the EU has adopted an analogous measure.

(SBU) Unfortunately, the role of gold in the multifaceted conflict in the DRC continues, and financing of the gold trade continues to result in the deaths of thousands of innocent civilians.  The 2022 GOE report provides extensive documentation on the current role of gold in the complex web of conflict in

Exhibit 8

eastern DRC, continuing to demonstrate that gold is exported to Uganda and elsewhere in the region.[12] INTERPOL reported in 2021 on the structure of the illicit gold trade in the region, focusing in particular on the way that gold moves from mine sites in the DRC to Uganda and Rwanda and then on to the UAE.[13] The State Department's Human Rights Report for the DRC has also consistently referenced the role of gold in conflict in the DRC, including the most recent report released in March 2023.[14]

(SBU) Throughout the decades, Mr. Goetz has denied any awareness of, or refused to accept any responsibility for, such activity. His submissions to OFAC make only a passing reference to the concerns related to the conflict in the DRC or the role of gold in particular. For his part, as noted below, Mr. Goetz has described the decades of brutal and tragic conflict in the DRC as "pockets of violence" exaggerated by NGOs. In addition, in the above-referenced 2018 interview with the Belgian newspaper, Mr. Goetz acknowledged being aware that gold is a "filthy business" and that numerous concerns exist in areas from which his refinery was sourcing gold. He stated that it was not the responsibility of him or his companies to address these concerns. In 2017, Mr. Goetz told a Ugandan newspaper he did not recognize the concept of conflict gold, "I am 30 years in this business. And I am one of the leading experts on gold in this region. I have never seen one gram of conflict gold, and I will not recognize it. If I see one gram of normal gold and one gram of what they call conflict gold, I don't see the difference."[15]

(SBU) Even if he purports to have formally distanced himself from AGR, Mr. Goetz's recent statements and submissions continue his previous line of thinking and action continues. Mr. Goetz fails to provide any indications

---

[12] *Final report of the Group of Experts submitted in accordance with paragraph 6 of resolution 2582* (2021)(June 14, 2022), available at: https://documents-dds-nv.un.org/doc/UNDOC/GEN/N22/338/70/PDF/N2233870.pdf?OpenElement.
[13] INTERPOL, et al, *Illegal Gold Mining in Central Africa* (May 2021), available at: https://www.interpol.int/News-and-Events/News/2021/Central-Africa-Criminals-are-cashing-in-on-COVID-19-surge-in-gold-prices.
[14] https://www.state.gov/reports/2022-country-reports-on-human-rights-practices/democratic-republic-of-the-congo/
[15] Jeff Mbanga, *Conflict Gold is Just Normal Gold, Says Mineral Expert*, The Observer (March 15, 2017), available at: https://www.observer.ug/business/51777-conflict-gold-is-just-normal-gold-says-mineral-expert.html

DRC-37986 0109

SENSITIVE BUT UNCLASSIFIED
-7-

that his acceptance or understanding of risk with respect to the gold trade has changed or adjusted in response to the reporting or actions taken against him. Rather than identify how the approach of AGR has strengthened in response to the consistent GOE and other reporting on the serious risks related to the gold trade, Mr. Goetz's submissions to OFAC simply ask the agency to accept his word and declare that he has always used the appropriate level of due diligence and KYC practices in place. As a result, Mr. Goetz has provided no basis to believe that his views or approach to sourcing gold from high-risk or conflict areas has changed. Whether his business is conducted via AGR or other entities, his statements demonstrate that his ongoing and likely future role in this trade and the broader policy concerns connected thereto remain a significant concern. Delisting Goetz without his acknowledgment of his complicity in the consequences of the illicit gold trade and evidence of material changes in his approach and behavior would undermine U.S. foreign policy. Additionally, it would send a clear signal that undermining civil society, the UN GOE, and others reporting on him is an acceptable approach. It would also demonstrate that a decades-long pattern of engagement in high-risk trade with actors connected to armed groups in an area affected by destructive conflict does not need to be fully addressed, or even appropriately recognized, prior to delisting.

(SBU) In order to demonstrate changed behavior that would justify delisting, Mr. Goetz should first demonstrate full acceptance and acknowledgment of responsibility for his decades-long pattern of past actions and their connection to the conflict in the region, including sharing information about his activities and others involved in the gold trade, and then identify tangible commitments to contributing to positive change in the DRC, as well as the gold sector throughout the region. Delisting Mr. Goetz without this level of acknowledgment and changed behavior would undermine actions the United States is taking both in Eastern Congo and other contexts related to

DRC-37986 0110

SENSITIVE BUT UNCLASSIFIED
-8-

the conflict and illicit gold trade, in particular with respect to the activities of armed groups and criminal networks active across the continent.[16]

(SBU) In sum, Mr. Goetz requests that OFAC and the U.S. Government accept his presentation of documents indicating he is not associated with AGR now and his word that he has never been connected to the illicit gold trade in the past, and that he is engaged in no activity of concern at this time. Given that he has (a) never acknowledged that this illicit trade exists and (b) that he has been convicted of money laundering, demanded to pay more than half a billion in back taxes, and the subject of investigations by the UAE, Belgian Prosecutor, and multiple jurisdictions in Africa, Mr. Goetz's delisting should only proceed once there is more than his word regarding his role in the illicit trade and actions taken to change the destructive behavior he has been connected to and financing for decades.

---

[16] See, e.g., *Africa Gold Advisory*, available at: https://www.state.gov/the-united-states-issues-an-advisory-focused-on-the-gold-sector-across-sub-saharan-africa/; https://home.treasury.gov/news/press-releases/jy1581.

SENSITIVE BUT UNCLASSIFIED

Exhibit 8

SENSITIVE BUT UNCLASSIFIED

-9-



SENSITIVE BUT UNCLASSIFIED

DRC-37986 0112

Exhibit 10



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

DRC-34969

August 28, 2023

Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
655 15th St., NW
Suite 420
Washington, DC 20005

Re: Alain Goetz

Mr. Ferrari:

This letter responds to your July 21, 2023 letter submitted to the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) on behalf of your client, Alain Goetz (Mr. Goetz), in response to OFAC's June 30, 2023 decision to deny Mr. Goetz's petition for reconsideration of his designation pursuant to Executive Order (E.O.) 13413 of October 31, 2006, "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo," as amended by E.O. 13671 of July 8, 2014,"Taking Additional Steps to Address the National Emergency With Respect to the Conflict in the Democratic Republic of the Congo."

In your July 21, 2023 letter, you indicated that Mr. Goetz now proposes to undertake the following additional remedial measures: (1) public statements "clarifying" his previous statements regarding conflict minerals and acknowledging current issues in the Democratic Republic of the Congo (DRC) and African Great Lakes Region with respect to the sourcing and trade of conflict gold; (2) a donation "in an amount that he can afford based on his current financial condition" to a charity or nonprofit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the DRC or the Government of Uganda; and (3) future efforts to "promote and support advocacy initiatives related to supply chain transparency."

Pursuant to 31 C.F.R. § 501.807 and OFAC's guidance on "Filing a Petition for Removal from an OFAC List," a person may seek administrative reconsideration of their designation by submitting arguments or evidence that the person believes establishes that the circumstances resulting in the designation no longer apply.  Designated persons may also propose remedial steps that the person believes would negate the basis for designation.

In order to assist OFAC in properly evaluating whether there has been a change in Mr. Goetz's circumstances since OFAC rendered its decision on June 30, we welcome additional information regarding your client's recent proposal.  Specifically, we would appreciate written responses to the following questions with documentation in support of the answers given.  Original statements and documents prepared in a language other than English should be accompanied by English translations.

1. <u>Public Clarification</u>

As you know, the U.S. Department of State previously recommended that OFAC deny Mr. Goetz's petition for delisting based in part on recent statements he had made which provided no basis to believe that his views or approach to sourcing gold from high-risk or conflict areas had changed.  According to your July 21, 2023 letter, Mr. Goetz now proposes to publicly clarify his previous statements regarding conflict minerals and acknowledge current issues in the DRC and African Great Lakes Region with respect to the sourcing and trade of conflict gold.

More information regarding the nature of this proposed clarification would assist OFAC in evaluating whether such statements signify a change in circumstances.  This may include additional details regarding:

     a. the substance of Mr. Goetz's proposed public clarifications;
     b. the timing, venue, and nature of such public clarifications;
     c. whether and how such clarifications would address Mr. Goetz's prior conduct and statements; and
     d. whether Mr. Goetz intends to address the topic of gold trade in the DRC, Uganda, the United Arab Emirates, and other places given the scope of his activities

2. <u>Donation</u>

According to your July 21 letter, Mr. Goetz has offered to provide a donation in an amount that he can afford based on his current financial condition to a charity or nonprofit organization aimed at promoting transparent minerals trade in the Great Lakes Region or alleviating the humanitarian and environmental consequences of the conflict in the eastern DRC, or to the Government of the DRC or the Government of Uganda.

More information regarding the nature of Mr. Goetz's financial condition and this proposed donation would assist OFAC in evaluating whether such actions signify a change in circumstances.  This may include additional details regarding:

     a. updates to Mr. Goetz's financial situation since his April 11, 2023 response to OFAC's March 21, 2023 questionnaire;
     b. the amount and frequency of any anticipated donations;
     c. the anticipated recipients of such donations; and
     d. whether such donations would be attributed to Mr. Goetz or made anonymously.

3. <u>Advocacy Initiatives</u>

According to the same July 21 letter, Mr. Goetz proposes to undertake efforts in the future to promote and support advocacy initiatives related to supply chain transparency.  Additional information regarding such proposed efforts would further assist OFAC in evaluating whether

DRC-37986 0121

Exhibit 10

there has been a change in your client's circumstances.  This may include additional details regarding:

    a.  the types of activities Mr. Goetz is willing to pursue; and

    b.  whether any companies that Mr. Goetz owns or controls intend to issue any public reports or take other public actions regarding their sourcing and supply chain practices.

You may provide any additional information you deem appropriate that could assist OFAC in the review of your request.  Critically, OFAC would welcome further assurances that Mr. Goetz will not continue to engage in the behavior that resulted in his designation.

Knowingly and willfully making materially false, fictitious, or fraudulent statements or concealing a material fact in response to this letter may result in criminal penalties.  See 18 U.S.C. § 1001.

Please note that OFAC may pose additional questions and documentary requests.  Thank you for your cooperation in this matter.  For the most immediate response, please direct all questions and correspondence to OFAC via the following email address: OFAC.Reconsideration@treasury.gov.  You may also write OFAC at the following address:

        U.S. Department of the Treasury
        Office of Foreign Assets Control
        ATTN:  Office of Global Targeting, SDGT-12852
        1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
        Washington, D.C. 20220

Please refer to the Case ID shown above (Case ID DRC-34969) in all future correspondence.

          OFAC Reconsideration

DRC-37986 0122